1  | RYAN R. GORDON (SBN 278414)
2  | VANESSA T. SHAKIB (SBN 287339)
   | **ADVANCING LAW FOR ANIMALS**
3  | 407 N. Pacific Coast Highway #267
   | Redondo Beach, CA 90277
4  | Tel: (202) 996-8389
   | rgordon@advancinglawforanimals.org
5  | vshakib@advancinglawforanimals.org

6  | DANIEL J. KOLDE, ESQ.
   | **LAW OFFICES OF DANIEL J. KOLDE**
7  | P.O. Box 440344
   | St. Louis, Missouri 63144-9998
8  | Tel: 636.675.5383
   | Email: daniel.kolde.law@gmail.com
9  | (*pro hac vice application to be filed*)

10 | Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN  DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,<br><br>                    Plaintiffs,<br>          v.<br>LIEUTENANT JERRY FERNANDEZ, in his individual capacity; DETECTIVE JACOB DUNCAN, in his individual; DETECTIVE JEREMY ASHBEE, in his individual capacity; and DOES 1 through 10,<br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**42 U.S.C. § 1983, VIOLATIONS OF THE FOURTH AMENDMENT**<br><br>**42 U.S.C. § 1983,  VIOLATIONS OF FOURTEENTH AMENDMENT**<br><br>Trial Date: TBD |

*(vertical left margin)* ADVANCING LAW FOR ANIMALS

1

**NATURE OF THE ACTION**

2      1.    This case concerns damages under 42 U.S.C. 1983 arising out of well-established

3 violations of the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as an egregious

4 waste of police resources. On July 8, 2022, at the behest of the Shasta District Fair and Event Center

5 (hereinafter, "Shasta Fair Association"), two sheriff's deputies left their jurisdiction in Shasta County,

6 drove over 500 miles at taxpayer expense, and crossed approximately six (6) separate county lines,

7 all to confiscate a young girl's beloved pet goat, Cedar, after she decided not to auction him for

8 slaughter. Cedar was her property and she had every legal right to save his life. Yet, the Shasta Fair

9 Association disputed her contractual rights to do so. In response, two sheriff's deputies unreasonably

10 searched for and unreasonably seized Cedar, without a warrant, despite notice of Plaintiffs' civil

11 contract dispute over him, notice that Plaintiffs continued to assert possessory interests in Cedar,

12 notice that Plaintiffs did not receive compensation for him at auction, and notice that Plaintiffs *even*

13 *offered to pay* the Shasta Fair Association for any damages that could possibly arise in a civil dispute

14 over Cedar—which under fair rules were no more than $63.14. Nonetheless, without providing

15 Plaintiffs any notice or opportunity to be heard as required by the Constitution, the sheriff's deputies

16 assumed for themselves the mantle of the judiciary and played judge in an otherwise purely civil

17 dispute, adjudicating—*wrongly*—who owned Cedar by simply turning over him to third parties

18 whom they deemed to be his rightful owner outside of any lawful judicial process. As a result, the

19 young girl who raised Cedar lost him, and Cedar lost his life. Now Plaintiffs can never get him back.

20      2.    Through their actions, Defendants and other yet-to-be-identified Doe Defendants,

21 while acting alone and in concert with others, have, *inter alia*, violated Plaintiffs' rights as secured

22 by the Fourth and Fourteenth Amendments to the U.S. Constitution and caused Plaintiffs to suffer

23 injuries and damages for which they are entitled to remedy and relief under 42 U.S.C. § 1983.

24

**JURISDICTION AND VENUE**

25      3.    Jurisdiction is proper to this Court with respect to Plaintiffs' federal claims pursuant

26 to 28 U.S.C. §§1331 and 1343. Further, this Court has supplemental jurisdiction to hear and decide

27 Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

28

ADVANCING LAW FOR ANIMALS

4.  Venue is proper as the unlawful acts and omissions of Defendants occurred within the geographical boundaries of this Court and its authority.

## THE PARTIES

5.  Plaintiff E.L. is a minor. She is represented by, and appearing through, her general guardian and mother, Jessica Long.

6.  Plaintiff Jessica Long ("Plaintiff Long") is an individual residing in Shasta County, CA.

7.  Defendant Lieutenant Jerry Fernandez ("Defendant Fernandez") is a lieutenant in the Shasta County Sheriff's Department who, while acting under color of law, committed the violations as alleged here. For purposes of Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983, Defendant Fernandez is named in his individual capacity.

8.  Defendant Detective Jacob Duncan ("Defendant Duncan") is a detective in the Shasta County Sheriff's Department who, while acting under color of law, committed the violations as alleged here. For purposes of Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983, Defendant Duncan is named in his individual capacity.

9.  Defendant Detective Jeremy Ashbee ("Defendant Ashbee") is a Detective for the Shasta County Sheriff's Department who, while acting under color of law, committed the violations as alleged here. For purposes of Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983, Defendant Ashbee is named in his individual capacity.

10.  Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names and capacities. Plaintiffs will amend this complaint to include the true identities of said Doe Defendants when they are ascertained.

11.  Plaintiffs are informed and believe, and based thereon allege, that each of said fictitiously named Defendants acted intentionally and/or recklessly or is responsible in some manner for the occurrences herein alleged, and that each of the violations of Plaintiffs' rights, and injuries to same, as herein alleged were proximately and legally caused by said Defendants' actions and/or omissions.

12.  Plaintiffs are informed and believe, and based thereon allege, that all of the Defendants identified herein, whether identified by name or by fictitious name, were and are the agents, servants, and

ADVANCING LAW FOR ANIMALS

1    employees of each of the remaining Defendants, and that in doing the things alleged herein were acting

2    under color of state law and within the purpose, course, and scope of said agency, service, and/or

3    employment, and with the permission, consent, authorization, and subsequent ratification of each of the

4    remaining Defendants.

5        13.    Plaintiffs are informed and believe, and based thereon allege, that Defendants agreed to,

6    cooperated with, aided, abetted, encouraged, ratified, and/or adopted the acts, actions, wrongdoing, and

7    representations of each of the remaining Defendants herein, and that in doing any act alleged herein, were

8    acting in concert and through a civil conspiracy by and among each Defendant to further the interests of

9    each Defendant individually, and all Defendants as a group. For this reason, as well, all Defendants are

10   jointly liable to Plaintiffs.

11                                  **FACTUAL ALLEGATIONS**

12                      **Plaintiff E.L's Absolute Ownership of Cedar and**

13                      **Plaintiffs' Dispute with the Shasta Fair Association**

14       14.    Plaintiff E.L. is a minor. She was the owner of a young goat named Cedar, whom Plaintiffs

15   purchased in early April 2022. E.L. fed and cared for Cedar every day until almost July 2022. Naturally,

16   Plaintiff E.L. and Cedar bonded, just as Plaintiff E.L. would have bonded with a puppy. She loved him as

17   a family pet. At all times relevant to this action, Plaintiff E.L. was the owner of Cedar or had ownership

18   and possessory interests in him. Plaintiff Long, E.L.'s mother, concurrently had co-possessory interests

19   in Cedar.

20       15.    At the time Plaintiffs' purchased Cedar, Plaintiff E.L. was enrolled in a local 4-H chapter's

21   youth program.

22       16.    The 27th District Agricultural Association, doing business as Shasta District Fair and

23   Event Center (hereinafter, "Shasta Fair Association"), is a state entity authorized by statute known as

24   a Shasta Fair Association. Cal. Food & Agric. Code §§ 3879, 3951, 3954. Shasta Fair Association

25   owns and operates the Shasta District fairgrounds, where it hosts the annual Shasta District Fair.

26       17.    The annual Shasta District Fair for 2022 took place on June 22, 2022 to June 25, 2022,

27   and included a junior livestock auction from June 24th to June 25th, where members of 4-H youth

28   programs exhibit and auction their animals. The 2022 State Rules for California Fairs (hereinafter, the

*ADVANCING LAW FOR ANIMALS*

"State Fair Rules") issued by the California Department of Food & Agriculture "apply to all competitive exhibits conducted by Shasta Fair Associations … and county fairs in the State of California[,]" including the 2022 Shasta District Fair.[1]

18.     On June 24, 2022, accompanied by Plaintiff Jessica, Plaintiff E.L. exhibited Cedar at Shasta District Fair in the junior livestock auction.

19.     State Fair Rules require that "exhibitors [at the junior livestock auction] must be legal owners of all entries [and] Ownership must be maintained *through show date(s)*."[2] Plaintiff E.L.'s entry form into the junior livestock auction concedes she was Cedar's owner. The Shasta Fair Association obtained no ownership in Cedar by virtue of Plaintiff E.L.'s and Cedar's attendance at the Shasta District Fair. At most, the Shasta Fair Association was potentially entitled to only 7% of the "Seller's check," i.e., the check made out to a 4-H youth-exhibitor who sold her animal at the fair, pursuant to the Shasta Fair Association's All General Livestock Rules and Guidelines.[3]

20.     Before bidding began, Plaintiffs sought to terminate their participation in the junior livestock auction portion of the fair. However, representatives of Shasta Fair Association refused to permit this, stating to Plaintiffs simply that the governing fair rules prohibited it.  Upon information and belief, there are no such legally enforceable rules which would have precluded Plaintiffs' from terminating their participation in the livestock auction.

21.     Upon information and belief, California State Senator Brian Dahle, through his agent, placed the highest bid for Cedar on June 25, 2022, the final show date of the junior livestock auction.

22.     It is noteworthy that Cedar's successful bidder was not entitled to, and did not purchase, Cedar. Rather, the successful bidder was entitled only the cuts of meat that *were* Cedar.  There was nothing about the cuts of meat obtained from Cedar's slaughter that were unique or special property for legal purposes as to any bidder.

---

[1] CAL. DEP'T OF FOOD & AGRIC., 2022 STATE RULES FOR CALIFORNIA FAIRS (hereinafter "State Fair Rules"), at 4, *available at*
https://cdn.saffire.com/files.ashx?t=fg&rid=FresnoFair&f=2022_State_Rules_for_California_Fairs.pdf.
[2] State Fair Rules at p. 6 (emphasis added).
[3] SHASTA DIST. FAIR & EVENT CENTER, ALL GEN. LIVESTOCK RULES & GUIDELINES, at 51, *available at*
https://www.shastadistrictfairandeventcenter.com/_files/ugd/11ce2e_3695bf89aa414e3c81204ea6b6fc71bf.pdf.

ADVANCING LAW FOR ANIMALS

23.     The high bid for Cedar's meat was $902.00, far over market rate, as bidders typically overpay for meat at such auctions because it means more money to the child exhibitor. Of that amount, the Shasta Fair Association *was only entitled to $63.14*, and was to pay the remaining $838.86 to Plaintiff E.L..

24.     After the auction, Plaintiff E.L. would not leave Cedar's side. Plaintiff E.L. loved Cedar and the thought of him going to slaughter was something she could not bear. While sobbing in his pen beside him, Plaintiff E.L. communicated to her mother she didn't want Cedar to go to slaughter.

25.     Accordingly, on June 25, 2022, shortly after the auction and before transfer of Cedar to slaughter, Plaintiff E.L. exercised her statutory rights as a minor under California law to disaffirm any contract that *may* have existed between her and the Shasta County Fair and/or any other party with respect to Cedar. *See* Cal. Fam. Code § 6710 ("a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards ….").

26.     Thereafter, Plaintiff Long removed Cedar from the Shasta District Fair and, in efforts to avoid any conflict, informed the Shasta Fair Association representatives in no uncertain terms that she was willing to pay for any losses and/or damages associated with Plaintiff E.L.'s decision to save Cedar.

27.     When Plaintiff Long took that action, she feared it would cause negative social consequences for her and Plaintiff E.L, and that Cedar's presence would, at least immediately after saving his life, be a point of controversy. Plaintiffs live in an agricultural community, and feared that deviating from a 4-H program through resisting the slaughter of livestock would upset other 4-H members and community members.

28.     Accordingly, on June 26, 2022, to minimize any controversy and for Cedar's well-being, Plaintiff Long took Cedar over 200 miles away to a third party's farm in Sonoma County (the "Sonoma Farm") where Cedar could safely be kept while she attempted to ameliorate any potential rifts with her community, 4-H, and the Shasta Fair Association. In so doing, Plaintiffs did not relinquish any of their ownership or possessory rights in Cedar and could reclaim him at any time and at their discretion.

29.     However, agents of the Shasta Fair Association refused to recognize Plaintiff E.L.'s rights as a minor to disaffirm the auction bid and *insisted* that Cedar, Plaintiff E.L.'s beloved companion, whom she had raised, must be killed.

**ADVANCING LAW FOR ANIMALS**

**Plaintiffs' Good Faith Negotiations to Resolve**

**Their Civil Contract Dispute with the Shasta Fair Association**

30.     Specifically, on or about June 26, 2022, BJ Macfarlane ("Macfarlane"), the livestock manager for the Shasta Fair Association, called Plaintiff Long and demanded that Cedar be returned for slaughter. If Cedar was not returned, Macfarlane threatened Plaintiff Long would be charged with grand theft under Cal. Penal Code § 487a, a felony.

31.     Legitimately distressed and threatened by Macfarlane's ultimatum, Plaintiff Long pleaded with Macfarlane, again offering to resolve the matter by stating that not only would she pay for any potential losses to the Shasta Fair Association, but also that the Shasta Fair Association could keep the full $902.00 in funds it collected at the auction for Cedar's meat. Macfarlane, on behalf of the Shasta Fair Association, rejected the offer and demanded the immediate return of Cedar.

32.     Desperate to avoid the prospect of even frivolous criminal charges and in further efforts to reach a reasonable and amicable resolution, Plaintiff Long reached out to Cedar's putative auction bidder, Senator Brian Dahle, explaining the situation and requesting that he forgo any rights to Cedar.

33.     In response to Plaintiff Long's inquiry, Senator Dahle's representatives informed her that he would not resist her efforts to save Cedar from slaughter.

34.     In further efforts to placate Shasta Fair Association representatives, on June 27, 2022, Plaintiff Long sent a formal letter in an effort to get them to understand, as human beings, her position. Among other things, Plaintiffs' June 27th letter stated:

    a.      Cedar was Plaintiff E.L.'s goat;

    b.       Plaintiff Long removed him because Plaintiff E.L. didn't want Cedar killed. She explained that watching Plaintiff E.L. "sob[] in the pen … was heartbreaking …. Our daughter lost three grandparents within the last year and our family has had so much heartbreak and sadness that I couldn't bear the thought of the following weeks of sadness after the slaughter [of Cedar] …. ";

    c.      Plaintiff Long "communicated with ... Senator Brian Dahle's office" and he effectively waived his rights to Cedar, consenting that Plaintiffs could keep Cedar if they wanted; and

7
COMPLAINT

d.      Plaintiff Long offered " to pay back" the Shasta Fair Association "for [Cedar] and any other expenses."

35.     Macfarlane and the Shasta Fair Association were unmoved by Plaintiffs' pleas.

36.     Over the next few days, Macfarlane continued to threaten Plaintiff Long with criminal charges  and, on June 28, 2022, Plaintiff Long's written formal offer of June 27, 2022 to pay and resolve the matter, was rejected in writing by the Shasta Fair Association.

37.     Yet, in further efforts at resolving the disputed contract, on June 28, 2022, Plaintiff Long sent another follow-up letter to the Shasta Fair Association. She raised the following issues:

a.      Cedar was Plaintiff E.L.'s personal property, Shasta Fair Association was never the owner of Cedar, and that grand theft under Cal. Penal Code § 487a had no basis because "[i]t is an established principle of the law of theft that a bona fide belief of a right or claim to the property taken, even if mistaken, negates the element of felonious intent." *People v. Alvarado,* 133 Cal. App. 3d 1003, 1017 (1982);

b.      Shasta Fair Association had no claim *even in civil court*, let alone criminal court, as there were no legal damages to claim. Further, cuts of meat are simply not "unique" property to justify any injunctive or turnover order; and

c.      Notwithstanding the Shasta Fair Associations inability to claim damages in civil court, in a show of good faith and to resolve the parties' disputed contract, Plaintiff Long's June 28th letter again offered to "to reimburse any other reasonable costs associated with this event."

38.     The Shasta Fair Association admitted it received Plaintiff Long's June 28th letter yet, despite the civil nature of this dispute, continued to demand Cedar and threaten criminal penalties.

39.     Accordingly, rather than pursue any rights which it may have had through the orderly process of filing a civil action, the Shasta Fair Association and Macfarlane elected to avoid the courts and instead resort to the strong-arm tactics of involving law enforcement.

**Defendants' Criminal Investigation to Confiscate Cedar and Their Obligation to Retain Him**

40.     On Wednesday June 29, 2022, Defendant Fernandez left an intimidating message on Plaintiff Long's voicemail stating he had stopped by her house but she was not home.

ADVANCING LAW FOR ANIMALS

ADVANCING LAW FOR ANIMALS

41.    On information and belief, on July 8, 2022, Defendant Ashbee provided a Statement of Probable Cause in application for a search warrant for a third party's business known as Bleating Hearts Farm and Sanctuary located at 1142 3rd Street, Napa, CA 94558, alleging that Plaintiff Long had committed grand theft under Cal. Penal Code § 487a and placed Cedar at that Napa location.

42.    Despite his allegation that this controversy was criminal, Defendant Ashbee attached to his statement Plaintiff Long's letter of June 27, 2022. By virtue of possessing that June 27th letter, Defendant Ashbee was plainly aware and on notice that Plaintiffs were asserting possessory interests in Cedar and disputing any claims to possession made by the Shasta Fair Association, including Plaintiffs' claims that Cedar was Plaintiff E.L.'s goat; that Senator Brian Dahle purchased Cedar but nevertheless consented to Plaintiff E.L. saving him from slaughter; and that Plaintiffs would pay for any and all costs associated with Plaintiff E.L.'s decision in order to resolve any disputes. Further, Defendant Ashbee knew or should have known that the Shasta Fair Association's All General Livestock Rules and Guidelines[4] and the State Fair Rules also deemed that Plaintiff E.L. was Cedar's owner and possessor at the time she disaffirmed the disputed contract.

43.    Despite the obvious civil nature of the dispute, Defendant Ashbee nevertheless attested that "the seller of the goat, Jessica Long, took [Cedar] from the fairgrounds" in an act of grand theft and "drove [Cedar] to … Bleating Hearts Farm and Sanctuary[] in Napa …." None of those assertions were accurate, and there was no probable cause or reasonable basis to believe they were accurate.

44.    Defendant Ashbee further swore that "Bleating Hearts Farm created an Instagram post, admitting the goat was in their custody." Bleating Hearts Farm, however, never claimed, on Instagram or otherwise, that Cedar was in its custody and, in fact, Cedar *was never* in its custody.

45.    Ultimately, and as a consequence of Defendant Ashbee's omission to the magistrate that Cedar was the subject of a civil contractual dispute, a warrant for search and seizure of Cedar was issued on July 8, 2022 (the "Warrant").

---

[4] SHASTA DIST. FAIR & EVENT CENTER, ALL GEN. LIVESTOCK RULES & GUIDELINES, at 51, *available at* https://www.shastadistrictfairandeventcenter.com/_files/ugd/11ce2e_3695bf89aa414e3c81204ea6b6fc71bf.pdf.

46.     The Warrant expressly provided that it was issued because "there [was] probable cause to believe that the property … described herein (i.e., Cedar) … is lawfully seizable … in that … the property was stolen or embezzled."

47.     The Warrant expressly required Defendants to retain Cedar in their possession, in the event that he was located, specifically stating "And if you find [the described property, i.e., Cedar], to hold such property in your possession under California Penal Code § 1536 …."

48.     Cal. Penal Code § 1536 states "[a]ll property or things taken on a warrant *must be retained* by the officer in his custody …." (emphasis added).

49.     The Warrant further required that Defendants' retain Cedar as evidence *until the end of the criminal case against Plaintiff Long*, specifically providing:

> It is further ordered that upon adjudication of the case(s) against all defendant(s) in this action, including resolution of any and all appeals, and the written concurrence of the Shasta County [DA's] Office, the property be disposed of in accordance with the procedures set forth in California Penal Code § 1407-1422, without necessity of a further Court Order issued pursuant to California Penal Code § 1536.

50.     Similarly, Cal. Penal Code § 1523 requires that a "search warrant … directed to a peace officer, command[s] him or her to search for … a thing or things, or personal property, and, in the case of a thing or things or personal property, *bring the same before the magistrate*."  Retention by the officer is therefore required in order to bring the seized property before the magistrate.

51.     Finally, Cal. Penal Code § 1407 requires "[w]hen property, alleged to have been stolen or embezzled, comes into the custody of a peace officer, he shall hold it subject to the [due process protections and hearing requirements of § 1407 through § 1413]," all of which required a notice and opportunity to be heard before determining ownership. Because Cedar was allegedly "stolen or embezzled," as stated in the Warrant, Penal Code § 1407 required Defendants to maintain their possession of him until ownership was determined in accordance with the judicial process.

**Defendants' Warrantless Seizure, Transfer, and Destruction**

**of Cedar Despite Notice of Plaintiffs' Rights**

52.     On July 8, 2022, at the taxpayers' expense, and to the exclusion of investigating legitimate crimes in Shasta County, Defendant Fernandez and Defendant Duncan drove at least 500 miles over

approximately 10 hours to Napa County, and then Sonoma County, to seize a young girl's beloved goat for slaughter.

53.     At some point on that date, Defendant Fernandez and Defendant Duncan arrived at Bleating Hearts Farm & Sanctuary in Napa. However, Cedar was not, nor was he ever, present at that location.

54.     Upon information and belief, Defendant Fernandez and Defendant Duncan then proceeded from Bleating Hearts Farm and Sanctuary in Napa County to the Sonoma Farm in Sonoma County where they seized Cedar. Defendant Fernandez and Defendant Duncan had no warrant to search and seize Cedar at the Sonoma Farm.

55.     Thereafter, with notice of both the disputed contract and civil nature of the controversy, and in contravention of Defendants' duties under the U.S. Constitution and state law requiring them to retain custody of Cedar, Defendant Fernandez and Defendant Duncan independently deemed unknown third parties (John Doe Defendants) to be the owners of Cedar, and delivered him to same at the Shasta District fairgrounds.

56.     Defendants made that independent determination of ownership *without judicial authorization and without providing Plaintiffs any notice and opportunity hearing by a neutral magistrate or judicial officer* as required by the due process provisions of the United States Constitution and/or state law.

57.     Further, upon information and belief, Defendant Fernandez, Defendant Duncan, and Defendant Ashbee applied for a sham criminal warrant with the purpose of using that criminal warrant to seize Cedar not as evidence of a potential crime but rather for the sole purpose of circumventing the civil process and unlawfully transferring Cedar at the fairgrounds of the Shasta Fair Association to other yet-to-be-identified John Doe Defendants, thereby depriving Plaintiffs of their possessory interests in Cedar and depriving Plaintiffs of any opportunity to contest Cedar's seizure and/or these Defendant officials' actions in a civil court.

58.     Upon information and belief, Cedar was slaughtered by, or sent to slaughter by, those unknown third parties.

ADVANCING LAW FOR ANIMALS

59.     Defendants knew or should have known that neither the Shasta Fair Association, nor any bidder at the junior livestock auction, had any rights to Cedar as, among other reasons, (1) Plaintiff E.L. had an absolute statutory right to keep Cedar and disaffirm any contract of sale for same; (2) the June 27th letter attached to the Warrant plainly stated that E.L., a minor, owned the goat, that the bidder waived rights to Cedar, and that Plaintiffs offered to pay for any costs associated with Cedar; and (3) Plaintiffs' received no consideration for the disaffirmed contract.

60.     At bare minimum, Defendants knew there was a bona fide dispute over Cedar and his ownership that was civil in nature, governed by civil law, not the Penal Code.

61.     The acts of Defendants as alleged above constituted violations of Plaintiffs' established constitutional rights. Defendants conduct in intentionally seizing and immediately destroying all of individual Plaintiffs' personal property rights in Cedar was inconsistent with each individual Plaintiffs' constitutional rights.

62.     As a direct and proximate result of the Defendants' unconstitutional and unlawful conduct, individual Plaintiffs have suffered, and will continue to suffer damages, including but not limited to: (1) general damages, and (2) the deprivation and destruction of Cedar, Plaintiffs' property and a pet with whom Plaintiffs' had bonded emotionally.

## FIRST CAUSE OF ACTION

### Right to Be Secure From Unreasonable Searches and Seizures

### Fourth Amendment to U.S. Constitution (42 U.S.C. §1983)

63.     Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

64.     Defendants violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures of their property by unreasonably searching for Cedar when the evidence they possessed showed no crime had been committed as a matter of law and/or fact, and  by confiscating Plaintiffs' property on or about July 8, 2022, without a warrant and then disposing of and destroying Plaintiffs' property interests in Cedar.

65.     In so doing, Defendants were acting under color of state law.

66.     As a direct and proximate consequence of the acts of Defendants, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

67.     In doing the acts of which Plaintiffs complain, Defendants willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

## SECOND CAUSE OF ACTION

### Denial of Constitutional Right of Due Process of Law

### Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983)

68.     Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

69.     Defendants violated Plaintiffs' Fourteenth Amendment rights under the U.S. Constitution and 42 U.S.C. § 1983 to due process of law by confiscating Plaintiffs' property on or about July 8, 2022, and then disposing of and destroying Plaintiffs' property interests' in Cedar without notice or hearing.

70.     Defendants had a constitutional duty to provide the individual Plaintiffs with notice that their property and property interests were at risk of being seized and/or destroyed and an opportunity to be heard. Defendants failed to do so. Further, they did not preserve the individual Plaintiffs' property or provide a means of reclaiming it, thereby stripping individual Plaintiffs of any meaningful opportunity to contest the deprivation, and apparent death, of Cedar.

71.     In so doing, Defendants were acting or purporting to act in the performance of their official duties.

72.     As a direct and proximate consequence of the acts of Defendants, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

**73.**     In doing the acts of which Plaintiffs complain, Defendants willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

**ADVANCING LAW FOR ANIMALS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, jointly and severally, as follows:

A.      For an order awarding Plaintiffs actual damages according to proof;

B.      For an order awarding punitive damages;

C.      For an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D.      For any such further relief as may be permitted by law and/or that this Court deems equitable, just, and proper.

Respectfully submitted,

**ADVANCING LAW FOR ANIMALS**

Dated:  August 30, 2022                    By: ___/S/Ryan Gordon_____
                                           Ryan Gordon
                                           Vanessa Shakib
                                           Attorneys for Plaintiffs