EXHIBIT A

PROPOSED SECOND AMENDED COMPLAINT

RYAN R. GORDON (SBN 278414)
VANESSA T. SHAKIB (SBN 287339)
**ADVANCING LAW FOR ANIMALS**
407 N. Pacific Coast Highway #267
Redondo Beach, CA 90277
Tel: (202) 996-8389
rgordon@advancinglawforanimals.org
vshakib@advancinglawforanimals.org

DANIEL J. KOLDE, ESQ.
**LAW OFFICES OF DANIEL J. KOLDE**
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel: 636.675.5383
Email: daniel.kolde.law@gmail.com
(*pro hac vice application to be filed*)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN  DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual, | Case No. 2:22-cv-01527-DAD-AC |
| Plaintiffs, | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| v. | Trial Date: October 7, 2024 |
| LIEUTENANT JERRY FERNANDEZ, in his individual capacity; DETECTIVE JACOB DUNCAN, in his individual capacity; DETECTIVE JEREMY ASHBEE, in his individual capacity; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association; COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual and official capacity; BJ MACFARLANE, in his individual and official capacity; KATHIE MUSE, in her individual and official capacity, and DOES 1 through 10, | Action Filed: August 31, 2022 |
| Defendants. | |

ADVANCING LAW FOR ANIMALS

### NATURE OF THE ACTION

1. This case concerns damages under 42 U.S.C. 1983 arising out of well-established violations of the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as an egregious waste of police resources. On July 8, 2022, at the behest of the Shasta District Fair and Event Center (hereinafter, "Shasta Fair Association"), two sheriff's deputies left their jurisdiction in Shasta County, drove over 500 miles at taxpayer expense, and crossed approximately six (6) separate county lines, all to confiscate a young girl's beloved pet goat, Cedar, after she decided not to sell him for slaughter at an auction held by her kid's club, known commonly as 4-H Cedar was her property and she had every legal right to save his life. Yet, the Shasta Fair Association disputed her contractual rights to do so. In response, two sheriff's deputies unreasonably searched for and unreasonably seized Cedar, without a warrant, despite notice of Plaintiffs' civil contract dispute over him, notice that Plaintiffs continued to assert possessory interests in Cedar, notice that Plaintiffs did not receive compensation for him at auction, and notice that Plaintiffs *even offered to pay* the Shasta Fair Association for any damages that could possibly arise in a civil dispute over Cedar—which under fair rules were no more than $63.14. Nonetheless, without providing Plaintiffs any notice or opportunity to be heard as required by the Constitution, the sheriff's deputies assumed for themselves the mantle of the judiciary and played judge in an otherwise purely civil dispute, adjudicating—*wrongly*—who owned Cedar by simply turning him over to third parties whom they deemed to be his rightful owner outside of any lawful judicial process. As a result, the young girl who raised Cedar lost him, and Cedar lost his life. Now Plaintiffs can never get him back.

2. Through their actions, Defendants and other yet-to-be-identified Doe Defendants, while acting alone and in concert with others, have, *inter alia*, violated Plaintiffs' rights as secured by the Fourth and Fourteenth Amendments to the U.S. Constitution and caused Plaintiffs to suffer injuries and damages for which they are entitled to remedy and relief under 42 U.S.C. § 1983.

### JURISDICTION AND VENUE

3. Jurisdiction is proper to this Court with respect to Plaintiffs' federal claims pursuant to 28 U.S.C. §§1331 and 1343. Further, this Court has supplemental jurisdiction to hear and decide Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

ADVANCING LAW FOR ANIMALS

4.      Venue is proper as the unlawful acts and omissions of Defendants occurred within the geographical boundaries of this Court and its authority.

## THE PARTIES

5.      Plaintiff E.L. is a minor. She is represented by, and appearing through, her general guardian and mother, Jessica Long.

6.      Plaintiff Jessica Long ("Plaintiff Long") is an individual residing in Shasta County, CA.

7.      Defendant Lieutenant Jerry Fernandez ("Defendant Fernandez") is a lieutenant in the Shasta County Sheriff's Department who, while acting under color of law, committed the violations as alleged here. For purposes of Plaintiffs' claims directed against Fernandez brought pursuant to 42 U.S.C. § 1983, Defendant Fernandez is named in his individual capacity.

8.      Defendant Detective Jacob Duncan ("Defendant Duncan") is a detective in the Shasta County Sheriff's Department who, while acting under color of law, committed the violations as alleged here. For purposes of Plaintiffs' claims directed against Duncan brought pursuant to 42 U.S.C. § 1983, Defendant Duncan is named in his individual capacity.

9.      Defendant Detective Jeremy Ashbee ("Defendant Ashbee") is a Detective for the Shasta County Sheriff's Department who, while acting under color of law, committed the violations as alleged here. For purposes of Plaintiffs' claims directed against Ashbee brought pursuant to 42 U.S.C. § 1983, Defendant Ashbee is named in his individual capacity.

10.      The 27th District Agricultural Association, doing business as Shasta District Fair and Event Center (hereinafter, "Defendant Shasta Fair Association" or "Shasta Fair Association"), is a state entity authorized by statute known as a Shasta Fair Association. Cal. Food & Agric. Code §§ 3879, 3951, 3954. Shasta Fair Association owns and operates the Shasta District fairgrounds, where it hosts the annual Shasta District Fair. On information and belief, an individual with final decision-making authority at the Shasta Fair Association reviewed and authorized the search, seizure, and/or wrongful destruction of Cedar, Plaintiffs' goat.

11.      Defendant Melanie Silva ("Defendant Silva") is the Chief Executive Officer of the Shasta Fair Association who, while acting under color of law, committed the violations as alleged herein. She is

ADVANCING LAW FOR ANIMALS

named in her individual capacity as to claims for damages, and in her official capacity as to claims for declaratory relief.

12.     Defendant BJ McFarlane ("Defendant McFarlane") is the livestock manager at the Shasta Fair Association who, while acting under color of law, committed the violations as alleged herein. He is named in his individual capacity as to claims for damages, and in his official capacity as to claims for declaratory relief.

13.     Defendant County of Shasta ("Shasta County") is a public entity, duly organized and existing under the laws of the State of California. Shasta County has at all times relevant been responsible for the actions, policies, procedures, practices, and customs of the Shasta County Sheriff's Department and its agents and employees.

14.     Defendant Shasta County Sheriff's Department ("Shasta Sheriff's Department") is a department of Shasta County. The Sheriff's Department enforces the actions, policies, procedures, practices and customs that led to the search, seizure and/or wrongful destruction of Cedar, Plaintiffs' goat.

15.     Defendant Kathie Muse ("Defendant Muse") is an individual residing in Shasta County who, while acting under color of law, committed the violations as alleged herein. Upon information and belief, she is  affiliated with and represents 4-H, a California State program that is part of the University of California Division of Agricultural and Natural Resources. Defendant Muse, while acting under color of law and/or conspiring or acting jointly with a governmental actor(s), committed the violations as alleged herein. For purposes of Plaintiffs' claims directed against Defendant Muse brought pursuant to 42 U.S.C. § 1983, she is named in her individual capacity.

16.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names and capacities. Plaintiffs will amend this complaint to include the true identities of said Doe Defendants when they are ascertained.

17.     Plaintiffs are informed and believe, and based thereon allege, that each of said fictitiously named Defendants acted intentionally and/or recklessly or is responsible in some manner for the

occurrences herein alleged, and that each of the violations of Plaintiffs' rights, and injuries to same, as herein alleged were proximately and legally caused by said Defendants' actions and/or omissions.

18.     Plaintiffs are informed and believe, and based thereon allege, that all of the Defendants identified herein, whether identified by name or by fictitious name, were and are the agents, servants, and employees of each of the remaining Defendants, and that in doing the things alleged herein were acting under color of state law and within the purpose, course, and scope of said agency, service, and/or employment, and with the permission, consent, authorization, and subsequent ratification of each of the remaining Defendants.

19.     Plaintiffs are informed and believe, and based thereon allege, that Defendants agreed to, cooperated with, aided, abetted, encouraged, ratified, and/or adopted the acts, actions, wrongdoing, and representations of each of the remaining Defendants herein, and that in doing any act alleged herein, were acting in concert and through a civil conspiracy by and among each Defendant to further the interests of each Defendant individually, and all Defendants as a group. For this reason, as well, all Defendants are jointly liable to Plaintiffs.

## FACTUAL ALLEGATIONS

### Plaintiff E.L's Absolute Ownership of Cedar and
### Plaintiffs' Dispute with the Shasta Fair Association

20.     Plaintiff E.L. is a minor. She was the owner of a young goat named Cedar, whom Plaintiffs purchased in early April 2022. E.L. fed and cared for Cedar every day until almost July 2022. Naturally, Plaintiff E.L. and Cedar bonded, just as Plaintiff E.L. would have bonded with a puppy. She loved him as a family pet. At all times relevant to this action, Plaintiff E.L. was the owner of Cedar or had ownership and possessory interests in him. Plaintiff Long, E.L.'s mother, concurrently had co-possessory interests in Cedar.

21.     At the time Plaintiffs' purchased Cedar, Plaintiff E.L. was enrolled in a local 4-H chapter's youth program. 4–H program is part of the University of California Division of Agricultural and Natural Resources (ANR), and is administered by the University of California's Cooperative Extension. Upon information and belief, the 4-H program in Shasta County in which Plaintiff E.L. was registered was/is administered by the Shasta County Cooperative Extension under the authority

ADVANCING LAW FOR ANIMALS

of the University of California. The term "4-H" as used hereafter refers to the Shasta County Cooperative Extension and the 4-H program it administers.

22.     The annual Shasta District Fair for 2022 took place on June 22, 2022 to June 25, 2022, and included a junior livestock auction from June 24th to June 25th, where members of 4-H youth programs exhibit and auction their animals.

23.     4-H and Defendant Shasta Fair Association scheduled their annual barbeque at the fairgrounds, known as the 4-H/FFA Community Barbeque, on July 9, 2022 ("Government Barbeque") approximately two weeks after the 2022 Shasta District Fair concluded. Upon information and belief, Defendant Muse was and is a longtime agent and affiliate of 4-H, who participated in planning and organizing the Government Barbeque on behalf of 4-H and Defendant Shasta Fair Association.

24.     The 2022 State Rules for California Fairs (hereinafter, the "State Fair Rules") issued by the California Department of Food & Agriculture "apply to all competitive exhibits conducted by Shasta Fair Associations … and county fairs in the State of California[,]" including the 2022 Shasta District Fair.[1]

25.     On June 24, 2022, accompanied by Plaintiff Jessica, Plaintiff E.L. exhibited Cedar at Shasta District Fair in the junior livestock auction.

26.     State Fair Rules require that "exhibitors [at the junior livestock auction] must be legal owners of all entries [and] Ownership must be maintained *through show date(s)*."[2] Plaintiff E.L.'s entry form into the junior livestock auction concedes she was Cedar's owner. The Shasta Fair Association obtained no ownership in Cedar by virtue of Plaintiff E.L.'s and Cedar's attendance at the Shasta District Fair. At most, the Shasta Fair Association was potentially entitled to only 7% of the "Seller's check," i.e., the check made out to a 4-H youth-exhibitor who sold her animal at the fair, pursuant to the Shasta Fair Association's All General Livestock Rules and Guidelines.[3]

---

[1] CAL. DEP'T OF FOOD & AGRIC., 2022 STATE RULES FOR CALIFORNIA FAIRS (hereinafter "State Fair Rules"), at 4, *available at* https://cdn.saffire.com/files.ashx?t=fg&rid=FresnoFair&f=2022_State_Rules_for_California_Fairs.pdf.

[2] State Fair Rules at p. 6 (emphasis added).

[3] SHASTA DIST. FAIR & EVENT CENTER, ALL GEN. LIVESTOCK RULES & GUIDELINES, at 51, *available at* https://www.shastadistrictfairandeventcenter.com/_files/ugd/11ce2e_3695bf89aa414e3c81204ea6b6fc71bf.pdf.

ADVANCING LAW FOR ANIMALS

27.     Before bidding began, Plaintiffs sought to terminate their participation in the junior livestock auction portion of the fair. However, representatives of Shasta Fair Association refused to permit this, stating to Plaintiffs simply that the governing fair rules prohibited it. Upon information and belief, there are no such legally enforceable rules which would have precluded Plaintiffs' from terminating their participation in the livestock auction.

28.     Upon information and belief, California State Senator Brian Dahle, through his agent, placed the highest bid for Cedar on June 25, 2022, the final show date of the junior livestock auction.

29.     Upon information and belief, Defendant Muse purportedly bid on Senator Brian Dahle's behalf.

30.     It is noteworthy that Cedar's successful bidder was not entitled to, and did not purchase, Cedar. Rather, had the sale been completed, the successful bidder was entitled only the cuts of meat that *were* Cedar.  There was nothing about the cuts of meat obtained from Cedar's slaughter that were unique or special property for legal purposes as to any bidder.

31.     Upon information and belief, prior to the auction, State Senator Brian Dahle's directed that Cedar's meat be donated to the Government Barbeque–assuming his bid for Cedar was accepted and the sale ultimately completed.

32.     The high bid for Cedar's meat was $902.00, far over market rate, as bidders typically overpay for meat at such auctions because it means more money to the child exhibitor. Of that amount, the Shasta Fair Association *was only entitled to $63.14*, and was to pay  the remaining $838.86 to Plaintiff E.L.

33.     Pursuant to applicable law, although State Senator Brian Dahle placed the highest bid on Cedar, a sale did not occur at the time the bid was placed, nor did the sale of Cedar ever occur.

34.     After the auction, Plaintiff E.L. would not leave Cedar's side. Plaintiff E.L. loved Cedar and the thought of him going to slaughter was something she could not bear. While sobbing in his pen beside him, Plaintiff E.L. communicated to her mother she didn't want Cedar to go to slaughter.

35.     Accordingly, on June 25, 2022, shortly after the auction and before transfer of Cedar to slaughter, Plaintiff E.L. exercised her statutory rights as a minor under California law to disaffirm any contract that *may* have existed between her and the Shasta County Fair and/or any other party with respect

ADVANCING LAW FOR ANIMALS

to Cedar. *See* Cal. Fam. Code § 6710 ("a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards ….").

36.     Thereafter, Plaintiff Long removed Cedar from the Shasta District Fair and, in efforts to avoid any conflict, informed the Shasta Fair Association representatives in no uncertain terms that she was willing to pay for any losses and/or damages associated with Plaintiff E.L.'s decision to save Cedar.

37.     When Plaintiff Long took that action, she feared it would cause negative social consequences for her and Plaintiff E.L, and that Cedar's presence would, at least immediately after saving his life, be a point of controversy. Plaintiffs live in an agricultural community, and feared that deviating from a 4-H program through resisting the slaughter of livestock would upset other 4-H members and community members.

38.     Accordingly, on June 26, 2022, to minimize any controversy and for Cedar's well-being, Plaintiff Long took Cedar over 200 miles away to a third party's farm in Sonoma County (the "Sonoma Farm") where Cedar could safely be kept while she attempted to ameliorate any potential rifts with her community, 4-H, and the Shasta Fair Association. In so doing, Plaintiffs did not relinquish any of their ownership or possessory rights in Cedar and could reclaim him at any time and at their discretion.

39.     However, agents of the Shasta Fair Association refused to recognize Plaintiff E.L.'s rights as a minor to disaffirm any agreement that may have existed, and *insisted* that Cedar, Plaintiff E.L.'s beloved companion, whom she had raised, must be killed. Defendant Shasta Fair Association and its agents also refused to recognize Shasta Fair Association's All General Livestock Rules and Guidelines, which, at all times relevant, stated, "Any Exhibitor, who fails to conform to accepted standards of conduct, will be removed immediately (with livestock) from the Fairgrounds and all premiums and auction proceeds forfeited, if the situation is of a serious nature."

40.     Upon information and belief, although no sale of Cedar had occurred, Defendant Muse claimed to be the owner of Cedar on behalf of 4-H.

41.     But, as a sale did not occur, State Senator Dahle could not have in fact donated Cedar to anyone.

42.     Although a sale had not occurred, and although Plaintiff E.L. had a statutory right to disaffirm any agreement she may have had with Defendant Shasta Fair Association, Defendant Muse refused to accept Plaintiffs' offer to pay any damages caused in this civil dispute.

43.     Since neither Defendant Muse nor 4-H owned Cedar, Defendant Muse conspired with Defendant Shasta Fair Association, including Defendants Silva and Macfarlane, —in violation of Plaintiffs' State and Constitutional rights—to seize and slaughter Cedar.

**Plaintiffs' Good Faith Negotiations to Resolve**

**Their Civil Contract Dispute with the Shasta Fair Association, Silva, and Macfarlane**

44.     Specifically, on or about June 26, 2022, Defendant Macfarlane, the livestock manager for the Shasta Fair Association, called Plaintiff Long and demanded that Cedar be returned for slaughter. If Cedar was not returned, Macfarlane threatened Plaintiff Long would be charged with grand theft under Cal. Penal Code § 487a, a felony. Upon information and belief, Defendant Macfarlane, Defendant Shasta Fair Association, its CEO Defendant Silva, and Does, objected to Plaintiffs' viewpoint and belief that Cedar was more than cuts of meat and deserved to live.

45.     Legitimately distressed and threatened by Defendant Macfarlane's ultimatum, Plaintiff Long pleaded with Macfarlane, again offering to resolve the matter by stating that not only would she pay for any potential losses to Defendant Shasta Fair Association, but also that the Shasta Fair Association could keep the full $902.00 in funds it collected at the auction for Cedar's meat. Macfarlane, on behalf of the Shasta Fair Association, rejected the offer and demanded the immediate return of Cedar.

46.     Desperate to avoid the prospect of even frivolous criminal charges and in further efforts to reach a reasonable and amicable resolution, Plaintiff Long reached out to Cedar's putative auction bidder, Senator Brian Dahle, explaining the situation and requesting that he forgo any rights to Cedar.

47.     In response to Plaintiff Long's inquiry, Senator Dahle's representatives informed her that he would not resist her efforts to save Cedar from slaughter.

48.     In further efforts to placate Defendant Shasta Fair Association representatives, on June 27, 2022, Plaintiff Long sent a formal letter in an effort to get them to understand, as human beings, her position ("Offer to Pay Damages"). Among other things, Plaintiffs' Offer to Pay Damages stated:

      a.     Cedar was Plaintiff E.L.'s goat;

b.      Plaintiff Long removed him because Plaintiff E.L. didn't want Cedar killed. She explained that watching Plaintiff E.L. "sob[] in the pen … was heartbreaking …. Our daughter lost three grandparents within the last year and our family has had so much heartbreak and sadness that I couldn't bear the thought of the following weeks of sadness after the slaughter [of Cedar] …. ";

c.      Plaintiff Long "communicated with ... Senator Brian Dahle's office" and he effectively waived his rights to Cedar, consenting that Plaintiffs could keep Cedar if they wanted; and

d.      Plaintiff Long offered " to pay back" the Shasta Fair Association "for [Cedar] and any other expenses."

49.     Defendants Macfarlane and the Shasta Fair Association were unmoved by Plaintiffs' pleas. Defendant Macfarlane, Defendant Shasta Fair Association, Defendant Silva, Defendant Muse, and Does disapproved of Plaintiffs' viewpoint that Cedar was more than cuts of meat and should not be killed.

50.     Over the next few days, Defendant Macfarlane continued to threaten Plaintiff Long with criminal charges.

51.     On June 28, 2022, Defendant Silva rejected Plaintiffs' Offer to Pay Damages, stating that Cedar had to be returned because, among other reasons, "the social media [response to Cedar] has been a negative experience for the fairgrounds as this has been all over Facebook and Instagram…." Defendants Silva, Macfarlane, Muse and Does disapproved of the sentiments expressed on social media.

52.     Yet, in further efforts at resolving the disputed contract, on June 29, 2022, Plaintiff Long sent another follow-up letter (erroneously dated June 28, 2022) to the Defendant Shasta Fair Association ("Notice of Civil Claim and Intention to Sue"). In the Notice of Civil Claim and Intention to Sue, Plaintiff Long asserted the following:

a.      Cedar was Plaintiff E.L.'s personal property, Defendant Shasta Fair Association was never the owner of Cedar, and that grand theft under Cal. Penal Code § 487a had no basis because "[i]t is an established principle of the law of theft that a bona fide belief

Advancing Law for Animals

of a right or claim to the property taken, even if mistaken, negates the element of felonious intent." *People v. Alvarado,* 133 Cal. App. 3d 1003, 1017 (1982);

    b.    Defendant Shasta Fair Association had no claim *even in civil court*, let alone criminal court, as there were no legal damages to claim. Further, cuts of meat are simply not "unique" property to justify any injunctive or turnover order;

    c.    Notwithstanding Defendant Shasta Fair Association's inability to claim damages in civil court, in a show of good faith and to resolve the parties' disputed contract, Plaintiff Long's June 28th letter again offered to "to reimburse any other reasonable costs associated with this event[]"; and

    d.    Notwithstanding the offer to settle the matter, Long further confirmed the civil nature of this dispute, stating that her letter was "in anticipation of litigation."

53.    Defendant Shasta Fair Association admitted it received Plaintiff Long's Notice of Civil Claim and Intention to Sue yet, despite the civil nature of this dispute, continued to demand Cedar and threaten criminal penalties. Upon information and belief, Defendants Silva, Macfarlane, and Does still refused to negotiate or assent to Plaintiffs' rights to have Cedar, including their right to disaffirm any existing contract, because they disapproved of Plaintiffs' belief that Cedar, despite being livestock, was a companion animal and did not deserve to be slaughtered.

54.    Accordingly, rather than pursue any rights which they may have had through the orderly process of filing a civil action (e.g., for writ of possession, etc.), Defendants Silva, Macfarlane, Does, Defendant Shasta Fair Association, and Defendant Muse elected to avoid the courts and instead resort to the strong-arm tactics involving law enforcement.

55.    Upon information and belief, Defendant Muse was aware that Plaintiffs asserted property interests in Cedar after removing him and offered to settle the matter through payment in full for any damages in connection with removing Cedar, but rejected Plaintiffs' rights and offer.

**Defendants' Criminal Investigation to Confiscate Cedar and Their Obligation to Retain Him**

56.    On or about Wednesday June 29, 2022, Shasta County Sheriff Michael Johnson directed Defendant Fernandez to investigate Plaintiff Long for felony theft. On that same day, Defendant

ADVANCING LAW FOR ANIMALS

Fernandez left an intimidating message on Plaintiff Long's voicemail, stating he had stopped by her house but she was not home.

57.    On or about June 29, 2022, Defendant Fernandez admittedly acquired copies of all Long's correspondence with Defendant Shasta Fair Association, including Plaintiff Long's Offer to Pay Damages and her Notice of Civil Claim and Intention to Sue. Accordingly, Fernandez was on notice as early as June 29, 2022 of Plaintiffs' civil contract dispute, Plaintiffs' asserted property rights in Cedar, Plaintiffs' offer to pay for any damages, and that Plaintiffs intended to sue in civil court.

58.    According to § 430 of the Shasta County Sheriff's Office Policy Manual, when handling a civil dispute, Sheriff's Officers "should encourage the involved parties to seek the assistance of resolution services or take the matter to the civil courts[]" and "must not become personally involved in disputes and shall at all times remain impartial."

59.    But Defendant Fernandez did not refer the matter to resolution services or civil court, nor did he remain impartial.

60.    Instead, Defendant Fernandez performed an inaccurate contractual analysis in his written investigative summary, falsely describing Defendant Muse as Cedar's "responsible owner" by virtue of Senator Dahle's bid.

61.    Defendant Fernandez engaged in this legally inaccurate analysis despite the fact, he, according to his own admission, had no training in contractual analysis, did not confer with an attorney, did not review the California Civil Code or California Commercial Code, did not know what provisions of law governed, did not know when or if transfer of title took place or how to determine whether it had, did not verify if the alleged buyer, Defendant Muse, or Defendant Shasta Fair Association performed their performance obligations, and was unaware of both a minor's right to disaffirm a contract and a contracting party's right to efficient breach.

62.    At the direction of Defendant Fernandez, on information and belief, on July 8, 2022, Defendant Ashbee provided a Statement of Probable Cause in application for a search warrant for a third party's business known as Bleating Hearts Farm and Sanctuary located at 1142 3rd Street, Napa, CA 94558, alleging that Plaintiff Long had committed grand theft under Cal. Penal Code § 487a and placed Cedar at that Napa location.

63.     At the time Defendant Ashbee drafted the Statement of Probable Cause, he had in his possession both Plaintiff Long's Offer to Pay Damages and her Notice of Civil Claim and Intention to Sue. By virtue of possessing both Plaintiff Long's Offer to Pay Damages and her Notice of Civil Claim and Intention to Sue, Defendant Ashbee was plainly aware and on notice that Plaintiffs were asserting possessory interests in Cedar and disputing any claims to possession made by Defendant Shasta Fair Association, including Plaintiffs' claims that Cedar was Plaintiff E.L.'s goat; that Senator Brian Dahle bid on Cedar but nevertheless consented to Plaintiff E.L. saving him from slaughter; and that Plaintiffs would pay for any and all costs associated with Plaintiff E.L.'s decision in order to resolve any disputes; and that Plaintiff Long was anticipating litigation. Further, Defendant Ashbee knew or should have known that Defendant Shasta Fair Association's All General Livestock Rules and Guidelines[4] and the State Fair Rules also deemed that Plaintiff E.L. was Cedar's owner and possessor at the time she disaffirmed the disputed contract.

64.     But Defendant Ashbee intentionally omitted Plaintiff Long's Notice of Civil Claim and Intention to Sue from the Statement of Probable Cause he drafted.

65.     Defendant Ashbee also intentionally omitted Plaintiff Long's Notice of Civil Claim and Intention to Sue from his correspondence with the District Attorney regarding this matter.

66.     Despite the obvious civil nature of the dispute, Defendant Ashbee nevertheless attested in his Statement of Probable Cause that "the seller of the goat, Jessica Long, took [Cedar] from the fairgrounds" in an act of grand theft and "drove [Cedar] to … Bleating Hearts Farm and Sanctuary[] in Napa …." None of those assertions were accurate, and there was no probable cause or reasonable basis to believe they were accurate.

67.     Defendant Ashbee further swore that "Bleating Hearts Farm created an Instagram post, admitting the goat was in their custody." Bleating Hearts Farm, however, never claimed, on Instagram or otherwise, that Cedar was in its custody and, in fact, Cedar *was never* in its custody. In fact, the same Instagram post, which Ashbee attached to his affidavit, stated Cedar was not at Bleating Hearts.

---

[4] SHASTA DIST. FAIR & EVENT CENTER, ALL GEN. LIVESTOCK RULES & GUIDELINES, at 51, *available at* https://www.shastadistrictfairandeventcenter.com/_files/ugd/11ce2e_3695bf89aa414e3c81204ea6b6fc71bf.pdf.

ADVANCING LAW FOR ANIMALS

68.   Ultimately, and as a consequence of Defendant Ashbee's omission to the magistrate that Cedar was the subject of a civil contractual dispute, a warrant for search and seizure of Cedar was issued on July 8, 2022 (the "Warrant").

69.   The Warrant expressly provided that it was issued because "there [was] probable cause to believe that the property … described herein (i.e., Cedar) … is lawfully seizable … in that … the property was stolen or embezzled."

70.   The Warrant expressly required Defendants to retain Cedar in their possession, in the event that he was located, specifically stating "And if you find [the described property, i.e., Cedar], to hold such property in your possession under California Penal Code § 1536 …."

71.   Cal. Penal Code § 1536 states "[a]ll property or things taken on a warrant *must be retained* by the officer in his custody …." (emphasis added).

72.   The Warrant further required that Defendants' retain Cedar as evidence *until the end of the criminal case against Plaintiff Long*, specifically providing:

> It is further ordered that upon adjudication of the case(s) against all defendant(s) in this action, including resolution of any and all appeals, and the written concurrence of the Shasta County [DA's] Office, the property be disposed of in accordance with the procedures set forth in California Penal Code § 1407-1422, without necessity of a further Court Order issued pursuant to California Penal Code § 1536.

73.   Similarly, Cal. Penal Code § 1523 requires that a "search warrant … directed to a peace officer, command[s] him or her to search for … a thing or things, or personal property, and, in the case of a thing or things or personal property, *bring the same before the magistrate*."   Retention by the officer is therefore required in order to bring the seized property before the magistrate.

74.   Finally, Cal. Penal Code § 1407 requires "[w]hen property, alleged to have been stolen or embezzled, comes into the custody of a peace officer, he shall hold it subject to the [due process protections and hearing requirements of § 1407 through § 1413]," all of which required a notice and opportunity to be heard before determining ownership. Because Cedar was allegedly "stolen or embezzled," as stated in the Warrant, Penal Code § 1407 required Defendants to maintain their possession of him until ownership was determined in accordance with the judicial process.

ADVANCING LAW FOR ANIMALS

**Defendants' Warrantless Seizure, Transfer, and Destruction**

**of Cedar Despite Notice of Plaintiffs' Rights**

75.     On July 8, 2022, at the taxpayers' expense, and to the exclusion of investigating legitimate crimes in Shasta County, Defendant Fernandez and Defendant Duncan drove at least 500 miles over approximately 10 hours to Napa County, and then Sonoma County, to seize a young girl's beloved goat for slaughter.

76.     At some point on that date, Defendant Fernandez and Defendant Duncan arrived at Bleating Hearts Farm & Sanctuary in Napa. However, Cedar was not, nor was he ever, present at that location.

77.     Upon information and belief, Defendant Fernandez and Defendant Duncan then proceeded from Bleating Hearts Farm and Sanctuary in Napa County to the Sonoma Farm in Sonoma County where they seized Cedar. Defendant Fernandez and Defendant Duncan had no warrant to search and seize Cedar at the Sonoma Farm.

78.     Thereafter, with notice of both the disputed contract, the civil nature of the controversy, and Plaintiffs' intention to sue, and in contravention of Defendants' duties under the U.S. Constitution and state law requiring them to retain custody of Cedar, Defendant Fernandez, and Defendant Duncan independently deemed Defendant Muse to be the owners of Cedar on behalf of 4-H. At around the same time, Defendant Muse, both individually and on behalf of 4-H, agreed/conspired with Defendant Macfarlane to seize Cedar from Defendants Fernandez and Duncan. Defendant Fernandez, in fact, testified that Defendant Muse instructed him and Detective Duncan to deliver Cedar to Defendant Macfarlane based on her (Muse's) asserted claim of ownership.

79.     Defendants made that independent determination of ownership *without judicial authorization and without providing Plaintiffs any notice and opportunity hearing by a neutral magistrate or judicial officer* as required by the due process provisions of the United States Constitution and/or state law.

80.     Defendants Fernandez and Duncan had no discretion to permanently deprive Plaintiffs' of their ownership and possessory rights in Cedar by delivering him for slaughter/destruction, as they were required by law to hold Cedar or deliver him to the Magistrate for

1    hearing by the Magistrate with notice to all interested parties. Cal. Penal Code §§ 1407, 1408, et. seq.

2    Further, their decision to do so was not a broad policy decision but a lower level decision.

3        81.    Further, the actions of Defendants Fernandez and Duncan in unilaterally deciding who

4    owned Cedar were not part, and were outside of, any investigation of Plaintiff Jessica Long's alleged

5    theft. Further, upon information and belief, Defendant Fernandez, Defendant Duncan, and Defendant

6    Ashbee applied for a sham criminal warrant with the purpose of using that criminal warrant to seize Cedar

7    not as evidence of a potential crime but rather for the sole purpose of circumventing the civil process and

8    unlawfully transferring Cedar to Defendant Macfarlane, thereby depriving Plaintiffs of their possessory

9    interests in Cedar and depriving Plaintiffs of any opportunity to contest Cedar's seizure and/or these

10    Defendant officials' actions in a civil court.

11        82.    Upon information and belief, Cedar was slaughtered by, or turned over for slaughter by,

12    Defendants Shasta Fair Association, Silva, Macfarlane, Muse, and other yet-to-be-identified John Doe

13    Defendants. And upon information and belief, those John Doe Defendants were employees or agents of

14    Defendant Shasta Fair Association, Defendant Muse, or 4-H and were thus fully apprised of the civil

15    nature of the dispute and Plaintiffs' possessory and ownership rights to Cedar.

16        83.    Upon information and belief, the actions of Defendants Silva, Macfarlane, Muse, and

17    Does, all under color of state law, in intentionally killing Cedar despite Plaintiffs' civil dispute, were

18    unlawfully motivated, in whole or in part, by their disagreement in Plaintiffs' viewpoint that Cedar should

19    not have been killed despite being livestock.

20        84.    Defendants Silva, McFarlane, Muse, and Defendant Does had no discretion to commit

21    the breaches above, as they were required, by law to allow Plaintiffs to take Cedar based on, among

22    other things, E.L.'s absolute statutory right under Family Code § 6710 to disaffirm any contract of

23    sale that may have existed. Further, the decision to slaughter Cedar was not a broad based policy

24    decision.

25        85.    Further, the actions of those Defendants, in having Cedar destroyed presumably late

26    at night when the sheriffs delivered him, were not part any investigation or administrative or judicial

27    proceeding.

28

86.     All Defendants and the yet-to-be-identified John Doe Defendants knew or should have known that neither Defendant Shasta Fair Association, its employees and agents, any bidder at the junior livestock auction, or 4-H had any rights to Cedar as, among other reasons, (1) Plaintiff E.L. had an absolute statutory right to keep Cedar and disaffirm any contract of sale for same; (2) the Offer to Pay Damages letter on June 27th attached to the Warrant plainly stated that E.L., a minor, owned the goat, that the bidder waived rights to Cedar, and that Plaintiffs offered to pay for any costs associated with Cedar; (3) the Notice of Civil Claim and Intention to Sue letter of June 29th again claimed property rights in Cedar and stated Plaintiffs intended to bring a civil action; and (4) Plaintiffs' had received no consideration for the disaffirmed contract.

87.     At bare minimum, all Defendants knew there was a bona fide dispute over Cedar and his ownership that was civil in nature, governed by civil law, not the Penal Code.

88.     The acts of Defendants as alleged above constituted violations of Plaintiffs' established constitutional rights as well state constitutional rights and torts. Defendants' conduct in intentionally seizing and immediately destroying all of individual Plaintiffs' personal property rights in Cedar was inconsistent with each individual Plaintiffs' constitutional rights and rights under state law.

89.     As a direct and proximate result of the Defendants' unconstitutional and unlawful conduct, individual Plaintiffs have suffered, and will continue to suffer damages, including but not limited to: (1) general damages, and (2) the deprivation and destruction of Cedar, Plaintiffs' property and a pet with whom Plaintiffs' had bonded emotionally.

**PLAINTIFFS COMPLIED WITH THE CALIFORNIA GOVERNMENT CLAIMS ACT**

90.     On or about October 24, 2022, and within the time prescribed by law under the California Government Claims Act, Plaintiffs served a claim for damages to each of the following: the Shasta County; Shasta Sheriff's Department; the Shasta Fair Association; and the Department of General Services for the State of California.

91.     Plaintiffs received rejections of their claims in writing from the Shasta County and the Shasta Sheriff's Department on or about December 9, 2022 and December 15, 2022..

92.     Plaintiffs received no response to their claims from either the Shasta Fair Association or the Department of General Services for the State of California.

## FIRST CAUSE OF ACTION

### Right to Be Secure From Unreasonable Searches and Seizures

### Fourth Amendment to U.S. Constitution (42 U.S.C. § 1983)

### (Against Defendants Ashbee, Fernandez, and Duncan)

93.     Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

94.     Defendants Ashbee, Fernandez, and Duncan violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures of their property by unreasonably searching for Cedar when the evidence they possessed showed no crime had been committed as a matter of law and/or fact, no probable cause existed as a matter of law and/or fact, and by confiscating Plaintiffs' property on or about July 8, 2022, without a warrant and then disposing of and destroying Plaintiffs' property interests in Cedar.

95.     In so doing, Defendants Ashbee, Fernandez, and Duncan were acting under color of state law.

96.     As a direct and proximate consequence of the acts of Defendants Ashbee, Fernandez, and Duncan, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

97.     In doing the acts of which Plaintiffs complain, Defendants Ashbee, Fernandez, and Duncan willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

## SECOND CAUSE OF ACTION

### Denial of Constitutional Right of Due Process of Law

### Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983)

ADVANCING LAW FOR ANIMALS

**(Against Defendants Ashbee, Fernandez, and Duncan)**

98.     Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

99.     Defendants Ashbee, Fernandez, and Duncan violated Plaintiffs' Fourteenth Amendment rights under the U.S. Constitution and 42 U.S.C. § 1983 to due process of law by confiscating Plaintiffs' property on or about July 8, 2022, and then disposing of and destroying Plaintiffs' property interests' in Cedar without notice or hearing.

100.     Defendants Ashbee, Fernandez, and Duncan had a constitutional duty to provide the individual Plaintiffs with notice that their property and property interests were at risk of being seized and/or destroyed and an opportunity to be heard. Defendants failed to do so. Further, they did not preserve the individual Plaintiffs' property or provide a means of reclaiming it, thereby stripping individual Plaintiffs of any meaningful opportunity to contest the deprivation, and apparent death, of Cedar.

101.     Among the due process protections Defendants Ashbee, Fernandez, and Duncan failed to provide Plaintiffs, they were required to hold the property pursuant to Cal. Penal Code §§ 1407, et al., and § 1523, et al., for notice and hearing by the court to formally determine Plaintiffs' ownership.

102.     In denying Plaintiffs their due process rights, Defendants Ashbee, Fernandez, and Duncan were acting or purporting to act in the performance of their official duties.

103.     As a direct and proximate consequence of the acts of Defendants Ashbee, Fernandez, and Duncan, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

104.     In doing the acts of which Plaintiffs complain, Defendants Ashbee, Fernandez, and Duncan willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

## THIRD CAUSE OF ACTION

**Right to Be Secure From Unreasonable Searches and Seizures**

**Fourth Amendment to U.S. Constitution (42 U.S.C. § 1983)**

**(Against Silva, Macfarlane, Muse, in their individual capacities, and Doe Defendants)**

105.    Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

106.    Defendants Silva, Macfarlane, Muse, and Doe Defendants, who are, on information and belief, employees and agents of Defendant Shasta District Association and 4-H, violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures of their property by seizing and confiscating Plaintiffs' property on or about July 8, 2022, without a warrant, and then disposing of and destroying Plaintiffs' property interests in Cedar.

107.    In so doing, Defendants Silva, Macfarlane, Muse and Doe Defendants were acting under color of state law. Defendants Silva and Macfarlane were acting under color of state law based on their positions at the Defendant Shasta Fair Association. Defendant Muse was acting under color of state law based on her position with 4-H and Defendant Shasta Fair Association.

108.    Additionally, both individually and on behalf of 4-H, Muse agreed with Macfarlane that he would seize Cedar on or about July 8, 2022, in violation of Plaintiffs' Fourth Amendment rights, they were both willful participants in that conspiracy, and that conspiracy did, in fact, result in the actual denial of Plaintiffs' Fourth Amendment rights.  Defendant Fernandez, in fact, testified that Defendant Muse instructed him and Detective Duncan to deliver Cedar to Defendant Macfarlane based on her (Muse's) asserted claim of ownership.

109.    As a direct and proximate consequence of the acts of these Doe Defendants, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

110.    In doing the acts of which Plaintiffs complain, these Doe Defendants willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

**ADVANCING LAW FOR ANIMALS**

**FOURTH CAUSE OF ACTION**

**Denial of Constitutional Right of Due Process of Law**

**Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983)**

**(Against the Silva, Macfarlane, Muse, in their individual capacities, and Doe Defendants)**

111.    Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

112.    Defendants Silva, Macfarlane, Muse, and Doe Defendants, who are, on information and belief, employees and agents of Defendant Shasta District Association and 4-H, once they came into possession of Plaintiffs' property on about July 8, 2022, had a constitutional duty to provide the individual Plaintiffs with notice that their property and property interests were at risk of being seized and/or destroyed and an opportunity to be heard. Defendants failed to do so. Further, they did not preserve the Plaintiffs' property or provide a means of reclaiming it, thereby stripping individual Plaintiffs of any meaningful opportunity to contest the deprivation, and apparent death, of Cedar.

113.    In denying Plaintiffs their due process rights, Doe Defendants were acting or purporting to act in the performance of their official duties. Defendants Silva and Macfarlane were acting under color of law based on their positions at Defendant Shasta Fair Association. Defendant Muse was acting under color of law based on her position with 4-H.

114.    Additionally, both individually and/or under color of law, Defendant Muse agreed with Defendant Macfarlane that, upon seizing and/or receiving Cedar, they would violate Plaintiffs' Due Process rights under the Fourteenth Amendment by destroying/slaughtering Cedar, and thus destroying all of Plaintiffs' property interests in him, without any notice and an opportunity to be heard. Defendants Muse and Macfarlane were both willful participants in that conspiracy, and that conspiracy did, in fact, result in the actual denial of Plaintiffs' Fourteenth Amendment rights.

115.    As a direct and proximate consequence of the acts of Doe Defendants, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

116.    In doing the acts of which Plaintiffs complain, Doe Defendants willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and

oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

**FIFTH CAUSE OF ACTION**

**Denial of Constitutional Right against Unreasonable Search and Seizure**

**California Constitution, Article 1, § 13**

**(Against Defendants Shasta County, Shasta Sheriff's Department, Fernandez, and Duncan)**

117.   Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

118.   Defendants Shasta County, Shasta Sheriff's Department, Fernandez, and Duncan's actions as described above violate Plaintiffs' right to be free from unreasonable searches and seizures under Article 1, § 13 of the California Constitution by unreasonably searching for Cedar when the evidence they possessed showed no crime had been committed as a matter of law and/or fact, and  by confiscating Plaintiffs' property on or about July 8, 2022, without a warrant and then disposing of and destroying Plaintiffs' property interests in Cedar.

119.   These unlawful actions were done with intent to deprive individual Plaintiffs of their right to be secure in their property.

120.   As a direct and proximate cause of these unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to damages.

121.   In doing the acts of which Plaintiffs complain, Defendants Shasta County, Shasta Sheriff's Department, Fernandez, and Duncan willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

**SIXTH CAUSE OF ACTION**

**Denial of Constitutional Right to Due Process of Law**

**California Constitution, Article 1, § 7(a)**

**(Against Defendants Shasta County, Shasta Sheriff's Department, Fernandez, and Duncan)**

122.   Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

ADVANCING LAW FOR ANIMALS

123.    Defendants Shasta County, Shasta Sheriff's Department, Fernandez, and Duncan's above actions violated Plaintiffs' right to due process of law under the Article 1, § 7(A)) of the California Constitution.

124.    Defendants Fernandez and Duncan had a duty to provide Plaintiffs with notice that their property (Cedar) was at risk of being seized and/or destroyed and must act to preserve the property or provide a means of reclaiming it in a timely manner. They did not do so here. Further, they did not preserve Cedar or provide Plaintiffs any means of reclaiming him, thereby stripping Plaintiffs of any meaningful opportunity to contest his deprivation.

125.    Among the due process protections Defendants Shasta County, Shasta Sheriff's Department, Fernandez, and Duncan failed to provide Plaintiffs, they were required to hold the property pursuant to Cal. Penal Code §§ 1407, et al., and § 1523, et al., for notice and hearing by the court to formally determine Plaintiffs' ownership.

126.    As a direct and proximate cause of the acts of Defendants Shasta County, Shasta Sheriff's Department, Fernandez, and Duncan, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

127.    In doing the acts of which Plaintiffs complain, Defendants willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

## SEVENTH CAUSE OF ACTION

### Denial of Constitutional Right against Unreasonable Search and Seizure

### California Constitution, Article 1, § 13

### (Against Shasta Fair Association and Does)

128.    Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

129.    Defendants Shasta Fair Association and Does' above actions violated Plaintiffs' right to be free from unreasonable searches and seizures under Article 1, § 13 of the California Constitution

by seizing and confiscating Plaintiffs' property on or about July 8, 2022, without a warrant and then disposing of and destroying Plaintiffs' property interests in Cedar.

130.    These unlawful actions were done with intent to deprive individual Plaintiffs of their right to be secure in their property.

131.    As a direct and proximate cause of these unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to damages.

132.    In doing the acts of which Plaintiffs complain, Shasta Fair Association and Does willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

133.    Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

**EIGHTH CAUSE OF ACTION**

**Denial of Constitutional Right to Due Process of Law**

**California Constitution, Article 1, § 7(a)**

**(Against Shasta Fair Association and Does)**

134.    Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

135.    Defendants Shasta Fair Association and Does' above actions violated Plaintiffs' right to due process of law under the Article 1, § 7(a) of the California Constitution

136.    Defendant Shasta Fair Association and Doe Defendants, who are, on information and belief, employees and agents of the Shasta District Association, once they came into possession of Plaintiffs' property on about July 8, 2022, had a constitutional duty to provide the individual Plaintiffs with notice that their property and property interests were at risk of being seized and/or destroyed and an opportunity to be heard. Defendants Shasta Fair Association and Does failed to do so. Further, they did not preserve the Plaintiffs' property or provide a means of reclaiming it, thereby stripping individual Plaintiffs of any meaningful opportunity to contest the deprivation, and apparent death, of Cedar.

ADVANCING LAW FOR ANIMALS

137.    As a direct and proximate cause of the acts of Defendant Shasta Fair Association and Doe Defendants, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

138.    In doing the acts of which Plaintiffs complain, Doe Defendants willfully, intentionally, or recklessly violated Plaintiffs' civil rights. Their actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

### NINTH CAUSE OF ACTION

#### Conversion

**(Against Shasta County, Shasta Sheriff's Department, Fernandez, Duncan, and Does)**

139.    Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

140.    Plaintiffs owned and/or had a right to possess Cedar.

141.    Defendants Fernandez and Duncan took possession of Cedar, prevented Plaintiffs from accessing him by not even notifying Plaintiffs they took him, and then turned him over to 3rd parties for destruction.

142.    Defendants Fernandez and Duncan had no discretion to commit such acts. Such outside of, any investigation of Plaintiff Jessica Long's alleged theft.

143.    Plaintiffs did not consent to any of the foregoing.

144.    Shasta County and the Shasta Sheriff's Department are liable for the actions of these Defendants Fernandez and Duncan, which occurred within the scope of their employment. Cal. Gov. Code § 815.2.

145.    Plaintiffs were harmed as a result and Defendants' conduct was a substantial factor in causing that harm.

146.    Defendants Fernandez and Duncan's actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

ADVANCING LAW FOR ANIMALS

**TENTH CAUSE OF ACTION**

**Conversion**

**(Against Shasta Fair Association and Does)**

147.    Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

148.    Plaintiffs owned and/or had a right to possess Cedar.

149.    Defendant Does, who upon information and belief were employees/agents of Defendant Shasta Fair Association, took possession of Cedar on July 8, 2022, prevented Plaintiffs from accessing him by not even notifying Plaintiffs they took him, and then had him destroyed/slaughtered.

150.    Defendant Does had no discretion to commit such acts and such acts were not part of any investigation or administrative or judicial proceeding.

151.    Plaintiffs did not consent to any of the foregoing.

152.    Defendant Shasta Fair Association is liable for the actions of its Doe employees, as they occurred within the scope of their employment. Cal. Gov. Code § 815.2.

153.    Plaintiffs were harmed as a result and Defendants' conduct was a substantial factor in causing that harm.

154.    Defendant Shasta Fair Association's Doe employees' actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

**ELEVENTH CAUSE OF ACTION**

**Negligence**

**(Against Shasta County, Sheriff's Department, Fernandez, Duncan, and Does)**

155.    Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

156.    Defendants Fernandez and Duncan owed Plaintiffs a duty of care to abstain from injuring Plaintiffs, their property, or infringing upon any of their rights.

157.     Defendants Fernandez and Duncan breached that duty by, *inter alia*, turning over Cedar for slaughter after being on notice that Plaintiffs had property rights in him. They further breached that duty by not holding onto to Cedar to allow his ownership to be determined by noticed hearing, as their warrant plainly directed and as Penal Code § 1407, et seq. expressly requires.

158.     These breaches infringed not only with Plaintiffs' property interests but also their right to be heard.

159.     Defendants Fernandez and Duncan had no discretion to commit such acts. Such actions were outside of any investigation of Plaintiff Jessica Long's alleged theft.

160.     Such breaches proximately and actually caused harm to Plaintiffs.

161.     Shasta County and the Shasta Sheriff's Department are liable for the actions of these Defendants Fernandez and Duncan, which occurred within the scope of their employment. Cal. Gov. Code § 815.2.

162.     Defendants are liable for such damages in amounts to be proven at trial.

## TWELFTH CAUSE OF ACTION

### Negligence

### (Against Shasta Fair Association and Does)

163.     Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

164.     Defendant Shasta Fair Association owed Plaintiffs a duty of care to abstain from injuring Plaintiffs, their property, or infringing upon any of his or her rights.

165.     Defendant Shasta Fair Association and Defendant Does breached that duty by, *inter alia*, causing Cedar's death after being on notice that Plaintiffs had property rights in him and denying Plaintiffs' rights to cancel any contract of sale under Family Code § 6710 and their rights to efficient breach.

166.     Defendant Shasta Fair Association, acting through its employees and Does, had no discretion to commit such acts and such acts were not part any investigation or administrative or judicial proceeding.

ADVANCING LAW FOR ANIMALS

167.   Such breaches proximately and actually caused harm to Plaintiffs.

168.   Defendant Shasta Fair Association is liable for the actions of its employees and Does, as they occurred within the scope of their employment. Cal. Gov. Code § 815.2.

169.   Defendants are liable for such damages in amounts to be proven at trial.

**THIRTEENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(Against Shasta Fair Association and Does)**

170.   Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

171.   Defendant Shasta Fair Association, and Does, intended to cause Plaintiffs, and/or acted with reckless disregard of the probability that Plaintiffs would suffer, emotional distress by killing and/or facilitating Cedar's death. Defendants' actions as described herein amount to extreme and outrageous conduct under California law. These Defendants all had full notice of Plaintiffs' emotional bond to Cedar, they knew of her minority, they knew Plaintiffs disputed their obligations, if any, under any alleged contract of sale. Yet Defendants and Does knowingly and intentionally killed Cedar in contravention of Plaintiffs' rights knowing it would emotionally damage E.L., particularly as a minor.

172.   Plaintiffs in fact suffered severe emotional distress.

173.   Defendant Shasta Fair Association and Does had no discretion to commit such acts and such acts were not part any investigation or administrative or judicial proceeding.

174.   Defendant Shasta Fair Association is liable for the actions of its employees and Does, as they occurred within the scope of their employment. Cal. Gov. Code § 815.2.

175.   Defendant Shasta Fair Association and Defendant Does' conduct was a substantial factor in causing Plaintiffs' emotional distress. Such Defendants' actions were willful, wanton, malicious, and oppressive, and, accordingly, Plaintiffs are entitled to punitive damages.

ADVANCING LAW FOR ANIMALS

**FOURTEENTH CAUSE OF ACTION**

**Declaratory Relief**

**(Against Silva and Macfarlane in their official capacities, Shasta Fair Association, and Does)**

176.     Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

177.     E.L. desires to participate in animal husbandry education through 4-H and/or state fair activities in the future.

178.     E.L. contends she had the right pursuant to Family Code § 6710, which provides that "a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards," to disaffirm any contract of sale at the junior livestock auction held by the Shasta Fair Association. Defendants Silva, Macfarlane, Shasta Fair Association, and Does, on the other hand, believes Plaintiffs have no such rights.

179.     An actual, present, and justifiable controversy has arisen between the Defendants Silva, Macfarlane, Shasta Fair Association, and Does concerning E.L.'s rights to disaffirm any contract(s) of sale of any such animals

180.     Plaintiffs seek a declaration from this Court that E.L. may, during minority, disaffirm any contract or obligation to participate in any livestock auction she enters at Shasta Fair Association and may also disaffirm any contract or obligation to sell any livestock she owns through such an auction.

**FIFTEENTH CAUSE OF ACTION**

**First Amendment Viewpoint Discrimination**

**First Amendment to U.S. Constitution (42 U.S.C. § 1983)**

**(Against Silva, MacFarlane, in their individual and official capacities, and Muse, in her individual capacity only, and Does)**

181.     Plaintiffs refer to and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

182.     Defendants Silva, McFarlane, Muse, and Does deprived, and are continuing to deprive, Plaintiffs of the rights secured to them by the United States Constitution

ADVANCING LAW FOR ANIMALS

183.    Plaintiffs expressed a view that Cedar was more than cuts of meat and deserved to live. Their view, and the narrative of the facts of this case, were expressed on social media. Plaintiffs' view was contrary to Defendant Shasta Fair Association's preferred view that livestock raised for meat must be slaughtered for meat.

184.    Because Plaintiffs' viewpoint was that Cedar should not be slaughtered, and because Plaintiffs' view was expressed online which resulted in significant negative attention to Shasta Fair Association, Defendants Silva, McFarlane, Muse, and Does ignored the rules of the fair calling for removal from the Fairgrounds, with livestock, for nonconformance with standards of conduct and/or bypassed the applicable and orderly process of filing a civil action to determine ownership, and, instead, had Cedar slaughtered upon repossessing him.

185.    The  actions of Defendants Silva, McFarlane, Muse, Does are, in whole or in part, unlawfully motivated by their disagreement with the Plaintiffs' viewpoint that Cedar was a companion animal who should not be slaughtered.

186.    Had Plaintiff expressed a different rationale and viewpoint in support of their removal of Cedar, one which led the Shasta Fair Association to believe that Plaintiffs' agreed that livestock such as Cedar should be killed, the Shasta Fair Association would not have killed Cedar with no notice or legal procedure directed against Plaintiffs.

187.    In depriving Plaintiffs of these rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

188.    Plaintiffs further seek a declaration from the Court that Defendants may not retaliate or otherwise discriminate against E.L.'s free expression or viewpoint with respect to livestock in future livestock activities at Shasta Fair Association.


## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, jointly and severally, as follows:

A.    For an order awarding Plaintiffs actual damages according to proof;

B.    For an order awarding Plaintiffs general and special damages according to proof;

ADVANCING LAW FOR ANIMALS

C.      For an order awarding punitive damages;

D.      For a declaration that E.L. may, during minority, disaffirm any contract or obligation to participate in any livestock auction she enters at Shasta Fair Association and may also disaffirm any contract or obligation to sell any livestock she owns through such an auction;

E.      For a declaration that Defendants Silva, MacFarlane, and Does may not retaliate or otherwise discriminate against E.L.'s free expression or viewpoint with respect to livestock in future livestock activities.

F.      For an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

G.      For any such further relief as may be permitted by law and/or that this Court deems equitable, just, and proper.

                                        Respectfully submitted,

                                        **ADVANCING LAW FOR ANIMALS**

Dated:  October 7, 2023                 By:___/S/Ryan Gordon_____
                                        Ryan Gordon
                                        Vanessa Shakib
                                        Attorneys for Plaintiffs