RYAN R. GORDON (SBN 278414)
VANESSA T. SHAKIB (SBN 287339)
**ADVANCING LAW FOR ANIMALS**
407 N. Pacific Coast Highway #267
Redondo Beach, CA 90277
Tel: (202) 996-8389
rgordon@advancinglawforanimals.org
vshakib@advancinglawforanimals.org

DANIEL J. KOLDE, ESQ.
**LAW OFFICES OF DANIEL J. KOLDE**
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel: 636.675.5383
Email: daniel.kolde.law@gmail.com
(*pro hac vice application to be filed*)

Attorneys for Plaintiffs

**ADVANCING LAW FOR ANIMALS**

**UNITED STATES DISTRICT COURT**

**EASTERN  DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>LIEUTENANT JERRY FERNANDEZ, in his individual capacity; DETECTIVE JACOB DUNCAN, in his individual capacity; DETECTIVE JEREMY ASHBEE, in his individual capacity; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association; COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual and official capacity; BJ MACFARLANE, in his individual and official capacity; KATHIE MUSE, in her individual and official capacity, and DOES 1 through 10, | Case No. 2:22-cv-01527-DAD-AC<br><br>**COUNTER-DEFENDANT JESSICA LONG'S NOTICE OF MOTION AND ANTI-SLAPP MOTION TO STRIKE COUNTERCLAIMS OF MELANIE SILVA AND B.J. MACFARLANE PURSUANT TO CAL. CIV. PROC. CODE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Counter-Defendant's Request for Judicial Notice and Declarations of Vanessa Shakib, Ryan Gordon, and Jessica Long filed concurrently]<br><br>Date: February 20, 2024<br>Time: 1:30 pm<br>Courtroom: 4, 15th Floor<br><br>Trial Date: February 10, 2025<br><br>Action Filed: August 31, 2022 |

**TO THE COURT, THE PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 20, 2024, at 1:30 pm in Courtroom 4 of the United States District Court for the Eastern District of California, located on the 15th Floor in the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Plaintiff and Counter-Defendant Jessica Long ("Mrs. Long") will and does move this Court, pursuant to California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute"), for an order striking all counterclaims or, alternatively, the individual counterclaims, contained in Melanie Silva and B.J. Macfarlane's Answer, Affirmative Defenses, and Counterclaim to Second Amended Complaint ("Counterclaim"), ECF No. 29. Defendants and Counterclaimants Melanie Silva and B.J. Macfarlane are collectively referred to herein as "Government Employees."

The Government Employees' counterclaims (1) arise from protected activity within the meaning of § 425.16(e), as demonstrated by their own allegations and judicially noticeable evidence, and (2) Government Employees cannot establish a probability of prevailing on any of the counterclaims, as they all fail as a matter of law based on their own allegations and judicially noticeable evidence. § 425.16(b). Alternatively, Government Employees' counterclaims (1) arise from protected activity within the meaning of § 425.16(e) based on their own allegations, judicially noticeable evidence, and/or extrinsic evidence, and (2) the Government Employees cannot establish a probability of prevailing on any of the counterclaims, as they all fail as a matter of law and/or fact based on their own allegations, judicially noticeable evidence, and/or extrinsic evidence. *Gunn v. Drage*, 65 F.4th 1109 (9th Cir. 2023) (finding an anti-SLAPP can be granted on purely legal arguments or on extrinsic evidence as well). In addition, pursuant to § 425.16(c), Mrs. Long requests this Court award her attorneys' fees and costs for the litigation of this motion.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the concurrently filed  Request for Judicial Notice ("RJN"), the concurrently filed Declaration of Jessica Long ("Long Decl."), the concurrently filed Declaration of Ryan Gordon ("Gordon Decl.), the concurrently filed Declaration of Vanessa Shakib ("Shakib Decl."), all additional matters of which this Court must or may take judicial notice, all pleadings and records on

ADVANCING LAW FOR ANIMALS

file in this action, and on such further authority, evidence, or argument as may be presented at or before the hearing on this motion.

Counsel for Mrs. Long certify the parties engaged in pre-filing meet and confer efforts. Correspondence exchanged in furtherance of these efforts is reflected and attached in ¶¶ 52-53, Exhibits 12-14 to concurrently filed Declaration of Vanessa Shakib, and ¶¶ 25-26, Exhibit 26 to the concurrently filed Declaration of Ryan Gordon.

                                     **ADVANCING LAW FOR ANIMALS**

Dated:  December 26, 2023          By:____/s/Ryan Gordon_____
                                   Ryan Gordon
                                   Vanessa Shakib
                                   Attorneys for Plaintiffs

**ADVANCING LAW FOR ANIMALS**

**TABLE OF CONTENTS**

I.  Introduction ................................................................................................ 1

II.  Background ................................................................................................ 1

    A.  Mrs. Long and E.L. Purchased Cedar for 4-H Program and 2022 Shasta Fair ........... 1

    B.  Mrs. Long Entered Youth Livestock Auction Online on Behalf of Minor, E.L........... 2

    C.  California State Fair Rules and Exhibitor Handbook Supplement and, in Some Cases Supplant, Provisions in Online Entry Form..................................................... 2

    D.  Following State Senator's Bid, Mrs. Long and E.L. Withdrew Cedar from Auction and Offered to Pay for Any Damages............................................................ 3

    E.  As Government Employees Threatened Mrs. Long with a Felony, Instagram Post to Save Cedar's Life Went Viral ...................................................................... 4

    F.  Shasta County Sheriff's Officers Violated Due Process to Seize Cedar and Ensure His Slaughter After Mrs. Long Submitted Notice of Civil Claim and Intention to Sue ................................................................................................. 5

    G.  Government Employees Held Cedar for Weeks Prior to Slaughter at Direction of Sheriff and District Attorney, Despite Repeated Contact by Mrs. Long's Counsel .............................................................................................................. 6

    H.  Underlying Civil Rights Litigation, Mrs. Long's Indemnification Denial, and Government Employees' Countersuit All Attract Viral Media Attention and National Public Interest .............................................................................. 7

III.  Legal Standard................................................................................................ 9

IV.  The Anti-SLAPP Statute Applies Because the Counterclaims are Based on the Underlying Civil Rights Litigation, Mrs. Long's Indemnification Denial, and Issues of Public Interest.......................................................................................... 10

    A.  Counterclaims for Indemnity and Contribution Trigger the Anti-SLAPP ................. 10

    B.  Mrs. Long's Actions in Furtherance of the Public Interest Trigger the Anti-SLAPP ............................................................................................................ 12

V.  Government Employees Cannot Demonstrate Probability of Success on the Merits ........... 16

    A.  Every Counterclaim Fails as a Matter Of Law ............................................... 16

    B.  The Express Indemnity Counterclaim Fails for Additional Reasons......................... 17

        1.  The Local Indemnity Provision is Void....................................................... 18

2. The Local Indemnity Provision Only Covers Third Party Claims and E.L. is Not a Third Party ..................................................................... 18

3. The Local Indemnity Provision Does Not Apply Because the Government Employees' Liability is Based on Active Negligence ............... 21

4. The Local Indemnity Provision is an Unenforceable Exculpatory Clause ...................................................................................................... 22

5. The Local Indemnity Provision is Limited in Scope .................................... 23

6. The Local Indemnity Provision is Unconscionable in this Case ................... 24

C. Equitable Indemnity, Negligence, and Declaratory Relief Counterclaims Fail for Additional Reasons ............................................................................................. 25

VI. Conclusion ................................................................................................................. 25

ADVANCING LAW FOR ANIMALS

# TABLE OF AUTHORITIES

**ADVANCING LAW FOR ANIMALS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Federal Cases**

*Acri v. Varian Ass'ns, Inc.*,
    114 F.3d 999 (9th Cir. 1997)…………………………………………………….16

*Allen v. City of Los Angeles*,
    92 F.3d 842 (9th Cir. 1996) …………………………………………………….16

*AliveCor, Inc. v. Apple Inc.*,
    603 F.Supp.3d 851 (N.D. Cal. 2022) ………………………………………….19

*Anderson v. Local Union No. 3, Int'l Brotherhood of Elec. Workers*,
    582 F.Supp. 627 (S.D.N.Y. 1984) …………………………………………….17

*Baldwin Builders v. Coast Plastering Corp.*,
    125 Cal.App.4th 1339 (2005) ………………………………………………….19

*Bozzio v. EMI Group Ltd.*,
    811 F.3d 1144 (9th Cir. 2016) …………………………………………………21

*Brady v. United States*,
    397 U.S. 742 (1970) ……………………………………………………………24

*Building Maintenance Service Co. v. AIL Systems, Inc.*,
    55 Cal.App.4th 1014 (1997) …………………………………………………..19

*Carr Business Enterprises, Inc. v. City of Chowchilla*,
    166 Cal.App.4th 14 (2008) …………………………..………………………..19

*Crews v. County of Nassau*,
    612 F.Supp.2d 199 (E.D.N.Y.2009) …………………………………………..17

*Daniels v. Williams*,
    474 U.S. 327 (1986) ……………………………………………………………22

*Davidson v. Cannon*,
    474 U.S. 344 (1986) ……………………………………………..……………..22

*Frantz v. City of Pontiac*,
    432 F.Supp.2d 717 (E.D. Mich. 2006) ………………………………………..17

*Gray v. City of Kansas City*,
    603 F.Supp. 872 (D.Kan. 1985) ………………………………………………17

*Gunn v. Drage*,
    65 F.4th 1109 (9th Cir. 2023) …..…………………………………………..….ii

*Hathaway Dinwiddie Const. Co. v. United Air Lines, Inc.*,
    50 F. App'x 817 (9th Cir. 2002) ………………………………………………20

*Hayden v. Hevesi*,
    2007 WL 496369 (W.D.N.Y. 2007) …………………………………………..17

*Hepburn ex rel. Hepburn v. Athelas Institute, Inc.*,
    324 F.Supp.2d 752 (D. Md. 2004) …………………………………………….17

ANTI-SLAPP MOTION TO STRIKE COUNTERCLAIMS

*Hoa v. Riley,*
    78 F.Supp.3d 1138 (N.D. Cal. 2015) ……………………………………………………16

*Holmes v. Columbia Pictures Corp.,*
    109 F.Supp. 327 (S.D. Cal. 1953)……………………………………………………21

*I.B. by and through Bohannon v. Facebook, Inc.,*
    82 F.Supp.3d 1115 (N.D.Cal.2015)……………………………………………………15

*Jackson v. Hoffman,*
    1994 WL 114007 (D.Kan. 1994)……………………………...…………………………17

*Katka v. Mills,*
    422 F.Supp.2d 1304 (N.D. Ga. 2006)…………………………………………………17

*Koch v. Mirza,*
    869 F.Supp. 1031 (W.D.N.Y.1994)……………………………………………………17

*Mangiaracina v. Penzone,*
    849 F.3d 1191 (9th Cir. 2017)……………………………………………………………22

*Meininger v. Larwin–Northern California, Inc.,*
    63 Cal.App.3d 82 (1976)………………………………………………………………19

*Melson v. Kroger Co.,*
    578 F.Supp. 691 (S.D.Ohio 1983)……………………………………………………17

*M.O.C.H.A. Society, Inc. v. City of Buffalo,*
    272 F.Supp.2d 217 (W.D.N.Y.2003)…………………………………………………17

*Moor v. County of Alameda,*
    411 U.S. 693 (1973)……………………………………………………………………17

*Nelson v. City of Davis,*
    709 F.Supp.2d 978 (E.D. Cal. 2010)…………………………………………………22

*Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,*
    451 U.S. 77 (1981)……………………………………………...………………………17

*Rainey v. County of San Diego,*
    2023 WL 2604815 (S.D. Cal. 2023)…………………………………………………16, 17

*R.H. v. Los Gatos Union School Dist.,*
    33 F.Supp.3d 1138 (N.D. Cal. 2014)………………………...…………………………21

*Stanislaus Towing & Recovery Services, Inc. v. City of Modesto,*
    2012 WL 1898917 (E.D. Cal. 2012)…………………………………………………21

*Stoddard-Nunez v. City of Hayward,*
    2016 WL 1588271 (N.D. Cal. 2016)…………………………………………………16

*Texas Industries, Inc. v. Radcliff Materials, Inc.,*
    451 U.S. 630 (1981)……………………………………………………………………17

*TCI Cablevision, Inc. v. City of Jefferson,*
    604 F.Supp. 845 (W.D.Mo.1984)……………………………………………………17

ADVANCING LAW FOR ANIMALS

*Tyler v. Travelers Commercial Insurance Company,*
    499 F.Supp.3d 693 (N.D. Cal. 2020)……………………………………………25

*Valdez v. City of Farmington,*
    580 F.Supp.19 (D.N.M. 1984)……………………………………………………17

*Westlands Water Dist. v. Patterson,*
    864 F.Supp. 1536 (E.D. Cal. 1994)……………………………………………21

*Will v. Michigan Dept. of State Police,*
    491 U.S. 58 (1989)………………………………………………………………16

*Wright v. Reynolds,*
    703 F.Supp. 583 (N.D. Tex. 1988)……………………………………………17

**California Cases**

*Aaris v. Las Virgenes Unified School Dist.,*
    64 Cal.App.4th 1112 (1998)……………………………………………………21

*Alki Partners, LP v. DB Fund Servs., LLC,*
    4 Cal.App. 5th 574 (2016)……………………………………………………18, 19

*American Motorcycle Association v. Superior Court,*
    20 Cal.3d 578 (1978)……………………………………………………………17

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*
    214 Cal.App.3d 1 (1989)………………………………………………………20

*Centex Golden Constr. Co. v. Dale Tile Co.,*
    78 Cal.App.4th 992 (2000)……………………………………………………23

*Church of Scientology v. Wollersheim,*
    42 Cal.App.4th 628 (1996)……………………………..………………..………10

*City of Bell v. Superior Court,*
    220 Cal.App.4th 236 (2013)………………………..…………………………19, 22

*City of Santa Barbara v. Superior Court,*
    41 Cal.4th 747 (2007)…………………………………………………………22

*Collondrez v. City of Rio Vista,*
    61 Cal.App.5th 1039 (2021)……………………………………………………15

*Cohen v. Five Brooks Stable,*
    159 Cal.App.4th 1476 (2008)………………………………..…………………24

*C.W. Howe Partners Inc. v. Mooradian,*
    43 Cal. App. 5th 688 (2019)……………………………………………………11

*Doyle v. Guiliucci,*
    62 Cal.2d 606 (1965)……………………………………..……………………21

*Dual Diagnosis Treatment Center, Inc. v. Buschel,*
    6 Cal. App. 5th 1098 (2016)……………………………………………………16

ADVANCING LAW FOR ANIMALS

*E.L. White, Inc. v. City of Huntington Beach,*
    21 Cal.3d 497 (1978)……………………………………..…………………………22

*FilmOn.com Inc v. DoubleVerify Inc.,*
    7 Cal.5th 133 (2019)………………………………………………………………12, 14

*Gonzales v. R. J. Novick Constr. Co.,*
    20 Cal.3d 798 (1978)………………………………..……………………………21

*Geiser v. Kuhns,*
    13 Cal.5th 1238 (2022)………………………………………………………13, 14

*Hecimovich v. Encinal School Parent Teacher Organization,*
    203 Cal.App.4th 450 (2012)…………………………………………………………15

*Heppler v. J.M. Peters Co.,*
    73 Cal.App.4th 1265 (1999)…………………………………………………………20

*Hohe v. San Diego Unified Sch. Dist.,*
    224 Cal.App.3d 1559 (1990)………………………………………………………21

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.,*
    129 Cal.App.4th 1228 (2005)………………………………………………………15

*Lennar Homes of California, Inc. v. Stephens,*
    232 Cal.App.4th 673 (2014)…………………………………10, 11, 12, 24, 25

*Long Beach Unified School Dist. v. Margaret Williams, LLC,*
    43 Cal.App.5th 87 (2019)……………………………..……………10, 11, 12, 14, 24, 25

*McCrary Construction Co. v. Metal Deck Specialists, Inc.,*
    133 Cal.App.4th 1528 (2005)………………………………………………………25

*McGarry v. University of San Diego,*
    154 Cal. App. 4th 97 (2007)………………………………………………………13

*Myers Building Industries, Ltd. V. Interface Technology, Inc.*
    13 Cal.App.4th 949 (1993)……………………………..……………………18, 19, 20

*Nygard, Inc. v. Uusi-Kerttula,*
    159 Cal. App. 4th 1027 (2008)……………………………………………………9

*Pietrelli v. Peacock,*
    13 Cal.App.4th 943 (1993)…………………………………………………………21

*Queen Villas Homeowners Assn. v. TCB Property Management,*
    149 Cal.App.4th 1 (2007)………………………………………………………19, 20, 22

*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO,*
    105 Cal.App.4th 913 (2003)………………………………………………………13

*Rossmoor Sanitation, Inc. v. Pylon, Inc.,*
    13 Cal.3d 622 (1975)………………………………………………………………21

*Sammer v. Ball,*
    12 Cal.App.3d 607 (1970)…………………………………………………………21

ANTI-SLAPP MOTION TO STRIKE COUNTERCLAIMS

*Shekhter v. Financial Indemnity Co.,*
　　89 Cal.App.4th 141 (2001)…………………………………………………10

*Varco–Pruden, Inc. v. Hampshire Constr. Co.,*
　　50 Cal.App.3d 654 (1975)…… ……………………………………………18

*Vogel v. Felice,*
　　127 Cal. App. 4th 1006 (2005)……………...…………………………………15


**Federal Statutes**

42 U.S.C. § 1983……………………………………………………1, 7, 16, 17, 22, 23

42 U.S.C. § 1988…………………………………………………………………16, 17


**California Statutes**

Civil Code § 1643……………………………………………………………………20

Civil Code § 1647……………………………………………………………………23

Civil Code § 1648……………………………………………………………………23

Civil Code § 1668……………………………………………………………………23

Civil Code § 1935……………………………………………………………………21

Civil Code § 2772……………………………………………………………………18

Civil Code § 2775……………………………………………………………………21

Business and Professions Code § 19418.1……………………………………………3

Business and Professions Code § 19620(a)…………………………………………3

Business and Professions Code § 19622.2…………………………...………………3

Code of Civil Procedure § 425.16……………………………………………*passim*


**Secondary Sources**

Black's Law Dictionary (11th ed. 2019), behalf……………………………………21

ADVANCING LAW FOR ANIMALS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Advancing Law for Animals**

1

**Memorandum of Points and Authorities**

2
**I.     Introduction**

3
        After Mrs. Long and her minor daughter E.L. filed the underlying civil rights litigation over

4
Cedar, their 4-H goat they tried to save from slaughter, public outrage and debate erupted across the

5
nation about police and government misconduct, children's rights, animal rights, and taxpayer waste.

6
Nearly *every* major U.S. news outlet covered this case. The top three most popular Tweets about

7
Cedar's case alone obtained over 16 million views. This national reaction only compounded pre-

8
litigation blowback directed at the Shasta District Fair already viral on Instagram and Facebook. In

9
response, Shasta District Fair Livestock Manager and counterclaimant Mr. Macfarlane and CEO and

10
counterclaimant Ms. Silva (together, "Government Employees") tried to have the California

11
Department of Food and Agriculture "get this taken care of quickly in the media." They could not.

12
        Having failed to contain public debate, Government Employees tendered an indemnification

13
demand to Mrs. Long, demanding she pay all monetary loss, including the California Attorney

14
General's attorneys' fees, for the damages they caused to her daughter. This left Mrs. Long with two

15
options: abandon civil rights litigation of national public interest, or face a hefty price tag. Mrs. Long

16
bravely chose the latter, denying the indemnification demand as a legally baseless, transparent attempt

17
to chill the protected First Amendment rights of a child and mother. Her denial and the subsequent

18
counterclaim have furthered public discussion over government misconduct, calling into question the

19
Attorney General's use taxpayer funds to sue a family over an illegally-slaughtered pet.

20
        Mrs. Long now files this anti-SLAPP motion against Government Employees' counterclaims.

21
Step one is satisfied, as counterclaims for indemnity by definition arise from protected speech, as well as

22
from Mrs. Long's actions which, since the inception of her and E.L.'s civil property dispute over Cedar,

23
were in furtherance of public conversation about matters of sustained national interest. Step two is

24
satisfied, as each counterclaim is barred by 42 U.S.C. § 1983 as a matter of law, among other reasons.

25
**II.    Background**

26
        **A.     Mrs. Long and E.L. Purchased Cedar for 4-H Program and 2022 Shasta Fair**

27
        In September 2021, Mrs. Long enrolled her daughter E.L. in a local 4-H chapter's youth

28
livestock program, which culminated with the annual 2022 Shasta District Fair, hosted by 27th District

Agricultural Association, doing business as Shasta District Fair and Event Center ("27th DAA" or "Shasta Fair Association"). Long Decl. ¶ 4; SAC ¶ 10. Mrs. Long purchased a young goat for E.L., whom E.L. named Cedar. The 2022 Shasta District Fair occurred from June 22 to 25, with the youth livestock auction on June 24. *Id*., ¶ 23. Shasta Fair Association and 4-H held the annual barbeque at the fairgrounds on July 9, 2022 ("Government Barbeque"). *Id*. Kathie Muse ("Mrs. Muse"), as a 4-H volunteer, organized the Government Barbeque. Shakib Decl. ¶ 5, Ex. ¶ 1 (Muse Dep. 83:08-10).

**B.    Mrs. Long Entered Youth Livestock Auction Online on Behalf of Minor, E.L.**

Mrs. Long registered E.L., on E.L.'s behalf, online. Long Decl. ¶ 7. Government Employees contend the online entry form contained accountability and liability terms to which Mrs. Long agreed[1] (the "Local Indemnity Provision"). Long Decl. ¶¶ 8-10. Mrs. Long does not recall reading the Local Indemnity Provision; she just clicked and filled out the boxes without the ability to opt-out. Long Decl. *Id*. Ms. Silva testified she is not sure if Mrs. Long received the Local Indemnity Provision upon online entry or afterward. Shakib Decl. ¶ 11, Ex. 2 (Silva Dep. 294:13-294:24). Ms. Silva testified participants signing up online cannot opt-out of or negotiate any aspect of the Local Indemnity Provision. *Id*. at ¶ 12, Ex. 2 (Silva Dep. 298:24-299:13).

**C.    California State Fair Rules and Exhibitor Handbook Supplement and, in Some Cases Supplant, Provisions in Online Entry Form**

In addition to the online entry form, 2022 State Rules for California Fairs ("State Fair Rules")

---

[1]    Government Employees contend the Local Indemnity Provision reads in full: "I certify that I am the owner of the property specified herein or the supervisor of the project with authorization to act as agent and to bind the owners of the property in all matters herein. Online submission of data requires that a person has read, understands and agrees to abide by all the rules and regulations governing the fair entries as published in the official Shasta District Fair Handbook. Under penalty of perjury, I certify that the information provided is true and I agree to defend, indemnify, and hold harmless the fair, the county, and the State of California, its officers, agents and employees from and against any liability, claim, loss or expense (including reasonable attorney fees) arising out of any injury or damage, which is caused by, arises from or is in any way connected with participation in the program or event, excepting only that caused by the sole active negligence of the Fair. The Fair Management shall not be responsible." Counterclaim ¶ 8. It further states: "To enter online, you must be over 18 years of age or be the parent and/or guardian of the exhibitor if the exhibitor is under age 18, or the 4-H Leader or FFA advisor, with the authorization from the parent and/or guardian of the exhibitor, or authorization from the exhibitor if 18 years of age or older. Please type 'Yes' in the box to confirm. By entering 'Yes', I am confirming that I am 18 years of age or older, the owner or authorized agent for these exhibits, that I have read, understand and agree to abide by all the rules and regulations governing the Fair entries as published in the official Shasta District Fair Handbook, and that everything submitted is 'true and correct'. Online entries for 4-H and FFA exhibitors will not be officially accepted until approved by the 4-H leader or FFA advisor." *Id*.

ADVANCING LAW FOR ANIMALS

published by CDFA,[2] and a local exhibitor guidebook, also referred to as the handbook, published by the Shasta Fair Association ("Exhibitor Handbook"),[3] containing, among other things, All General Livestock Rules and Guidelines, applied. RJN 1-3. The State Fair Rules provide "[i]f a local rule is not printed in the exhibitor handbook the applicable State Rule will apply." RJN 1 at 4 ¶ 8. The express indemnity counterclaim is based on the Local Indemnity Provision, which Government Employees admit was in "an online contract." Counterclaim ¶ 6. But the Local Indemnity Provision is absent from the Exhibitor Handbook, and Ms. Silva was unable to locate this language in the Exhibitor Handbook. Shakib Decl. ¶ 13, Ex. 2 (Silva Dep. 295:17-296:1; 297:15-298:13). The State Fair Rules contain indemnification language different from the Local Indemnity Provision.[4] ("Controlling Indemnity Provision"). The State Fair Rules and the Exhibitor Handbook also require that exhibitors, including E.L., own the animals exhibited. RJN 1 at 6, 2 at 50. The All General Livestock Rules and Guidelines further provide for exhibitor misconduct and disputes, including, "RULE COMPLIANCE: Any Exhibitor, who fails to conform to accepted standards of conduct, will be removed immediately (*with livestock*) from the Fairgrounds and all premiums and auction proceeds forfeited, if the situation is of a serious nature." ("Forfeiture Rule") RJN 2 at 54, 3 at 54 (emphasis added).[5]

### D. Following State Senator's Bid, Mrs. Long and E.L. Withdrew Cedar from Auction and Offered to Pay for Any Damages

On June 25, 2022, E.L. participated in the youth livestock auction. California State Senator and then Republican gubernatorial candidate Brian Dahle and California Assemblymember Megan

---

[2]  "[CDFA] is responsible for … providing oversight of activities carried out by each California fair[,]" including the 27th DAA. Cal. Bus. & Prof. Code § 19620(a); § 19418.1. The 27th DAA must "meet all applicable [CDFA] standards" and must comply with annually-published State Rules. *Id.*, § 19622.2.

[3]  The State Rules define the Exhibitor Handbook as "[a]n entry book, prize list, contest book or other publication specifying rules and awards for fair contests." RJN 1 at 6, ¶ 19.

[4]  The Controlling Indemnity Provision states: "The exhibitor agrees to defend, indemnify, and hold harmless the fair, the county, and the State of California from and against any liability, claim, loss, or expense (including reasonable attorneys' fees) arising out of any injury or damage which is caused by, arises from or is in any way connected with participation in the program or event, excepting only that caused by the sole active negligence of the Fair. The Fair Management shall not be responsible for accidents or losses that may occur to any of the exhibitors or exhibits at the fair. The exhibitor (or parent or guardian of a minor) is responsible for any injury or damage resulting from the exhibitor's participation in the program or event. This includes any injury to others or to the exhibitor or to the exhibitor's property." RJN 1 at 5-6, ¶ 5.

[5]  Parallel rules exist in State Fair Rules, RJN 1 at 7 ¶¶ 2-3, as well as additional rules regarding notice and hearing, *id.* at 11 ¶ 14.

ADVANCING LAW FOR ANIMALS

Dahle, both public figures, through their agent Mrs. Muse, placed the highest bid for Cedar, $902. Shakib Decl. ¶ 22, Ex. 3. Of that amount, Shasta Fair Association was entitled to $63.14, with the remainder to E.L. SAC ¶ 32. The Dahles directed Cedar's meat be donated to the Government Barbeque. Shakib Decl. ¶ 22, Ex. 3. Mrs. Long and E.L. contend that, although the Dahles were the highest bidder, no sale occurred. SAC ¶¶ 40-41. They further contend on June 25, 2022, shortly after the auction and before transfer of Cedar to slaughter, E.L. exercised her statutory rights as a minor under Cal. Fam. Code § 6710 to disaffirm any contract that may have existed with respect to Cedar. SAC ¶ 35. Mrs. Long and E.L. then removed Cedar from the Shasta District Fair. *Id*. Mrs. Long worked in good faith to settle the dispute with the Shasta District Fair. Long Decl. ¶ 15, Ex. 16. Despite E.L.'s disaffirmation, Mrs. Muse maintained the Government Barbecue owned Cedar's meat. Shakib Decl. ¶ 6, Ex. 1 (Muse Depo. 78:20-79:05). On or about June 26, 2022, Mr. Macfarlane called Mrs. Long, demanding she return Cedar for slaughter or face felony charges of grand theft under Cal. Penal Code § 487a. Long Decl. ¶ 13. Desperate to avoid the prospect of even frivolous criminal charges, Mrs. Long reached out to Cedar's putative auction bidder, Senator Brian Dahle, explaining the situation and requesting that he forgo any rights to Cedar. *Id*. ¶ 14. Senator Dahle's representatives informed her that he would not resist her efforts to save Cedar from slaughter. *Id*. Mrs. Long then sent Ms. Silva a letter, offering to pay damages in connection with Cedar's removal ("Offer to Pay Damages"). *Id*. ¶ 15, Ex. 16.

**E.   As Government Employees Threatened Mrs. Long with a Felony, Instagram Post to Save Cedar's Life Went Viral**

Ms. Silva and Mr. MacFarlane were unmoved by Mrs. Long Offer to Pay Damages, and Mr. Macfarlane continued to threaten Mrs. Long with criminal charges. On or around June 27, 2022, while Mrs. Long was trying to resolve the dispute, third party Bleating Hearts Farm posted on Instagram a photo of Mrs. Long, E.L., and Cedar, stating, among other things, "PLEASE! IF YOU ARE ABLE TO CALL AND SEND A RESPECTFUL EMAIL TO SHASTA DISTRICT FAIRGROUNDS, ASK THEN PARDON [E.L.'S] GOAT FROM SLAUGHTER. SENATOR DAHLE PURCHASED HIM AND WOULD LIKE TO PARDON HIM BACK INTO HER CARE [¶] HE IS DUE TO BE KILLED TOMORROW[.]" (hereinafter, "Viral Instagram Post"). RJN 4 at ASHB000027. Following the Viral

ADVANCING LAW FOR ANIMALS

Instagram Post, Ms. Silva testified "We had to forward our phones [for the Shasta Fair Association] because our phones were … blown up." Shakib Decl. ¶¶ 14, 23 Ex. 2 (Silva Depo. 49:02-11), 4 at 1.

On June 28, 2022, Ms. Silva rejected Mrs. Long's Offer to Pay Damages, stating that Cedar had to be returned because, among other reasons, "the social media [response to Cedar] has been a negative experience for the fairgrounds as this has been all over Facebook and Instagram, not the best way to teach our youth the value of responsibility." Long Decl. ¶ 17, Ex. 17. Mr. Macfarlane suspected Mrs. Long had some level of involvement in the Viral Instagram Post and was potentially working with people in the animal rights community. Shakib Decl. ¶ 28, Ex. 5 (Macfarlene Dep. 151:01-05; 155:16-24). Mrs. Muse believed Mrs. Long was making a "political statement" by removing Cedar, and she disagreed with Mrs. Long's viewpoint. *Id.* ¶ 7, Ex. 1 (Muse Dep. 171:02-06, 172:01-08).

On June 29, 2022, Mrs. Long sent another follow-up letter to Ms. Silva, stating E.L. owned Cedar, explaining grand theft under Cal. Penal Code § 487a had no legal basis, offering to reimburse any monetary damages caused, confirming the civil nature of the dispute, and stating the letter was "in anticipation of litigation." ("Notice of Civil Claim and Intention to Sue"). Long Decl. ¶ 19, Ex. 18. Deputy Secretary of CDFA Michael Flores, appointed by Governor Newsom, suggested Ms. Silva contact the Shasta County Sheriff's Office. Shakib Decl. ¶ 15, Ex. 2 (Silva Dep. 257:08-257:17; 260:02-260:13; 262:01-262:19). Ms. Silva testified the course of action pursued is not reflected in any rule or policy, and that the Forfeiture Rule could have applied. *Id.* ¶¶ 16-17, Ex. 2. (Silva Dep. 271:8-274:02; 275:19-278:23; 287:4-17).

### F. Shasta County Sheriff's Officers Violated Due Process to Seize Cedar and Ensure His Slaughter After Mrs. Long Submitted Notice of Civil Claim and Intention to Sue

Sheriff Michael Johnson directed Lieut. Fernandez to investigate the so-called theft of Cedar. Shakib Decl. ¶ 33, Ex. 6 (Fernandez Dep. 77:16-25). Ms. Silva forwarded several documents to Lieut. Fernandez, including Mrs. Long's Offer to Pay Damages and Notice of Civil Claim and Intention to Sue. *Id.* ¶ 19, Ex. 2 (Silva Dep. 288:03-23). On July 8, 2022, the day before the Government Barbeque for which Cedar was purportedly earmarked, Lieut. Fernandez forwarded these documents to Det. Ashbee and directed Det. Ashbee to apply for a warrant to seize Cedar from Bleating Hearts Farm. *Id.* ¶ 38, Ex. 7 (Ashbee Depo. 79:23-80:21; 83:08-17). But Det. Ashbee did not review all of the

ADVANCING LAW FOR ANIMALS

documents provided to him; filled out a Statement of Probable Cause in application for a search warrant based solely on a narrative set forth by Lieut. Fernandez; made factual assertions contradicted by evidence he attached in support of his assertions; and omitted the Notice of Civil Claim and Intention to Sue that would have undermined the presence of probable cause. Shakib Decl. ¶ 39, Ex. 7 (Ashbee Dep. 97:05-17, 98:04-99:15; 131), RJN 4. For example, the Viral Instagram Post Det. Ashbee attached as evidence of Cedar's location at Bleating Hearts Farm stated Cedar "is now back on the way to the fairgrounds[.]" RJN 4 at ASHB000022, ASHB000027. Nor had Cedar ever even been to Bleating Hearts Farm. Long Decl. ¶ 16. Lieut. Fernandez later testified that the Notice of Civil Claim and Intention to Sue was in fact notice of a civil dispute. Shakib Decl. ¶ 34, Ex. 6 (Fernandez Dep. 135:08-136:05). Although the four corners of the warrant itself directed the property, i.e., Cedar, "be disposed of in accordance with the procedures set forth in California Penal Code § 1407-1422 …" (requiring he be held for hearing), the Statement of Probable Cause attached to the warrant, in contravention of state and federal due process principles, stated, "Deputies shall secure the property in a humane and appropriate location, and the rightful owner of said property shall be notified …. The property may be released to the owner upon seizure." RJN 4 at ASHB000021, ASHB000023. In the Statement of Probable Cause, Det. Ashbee determined the rightful owner to be Mrs. Muse on behalf of the Government Barbecue. *Id*. at ASHB000022.

Despite the civil nature of the dispute, Mrs. Long's multiple offers to pay, and her letter noticing her intent to sue, the night before the Government Barbecue, on July 8, 2022, Lieut. Fernandez and Det. Duncan drove several hundred miles to Bleating Hearts Sanctuary on the pretense of a crime to execute the warrant. Upon arrival, they discovered Cedar was not there, ascertained Cedar's correct location from individuals at Bleating Hearts Sanctuary, and then travelled to the Billy's Mini Farm. Shakib Decl. ¶ 41, Ex. 8 (Duncan Dep. 144:25 – 147:17). Once there, Lieut. Fernandez and Det. Duncan seized Cedar, and, at the direction of Mrs. Muse, turned him over to Mr. Macfarlane. Shakib Decl. ¶ 35 Ex. 6 (Fernandez Dep. 269:16-270:10).

### G. Government Employees Held Cedar for Weeks Prior to Slaughter at Direction of Sheriff and District Attorney, Despite Repeated Contact by Mrs. Long's Counsel

No member of law enforcement or either of the Government Employees contacted Mrs. Long to inform her of Cedar's seizure. Rather, she was informed by Billy's Mini Farm on about July 12,

2022. Long Decl. ¶ 20. Because Mrs. Long believed her civil rights had been violated, she formally retained counsel, a nonprofit law firm which she understood to operate in the public interest and circulate press releases regarding its work. Long Decl. ¶ 21; Shakib Decl. ¶ 3. On July 11, after the Government Barbecue, Mr. Macfarlane texted Mrs. Muse, explaining, "Good morning … Talked to sheriff and he said to wait until he talks to DA before we kill goat." Shakib Decl. ¶ 43, Ex. 9 at 2. In deposition, Mr. Macfarlane stated he was referring to the elected sheriff for Shasta County, Sheriff Michael Johnson. *Id*. ¶ 29, Ex. 5 (Macfarlane Dep. 204:16-205:07). In an effort to ascertain Cedar's whereabouts, Mrs. Long's counsel called and/or emailed Lieut. Fernandez, Det. Duncan, and Shasta County counsel multiple times from July 15-27, 2022. Gordon Decl. ¶¶ 4-19. On July 22, Mr. Macfarlane texted Ms. Silva, "Kathy [sic] said ok but no one needs to know about this. U me and Kathy are only ones. It got killed and donated to non profit if anyone asks." Shakib Decl. ¶ 49, Ex. 10 at 2. On July 27, Mrs. Long's counsel received a response from Shasta County Counsel, stating, "I'm just not willing to get involved to that point. The Sheriff's Office does not have the goat." Gordon Decl. 17, Ex. 24. On July 28, Mr. Macfarlane texted Mrs. Muse, "Bowman is killing goat today finally." Shakib Decl. ¶ 44, Ex. 9 at 3.[6]

### H. Underlying Civil Rights Litigation, Mrs. Long's Indemnification Denial, and Government Employees' Countersuit All Attract Viral Media Attention and National Public Interest

On August 31, 2022, Mrs. Long and E.L. filed the underlying civil rights litigation, as amended on March 2, 2023, and again on October 12, 2023. ECF Nos. 1, 16, 25 (Second Amended Complaint or "SAC"). The SAC includes claims against Ms. Silva and Mr. Macfarlane through § 1983 for violations of the Fourth Amendment, ¶¶ 105-110, violations of the Fourteenth Amendment, ¶¶ 111-115, and First Amendment Viewpoint Discrimination, ¶¶ 181-188, with additional claims against other defendants for constitutional violations and other state law claims. Mrs. Muse reacted to

---

[6]     Although Cedar's slaughter was confirmed in discovery, to date, it is unknown who received his meat. Mrs. Muse testified his meat was given back to the Shasta Fair Association, because the Shasta Fair Association replaced Cedar's meat for the purpose of the Government BBQ. Shakib Decl. ¶ 8, Ex. 1 (Muse Dep. 204:13-205:25). Mrs. Muse claims she does not know ultimately who received Cedar's meat, but that the Shasta Fair Association or Ms. Silva would probably know. *Id*. ¶ 9, Ex. 1 (Muse Dep. 204:13-205:25; 235:19-236:10). Both Ms. Silva and Mr. Macfarlane testified they did not know who ultimately received Cedar's meat after his slaughter. Shakib Decl. ¶ 20, Ex. 5 (Silva Dep. 80:11-81:07); *Id*. ¶ 30, Ex. 1 (Macfarlane Dep. 215:09-217:22).

ADVANCING LAW FOR ANIMALS

the litigation over text to Mr. Macfarlane, stating, "What a bunch of shit [angry-face emoji][.]" Shakib Decl. ¶ 46, Ex. 9 at 4. Mr. Macfarlane responded, stating "I sent to Melanie and Jerry. Told Melanie to send to Cdfa [sic] to get this taken care of quickly in the media." *Id.* ¶ 47, Ex. 9 at 4. Nonetheless, major news outlets including the New York Times, the Washington Post, Los Angeles Times, Fox News, CNN, the Guardian, USA Today, Sacramento Bee, Inside Edition, Business Insider, The Problem with John Stewart, Vox, and more covered Mrs. Long's and E.L.'s civil rights litigation. [7] RJN 5-18. The top three most popular tweets about Cedar's case obtained over 16 million impressions. RJN 19 (11.9 million), 20 (2.5 million), and 21 (1.7 million). One petition seeking justice for Cedar obtained 79,516 supporters, while another petition obtained 43,065 supporters. RJN 22-23. A member of the Shasta County Fair Association Board of Directors explained, "With the extreme blowback recently of media (social, podcasts, local, regional and national) surrounding the goat incident, I have been included in hundreds of Twitter mentions along with Governor Newsome [sic] – [sic] as that relates to letters of complaint to Melanie and our Governor." Shakib Decl. ¶ 25, Ex. 4 at 8. Another explained, "I am pretty sure that all board members have been dragged through the mud on social media." *Id.*, ¶ 26, Ex. 4 at 8.

Media coverage and public interest has sustained through time, beginning on September 1, 2022, with the most recent news article published by the Los Angeles Times on November 9, 2023. RJN 13, 24. In addition to members of the public interested in issues of police and government misconduct, taxpayer waste, children's rights, and animal rights, the animal agricultural industry also reacted. Industry publications criticized the government officials involved as tarnishing the image of food producers, and questioned whether 4-H youth livestock auctions warranted reform. Shakib Decl. ¶¶ 80-81; RJN 25-26. Lieut. Fernandez testified Cedar's withdrawal was "was a big deal with a lot of the fair boards" and "other fair boards reach[ed] out to our fair board about this is pretty serious stuff…." *Id.* ¶ 36, Ex. 6 (Fernandez Dep. 277:13-279:03). Throughout this time, Mrs. Long responded

---

[7]  For example, a front-page expose by Sam Stanton of the Sacramento Bee, published March 31, 2023, covered the details of the search warrant (stating "Officers were permitted to "utilize breaching equipment to force open doorway(s), entry doors, exit doors, and locked containers in pursuit of their target…") and calculated the cost of the police pursuit (stating law enforcement "gas purchase was $32.50 more than the fair district would have received as its share of the auction proceeds for Cedar, money the lawsuit says Long offered to repay to the fair."). Shakib Decl. ¶¶ 54, 69, Ex. 15; RJN 14.

to interview requests by a variety of journalists, including Nicholas Kristof of the New York Times, and permitted E.L. to participate with her face obscured in a front-page expose in the Sacramento Bee and related photography. Long Decl. ¶¶ 23-24. Ms. Silva testified that she has received approximately 5,000 emails from the public regarding Cedar's case. Shakib Decl. ¶ 21, Ex. 2 (Silva Depo. 139:19-140:19). After Mrs. Long and E.L. filed the underlying civil rights litigation, Mr. Macfarlane texted Mrs. Muse, stating "My phone has not stop ringing. Busllshit. [sic]" and ultimately changed his phone number. Shakib Decl. ¶¶ 31, 45, Exs. 5 (Macfarlane Dep. 32:11-33:03), 9 at 6.

Following viral news coverage of the civil rights litigation, on April 13, 2023, Ms. Muse received a letter from the Office of the District Attorney denying prosecution of Mrs. Long. Shakib Decl. ¶ 50, Ex. 11. On October 20, 2023, Government Employees tendered their indemnification demand, based on the theory that Mrs. Long must indemnify against E.L.'s claims as an alleged third party. Counterclaim ¶ 9; Shakib Decl. ¶¶ 51-53, Exs. 12, 14. On November 3, 2023, Mrs. Long and E.L. denied the indemnification demand, citing it as a baseless attempt to chill the protected First Amendment activity of a child and her mother following both the deprivation of their constitutional rights and the illegal slaughter of their beloved pet, and explaining any counterclaim would be subject to an anti-SLAPP motion. *Id.* ¶ 52, Ex. 13. Government Employees filed their Counterclaim on November 11, 2023,[8] sparking additional public outcry over the priorities of Attorney General Rob Bonta by, among others, the Sacramento Bee, Los Angeles Times, and NewsNation. *Id.* ¶¶ 79, 82-83, RJN 24, 27-28.

## III.   Legal Standard

California's anti-SLAPP statute applies to any "cause of action against a person arising from any act in furtherance of the person's right of petition or free speech … in connection with a public issue…." § 425.16(b)(1). The anti-SLAPP requires a two-step analysis. "First, … the defendant [must show] the challenged cause of action is one arising from protected activity." *Navellier v. Sletten,* 29 Cal. 4th 82, 88 (2002). This first step is satisfied if the conduct fits into one of the four categories enumerated in § 425.16(e). *Nygard, Inc. v. Uusi-Kerttula,* 159 Cal. App. 4th 1027, 1036 (2008). If the first step is met, the burden shifts to the plaintiff on the second step to demonstrate that the claim "is

---

[8]     Counterclaims against Mrs. Long include express indemnity, Counterclaim ¶¶ 5-11, equitable indemnity, *id.* at ¶¶ 12-14, contribution, *id.* at ¶¶ 15-17, negligence, *id.* at ¶¶ 18-13, and declaratory relief, *id.* at ¶¶ 18-13, with the latter three constituting indemnification, albeit under different language.

ADVANCING LAW FOR ANIMALS

both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable

judgment if the evidence submitted by the plaintiff is credited." *Navellier* at 88-89.

**IV.    The Anti-SLAPP Statute Applies Because the Counterclaims are Based on the Underlying Civil Rights Litigation, Mrs. Long's Indemnification Denial, and Issues of Public Interest**

Mrs. Long and E.L.'s civil rights litigation and related denial of indemnification, a viral matter

of public interest on traditional and social media, fall squarely within multiple provisions of the anti-

SLAPP statute. § 425.16(b)(1), (e)(2), (e)(4). And, California has already determined the type of

counterclaims asserted satisfy step one of the anti-SLAPP analysis.

**A.    Counterclaims for Indemnity and Contribution Trigger the Anti-SLAPP**

Government Employees' counterclaims for indemnity are based on Mrs. Long and E.L.'s civil

rights litigation and related indemnification denial because, but for them, the counterclaims would

have no basis. *See Lennar Homes of California, Inc. v. Stephens,* 232 Cal.App.4th 673 (2014); *Long*

*Beach Unified School Dist. v. Margaret Williams, LLC,* 43 Cal.App.5th 87 (2019); *Navellier v.*

*Sletten*, 29 Cal. 4th at 82. The Notice of Civil Claim and Intention to Sue, underlying civil rights

litigation, and indemnification denial fall within § 425.16(e)(2),[9] which covers lawsuits and litigation-

related conduct such as filing complaints, because "[t]he right of access to the courts is an aspect of

the First Amendment right to petition the government for redress of grievance." *Church of Scientology*

*v. Wollersheim,* 42 Cal.App.4th 628, 647 (1996); *Shekhter v. Financial Indemnity Co.,* 89 Cal.App.4th

141, 151 (2001) (stating "[a] cause of action arising from litigation activity may appropriately be the

subject of a [§] 425.16 motion" and the "First Amendment guarantees access to the courts").

Moreover, case law is clear that claims for indemnity and contribution specifically trigger the

anti-SLAPP. In *Lennar Homes of California, Inc.,* 232 Cal.App.4th at 673 ("*Lennar Homes*"), after

several homeowners unsuccessfully sued a real estate developer in district court for fraudulent

nondisclosure, the developer brought a state court action against those same homeowners for

indemnity. Like the Government Employees, the developer claimed an indemnity provision in an

---

[9]    The legislature defined the anti-SLAPP statute to specifically include, among other things, "any written or oral statement or writing made in connection with an issue under consideration or review by a … judicial body …." § 425.16(e)(2).

agreement entered into by the parties controlled.[10] Relevant here, the *Lennar Homes* court held that "no matter how [the developer's indemnity] claim is characterized, it is indisputable that [the developer's] claim is 'based on' the federal court litigation…" because, "but for the federal litigation …, [the developer's] state law claim [for indemnity] … would have no basis." *Id.*[11] Thus, the indemnity claim "[arose] from" the homeowner's petitioning activity, so step one of the anti-SLAPP statute was satisfied. § 425.16(b)(1).

Recently, *Long Beach Unified School Dist. v. Margaret Williams, LLC,* 43 Cal.App.5th at 90 ("*Long Beach*") reaffirmed that conclusion and is instructive here. There, a construction consultant to a public school district filed a lawsuit against the school district for retaliatory termination and personal injury related to arsenic poisoning.[12] Like Mrs. Long, the *Long Beach* plaintiff denied the indemnification demand, and so the school district, like Government Employees, brought a cross-complaint for express indemnity, equitable indemnity, and declaratory relief. Like Mrs. Long, the plaintiff filed an anti-SLAPP motion against the school district's three indemnity-related cross-claims. Consistent with *Lennar Homes,* the *Long Beach* court found step one of the anti-SLAPP analysis satisfied because "the District's cross-claims for defense and indemnity … would have no basis without [plaintiff's claims for personal injury] in which it seeks to be defended and indemnified," and therefore the cross-complaint arose from protected activity. *Id.* at 98.

The same logic applies here. The counterclaims are all indemnity,[13] are "based on" Mrs. Long's and E.L.'s civil rights litigation, and indemnification denial and, "but for the litigation," the

---

[10] The indemnity provision in *Lennar Homes* shares common language of "indemnify," "protect," and "hold harmless" with the indemnity provision advanced here. *See Lennar Homes,* 232 Cal.App.4th at 678 (reciting relevant provision as "indemnify, protect, defend and hold harmless [Lennar Homes] from any costs, expenses . . . arising out of claims made by Buyer for nondisclosure. . .").

[11] *See also Navellier,* 29 Cal. 4th at 82 (finding action falling squarely within ambit of anti-SLAPP statute because "but for the federal lawsuit and [defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis).

[12] The indemnity provision in *Long Beach* also shares common language with the indemnity provision advanced here, including "indemnify," and "hold harmless" language. *See id.* at 95.

[13] The first and second counterclaims for indemnity, as well the fifth counterclaim for declaratory relief, allege Mrs. Long has a duty to defend and indemnify Government Employees against her co-plaintiff minor daughter's claims. Their third cause of action, styled as contribution, is substantively a claim for indemnity as a matter of law. *See, e.g., C.W. Howe Partners Inc. v. Mooradian,* 43 Cal. App. 5th 688, 699, n. 9 (2019) ("the dichotomy between [contribution and indemnity] is more formalistic than substantive, and indemnity is only an extreme form of contribution.") (internal quotations omitted). The fourth cause of action, styled as negligence, is also a claim for indemnity and it expressly requests as much. Counterclaim, ¶¶ 20-21, 23. Every counterclaim is essentially indemnity.

11

ADVANCING LAW FOR ANIMALS

counterclaims against them "would have no basis." As a result, the counterclaims all arise from Mrs. Long's protected activity under § 425.16(e)(2), so step one of the anti-SLAPP analysis is satisfied.[14] As set forth further below, Mrs. Long and E.L.'s actions are also protected activity under § 425.16(e)(4).

**B.      Mrs. Long's Actions in Furtherance of the Public Interest Trigger the Anti-SLAPP**

The counterclaims are based on civil rights violations and Mrs. Long's indemnification denial – all of which have captured national public interest and viral media attention; implicate public figures through the involvement of several state and local government entities, officials, and employees; and directly impact a large number of people. Mrs. Long and E.L.'s actions, as well as the underlying federal litigation and denial of indemnification demand, have contributed to and furthered public debate, and fall within the anti-SLAPP's catch-all provision in § 425.16(e)(4),[15] easily satisfying the two-part test set forth by the California Supreme Court: "First, [a court should] ask what 'public issue or . . . issue of public interest' the speech in question implicates — a question [courts can] answer by looking to the content of the speech." *FilmOn.com Inc v. DoubleVerify Inc.* 7 Cal.5th 133, 139 (2019) (quoting § 425.16 (e)(4)) (ellipsis in original). "Second, [a court should] ask what functional relationship exists between the speech and the public conversation about some matter of public interest." *Id.* at 149–150.

**First**, asking "what 'public issue or … issue of public interest' the speech in question implicates" is answered by "by looking to the content of the speech." *Id.* This "first [question] is satisfied so long as the challenged speech or conduct, considered in light of its context may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." Statements found

ADVANCING LAW FOR ANIMALS

---

[14]    That conclusion is not undone by the mere fact counterclaims require Mrs. Long indemnify E.L.'s liability, as opposed to her own. Government Employees cannot argue only E.L's protected activity is put at issue by the counterclaims, and therefore Mrs. Long cannot, as the moving party, cannot satisfy step one of the anti-SLAPP. Both *Lennar Homes* and *Long Beach* held a defendant can bring an anti-SLAPP when sued to indemnify a related third party's claims. In *Lennar Homes,* a wife brought an anti-SLAPP despite the fact her husband, not her, was a party to the underlying federal case. The wife satisfied step one of anti-SLAPP because her "active participation behind the scenes of the [federal] lawsuit" was protected. *Id.* at 681. In *Long Beach*, the business entity of the injured teacher brought an anti-SLAPP against the school district's cross-complaint which demanded the business entity indemnify the district for the teacher's personal injuries. *Long Beach* held that denying "the defense of a co-plaintiff's claims arising from the same facts [] is conduct in furtherance of the litigation" and thus the anti-SLAPP applied. *Id.* at 99. Mrs. Long is an active participant in E.L.'s case as her guardian ad litem, and they are co-plaintiffs.

[15]    The catch-all provision pulls into the ambit of the anti-SLAPP statute "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." § 425.16(e)(4).

to implicate a public issue generally concern (1) "a person or entity in the public eye[,]" (2) "conduct that could directly affect a large number of people beyond the direct participants[,]" or (3) "a topic of widespread, public interest." *Geiser v. Kuhns*, 13 Cal.5th 1238, 1248 (2022), citing *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* 105 Cal.App.4th 913, 924 (2003).

Here, the underlying facts giving rise to Mrs. Long and E.L.'s civil rights litigation concern both persons and entities in the public eye, including, at a minimum, California State Senator and then Republican gubernatorial candidate Brian Dahle; California Assemblymember Megan Dahle; CDFA, an agency of the State of California; Defendant 27th District Agricultural Association, a government agency, its named defendant employees, and members of its Board of Directors; Newsom-appointed CDFA undersecretary Michael Flores; Shasta County Sheriff's Department and its named defendant employees; Shasta County Sheriff Michael Johnson; Shasta County District Attorney Stephanie Bridgett; Attorney General Rob Bonta; and Governor Gavin Newsom. *See McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 110 (2007) (explaining plaintiff's "role as head coach of a local university's football team already made him a public figure, and his employment termination was already a topic of widespread public interest"). Even prior to the onset of this litigation, the facts presented a topic of widespread public interest, with a large number of people beyond the direct participants impacted; the Viral Instagram Post, interpreted by Mrs. Muse to be a political statement and by Mr. Macfarlane to potentially involve coordination with the animal rights community, forced Ms. Silva "to forward our phones" because they were "blown up." Shakib Decl. ¶ 14, Ex. 2 (Silva Dep. 49:02-11). Following the Viral Instagram Post, the underlying civil rights litigation and indemnification denial also directly affected a large number of people beyond the direct participants, and implicated several issues of widespread public interest: all children and their guardians participating in future California youth livestock auctions; other fair associations in California who were apparently concerned by Mrs. Long's and E.L.'s withdrawal from the event, *id.* ¶ 36, Ex. 6 (Fernandez Dep. 277:13-279:03); industry organizations concerned about the image of food producers and the future of 4-H, RJN 25-26; and individuals and organizations concerned by public interest issues including, at a minimum, police and government misconduct, animal and children's rights, and priorities of Attorney General Rob Bonta and taxpayer waste, RJN 5-28. This is further reflected by

the significant and ongoing media and social media attention to both the civil rights litigation and the indemnification denial, and public outrage and outreach directed to Ms. Silva and Mr. Macfarlane. Br. *supra* sec. II(H). Courts have found public issues on the catchall with less supporting facts. *Long Beach,* 43 Cal.App.5th at 87-90 (finding a refusal to indemnify was protected conduct in furtherance of petitioning in connection with an issue of public interest because the claims at issue concerned "environmental hazard at … a public school, violations of the state's requirements for remedying that hazard, and a public school district's punishment of resistance to those violations….").

**Second,** under the catch-all inquiry, "we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." *FilmOn.com Inc*, 7 Cal.5th 133 at 149-150. With respect to the second question, "the statement must in some manner itself contribute to the public debate" and the "defendant—through public or private speech or conduct—[must have] participated in, or furthered, the discourse that makes an issue one of public interest." *Id.* at 150-151. Further, "when the conduct that gives rise to a lawsuit attracts … media attention, it can be an indicator that such conduct was undertaken 'in connection with' a public issue." *Geiser v. Kuhns*, 13 Cal.5th at 1255 (finding media coverage of dispute over real estate investor's foreclosure also showed picketing of private residence furthered public debate).

Here, the second question of the catch-all provision is also satisfied. Mrs. Long's "refusal to defend and indemnify …[is] protected conduct in furtherance of [the] public interest" as choosing to not fund an adversary's litigation is speech. *Long Beach,* 43 Cal.App.5th at 98-99 (refusing indemnity in public interest case satisfies anti-SLAPP catch-all). But beyond refusing to indemnify, Mrs. Long furthered discourse of numerous public issues by, at a minimum, filing a lawsuit after the Viral Instagram Post already stoked public attention and continued legal action could reasonably stoke additional public attention; retaining a law firm which she understood to operate in the public interest and circulate press releases regarding its work; taking interviews with reporters, Long Decl. ¶¶ 16, 21; permitting E.L. to participate with her face obscured in a front-page expose in the Sacramento Bee and related photography, *id.*, ¶ 24; denying the indemnification demand because the demand was a legally baseless attempt to chill the First Amendment rights of a child and mother by effectively pricing them

ADVANCING LAW FOR ANIMALS

out of vindicating their civil rights, Shakib Decl. ¶ 52, Ex. 13; and denying the indemnification demand on the basis it is unconscionable and impacts all families involved in the Shasta District Fair and California Fairs generally, Long Decl. ¶ 26. Through these actions, Mrs. Long and E.L. further satisfied the catch-all, as they participated in and furthered discourse on several public interest issues, as reflected by extensive and continued news reporting. Br. *supra* sec. II(H).

Had Mrs. Long agreed to indemnify the Government Employees, she would have effectively waived her family's civil rights claims of national interest. As a result, her denial furthered discussion of police and government misconduct. Br. *supra* sec. II(F)-(H)*; see, e.g.*, *Collondrez v. City of Rio Vista,* 61 Cal.App.5th 1039, 1050 (2021) (explaining "police misconduct [is] undoubtedly an issue of public interest"). Her denial of indemnity also furthered public discussion of animal rights in the context of terminal youth livestock auctions because it sought to ensure the progression of litigation provoking debate over 4-H reform and seeking a declaration regarding a minor's right to disaffirm participation in a youth livestock auction. RJN 26; *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1246 (2005) (explaining the anti-SLAPP applied as "[a]nimal testing is an area of widespread public concern and controversy, and the viewpoint of animal rights activists contributes to the public debate"). Her denial also furthered debate over children's rights and emotional well-being with respect to youth programming because pricing herself out of court would forego legal claims arising from a minor's right to disaffirm a contract in the face of emotional turmoil over killing a beloved pet. *Hecimovich v. Encinal School Parent Teacher Organization*, 203 Cal.App.4th 450, 468 (2012) (explaining "safety in youth sports, not to mention problem coaches/problem parents in youth sports, is another issue of public interest within the SLAPP law"), *I.B. by and through Bohannon v. Facebook, Inc.,* 82 F.Supp.3d 1115 (N.D.Cal.2015) (explaining a minor's right to disaffirm a contract "reflect[s] both a strong public policy in favor of protecting minors, and, even more so, of discouraging adults from contracting with minors"). Finally, her denial also contributed to the public debate the priorities of Attorney General Rob Bonta in countersuing a family over the illegal slaughter of a child's beloved pet goat with taxpayer money. RJN 24, 27-28; *see Vogel v. Felice,* 127 Cal. App. 4th 1006, 1015–1016 (2005) (explaining a political candidate's qualifications for public office "constitute[ ] a public issue or an issue of public interest"

15

under the anti-SLAPP statute); *Dual Diagnosis Treatment Center, Inc. v. Buschel*, 6 Cal. App. 5th 1098, 1104 (2016) (explaining "[t]he definition of 'public interest' for purposes of the anti-SLAPP statute is to be, and has been, 'broadly construed to include … governmental matters'….")

As a result, Mrs. Long's activity is protected under § 425.16(e)(2) and (e)(4)—satisfying step one of the anti-SLAPP analysis. And, as set forth further below, Mrs. Long also satisfies step two.

## V.   Government Employees Cannot Demonstrate Probability of Success on the Merits

Each and every counterclaim fails as a matter of law. First, extensive case law holds there is no right to indemnification or contribution in § 1983 litigation under federal or state law. Second, the express indemnity counterclaim is further defective as the Local Indemnity Provision is (i) void, (ii) does not reach E.L.'s claims, (ii) does not apply to liability based on active negligence, (iii) is an unenforceable exculpatory clause, (iv) is limited in scope, and (v) is unconscionable as applied here. Third, the remaining counterclaims each have various fatal defects.

### A.   Every Counterclaim Fails as a Matter Of Law

Mrs. Long and E.L. assert four claims against the Government Employees, all of which are based on *§ 1983*.[16] But "[t]he Ninth Circuit has concluded that '[t]here is no federal right to indemnification provided in 42 U.S.C. § 1983." *Hoa v. Riley,* 78 F.Supp.3d 1138, 1145 (N.D. Cal. 2015), citing *Allen v. City of Los Angeles,* 92 F.3d 842, 845 n. 1 (9th Cir. 1996) *overruled on other grounds Acri v. Varian Ass'ns, Inc.,* 114 F.3d 999 (9th Cir. 1997). Further, § 1988 "does not allow [any] an express or implied right of contribution or indemnification under state law into [§] 1983 suits." *Hoa v. Riley,* 78 F.Supp.3d at 1153. "[E]ven if the applicability of state law on contribution and indemnification were not governed exclusively by [§] 1988, such [claims are] implied[ly] preempt[ed] under the doctrine of obstacle preemption…[as] the rights of contribution and indemnification conflict with [§] 1983's goal of deterrence." *Id.* at 1153-1154. Courts in this Circuit have since consistently followed this rationale. *Stoddard-Nunez v. City of Hayward,* 2016 WL 1588271, at *3-4 (N.D. Cal. 2016) (in § 1983 action against city, the city's claims for "indemnity and contribution claims fail as a matter of law); *Rainey v. County of San Diego*, 2023 WL 2604815, at * 3 (S.D. Cal.

---

[16]   No declaratory relief claim exists against Government Employees, as they are named in their official capacities. *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989). The Shasta Fair Association concurs, as it moved to dismiss the declaratory relief claim against itself. *See* ECF No. 32.

2023) ("[u]nder current Ninth Circuit law, there is no federal right of indemnification or contribution on a claim arising under 42 U.S.C. § 1983 … [n]or does 42 U.S.C. § 1988 permit importing rights of contribution or indemnification on a § 1983 claim from state law"). Courts across the country agree.[17]

Government Employees' first, second, and third counterclaims for indemnity and contribution are barred. The negligence counterclaim is substantively a third indemnity counterclaim based on state law, because it argues Mrs. Long was negligent, and under *American Motorcycle Association v. Superior Court*, 20 Cal.3d 578 (1978), must hold harmless and indemnify § 1983 claims against Government Employees. Counterclaim ¶¶ 18, 23. For the same reasons above, this third indemnity counterclaim, while styled as negligence, is barred as a matter of law. The fifth counterclaim for declaratory relief is also barred because, where no right to indemnity exists as a matter of law, a right to a declaration in favor of indemnity does not exist either. As a result, all of Government Employees' counterclaims fail as a matter of law.

**B.     The Express Indemnity Counterclaim Fails for Additional Reasons**

Even if the Court finds the express indemnity counterclaim not barred as a matter of law based on §§ 1983 and 1988, the express indemnity counterclaim further fails because the Local Indemnity Provision is void, and even if it is not, it does not reach E.L.'s first party claims, does not apply to

---

[17]     *See, e.g., Koch v. Mirza,* 869 F.Supp. 1031, 1041 (W.D.N.Y.1994) ("contribution and indemnity" do not apply in civil rights cases and "[a]llowing … contribution or indemnification by reference to state common law or statutory laws under 42 U.S.C. § 1988, is irrelevant to and inconsistent with …federal civil rights laws, and is, therefore, specifically excluded…under 42 U.S.C. § 1988."); *Hepburn ex rel. Hepburn v. Athelas Institute, Inc.,* 324 F.Supp.2d 752, 759-760 (D. Md. 2004) ("contribution and indemnity claim … dismissed" regardless of whether MD law allowed them, as such rights are "Inconsistent with § 1983"); *Wright v. Reynolds,* 703 F.Supp. 583, 590-592 (N.D. Tex. 1988) (in § 1983, "no right to contribution and indemnification" nor can § 1988 be used to create such rights); *Crews v. County of Nassau,* 612 F.Supp.2d 199, 207–13 (E.D.N.Y.2009) (no contribution under federal or state law in § 1983 suit); *Hayden v. Hevesi,* 2007 WL 496369, at *4 (W.D.N.Y. 2007) (no "contribution or indemnification arising out of plaintiff's § 1983 claim"); *M.O.C.H.A. Society, Inc. v. City of Buffalo,* 272 F.Supp.2d 217, 221 (W.D.N.Y.2003) (no "contribution or indemnification arising out of plaintiffs' … § 1983 claims."); *Katka v. Mills,* 422 F.Supp.2d 1304 (N.D. Ga. 2006); *See Frantz v. City of Pontiac,* 432 F.Supp.2d 717 (E.D. Mich. 2006); *Gray v. City of Kansas City,* 603 F.Supp. 872, (D.Kan. 1985); *Jackson v. Hoffman,* 1994 WL 114007 (D.Kan. 1994) ("comparative negligence is not applied in § 1983 actions"); *TCI Cablevision, Inc. v. City of Jefferson,* 604 F.Supp. 845 (W.D.Mo.1984); *Valdez v. City of Farmington,* 580 F.Supp.19 (D.N.M. 1984)*; Anderson v. Local Union No. 3, Int'l Brotherhood of Elec. Workers,* 582 F.Supp. 627 (S.D.N.Y. 1984); *Melson v. Kroger Co.,* 578 F.Supp. 691 (S.D.Ohio 1983); *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77 (1981) (no contribution under Title VII of Civil Rights Act); *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630 (1981) (no contribution under federal antitrust laws); *Moor v. County of Alameda,* 411 U.S. 693, 703-704 (1973) ("section [1988] … [was not] meant to authorize the wholesale importation into federal law of state causes of action").

liability based on active negligence, is an unenforceable exculpatory clause, is limited in scope, and is unconscionable as applied in this case.

### 1. The Local Indemnity Provision is Void

The State Rules provide "[i]f a local rule is not printed in the exhibitor handbook the applicable State Rule will apply." RJN 1, 4 ¶ 8. The express indemnity counterclaim is based on the Local Indemnity Provision, which is *not* included in the exhibitor handbook and, thus, cannot apply. Br. *supra* sec. II(C). Only the Controlling Indemnity Provision in the State Rules can apply, which states E.L. as "[t]he exhibitor agrees to defend, indemnify, and hold harmless" the Shasta Fair Association and its agents. RJN 1. The Government Employee's counterclaim for express indemnity, however, asserts E.L. is a third party with respect to Mrs. Long's indemnity obligations. Shakib Decl. ¶ 53, Ex. 14. That assertion is false, addressed in detail *infra* Br. at sec. V(B)(2), but, relevant here, the State Rules void the Local Indemnity Provision, defeating the first counterclaim, as the Controlling Indemnity Provision is incompatible with Mrs. Long's alleged duty to indemnify. Express indemnity must be struck.

### 2. The Local Indemnity Provision Only Covers Third Party Claims and E.L. is Not a Third Party

Even if the Local Indemnity Provision could apply, it is limited to third party claims and cannot require Mrs. Long to indemnify E.L.'s claims, as E.L. is not a third party. "Indemnification agreements ordinarily relate to third party claims." *Myers Building Industries, Ltd. V. Interface Technology, Inc.* 13 Cal.App.4th 949 (1993); Civ. Code § 2772. "[S]everal indicators … distinguish third party indemnification provisions from [indemnification provisions that apply] in litigation between the parties to the contract. The key indicator [are] the words 'indemnify' and 'hold harmless' [which] generally [refer] to third party claims…." *Alki Partners, LP v. DB Fund Servs., LLC*,  4 Cal.App. 5th 574, 600 (2016) ("*Alki Partners*"). For example, *Varco–Pruden, Inc. v. Hampshire Constr. Co.*, 50 Cal.App.3d 654, 660 (1975) held that "as a matter of law [the indemnity provision below] only indemnifies [the owner] for claims by third parties," *not* claims between the contractor and the owner:

> Contractor shall be solely responsible for and shall hold Owner free and harmless from any and all losses, expenses, damages, demands, and claims arising out of or in connection with injuries (including death) of damages to any and all persons, employees and/or property in any way sustained or alleged to have been sustained in connection with or by reason of the performance of the work by Contractor, its sub-contractors, agents or employees.

*Queen Villas Homeowners Assn. v. TCB Property Management*, 149 Cal.App.4th 1 (2007)[18] and *City of Bell v. Superior Court,* 220 Cal.App.4th 236 (2013)[19] resolved consistently and are similarly instructive here. Their indemnity provisions are analogous to Local Indemnity Provision, and each court ruled those terms only covered third party claims, not claims between parties.

Like the above cases and others,[20] the Local Indemnity Provision uses the terms "indemnity" and "hold harmless" and only applies only to third party claims. The terms "'indemnify and 'hold harmless' create a presumption that an indemnification provision is limited to third-party claims." *AliveCor, Inc. v. Apple Inc.* 603 F.Supp.3d 851, 856 (N.D. Cal. 2022); *Alki Partners,* 4 Cal.App. 5th at 600.[21] The Local Indemnity Provision reference to "any liability, claim, loss or expense (including reasonable attorney fees) arising out of any injury or damage … connected with participation in the program or event" also references third party claims. *See Alki Partners,* 4 Cal.App. 5th at 601 ("an indemnification clause [for] 'any, all, and every claim' which arises out of 'the performance of the contract' deals only with third party claims"). Further, that the Local Indemnity Provision makes no specific reference to claims between the parties also shows it is merely a standard third party indemnity clause. *See City of Bell*, 220 Cal.App.4th at 251 ("If [the] parties go out of their way and say 'we really, really mean it,' [then] language clearly contemplating [a suit between the parties] may

---

[18]     In *Queen Villas Homeowners Assn.*, 149 Cal.App.4th at 8, a property manager could not use the following indemnity provision to defend against the HOA's claims:
"Association agrees to indemnify, defend and hold agent and its employees, Agents, officers, and directors harmless against any and all claims, costs, suits, and damages, including attorneys fees arising out of the performance of this agreement or in connection with the management and operation of the Association, including claims, damages, and liabilities for injuries suffered, or occurrences of death or property damage relating to the property, excluding any claims or liabilities arising out of the sole negligence or willful misconduct of Agent or its employees…." *Id*. at 8.
[19]     Likewise, in *City of Bell,* 220 Cal.App.4th at 252, the court determined the following was a third party indemnity clause, noting the provision had no "clear and explicit language" indicating it applied *between* parties: "City shall defend, hold harmless and indemnify Employee against any claim, demand, judgment or action, of any type or kind, arising out of any act or failure to act, by Employee, if such act or failure to act was within the course and scope of Employee's employment. City may compromise and settle any such claim or suit provided City shall bear the entire cost of any such settlement."
[20]     *See also Meininger v. Larwin–Northern California, Inc.,* 63 Cal.App.3d 82 (1976); *Myers Building Industries, Ltd. v. Interface Technology, Inc.,* 13 Cal.App.4th 949 (1993); *Carr Business Enterprises, Inc. v. City of Chowchilla,* 166 Cal.App.4th 14 (2008); *Baldwin Builders v. Coast Plastering Corp.,* 125 Cal.App.4th 1339 (2005); *Building Maintenance Service Co. v. AIL Systems, Inc.,* 55 Cal.App.4th 1014 (1997).
[21]     Also, that the Local Indemnity Provision's reference to "sole active negligence" implies third party indemnity. *See Queen Villas Homeowners Assn. v. TCB Property Management, supra,* at 8.

ADVANCING LAW FOR ANIMALS

be enforced.")[22] Further, Local Indemnity Provision's usage of the phrase to "sole active negligence" also "underscores [that it is] a classic third party indemnity agreement… [as it] points the reader to the fact that there will be, at least in theory, situations where [the indemnitee] might *not* be indemnified if it were sued by a third party." *See Queen Villas Homeowners Assn.*, 149 Cal.App.4th at 8.

The Government Employees' interpretation of the Local Indemnity Provision has the absurd effect of rendering the entire contract meaningless for Mrs. Long and E.L. *See Hathaway Dinwiddie Const. Co. v. United Air Lines, Inc.,* 50 F. App'x 817, 823 (9th Cir. 2002) (allowing a defendant to use a third party indemnity provision as a defense prevents any suit by plaintiff, "render[ing] the parties' Contract largely meaningless"). Imagine E.L. had completed the sale of Cedar and the Government Employees misappropriated her auction proceeds. If E.L. sued, under the Government Employees' interpretation, Mrs. Long would have to reimburse them for the very monies they misappropriated from her daughter, rendering the underlying agreement meaningless. *Id.*; *see also Heppler v. J.M. Peters Co.,* 73 Cal.App.4th 1265 (1999) (explaining "[c]ontracts should be read in a manner that renders them reasonable and capable of being put into effect"); Civ. Code § 1643.

Moreover, E.L. is not a third party to the Local Indemnity Provision, based on its express language, as well as on the Controlling Indemnity Provision.[23] The express language of the Local Indemnity Provision confirms Mrs. Long entered into the online agreement on behalf of E.L., thus binding E.L. as well.[24] Indeed, it is well established that, when parents sign as a representative, or on

---

[22]     Further, the waivers also prove the indemnity provisions only apply to third party claims. The Local Indemnity Provision requires indemnity of the Fair's "officers, agents and employees from and against any liability." But, following that indemnity language, there is a waiver provision that states "[t]he Fair Management shall not be responsible." If the Local Indemnity Provision requires Mrs. Long to indemnify and reimburse the Government Employees for any damages they caused her daughter, her waiver of liability in favor of Government Employees would have no purpose. Courts should avoid interpretations that result in surplusages. *See Appalachian Ins. Co. v. McDonnell Douglas Corp.* 214 Cal.App.3d 1 (1989); *Myers Building Industries, Ltd. v. Interface Technology, Inc.*, 13 Cal.App.4th 949, 974 (1993) (third party indemnity found as liability waiver "neutralized" possibility that indemnity's fee provision applied between parties).

[23]     The State Fair Rules expressly prohibit local rules that "circumvent" them. RJN 1 at 4 ¶ 7. Government Employees' theory of E.L. as a third party relieves her of her duties, as exhibitor, to indemnify under the Controlling Indemnity Provision, thereby impermissibly circumventing the State Fair Rules.

[24]     The Local Indemnity Provision states E.L. is a party, providing, "I certify that I am …the supervisor … with authorization to act as agent and to bind the owners of the property in all matters … By entering 'Yes', [the parent is] confirming that [she is the] authorized agent for these exhibits…." Counterclaim ¶ 8. And, all applicable rules require E.L. own Cedar. RJN 1 at 5; RJN 2 at 50. By allegedly agreeing, Mrs. Long "[bound] the owner[] of [Cedar]," i.e., E.L., to "all matters,"

ADVANCING LAW FOR ANIMALS

behalf of their child, that child is bound by that contract along with the parent signatory.[25] *See R.H. v. Los Gatos Union School Dist.,* 33 F.Supp.3d 1138 (N.D. Cal. 2014) (explaining release signed by father also bound son in their dual action against school for son's wrestling injuries); *Pietrelli v. Peacock*, 13 Cal.App.4th 943, 947 (1993) ("It has long been the law that a parent has the power to bind a minor child to arbitration of claims arising from the minor's health care contract."); *Aaris v. Las Virgenes Unified School Dist.*, 64 Cal.App.4th 1112, 1120, (1998) (explaining mother's release bound child injured at cheerleading, as "a parent may execute a release on behalf of his or her child."); *Hohe v. San Diego Unified Sch. Dist.*, 224 Cal.App.3d 1559, 1565 (1990) (explaining parents' signature on release on behalf of child bound parents *and child as well*, despite her minority); Black's Law Dictionary (11th ed. 2019), behalf ("*[O]n behalf of* means 'in the name of, on the part of, as the agent or representative of.' ") (emphasis in original). Because the Local Indemnity Provision is void, and if not, only applies only to third party claims, the express indemnity counterclaim fails as E.L. is not a third party.

### 3. The Local Indemnity Provision Does Not Apply Because the Government Employees' Liability is Based on Active Negligence

The Local Indemnity Provision excepts "that caused by the sole active negligence of the Fair." Crossclaim ¶ 8.[26] Here however, the underlying litigation alleges only constitutional violations. Constitutional violations by definition involve active conduct, exceeding that of passive negligence.[27]

---

including the Local Indemnity Provision. Counterclaim ¶ 8; *see Hohe v. San Diego Unified Sch. Dist.*, *supra*. Government Employees cannot offer another interpretation, as "[a]mbiguous provisions are construed against the drafter, even if the drafter is the government." *Westlands Water Dist. v. Patterson*, 864 F.Supp. 1536, 1542 (E.D. Cal. 1994); *Stanislaus Towing & Recovery Services, Inc. v. City of Modesto*, 2012 WL 1898917 (E.D. Cal. 2012) (same).

[25] Even if a minor was bound by his parent's signature as a "third party beneficiary," that is different than a "third party" or "stranger." *Doyle v. Guiliucci*, 62 Cal.2d 606, 609 (1965). A "third party beneficiary" may enforce a contract, *Bozzio v. EMI Group Ltd.*, 811 F.3d 1144 (9th Cir. 2016), while a "third party" or "stranger" to a contract, even if that stranger receives an incidental benefit, may not. *Holmes v. Columbia Pictures Corp.*, 109 F.Supp. 327 (S.D. Cal. 1953).

[26] "An agreement to indemnify … acts of a certain person, applies not only to his acts and their consequences, but also to those of his agents." Civil Code § 2775; *see also id.* § 1935. As Government Employees are agents of the Shasta Fair, the Local Indemnity Provision's exemption for the Fair's active negligence also exempts their active negligence.

[27] Indemnity distinguishes between passive and active negligence. "Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. [] Active negligence is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 629 (1975); *Sammer v. Ball*, 12 Cal.App.3d 607 (1970) (denying indemnification because fraud amounted to active negligence); *Gonzales v. R. J. Novick Constr. Co.*, 20 Cal.3d 798, 812 (1978) (finding a subcontractor's

*See, e.g., Daniels v. Williams,* 474 U.S. 327, 336 (1986) (explaining in § 1983 claims, deprivation must be intentional or deliberate); *Davidson v. Cannon,* 474 U.S. 344, 347 (1986) (due process violations require more than negligence); *Mangiaracina v. Penzone,* 849 F.3d 1191, 1201 (9th Cir. 2017) (emphasizing the importance of alleging intentional conduct under § 1983"); *Nelson v. City of Davis,* 709 F.Supp.2d 978, 985 (E.D. Cal. 2010) (seizure for Fourth Amendment purposes "must be willful"). As Government Employees are charged with "personally participat[ing] in … affirmative act[s]" in violation of the Constitution only, their acts are expressly exempted by the Local Indemnity Provision and by state law.[28] The express indemnity counterclaim must be dismissed.

### 4. The Local Indemnity Provision is an Unenforceable Exculpatory Clause

Application of the Local Indemnity Provision amounts to an unenforceable exculpatory clause, a strategy California courts reject absent clear and express language. *See City of Bell v. Superior Court*, 220 Cal.App.4th 236, 252 (2013) ("for an indemnity agreement to encompass claims between the parties to the agreement, and to act as an exculpatory clause or release, there must be clear and explicit language"); *Queen Villas Homeowners Assn. v. TCB Property Management*, 149 Cal.App.4th 1, 8-9 (2007) (rejecting third party indemnity provision as exculpatory release of property manager's liability to HOA noting "the reductio ad absurdum" of her position was the HOA could never sue her for violating the management contract). Here, there's no language showing indemnity means a "release" of Mrs. Long and E.L.'s claims against the Government Employees, and to hold otherwise means Mrs. Long and E.L. could never sue even if fair agents breached the contract. The California Supreme Court also made clear that exculpatory clauses can only operate as future releases of ordinary negligence – not gross negligence or willful acts. *City of Santa Barbara v. Superior Court,* 41 Cal.4th 747, 751 (2007) (finding release for disabled child to participate in city's summer camp

---

"unreasonable and improper employment of its own equipment and its heedless instructions to its employees" constituted active negligence).

[28]   "[I]f a party seeks, in a noninsurance agreement, to be indemnified …for his or her own active negligence, or regardless of the indemnitor's fault—the language on the point must be particularly clear and explicit and will be construed strictly against the indemnitee." *City of Bell,* 41 Cal.4th 747 at 250. The Local Indemnity Provision lacks "particularly clear and explicit" language exempting Government Employees' active negligence. Thus, the default rule that indemnity only covers passive negligence applies here. *See E.L. White, Inc. v. City of Huntington Beach* 21 Cal.3d 497, 507 (1978) ("in the absence of [a provision extending indemnity to active negligence, the agreement] will be construed to provide indemnity … only if he has been no more than passively negligent.").

ADVANCING LAW FOR ANIMALS

where he drowned did not protect city against gross negligence or worse because "an agreement made in the context … [of] recreational programs or services…to the extent it purports to release liability for future gross negligence, violates public policy and is unenforceable"). Here, Government Employees' are charged only with willful misconduct, i.e., § 1983 violations, and *not* ordinary negligence.[29] As they cannot release their future willful misconduct by contract, express indemnity fails here.

### 5.    The Local Indemnity Provision is Limited in Scope

The express indemnity counterclaim exceeds the scope of the Local Indemnity Provision, because the underlying federal litigation alleges constitutional violations occurring several weeks after the conclusion of the 2022 Shasta District Fair. "In interpreting an express indemnity agreement … the words of the contract [are] to determine the intended scope of the indemnity agreement." *Centex Golden Constr. Co. v. Dale Tile Co.,* 78 Cal.App.4th 992 (2000). The Local Indemnity Provision extends to liabilities "connected with participation in the program or event." Counterclaim ¶ 8. In allegedly agreeing to the Local Indemnity Provision, Mrs. Long was registering E.L. as an exhibitor in the fair. The phrase "program or event" refers to the matters in which E.L. participated at the fair, showmanship and the junior livestock auction. *See* Civ. Code § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates"). Those programs and events concluded on June 25, 2022, at the cessation of the 2022 Shasta District Fair. The Local Indemnity Provision does not include intentional constitutional violations committed *three to five weeks* after the 2022 Shasta District Fair ended. No reasonable person signing that indemnity contract would believe they were giving the government *carte blanche* to violate her family's constitutional rights. *See* Civ. Code § 1648 ("However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.)

Further, constitutional violations fall outside the scope of the Local Indemnity Provision. To find otherwise functionally serves as a waiver or release. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant

---

[29]     *See also* Civ. Code § 1668 (stating "contracts which ... exempt any one from responsibility for his own … willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law").

ADVANCING LAW FOR ANIMALS

circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970); *Cohen v. Five Brooks Stable*, 159 Cal.App.4th 1476, 1485 (2008) (explaining a written release "from future negligence or misconduct 'must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties'"). Here, nothing in this indemnity provision unambiguously apprised Mrs. Long that she was releasing Government Employees from future constitutional violations against her and her daughter. The express indemnity counterclaim seeks indemnity well beyond the scope of the parties' agreement is must be dismissed.

### 6.    The Local Indemnity Provision is Unconscionable in this Case

The Local Indemnity Provision as applied to this case is unconscionable. *See Lennar Homes*, 232 Cal.App.4th at 694. The unconscionability analysis has two prongs: procedural unconscionability (the unfair fashion in which the contract was imposed) and substantive unconscionability (the unfairness of the contract's terms). *Long Beach,* 43 Cal.App.5th at 101. "[A] high showing of one may compensate for a relatively low showing of the other." *Id.*

"[P]rocedural unconscionability [asks] whether the contract is adhesive, meaning the contract is standardized (generally on a preprinted form) and offered by the party with superior bargaining power on a take-it-or-leave-it basis." *Id.* at 103. In *Long Beach*, the government employer's indemnity provision was procedurally unconscionable as the employer had superior power, the contract was on a "take-it-or-leave-it basis," and plaintiff "was unable to negotiate." *Id.* at 104. *Lennar Homes* likewise found procedural unconscionability as the indemnity was drafted by a developer with superior bargaining power, and given to all home buyers as a condition of buying their homes with no opt-out. Here, the online entry form is a condition of entering the youth livestock option and was drafted by the government, creating, at the outset, unequal bargaining power. Due to the online format, Mrs. Long "just clicked and filled out the boxes" and does not know or recall what she signed. Long Decl. Long Decl. ¶¶ 7-9. Plus, participants signing up online are unable to opt-out of the Local Indemnity Provision, and are unable to negotiate any aspect of it. Shakib Decl. ¶ 12, Ex. 2 (Silva Dep. 298:24-299:13). Like *Lennar Homes* and *Long Beach*, the first prong on the analysis is satisfied.

As to the second prong, "[s]ubstantive unconscionability addresses the fairness of the terms in dispute. [It] 'traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or

ADVANCING LAW FOR ANIMALS

to impose harsh or oppressive terms." *Lennar Homes* at 691 (quoting *Wherry v. Award, Inc.* 192 Cal.App.4th 1242, 1248 (2011)). The appellate court held that the indemnity language in the contract precluded even the remotest possibility of a home buyer being made whole for "any damages arising from fraud committed by [developer] with respect to disclosures." *Lennar Homes* at 693. Consequently, the indemnification provision "is a paradigmatic example of a 'heads I win, tails you lose' proposition, purporting to bar any possibility of meaningful recovery for claims falling within its scope, regardless of merit." *Id.* The Local Indemnification Provision has a high degree of substantive unconscionability because it would preclude any claim at all, from fraud, to, as was the case in *Lennar Homes*, personal injury, to, as was the case in *Long Beach* and here, constitutional violations. Such an interpretation would allow government entities to circumvent their constitutional mandates through boilerplate indemnity. This is the hallmark of unconscionability.

### C.     Equitable Indemnity, Negligence, and Declaratory Relief Counterclaims Fail for Additional Reasons

"Where … the parties have expressly contracted … the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on … equitable indemnity." *McCrary Construction Co. v. Metal Deck Specialists, Inc.,* 133 Cal.App.4th 1528, 1536 (2005) As a written contracts exist here, equitable indemnity and negligence (which here is indemnity) must be struck. Lastly, as declaratory relief is "duplicative of other causes of action…, dismissal is proper…." *Tyler v. Travelers Commercial Insurance Company,* 499 F.Supp.3d 693, 702 (N.D. Cal. 2020). For these additional reasons, equitable indemnity, negligence, and declaratory relief must be dismissed.

### VI.     Conclusion

Government Employees' Counterclaim is a SLAPP and should be stricken. Mrs. Long is entitled to recover her attorneys' fees and costs by subsequent motion under § 425.16(c).

**ADVANCING LAW FOR ANIMALS**

Dated:  December 26, 2023                    By:____/s/Ryan Gordon_____
                                                                Ryan Gordon
                                                                Vanessa Shakib
                                                                Attorneys for Plaintiffs

ADVANCING LAW FOR ANIMALS