# EXHIBIT 1

# In The Matter Of:

*LONG vs.*

*FERNANDEZ*

---

*KATHIE MUSE*

*November 13, 2023*

---

*Challe, Fisher & Morfin*

*1828 South Street*

*Redding, California  96001*

*(530)246-0942*

*cfmdepos@att.net*

Original File K. Muse.txt

Min-U-Script® with Word Index

1                    UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF CALIFORNIA

3                        SACRAMENTO DIVISION

4    E.L., a minor, by and through      )
     her general guardian, JESSICA      )
5    LONG; JESSICA LONG, an             )
     individual,                        )
6                                       )
                         Plaintiffs,    )
7                                       )   NO. 2:22-cv-01527-
        vs.                             )   DAD-AC
8                                       )
     LIEUTENANT JERRY FERNANDEZ,        )
9    individually and in his           )
     individual capacity as Sheriff    )
10   for the County of Shasta;         )
     DETECTIVE JACOB DUNCAN,            )
11   individually and in his           )
     individual capacity as Sheriff    )
12   for the County of Shasta;         )
     DETECTIVE JEREMY ASHBEE,           )
13   individually and in his           )
     individual capacity as Sheriff    )
14   for the County of Shasta;         )
     SHASTA DISTRICT FAIR AND EVENT     )
15   CENTER, a district agricultural   )
     association; COUNTY OF SHASTA;     )
16   SHASTA COUNTY SHERIFF'S           )
     DEPARTMENT; Melanie Silva, in     )
17   her individual capacity; BJ        )
     MACFARLANE, in his individual      )
18   capacity; and DOES 1 through      )
     10,                                )
19                                      )
                         Defendants.    )
20   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                          ---oOo-
21               MONDAY, NOVEMBER 13, 2023

22                        9:03 a.m.

23         VIDEOTAPED DEPOSITION OF KATHIE MUSE

24                       ---oOo---

25       Reported by:  CAROL J. CHASE, CSR No. 13538

                    Challe, Fisher & Morfin                        1
                 Redding, California  (530)246-0942

**KATHIE MUSE**

1          Did you retain a copy of this sales

2      invoice?

3      A      For how long?

4      Q      Well, you tell me.  How long did you retain

10:21:02  5      it?

6      A      Approximately two weeks.

7      Q      Approximately two weeks.  Okay.  All right.

8      So you don't have it you any longer?

9      A      No.

10:21:09 10      Q      Okay.  All right.  Okay.  Did you -- how

11      did you -- this is an e-mail to you, correct?  This

12      is just a hard copy?

13      A      That's a hard copy I received at the fair.

14      Q      Did you receive an e-mail at all --

10:21:27 15      A      No.

16      Q      -- as well?

17          Okay.  Fair enough.  How did you discard

18      it?  Just throw it away?

19      A      Yep.

10:21:36 20      Q      Okay.  Moving right along.  So on the

21      bottom here -- now, when the dispute arose, it's

22      your contention that -- you tell me if I'm wrong.

23      It's your contention that the Dahles purchased it

24      and then it became property of you or -- or the 4-H

10:21:53 25      barbecue?

**KATHIE MUSE**

1      A      The 4-H/FFA community barbecue.

2      Q      All right.  That's what I'm talking about.

3  Okay.  So it became that -- that property

4  instantaneously.  That's your --

10:22:10   5      A      Correct.

6      Q      Okay.  That's your understanding.  Okay.

7  And so you, when you did this work, because the

8  bottom of this document says you're authorized --

9  you're authorized to sign and purchase for it.  It

10:22:22  10  doesn't mean that you're the owner.  By the

11  signature line at the bottom, it says, "I certify I

12  am authorized to sign for this purchase and accept

13  responsibility for total payment due and/or

14  collection of the total amount due."

10:22:31  15          So your contention is not that by signing

16  you became the owner.  Your contention is that the

17  barbecue became the owner because he -- he donated

18  the cuts of meat whenever they arrived to the

19  barbecue --

10:22:44  20      A      Correct.

21      Q      -- that's correct?

22          Okay.  All right.  Okay.  So have you had

23  any training in law of assignments?

24      A      No.

10:23:01  25      Q      How about contracts in general?

**KATHIE MUSE**

```
 1                 THE COURT REPORTER:  Okay.
 2                 (Exhibit F was marked.)
 3          BY MR. GORDON:
 4              Q     Okay.  So what did you -- so Cedar -- it's
10:27:25 5      your position Cedar was donated to that barbecue
 6          that is referenced on Exhibit F, correct?
 7              A     Correct.
 8              Q     And what did you do to -- with respect to
 9          that barbecue?  Were you an organizer of it?
10:27:39 10             A     Correct.
11              Q     Okay.  Who else organized it with you?
12              A     You want their names?
13              Q     Yes, please.
14              A     Larry Forero, John Paradis, and myself.
10:27:52 15             Q     Earlier, you mentioned Forero.  He -- and
16          he works at the 4-H office, correct?
17              A     I don't know if he works for the 4-H, but
18          he works for the university.
19              Q     Hmm.  At the extension center.
10:28:05 20             A     Yes.
21              Q     That's what it's called?  Okay.
22                    And Paradis also, is he at that office?
23              A     No.
24              Q     No?  Where is he?
10:28:16 25             A     I believe he's retired.
```

**KATHIE MUSE**

```
 1    how far to go back and look at that.
 2        Q    Okay.  So I'm going to give you -- this
 3    will be Exhibit K.
 4            (Exhibit K was marked.)
13:22:22  5  BY MR. GORDON:
 6        Q    This is your social media, correct?  Is
 7    that you?
 8        A    Uh-huh.
 9            MR. SNOWDEN:  Thanks.
13:22:31 10 BY MR. GORDON:
11        Q    All right.  Okay.  So you posted -- it
12    looks like you posted -- this is your post.  This is
13    "Kathie's post" at the top although the screen
14    didn't capture everything, but "My heart goes out to
13:22:58 15 the -- to Shasta District Fair staff and
16    exhibitors."  It's a Red Bluff Daily News article.
17    So you recall reposting that?
18        A    Yes, I do.
19        Q    Okay.  All right.  And your comment below,
13:23:06 20 the part that they are not reporting -- I'm reading
21    it -- (as read) "The bad part that they are not
22    reporting she sold the goat at the auction and took
23    the goat.  It was all preplanned."  What do you mean
24    it was all -- what did you mean when you said it was
13:23:16 25 all preplanned?
```

**KATHIE MUSE**

1      A      She had a place to take the goat out of the
2    county so, to me, that meant that it was preplanned
3    before the took the goat from the fairgrounds.
4      Q      Okay.  So she took it back to her -- if she
13:23:36  5    took it back to her house, for example, would that
6    have been preplanned?
7      A      Yes.
8      Q      Okay.  So just taking the goat at all
9    anywhere would be preplanned under this logic?
13:23:45 10      A      Correct.
11      Q      It sounds like you're are referring to
12    something else?
13      A      No.
14      Q      No.  Just taking the goat is preplanned?
13:23:54 15      A      Yes.
16      Q      I don't have a follow-up, because that
17    doesn't make sense.
18              MR. GORDON:  Do you have anything to add to
19    that?
13:23:58 20    By MR. GORDON:
21      Q      So it sounds like you're implying that --
22    that she took this goat and it was all part of
23    some -- part of some master plan to get press or
24    something like that.  Is that --
13:24:08 25      A      That wasn't -- it had nothing to do with

**KATHIE MUSE**

1        A        And any other groups that sell animals.

2        Q        Okay.  So you -- okay.  So you thought she

3    was making a political statement almost with

4    animals, and -- and this was preplanned to

13:25:09  5    accommodate that statement or something like that?

6        A        That was my opinion, yes.

7        Q        Okay.  All right.  Okay.  I want to go

8    through -- so, by the way, when you said on here --

9    it says "whooo is me," I'm assuming you mean "woe is

13:25:54 10    me"?

11        A        Yes.

12        Q        "Woe is me."  Okay.  Is that how you spell

13    "woe"?  I'm not criticizing.

14        A        No, I don't believe that is.

13:26:00 15        Q        I don't know how to spell woe is me.  Okay.

16    I didn't know if you meant like --

17                MR. SNOWDEN:  W-O-E.

18                MR. GORDON:  Is that how you spell it?

19    W-O-E?  Okay.  Okay.  Like whoa.  All right.  Makes

13:26:09 20    sense.

21    BY MR. GORDON:

22        Q        I thought maybe you meant like -- like "Who

23    me?  I did it?"

24        A        No.

13:26:14 25        Q        Like in that.

**KATHIE MUSE**

1          Okay.  So you thought it was preplanned

2     because it was a political statement and -- and, of

3     course, you disagreed with that political statement,

4     yes -- or that --

13:26:23  5     A     Personally.

6     Q     -- was your plan?

7     A     Yes.  (Nodding.)

8     Q     Okay.  Okay.

9          MR. GORDON:  So, Kelly, you gave us three

13:26:45 10   copies of this text chain, but one of them is going

11   to evidence, one has my chicken scratch on it, and I

12   would like to keep one fresh.  Do you need one at

13   the moment?

14          MR. SNOWDEN:  I think I still have one.

13:26:53 15          MR. GORDON:  You have one.  Okay.  So you

16   don't mind if I -- I'm going to give this to -- or

17   Vanessa has one.  Well, I'm going to keep a fresh

18   one for just me for the exhibits.  So thank you.

19   BY MR. GORDON:

13:27:02 20   Q     So, Ms. Muse, I'm going to give you a copy

21   of the text chain that you produced today.  Now,

22   this is -- this is a -- this is going to sound like

23   a weird law expression, but you've been working in

24   it for a while so you probably know.

13:27:15 25          That -- that is a true and correct copy --

**KATHIE MUSE**

1   property -- or the -- or 4-H barbecue's property or

2   whoever's property is it.  Why are you waiting

3   before the DA tells you what to do?

4        A     Because we were told not to depose of the

13:45:38  5   goat until they told us to.

6        Q     Who told you had not to dispose of the

7   goat?

8        A     The sheriff's and the DA's office.

9        Q     They told you not to dispose of the goat?

13:45:47 10        A     Correct.

11        Q     Okay.  And when about was that?

12        A     I don't know.

13        Q     Before this text?

14        A     I'm assuming it was before the text,

13:45:53 15   because it was after the barbecue.

16        Q     Okay.  Okay.  So sometime between July 9th

17   and July 11th you're told by the sheriff and the DA

18   not to -- not to kill Cedar?

19        A     Correct.

13:46:05 20        Q     Okay.  Okay.  Did they tell you or B.J.?

21        A     B.J.

22        Q     B.J.  Okay.  And he communicated to you.

23   Okay.  Okay.  All right.  Okay.  So -- so -- okay.

24             Did you know of that through any other way

13:46:28 25   other than this text?

**Challe, Fisher & Morfin**                    194
**Redding, California  (530)246-0942**

**KATHIE MUSE**

1    that you learned -- or you inferred from this

2    statement that the DA was okay with it.  Is that

3    your testimony?

4        A     Yes.

13:54:59  5        Q     Okay.  So B.J. never told you over the

6    phone.  Fernandez never told you.  Sheriff never --

7        A     Not that I recall, no.

8        Q     -- told you.  None of the DAs ever told

9    you.  Okay.  All right.  Okay.  All right.

13:55:10 10         And B.J. still has the ear tags to your

11    knowledge?

12        A     To my knowledge, yes.

13        Q     Okay.  So Cedar was alive till the 28th.

14    Okay.  And what -- what had hap -- what happened to

13:55:21 15    him afterwards after he was killed?

16        A     He was given back to the Shasta Live- --

17    Junior Livestock Auction board.  He was given back

18    to the Junior Livestock Auction.

19        Q     What?  As cuts?

13:55:40 20        A     I'm assuming.

21        Q     Well, it's your -- you're claiming it's

22    your goat for the fair.  What happened to your

23    property or to the fair's property?

24        A     They replaced it to me for the barbecue.

13:55:52 25    The fair board or the Junior Livestock Auction

**KATHIE MUSE**

```
 1    replaced that fair to us -- or replaced Cedar so
 2    that we had a goat at the auction.
 3         Q    I see.  So Cedar was just given back.  Is
 4    he in a freezer somewhere or was he served or --
 5         A    I have no --
 6         Q    -- what?
 7         A    And he was not served --
 8         Q    So he --
 9         A    -- at the barbecue.
10         Q    So did he even go to any of -- anyone's
11    plate, or is he -- was he just killed to go back to
12    Shasta -- to the fair as reimbursement?
13         A    I don't know what happened.  My
14    understanding, what I was told was he went back to
15    somebody that had a problem with another goat that
16    had been butchered.  So we, in turn, replaced Cedar
17    with that goat.
18         Q    Okay.  So Cedar went out -- was replacement
19    meat for someone else?
20         A    Yes.
21         Q    Okay.  When you say that the Junior
22    Livestock Auction, you -- you mean the -- you mean
23    the -- the fair, correct?
24         A    Well, I call it the Junior Livestock
25    Auction.  I don't know how they -- I don't know what
```

13:56:08  5
13:56:13 10
13:56:28 15
13:56:41 20
13:56:54 25

**KATHIE MUSE**

```
 1    green light to move forward with a slaughter or --
 2    or something from the -- the DA, correct -- or the
 3    DA or the sheriff's, correct?
 4        A     Correct.
 5        Q     All right.  And I might have asked you this
 6    and I'm sorry.  But what barbecue, if it was a
 7    barbecue, I'm not sure, but what barbecue did Cedar
 8    ultimately get swapped out for?  If it wasn't a
 9    barbecue, correct me, but you said he was swapped
10    out for some other event with -- do you recall what
11    I'm talking about?  You said -- I said where did his
12    cuts go, and you said he was swapped in because some
13    other goat wasn't available.
14        A     To one of the buyers at the Junior
15    Livestock Auction.
16        Q     Oh, it was a buyer --
17        A     Yeah.
18        Q     -- not an actual event?
19              Okay.  Okay.  I'm sorry.  I thought -- I
20    misunderstood.  I thought it was another barbecue or
21    something like that.  Okay.  So he just went to an
22    individual -- to a private -- a private party then
23    is your understanding?
24        A     My understanding, yes.
25        Q     Okay.  Do you know who that private party
```

14:47:39 (line 5)
14:47:54 (line 10)
14:48:05 (line 15)
14:48:09 (line 20)
14:48:18 (line 25)

**KATHIE MUSE**

<table>
<tr><td></td><td>1</td><td>was?</td></tr>
<tr><td></td><td>2</td><td>A     No.</td></tr>
<tr><td></td><td>3</td><td>Q     Okay.  Do you know who would know?</td></tr>
<tr><td></td><td>4</td><td>A     Probably the Shasta District Fair.</td></tr>
<tr><td>14:48:30</td><td>5</td><td>Q     Okay.  Do you know who there would know in</td></tr>
<tr><td></td><td>6</td><td>particular at the fair --</td></tr>
<tr><td></td><td>7</td><td>A     Excuse me.  Can you say that again?</td></tr>
<tr><td></td><td>8</td><td>Q     Who at the fair would be -- what person at</td></tr>
<tr><td></td><td>9</td><td>the fair would know?</td></tr>
<tr><td>14:48:50</td><td>10</td><td>A     Probably Melanie.</td></tr>
<tr><td></td><td>11</td><td>Q     Probably Melanie.  All right.  Okay.  So</td></tr>
<tr><td></td><td>12</td><td>and then you -- your first text chain that we have</td></tr>
<tr><td></td><td>13</td><td>with the -- the ones that are not on your phone</td></tr>
<tr><td></td><td>14</td><td>beginning on August 31st with Fernandez and that was</td></tr>
<tr><td>14:49:06</td><td>15</td><td>the first -- those are the first -- were there any</td></tr>
<tr><td></td><td>16</td><td>texts before that point that you can recall?</td></tr>
<tr><td></td><td>17</td><td>A     I don't remember.</td></tr>
<tr><td></td><td>18</td><td>Q     Okay.  All right.  Okay.  So prior to that</td></tr>
<tr><td></td><td>19</td><td>point in time -- prior to August 31st, which is the</td></tr>
<tr><td>14:49:17</td><td>20</td><td>day the lawsuit was filed, you were -- I'm assuming</td></tr>
<tr><td></td><td>21</td><td>during that time you were having B.J. speak with</td></tr>
<tr><td></td><td>22</td><td>either the sheriff -- we didn't know which</td></tr>
<tr><td></td><td>23</td><td>sheriff -- but you're -- you're having B.J. speak</td></tr>
<tr><td></td><td>24</td><td>with the sheriff for you or the DA and you didn't</td></tr>
<tr><td>14:49:35</td><td>25</td><td>reach out to them beforehand before --</td></tr>
</table>

1                    PENALTY OF PERJURY

2

3          I, the undersigned, hereby certify that I

4    have read the foregoing deposition, that I know the

5    contents thereof, and I declare under penalty of

6    perjury under the laws of the State of California

7    that the foregoing is true and correct.

8

9          Executed on _____, 2023.

10

11

12

13          _____
            KATHIE MUSE
14                  ---o0o---

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I, CAROL J. CHASE, a Certified Shorthand
Reporter, licensed by the State of California,
License No. 13538, being empowered to administer
oaths and affirmations pursuant to Section 2093 (b)
of the Code of Civil Procedure, do hereby certify:

That the witness in the foregoing deposition,
KATHIE MUSE, was present at the time and place
specified and was by me sworn to testify to the
truth, the whole truth, and nothing but the truth;

That said proceeding was taken before me in
shorthand writing, and was thereafter transcribed
under my direction by computer-aided transcription;
That the foregoing transcript constitutes a full,
true, and accurate record of the proceeding which
took place; That I am not of counsel or attorney for
any of the parties hereto, or in any way interested
in the event of this cause, and that I am not
related to any of the parties hereto.

IN WITNESS WHEREOF, I have hereunto subscribed
my signature on this 25th day of November, 2023.

_____
CAROL J. CHASE
---oOo---

243

REDDING, CA      CHALLE, FISHER & MORFIN      (530) 246-0942