RYAN R. GORDON (SBN 278414)
VANESSA T. SHAKIB (SBN 287339)
**ADVANCING LAW FOR ANIMALS**
407 N. Pacific Coast Highway #267
Redondo Beach, CA 90277
Tel: (202) 996-8389
rgordon@advancinglawforanimals.org
vshakib@advancinglawforanimals.org

DANIEL J. KOLDE, ESQ.
**LAW OFFICES OF DANIEL J. KOLDE**
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel: 636.675.5383
Email: daniel.kolde.law@gmail.com
(*pro hac vice application to be filed*)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN  DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,<br><br>     Plaintiffs,<br><br>  v.<br><br>LIEUTENANT JERRY FERNANDEZ, individually and in his individual capacity as Sheriff for the County of Shasta; DETECTIVE JACOB DUNCAN, individually and in his individual  capacity as Sheriff for the County of Shasta; DETECTIVE JEREMY ASHBEE, individually and in his individual capacity as Sheriff for the County of Shasta; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association; COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual capacity; BJ MACFARLANE, in his individual capacity; KATHIE MUSE, in her individual and official capacity, and DOES 1 through 10,<br><br>     Defendants. | Case No. 2:22-cv-01527-DAD-AC<br><br><br>**PLAINTIFF JESSICA LONG'S STATEMENT OF DISCOVERY DISAGREEMENT RE PRODUCTION OF SUBPOENAED DOCUMENTS FROM NON-PARTY VERIZON RELATED TO DEFENDANT MELANIE SILVA'S WORK CELL PHONE (ECF 54) AND PERSONAL CELL PHONE (ECF 55)**<br><br>[Filed concurrently with Declaration of Ryan Gordon in Support]<br><br><br>Trial Date: March 24, 2025<br><br>Action Filed: August 31, 2022 |

1
JOINT STATEMENT

Pursuant to Local Rule 251(d), Plaintiff Jessica Long ("Mrs. Long") submits the following Joint Statement re Discovery Disagreement, in connection with her motion to compel Non-Party Verizon ("Verizon") to produce documents under Federal Rule of Civil Procedure 45. ECF Nos. 54, 55.

## I.   CONFERENCES OVER DISCOVERY DISPUTE

On or about January 19, 2024, Plaintiffs' counsel spoke to a Verizon representative, who stated that any subpoenas for cellular records needed to be faxed to (888) 667-0028. Declaration of Ryan Gordon, "Gordon Decl.," ¶ 44. On or about January 20, 2024, Plaintiffs' counsel served Verizon with a subpoena for Ms. Silva's work cell phone records (XXX XXX 4949), seeking records for "Any records concerning incoming or outgoing calls or texts … from June 25, 2022, through September 1, 2022, including call logs, call detail records, and text logs." *Id.* at ¶ 45. On or about January 25, 2024, Verizon represented to Plaintiffs' counsel that it will not satisfy the subpoena for Ms. Silva's personal cell phone records due to Public Utilities Code section 2981 and Code of Civil Procedure section 1985.3(f). *Id.* at ¶ 45, Ex. 14. Accordingly, Plaintiffs' counsel understood that the subpoena for the records at issue would not be satisfied absent a court order.

On or about February 26, 2024, Plaintiffs' counsel served Verizon with a subpoena for Ms. Silva's personal cell phone records (XXX XXX 0058), seeking records for "Any records concerning incoming or outgoing calls or texts … from June 25, 2022, through September 1, 2022, including call logs, call detail records, and text logs." Gordon Decl. ¶ 49. However, the initial subpoena contained an incorrect number. *Id.* Plaintiffs' counsel corrected it on March 5, 2024 and then Verizon responded in writing on March 6, 2024, 2024 that it could not produce any records absent a court order for Ms. Silva's personal cell phone records (XXX XXX 0058). *Id.* at Ex. 17.

Ms. Silva's counsel emailed Plaintiffs' counsel objecting to the subpoena. Gordon Decl. ¶ 47, Ex. 15. On March 4, 2024, the parties met and conferred in satisfaction of Hon. Allison Claire's standing order. During the March 4, 2024 meet and confer, Ms. Silva's counsel requested a protective order. Plaintiffs agreed to only use the records in this case and not publish identifying information after the Court compels production and are currently awaiting Ms. Silva's draft protective order.

## II.   NATURE OF ACTION AND INSTANT FACTUAL DISPUTE OVER DISCOVERY

ADVANCING LAW FOR ANIMALS

On August 31, 2022, Mrs. Long and her minor daughter E.L. filed the underlying civil rights litigation, as amended on March 2, 2023, and again on October 12, 2023. ECF Nos. 1, 16, 25 (Second Amended Complaint or "SAC"). The SAC includes claims against Shasta District Fair & Events Center ("SDF"), CEO Ms. Silva, SDF Livestock Manager Defendant B.J. Macfarlane ("Mr. Macfarlane), and 4-H representative Defendant Kathie Muse ("Mrs. Muse"), through § 1983 for violations of the Fourth Amendment, ¶¶ 105-110, violations of the Fourteenth Amendment, ¶¶ 111-115, and First Amendment Viewpoint Discrimination, ¶¶ 181-188, with additional claims against the County of Shasta, Shasta County Sheriff's Department, Lieutenant Fernandez, Detective Duncan, and Detective Ashbee for constitutional violations and other state law claims. *See generally* SAC. Plaintiffs' claims center around the wrongful search and seizure of Plaintiffs' goat Cedar, who they allege was then ultimately slaughtered without notice and opportunity to be heard in violation of their rights to Due Process, among other things.

The instant dispute is over Defendant Silva's cell phone records. Plaintiff Jessica Long ("Mrs. Long") served a subpoena for personal cell phone and work cell phone. Verizon is the carrier for both. Verizon refuses to release the phone records absent a court order. Regardless of any protective order, Plaintiffs agree not to use Silva's personal cell records outside of this case.

**III. PLAINTIFFS CONTEND THE COURT SHOULD COMPEL NON-PARTY VERIZON TO COMPLY WITH THE RECORDS SUBPOENA FOR PRODUCTION OF DOCUMENTS REFLECTING CALLS AND TEXT MESSAGES FOR DEFENDANT SILVA'S WORK CELL PHONE AND PERSONAL CELL PHONE**

**A. Relevant Facts and Allegations**

In general terms, Plaintiffs claim that Defendants illegally seized and slaughtered their beloved goat Cedar in violation of Due Process, among other things. *See generally* SAC. At the time Plaintiffs filed suit, they believed Cedar was illegally slaughtered and eaten at the July 9 government barbecue organized by Mrs. Muse. But discovery conducted to date has drastically altered Plaintiffs' understanding of the facts.

**i. Plaintiffs Withdraw Cedar from SDF Youth Livestock Auction**

Plaintiffs allege that, in April 2022, they purchased E.L. a young male goat who E.L. named Cedar. E.L. fed and cared for Cedar every day until almost July 2022, and bonded with Cedar as if he

ADVANCING LAW FOR ANIMALS

1   were a puppy. SAC ¶ 20. Plaintiffs further allege that E.L. enrolled in her local 4-H chapter at that

2   time. SAC ¶ 21. On or about June 25, 2022, pursuant to her 4-H program, E.L. exhibited Cedar in the

3   junior livestock auction at the annual fair held by SDF. SAC ¶¶ 22-25. Plaintiffs allege that, although

4   Defendant Mrs. Muse, on behalf of Senator Brian Dahle and Assemblywoman Megan Dahle, bid on

5   Cedar's meat, no sale of Cedar or his meat occurred. SAC ¶¶ 27-29, 33. Although the Dahles may

6   have intended to donate Cedar's meat to the July 9, 2022 barbecue operated by 4-H ("July 9

7   Government Barbecue"), because the sale of Cedar's meat did not occur, Cedar's meat was never

8   donated. *Id.* at 40-41. Most saliently, Plaintiffs allege after E.L. participated in the auction, she became

9   despondent and emotional. Shortly thereafter that same evening, she sobbed in Cedar's pen and told

10  to her mother she didn't want him killed. Plaintiffs allege E.L. exercised her statutory rights as a minor

11  under California Family Code section 6710 to disaffirm any contract of sale that might have existed,

12  and left the fair with Cedar. *Id.* at ¶ 35.

13          **ii.      Following Cedar's Withdrawal, SDF Defers to CDFA for Direction**

14          Following Plaintiffs' removal of Cedar from SDF fairgrounds, Plaintiffs offered in writing to

15  pay for any damages claimed by SDF. Nonetheless, on about June 26, 2022, Defendant Macfarlane

16  told Mrs. Long she would be prosecuted for removing Cedar. On June 28 at 9:10 am, Ms. Silva spoke

17  on the phone with Mike Francesconi, the Branch Chief of Fairs & Expositions at the California

18  Department of Agriculture (CDFA). Gordon Decl. ¶ 4, Ex. 1; *id.* at ¶ 34, Ex. 8 (Silva Vol. 2 Dep.

19  412:18-413:17). Ms. Silva's handwritten notes reflecting conversation with Mr. Francesconi that day

20  state, "[Pick up] goat" and "dont [sic] pursue charges." *Id.* at ¶ 34, Ex. 8 (Silva Vol. 2 Dep. 412:18-

21  413:17). On June 28 at 1:31 pm, Ms. Silva emailed Mrs. Long, rejecting Mrs. Long's previously-

22  emailed offer to pay damages, explaining, the "social media this has been a negative experience for

23  the fairgrounds[,]" and stating, "I have spoken with the California Department of Food and Agriculture

24  and they have informed me that for the good of all we have to stick to the State Rules. You will need

25  to bring the goat back to the Shasta District Fair immediately." *Id.* at ¶ 4(b), Ex. 1 at 4. Shortly

26  thereafter, at 3:07 pm, Ms. Silva forwarded her email to Mr. Francesconi, stating, "Hi Mike, I have

27  included the response I sent her. I have also updated my Board Member[.]" *Id.* at ¶ 4(c), Ex. 1 at 3.

28  Mr. Francesoni responds at 3:08 pm, "Hello Melanie Did BJ go out to pick up the goat? Thanks

ADVANCING LAW FOR ANIMALS

4

Mike[.]" *Id.* at ¶ 4(d), Ex. 1 at 3. Ms. Silva responds within the hour requesting further direction, asking "Hi Mike, She is not responding to either of us. Should we involve CHP next?" *Id.* at ¶ 4(e), Ex. 1 at 2. Mr. Francesconi defers to Mr. Flores, telling Ms. Silva on the evening of June 28, "I am checking with Michael Flores on how he would like you to proceed. I will let you know when I learn more. Thanks Mike[.]" *Id.* at ¶ 4(f), Ex. 1 at 1.

### iii. When Mrs. Long Does Not Return Cedar, SDF and CDFA Coordinate and Call Shasta County Sheriff's Department

On June 29 at 9:06 am, Ms. Silva emailed Mr. Francesconi, "Hi Mike, Please call my cell number [omitted] when you call back. We have the phones forwarded since they posted our number to instagram." Gordon Decl. at ¶ 4(g), Ex. 1 at 1. Continuing on a June 29, 8:51 am text thread, Ms. Silva texted Mr. Macfarlane, stating, "We are contacting the Sheriff for the goat waiting for a call back[.]" *Id.* ¶ 5, Ex. 19. This is consistent with other deposition testimony. Mr. Macfarlane testified either he or Ms. Silva called Sheriff Johnson to report Ms. Long's alleged felony theft. *Id.* at ¶ 26, Ex. 7 (Macfarlane Dep. Vol. 1 191:23-191:11; 193:04-21). Lieutenant Fernandez testified that at either the end of June 2022 or the beginning of July 2022, Sheriff Johnson instructed him to investigate the alleged theft of Cedar, and explained Cedar's removal was a "big deal" with "a lot of the fair boards" in California. *Id.* at ¶ 8, Ex. 3 (Lieut. Fernandez Dep. 77:13-25; 78:10-14; 83:05-14; 277:02-279:09). At 9:49 am, Mrs. Long again sent Ms. Silva a second letter, stating, among other things, Cedar was Plaintiff E.L.'s personal property; SDF never owned Cedar; grand theft had no basis; and the letter was "in anticipation of litigation" of their civil dispute ("Notice of Civil Claim and Intention to Sue"). *Id.* at ¶ 18.

### iv. Lieutenant Fernandez and Detective Duncan Drive Over 500 Miles on the Evening of July 8 to Illegally Seize Cedar and Turn Him Over for Slaughter

On June 29 at 12:27 pm, Ms. Silva emailed several documents to Lieut. Fernandez, including Mrs. Long's Notice of Civil Claim and Intention to Sue. Gordon Decl. ¶ 18, Ex. 6 (Silva Dep. Vol. 1 288:03-23). Thereafter, the night before the July 9 Government Barbecue, Lieutenant Fernandez and Detective Duncan drove several hundred miles from Shasta County to Bleating Hearts Sanctuary in Napa County on the pretense of a crime to execute the warrant for Cedar's seizure. SAC ¶ 75. They discovered Cedar was not there, ascertained Cedar's correct location from individuals at Bleating

5

ADVANCING LAW FOR ANIMALS

Hearts Sanctuary, and then travelled to the Billy's Mini Farm. Gordon Decl. ¶ 11, Ex. 4 (Det. Duncan Dep. 144:25 – 147:17). Once there, Lieutenant Fernandez and Detective Duncan seized Cedar, and, at the direction of Mrs. Muse, turned him over to Mr. Macfarlane. Gordon Decl. ¶ 9, Ex. 3 (Fernandez Dep. 269:16-270:10). No member of law enforcement or any defendant in this case notified Mrs. Long of Cedar's seizure. Rather, Billy's Mini Farm informed her of Cedar's seizure on about July 12, 2022, after the July 9 Government Barbecue.

> **v.**      **Cedar was Not Slaughtered and Served at the July 9 Government Barbecue for Which Defendants so Fervently Claim He Was Earmarked**

Although Mr. Macfarlane received Cedar at Mrs. Muse's direction either late at night July 8 or in the early morning of July 9, Cedar was not eaten at the July 9 Government Barbecue. Rather, according to Mrs. Muse, she received replacement meat from another goat from the board of the Shasta District Fair. Gordon Decl. ¶ 15, Ex. 5 (Muse Dep. 204:13-205:20).

> **vi.**      **SDF Maintains Possession of Cedar for Weeks Post-Seizure, Awaiting Approval from CDFA, Sheriff's Department, and District Attorney to Slaughter Cedar—Despite Repeated Contact from Plaintiffs' Counsel**

Neither the Dahles nor Mrs. Muse ever paid for Cedar. Gordon Decl. Gordon Decl. ¶ 35, Ex. 8 (Silva Vol. 2 Dep. 431:14-20). Nonetheless, Mr. Macfarlane held Cedar until Cedar's slaughter on July 28, 2022. Mr. Macfarlane testified that, from his perspective, he was operating under the direction of Ms. Silva, the Sheriff, the CDFA, and the District Attorney. *Id*. at ¶ 29, Ex. 7 (Macfarlane Dep. Vol. 1, 210:25-211:10). Mr. Macfarlane stated that between July 11-25, 2022, he spoke with Sheriff Johnson "a couple times maybe." *Id*. at ¶ 31, Ex. 7 (Macfarlane Dep. Vol. 1 207:10-22). Mr. Macfarlane's testimony is consistent with a July 11 text message he sent Mrs. Muse, stating, "Good morning … Talked to sheriff and he said to wait until he talks to DA before we kill goat." *Id*. at ¶ 30, Ex. 7 (Macfarlane Dep. Vol. 1, 204:01-205:08). In deposition, Mr. Macfarlane stated, in this text message, he was referring to Sheriff Michael Johnson and District Attorney Stephanie Bridgett. *Id*.

Mr. Macfarlane also testified he spoke to Ms. Silva "multiple times" through the period of July 8-28, 2022, as "she was the one that was gearing it, so what -- with the state and the sheriff, so..." Gordon Decl. ¶ 28, Ex. 7 (Macfarlane Dep. Vol. 1, 208:25-209:17). Mr. Macfarlane was clear that "I don't remember if [Ms. Silva] was the one talking to the sheriff. I think -- I know I did a couple times …." *Id*. Mr. Macfarlane further stated Ms. Silva instructed him to hold Cedar "Until the state said what

ADVANCING LAW FOR ANIMALS

ADVANCING LAW FOR ANIMALS

was going to happen." *Id*. at ¶ 27, Ex. 7 (Macfarlane Dep. Vol. 1 202:11-203:23). He clarified by "the state" he was referring to Mr. Francesconi or the "CDFA's lawyer." *Id*.

Mrs. Muse also stated individuals at the Sheriff's Department and District Attorney's Office were involved. She testified "I was told from B.J. that the DAs and the sheriffs office, I don't know which department, had told him to make sure that we save the ear tags." Gordon Decl. ¶ 14, Ex. 5 (Muse Dep. 201:19-202:08).[1] Ms. Silva stated she believed Mr. Macfarlane and Ms. Muse were awaiting permission from the DA to slaughter Cedar. *Id*. at ¶¶ 19-20, Ex. 6 (Silva Dep. Vol. 1, 66:04-10; 66:25-67:24; 68:17-22; 329:05-18).

Within this same period, between July 15-27, 2022, Mrs. Long's counsel contacted both the Sheriff's Department and Shasta County Counsel multiple times, demanding to know what happened to Cedar and that he be kept alive. Gordon Decl. ¶ 43.

### vii. Phone Records and Text Messages Produced to Date Suggest Someone Gave Ms. Silva the Greenlight to Have Cedar Killed

On July 22 at 11:17 am, Ms. Silva called Mr. Macfarlane and the two spoke for 4 minutes. Gordon Decl. at ¶ 39, Ex. 12. At 11:22 am, Mr. Macfarlane called Mrs. Muse, and the two spoke for over 4 minutes. *Id*. Also at 11:22 am, Mr. Macfarlane texted Ms. Silva, "What's gals name at bowman? Kathy said ok but no one needs to know about this. U me and Kathy are only ones. It got killed and donated to non profit if anyone asks." *Id*. at ¶ 37, Ex. 10. Ms. Silva responded, "Serene[,]" then "Thank you[,]" then "We are a non profit 😊🤣🤣🤣[.]" *Id*. At 11:29 am, Mr. Macfarlane called Bowman Meat Company, and arranged for Cedar's slaughter. *Id*. at ¶ 39, Ex. 12. Bowman Meat Company killed Cedar on July 28. To date, neither Ms. Silva, Mr. Macfarlane, nor Mrs. Muse have offered any credible testimony as to who greenlit Cedar's death, or who, if anyone, received Cedar's meat. Ms. Silva, Mr. Macfarlane, and Mrs. Muse all originally stated they did not know who received Cedar's meat. Gordon Decl. ¶ 16, Ex. 5 (Muse Dep. 235:19-236:10); *id*. at ¶¶ 19-23, Ex. 6 (Silva Dep. Vol. 1, 62:22 -63:03; 66:04-10; 66:25-67:24; 68:17-22; 329:05-18). In his second deposition, Mr. Macfarlane claimed his memory was refreshed and that Vista Real Estate received Cedar's meat. *Id*. at ¶ 42(a), Ex. 13 (Macfarlane Dep. Vol. 2, 349:24-350:09).

---

[1]    By contrast, Mr. Macfarlane testified that Mrs. Muse told him to save Cedar's ear tags. Gordon Decl. ¶ 32, Ex. 7 (Macfarlane Dep. Vol. 1, 212:13-213:04).

**ADVANCING LAW FOR ANIMALS**

### viii.      Phone Records and Text Messages Produced to Date Contradict Critical Portions of Ms. Silva's Deposition Testimony

On the one hand, Ms. Silva testified she didn't have any contact with Mr. Macfarlane while he was in possession of Cedar, Gordon Decl. ¶ 21, Ex. 6 (Silva Dep. Vol. 1 63:02-03); she didn't know that Mr. Macfarlane had Cedar, *id.* at ¶ 22, Ex. 6 (Silva Dep. Vol. 1 62:02-24; 64:13-15; 69:18-24); she "didn't have a say" in what happened to Cedar, *id.* at ¶ 23, Ex. 6 (Silva Dep. Vol. 1 68:06-07); she "never knew" Cedar was killed on July 28, *id.*; and that she "just wasn't curious" about Cedar and "didn't give it as much thought as [Plaintiffs' counsel] is saying[,]" *id.*, Ex. 6 (Silva Dep. Vol. 1 123:02-124:03; 183:01-15).

On the other hand, on July 11—the same day Mr. Macfarlane texted Mrs. Muse "Talked to sheriff and he said to wait until he talks to DA before we kill goat"—Ms. Silva emailed Mrs. Muse the Dahle's invoice for Cedar, and wrote, "Hi Kathie, I have attached their bills. I appreciate the update!" Gordon Decl. ¶ 35, Ex. 20. Plaintiffs contend this email indicates a previous and recent conversation about Cedar. On July 18, sometime after 10:29 am, Ms. Silva texted Mr. Macfarlane, "The word goat makes my eye twitch now 🤣🤣🤣🤣🤣🤣🤣[,]" to which Mr. Macfarlane texted Ms. Silva, "It should. Lol[.]" *Id.* at ¶ 36, Ex. 9. On July 22, the phone call sequence involving Ms. Silva as described *supra* takes place. Additionally, on July 22, as described *supra*, Ms. Silva and Mr. Macfarlane text about their cover story as to Cedar's ultimate disposition, and Ms. Silva provides the name of the relevant employee at company who ultimately butchers Cedar. On July 25 at 3:15 pm, Ms. Silva called Mr. Macfarlane and the two had a short conversation. *Id.* at ¶ 39, Ex. 12. Later that day at 3:31 pm, Mr. Macfarlane called Ms. Silva and the two spoke for over 5 minutes. *Id.* On July 28, Mr. Macfarlane texted Ms. Silva, "Goat is getting butchered within the half hour. Finally." *Id.* at ¶ 38, Ex. 11.

### ix.      Mr. Macfarlane Retracts Prior Deposition Testimony

In the second volume of his deposition, Mr. Macfarlane stated that Ms. Silva and Mrs. Muse were in contact with the Sheriff's Department and the District Attorney, and that he has never spoken with Sheriff Johnson regarding Cedar. Gordon Decl., ¶¶ 40-42, Ex. 13 (Macfarlane Dep. Vol. 2, 250:08-251:08; 269:20-23).

### B.      Mrs. Long Serves Subpoenas for Records of Ms. Silva's Work and Personal Cell

8

**Phones**

Mrs. Long served subpoenas as set forth *supra* at Section I. Verizon stated it cannot produce records pursuant to either subpoena based on the following:

> Pursuant to Cal. Code. Civ. Pro. Section 1985.3(f) and Cal. Public Utilities Code section 2891, Verizon requires that the subpoenaing party provide us with consent from the account holder that is billed for the phone number requested. Otherwise, Verizon considers the subpoena invalid and will not release the records unless we receive a court order requiring us to produce the records notwithstanding section 2891. See, e.g., *Ades v. Omni Hotels Mgmt. Corp.*, 2015 U.S. Dist. LEXIS 65493 (C.D. Cal. May 18, 2015) (the Court concludes that, under section 2891, the information sought should not be released to plaintiffs without the subscribers' express consent.).

Gordon Decl. ¶ 45, Ex. 14; ¶ 48, Ex. 16.

Mrs. Long now requests this Court order the Custodian of Records at Verizon to comply with subpoenas for Mrs. Silva's work and personal cell phones.

**C.    The Subpoenaed Phone Records are Relevant and Discoverable**

Ms. Silva's work (XXX-XXX- 4949) and personal cellular (XXX-XXX- 0058) phone records are both relevant and discoverable. Under Fed. R. Civ. P. 45, any party may serve a subpoena commanding a nonparty "to attend and give testimony or to produce and permit inspection and copying of" documents. Fed. R. Civ. P. 45(a)(1)(C). Further, "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

Fed. R. Civ. P. 26(b) establishes the scope of discovery and states in pertinent part, "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case." *Oppenheimer Fund, Inc., v. Sanders,* 437 U.S. 340, 351 (1978). Cell phone records of parties, like those at issue in the instant dispute, are recognized as relevant. *See, e.g., Murray v. City of Carlsbad*, 2010 U.S. Dist. LEXIS 63933, *5 (S.D. Cal. June 25, 2010) (explaining "phone records are discoverable if for no other reason than the impeachment of Officer Luc."). The subpoena is subject to the relevance requirements set forth in Rule 26(b). The Rutter Group, Federal Civil Procedure Before Trial § 11:2305 (2005).

1    Good cause exists here. The facts of this case are the epitome of bad faith. Defendants here all

2    allege Mrs. Muse was the victim of a theft—despite the fact that no one ever paid for Cedar and,

3    regardless, Mrs. Muse received replacement meat for the Government Barbecue. *See* Gordon Decl. ¶

4    35, Ex. 8 (Silva Vol. 2 Dep. 431:14-20). Plaintiffs have diligently conducted discovery in this matter

5    and, to date, it is still unclear why Cedar's slaughter was delayed until July 28, 2022, particularly in

6    light of calls from Plaintiffs' counsel from July 15-27, 2022. Plaintiffs contend telephone records of

7    Ms. Silva will help fill the gaps in this case. This is critical in light of the fact Ms. Silva's testimony

8    contradicts texts and phone logs already discovered. Ms. Silva testified she didn't have any contact

9    with Mr. Macfarlane while he was in possession of Cedar, Gordon Decl. ¶ 21, Ex. 6 (Silva Dep. Vol.

10   1 63:02-03); she didn't know that Mr. Macfarlane had Cedar, *id*. at ¶ 22, Ex. 6 (Silva Dep. Vol. 1,

11   62:02-24; 64:13-15; 69:18-24); she "didn't have a say" in what happened to Cedar, *id*. at ¶ 23, Ex. 6

12   (Silva Dep. Vol. 1 68:06-07); she "never knew" Cedar was killed on July 28, *id*.; and that she "just

13   wasn't curious" about Cedar and "didn't give it as much thought as [Plaintiffs' counsel] is saying[,]"

14   *id*., Ex. 6 (Silva Dep. Vol. 1 123:02-124:03; 183:01-15).

15   But Ms. Silva's above statements under oath are contracted by discovery produced to date. For

16   example, on July 22, 2022, as described *supra*, Ms. Silva and Mr. Macfarlane text about their cover

17   story as to Cedar's ultimate disposition (i.e., "It got killed and donated to non profit if anyone asks"),

18   and Ms. Silva provides the name of the relevant employee at the company who ultimately butchers

19   Cedar. Gordon Decl. ¶ 37, Ex. 10. On July 28, Mr. Macfarlane texted Ms. Silva, "Goat is getting

20   butchered within the half hour. Finally." *Id*. at ¶ 38, Ex. 11; *see also id*. at 35, Ex. 20. Clearly, Ms.

21   Silva did talk to Mr. Macfarlane and knew how and when Cedar was killed. Mr. Macfarlane's phone

22   records also reflects calls with Ms. Silva when he had Cedar. *Id*. at ¶ 39, Ex. 12.

23   Mr. Macfarlane's testimony has also changed from one deposition sitting to the next—first

24   stating he spoke to Sheriff Johnson, and later retracting and stating Ms. Silva and Mrs. Muse were in

25   contact with the Sheriff's Department and the District Attorney. Gordon Decl. at ¶ 30, Ex. 7

26   (Macfarlane Dep. Vol. 1, 204:01-205:08); *id*. at ¶¶ 40-42, Ex. 13 (Macfarlane Dep. Vol. 2, 250:08-

27   251:08; 269:20-23). In this regard, Mrs. Silva's work cell (XXX XXX-4949) and personal cell (XXX

28   XXX-0058) phone records are relevant because they may reveal with whom Ms. Silva spoke on July

1  22 before calling Mr. Macfarlane; may reveal what further phone conversations, if any, Ms. Silva had

2  with other defendants, CDFA, and law enforcement officials, or the District Attorney's office, around

3  critical dates; and may serve as a basis for impeachment.

4          "A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek

5  a protective order or make a motion to quash." *I.R. v. City of Fresno*, 2014 WL 1419305, **2-3 (E.D.

6  Cal. Apr. 11, 2014); *see also Pennwalt Corp. v. Durand–Wayland, Inc.,* 708 F.2d 492, 494 n. 5 (9th

7  Cir.1983) ("Once the person subpoenaed objects to the subpoena ... the provisions of Rule 45(d) come

8  into play. Then the party seeking discovery must obtain a court order directing compliance."). Verizon

9  has not objected on the basis of relevance and, therefore, has waived that objection.

10         **D.      Non-Party Verizon Demands A Court Order Based On Meritless Objections**

11         Verizon has withheld documents based on meritless objections based on California Public

12  Utility Code § 2891 and California Code of Civil Procedure section 1985.3(f). Gordon Decl. ¶ 45, Ex.

13  14; ¶ 48, Ex. 16.

14         § 1985.3(f) provides:

15         A subpoena duces tecum for personal records maintained by a telephone corporation
           which is a public utility, as defined in Section 216 of the Public Utilities Code,
16         shall not be valid or effective unless it includes a consent to release, signed by the consumer
           whose records are requested, as required by Section 2891 of the Public Utilities Code.
17

18  California Public Utility Code § 2891 provides:

19         No telephone or telegraph corporation shall make available to any other person or
           corporation, without first obtaining the residential subscriber's consent, in writing, any
20         of the following information:

21         (1) The subscriber's personal calling patterns, including any listing of the telephone
               or other access numbers called by the subscriber, but excluding the
22             identification to the person called of the person calling and the telephone
               number from which the call was placed, subject to the restrictions in Section
23             2893, and also excluding billing information concerning the person calling
               which federal law or regulation requires a telephone corporation to provide to
24             the person called.

25         Both of these objections are improper. First, the subpoenaed records are for cellular telephones

26  and § 2891 (which both objections arise out of) "does not appear to apply to cell phone records." *Kaur*

27  *v. City of Lodi* (E.D. Cal 2016) 2016 WL 10679575, at *1; *Kamalu v. Walmart Stores, Inc.,* 2013 WL

28

ADVANCING LAW FOR ANIMALS

4403903 at *6, (E.D. Cal. 2013)  (explaining § 2891(a) applies only to "residential subscribers," and does not apply to subpoenas for cell phone records).

Next, "Cal Civ. Proc. Code § 1985.3(a) is, by its terms, inapplicable to subpoenas issued in federal court cases." *Kaur v. City of Lodi, supra,* at *1. Lastly, "[a]ssertions of privileges in federal question cases are governed by federal common law," *Hutton v. City of Martinez,* 219 F.R.D. 164, 166 (N.D. Cal. 2003)*,* not the law of the forum state. *See, e.g.,* Fed. R. Evid. 501*; United States v. Zolin,* 491 U.S. 554, 562 (1989); *Kerr v. United States District Court for the Northern District of California,* 511 F.2d 192, 197 (9th Cir. 1975)*; Jackson v. County of Sacramento,* 175 F.R.D. 653, 654 (E.D. Cal. 1997)*; see also Cooley v. City of Vallejo,* 2013 U.S. Dist. LEXIS 155175, **20-21 n. 4 (E.D. Cal. Oct. 29, 2013) ("federal law governs here.").  *"*It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities." *Miller v. Pancucci,* 141 F.R.D. 292, 297-98 (C.D. Cal. 1992)*; see also Kelly v. City of San Jose,* 114 F.R.D. 653, 661 (N.D. Cal. 1987) (recognizing the "profound[] importan[ce]" of federal civil rights laws).

As Verizon has asserted no appropriate objections, the Court should order production of the cellular records at issue, including the work cell (XXX XXX-4949) and personal cell (XXX XXX-0058).

### E.    Ms. Silva's Objections Based On Privacy, Relevance, and Overbreadth Should Be Overruled

Ms. Silva's attorney objected to Mrs. Long's subpoena on the basis of privacy, relevance, and overbreadth. The privacy objection is improper as to the work cell because there is no expectation of privacy on a work line. *See Herbalife International of America, Inc. v. Ford,* 2009 WL 10715605, at *5 (C.D. Cal. Mar. 6, 2009.)  Regardless, Plaintiffs will agree to limit their use of the records to this lawsuit alone, redact sensitive information, and not disseminate them to third parties. Additionally, the records sought are not overbroad, as they merely seek phone and text logs records for approximately two months—specifically, between June 25, 2022, the date Cedar was removed, through September 1, 2022, the day this lawsuit was filed. With respect to relevance, the records are relevant for the reasons stated in previously.

1    **IV.    DEFENDANT SILVA'S CONTENTIONS**

2          Counsel for Ms. Silva did not provide language for inclusion as of close of business on March

3    6, 2024.

4

5                                          **ADVANCING LAW FOR ANIMALS**

6

7    Dated:  March 6, 2024                 By:   /s/Ryan Gordon
                                            Ryan Gordon
8                                          Vanessa Shakib
                                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Ryan Gordon, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 407 N. Pacific Coast Hwy. #267, Redondo Beach, CA 90277.

On March 6, 2024, I served on the interested parties in this action the following document(s) described as **PLAINTIFF JESSICA LONG'S STATEMENT OF DISCOVERY DISAGREEMENT RE PRODUCTION OF SUBPOENAED DOCUMENTS FROM NON-PARTY VERIZON RELATED TO DEFENDANT MELANIE SILVA'S WORK CELL PHONE (ECF 54) AND PERSONAL CELL PHONE (ECF 55)**

☒ By placing ☒ a true copy thereof enclosed in a sealed envelope addressed as follows:

CHRISTOPHER M. PISANO,
christopher.pisano@bbklaw.com
DAMIAN A. NORTHCUTT,
Damian.Northcutt@bbklaw.com
JULIA HERNANDEZ
Julia.Hernandez@bbklaw.co
BEST BEST & KRIEGER LLP 300
South Grand Avenue 25th Floor
Los Angeles, California 90071

JOHN C. BRIDGES
CALIFORNIA DEPARTMENT OF JUSTICE
Tort and Condemnation Section
1300 I Street, Suite 1210
Sacramento, CA, 95814
John.Bridges@doj.ca.gov

Kelly J. Snowden, Esq.
Kelly.snowden@rswslaw.com
Tonya.hamilton@rswslaw.com

VERIZON
C/O Verizon Security Subpoena Compliance
180 Washington Valley Road
Bedminster NJ 07921
Fax: 1.888.667.0028.

☒   **BY FAX**: by transmitting via facsimile the document(s) listed above to the fax number(s) set forth for Verizon at its request.

☐   **OVERNIGHT DELIVERY**: I deposited such envelope in a facility regularly maintained by ☒ FEDERAL EXPRESS with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ FEDERAL EXPRESS authorized to receive documents at 407 N. Pacific Coast Hwy, #267, Redondo Beach, CA 90277 with delivery fees fully provided for.

☒   **BY E-MAIL OR ELECTRONIC TRANSMISSION**: The document(s) was sent from e-mail address rgordon@advancinglawforanimals.org to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒   [Federal]   I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on March 6, 2024, at Los Angeles, California.

_____
/s/Ryan Gordon
Ryan Gordon

14

JOINT STATEMENT

ADVANCING LAW FOR ANIMALS