# EXHIBIT 13

# In The Matter Of:
*LONG vs.*
*FERNANDEZ*

*B.J. MACFARLANE*
*Vol. 2*
*February 9, 2024*

*Challe, Fisher & Morfin*
*1828 South Street*
*Redding, California  96001*
*(530)246-0942*
*cfmdepos@att.net*

Original File B.J. Macfarlane, Vol II.txt
**Min-U-Script® with Word Index**

```
 1                UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF CALIFORNIA

 3                    SACRAMENTO DIVISION

 4

 5  E.L., a minor, by and through    )
    her general guardian, JESSICA    )
 6  LONG; JESSICA LONG, an           )
    individual,                      )
 7                                   )
            Plaintiffs,              )  Case No.
 8  vs.                              )  2:22-cv-01527-DAD-AC
                                     )
 9  LIEUTENANT JERRY FERNANDEZ       )
    individually and in his          )
10  individual capacity as Sheriff   )
    for the County of Shasta;        )
11  DETECTIVE JACOB DUNCAN,          )
    individually and in his          )
12  individual capacity as Sheriff   )
    for the County of Shasta;        )
13  DETECTIVE JEREMY ASHBEE,         )
    individually and in his          )
14  individual capacity as Sheriff   )
    for the County of Shasta;        )
15  SHASTA DISTRICT FAIR AND EVENT   )
    CENTER, a district agricultural  )
16  association; COUNTY OF SHASTA;   )
    SHASTA COUNTY SHERIFF'S          )
17  DEPARTMENT; MELANIE SILVA, in    )
    her individual capacity; BJ      )
18  MACFARLANE, in his individual    )
    capacity; and DOES 1 through     )
19  10,                              )
                                     )
20          Defendants.              )
    _____)
21

22          VIDEO DEPOSITION OF BJ MACFARLANE

23             PAGE 225-391, VOLUME II

24             FRIDAY, FEBRUARY 9, 2024

25
```

**B.J. MACFARLANE**

```
08:33:32AM  1   A.      I never added him, I don't believe, as a
08:33:36AM  2   contact.  I have not seen it.  I lost a lot of stuff
08:33:39AM  3   when I changed my phone number here in -- I don't know.
08:33:43AM  4   Q.      Okay.  So who gave you the -- you said you were
08:33:48AM  5   waiting on permission to -- for direction to have Cedar
08:33:53AM  6   slaughtered, correct?
08:33:54AM  7   A.      Yes.
08:33:54AM  8   Q.      When it was at your house?  Who ultimately gave
08:33:58AM  9   you the direction to?
08:33:58AM 10   A.      I believe it was either Melanie or Kathie.
08:34:01AM 11   Q.      Melanie or Kathie.  Did -- why do you believe
08:34:04AM 12   that?
08:34:04AM 13   A.      Because that's who -- I don't know.  That's who
08:34:10AM 14   the -- my boss -- it wasn't even my boss.  The CEO of
08:34:16AM 15   the fair and the owner of the goat.
08:34:17AM 16   Q.      Okay.  And your understanding was that they were
08:34:20AM 17   in communication with law enforcement?
08:34:21AM 18   A.      Yes.
08:34:23AM 19   Q.      And by "law enforcement," I mean the sheriff's
08:34:26AM 20   office, and you said maybe the sheriff, but it maybe it
08:34:30AM 21   was the lieutenants as well?
08:34:32AM 22           MR. NORTHCUTT:  Objection.  Misstates testimony.
08:34:34AM 23   He never said it was the sheriff.  He, in fact,
08:34:37AM 24   testified he said it wasn't the sheriff.  It was the
08:34:40AM 25   sheriff's department.
```

## B.J. MACFARLANE

```
08:34:40AM  1         MR. GORDON:  Q.  He said -- I thought you said I
08:34:42AM  2  believe -- you don't believe so, so I'm assuming you
08:34:45AM  3  mean maybe you don't know who it was?  You said they
08:34:49AM  4  were in communication with --
08:34:50AM  5  A.      The sheriff's department.
08:34:51AM  6  Q.      The sheriff's department, okay.  And the DA as
08:34:54AM  7  well?  Was your understanding?
08:35:00AM  8  A.      Yeah.
08:35:01AM  9  Q.      Why did you believe that Melanie was in
08:35:04AM 10  communication with the sheriff's department?
08:35:06AM 11  A.      Because she was the CEO.  She was the one --
08:35:14AM 12  Q.      Did she tell that to you?
08:35:16AM 13  A.      I don't know.  I don't recall.
08:35:19AM 14  Q.      So you're assuming because she's the CEO that
08:35:21AM 15  she was in communication with the sheriff's department?
08:35:23AM 16  A.      Yes.
08:35:24AM 17  Q.      Okay.  So Melanie or Kathie Muse ultimately gave
08:35:32AM 18  you authority to kill -- have Cedar sent to slaughter?
08:35:37AM 19  A.      I believe so.
08:35:40AM 20  Q.      You believe so.  About what date did they do
08:35:42AM 21  that?
08:35:43AM 22  A.      I don't recall.
08:35:44AM 23  Q.      Where did you -- what date did you arrange for
08:35:48AM 24  Cedar's slaughter?
08:35:49AM 25  A.      I do not recall.
```

B.J. MACFARLANE

| | | |
|---|---|---|
| 09:07:59AM | 1 | all right? |
| 09:08:00AM | 2 | Okay.  So it's your testimony that after Cedar |
| 09:08:02AM | 3 | was dropped off at your house on the evening of July |
| 09:08:05AM | 4 | 8th, and between July 8th and July 28th, either Melanie |
| 09:08:09AM | 5 | or Kathie told you to have Cedar slaughtered, correct? |
| 09:08:12AM | 6 | A.     Correct. |
| 09:08:13AM | 7 | Q.     All right.  So it's your testimony that after |
| 09:08:16AM | 8 | Cedar was dropped off at your house on the evening of |
| 09:08:18AM | 9 | July 8th, between that date and July 28th, you did not |
| 09:08:21AM | 10 | speak with anyone at the sheriff's department; correct |
| 09:08:23AM | 11 | or incorrect? |
| 09:08:24AM | 12 | A.     Incorrect.  Say that again. |
| 09:08:28AM | 13 | Q.     Okay.  So between the time that Cedar was |
| 09:08:31AM | 14 | dropped off on July 8th through July 28th, it's your |
| 09:08:34AM | 15 | testimony that you did not speak with anyone at the |
| 09:08:36AM | 16 | sheriff's department; correct or incorrect? |
| 09:08:38AM | 17 | A.     Incorrect.  I believe I said I don't recall. |
| 09:08:42AM | 18 | Q.     So you might have? |
| 09:08:43AM | 19 | A.     Yes. |
| 09:08:46AM | 20 | Q.     Okay.  And it's your testimony that you've never |
| 09:08:57AM | 21 | spoken with Michael Johnson, Sheriff Michael Johnson, |
| 09:09:01AM | 22 | regarding Cedar the goat; correct or incorrect? |
| 09:09:03AM | 23 | A.     Correct. |
| 09:09:04AM | 24 | Q.     And it's your testimony that you do not know who |
| 09:09:14AM | 25 | received Cedar's meat; correct or incorrect? |

**B.J. MACFARLANE**

```
11:11:02AM  1  said that, and I probably agreed that no one needs to
11:11:07AM  2  know where that -- that we didn't want to cause that guy
11:11:11AM  3  that got the goat any grief.
11:11:13AM  4  Q.     Why would that guy get grief?
11:11:17AM  5  A.     For having that goat that Melanie and I have
11:11:30AM  6  gotten phone calls and death threats before.  I think
11:11:35AM  7  the guy that got the meat would get that.
11:11:39AM  8  Q.     Okay.  Was this person -- and to be clear, you
11:11:43AM  9  don't know what guy this is?
11:11:44AM 10  A.     Well, we saw Vista.  Vista Real Estate.
11:11:50AM 11  Q.     Vista Real Estate is who got Cedar?
11:11:53AM 12  A.     That's what I believe is what's written here and
11:11:56AM 13  that's --
11:11:57AM 14  Q.     Okay.  That's -- okay.  So may I see that text
11:12:00AM 15  for one second?  "Vista Real Estate got marked" -- "got
11:12:08AM 16  Cedar."  Okay.  That's your understanding.  Okay.  So
11:12:11AM 17  it's a company?
11:12:12AM 18  A.     Yes.
11:12:13AM 19  Q.     Some company?  Okay.  Vista Real Estate got
11:12:17AM 20  Cedar.
11:12:18AM 21         Okay.  And so you were doing this to protect
11:12:23AM 22  Vista Real Estate?
11:12:24AM 23  A.     Yes.
11:12:25AM 24  Q.     ==Didn't you testify earlier that you didn't know==
11:12:32AM 25  ==who got Cedar, though?==
```

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:12:33AM | 1 | A.     I did testify earlier that I did not know who |
| 11:12:36AM | 2 | got Cedar, but I read it in the email or text messages |
| 11:12:38AM | 3 | here and that is -- |
| 11:12:40AM | 4 | Q.     So that's Melanie telling you Vista Real |
| 11:12:42AM | 5 | Estate -- |
| 11:12:42AM | 6 | A.     Yes. |
| 11:12:43AM | 7 | Q.     -- is getting Cedar?  Okay.  All right. |
| 11:12:44AM | 8 | A.     I did testify that I did not know.  And I did |
| 11:12:47AM | 9 | not know until I read that. |
| 11:12:49AM | 10 | Q.     Okay.  All right.  All right.  And then the next |
| 11:12:53AM | 11 | page Melanie -- Melanie texts you, "Thank you.  We are a |
| 11:13:00AM | 12 | nonprofit."  What did that -- how do you interpret that? |
| 11:13:05AM | 13 | A.     As it reads.  We are a nonprofit. |
| 11:13:17AM | 14 | Q.     What does she mean by "we," if you know? |
| 11:13:19AM | 15 | A.     The junior livestock auction. |
| 11:13:21AM | 16 | Q.     Okay.  So reading that in conjunction with the |
| 11:13:26AM | 17 | prior text for Kathie when she said, "Tell anyone that |
| 11:13:29AM | 18 | Cedar was donated to a nonprofit," and Melanie saying |
| 11:13:32AM | 19 | the junior livestock auction, doesn't that imply that |
| 11:13:35AM | 20 | Cedar was donated to the junior livestock auction? |
| 11:13:38AM | 21 |         MR. BRIDGES:  Calls for speculation about what |
| 11:13:39AM | 22 | Melanie meant, but if you know, you can answer. |
| 11:13:42AM | 23 |         THE WITNESS:  No, I don't -- I think she was |
| 11:13:46AM | 24 | making light of the situation of a nonprofit.  I have no |
| 11:13:48AM | 25 | idea, though, no clue what was she thinking. |

```
 1                PENALTY OF PERJURY
 2      Please be advised I have read the foregoing
 3      deposition, and I hereby state there are:
 4
 5      (Check one)     _____ no corrections
 6                      _____ corrections attached
 7
 8      Executed on _____
 9                          Date
10
11                  _____
                     BJ MACFARLANE
12
13
14
                            ---oOo-
15
```

```
 1                REPORTER'S CERTIFICATE
 2
 3          I hereby certify that the witness in the
 4  foregoing deposition was duly sworn by me to tell the
 5  truth, the whole truth, and nothing but the truth in the
 6  within-entitled cause; that said deposition was taken at
 7  the time and place herein named; and that the testimony
 8  of said witness was reported by me, a duly certified
 9  shorthand reporter and disinterested person, and was
10  thereafter transcribed under my direction by
11  computer-assisted transcription.
12          I further certify that I am not of counsel or
13  attorney for either or any of the parties to said
14  deposition, nor in any way interested in the outcome of
15  the case named in said caption.
16          IN WITNESS WHEREOF, I have hereunto set my
17  hand.
18
19          DATED:  FEBRUARY 25, 2024
20
21
22          _____
23              SUZANNA MICKELSON, CSR No. 14270
24                    State of California
25
```