RYAN R. GORDON (SBN 278414)
VANESSA T. SHAKIB (SBN 287339)
**ADVANCING LAW FOR ANIMALS**
407 N. Pacific Coast Highway #267
Redondo Beach, CA 90277
Tel: (202) 996-8389
rgordon@advancinglawforanimals.org
vshakib@advancinglawforanimals.org

DANIEL J. KOLDE, ESQ.
**LAW OFFICES OF DANIEL J. KOLDE**
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel: 636.675.5383
Email: daniel.kolde.law@gmail.com
(*pro hac vice application to be filed*)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,<br>     Plaintiffs,<br>v.<br>LIEUTENANT JERRY FERNANDEZ, individually and in his individual capacity as Sheriff for the County of Shasta; DETECTIVE JACOB DUNCAN, individually and in his individual capacity as Sheriff for the County of Shasta; DETECTIVE JEREMY ASHBEE, individually and in his individual capacity as Sheriff for the County of Shasta; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association; COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual capacity; BJ MACFARLANE, in his individual capacity; KATHIE MUSE, in her individual and official capacity, and DOES 1 through 10,<br>     Defendants. | Case No. 2:22-cv-01527-DAD-AC<br><br>**PLAINTIFF JESSICA LONG'S STATEMENT OF DISCOVERY DISAGREEMENT RE PRODUCTION OF SUBPOENAED DOCUMENTS FROM VISTA REAL ESTATE (ECF 52)**<br><br>[See concurrently filed Declaration of Ryan Gordon in ECF No. 61-1]<br><br>Trial Date: March 24, 2025<br><br>Action Filed: August 31, 2022 |

1
STATEMENT OF DISCOVERY DISAGREEMENT

Pursuant to Local Rule 251(d), Plaintiff Jessica Long ("Mrs. Long") submits the following Joint Statement re Discovery Disagreement, in connection with her motion to compel Non-Party Verizon ("Verizon") to produce documents under Federal Rule of Civil Procedure 45. ECF No. 52.

## I. CONFERENCES OVER DISCOVERY DISPUTE

The subpoena to non-party Vista Real Estate requests, "All records related to any goat meat you acquired from, or that related to, the Shasta District Fair & Event Center between June 25, 2022, and September 1, 2022. This includes records of any goat meat you acquired from the 2022 Junior Livestock Auction at the Shasta District Fair, or documents from 3rd parties such as butchers." Gordon Declaration filed concurrently with ECF No. 61-1 (hereinafter, "Gordon Decl.") ¶ 51, Ex. 18. Service was attempted on February 23, 2022. But, per the process service, Chad Phillips, the putative principal of Vista Real Estate, initially responded, but then became nonresponsive and evaded service over the following days. *Id*. He was ultimately served on February 29, 2022, with both subpoena and the notice of motion. He has not responded to date. *Id.*

## II. NATURE OF ACTION AND INSTANT FACTUAL DISPUTE OVER DISCOVERY

On August 31, 2022, Mrs. Long and her minor daughter E.L. filed the underlying civil rights litigation, as amended on March 2, 2023, and again on October 12, 2023. ECF Nos. 1, 16, 25 (Second Amended Complaint or "SAC"). The SAC includes claims against Shasta District Fair & Events Center ("SDF") CEO Ms. Silva, SDF Livestock Manager Defendant B.J. Macfarlane, and 4-H representative Mrs. Muse, and for § 1983 for violations of the Fourth Amendment, ¶¶ 105-110, violations of the Fourteenth Amendment, ¶¶ 111-115, and First Amendment Viewpoint Discrimination, ¶¶ 181-188, with additional claims against the County of Shasta, Shasta County Sheriff's Department, Lieutenant Fernandez, Detective Duncan, and Detective Ashbee for constitutional violations and other state law claims. *See generally* SAC. Plaintiffs claims center around the wrongful search and seizure of Plaintiffs' goat, Cedar, who they allege was then ultimately slaughtered without notice and opportunity to be heard in violation of their rights to Due Process, among other things.

The instant dispute is over documents held by Vista Real Estate, to the extent they exist, regarding "All records related to any goat meat Vista Real Estate acquired from, or that related to, the

ADVANCING LAW FOR ANIMALS

Shasta District Fair & Event Center between June 25, 2022, and September 1, 2022. This includes records of any goat meat you acquired from the 2022 Junior Livestock Auction at the Shasta District Fair, or documents from 3rd parties such as butchers." Plaintiff Long served a subpoena for these documents, as described in the preceding section.

**III. PLAINTIFFS CONTEND THE COURT SHOULD COMPEL NON-PARTY VISTA REAL ESTATE TO COMPLY WITH THE SUBPOENA FOR PRODUCTION OF DOCUMENTS RELATED TO GOAT MEAT OBTAINED FROM SDF IN THE RELEVANT TIME PERIOD**

**A.     Relevant Facts and Allegations**

In general terms, Plaintiffs claim that Defendants illegally seized and slaughtered their beloved goat Cedar in violation of Due Process, among other things. *See generally* SAC. At the time Plaintiffs filed suit, they believed Cedar was illegally slaughtered and eaten at the July 9 government barbecue organized by Mrs. Muse. But discovery conducted to date has drastically altered Plaintiffs' understanding of the facts.

**i.     Plaintiffs Withdraw Cedar from SDF Youth Livestock Auction**

Plaintiffs allege that, in April 2022, they purchased E.L. a young male goat who E.L. named Cedar. E.L. fed and cared for Cedar every day until almost July 2022, and bonded with Cedar as if he were a puppy. SAC ¶ 20. Plaintiffs further allege that E.L. enrolled in her local 4-H chapter at that time. SAC ¶ 21. On or about June 25, 2022, pursuant to her 4-H program, E.L. exhibited Cedar in the junior livestock auction at the annual fair held by SDF. SAC ¶¶ 22-25. Plaintiffs allege that, although Defendant Mrs. Muse, on behalf of Senator Brian Dahle and Assemblywoman Megan Dahle, bid on Cedar's meat, no sale of Cedar or his meat occurred. SAC ¶¶ 27-29, 33. Although the Dahles may have intended to donate Cedar's meat to the July 9, 2022 barbecue operated by 4-H ("July 9 Government Barbecue"), because the sale of Cedar's meat did not occur, Cedar's meat was never donated. *Id*. at 40-41. Most saliently, Plaintiffs allege after E.L. participated in the auction, she became despondent and emotional. Shortly thereafter that same evening, she sobbed in Cedar's pen and told to her mother she didn't want him killed. Plaintiffs allege E.L. exercised her statutory rights as a minor under California Family Code section 6710 to disaffirm any contract of sale that might have existed, and left the fair with Cedar. *Id*. at ¶ 35.

3
STATEMENT OF DISCOVERY DISAGREEMENT

### ii. Following Cedar's Withdrawal, SDF Defers to CDFA for Direction

Following Plaintiffs' removal of Cedar from SDF fairgrounds, Plaintiffs offered in writing to pay for any damages claimed by SDF. Nonetheless, on about June 26, 2022, Defendant Macfarlane told Mrs. Long she would be prosecuted for removing Cedar. On June 28 at 9:10 am, Ms. Silva spoke on the phone with Mike Francesconi, the Branch Chief of Fairs & Expositions at the California Department of Agriculture (CDFA). Gordon Decl. ¶ 4, Ex. 1; *id*. at ¶ 34, Ex. 8 (Silva Vol. 2 Dep. 412:18-413:17). Ms. Silva's handwritten notes reflecting conversation with Mr. Francesconi that day state, "[Pick up] goat" and "dont [sic] pursue charges." *Id*. at ¶ 34, Ex. 8 (Silva Vol. 2 Dep. 412:18-413:17). On June 28 at 1:31 pm, Ms. Silva emailed Mrs. Long, rejecting Mrs. Long's previously-emailed offer to pay damages, explaining, the "social media this has been a negative experience for the fairgrounds[,]" and stating, "I have spoken with the California Department of Food and Agriculture and they have informed me that for the good of all we have to stick to the State Rules. You will need to bring the goat back to the Shasta District Fair immediately." *Id*. at ¶ 4(b), Ex. 1 at 4. Shortly thereafter, at 3:07 pm, Ms. Silva forwarded her email to Mr. Francesconi, stating, "Hi Mike, I have included the response I sent her. I have also updated my Board Member[.]" *Id*. at ¶ 4(c), Ex. 1 at 3. Mr. Francesoni responds at 3:08 pm, "Hello Melanie Did BJ go out to pick up the goat? Thanks Mike[.]" *Id*. at ¶ 4(d), Ex. 1 at 3. Ms. Silva responds within the hour requesting further direction, asking "Hi Mike, She is not responding to either of us. Should we involve CHP next?" *Id*. at ¶ 4(e), Ex. 1 at 2. Mr. Francesconi defers to Mr. Flores, telling Ms. Silva on the evening of June 28, "I am checking with Michael Flores on how he would like you to proceed. I will let you know when I learn more. Thanks Mike[.]" *Id*. at ¶ 4(f), Ex. 1 at 1.

### iii. When Mrs. Long Does Not Return Cedar, SDF and CDFA Coordinate and Call Shasta County Sheriff's Department

On June 29 at 9:06 am, Ms. Silva emailed Mr. Francesconi, "Hi Mike, Please call my cell number [omitted] when you call back. We have the phones forwarded since they posted our number to instagram." Gordon Decl. at ¶ 4(g), Ex. 1 at 1. Continuing on a June 29, 8:51 am text thread, Ms. Silva texted Mr. Macfarlane, stating, "We are contacting the Sheriff for the goat waiting for a call back[.]" *Id*. ¶ 5, Ex. 19. This is consistent with other deposition testimony. Mr. Macfarlane testified

either he or Ms. Silva called Sheriff Johnson to report Ms. Long's alleged felony theft. *Id*. at ¶ 26, Ex. 7 (Macfarlane Dep. Vol. 1 191:23-191:11; 193:04-21). Lieutenant Fernandez testified that at either the end of June 2022 or the beginning of July 2022, Sheriff Johnson instructed him to investigate the alleged theft of Cedar, and explained Cedar's removal was a "big deal" with "a lot of the fair boards" in California. *Id*. at ¶ 8, Ex. 3 (Lieut. Fernandez Dep. 77:13-25; 78:10-14; 83:05-14; 277:02-279:09). At 9:49 am, Mrs. Long again sent Ms. Silva a second letter, stating, among other things, Cedar was Plaintiff E.L.'s personal property; SDF never owned Cedar; grand theft had no basis; and the letter was "in anticipation of litigation" of their civil dispute ("Notice of Civil Claim and Intention to Sue"). *Id*. at ¶ 18.

        **iv.**    **Lieutenant Fernandez and Detective Duncan Drive Over 500 Miles on the Evening of July 8 to Illegally Seize Cedar and Turn Him Over for Slaughter**

On June 29 at 12:27 pm, Ms. Silva emailed several documents to Lieut. Fernandez, including Mrs. Long's Notice of Civil Claim and Intention to Sue. Gordon Decl. ¶ 18, Ex. 6 (Silva Dep. Vol. 1 288:03-23). Thereafter, the night before the July 9 Government Barbecue, Lieutenant Fernandez and Detective Duncan drove several hundred miles from Shasta County to Bleating Hearts Sanctuary in Napa County on the pretense of a crime to execute the warrant for Cedar's seizure. SAC ¶ 75. They discovered Cedar was not there, ascertained Cedar's correct location from individuals at Bleating Hearts Sanctuary, and then travelled to the Billy's Mini Farm. Gordon Decl. ¶ 11, Ex. 4 (Det. Duncan Dep. 144:25 – 147:17). Once there, Lieutenant Fernandez and Detective Duncan seized Cedar, and, at the direction of Mrs. Muse, turned him over to Mr. Macfarlane. Gordon Decl. ¶ 9, Ex. 3 (Fernandez Dep. 269:16-270:10). No member of law enforcement or any defendant in this case notified Mrs. Long of Cedar's seizure. Rather, Billy's Mini Farm informed her of Cedar's seizure on about July 12, 2022, after the July 9 Government Barbecue.

        **v.**    **Cedar was Not Slaughtered and Served at the July 9 Government Barbecue for Which Defendants so Fervently Claim He Was Earmarked**

Although Mr. Macfarlane received Cedar at Mrs. Muse's direction either late at night July 8 or in the early morning of July 9, Cedar was not eaten at the July 9 Government Barbecue. Rather, according to Mrs. Muse, she received replacement meat from another goat from the board of the Shasta District Fair. Gordon Decl. ¶ 15, Ex. 5 (Muse Dep. 204:13-205:20).

5
STATEMENT OF DISCOVERY DISAGREEMENT

### vi. SDF Maintains Possession of Cedar for Weeks Post-Seizure, Awaiting Approval from CDFA, Sheriff's Department, and District Attorney to Slaughter Cedar—Despite Repeated Contact from Plaintiffs' Counsel

Neither the Dahles nor Mrs. Muse ever paid for Cedar. Gordon Decl. Gordon Decl. ¶ 35, Ex. 8 (Silva Vol. 2 Dep. 431:14-20). Nonetheless, Mr. Macfarlane held Cedar until Cedar's slaughter on July 28, 2022. Mr. Macfarlane testified that, from his perspective, he was operating under the direction of Ms. Silva, the Sheriff, the CDFA, and the District Attorney. *Id*. at ¶ 29, Ex. 7 (Macfarlane Dep. Vol. 1, 210:25-211:10). Mr. Macfarlane stated that between July 11-25, 2022, he spoke with Sheriff Johnson "a couple times maybe." *Id*. at ¶ 31, Ex. 7 (Macfarlane Dep. Vol. 1 207:10-22). Mr. Macfarlane's testimony is consistent with a July 11 text message he sent Mrs. Muse, stating, "Good morning … Talked to sheriff and he said to wait until he talks to DA before we kill goat." *Id*. at ¶ 30, Ex. 7 (Macfarlane Dep. Vol. 1, 204:01-205:08). In deposition, Mr. Macfarlane stated, in this text message, he was referring to Sheriff Michael Johnson and District Attorney Stephanie Bridgett. *Id*.

Mr. Macfarlane also testified he spoke to Ms. Silva "multiple times" through the period of July 8-28, 2022, as "she was the one that was gearing it, so what -- with the state and the sheriff, so..." Gordon Decl. ¶ 28, Ex. 7 (Macfarlane Dep. Vol. 1, 208:25-209:17). Mr. Macfarlane was clear that "I don't remember if [Ms. Silva] was the one talking to the sheriff. I think -- I know I did a couple times …." *Id*. Mr. Macfarlane further stated Ms. Silva instructed him to hold Cedar "Until the state said what was going to happen." *Id*. at ¶ 27, Ex. 7 (Macfarlane Dep. Vol. 1 202:11-203:23). He clarified by "the state" he was referring to Mr. Francesconi or the "CDFA's lawyer." *Id*.

Mrs. Muse also stated individuals at the Sheriff's Department and District Attorney's Office were involved. She testified "I was told from B.J. that the DAs and the sheriffs office, I don't know which department, had told him to make sure that we save the ear tags." Gordon Decl. ¶ 14, Ex. 5 (Muse Dep. 201:19-202:08).[1] Ms. Silva stated she believed Mr. Macfarlane and Ms. Muse were awaiting permission from the DA to slaughter Cedar. *Id*. at ¶¶ 19-20, Ex. 6 (Silva Dep. Vol. 1, 66:04-10; 66:25-67:24; 68:17-22; 329:05-18).

Within this same period, between July 15-27, 2022, Mrs. Long's counsel contacted both the

---

[1] By contrast, Mr. Macfarlane testified that Mrs. Muse told him to save Cedar's ear tags. Gordon Decl. ¶ 32, Ex. 7 (Macfarlane Dep. Vol. 1, 212:13-213:04).

Sheriff's Department and Shasta County Counsel multiple times, demanding to know what happened to Cedar and that he be kept alive. Gordon Decl. ¶ 43.

### vii. Phone Records and Text Messages Produced to Date Suggest Someone Gave Ms. Silva the Greenlight to Have Cedar Killed

On July 22 at 11:17 am, Ms. Silva called Mr. Macfarlane and the two spoke for 4 minutes. Gordon Decl. at ¶ 39, Ex. 12. At 11:22 am, Mr. Macfarlane called Mrs. Muse, and the two spoke for over 4 minutes. *Id*. Also at 11:22 am, Mr. Macfarlane texted Ms. Silva, "What's gals name at bowman? Kathy said ok but no one needs to know about this. U me and Kathy are only ones. It got killed and donated to non profit if anyone asks." *Id*. at ¶ 37, Ex. 10. Ms. Silva responded, "Serene[,]" then "Thank you[,]" then "We are a non profit 😳🤣🤣🤣[.]" *Id*. At 11:29 am, Mr. Macfarlane called Bowman Meat Company, and arranged for Cedar's slaughter. *Id*. at ¶ 39, Ex. 12. Bowman Meat Company killed Cedar on July 28. To date, neither Ms. Silva, Mr. Macfarlane, nor Mrs. Muse have offered any credible testimony as to who greenlit Cedar's death, or who, if anyone, received Cedar's meat. Ms. Silva, Mr. Macfarlane, and Mrs. Muse all originally stated they did not know who received Cedar's meat. Gordon Decl. ¶ 16, Ex. 5 (Muse Dep. 235:19-236:10); *id*. at ¶¶ 19-23, Ex. 6 (Silva Dep. Vol. 1, 62:22 -63:03; 66:04-10; 66:25-67:24; 68:17-22; 329:05-18). In his second deposition, Mr. Macfarlane claimed his memory was refreshed and that Vista Real Estate received Cedar's meat. *Id*. at ¶ 42(a), Ex. 13 (Macfarlane Dep. Vol. 2, 349:24-350:09).

### viii. Phone Records and Text Messages Produced to Date Contradict Critical Portions of Ms. Silva's Deposition Testimony

On the one hand, Ms. Silva testified she didn't have any contact with Mr. Macfarlane while he was in possession of Cedar, Gordon Decl. ¶ 21, Ex. 6 (Silva Dep. Vol. 1 63:02-03); she didn't know that Mr. Macfarlane had Cedar, *id*. at ¶ 22, Ex. 6 (Silva Dep. Vol. 1 62:02-24; 64:13-15; 69:18-24); she "didn't have a say" in what happened to Cedar, *id*. at ¶ 23, Ex. 6 (Silva Dep. Vol. 1 68:06-07); she "never knew" Cedar was killed on July 28, *id*.; and that she "just wasn't curious" about Cedar and "didn't give it as much thought as [Plaintiffs' counsel] is saying[,]" *id*., Ex. 6 (Silva Dep. Vol. 1 123:02-124:03; 183:01-15).

On the other hand, on July 11—the same day Mr. Macfarlane texted Mrs. Muse "Talked to sheriff and he said to wait until he talks to DA before we kill goat"—Ms. Silva emailed Mrs. Muse

the Dahle's invoice for Cedar, and wrote, "Hi Kathie, I have attached their bills. I appreciate the update!" Gordon Decl. ¶ 35, Ex. 20. Plaintiffs contend this email indicates a previous and recent conversation about Cedar. On July 18, sometime after 10:29 am, Ms. Silva texted Mr. Macfarlane, "The word goat makes my eye twitch now 🤣🤣🤣🤣🤣🤣🤣[,]" to which Mr. Macfarlane texted Ms. Silva, "It should. Lol[.]" *Id*. at ¶ 36, Ex. 9. On July 22, the phone call sequence involving Ms. Silva as described *supra* takes place. Additionally, on July 22, as described *supra*, Ms. Silva and Mr. Macfarlane text about their cover story as to Cedar's ultimate disposition, and Ms. Silva provides the name of the relevant employee at company who ultimately butchers Cedar. On July 25 at 3:15 pm, Ms. Silva called Mr. Macfarlane and the two had a short conversation. *Id*. at ¶ 39, Ex. 12. Later that day at 3:31 pm, Mr. Macfarlane called Ms. Silva and the two spoke for over 5 minutes. *Id*. On July 28, Mr. Macfarlane texted Ms. Silva, "Goat is getting butchered within the half hour. Finally." *Id*. at ¶ 38, Ex. 11.

### ix. Mr. Macfarlane Retracts Prior Deposition Testimony

In the second volume of his deposition, Mr. Macfarlane stated that Ms. Silva and Mrs. Muse were in contact with the Sheriff's Department and the District Attorney, and that he has never spoken with Sheriff Johnson regarding Cedar. Gordon Decl., ¶¶ 40-42, Ex. 13 (Macfarlane Dep. Vol. 2, 250:08-251:08; 269:20-23).

### B.  Mrs. Long Serves Subpoenas for Records of Vista Real Estate

Mrs. Long served the underlying subpoena as set forth *supra* at Section I. Mrs. Long now requests this Court order Vista Real Estate to comply.

### C.  The Subpoenaed Phone Records are Relevant and Discoverable

Vista Real Estate's documents regarding goat meat obtained from SDF during the relevant period are both relevant and discoverable. Under Fed. R. Civ. P. 45, any party may serve a subpoena commanding a nonparty "to attend and give testimony or to produce and permit inspection and copying of" documents. Fed. R. Civ. P. 45(a)(1)(C). Further, "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

Fed. R. Civ. P. 26(b) establishes the scope of discovery and states in pertinent part, "For good

1  cause, the court may order discovery of any matter relevant to the subject matter involved in the action.
2  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to
3  lead to the discovery of admissible evidence." Relevance is "construed broadly to encompass any
4  matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is
5  or may be in a case." *Oppenheimer Fund, Inc., v. Sanders,* 437 U.S. 340, 351 (1978). Cell phone
6  records of parties, like those at issue in the instant dispute, are recognized as relevant. *See, e.g., Murray*
7  *v. City of Carlsbad*, 2010 U.S. Dist. LEXIS 63933, *5 (S.D. Cal. June 25, 2010) (explaining "phone
8  records are discoverable if for no other reason than the impeachment of Officer Luc."). The subpoena
9  is subject to the relevance requirements set forth in Rule 26(b). The Rutter Group, Federal Civil
10 Procedure Before Trial § 11:2305 (2005).

11     Good cause exists here. The facts of this case are the epitome of bad faith. Defendants here all
12 allege Mrs. Muse was the victim of a theft—despite the fact that no one ever paid for Cedar and,
13 regardless, Mrs. Muse received replacement meat for the July 9 Government Barbecue. *See* Gordon
14 Decl. ¶ 35, Ex. 8 (Silva Vol. 2 Dep. 431:14-20). Plaintiffs have diligently conducted discovery in this
15 matter and, to date, it is still unclear why Cedar's slaughter was delayed until July 28, 2022,
16 particularly in light of calls from Plaintiffs' counsel from July 15-27, 2022. It is also unclear what
17 ultimately happened to Cedar's body. Mr. Macfarlane's July 22 text message to Ms. Silva, stating
18 "Kathy said ok but no one needs to know about this. U me and Kathy are only ones. It got killed and
19 donated to non profit if anyone asks[]" suggests bad faith. Gordon Decl. ¶ 37, Ex. 10. Specifically, it
20 seems these three coordinated to lie about the ultimate use of Cedar's body. At the same time, these
21 three all testified at first they are unaware of the ultimate recipient of Cedar's meat. Gordon Decl. ¶
22 16, Ex. 5 (Muse Dep. 235:19-236:10); *id.* at ¶¶ 19-23 Ex. 6 (Silva Dep. Vol. 1, 62:22 -63:03; 66:04-
23 10; 66:25-67:24; 68:17-22; 329:05-18). But in his second deposition sitting, when Mr. Macfarlane
24 retracted testimony regarding Sheriff Johnson, he also suddenly recollected that Vista Real Estate
25 received Cedar's meat. *Id.* at ¶ 42(a), Ex. 13 (Macfarlane Dep. Vol. 2, 349:24-350:09).

26     The documents at issue in this subpoena are relevant, as they may uncover ultimately what
27 happened to Cedar's body, or they may serve as the basis for impeachment.

28     **D.**    **Non-Party Vista Real Estate Failed to Timely Object**

Vista Real Estate has failed to object or even respond at all—and has therefore waived all objections. *Pennwalt Corp. v. Durand–Wayland, Inc.,* 708 F.2d 492, 494 n. 5 (9th Cir.1983) ("Once the person subpoenaed objects to the subpoena ... the provisions of Rule 45(d) come into play. Then the party seeking discovery must obtain a court order directing compliance"). As Vista Real Estate has asserted no appropriate objections, the Court should order production of the documents at issue.

**ADVANCING LAW FOR ANIMALS**

Dated:  March 6, 2024          By:     /s/Ryan Gordon
Ryan Gordon
Vanessa Shakib
Attorneys for Plaintiffs