# EXHIBIT 9

# In The Matter Of:

*LONG vs.*
*FERNANDEZ*

*DETECTIVE JACOB DUNCAN*
*August 22, 2023*

*Challe, Fisher & Morfin*
*1828 South Street*
*Redding, California  96001*
*(530)246-0942*
*cfmdepos@att.net*

Original File J. Duncan.txt
**Min-U-Script® with Word Index**

```
 1                UNITED STATES DISTRICT COURT

 2               EASTERN DISTRICT OF CALIFORNIA

 3                    SACRAMENTO DIVISION

 4

 5   E.L., a minor, by and through    )
     her general guardian, JESSICA    )
 6   LONG; JESSICA LONG, an           )
     individual,                      )
 7                                    )
              Plaintiffs,             )  Case No.
 8   vs.                              )  2:22-cv-01527-DAD-AC
                                      )
 9   LIEUTENANT JERRY FERNANDEZ       )
     individually and in his          )
10   individual capacity as Sheriff   )
     for the County of Shasta;        )
11   DETECTIVE JACOB DUNCAN,          )
     individually and in his          )
12   individual capacity as Sheriff   )
     for the County of Shasta;        )
13   DETECTIVE JEREMY ASHBEE,         )
     individually and in his          )
14   individual capacity as Sheriff   )
     for the County of Shasta;        )
15   SHASTA DISTRICT FAIR AND EVENT   )
     CENTER, a district agricultural  )
16   association; COUNTY OF SHASTA;   )
     SHASTA COUNTY SHERIFF'S          )
17   DEPARTMENT; MELANIE SILVA, in    )
     her individual capacity; BJ      )
18   MACFARLANE, in his individual    )
     capacity; and DOES 1 through     )
19   10,                              )
                                      )
20            Defendants.             )
     _____)
21

22
          VIDEO DEPOSITION OF DETECTIVE JACOB DUNCAN
23
                 TUESDAY, AUGUST 22, 2023
24

25
```

**DETECTIVE JACOB DUNCAN**

1  Q.     Okay.  Did you -- okay.  Do you think that was
2  perceived as threatening to his job potentially?
3  A.     No.  I think my conversation with her the entire
4  time was amicable, and it came across as a human level
5  like, hey --
6  Q.     You were just trying to help her?
7  A.     Yes.  Honestly, yeah, I was.
8  Q.     Okay.  I will email you a copy of the audio.
9  And then however you would like to incorporate or make
10 it an exhibit to the -- I guess we should make it an
11 exhibit.  We did that yesterday, yes?  So the audio
12 would be Exhibit F.
13        MR. GORDON:  Exhibit F.  So okay.  All right.
14 Go off the record for a moment.
15        THE VIDEO SPECIALIST:  We're off the record, and
16 the time is 12:35.
17        (Whereupon, a break was taken from 12:35
18        till 1:00 p.m.)
19        THE VIDEO SPECIALIST:  We're back on the record,
20 and the time is 1300.
21        MR. GORDON:  Q.  Okay.  So we are -- we went
22 through -- we last went through the audio recording of
23 Kristin Stover.
24 A.     Yes.
25 Q.     And your conversation with her.  Okay.  And you

DETECTIVE JACOB DUNCAN

1  didn't find -- well, okay. Didn't find Cedar at her --
2  at Bleating Hearts, correct?
3  A.    No.
4  Q.    Okay. Did -- do -- did you -- apart from -- did
5  Fernandez tell you what he discussed with -- with Justin
6  while they were on the backside of the property in the
7  pens?
8  A.    No. To my recollection, he just told me that
9  the goat was not there.
10 Q.    Okay. And you couldn't -- he was too far away
11 to be heard at that point in time so you don't -- or is
12 that accurate?
13 A.    Yes. I believe so.
14 Q.    Okay. And that's when they were actively
15 looking for Cedar on the property?
16 A.    Yeah. Justin knew Cedar wasn't there, but
17 Justin was showing Lieutenant Fernandez the property,
18 yes.
19 Q.    Okay. Okay. And then you -- then you -- what
20 happened next? What did you do while you were with
21 Kristin?
22 A.    So Kristin and I were, as you previously played,
23 just conversing.
24 Q.    Yeah.
25 A.    And I was asking her about Cedar. And while she

**DETECTIVE JACOB DUNCAN**

1  was looking for I believe Jessica's phone number, she
2  was standing close to me and I could see her scrolling
3  through some emails and I pointed that fact out to her
4  and she said, yeah, I got some emails here or something
5  along those lines, it's in the recording, but she said
6  something similar and I asked her if I could see them
7  and she said some form of "yeah" and handed me the phone
8  to view those.
9  Q.     So that was her mistake, right?  You would not
10 have --
11 A.     I think she was -- I think she was a
12 good-natured person.  I think my opinion is that she was
13 nervous just talking to law enforcement, but she had
14 intentions to be cooperative.  So she obviously lied
15 throughout our contact.
16 Q.     Yeah.
17 A.     But I -- you know.  So.
18 Q.     Okay.  Why do you think she didn't say where
19 Cedar was?
20        MR. NORTHCUTT:  Objection.  Calls for
21 speculation.  Go ahead.
22        THE WITNESS:  Based on the context of what we
23 were saying, I think that she was trying to limit her
24 involvement while also she has a goat sanctuary, so I
25 imagine she probably obviously cared about Cedar as well

DETECTIVE JACOB DUNCAN

```
 1  and didn't want us to obtain Cedar.
 2          MR. GORDON:  Q.  Yeah.  Okay.  Okay.  So about
 3  how long -- the recording is 23 minutes.  Is that about
 4  how long -- or 23 minutes and change.  Is that about how
 5  long you were at Kristin's and Justin's property?
 6  A.      Yes.  I believe so.
 7  Q.      Okay.  All right.  And -- okay.  What did you do
 8  when you left their property?
 9  A.      Well, in my conversation with Kristin and review
10  of her emails, I discovered that Cedar was at Billy's
11  Mini Goat Farm in Sonoma.
12  Q.      Okay.  So you concluded that in your
13  investigation.  What did you -- so about what time --
14  about what time did you leave the Bleating Hearts?
15  A.      I think we left directly following when that
16  interview ended.  We went directly to Billy's Mini Goat
17  Farm in Sonoma.
18  Q.      Do you remember approximately what time that
19  was?
20  A.      Well, we got there at 7:30, and the recording is
21  23 minutes.  I would say probably around eight o'clock
22  that night.
23  Q.      So at Bleating Hearts -- or Ray's Farm where
24  you -- where you concluded Cedar was, that was not in
25  Napa County, right?
```

```
 1                    PENALTY OF PERJURY
 2       Please be advised I have read the foregoing
 3       deposition, and I hereby state there are:
 4
 5       (Check one)    _____  no corrections
 6                      _____  corrections attached
 7
 8       Executed on _____
 9                              Date
10
11                      _____
                                DETECTIVE JACOB DUNCAN
12
13
14                              ---oOo---
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    REPORTER'S CERTIFICATE

 2

 3          I hereby certify that the witness in the

 4   foregoing deposition was duly sworn by me to tell the

 5   truth, the whole truth, and nothing but the truth in the

 6   within-entitled cause; that said deposition was taken at

 7   the time and place herein named; and that the testimony

 8   of said witness was reported by me, a duly certified

 9   shorthand reporter and disinterested person, and was

10   thereafter transcribed under my direction by

11   computer-assisted transcription.

12             I further certify that I am not of counsel or

13   attorney for either or any of the parties to said

14   deposition, nor in any way interested in the outcome of

15   the case named in said caption.

16             IN WITNESS WHEREOF, I have hereunto set my

17   hand.

18

19            DATED:  SEPTEMBER 2, 2023

20

21

22   _____

23            SUZANNA MICKELSON, CSR No. 14270

24                   State of California

25
```