# EXHIBIT 21

# In The Matter Of:

*LONG vs.*
*FERNANDEZ*

*B.J. MACFARLANE*
*Vol. 2*
*February 9, 2024*

*Challe, Fisher & Morfin*
*1828 South Street*
*Redding, California  96001*
*(530)246-0942*
*cfmdepos@att.net*

Original File B.J. Macfarlane, Vol II.txt
**Min-U-Script® with Word Index**

```
 1                UNITED STATES DISTRICT COURT

 2               EASTERN DISTRICT OF CALIFORNIA

 3                    SACRAMENTO DIVISION

 4

 5  E.L., a minor, by and through   )
    her general guardian, JESSICA   )
 6  LONG; JESSICA LONG, an          )
    individual,                     )
 7                                  )
              Plaintiffs,           )  Case No.
 8  vs.                             )  2:22-cv-01527-DAD-AC
                                    )
 9  LIEUTENANT JERRY FERNANDEZ      )
    individually and in his         )
10  individual capacity as Sheriff  )
    for the County of Shasta;       )
11  DETECTIVE JACOB DUNCAN,         )
    individually and in his         )
12  individual capacity as Sheriff  )
    for the County of Shasta;       )
13  DETECTIVE JEREMY ASHBEE,        )
    individually and in his         )
14  individual capacity as Sheriff  )
    for the County of Shasta;       )
15  SHASTA DISTRICT FAIR AND EVENT  )
    CENTER, a district agricultural )
16  association; COUNTY OF SHASTA;  )
    SHASTA COUNTY SHERIFF'S         )
17  DEPARTMENT; MELANIE SILVA, in   )
    her individual capacity; BJ     )
18  MACFARLANE, in his individual   )
    capacity; and DOES 1 through    )
19  10,                             )
                                    )
20            Defendants.           )
    _____)
21

22         VIDEO DEPOSITION OF BJ MACFARLANE

23             PAGE 225-391, VOLUME II

24           FRIDAY, FEBRUARY 9, 2024

25
```

**B.J. MACFARLANE**

```
08:30:19AM  1   A.      Yes.
08:30:20AM  2   Q.      Okay, great.  So can you go to the second page
08:30:23AM  3   here.
08:30:25AM  4           So "Good morning.  I'm gone till tomorrow
08:30:28AM  5   afternoon.  Talked to sheriff and he said to wait until
08:30:31AM  6   he talks to DA before we kill goat."  Do you see where
08:30:35AM  7   it says that?
08:30:36AM  8   A.      Yes, sir.
08:30:36AM  9   Q.      When did you talk to the sheriff?
08:30:38AM 10   A.      I don't think it was the -- I'm guessing
08:30:47AM 11   before -- between July 9th -- maybe -- if that was our
08:30:53AM 12   last communication, it would have been that night.  So
08:30:55AM 13   the sheriff -- the sheriff I'm referring to would have
08:30:59AM 14   been whatever the deputy.
08:31:01AM 15   Q.      The deputies, okay.
08:31:03AM 16   A.      Yeah, and that's what I think I use -- used it
08:31:06AM 17   as sheriff where I mean the sheriff department.
08:31:09AM 18   Q.      You mean sheriff -- you're saying -- so it's
08:31:11AM 19   your testimony, you mean Sheriff Fernandez here?
08:31:13AM 20   A.      Yes.  Dropped the goat off.
08:31:15AM 21   Q.      Okay.
08:31:16AM 22   A.      Because if --
08:31:17AM 23           MR. NORTHCUTT:  Ryan, there's no Sheriff
08:31:19AM 24   Fernandez.
08:31:19AM 25           MR. GORDON:  Sorry, I apologize, Damian.  That's
```

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 08:31:22AM | 1 | honestly inadvertent.  You mean Lieutenant Fernandez? |
| 08:31:25AM | 2 | THE WITNESS:  Yes. |
| 08:31:26AM | 3 | MR. GORDON:  Q.  Okay.  But you also testified |
| 08:31:28AM | 4 | that you had talked to the sheriff, we read it a few |
| 08:31:31AM | 5 | minutes ago, several times between -- I gave two dates. |
| 08:31:37AM | 6 | I can pull it back up again. |
| 08:31:41AM | 7 | A.     And again, I believe that's my -- just as you |
| 08:31:45AM | 8 | called him Sheriff Fernandez, that's what I called the |
| 08:31:48AM | 9 | sheriffs the sheriff.  The department.  I don't say the |
| 08:31:52AM | 10 | sheriff.  I didn't mean it the sheriff.  I don't -- |
| 08:31:55AM | 11 | especially this instance here.  It's not the sheriff. |
| 08:31:58AM | 12 | It's the sheriff's department. |
| 08:31:59AM | 13 | Q.     Okay.  So you believe you're referring to |
| 08:32:01AM | 14 | Fernandez? |
| 08:32:02AM | 15 | A.     Yes. |
| 08:32:02AM | 16 | Q.     In this context?  Okay. |
| 08:32:06AM | 17 | So now do you have the same belief when I asked |
| 08:32:09AM | 18 | you do you know how many times between that period you |
| 08:32:11AM | 19 | talked with Sheriff Johnson between the 11th and the |
| 08:32:14AM | 20 | 25th of July, and you said a couple of times maybe? |
| 08:32:19AM | 21 | A.     I believe it was not Johnson. |
| 08:32:23AM | 22 | Q.     Not Johnson, okay.  Do you know -- so were you |
| 08:32:27AM | 23 | possibly -- after -- let me ask you this. |
| 08:32:31AM | 24 | After you -- after Fernandez dropped off Cedar |
| 08:32:35AM | 25 | on July 8th, and then between July 8th and July 28th, |

**B.J. MACFARLANE**

```
08:33:32AM  1   A.      I never added him, I don't believe, as a
08:33:36AM  2   contact.  I have not seen it.  I lost a lot of stuff
08:33:39AM  3   when I changed my phone number here in -- I don't know.
08:33:43AM  4   Q.      Okay.  So who gave you the -- you said you were
08:33:48AM  5   waiting on permission to -- for direction to have Cedar
08:33:53AM  6   slaughtered, correct?
08:33:54AM  7   A.      Yes.
08:33:54AM  8   Q.      When it was at your house?  Who ultimately gave
08:33:58AM  9   you the direction to?
08:33:58AM 10   A.      I believe it was either Melanie or Kathie.
08:34:01AM 11   Q.      Melanie or Kathie.  Did -- why do you believe
08:34:04AM 12   that?
08:34:04AM 13   A.      Because that's who -- I don't know.  That's who
08:34:10AM 14   the -- my boss -- it wasn't even my boss.  The CEO of
08:34:16AM 15   the fair and the owner of the goat.
08:34:17AM 16   Q.      Okay.  And your understanding was that they were
08:34:20AM 17   in communication with law enforcement?
08:34:21AM 18   A.      Yes.
08:34:23AM 19   Q.      And by "law enforcement," I mean the sheriff's
08:34:26AM 20   office, and you said maybe the sheriff, but it maybe it
08:34:30AM 21   was the lieutenants as well?
08:34:32AM 22           MR. NORTHCUTT:  Objection.  Misstates testimony.
08:34:34AM 23   He never said it was the sheriff.  He, in fact,
08:34:37AM 24   testified he said it wasn't the sheriff.  It was the
08:34:40AM 25   sheriff's department.
```

## B.J. MACFARLANE

```
08:34:40AM  1              MR. GORDON:  Q.  He said -- I thought you said I
08:34:42AM  2   believe -- you don't believe so, so I'm assuming you
08:34:45AM  3   mean maybe you don't know who it was?  You said they
08:34:49AM  4   were in communication with --
08:34:50AM  5   A.         The sheriff's department.
08:34:51AM  6   Q.         The sheriff's department, okay.  And the DA as
08:34:54AM  7   well?  Was your understanding?
08:35:00AM  8   A.         Yeah.
08:35:01AM  9   Q.         Why did you believe that Melanie was in
08:35:04AM 10   communication with the sheriff's department?
08:35:06AM 11   A.         Because she was the CEO.  She was the one --
08:35:14AM 12   Q.         Did she tell that to you?
08:35:16AM 13   A.         I don't know.  I don't recall.
08:35:19AM 14   Q.         So you're assuming because she's the CEO that
08:35:21AM 15   she was in communication with the sheriff's department?
08:35:23AM 16   A.         Yes.
08:35:24AM 17   Q.         Okay.  So Melanie or Kathie Muse ultimately gave
08:35:32AM 18   you authority to kill -- have Cedar sent to slaughter?
08:35:37AM 19   A.         I believe so.
08:35:40AM 20   Q.         You believe so.  About what date did they do
08:35:42AM 21   that?
08:35:43AM 22   A.         I don't recall.
08:35:44AM 23   Q.         Where did you -- what date did you arrange for
08:35:48AM 24   Cedar's slaughter?
08:35:49AM 25   A.         I do not recall.
```

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:07:59AM | 1 | all right? |
| 09:08:00AM | 2 | Okay.  So it's your testimony that after Cedar |
| 09:08:02AM | 3 | was dropped off at your house on the evening of July |
| 09:08:05AM | 4 | 8th, and between July 8th and July 28th, either Melanie |
| 09:08:09AM | 5 | or Kathie told you to have Cedar slaughtered, correct? |
| 09:08:12AM | 6 | A.    Correct. |
| 09:08:13AM | 7 | Q.    All right.  So it's your testimony that after |
| 09:08:16AM | 8 | Cedar was dropped off at your house on the evening of |
| 09:08:18AM | 9 | July 8th, between that date and July 28th, you did not |
| 09:08:21AM | 10 | speak with anyone at the sheriff's department; correct |
| 09:08:23AM | 11 | or incorrect? |
| 09:08:24AM | 12 | A.    Incorrect.  Say that again. |
| 09:08:28AM | 13 | Q.    Okay.  So between the time that Cedar was |
| 09:08:31AM | 14 | dropped off on July 8th through July 28th, it's your |
| 09:08:34AM | 15 | testimony that you did not speak with anyone at the |
| 09:08:36AM | 16 | sheriff's department; correct or incorrect? |
| 09:08:38AM | 17 | A.    Incorrect.  I believe I said I don't recall. |
| 09:08:42AM | 18 | Q.    So you might have? |
| 09:08:43AM | 19 | A.    Yes. |
| 09:08:46AM | 20 | Q.    ==Okay.  And it's your testimony that you've never== |
| 09:08:57AM | 21 | ==spoken with Michael Johnson, Sheriff Michael Johnson,== |
| 09:09:01AM | 22 | ==regarding Cedar the goat; correct or incorrect?== |
| 09:09:03AM | 23 | ==A.    Correct.== |
| 09:09:04AM | 24 | Q.    And it's your testimony that you do not know who |
| 09:09:14AM | 25 | received Cedar's meat; correct or incorrect? |

**B.J. MACFARLANE**

```
09:23:50AM  1   A.    Yes.
09:23:51AM  2   Q.    Do you recall anything she told you during these
09:23:53AM  3   phone calls?
09:23:54AM  4   A.    No.
09:23:56AM  5   Q.    But do you know at this time that she was
09:24:01AM  6   talking with CDFA?
09:24:03AM  7   A.    Yes.
09:24:04AM  8   Q.    Okay.  Okay.  You can go to the next page.
09:24:15AM  9         So this is -- now we're on -- we're on June 29th
09:24:20AM 10   now.  Looks like you've got several calls with Ms. Silva
09:24:25AM 11   on the 0058 number.  And June 29th -- I'm sorry, we're
09:24:32AM 12   on June 29th.  It's item 415, 416, 417, 418.
09:24:38AM 13         Now, on June 29th, Ms. Silva reported -- or sent
09:24:43AM 14   Fernandez documents for the investigation, that's your
09:24:45AM 15   understanding, correct?
09:24:47AM 16   A.    Yes.
09:24:48AM 17   Q.    So on this date and time would you have been
09:24:50AM 18   talking with Ms. Silva again about the Cedar situation
09:24:54AM 19   on June 29th, 2022?
09:24:56AM 20         MR. BRIDGES:  Calls for speculation.  If you
09:24:58AM 21   remember, go ahead.
09:24:59AM 22         THE WITNESS:  I assume so.
09:25:03AM 23         MR. GORDON:  Q.  Okay.  You believe so because
09:25:05AM 24   that was the only -- that was the only outstanding issue
09:25:09AM 25   with the fair at this point in time that you were
```

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:25:12AM | 1 | working for for the 2022 fair? |
| 09:25:14AM | 2 | A.   I assume so, yes. |
| 09:25:15AM | 3 | Q.   Yes?  Okay.  Go to the next page.  Again, more |
| 09:25:25AM | 4 | calls.  Now this looks like 5 p.m. or so.  Your |
| 09:25:28AM | 5 | understanding is you're just discussing Cedar with her |
| 09:25:31AM | 6 | again at this point in time?  This is on -- again, more |
| 09:25:34AM | 7 | calls on June 29th.  I'm looking at item 436, 437, 438. |
| 09:25:39AM | 8 | More calls to Ms. Silva about the same, Cedar most |
| 09:25:42AM | 9 | likely, correct? |
| 09:25:43AM | 10 | A.   Most likely. |
| 09:25:46AM | 11 | Q.   But that's your best estimate, correct? |
| 09:25:49AM | 12 | A.   Correct. |
| 09:25:50AM | 13 | Q.   All right.  Next page.  All right.  So we have |
| 09:25:57AM | 14 | another call with -- on the 29th with -- between Ms. |
| 09:26:02AM | 15 | Silva.  It's the 0058 number again.  So again, more |
| 09:26:06AM | 16 | Cedar conversations is your best estimate, correct? |
| 09:26:08AM | 17 | A.   Correct. |
| 09:26:09AM | 18 | Q.   Next page.  All right.  So then we flash forward |
| 09:26:21AM | 19 | to July 8th.  Is that the dates you're looking at for |
| 09:26:24AM | 20 | highlights, BJ? |
| 09:26:25AM | 21 | A.   Yeah. |
| 09:26:26AM | 22 | Q.   So now this 9107 number, who is this?  Is that |
| 09:26:44AM | 23 | Kathy's number, BJ, 9107?  I believe it is, but you tell |
| 09:26:54AM | 24 | me. |
| 09:26:54AM | 25 | A.   Yeah. |

Case 2:22-cv-01527-DAD-AC   Document 89-23   Filed 06/19/24   Page 11 of 19

**B.J. MACFARLANE**

```
09:47:37AM  1   Q.     Okay.  You do not recall asking her?
09:47:39AM  2   A.     No.
09:47:40AM  3   Q.     All right.  You can go to the next page, BJ.
09:47:45AM  4   Again, more conversations with Kathie on July 16th.  So
09:47:52AM  5   same answer as before, these are still Cedar
09:47:54AM  6   conversations?
09:47:55AM  7   A.     Correct.
09:47:56AM  8   Q.     Okay.  So you can go to the next page, BJ.  So
09:48:04AM  9   looks like -- looks like the very bottom of the page,
09:48:13AM 10   it's the last one is highlighted.  It's item 1099.  This
09:48:17AM 11   looks like a conversation with the fair office.
09:48:19AM 12          So is it your understanding you were speaking
09:48:21AM 13   with Melanie Silva this day on July 22nd?
09:48:24AM 14   A.     Yes.
09:48:25AM 15   Q.     Would this conversation have also been about
09:48:27AM 16   Cedar?
09:48:28AM 17   A.     Yes.  More than likely.
09:48:30AM 18   Q.     And what instructions would -- do you recall
09:48:33AM 19   receiving from this conversation?
09:48:34AM 20   A.     I do not recall.
09:48:36AM 21   Q.     Does the date refresh your memory on a
09:48:38AM 22   conversation you would have had with Melanie Silva
09:48:40AM 23   around that time?  Mind you, this is, you know, about a
09:48:43AM 24   week before, six days before Cedar is slaughtered, so.
09:48:49AM 25   A.     Yeah.  Cedar the goat, and possibly at some
```

Challe, Fisher & Morfin
Redding, California   (530)246-0942

302

B.J. MACFARLANE

```
09:48:54AM  1   point we talked about that missing goat.  So it's both
09:48:58AM  2   of them.
09:48:59AM  3   Q.      What missing -- there's a different missing --
09:49:02AM  4   A.      The one that Cedar replaced.
09:49:03AM  5   Q.      Okay.  Okay.  But that's still in -- the missing
09:49:07AM  6   goat was in relation to Cedar, correct?  You're only
09:49:10AM  7   talking about the missing goat because of Cedar,
09:49:14AM  8   correct?  Or the replacement goat, rather, because of
09:49:16AM  9   Cedar?
09:49:18AM 10   A.      Yes.
09:49:18AM 11   Q.      Okay.  All right.  So you can go to the next
09:49:23AM 12   page, BJ.
09:49:27AM 13           All right.  So this is more conversations it
09:49:32AM 14   looks like with Ms. Silva and Ms. Muse.  Looks like you
09:49:41AM 15   had conversations with the both of them that day.  Do
09:49:43AM 16   you recall having -- are you -- so you have a call looks
09:49:49AM 17   like with -- so your first call is with, you know,
09:49:53AM 18   little after 1800, at 18:22, is with -- is with Ms.
09:49:59AM 19   Muse, the 9107 number.  Then you -- then you looks like
09:50:03AM 20   you call the 4463 number, which is I believe Bowman
09:50:09AM 21   Meats.  Is that your understanding?
09:50:10AM 22   A.      Yes.
09:50:11AM 23   Q.      All right.  So was 7-22 the day when you would
09:50:16AM 24   have gotten instructions to kill Cedar?  Or when you did
09:50:21AM 25   get instructions to kill Cedar?
```

Redding, California   (530)246-0942

303

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:55:59AM | 1 | At the time you were under the impression that |
| 09:56:01AM | 2 | they were waiting for the sheriff or the DA, correct? |
| 09:56:05AM | 3 | A. Yes. |
| 09:56:05AM | 4 | MR. NORTHCUTT: Asked and answered. |
| 09:56:06AM | 5 | MR. GORDON: Q. Okay. Okay. All right. So |
| 09:56:11AM | 6 | then you have some more calls with -- BJ, what page are |
| 09:56:15AM | 7 | you on? |
| 09:56:15AM | 8 | A. 74. |
| 09:56:16AM | 9 | Q. Okay, that's what I'm on too. So this is July |
| 09:56:19AM | 10 | 25th now. So looks like you have some more calls with |
| 09:56:23AM | 11 | Ms. Muse. And then -- several calls with Ms. Muse. And |
| 09:56:31AM | 12 | then at around 10 o'clock at night at the very bottom of |
| 09:56:36AM | 13 | the page looks like you have a call with the fair, so on |
| 09:56:41AM | 14 | the same date. Do you have any recollection of these |
| 09:56:44AM | 15 | calls? |
| 09:56:44AM | 16 | A. I do not. |
| 09:56:45AM | 17 | Q. Would they have concerned Cedar as well? |
| 09:56:47AM | 18 | A. Yes. |
| 09:56:48AM | 19 | Q. And then it looks like the -- you can go to the |
| 09:56:55AM | 20 | next page, BJ. It's another one at 7-25. Looks like |
| 09:56:59AM | 21 | another -- another call with the fair office. So you |
| 09:57:04AM | 22 | spoke with -- or you were keeping Melanie apprised at |
| 09:57:08AM | 23 | this point in time of events as well? This is now July |
| 09:57:11AM | 24 | 25th. |
| 09:57:12AM | 25 | A. Yes. |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:38:36AM | 1 | A.       I remember him sending me this.  The link -- I |
| 10:38:51AM | 2 | remember him sending me the link of this.  I don't |
| 10:38:55AM | 3 | recall. |
| 10:38:55AM | 4 | Q.       Okay.  How did Bruce Ross send the link?  Did he |
| 10:38:58AM | 5 | email it to you or text it to you? |
| 10:39:00AM | 6 | A.       I don't recall. |
| 10:39:06AM | 7 | Q.       Okay.  Did you check your email to see if you |
| 10:39:09AM | 8 | have an email from Bruce Ross? |
| 10:39:12AM | 9 | A.       No.  I -- no. |
| 10:39:15AM | 10 | Q.       Okay.  So I guess in searching for documents to |
| 10:39:18AM | 11 | produce, did you check your email from anything from |
| 10:39:22AM | 12 | Bruce Ross in relation to this matter? |
| 10:39:24AM | 13 | A.       No. |
| 10:39:24AM | 14 | Q.       No?  Okay. |
| 10:39:26AM | 15 |          MR. BRIDGES:  Did you search for anything |
| 10:39:29AM | 16 | directly from Bruce Ross?  I mean, if you did a search |
| 10:39:33AM | 17 | procedure and it might have come up from Bruce Ross, is |
| 10:39:36AM | 18 | that what you're asking specifically for something from |
| 10:39:37AM | 19 | Bruce Ross? |
| 10:39:37AM | 20 |          MR. GORDON:  I'm asking for Bruce Ross because |
| 10:39:39AM | 21 | it's referencing that he's sending me a text or an email |
| 10:39:43AM | 22 | link presumably. |
| 10:39:46AM | 23 |          THE WITNESS:  Well, I did a search, and it |
| 10:39:48AM | 24 | didn't come up. |
| 10:39:49AM | 25 |          MR. GORDON:  Q.  Okay.  Okay.  Did you delete |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:39:54AM | 1 | any text messages from Bruce Ross? |
| 10:39:56AM | 2 | A.      No. |
| 10:39:56AM | 3 | Q.      Okay.  So you would still have them.  Did you |
| 10:39:59AM | 4 | delete any emails from Bruce Ross? |
| 10:40:01AM | 5 | A.      I don't believe so. |
| 10:40:02AM | 6 | Q.      You don't believe so, okay.  Okay.  Well, we'll |
| 10:40:04AM | 7 | refer with your counsel afterwards to see if he has |
| 10:40:08AM | 8 | that.  I mean, not right now, John.  I just mean when |
| 10:40:09AM | 9 | this is done.  Because we have a meet and confer letter |
| 10:40:13AM | 10 | stating it. |
| 10:40:14AM | 11 |         By the way, do you have Bruce Ross's cell phone |
| 10:40:16AM | 12 | number? |
| 10:40:17AM | 13 | A.      Yes. |
| 10:40:33AM | 14 | Q.      And what is that? |
| 10:40:34AM | 15 | A.      ▇▇▇▇▇▇▇. |
| 10:40:40AM | 16 | Q.      Okay.  And Bruce Ross is a -- does he work for |
| 10:40:45AM | 17 | Senator Dahle; is that accurate? |
| 10:40:47AM | 18 | A.      I believe so. |
| 10:40:49AM | 19 | Q.      And how long have you known Bruce Ross? |
| 10:40:53AM | 20 | A.      Not very long.  I mean, at this time, since |
| 10:41:05AM | 21 | COVID is the first time I believe I met him. |
| 10:41:07AM | 22 | Q.      Okay.  All right. |
| 10:41:08AM | 23 |         MR. BRIDGES:  Real quick, just to be clear, in |
| 10:41:10AM | 24 | his first deposition he did reference the email from |
| 10:41:12AM | 25 | Bruce Ross.  I think that was produced. |

**B.J. MACFARLANE**

```
11:11:02AM  1   said that, and I probably agreed that no one needs to
11:11:07AM  2   know where that -- that we didn't want to cause that guy
11:11:11AM  3   that got the goat any grief.
11:11:13AM  4   Q.    Why would that guy get grief?
11:11:17AM  5   A.    For having that goat that Melanie and I have
11:11:30AM  6   gotten phone calls and death threats before.  I think
11:11:35AM  7   the guy that got the meat would get that.
11:11:39AM  8   Q.    Okay.  Was this person -- and to be clear, you
11:11:43AM  9   don't know what guy this is?
11:11:44AM 10   A.    Well, we saw Vista.  Vista Real Estate.
11:11:50AM 11   Q.    Vista Real Estate is who got Cedar?
11:11:53AM 12   A.    That's what I believe is what's written here and
11:11:56AM 13   that's --
11:11:57AM 14   Q.    Okay.  That's -- okay.  So may I see that text
11:12:00AM 15   for one second?  "Vista Real Estate got marked" -- "got
11:12:08AM 16   Cedar."  Okay.  That's your understanding.  Okay.  So
11:12:11AM 17   it's a company?
11:12:12AM 18   A.    Yes.
11:12:13AM 19   Q.    Some company?  Okay.  Vista Real Estate got
11:12:17AM 20   Cedar.
11:12:18AM 21         Okay.  And so you were doing this to protect
11:12:23AM 22   Vista Real Estate?
11:12:24AM 23   A.    Yes.
11:12:25AM 24   Q.    Didn't you testify earlier that you didn't know
11:12:32AM 25   who got Cedar, though?
```

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:12:33AM | 1 | A.    I did testify earlier that I did not know who |
| 11:12:36AM | 2 | got Cedar, but I read it in the email or text messages |
| 11:12:38AM | 3 | here and that is -- |
| 11:12:40AM | 4 | Q.    So that's Melanie telling you Vista Real |
| 11:12:42AM | 5 | Estate -- |
| 11:12:42AM | 6 | A.    Yes. |
| 11:12:43AM | 7 | Q.    -- is getting Cedar?  Okay.  All right. |
| 11:12:44AM | 8 | A.    I did testify that I did not know.  And I did |
| 11:12:47AM | 9 | not know until I read that. |
| 11:12:49AM | 10 | Q.    Okay.  All right.  All right.  And then the next |
| 11:12:53AM | 11 | page Melanie -- Melanie texts you, "Thank you.  We are a |
| 11:13:00AM | 12 | nonprofit."  What did that -- how do you interpret that? |
| 11:13:05AM | 13 | A.    As it reads.  We are a nonprofit. |
| 11:13:17AM | 14 | Q.    What does she mean by "we," if you know? |
| 11:13:19AM | 15 | A.    The junior livestock auction. |
| 11:13:21AM | 16 | Q.    Okay.  So reading that in conjunction with the |
| 11:13:26AM | 17 | prior text for Kathie when she said, "Tell anyone that |
| 11:13:29AM | 18 | Cedar was donated to a nonprofit," and Melanie saying |
| 11:13:32AM | 19 | the junior livestock auction, doesn't that imply that |
| 11:13:35AM | 20 | Cedar was donated to the junior livestock auction? |
| 11:13:38AM | 21 |       MR. BRIDGES:  Calls for speculation about what |
| 11:13:39AM | 22 | Melanie meant, but if you know, you can answer. |
| 11:13:42AM | 23 |       THE WITNESS:  No, I don't -- I think she was |
| 11:13:46AM | 24 | making light of the situation of a nonprofit.  I have no |
| 11:13:48AM | 25 | idea, though, no clue what was she thinking. |

```
 1                    PENALTY OF PERJURY

 2       Please be advised I have read the foregoing

 3       deposition, and I hereby state there are:

 4


 5       (Check one)     _____ no corrections

 6                       _____ corrections attached

 7


 8       Executed on _____

 9                         Date

10


11                       _____
                         BJ MACFARLANE
12


13


14
                            ---oOo-
15


16


17


18


19


20


21


22


23


24


25
```

```
 1                REPORTER'S CERTIFICATE
 2
 3          I hereby certify that the witness in the
 4   foregoing deposition was duly sworn by me to tell the
 5   truth, the whole truth, and nothing but the truth in the
 6   within-entitled cause; that said deposition was taken at
 7   the time and place herein named; and that the testimony
 8   of said witness was reported by me, a duly certified
 9   shorthand reporter and disinterested person, and was
10   thereafter transcribed under my direction by
11   computer-assisted transcription.
12          I further certify that I am not of counsel or
13   attorney for either or any of the parties to said
14   deposition, nor in any way interested in the outcome of
15   the case named in said caption.
16          IN WITNESS WHEREOF, I have hereunto set my
17   hand.
18
19          DATED:  FEBRUARY 25, 2024
20
21
22          _____
23              SUZANNA MICKELSON, CSR No. 14270
24                    State of California
25
```