# EXHIBIT 22

# In The Matter Of:

*LONG vs.*
*FERNANDEZ*

---

*MICHAEL FLORES*
*May 21, 2024*

---

*Challe, Fisher & Morfin*
*1828 South Street*
*Redding, California  96001*
*(530)246-0942*
*cfmdepos@att.net*

Original File M. Flores.txt

**Min-U-Script® with Word Index**

1              UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF CALIFORNIA

3                  SACRAMENTO DIVISION

4  E.L., a minor, by and through her   )
   general guardian, JESSICA LONG;     )
5  JESSICA LONG, an individual,        )
                                       )
6                  Plaintiffs,         )
                                       )
7     vs.                              )  NO. 2:22-cv-01527-
                                       )  DAD-AC
8  LIEUTENANT JERRY FERNANDEZ,         )
   individually and in his            )
9  individual capacity as Sheriff     )
   for the County of Shasta;          )
10 DETECTIVE JACOB DUNCAN,             )
   individually and in his            )
11 individual capacity as Sheriff     )
   for the County of Shasta;          )
12 DETECTIVE JEREMY ASHBEE,            )
   individually and in his            )
13 individual capacity as Sheriff     )
   for the County of Shasta; SHASTA   )
14 DISTRICT FAIR AND EVENT CENTER, a   )
   district agricultural              )
15 association; COUNTY OF SHASTA;      )
   SHASTA COUNTY SHERIFF'S            )
16 DEPARTMENT; MELANIE SILVA, in her   )
   individual capacity; BJ            )
17 MACFARLANE, in his individual      )
   capacity; and DOES 1 through 10,    )
18                                     )
                   Defendants.         )
19 ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                     ---oOo-
20             TUESDAY, MAY 21, 2024

21                  11:01 a.m.

22    VIDEOTAPED ZOOM TELECONFERENCE DEPOSITION OF

23                MICHAEL FLORES

24                 ---oOo---

25    Reported by:  CAROL J. CHASE, CSR No. 13538

# In The Matter Of:

*LONG vs.*

*FERNANDEZ*

---

*MICHAEL FLORES*

*May 21, 2024*

---

*Challe, Fisher & Morfin*

*1828 South Street*

*Redding, California  96001*

*(530)246-0942*

*cfmdepos@att.net*

Original File M. Flores.txt

Min-U-Script® with Word Index

1                   UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF CALIFORNIA

3                       SACRAMENTO DIVISION

4    E.L., a minor, by and through her    )
     general guardian, JESSICA LONG;      )
5    JESSICA LONG, an individual,         )
                                          )
6                        Plaintiffs,      )
                                          )
7       vs.                               ) NO. 2:22-cv-01527-
                                          ) DAD-AC
8    LIEUTENANT JERRY FERNANDEZ,          )
     individually and in his             )
9    individual capacity as Sheriff      )
     for the County of Shasta;           )
10   DETECTIVE JACOB DUNCAN,             )
     individually and in his            )
11   individual capacity as Sheriff      )
     for the County of Shasta;           )
12   DETECTIVE JEREMY ASHBEE,            )
     individually and in his            )
13   individual capacity as Sheriff      )
     for the County of Shasta; SHASTA    )
14   DISTRICT FAIR AND EVENT CENTER, a   )
     district agricultural               )
15   association; COUNTY OF SHASTA;      )
     SHASTA COUNTY SHERIFF'S             )
16   DEPARTMENT; MELANIE SILVA, in her   )
     individual capacity; BJ            )
17   MACFARLANE, in his individual       )
     capacity; and DOES 1 through 10,    )
18                                        )
                         Defendants.      )
19   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
                         ---oOo-
20                   TUESDAY, MAY 21, 2024

21                        11:01 a.m.

22       VIDEOTAPED ZOOM TELECONFERENCE DEPOSITION OF

23                       MICHAEL FLORES

24                        ---oOo---

25        Reported by:  CAROL J. CHASE, CSR No. 13538

**MICHAEL FLORES**

| | |
|---|---|
| 1 | A       No. |
| 2 | Q       Great.  Any reason you can think of that |
| 3 | you cannot go forward with your deposition testimony |
| 4 | today? |
| 11:07:12  5 | A       No. |
| 6 | Q       Great.  All right.  So look at my notes |
| 7 | here. |
| 8 | So what is your -- your current position, |
| 9 | Mr. Flores? |
| 11:07:23 10 | A       Deputy secretary for the department of food |
| 11 | and agriculture. |
| 12 | Q       Okay.  And what are your roles in that -- |
| 13 | what is your role as deputy secretary? |
| 14 | A       I oversee a -- fair boards and fairgrounds. |
| 11:07:45 15 | Q       Okay.  And do you have any other |
| 16 | responsibilities? |
| 17 | A       Well, I sit on quite a few boards and |
| 18 | commissions. |
| 19 | Q       Okay.  And when you say "boards," what do |
| 11:07:58 20 | you mean by boards? |
| 21 | A       Well, for instance, I sit on the California |
| 22 | California Broadband Council, which is a board. |
| 23 | THE COURT REPORTER:   What is that? |
| 24 | THE WITNESS:  California Broadband Council. |
| 11:08:13 25 | /// |

**MICHAEL FLORES**

1    BY MR. GORDON:

2        Q    Is that like Internet services or

3    something --

4        A    Well, it's to provide policy setting for

11:08:23 5    the -- the implementation of broadband for all in

6    the State of California.

7        Q    I see.  Okay.  Okay.

8            And how is that -- okay.  You said you sit

9    on fair boards and fairgrounds.  And this -- that is

11:08:39 10   in relation to fairgrounds and fair boards somehow?

11       A    Well, we're trying to get -- as you may

12   know, a lot of fairgrounds are in rural areas and

13   broadband isn't the best.  And so there is a nexus

14   there to bring broadband to -- to all the

11:08:59 15   fairgrounds as well.

16       Q    I see.  Okay.  Okay.

17           So how many fair boards -- how many fair

18   boards are there in California?  Does -- does each

19   county have one?  Or can you explain just a little

11:09:15 20   bit how that operates?

21       A    Sure.  There are -- there are a total of

22   70 -- 72 fairs throughout the State of California.

23       Q    Okay.

24       A    There are 52 district ag associations.  And

11:09:30 25   those are fairgrounds that generally are owned by

**MICHAEL FLORES**

        1    example?

        2        A      No.

        3        Q      Do you approve them in any capacity?

        4        A      No.

11:19:30 5        Q      Do you -- okay.

        6               Have you -- have you ever read them for any

        7    particular year since you've been there?

        8        A      No.

        9        Q      No.  Okay.  All right.

11:19:41 10               Okay.  And what -- I know on -- I'm --

        11   we're deposing Michael Francesconi after you, but I

        12   -- I'm -- what are -- what are his responsibilities

        13   in relation to -- well, what are Michael

        14   Francesconi's responsibilities?

11:19:55 15       A      He is a branch chief for the fairs and

        16   exposition.

        17       Q      And -- and how does that differ compar- --

        18   compared to what you do?

        19       A      I would say that Michael -- or Mike is more

11:20:21 20   nuts and bolts, and I am more big picture and

        21   political.

        22       Q      I see.  Michael re- -- is it accurate to

        23   say that he reports to you?

        24       A      I -- I would say that we work together.

11:20:46 25       Q      Okay.  Okay.  But on the hierarchy, you

## MICHAEL FLORES

1    are -- correct me if I'm wrong, but it seems like
2    your position is more, you know, higher up, more of
3    an executive level position than -- than his.
4            Is that accurate?
11:21:04 5    A    That is correct.
6    Q    So, for example, does he re- -- he reports
7    to you as opposed to reporting to the secretary
8    himself or herself; is that accurate?
9    A    Yes.
11:21:14 10    Q    That's -- okay.  All right.  Okay.
11            So what issues does he typically turn to
12    you for?
13    A    Well, pretty much everything, I would say.
14    Q    Okay.
11:21:48 15    A    Yeah.
16    Q    All right.  Okay.  So it's very broad?
17    A    Yes.
18    Q    Okay.  All right.  All right.
19            So you're familiar with the lawsuit that's
11:22:02 20    ongoing, yes?
21    A    Yes.
22    Q    Okay.  And by "familiar with it," I mean, I
23    know you don't know it intimately.  You haven't
24    been -- well, have you read the complaint in it?
11:22:13 25    A    No.

**MICHAEL FLORES**

1          Do you recall -- do you recall -- all

2    right.

3          Do you recall speaking with Melanie Silva

4    on the phone about this at any point in time?

11:32:33 5    A    Yes.

6    Q    Okay.  About when did you speak with her on

7    the phone?

8    A    I don't recall.

9    Q    Okay.  All right.  So give me one second

11:32:49 10   here.  I'm going to show you a document.

11         So, Mr. Flores, I'm going to read a phone

12   number out to you and I want you to verify that this

13   is your phone number.   ██████-5038.

14         Is that --

11:33:39 15   A    Correct.

16   Q    I'm sorry?

17   A    Correct.

18   Q    Correct.  Okay.  All right.  I'm going to

19   show you a few phone records here that might refresh

11:33:48 20   your memory.

21         MR. GORDON:  John, I've redacted most of

22   these for privacy reasons, so it's going to be a

23   big -- you know, everything is redacted except for

24   that number so -- for privacy reasons.

11:34:07 25        MR. BRIDGES:  (Nodding.)

MICHAEL FLORES

| | | |
|---|---|---|
| 1 | | are -- correct me if I'm wrong, but it seems like |
| 2 | | your position is more, you know, higher up, more of |
| 3 | | an executive level position than -- than his. |
| 4 | | Is that accurate? |
| 11:21:04 5 | A | That is correct. |
| 6 | Q | So, for example, does he re- -- he reports |
| 7 | | to you as opposed to reporting to the secretary |
| 8 | | himself or herself; is that accurate? |
| 9 | A | Yes. |
| 11:21:14 10 | Q | That's -- okay.  All right.  Okay. |
| 11 | | So what issues does he typically turn to |
| 12 | | you for? |
| 13 | A | Well, pretty much everything, I would say. |
| 14 | Q | Okay. |
| 11:21:48 15 | A | Yeah. |
| 16 | Q | All right.  Okay.  So it's very broad? |
| 17 | A | Yes. |
| 18 | Q | Okay.  All right.  All right. |
| 19 | | So you're familiar with the lawsuit that's |
| 11:22:02 20 | | ongoing, yes? |
| 21 | A | Yes. |
| 22 | Q | Okay.  And by "familiar with it," I mean, I |
| 23 | | know you don't know it intimately.  You haven't |
| 24 | | been -- well, have you read the complaint in it? |
| 11:22:13 25 | A | No. |

**MICHAEL FLORES**

1    BY MR. GORDON:

2        Q       Mr. Flores, I'm going to do a ScreenShare

3    in a moment so just bear with me.

4        A       Sure.

11:34:28  5      Q       All right.  Can you see the screen?

6        A       Yes.

7        Q       Great.  All right.  So we have an incoming

8    call on June 27th at 11:42 a.m. two minutes to --

9    this is Melanie -- this is from Melanie Silva's cell

11:34:49 10  phone records which we subpoenaed.

11               Do you recall making this phone call?  It's

12   highlighted in green up top next to this cursor.

13       A       Yes.

14       Q       Okay.  And what did you discuss in that

11:35:01 15  call?

16       A       (Audio distortion.)

17       Q       So this would have been --

18       A       (Audio distortion.)

19       Q       I -- Cedar was removed the evening of

11:35:22 20  June 25th.  So this would have been -- they started

21   looking for him -- when I say "they," Macfarlane,

22   Silva --

23       A       Ah.

24       Q       -- late that evening.  So this would have

11:35:31 25  been about, you know, shortly thereafter the next

**MICHAEL FLORES**

1    day -- Monday morning.

2    A    Yeah.  I don't -- I believe that call was

3    to discuss picking up a barbecue.

4    Q    Picking up a barbecue.

11:35:43 5    A    Uh-huh.

6    Q    Okay.  So you didn't -- did you discuss

7    Cedar at all in this call?

8    A    I don't believe so.

9    Q    You don't --

11:35:50 10    A    No.

11    Q    -- believe so.

12    A    No.

13    Q    Okay.  All right.  Okay.  So on just since

14    we have the phone records up, let's just go to the

11:36:00 15    next call.

16         So on June 29th here, this is 9:22 a.m.  so

17    you again called Melanie Silva's cell phone.

18         Did you speak with -- did you a discuss

19    Cedar or plaintiffs on that June 29th call?

11:36:19 20    A    Possible.

21    Q    Possible.  Okay.  All right.

22    A    As well as the barbecue.

23    Q    What about the barbecue did you discuss on

24    the first call on the 22nd?

11:36:29 25    A    I purchased the -- purchased a giant

MICHAEL FLORES

1  barbecue from Ag Mechanics.  And so she was storing
2  it until I could pick it up.  I had to make
3  arrangements to go back and pick it up.

4       Q     Okay.

11:36:46 5       A     It was huge.  I'm not sure if you're aware
6  of a big giant barbecue pit, but...

7       Q     Okay.  All right.  So you discussed a
8  barbecue pit with her on one of these calls and
9  Cedar on a later call is your -- is it best of
11:37:04 10 you -- that's your testimony?

11       A     Yes.  Yes.

12       Q     Okay.  All right.  And so again, there's
13  threes calls on the 29th so -- from you.  So this
14  is -- let's go to the second call at 10:07 a.m.,
11:37:20 15 six-minute call.

16            Would this -- did this concern Cedar and
17  plaintiffs?

18       A     I will admit it could be any one of those
19  calls, but it could have been other subject matter
11:37:43 20 as well.

21       Q     Okay.  But you do recall speaking with her
22  on --

23       A     Yes.

24       Q     -- about Cedar?

11:37:49 25       A     Yes.

**MICHAEL FLORES**

1    Q    Okay.  Okay.  And what did you discuss

2    about Cedar and plaintiffs?

3    A    I told her to work with local authorities

4    on the retrieval of -- of Cedar.

11:38:03  5    Q    Okay.

6    A    And that was the extent of it.

7    Q    So the one sentence.  Nothing else?

8    A    Well, I believe she briefed me on the

9    issue.

11:38:18 10    Q    Okay.

11    A    And --

12    Q    Okay.

13    A    It was my recommendation that she work with

14    local authorities.  And that was it.

11:38:27 15    Q    Okay.  And did you -- do you know any of

16    the local authorities in -- in Shasta?

17    A    No.

18    Q    No.  Okay.

19         Why did you tell her to work with local

11:38:37 20    authorities?

21    A    Well, that's what I would tell any fair CEO

22    on a matter with respect to fairs to work with local

23    authorities.  They have lo- -- they have

24    jurisdictions, though.

11:38:50 25    Q    Okay.  Is there another option besides

## MICHAEL FLORES

1       Q      Have you ever spoken with them about the

2    situation with Cedar and plaintiffs, you know --

3       A      No.

4       Q      -- not just about the lawsuit, just the --

11:57:21  5    the removal of Cedar and plaintiffs generally?

6       A      No.

7       Q      No?  Okay.

8              When was the last time you spoke with

9    Senator Dahle?

11:57:34 10      A      A year and a half.

11       Q      So it's been a while.

12       A      (Nodding.)

13       Q      Okay.  And when you spoke with them, did

14    you -- did you speak about this lawsuit at all?

11:57:49 15      A      No.

16       Q      No.  Okay.  All right.  I'm going to show

17    you a -- a photo -- I want to -- tell me if you've

18    seen this before.  This is a social media post.

19              All right.  Mr. Flores, can you see my

11:58:15 20    screen?

21       A      Yes.

22       Q      All right.  Have you seen this -- now I'll

23    represent to you this is a -- this is an Instagram

24    post -- posted on June 27th, 2022.

11:58:26 25              So have you seen this Instagram post

**MICHAEL FLORES**

```
 1    before?
 2         A        Yes.
 3         Q        Yes.  Okay.  All right.
 4                  Do you know about when you saw it?
11:58:33  5   A        No.
 6         Q        No.  Okay.  Was it around the time it was
 7    posted?
 8         A        No.
 9         Q        Well, when did you -- when did you see it
11:58:43 10   then as best you can recall?
11         A        Well after.
12         Q        Well, like, within the last six months?  A
13    year ago?  Can you be more specific?
14         A        It could -- I would say probably a month
11:58:55 15   after.
16         Q        A month -- a month after it was posted?
17         A        Yes.
18         Q        Okay.  And who showed it to you?
19         A        No one.  I saw it myself.
11:59:05 20   Q        Where did you see it?
21         A        On the Internet.
22         Q        I -- I -- okay.  On -- you saw it on
23    Instagram a month later.  That's your testimony?
24         A        I'm not sure it was Instagram.
11:59:25 25   Q        All right.
```

**MICHAEL FLORES**

1     A     I don't recall what media I -- I saw it on,
2     but I have seen it.
3     Q     You have seen it on the Internet somewhere.
4           Were you searching for it?
11:59:38  5     A     I believe so.
6     Q     Okay.  So who -- so what -- how did you
7     learn of it to search of it?
8     A     Not -- not sure.
9     Q     Not sure.
11:59:56 10         Do you think Melanie Silva or do you --
11     A     No.
12     Q     Might Melanie Silva have told you?
13     A     No.
14     Q     No.  What about Mr. Francesconi?
12:00:05 15     A     Maybe.
16     Q     Maybe?  Okay.
17           Why did you -- after learning of it, why
18     did you seek it out or why did you try to locate it
19     rather?
12:00:21 20     A     Just for my own edification.
21     Q     Okay.  All right.  What was your reaction
22     to to seeing it?
23     A     I'm not sure I really had a reaction.
24     Q     Okay.  So you believe that you saw it then,
12:00:38 25     you know, within a month after.  So it was posted

**MICHAEL FLORES**

1    June 27th, so sometime in July is your testimony

2    when you -- when you sought it out?

3        A    Yes.

4        Q    Okay.  And do you recall if you saw it

12:00:54 5    on -- do you -- do you recall what website you saw

6    it on, like -- or what form of social media,

7    Facebook, or something else if you can recall?

8        A    More likely Facebook.

9        Q    More likely Facebook.  Okay.  Okay.  All

12:01:11 10    right.

11            And so after looking at it, did you discuss

12    it with anyone else?

13        A    I don't recall.

14        Q    You don't recall.

12:01:29 15            Did you save a copy of it anywhere?

16        A    No.

17        Q    Okay.  And did you -- did you forward it to

18    anyone?

19        A    No.

12:01:41 20        Q    Okay.  So -- all right.  I'm going to show

21    you another document.  Give me one moment, sir.

22            MR. GORDON:  Oh, Madam Court Reporter,

23    we're going to mark that as Exhibit B and I will

24    send it to you.

12:02:11 25            (Exhibit B was marked.)

MICHAEL FLORES

```
 1        on some boards.  You gave one board position.
 2                But what other boards do you sit on?
 3        A       California Construction Authority.
 4        Q       Okay.
12:31:45 5        A       Let's see.  The California Fair Services
 6        Authority, the San Joaquin Valley Partnership.
 7        Let's see.  I believe that's it.
 8        Q       Okay.  Okay.  So where do you -- where do
 9        you physically work?  You -- you have an office at
12:32:18 10       the -- on -- at -- in Sacramento presumably?
11        A       Yes.
12        Q       Okay.  And there's no phone in that office?
13        A       Yeah.  Yes, there's a phone.
14        Q       Other than the number that you gave, your
12:32:32 15       cell phone?  Because earlier you testified you had
16        to --
17        A       Yes, yes.  I -- I -- I don't know what the
18        number is, though.
19        Q       You don't know what the number is to your
12:32:43 20       office?
21        A       I don't use it.
22        Q       You don't use it.  Okay.
23                Okay.  Okay.  So about how many
24        conversations did you have with Mike Francesconi in
12:32:59 25       total regarding Cedar?
```

**MICHAEL FLORES**

```
 1        A      I don't know.
 2        Q      You don't know.
 3               Less than ten?
 4        A      Could be.
12:33:17  5        Q      Could be?
 6               More than ten?
 7        A      I really don't know.
 8        Q      Okay.  Well, I -- so I'm trying to get your
 9      best estimate.  So more than ten?  Or more than 15,
12:33:33 10      do you think?
11        A      You want to give me a time frame?  Are you
12      talking about --
13        Q      Yeah.  Let's -- let's --
14        A      Up to date or?
12:33:42 15        Q      Well, let's -- let's do -- let's do the,
16      you know, June -- June 2022 to September of 2022.
17      So in that time frame.
18        A      Maybe 15.
19        Q      Maybe 15.  Okay.
12:33:59 20        A      Uh-huh.
21        Q      Okay.  And when was the last conver- -- and
22      this is -- this is out of that time frame now.
23               When was the last conversation you had
24      conversation with -- with Mike Francesconi about
12:34:12 25      the -- the Cedar incident?
```

**MICHAEL FLORES**

1    that.

2          Mr. Flores, let me ask this.  In the 15 or

3    so conversations that you had between June and

4    September of 2022, did any of those conversations

12:36:00  5    concern what to do with Cedar once -- once he was

6    acquired?

7      A      No.

8      Q      No?  Okay.  All right.

9          Did they all concern getting Cedar before

12:36:15  10   he was taken into custody by the sheriffs?

11     A      No.

12     Q      What did they concern then?  Please

13   elaborate.

14     A      Well, you're asking me to summarize

12:36:32  15   conversations from two years ago?

16     Q      Yes.

17     A      I don't recall exactly what would have been

18   discussed, but I can tell you the questions you

19   asked me -- the aforementioned questions you asked,

12:36:48  20   I definitely remember that not being discussed.

21          Probably just updates as to what might have

22   been transpiring.  I -- I don't know --

23     Q      Okay.

24     A      -- to be quite honest.

12:37:03  25     Q      So the content of the calls generally as

**MICHAEL FLORES**

1    A    Rather than refer her to -- I'm -- say that
2  again.

3    Q    Yeah.

4    A    Yeah, could you say that again?  I'm not...

12:42:05  5    Q    Well, yeah, the state and local rules
6  has -- have -- has, you know, procedures that apply
7  to this situation or potentially apply to this
8  situation.

9         Is there any reason you told Ms. Silva
12:42:18 10  to -- or use the law enforcement to resolve the
11  dispute as opposed to referring her to what the lo-
12  -- local rules or state rules say governing disputes
13  with exhibitors?

14    A    I'm not sure I referenced local rules.

12:42:35 15    Q    Okay.  So it was just --

16    A    Yeah.

17    Q    It didn't cross your mind is your
18  testimony?

19    A    Yes.

12:42:40 20    Q    All right.  Okay.  And -- okay.  So you
21  spoke -- you -- earlier, you listed -- I'm going
22  to -- you listed your three staff members at the
23  time, which is Sofia Goss, Mike Francesconi, and
24  Sarah Pelle, other than -- other -- and Melanie, of
12:43:09 25  course.

MICHAEL FLORES

1              But other than those individuals and your
2      attorneys, of course, is there anyone else you spoke
3      to regarding Cedar or plaintiffs ever?

4      A      Attorney-client?

12:43:24 5              MR. BRIDGES:  Ask him.

6              THE COURT:  Can I get a moment, please?

7      BY MR. GORDON:

8      Q      For?

9              MR. BRIDGES:  Was there a potential

12:43:39 10     attorney-client --

11             THE WITNESS:  I would like to confer with

12     my -- the attorney if I could.

13     BY MR. GORDON:

14     Q      It's not technically -- hold on.

12:43:50 15     A      Can I take a break?

16             MR. BRIDGES:  There you go.  I was going to

17     say, we can --

18     BY MR. GORDON:

19     Q      You're not supposed to take a break when a

12:43:54 20     question is pending is --

21     A      Oh, okay.

22     Q      If this implicates attorney-client

23     privilege, I don't want to know those people.  Not

24     your attorneys.

12:43:59 25     A      Okay.  That's it.  Okay.

**MICHAEL FLORES**

```
 1        Q      Yeah.  So --
 2        A      No one -- no one else?
 3        Q      No one else, just your attorney.  That's
 4    why I said except for your attorneys.  No one else
 5    besides the people I mentioned then.  So Melanie --
 6    I'm spacing.  Melanie, Sofia Goss, Mike Francesconi,
 7    and Sarah Pelle, correct?
 8        A      Correct.
 9        Q      Oh.  And, Mr. Flores, so what numbers do
10    you call Mike Francesconi on?  I know there's a ███
11    number, a -- or a ████████  number, but what other
12    numbers do you use?  Feel free to check your phone.
13        A      To call -- to call Mike?
14        Q      Yes.
15        A      I call him on his cell phone.
16        Q      Which is?
17        A      Am I at liberty to do that?
18               MR. BRIDGES:  Ask him.
19               THE WITNESS:  Ask him what?
20               John, can I give him -- I don't know if I
21    can give out his phone number, so...
22               MR. GORDON:  It's not going to -- I'm not
23    going use it.  It's not going to be distributed.
24               MR. BRIDGES:  Let's -- can we talk about it
25    on a break, you and me, Ryan, just to see -- I mean,
```

Time stamps: 12:44:11 (line 5), 12:44:28 (line 10), 12:44:42 (line 15), 12:45:10 (line 20), 12:45:22 (line 25)

1                         PENALTY OF PERJURY

2

3           I, the undersigned, hereby certify that I

4     have read the foregoing deposition, that I know the

5     contents thereof, and I declare under penalty of

6     perjury under the laws of the State of California

7     that the foregoing is true and correct.

8

9           Executed on _____, 2024.

10

11

12

13                   _____
                     MICHAEL FLORES
14                        ---oOo---

15

16

17

18

19

20

21

22

23

24

25

```
1              WITNESS' CHANGES OR CORRECTIONS

2

3    NOTE:  If you are adding to your testimony, print
     the exact words you want to add.  If you are
4    deleting from your testimony, print the exact words
     you want to delete.  Specify with "Add" or "Delete"
5    and sign this form.

6    Deposition of:  MICHAEL FLORES
     Case Title:  LONG V. FERNANDEZ, ET AL.
7    Date of Deposition:  TUESDAY, MAY 21, 2024

8    Page   Line        Change/Add/Delete

9    _____  _____  _____

10   _____  _____  _____

11   _____  _____  _____

12   _____  _____  _____

13   _____  _____  _____

14   _____  _____  _____

15   _____  _____  _____

16   _____  _____  _____

17   _____  _____  _____

18   _____  _____  _____

19   _____  _____  _____

20   _____  _____  _____

21   _____  _____  _____

22   _____  _____  _____

23   _____  _____  _____

24   _____  _____

25   MICHAEL FLORES                          DATED
```

**CERTIFICATE OF REPORTER**

1

2

3        I, CAROL J. CHASE, a Certified Shorthand

4    Reporter, licensed by the State of California,

5    License No. 13538, being empowered to administer

6    oaths and affirmations pursuant to Section 2093 (b)

7    of the Code of Civil Procedure, do hereby certify:

8        That the witness in the foregoing deposition,

9    MICHAEL FLORES, was present at the time and place

10    specified and was by me sworn to testify to the

11    truth, the whole truth, and nothing but the truth;

12        That said proceeding was taken before me in

13    shorthand writing, and was thereafter transcribed

14    under my direction by computer-aided transcription;

15        That the foregoing transcript constitutes a

16    full, true, and accurate record of the proceeding

17    which took place; That I am not of counsel or

18    attorney for any of the parties hereto, or in any

19    way interested in the event of this cause, and that

20    I am not related to any of the parties hereto.

21        IN WITNESS WHEREOF, I have hereunto subscribed

22    my signature on this 30th day of May, 2024.

23

24    _____

                *Carol J Chase*
         CAROL J. CHASE

25

REDDING, CA       CHALLE, FISHER & MORFIN     (530) 246-0942