1   JEFFREY V. DUNN, Bar No. 131926
    jeffrey.dunn@bbklaw.com
2   CHRISTOPHER M. PISANO, Bar No. 192831
    christopher.pisano@bbklaw.com
3   DAMIAN A. NORTHCUTT, Bar No. 258183
    damian.northcutt@bbklaw.com
4   BEST BEST & KRIEGER LLP
    18101 Von Karman Avenue
5   Suite 1000
    Irvine, California  92612
6   Telephone:    (949) 263-2600
    Facsimile:    (949) 260-0972
7
    Attorneys for Defendants
8   COUNTY OF SHASTA; SHASTA COUNTY
    SHERIFF'S DEPARTMENT; LIEUTENANT JERRY
9   FERNANDEZ, DETECTIVE JACOB DUNCAN, and
    DETECTIVE JEREMY ASHBEE
10

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

11              UNITED STATES DISTRICT COURT

12            EASTERN DISTRICT OF CALIFORNIA

13                 SACRAMENTO DIVISION

14

15  E.L., a minor, by and through her general       Case No. 2:22-cv-01527-DAD-AC
    guardian, JESSICA LONG; JESSICA LONG,
16  an individual,                                   **NOTICE OF MOTION AND MOTION
                                                     FOR SUMMARY JUDGMENT, OR IN
17              Plaintiffs,                           THE ALTERNATIVE, SUMMARY
                                                     ADJUDICATION OF ISSUES BY
18         v.                                         DEFENDANTS LIEUTENANT JERRY
                                                     FERNANDEZ, DETECTIVE JACOB
19  LIEUTENANT JERRY FERNANDEZ, in his               DUNCAN, DETECTIVE JEREMY
    individual capacity; DETECTIVE JACOB             ASHBEE, SHASTA COUNTY
20  DUNCAN, in his individual; DETECTIVE             SHERIFF'S DEPARTMENT, AND THE
    JEREMY ASHBEE, in his individual capacity;       COUNTY OF SHASTA**
21  and DOES 1 through 10,
                                                     Date:         October 1, 2024
22              Defendants.                          Time:         1:30 p.m.
                                                     Judge:        Hon. Dale A. Drozd
23                                                   Action Filed: August 31, 2022
                                                     Trial Date:   October 7, 2024
24

25

26

27

28

1    TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE THAT, on Tuesday, October 1, 2024 at 1:30 p.m., or as soon

3    thereafter as the matter may be heard, in Courtroom 4, 15th Floor of the aforementioned Court,

4    located at 501 I Street, Sacramento, CA 95814, Defendants Lieutenant Jerry Fernandez, Detective

5    Jacob Duncan, Detective Jeremy Ashbee (collectively "County Officers"), the Shasta County

6    Sheriff's Department, and the County of Shasta (with the County Officers, collectively "County

7    Defendants") will and do hereby move the Court for an order granting summary judgment on all

8    cause of action asserted against the County Defendants in the Second Amended Complaint

9    ("SAC"). Alternatively, if for any reason summary judgment cannot be held against the County

10   Defendants on all causes of action concurrently, the County Defendants will and hereby move the

11   Court for an order granting summary adjudication with respect to each individual cause of action.

12   This Motion is made pursuant to Federal Rule of Civil Procedure Rule 56, on the grounds that the

13   SAC has no merit, that there are no triable issues as to any material fact, and that the County

14   Defendants are entitled to judgment as a matter of law. Specifically, County Defendants are

15   entitled to a judgment as a matter of law as follows:

16       1.    Plaintiffs' First Cause of Action – Right to Be Secure From Unreasonable

17   Searches and Seizures Fourth Amendment to U.S. Constitution (42 U.S.C. § 1983) – has no legal

18   basis and is unsupported by undisputed material facts;

19       2.    Plaintiffs' Second Cause of Action – Denial of Constitutional Right of Due

20   Process of Law Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983) – has no

21   legal basis and is unsupported by undisputed material facts;

22       3.    Plaintiffs' Fifth Cause of Action – Denial of Constitutional Right against

23   Unreasonable Search and Seizure California Constitution, Article 1, § 13 – has no legal basis and

24   is unsupported by undisputed material facts;

25       4.    Plaintiffs' Sixth Cause of Action – Denial of Constitutional Right to Due Process

26   of Law California Constitution, Article I, § 7(a) – has no legal basis and is unsupported by

27   undisputed material facts;

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1810 I VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

1    5.    Plaintiffs' Ninth Cause of Action – Conversion – has no legal basis and is

2    unsupported by undisputed material facts;

3    6.    Plaintiffs' Eleventh Cause of Action – Negligence – has no legal basis and is

4    unsupported by undisputed material facts.

5    In accordance with Judge Dale Drozd's standing orders, counsel for the County

6    Defendants engaged in a pre-filing meet and confer conference with Plaintiffs' counsel on July

7    23, 2024.  This Motion is made after meet and confer efforts have been exhausted without a

8    resolution of the issues raised in this Motion.  (*See, concurrently filed Declaration of Damian A.*

9    *Northcutt* ("Northcutt Decl."), ¶3.)

10   This Motion is based upon this Notice of Motion, the attached Memorandum of Points

11   and Authorities, the accompanying Separate Statement of Undisputed Material Facts ("UMF"),

12   the concurrently filed Declaration of Damian A. Northcutt, the pleadings and records on file with

13   this Court, and upon such oral or documentary evidence as may be presented at the hearing of this

14   Motion.

15   Dated: July 31, 2024                BEST BEST & KRIEGER LLP

16

17                                       By:*/s/ Damian A. Northcutt*

18                                       JEFFREY V. DUNN
                                         CHRISTOPHER M. PISANO
19                                       DAMIAN A. NORTHCUTT

20                                       Attorneys for Defendants
                                         COUNTY OF SHASTA; SHASTA
21                                       COUNTY SHERIFF'S DEPARTMENT;
                                         LIEUTENANT JERRY FERNANDEZ,
22                                       DETECTIVE JACOB DUNCAN, and
                                         DETECTIVE JEREMY ASHBEE

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................. 10

II.  STATEMENT OF FACTS .................................................................... 11

    A.   Plaintiffs' Purchase of Cedar and 4-H Program ............................ 11

    B.   The Theft of Cedar The Goat .......................................................... 12

    D.   Warrants To Retrieve Cedar ............................................................ 13

    E.   The Search for Cedar ....................................................................... 13

    F.   The Retrieval of Cedar .................................................................... 14

III. LEGAL STANDARD ON SUMMARY JUDGMENT ........................ 14

IV.  LEGAL ARGUMENT .......................................................................... 15

    A.   Plaintiffs' First Cause of Action for Unreasonable Search and Seizure Fails Against the County Defendants .................................................................. 15

        1.   Cedar Was Not Plaintiffs' Property After The Sale At The Auction ........ 16

        2.   Cedar Was Not Seized Pursuant to a Warrant; He was Obtained During a Consent Search ....................................................... 18

        3.   Even if Cedar Was Seized Pursuant to a Warrant, the Warrant Was Valid, Was Based on Probable Cause, And Was Reasonable ................... 19

    B.   Plaintiffs' Second Cause of Action for Violation of Due Process Under the Fourteenth Amendment Fails Against the County Defendants............................ 19

    C.   Plaintiffs' Fifth Cause of Action for Unreasonable Search and Seizure Under California Constitution, Article 1, § 13, And Sixth Cause of Action for Denial of Due Process Under California Constitution, Article 1, § 7(a) Fail Against the County Defendants ..................................................... 20

    D.   Plaintiffs Ninth Cause of Action for Conversion Fails Against The County Defendants............................................................................................ 21

    E.   Plaintiffs' Eleventh Cause of Action for Negligence Fails Against The County Defendants ............................................................................ 22

    F.   The County Defendants Are Entitled To Summary Judgment On All Counts Because There is no Evidence to Support *Monell* Liability of the County, and County Defendants are Entitled to Various Legal Immunities......... 22

        1.   Background on *Monell* Liability ................................................. 22

        2.   No Evidence of a Policy, Practice or Custom .......................... 23

        3.   Legal Immunities ........................................................................ 25

            a.   The County Officers Are Entitled To Qualified Immunity and State Immunities ................................................... 25

V.   CONCLUSION ..................................................................................... 27

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Anderson v. Creighton*
    483 U.S. 635 (1987) ............................................................................................... 25, 26

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ............................................................................................... 15, 26

*Ashcroft v. Al-Kidd*
    563 U.S. 731 (2011) ..................................................................................................... 26

*Astorga v. Cnty. of Los Angeles*
    No. 220CV09805ABAGRX, 2022 WL 3449810 (C.D. Cal. Feb. 9, 2022) ........................... 20

*Berry v. Baca*
    379 F.3d 764 (9th Cir. 2004) ....................................................................................... 24

*Blossom v. Railroad Co.*
    70 U.S. (3 Wall.) 196, 18 L.Ed. 43 (1865) ................................................................... 16

*Board of County Comm'rs v. Brown*
    520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ................................................ 23

*Bottorff v. Ault*
    374 F.2d 832, 835 (7th Cir.1967) ................................................................................. 16

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*
    149 F.3d 971 (9th Cir. 1998) ....................................................................................... 19

*British Airways Ed. v. Boeing Co.*
    585 F.2d 946 (9th Cir. 1978) ....................................................................................... 14

*Cabral v. Cnty. of Glenn*
    624 F. Supp. 2d 1184 (E.D. Cal. 2009) ........................................................................ 21

*CarePartners, LLC v. Lashway*
    545 F.3d 867 (9th Cir. 2008) ....................................................................................... 26

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ................................................................................................... 15

*City of Canton v. Harris*
    489 U.S. 378 (1989) ................................................................................................... 24

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
500 CAPITOL MALL, SUITE 2500
SACRAMENTO, CALIFORNIA 95814

TABLE OF AUTHORITIES
(continued)

Page

*City of Oklahoma v. Tuttle*
   741 U.S. 808 (1985) ............................................................................................................ 24

*City of St. Louis v. Proprotnik*
   485 U.S. 112 (1988) ............................................................................................................ 24

*Davis v. Scherer*
   468 U.S. 183 (1984) ............................................................................................................ 26

*Doe v. Cnty. of Orange*
   No. 820CV00322JWHGJS, 2022 WL 18776166 (C.D. Cal. Dec. 16, 2022) ....................... 20

*Dougherty v. City of Covina*
   654 F.3d 892 (9th Cir. 2011) ............................................................................................... 24

*Fernandez v. California*
   571 U.S. 292, 134 S. Ct. 1126, 188 L. Ed. 2d 25 (2014) ..................................................... 18

*Florida v. Jimeno* (1991)
   500 U.S. 248 .......................................................................................................................... 15

*Fuller v. City of Oakland*
   47 F.3d 1522 (9th Cir.1995) ................................................................................................. 23

*Gillette v. Delmore*
   979 F.2d 1342 (9th Cir.1992), cert. denied, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310
   (1993)
   ............................................................................................................................................. 23

*Groh v. Ramirez*
   540 U.S. 551 (2004) ............................................................................................................. 25

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982) ...................................................................................................... 25, 26

*In Est. of F.R. v. Cnty. of Yuba*
   No. 223CV00846WBSCKD, 2023 WL 6130049 (E.D. Cal. Sept. 19, 2023) ...................... 21

*Ito v. Brighton/Shaw, Inc.*
   No. 06 CV 01135 AWI DLB, 2008 WL 2339557 (E.D. Cal. June 4, 2008) ........................ 21

*Lavan v. City of Los Angeles*
   (9th Cir. 2012 693 F.3d 1022, 1027.) .................................................................................. 15

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
500 CAPITOL MALL, SUITE 2500
SACRAMENTO, CALIFORNIA 95814

TABLE OF AUTHORITIES
(continued)

Page

*Lawrence Paper Co. v. Rosen & Co.*
   939 F.2d 376 (6th Cir.1991) ................................................................................. 16

*Libby v. City of Gridley*
   No. 2:21-cv-00017-JAM-AC, 2022 WL 493079 (E.D. Cal. Feb. 17, 2022) ......................... 20

*Meehan v. City of Culver City*
   856 F.2d 102 (9th Cir. 1988) ................................................................................. 24

*Mitchell v. Forsythe*
   472 U.S. 511 (1985) ............................................................................................. 26

*Monell v. Department of Soc. Svcs.*
   436 U.S. 658, 691 (1978) ................................................................................. 23, 24

*Oviatt v. Pearce*
   954 F.2d 1470 (9th Cir. 1992) ............................................................................... 24

*Pearson v. Callahan*
   555 U.S. 223 (2009) ........................................................................................ 25, 26

*Pembaur v. City of Cincinnati*
   475 U.S. 469 (1986) ............................................................................................. 24

*Plumeau v. School Dist. # 40 County of Yamhill*
   130 F.3d 432 (9th Cir.1997) ................................................................................. 23

*Reese-Bey v. Ochoa*
   No. CV 20-06693, 2020 WL 11767431 (C.D. Cal. Sept. 29, 2020) .............................. 21

*Rodis v. City and County of San Francisco*
   558 F.3d 964 (9th Cir. 2009) ............................................................................ 25, 26

*Rogan v. City of Boston*
   267 F.3d 24 (1st Cir. 2001) ................................................................................. 15

*Saldate v. Wilshire Credit Corp.*
   686 F. Supp. 2d 1051 (E.D. Cal. 2010) ................................................................. 22

*Saucier v. Katz*
   533 U.S. 194 (2001) ............................................................................................. 26

*Schneckloth v. Bustamonte*
   412 U.S. 218 (1973) ............................................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
500 CAPITOL MALL, SUITE 2500
SACRAMENTO, CALIFORNIA 95814

TABLE OF AUTHORITIES
(continued)

Page

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996) .......................................................................... 25

*Triton Energy Corp. v. Square D Co.*
68 F.3d 1216 (9th Cir. 1995) ........................................................................ 15

*United States v. Conrad*
619 F.Supp. 1319 (M.D.Fla.1985) ............................................................... 16

*United States v. Jones*
565 U.S. 400, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012) ............................ 15

*Velardi v. Walsh*
40 F.3d 569 (2d Cir. 1994) ........................................................................... 19

*Wigfall v. City and Cnty. of S.F.*
No. C 06-4968-VRW, 2007 WL 174434 (N.D. Cal. Jan. 22, 2007) ............. 20

**State Cases**

*Amylou R. v. County of Riverside* (1994)
28 Cal.App.4th 1205 .................................................................................... 27

*Hohe v. San Diego Unified Sch. Dist.* (1990)
224 Cal. App.3d 1559 ................................................................................... 17

*Katzberg v. Regents of Univ. of California* (2002)
29 Cal.4th 300 .............................................................................................. 21

*Martinez v. County of Los Angeles* (1996)
47 Cal.4th 334 .............................................................................................. 27

**Federal Statutes**

42 U.S.C. § 1983 ............................................................................... 22, 23, 24, 26

**State Statutes**

Cal. Civ. Code § 35 .............................................................................................. 17, 18

Cal. Civ. Code § 1812.601 ................................................................................... 17

Cal. Civ. Code § 2363 .......................................................................................... 17

Cal. Gov. Code § 815.2 ........................................................................................ 27

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
500 CAPITOL MALL, SUITE 2500
SACRAMENTO, CALIFORNIA 95814

TABLE OF AUTHORITIES
(continued)

Page

Cal. Gov. Code, § 815.2 (b) ................................................................................... 27

Cal. Gov. Code § 820.2 ........................................................................................... 27

Cal. Gov. Code § 821.6 ........................................................................................... 27

Cal. Penal Code § 487(a) ......................................................................................... 13

Cal. Penal Code § 1407 ........................................................................................... 18

Cal. Penal Code § 1408 ........................................................................................... 18

Cal. Penal Code § 1523 ........................................................................................... 18

**Rules**

Fed. R. Civ. Proc. 56(c) ........................................................................................... 14

Fed. R. Civ. Proc. 56(e) ........................................................................................... 15

**Constitutional Provisions**

California Constitution Article 1 § 13 ................................................................. 20, 21

**Other Authorities**

3A Anderson U.C.C. § 2-328:6 ................................................................................ 16

7 AM.JUR.2D Auctions & Auctioneers § 16 (1980 & Supp.1991) ........................... 16

Unif. Commercial Code § 2-328 .............................................................................. 16

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
500 CAPITOL MALL, SUITE 2500
SACRAMENTO, CALIFORNIA 95814

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3      This is a lawsuit over a stolen goat named Cedar.  In October of 2021, Plaintiff Jessica

4   Long enrolled her daughter, E.L., into the Cowcreek 4-H program where she learned about the

5   process of raising meat for market.  Jessica Long bought her daughter a market goat (wether goat)

6   and they named it Cedar.  They entered the goat into a livestock auction at the Shasta District

7   Fair ("District Fair") with knowledge that Cedar would be sold for meat. In 4-H, Plaintiff E.L.,

8   learned about how goats are raised, sold, and eaten worldwide.

9      Despite being aware that Cedar would be sold for food, neither Jessica Long nor E.L.

10   removed the goat from the 4-H program or auction at the District Fair.  Instead, both Plaintiffs

11   allowed the goat to be auctioned for meat on June 25, 2022.  After the goat had been sold to the

12   highest bidder, Jessica Long and E.L. had seller's remorse.  That evening at the District Fair,

13   Jessica Long stole the goat and ultimately crossed multiple counties in an effort to hide Cedar

14   from the District Fair and law enforcement.  Once the goat was located, it was returned to the

15   rightful owner after the auction, and was ultimately killed for food, as originally intended.

16      Plaintiffs stole a goat.  Now they are suing the law enforcement officers that helped to

17   recover the goat (Lieutenant Jerry Fernandez, Detective Jacob Duncan, and Detective Jeremy

18   Ashbee) (collectively "County Officers") as well as the Shasta County Sheriff's Department and

19   County of Shasta (with the County Officers, collectively "County Defendants").  Plaintiffs'

20   Second Amended Complaint ("SAC"), and all of the counts therein, fail because Plaintiffs stole

21   the goat and did not have any property interest in it after the auction; there was probable cause to

22   believe a crime had been committed and County Officers obtained a warrant; the goat was seized

23   pursuant to a consent search, which made the warrant unnecessary in any event; and the officers

24   acted reasonably and returned the goat to its rightful owner.

25      For these reasons, and those set forth below, the County Defendants are entitled to

26   summary judgment/summary adjudication.

27   ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1810 I VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

II.   **STATEMENT OF FACTS**

A.   **Plaintiffs' Purchase of Cedar and 4-H Program**

Plaintiff Jessica Long enrolled her daughter, E.L., in the Cow Creek 4-H in approximately October of 2021.  (UMF No. 49.)  She purchased Cedar the goat in approximately April of 2022.  (UMF No. 57.)  Between October and May of 2021, Plaintiffs participated in approximately monthly 4-H meetings and learned about raising meat goats.  (UMF Nos. 50 and 51.)  They learned about the best parts of the goat to eat (UMF Nos. 50 and 51.)  They learned about selling the goat and goat anatomy.  UMF Nos. 50 and 51.) E.L. even ate goat meat during the program.  ( UMF Nos. 16, 50, and 51.)  Plaintiffs learned that meat goats are raised to be killed and used as meat, and that Cedar would be killed and used for meat.  (UMF Nos. 50, 51 and 56.)   It was not a requirement of the 4-H meat goat project that Plaintiffs enter their goat in the District Fair.  (UMF Nos. 4, 52 and 54.)

In mid-May, 2022, Jessica Long entered Cedar to be auctioned at the District Fair.  (UMF Nos. 11 and 12.)  She entered the goat on behalf of her daughter E.L. and agreed to the rules and regulations concerning the District Fair.  (UMF Nos. 17 and 18.)  At no time prior to the day of the auction, did Plaintiffs make any effort to contact the District Fair to avoid putting Cedar up for auction.  (UMF Nos. 2 and 3.)  At no point prior to the auction of Cedar did E.L. tell her 4-H leader that she no longer wanted Cedar to be go through with the auction, or ask that Cedar be removed from District Fair.  (UMF No. 53 and 54.)

Shortly before the Fair, E.L. drafted a buyer's letter encouraging locals to come to the District Fair and bid on her goat.  E.L.'s buyer letter that stated, in part:

> "Dear buyer, hello, my name is E.L.  I am in Cow Creek 4-H.  This is my first year in 4-H.  I have decided to raise a meat goat [SIC] whether for my project.  His name is Cedar.  In this year I have learned how to feed a….I have learned how to cure goat diseases.  This year I have learned how to take care of meat goat.  <u>My goat is very great and he will be very good palin [SIC] and in tacos and every other way he will be very good and tasty…</u>""

(UMF No. 15.) [Emphasis added.]

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

1    In May of 2022, E.L. told Kay Delaloza "Oh, I'm so tired of Cedar.  I can't wait till I sell

2    him at fair." (UMF No. 84.)

3        **B.       The Theft of Cedar The Goat**

4        On June 25, 2022, Plaintiffs Jessica Long and E.L. attended the District Fair.  (UMF No.

5    7.)  At the District Fair, it was announced that the highest bidder would donate Cedar to the 4-H

6    FFA Community barbeque.  (UMF No. 21.)  E.L. exhibited the animal, and bids were placed for

7    the sale of Cedar.  (UMF No. 7.)  Ultimately, California State Senator Brian Dahle ("State

8    Senator Dahle"), through his agent, Kathie Muse, placed the highest bid for Cedar ($902.00) and

9    donated the goat to the 4-H/FFA BBQ to be used for meat at its annual barbeque.  (UMF Nos. 7,

10   78, 81.)

11       After the bidding was over in the early afternoon, E.L. and her mother enjoyed the District

12   Fair visiting exhibits.  (UMF Nos. 7 and 22.)  E.L. went on rides, explored buildings with quilts

13   and archery, and got food and a snow cone.  (UMF No. 22.)

14       At approximately 9:00 p.m. on June 25, 2022, Plaintiff Jessica Long convinced her

15   daughter that they should take Cedar from the fair, despite the fact that the goat had already been

16   sold.  (UMF Nos. 6, and 8.)  E.L. did not think that removing Cedar was even an option.  (UMF

17   No. 20.)  Jessica Long loaded the goat into the back of her car, drove to Sacramento and

18   communicated with third parties about ways to avoid returning the goat.  (UMF Nos. 9 and 46.)

19   She also reached out to the District Fair and admitted in an email that she took Cedar from the

20   fairgrounds.  (UMF No. 63.)

21       **C.       Preliminary Investigation Concerning the Theft of Cedar**

22       On or about June 29, 2022, Lieutenant Jerry Fernandez ("Lt. Fernandez") with the Shasta

23   County Sheriff's Office, was contacted regarding the theft of livestock from the District Fair.

24   (UMF No. 29 and 80.)  Lt. Fernandez reached out to Bruce MacFarlane ("BJ MacFarlane"), the

25   livestock manager for the District Fair, and was informed that Cedar had been stolen during the

26   end of the junior livestock auction.  (UMF No. 29.)

27       Lt. Fernandez initiated an investigation into the theft of the goat and learned that Kathie

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

1   Muse, the head of the 4-H/FFA Community BBQ, had first reported the livestock theft.  (UMF

2   No. 30 and 80.)  According to Kathie Muse, State Senator Dahle had purchased the meat goat at

3   the District Fair paying $902.00.  (UMF No. 78,)  The Senator then donated the animal to her for

4   the 4-H/FFA Community BBQ.  (UMF No. 81.)

5          In the course of his investigation, Lt. Fernandez reviewed communications from Jessica

6   Long, the sales invoice for the auction, social media posts, the District Fair local/state rules, as

7   well as the terms of the contract between the District Fair and Jessica Long.  (UMF No. 30.)

8          Based on the information presented to him, Lt. Fernandez, in his capacity as a law

9   enforcement officer, determined that Jessica Long had committed grand theft under Penal Code §

10  487(a).  (UMF No. 83.)  He relayed this information to Detective Jeremy Ashbee ("Detective

11  Ashbee") who prepared several warrants for the retrieval of goat.  (UMF Nos. 68 and 69.)

12          **D.      Warrants To Retrieve Cedar**

13          Detective Ashbee drafted search warrants to permit a search Bleating Hearts Farm and

14  Sanctuary, located at 1132 3rd Avenue, Napa, CA 94558 ("Bleating Hearts").  (UMF No. 71 and

15  82.)  It was believed the goat was at Beating Hearts because of social media posts and facts

16  obtained in the investigation.  (UMF Nos. 31, 66 and 69.)  The operative and final warrant

17  included language signed by the Magistrate stating "Due to the fact the item(s) to be seized

18  include living animals, Deputies shall secure the property in a humane and appropriate location,

19  and the rightful owner of said property shall be notified of the location of the property.  The

20  property may be released to the owner upon seizure."  (UMF No. 70.)

21          On July 8, 2022, Lieutenant Ramirez recruited Detective Jacob Duncan ("Detective

22  Duncan") to accompany him to serve the operative and final warrant at Bleating Hearts Farm in

23  Napa, California.  (UMF Nos. 35 and 36.)

24          **E.      The Search for Cedar**

25          Upon arriving at Bleating Hearts, Lieutenant Fernandez and Detective Duncan were

26  unable to locate Cedar.  (UMF No. 38 and 72.)  They interviewed the owners, Justin Starky and

27  Kristin Stover who both denied knowing the location of the goat.  (UMF No. 39 and 41.)  In

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   interviewing Kristin Stover, Detective Duncan became suspicious that she was not being honest

2   about not knowing the location of Cedar.  (UMF Nos. 39, 40, and 41)  He pressed her on the issue

3   and she ultimately acknowledged that she did know Cedar's location.  (UMF No. 40, 41, 42, and

4   43.)  Kristin Stover gave Detective Duncan consent to view texts on her phone which confirmed

5   the goat was located at Billy's Mini Farm in Petaluma, California.  (UMF No. 40, 41, and 42.)

6   Being that Billy's Mini Farm was only approximately 37 miles from Bleating Hearts, Lt.

7   Fernandez and Detective Duncan decided to go to there instead of immediately returning to

8   Shasta County.  (UMF No. 43.)

9         Prior to arriving at Billy's Mini Farm, Detective Duncan learned the Raymond Allen was

10   the owner of the farm.  (UMF No. 44.)  He was able to locate Raymond Allen's telephone number

11   and called him on his cell phone.  (UMF No. 44.)  Detective Duncan explained that they were

12   investigating the possible theft of a goat, and asked if Cedar was at his property.  (UMF No. 44

13   and 45.)  Raymond Allen stated that Cedar had been donated to him by and that Cedar was his

14   property.  (UMF No. 45.)  Raymond Allen gave consent to Detective Duncan to search his farm,

15   and Cedar was located on the property.  (UMF No. 45.)

16         **F.**    **The Retrieval of Cedar**

17         On the evening of July 8, 2022, Cedar was located at Billy's Mini Farm and obtained by

18   Lieutenant Fernandez and Detective Duncan.  (UMF No. 74.)  They drove the goat back to Shasta

19   County where they delivered it to BJ MacFarlane, who was acting as an agent for Kathie Muse.

20   (UMF No. 47, 77 and 79.)

21         BJ MacFarlane housed Cedar for approximately twenty days thereafter.  On

22   approximately July 28, 2022, Cedar was killed by a meat processing facility, as intended.  (UMF

23   No. 67.)  A check was subsequently issued by the District Fair for the proceeds of the sale Cedar.

24   (UMF No. 55)

25   **III.**   **LEGAL STANDARD ON SUMMARY JUDGMENT**

26         A party moving for summary judgment has the burden of establishing the absence of

27   triable issues.  (Fed. R. Civ. Proc. 56(c); *British Airways Ed. v. Boeing Co.*, 585 F.2d 946, 951

28

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

1    (9th Cir. 1978).)  If the non-moving party has the burden of proof at trial, the moving party does

2    not have to negate the opponent's claim; rather, the moving party may simply demonstrate the

3    absence of evidence in support of the claim.  (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323

4    (1986).)

5           Once the initial burden is met, the adverse party may not rest upon the mere allegations or

6    denials in the pleadings; the adverse party's response "must set forth specific facts showing that

7    there is a genuine issue for trial." (Fed. R. Civ. Proc. 56(e).)  "The opposing evidence must be

8    sufficiently probative to permit a reasonable trier of fact to find in favor of the opposing

9    party…[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be

10   insufficient; there must be evidence on which a reasonable jury could reasonably find for

11   plaintiff." (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 52 (1986).)

12          The test is whether the opposing party "has come forward with sufficiently 'specific' facts

13   from which to draw reasonable inferences about other material facts that are necessary elements

14   of the (opposing party's) claim."  (*Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th

15   Cir. 1995) (parentheses added); *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)

16   (obligation cannot be satisfied by "conclusory allegations, empty rhetoric, unsupported

17   speculation, or evidence which, in the aggregate, is less than significantly probative.").)

18   **IV.    LEGAL ARGUMENT**

19          **A.    Plaintiffs' First Cause of Action for Unreasonable Search and Seizure Fails
                    Against the County Defendants**

20

21          "The Fourth Amendment provides in relevant part that "[t]he right of the people to be

22   secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

23   shall not be violated."  (*United States v. Jones*, 565 U.S. 400, 404, 132 S. Ct. 945, 949, 181 L. Ed.

24   2d 911 (2012)  "A 'seizure' of property occurs when there is some meaningful interference with

25   an individual's possessory interests in that property." (*Lavan v. City of Los Angeles* (9th Cir. 2012

26   693 F.3d 1022, 1027.)  The "…Fourth Amendment does not proscribe all state initiated searches

27   and seizures; it merely proscribes those that are unreasonable."  (*Florida v. Jimeno* (1991) 500

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1810 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

1   U.S. 248, 250 [internal citations omitted.].)

2          **1.    Cedar Was Not Plaintiffs' Property After The Sale At The Auction**

3          General principles of auction law provide a baseline rule that the close of an auction-the

4   fall of the hammer-signals acceptance of the offer and creates a binding contract between the

5   seller and the high bidder.  (*See*, *Blossom v. Railroad Co.,* 70 U.S. (3 Wall.) 196, 206, 18 L.Ed. 43

6   (1865)  ("[A]s soon as the hammer is struck down ... the bargain is considered as concluded, and

7   the seller has no right afterwards to accept a higher bid nor the buyer to withdraw from the

8   contract.") (footnote and citations omitted); *Lawrence Paper Co. v. Rosen & Co.*, 939 F.2d 376,

9   378–79 (6th Cir.1991) (" 'The contract becomes complete only when the bid is accepted, this

10  being ordinarily denoted by the fall of a hammer.' ") (quoting 7 AM.JUR.2D Auctions &

11  Auctioneers § 16 (1980 & Supp.1991)); Bottorff v. Ault, 374 F.2d 832, 835 (7th Cir.1967) ("The

12  sales here were at auction.  They were completed when the hammer fell or when the auctioneer

13  said 'sold.' ") (citation omitted); *United States v. Conrad*, 619 F.Supp. 1319, 1321

14  (M.D.Fla.1985) ("It has long been settled that a bid constitutes an offer and the fall of the hammer

15  signifies acceptance.").

16          As "soon as the hammer is struck down, says the same author, the bargain is considered as

17  concluded, and the seller has no right afterwards to accept a higher bid nor the buyer to withdraw

18  from the contract*." Blossom v. Milwaukee & C.R. Co.*, *supra,* 70 U.S. at 206.

19          A sale by auction is complete when the auctioneer so announces by the fall of the hammer

20  or in other customary manner.  Unif. Commercial Code § 2-328

21          An auction is a public sale by competitive bidding where the seller invites competition

22  and sells to the highest bidder.  Auction sale as a contract, 3A Anderson U.C.C. § 2-328:6 (3d.

23  ed.)  An auction sale results in the making of a contract in which the bid is the offer and the action

24  of the auctioneer in accepting the bid is the acceptance of the offer which results in the formation

25  of a contract.  (*Id.*)

26          In California, "Auction" means a sale transaction conducted by means of oral or written

27  exchanges, which include exchanges made in person or through electronic media, between an

28

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

auctioneer and the members of his or her audience, which exchanges consist of a series of

invitations for offers for the purchase of goods made by the auctioneer and offers to purchase

made by members of the audience and culminate in the acceptance by the auctioneer of the

highest or most favorable offer made by a member of the participating audience.  (Cal. Civ. Code

§ 1812.601.)  An auctioneer has authority from a bidder at the auction, as well as from the seller,

to bind both by a memorandum of the contract, as prescribed in the Title on Sale.  (Cal. Civ. Code

§ 2363.)

In this case, Plaintiffs placed Cedar the goat up for auction on June 25, 2022.  State

Senator Dahle won the auction as the highest bidder, and he donated the goat to 4-H/FFA

Barbeque.  (UMF Nos. 7, 76, 78, and 81.)  Therefore, neither Jessica Long nor E.L. had any

possessory or ownership interest in the goat thereafter.  Accordingly, Plaintiffs have no standing

to assert a Fourth Amendment claim for unlawful search and seizure because the goat was not

their property after the auction.  Plaintiffs are not asserting any other unlawful search or seizure

claims under the Fourth Amendment.  (*See,* UMF. Nos. 23-28.)

Plaintiffs will contend that E.L. was the owner of the goat and that she had the right to

disaffirm any contract she allegedly had with the District Fair.  However, the facts clearly show

that:  (1) Jessica Long purchased the goat (UMF No. 57); and (2) Jessica Long entered the goat

into the auction on E.L.'s behalf (UMF Nos. 11, 12, 13, 18, and 19.).  Under such circumstances,

Plaintiff E.L. cannot disaffirm the contract that ultimately led to the auction of Cedar, because the

contract was between Jessica Long and the District Fair.

In *Hohe v. San Diego Unified Sch. Dist.* (1990), 224 Cal. App. 3d 1559, 1564–65, the

Court explained:

> "It is true, with certain limited exceptions, a minor can disaffirm his
> or her contract. Civil Code section 35 provides, in relevant part,
> "the contract of a minor may be disaffirmed by the minor himself,
> either before his majority or within a reasonable time afterwards...."
> (*Doyle v. Giuliucci* (1965) 62 Cal.2d 606, 609, 43 Cal.Rptr. 697,
> 401 P.2d 1.) The purpose of  Civil Code section 35 is to protect the
> minor from his own improvidence. It is often said, "he who
> affirmatively deals with a minor, does so at his peril." (*Holland v.
> Universal Underwriters Ins. Co.* (1969) 270 Cal.App.2d 417, 422,

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

- 17 -

55398.00040\42513058.1

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

75 Cal.Rptr. 669.) However, the releases signed here were signed on Hohe's behalf by her parent. A parent may contract on behalf of his or her children. <u>Civil Code section 35 was not intended to affect contracts entered into by adults on behalf of their children.</u> (*Doyle v. Giuliucci, supra,* 62 Cal.2d at p. 609, 43 Cal.Rptr. 697, 401 P.2d 1.) The court in *Celli v. Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 517, 105 Cal.Rptr. 904, found a release signed by a nine-year-old invalid because, among other reasons, the minor's signature was the only signature on the release. We therefore hold Hohe cannot disaffirm the release based on her minority. [Emphasis added.]

In this case, Jessica Long entered Cedar into the District Fair on behalf of her daughter. Thus, E.L. cannot disaffirm the contract that was entered by her mother on her behalf.  (*See,* UMF No. 19 where Plaintiff Jessica Long admits contract was between her and District Fair [Q.  When you say she disaffirmed the contract, what contract were you talking about?  A.  Whatever contract **I** had with the fair."] [Emphasis added.]

### 2.      Cedar Was Not Seized Pursuant to a Warrant; He was Obtained During a Consent Search

A warrantless consent search is reasonable and thus consistent with the Fourth Amendment.  *Fernandez v. California*, 571 U.S. 292, 306, 134 S. Ct. 1126, 1137, 188 L. Ed. 2d 25 (2014)  As stated in  *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973), "…[a] pinnacle exception to the Fourth Amendment's presumptive warrant requirement is the voluntary consent search.  When determining voluntariness of consent, the trial court must look at the totality of the circumstances. (*Schneckloth, supra,* 412 U.S. at 222.

While Plaintiffs will undoubtedly argue that the warrants executed to seize Cedar the goat were invalid, Plaintiffs argument misses the point.  Cedar was not obtained pursuant to a warrant. To the contrary, County Officers seized Cedar after Raymond Allen gave his voluntary consent to search his property and locate Cedar.  (UMF. No. 74).  Under such circumstances, it was not necessary to have a warrant, and the County Defendants' actions in obtaining the goat were reasonable.  Plaintiff's allegations of alleged violations of California Penal Code §§1407, 1408, and 1523 are inapplicable because the goat was not seized pursuant to a warrant.

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

1

**3.     Even if Cedar Was Seized Pursuant to a Warrant, the Warrant Was Valid, Was Based on Probable Cause, And Was Reasonable**

2

3       Even if Plaintiffs could contend that Cedar was seized pursuant to a warrant, the warrants

4   were valid and the County Defendants' actions were reasonable.  "<u>A search is presumptively</u>

5   <u>reasonable when executed pursuant to a warrant</u>.  A search warrant issued by a neutral magistrate,

6   upon a finding of probable cause, must be afforded deference and creates a presumption that the

7   officers executing the warrant acted in an objectively reasonable fashion.  In order to overcome

8   this presumption, a plaintiff must allege that the underlying affidavit was made by an individual

9   who 'knowingly and deliberately, or with a reckless disregard of the truth, made false statements

10  or material omissions in his application of a warrant, and that such statements or omissions were

11  necessary to the finding of probable cause." (*Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir. 1994)

12  [Internal citations and quotation marks omitted.] [Emphasis added.]

13      Here, the warrants were based on probable cause, including statements from Jessica Long

14  herself, admitting that she had stolen the goat.  (UMF No. 63)  The magistrate who signed the

15  warrant also gave the County Officers authority to return the goat instead of holding it.  The

16  warrant stated, "Due to the fact the item(s) to be seized include living animals, Deputies shall

17  secure the property in a humane and appropriate location, and the rightful owner of said property

18  shall be notified of the location of the property.  The property may be released to the owner upon

19  seizure."  (UMF No. 70.)  Thus, the County Officers acted lawfully and complied with the

20  Magistrate's order when they returned the goat to BJ McFarlane on July 8, 2022.

21      **B.     <u>Plaintiffs' Second Cause of Action for Violation of Due Process Under the Fourteenth Amendment Fails Against the County Defendants</u>**

22

23      A procedural due process claim has two distinct elements: (1) a deprivation of a

24  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

25  protections.  (*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

26  1998).  In this case, Plaintiffs did not own Cedar the goat when he was located by the County

27  Officers and returned on July 8, 2022.  Thus, Plaintiffs cannot establish a due process claim.

28

Best Best & Krieger LLP
Attorneys at Law
1810 Von Karman Avenue, Suite 1000
Irvine, California 92612

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

55398.00040\42513058.1

1  Furthermore, the County Defendants did not owe Plaintiffs any procedural protections at that time

2  because Plaintiffs no longer owned the goat.  (UMF No. 81.)

3     **C.**     **Plaintiffs' Fifth Cause of Action for Unreasonable Search and Seizure Under**
            **California Constitution, Article 1, § 13, And Sixth Cause of Action for Denial**

4           **of Due Process Under California Constitution, Article 1,  § 7(a) Fail Against**
            **the County Defendants**

5

6        There is no private cause of action for either unreasonable search and seizure or a

7  violation of due process under the California Constitution.  In *Astorga v. Cnty. of Los Angeles,*

8  No. 220CV09805ABAGRX, 2022 WL 3449810, at *4 (C.D. Cal. Feb. 9, 2022), the Court found

9  that plaintiffs cannot recovery monetary damages under Article 1 Section 13 of the California

10  Constitution stating:

11        "…the Court finds Plaintiffs may not recover monetary damages
          under [Article 1] Section 13 because there is "no evidence to

12        suggest the State of California affirmatively intended to create a
          damages remedy" under Section 13. *Roy*, 114 F. Supp. 3d at 1043

13        (quoting *Wigfall v. City and Cnty. of S.F.*, No. C 06-4968-VRW,
          2007 WL 174434, at *5 (N.D. Cal. Jan. 22, 2007)). Further, the

14        availability of alternative remedies under state and federal law for
          Section 13 violations weighs against the creation of a constitutional

15        tort, as Plaintiffs can and have stated federal claims from which
          they may recover monetary damages."

16

17        As similarly stated in *Doe v. Cnty. of Orange*, No. 820CV00322JWHGJS, 2022 WL

18  18776166, at *22 (C.D. Cal. Dec. 16, 2022):

19        "Numerous California District Courts have concluded that Section
          13 does not provide for a money damages remedy. Some of those

20        decisions have been brief and others detailed, including a Katzberg
          analysis. See, e.g., *Roy*, 114 F. Supp. 3d at 1042-43 (collecting

21        cases finding no damages remedy available under Section 13,
          finding that the decision of *Wigfall v. City and County of San*

22        *Francisco*, No. C 06-4698-VRW, 2007 WL 174434, at *5 (N.D.
          Cal. Jan 22, 2007), did engage in a Katzberg analysis and found no

23        damages remedy available, and agreeing with and following its
          reasoning in concluding that no damages remedy exists under

24        Section 13); see also *Astorga v. Cnty. of Los Angeles*, No. 22-cv-
          09805-AB, 2022 WL 3449810, at *4 (C.D. Cal. Feb. 9, 2022)

25        (same); *Novel v. Los Angeles Cnty. Sheriffs Dep't*, No. 2:19-cv-
          01922, 2019 WL 7940676, at *6 (C.D. Cal. July 23, 2019) (same);

26        *Buzayan v. City of Davis Police Dep't*, No. CV 06-01576, 2007 WL
          7398263, at *8-*9 (E.D. Cal. Aug. 8, 2007) (same); see further

27        *Libby v. City of Gridley*, No. 2:21-cv-00017-JAM-AC, 2022 WL

28

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

493079, at *3 (E.D. Cal. Feb. 17, 2022) (finding that the "weight of authority" in the Eastern District "leans in favor" of finding that no damages remedy exists under Section 13). Some District Courts have concluded otherwise and allowed a Section 13 claim seeking damages to proceed. See *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 867 (C.D. Cal. 2020); *Garcia v. Cnty. of River*side, No. EDCV 13-616-JGB, 2017 WL 11631219, at *5 (C.D. Cal. April 28, 2017)."

Simply put, there is no private cause of action under Article I, Section 13.  (*See, In Est. of F.R. v. Cnty. of Yuba*, No. 223CV00846WBSCKD, 2023 WL 6130049, at *7 (E.D. Cal. Sept. 19, 2023), ["The court therefore concludes that no private cause of action is available under Article I, Section 13."]

Similarly, Plaintiffs cannot assert their sixth count for denial of due process under Article 1, § 7(a).  In *Katzberg v. Regents of Univ. of California* (2002) 29 Cal.4th 300, 328, the Court stated "The availability of meaningful alternative remedies leads us to decline to recognize a constitutional tort to remedy the asserted violation of article I, section 7(a) in the case before us." In *Reese-Bey v. Ochoa*, No. CV 20-06693, 2020 WL 11767431, at *5 (C.D. Cal. Sept. 29, 2020), the Court stated, "It is undisputed that the California Constitution does not provide a direct cause of action for damages for either equal protection or a due process liberty interest violation." [Emphasis added.]  (*See, also, Cabral v. Cnty. of Glenn*, 624 F. Supp. 2d 1184, 1196 (E.D. Cal. 2009) ["Article I, § 7(a) does not "afford a right to seek damages to remedy the asserted violation of the due process liberty interest."

### D.   Plaintiffs' Ninth Cause of Action for Conversion Fails Against The County Defendants

The elements of a conversion count in California are: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  (*Ito v. Brighton/Shaw, Inc.,* No. 06 CV 01135 AWI DLB, 2008 WL 2339557, at *3 (E.D. Cal. June 4, 2008).  In order for a plaintiff to bring a conversion claim, they must establish their ownership or right to possession.  (*Id.*)

Here, Plaintiffs cannot establish their claim for conversion because, as indicated above,

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   they did not own the goat after the Senator Dahle placed the highest bid on behalf of the 4-H/FFA

2   BBQ.  (UMF No. 81.) Having no ownership interest in Cedar or right to possession, Plaintiffs

3   cannot establish the first element of their claim for conversion, and summary judgment/summary

4   adjudication should be entered in County Defendants favor.

5       **E.      Plaintiffs' Eleventh Cause of Action for Negligence Fails Against The County Defendants**

6

7       "The elements of a cause of action for negligence are (1) a legal duty to use reasonable

8   care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the

9   plaintiff's injury.  The existence of a duty of care owed by a defendant to a plaintiff is a

10  prerequisite to establishing a claim for negligence.  The existence of a duty of care toward an

11  interest of another worthy of legal protection is the essential prerequisite to a negligence cause of

12  action, determined as a matter of law by the court.  The existence of a legal duty to use reasonable

13  care in a particular factual situation is a question of law for the court to decide."  (*Saldate v.*

14  *Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1062 (E.D. Cal. 2010) [Internal citations and

15  quotation marks omitted.])

16      In this case, Plaintiffs cannot establish any duty on the part of the County Defendants, let

17  alone a breach of said duty.  Plaintiffs did not own Cedar the goat after the auction, the 4-H/FFA

18  BBQ did.  Thus, any duty owed by the County Defendants was to Cedar's rightful owner (*i.e.,* 4-

19  H/FFA), and not the Plaintiffs.  The County Officers did not breach any duty as they returned the

20  goat to its rightful owner after a consent search.

21      **F.      The County Defendants Are Entitled To Summary Judgment On All Counts Because There is no Evidence to Support *Monell* Liability of the County, and County Defendants are Entitled to Various Legal Immunities**

22

23          **1.      Background on *Monell* Liability**

24      Under *Monell*, local governments are "persons" subject to liability under  42 U.S.C.

25  § 1983 where official policy or custom causes a constitutional tort.  A city or county may not be

26  held vicariously liable for the unconstitutional acts of its employees under the theory of

27

28

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

- 22 -

55398.00040\42513058.1

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1800 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

*respondeat superior.* (*Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. Department of Soc. Svcs.* 436 U.S. 658, 691 (1978) (*"Monell"*); *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir.1995) (*"Fuller"*).)

To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show that: (1) the plaintiff possessed a constitutional right of which he or she was deprived; (2) the municipality had a policy; (3) this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. (See, *Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997).)  Liability based on a municipal policy can be satisfied in one of three ways:

(1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity;

(2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives, or

(3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it.

(*See*, *Fuller*, 47 F.3d at 1534; *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir.1992), cert. denied, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993).

**2.      No Evidence of a Policy, Practice or Custom**

As indicated above, there is no *respondeat superior* liability under 42 U.S.C. § 1983.  A public entity may be held liable only when an explicit or tacit wrongful government "policy or custom" causes government employees to violate a constitutional right. (*Monell, supra.*)

The Supreme Court has clearly explained:

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
1800 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

> "[M]unicipal liability under § 1983 attaches where—and only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." (*Pembaur v. City of Cincinnati* 475 U.S. 469, 483-84 (1986); see also *City of St. Louis v. Proprotnik* 485 U.S. 112, 128 (1988).)

As the Ninth Circuit reiterated with regard to *Monell* in *Meehan v. City of Culver City*, 856 F.2d 102 (9th Cir. 1988):

> "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional [local government] policy, which policy can be attributed to a [local government] policymaker." (*Meehan*, 856 F.2d at 107, quoting *City of Oklahoma v. Tuttle*, 741 U.S. 808, 823-824 (1985).)

A plaintiff cannot succeed on a Section 1983 claim against a local agency unless it can be shown that, an "'action pursuant to official municipal policy of some nature caused a constitutional tort.'"  (*See Berry v. Baca* 379 F.3d 764, 767 (9th Cir. 2004), *quoting Monell, supra,* 436 U.S. at 691.)  To make such a showing, the plaintiff has the burden to establish four elements:  (1) that plaintiff possessed a constitutional right of which he was deprived; (2) that the local governmental body had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."  (*Dougherty v. City of Covina* 654 F.3d 892, 901 (9th Cir. 2011); *Oviatt v. Pearce* 954 F.2d 1470, 1474 (9th Cir. 1992) (*quoting City of Canton v. Harris* 489 U.S. 378, 389-91 (1989); *see also Berry, supra,* 379 F.3d at 767.)

On an initial note, Plaintiffs do not have a constitutional right to a goat they do not own. Furthermore, Plaintiffs have no evidence of any County policy giving rise to a violation of their rights under the U.S. Constitution.  Indeed, Plaintiffs readily admit this in their SAC.  At Paragraph 80, Plaintiffs state that the County Officers decision to deliver Cedar for "slaughter/destruction" was "…not a broad policy decision but a lower level decision."  (UMF 85; SAC, p. 15, lns. 26-28; p. 16, lns. 1-2).  Similarly in Paragraph 84 of the SAC Plaintiffs state,

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

1   "Further, the decision to slaughter Cedar was not a broad based policy decision." (UMF 85; SAC,

2   p. 16, lns. 23-24).

3           Plaintiffs' own statements reflect that, at most, the decision to obtain and return the goat

4   was a one time "lower level decision" that was not based on any broad formal governmental

5   policy or longstanding practice.  Thus, there cannot be any *Monell* liability in this case, and

6   Plaintiffs cannot assert any of their causes of action against the County or the Sheriff's

7   Department.  (*See, Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) ["Liability for improper

8   custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices

9   of sufficient duration, frequency and consistency that the conduct has become a traditional

10  method of carrying out policy."]).

11          **3.      Legal Immunities**

12          **a.      The County Officers Are Entitled To Qualified Immunity and
                       State Immunities**

13

14          Qualified immunity protects government officials from liability for civil damages insofar

15  as their conduct does not violate clearly established statutory or constitutional rights of which a

16  reasonable person would have known.  (*Rodis v. City and County of San Francisco,* 558 F.3d 964,

17  968 (9th Cir. 2009); *see also*, *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).)  Qualified

18  immunity applies regardless of whether the official's error is, "a mistake of law, a mistake of fact,

19  or a mistake based on mixed questions of law and fact." (*Pearson v. Callahan,* 555 U.S. 223, 231

20  (2009) [quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)].)

21          The doctrine of qualified immunity balances two important interests:  (1) the need to hold

22  public officials accountable when they exercise power irresponsibly; and (2) the need to shield

23  officials from harassment, distraction, and liability when they perform their duties reasonably.

24  (*Pearson supra,* 555 U.S. at 231; *Rodis, supra,* 558 F.3d at 968.)  This is because, "it is inevitable

25  that law enforcement officials will in some cases reasonably but mistakenly conclude that

26  probable cause is present." (*Anderson v. Creighton,* 483 U.S. 635, 641 (1987).)  Importantly,

27  "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

1   absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." (*Mitchell*

2   *v. Forsythe*, 472 U.S. 511, 526 (1985) (emphasis in original).)

3       In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court set out a mandatory two-

4   step process for resolving qualified immunity claims.  The Supreme Court later revisited this

5   analysis in *Pearson*, and abrogated the mandatory two-step process.  (*Pearson, supra*, 555 U.S. at

6   236.)  In *Anderson, supra*, the Supreme Court made it clear that, in deciding whether the right

7   allegedly violated by the public employee was clearly established, courts must look at the

8   particular factual circumstances surrounding the incident. (*Anderson, supra,* 483 U.S. at 641.)

9       In the Ninth Circuit, whether an official protected by qualified immunity may be held

10  personally liable for an allegedly unlawful official action generally turns on the "objective legal

11  reasonableness" of the action.  (*Rodis, supra* at 968-69; *quoting Harlow*, 457 U.S. at 819.)  The

12  constitutional violation must be "clearly established" at the time of the alleged misconduct.

13  (*CarePartners, LLC v. Lashway*, 545 F.3d 867, 882 (9th Cir. 2008).)

14      Significantly, in *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011), the Supreme Court

15  clarified and held that conduct violates clearly established law only when, "at the time of the

16  challenged conduct the contours of the right are sufficiently clear that <u>every reasonable official</u>

17  would have understood that what he was doing violates that right."  (internal quotations omitted,

18  emphasis added; *see also Anderson*, *supra,* 483 U.S. at 640.)  While a case directly on point is not

19  required, "existing precedent must have placed the statute or constitutional question <u>beyond</u>

20  <u>debate.</u>" (*Ashcroft, supra*, 563 U.S. at 741.)  The plaintiff in a Section 1983 action has the burden

21  of overcoming a claim of qualified immunity by showing that the right that was violated was

22  clearly established at the time of the conduct in issue.  (*Davis v. Scherer*, 468 U.S. 183, 197

23  (1984).)

24      Here, Plaintiffs did not have a constitutional right in a goat they no longer owned after the

25  auction.  Furthermore, it was objectively reasonable for the County Officers to believe their

26  conduct was lawful.  Plaintiff Jessica Long had admitted to taking the goat. (UMF No. 63)

27  Lieutenant Fernandez had conducted an investigation.  (UMF No. 30.)  The warrants had been

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

1    approved by the district attorneys' office (UMF No. 70.) and signed by a judge (UMF No. 71.).

2    Detective Duncan was given consent by Raymond Allen to search his property (UMF No. 74.).

3        The County Defendants are also immune from liability under state law.  California

4    Government Code § 821.6 provides: "A public employee is not liable for injury caused by his

5    instituting or prosecuting any judicial or administrative proceeding within the scope of his

6    employment, even if he acts maliciously and without probable cause.  (Cal. Gov. Code §821.6)

7    Section 815.2 subdivision (b) in turn provides: "A public entity is not liable for an injury resulting

8    from an act . . . of an employee of the public entity where the employee is immune from liability."

9    (Cal. Gov. Code, § 815.2, subd. (b).)  It has been held that the application of Government Code

10   '[s]ection 821.6 is not limited to the act of filing a criminal complaint.  Instead, it also extends to

11   actions taken in preparation for formal proceedings.  Because investigation is 'an essential step'

12   toward the institution of formal proceedings, it 'is also cloaked with immunity.'" (*Amylou R. v.*

13   *County of Riverside* (1994) 28 Cal.App.4th 1205, 1209-1210. [Internal citations omitted.])

14       Further, Section 820.2 provides: "A public employee is not liable for an injury resulting

15   from his act or omission where the act or omission was the result of an exercise of the discretion

16   vested in him, whether or not such discretion is abused.  (Cal. Gov. Code §820.2)  Section 820.2

17   provides immunity to peace officers.  (*See, Martinez v. County of Los Angeles* (1996) 47 Cal.4th

18   334, 349.

19       Here, each and every act of the County Officers is cloaked in immunity because each of

20   their acts was inextricable intertwined with the investigation of Plaintiffs and the theft of Cedar

21   the goat.  By extension, the County and Sheriff's Department cannot be liable as California law

22   provides a public entity cannot be liable for the acts of its employee is if the employees are

23   immune from liability.  (*See,* Cal.Gov. Code §815.2)

24   **V.    CONCLUSION**

25       For the foregoing reasons, County Defendants respectfully request that the Court grant

26   summary judgment and dismiss Plaintiffs' SAC in its entirety.  Alternatively, the County

27   Defendants request that the Court grant summary adjudication of the causes of action raised in

28

55398.00040\42513058.1

2:22-CV-01527-DAD-AC
MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION OF ISSUES BY COUNTY
DEFENDANTS

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1  this Motion.

2

3  Dated: July 31, 2024                    BEST BEST & KRIEGER LLP

4

5                                          By: */s/ Damian A. Northcutt*
                                               JEFFREY V. DUNN
6                                              CHRISTOPHER M. PISANO
                                               DAMIAN A. NORTHCUTT
7
                                           Attorneys for Defendants
8                                          COUNTY OF SHASTA; SHASTA
                                           COUNTY SHERIFF'S DEPARTMENT;
9                                          LIEUTENANT JERRY FERNANDEZ,
                                           DETECTIVE JACOB DUNCAN, and
10                                         DETECTIVE JEREMY ASHBEE

11

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

55398.00040\42513058.1