# EXHIBIT C

1   JEFFREY V. DUNN, Bar No. 131926
jeffrey.dunn@bbklaw.com
2   CHRISTOPHER M. PISANO, Bar No. 192831
christopher.pisano@bbklaw.com
3   DAMIAN A. NORTHCUTT, Bar No. 258183
Damian.Northcutt@bbklaw.com
4   BEST BEST & KRIEGER LLP
18101 Von Karman Avenue
5   Suite 1000
Irvine, California 92612
6   Telephone:   (949) 263-2600
Facsimile:   (949) 260-0972
7
Attorneys for Defendants
8   LIEUTENANT JERRY FERNANDEZ, DETECTIVE
JACOB DUNCAN, and DETECTIVE JEREMY
9   ASHBEE

10

11                  UNITED STATES DISTRICT COURT

12                  EASTERN DISTRICT OF CALIFORNIA

13                      SACRAMENTO DIVISION

14

15   E.L., a minor, by and through her general       Case No. 2:22-cv-01527-DAD-AC
guardian, JESSICA LONG; JESSICA LONG,
16   an individual,                                   **DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
17              Plaintiffs,                           PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET
18       v.                                           ONE**

19   LIEUTENANT JERRY FERNANDEZ, in his              Action Filed:     August 31, 2022
individual capacity; DETECTIVE JACOB
20   DUNCAN, in his individual; DETECTIVE
JEREMY ASHBEE, in his individual capacity;
21   and DOES 1 through 10,,

22              Defendants.

23

24

25

26

27

28

-1-

55398.00040\41107522.1

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1

2   PROPOUNDING PARTY(IES):       JESSICA LONG
                                  Plaintiff

3   RESPONDING PARTY(IES):        LIEUTENANT JERRY FERNANDEZ
                                  Defendant
4
5   SET NO.:                      One

6       Defendant LIEUTENANT JERRY FERNANDEZ ("Defendant") hereby provides his

7   response to Plaintiff JESSICA LONG's ("Plaintiff") Requests for Production of Documents (Set

8   One):

9                          **PRELIMINARY STATEMENT**

10      It is anticipated that further discovery, investigation, legal research and analysis may supply

11  additional facts, add meaning to known facts, and provide the basis for new factual conclusions and

12  legal contentions, all of which may lead to substantial additions to, changes in, and variations from

13  the contentions set forth below.

14      The following responses are made by Defendant in a good faith effort to supply all relevant,

15  non-privileged, responsive information that is available to Defendant based on a reasonable search

16  of records.  However, Defendant has not completed his investigation, discovery, or trial preparation.

17  Should additional information or documents that are responsive to these Requests come to the

18  attention of Defendant in the future, Defendant reserves the right to use such information and/or

19  documents during the course of this litigation, and/or to change any and all responses provided

20  below.

21      Defendant's investigation and discovery of this case are ongoing.  The following responses

22  are given without prejudice to Defendant's right to produce or rely on any evidence subsequently

23  discovered.

24                          **GENERAL OBJECTIONS**

25      All of Defendant's responses are subject to the following General Objections, which are

26  hereby incorporated into each and every response.

27      1.     Defendant objects to the Request to the extent that they seek or purport to impose

28

-2-

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   on Defendant obligations other than those prescribed by the California Code of Civil Procedure.

2        2.      Defendant objects to the Requests to the extent that they are overly broad, unduly

3   burdensome, annoying, harassing, oppressive, vague and/or ambiguous, and seek information that

4   is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the

5   discovery of admissible evidence.

6        3.      Defendant objects to the Requests to the extent that they seek information protected

7   from discovery by privilege, including but not limited to the attorney work-product doctrine and

8   the attorney-client privilege.  In the event that any such materials are produced inadvertently,

9   Defendant does not intend to waive such objections.

10       4.      Defendant objects to the Requests that purport to require him to identify information

11  or documents that are not in Defendant's possession, custody or control.

12       5.      Defendant objects to each and every Request on the grounds and to the extent that

13  it requires Defendant to draw a legal conclusion.

14       Subject to and without waiving the foregoing General Objections, Defendant responds to

15  these Requests as follows:

16                      **RESPONSES TO REQUESTS FOR PRODUCTION**

17  **REQUEST FOR PRODUCTION NO. 1:**

18       Any and all DOCUMENTS related to Plaintiff Jessica Long.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

20       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

21  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

22  and beyond the issues raised in this litigation.

23       Subject to and without waiving any of the foregoing objections, Defendant responds as

24  follows:  Defendant shall produce all non-privileged documents that are responsive to this

25  Request.  All responsive documents are attached as part as of Exhibit "A".

26  **REQUEST FOR PRODUCTION NO. 2:**

27       Any and all DOCUMENTS related to Plaintiff Jessica Long's daughter, Plaintiff E.L.

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

2       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

3   Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

4   and beyond the issues raised in this litigation.

5       Subject to and without waiving any of the foregoing objections, Defendant responds as

6   follows:  Defendant shall produce all non-privileged documents that are responsive to this

7   Request.  All responsive documents are attached as part as of Exhibit "A".

8   **REQUEST FOR PRODUCTION NO. 3:**

9       Any and all DOCUMENTS related to CEDAR.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

11      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

12  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

13  and beyond the issues raised in this litigation.

14      Subject to and without waiving any of the foregoing objections, Defendant responds as

15  follows:  Defendant shall produce all non-privileged documents that are responsive to this

16  Request.   All responsive documents are attached as part as of Exhibit "A".

17  **REQUEST FOR PRODUCTION NO. 4:**

18      Any and all DOCUMENTS related to the SHASTA DISTRICT FAIR AND EVENT

19  CENTER that concern Plaintiff Jessica Long.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

21      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

22  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

23  and beyond the issues raised in this litigation.

24      Subject to and without waiving any of the foregoing objections, Defendant responds as

25  follows:  Defendant shall produce all non-privileged documents that are responsive to this

26  Request.  All responsive documents are attached as part as of Exhibit "A".

27  ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\41107522.1

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   **REQUEST FOR PRODUCTION NO. 5:**

2       Any and all DOCUMENTS related to the SHASTA DISTRICT FAIR AND EVENT

3   CENTER that concern Plaintiff Jessica Long's daughter, Plaintiff E.L.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

5       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

6   Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

7   and beyond the issues raised in this litigation.

8       Subject to and without waiving any of the foregoing objections, Defendant responds as

9   follows:  Defendant shall produce all non-privileged documents that are responsive to this

10  Request.  All responsive documents are attached as part as of Exhibit "A".

11  **REQUEST FOR PRODUCTION NO. 6:**

12      Any and all DOCUMENTS related to the SHASTA DISTRICT FAIR AND EVENT

13  CENTER that concern CEDAR.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

15      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

16  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

17  and beyond the issues raised in this litigation.

18      Subject to and without waiving any of the foregoing objections, Defendant responds as

19  follows:  Defendant shall produce all non-privileged documents that are responsive to this

20  Request.  All responsive documents are attached as part as of Exhibit "A".

21  **REQUEST FOR PRODUCTION NO. 7:**

22      Any and all DOCUMENTS related to the SHASTA COUNTY SHERIFF'S

23  DEPARTMENT that concern Plaintiff Jessica Long.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

25      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

26  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

27  and beyond the issues raised in this litigation.

28

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1       Subject to and without waiving any of the foregoing objections, Defendant responds as

2   follows:  Defendant shall produce all non-privileged documents that are responsive to this

3   Request.  All responsive documents are attached as part as of Exhibit "A".

4   **REQUEST FOR PRODUCTION NO. 8:**

5       Any and all DOCUMENTS related to the SHASTA COUNTY SHERIFF'S

6   DEPARTMENT that concern Plaintiff Jessica Long's daughter, Plaintiff E.L.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

8       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

9   Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

10  and beyond the issues raised in this litigation.

11      Subject to and without waiving any of the foregoing objections, Defendant responds as

12  follows:  Defendant shall produce all non-privileged documents that are responsive to this

13  Request.  All responsive documents are attached as part as of Exhibit "A".

14  **REQUEST FOR PRODUCTION NO. 9:**

15      Any and all DOCUMENTS related to the SHASTA COUNTY SHERIFF'S

16  DEPARTMENT that concern CEDAR.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

18      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

19  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

20  and beyond the issues raised in this litigation.

21      Subject to and without waiving any of the foregoing objections, Defendant responds as

22  follows:  Defendant shall produce all non-privileged documents that are responsive to this

23  Request.  All responsive documents are attached as part as of Exhibit "A".

24  **REQUEST FOR PRODUCTION NO. 10:**

25      Any and all DOCUMENTS related to Detective Jacob Duncan that concern Plaintiff

26  Jessica Long.

27  ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 6 -

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

2        Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

3 Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

4 and beyond the issues raised in this litigation.

5        Subject to and without waiving any of the foregoing objections, Defendant responds as

6 follows: Defendant shall produce all non-privileged documents that are responsive to this

7 Request. All responsive documents are attached as part of Exhibit "A".

8    **REQUEST FOR PRODUCTION NO. 11:**

9        Any and all DOCUMENTS related to Detective Jacob Duncan that concern Plaintiff

10 Jessica Long's daughter, Plaintiff E.L.

11    **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

12        Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

13 Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

14 and beyond the issues raised in this litigation.

15        Subject to and without waiving any of the foregoing objections, Defendant responds as

16 follows: Defendant shall produce all non-privileged documents that are responsive to this

17 Request. All responsive documents are attached as part of Exhibit "A".

18    **REQUEST FOR PRODUCTION NO. 12:**

19        Any and all DOCUMENTS related to Detective Jacob Duncan that concern CEDAR.

20    **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

21        Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

22 Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

23 and beyond the issues raised in this litigation.

24        Subject to and without waiving any of the foregoing objections, Defendant responds as

25 follows: Defendant shall produce all non-privileged documents that are responsive to this

26 Request. All responsive documents are attached as part of Exhibit "A".

27    ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

**REQUEST FOR PRODUCTION NO. 13:**

Any and all DOCUMENTS related to Detective Jeremy Ashbee that concern Plaintiff Jessica Long.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing. Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant and beyond the issues raised in this litigation.

Subject to and without waiving any of the foregoing objections, Defendant responds as follows: Defendant shall produce all non-privileged documents that are responsive to this Request. All responsive documents are attached as part as of Exhibit "A".

**REQUEST FOR PRODUCTION NO. 14:**

Any and all DOCUMENTS related to Detective Jeremy Ashbee that concern Plaintiff Jessica Long's daughter, Plaintiff E.L.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing. Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant and beyond the issues raised in this litigation.

Subject to and without waiving any of the foregoing objections, Defendant responds as follows: Defendant shall produce all non-privileged documents that are responsive to this Request. All responsive documents are attached as part as of Exhibit "A".

**REQUEST FOR PRODUCTION NO. 15:**

Any and all DOCUMENTS related to Detective Jeremy Ashbee that concern CEDAR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing. Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant and beyond the issues raised in this litigation.

///

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\41107522.1

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1  Subject to and without waiving any of the foregoing objections, Defendant responds as

2  follows:  Defendant shall produce all non-privileged documents that are responsive to this

3  Request.  All responsive documents are attached as part as of Exhibit "A".

4  **REQUEST FOR PRODUCTION NO. 16:**

5  Any and all DOCUMENTS related to Melanie Silva that concern Plaintiff Jessica Long.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

7  Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

8  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

9  and beyond the issues raised in this litigation.

10  Subject to and without waiving any of the foregoing objections, Defendant responds as

11  follows:  Defendant shall produce all non-privileged documents that are responsive to this

12  Request.  All responsive documents are attached as part as of Exhibit "A".

13  **REQUEST FOR PRODUCTION NO. 17:**

14  Any and all DOCUMENTS related to Melanie Silva that concern Plaintiff Jessica Long's

15  daughter, Plaintiff E.L.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

17  Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

18  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

19  and beyond the issues raised in this litigation.

20  Subject to and without waiving any of the foregoing objections, Defendant responds as

21  follows:  Defendant shall produce all non-privileged documents that are responsive to this

22  Request.  All responsive documents are attached as part as of Exhibit "A".

23  **REQUEST FOR PRODUCTION NO. 18:**

24  Any and all DOCUMENTS related to Melanie Silva that concern CEDAR.

25  ///

26  ///

27  ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 9 -

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

2       Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

3    Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

4    and beyond the issues raised in this litigation.

5       Subject to and without waiving any of the foregoing objections, Defendant responds as

6    follows: Defendant shall produce all non-privileged documents that are responsive to this

7    Request. All responsive documents are attached as part as of Exhibit "A".

8    **REQUEST FOR PRODUCTION NO. 19:**

9       Any and all DOCUMENTS related to Kristin Stover that concern Plaintiff Jessica Long.

10    **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

11       Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

12    Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

13    and beyond the issues raised in this litigation.

14       Subject to and without waiving any of the foregoing objections, Defendant responds as

15    follows: Defendant shall produce all non-privileged documents that are responsive to this

16    Request. All responsive documents are attached as part as of Exhibit "A".

17    **REQUEST FOR PRODUCTION NO. 20:**

18       Any and all DOCUMENTS related to Kristin Stover that concern Plaintiff Jessica Long's

19    daughter, Plaintiff E.L.

20    **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

21       Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

22    Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

23    and beyond the issues raised in this litigation.

24       Subject to and without waiving any of the foregoing objections, Defendant responds as

25    follows: Defendant shall produce all non-privileged documents that are responsive to this

26    Request. All responsive documents are attached as part as of Exhibit "A".

27    ///

28

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1  **REQUEST FOR PRODUCTION NO. 21:**

2       Any and all DOCUMENTS related to Kristin Stover that concern CEDAR.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

4       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

5  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

6  and beyond the issues raised in this litigation.

7       Subject to and without waiving any of the foregoing objections, Defendant responds as

8  follows:  Defendant shall produce all non-privileged documents that are responsive to this

9  Request.  All responsive documents are attached as part as of Exhibit "A".

10  **REQUEST FOR PRODUCTION NO. 22:**

11       Any and all DOCUMENTS related to Raymond Allen that concern Plaintiff Jessica Long.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

13       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

14  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

15  and beyond the issues raised in this litigation.

16       Subject to and without waiving any of the foregoing objections, Defendant responds as

17  follows:  Defendant shall produce all non-privileged documents that are responsive to this

18  Request.  All responsive documents are attached as part as of Exhibit "A".

19  **REQUEST FOR PRODUCTION NO. 23:**

20       Any and all DOCUMENTS related to Raymond Allen that concern Plaintiff Jessica

21  Long's daughter, Plaintiff E.L.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

23       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

24  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

25  and beyond the issues raised in this litigation.

26  ///

27  ///

28

- 11 -

55398.00040\41107522.1

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1    Subject to and without waiving any of the foregoing objections, Defendant responds as

2  follows:  Defendant shall produce all non-privileged documents that are responsive to this

3  Request.  All responsive documents are attached as part as of Exhibit "A".

4  **REQUEST FOR PRODUCTION NO. 24:**

5    Any and all DOCUMENTS related to Raymond Allen that concern CEDAR.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

7    Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

8  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

9  and beyond the issues raised in this litigation.

10    Subject to and without waiving any of the foregoing objections, Defendant responds as

11  follows:  Defendant shall produce all non-privileged documents that are responsive to this

12  Request.  All responsive documents are attached as part as of Exhibit "A".

13  **REQUEST FOR PRODUCTION NO. 25:**

14    Any and all DOCUMENTS related to Justin Starkey that concern Plaintiff Jessica Long.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

16    Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

17  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

18  and beyond the issues raised in this litigation.

19    Subject to and without waiving any of the foregoing objections, Defendant responds as

20  follows:  Defendant shall produce all non-privileged documents that are responsive to this

21  Request.  All responsive documents are attached as part as of Exhibit "A".

22  **REQUEST FOR PRODUCTION NO. 26:**

23    Any and all DOCUMENTS related to Justin Starkey that concern Plaintiff Jessica Long's

24  daughter, Plaintiff E.L.

25  ///

26  ///

27  ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\41107522.1

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

2      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

3  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

4  and beyond the issues raised in this litigation.

5      Subject to and without waiving any of the foregoing objections, Defendant responds as

6  follows:  Defendant shall produce all non-privileged documents that are responsive to this

7  Request.  All responsive documents are attached as part of Exhibit "A".

8  **REQUEST FOR PRODUCTION NO. 27:**

9      Any and all DOCUMENTS related to the Justin Starkey that concern CEDAR.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

11      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

12  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

13  and beyond the issues raised in this litigation.

14      Subject to and without waiving any of the foregoing objections, Defendant responds as

15  follows:  Defendant shall produce all non-privileged documents that are responsive to this

16  Request.  All responsive documents are attached as part of Exhibit "A".

17  **REQUEST FOR PRODUCTION NO. 28:**

18      Any and all DOCUMENTS related to Bruce MacFarlane that concern Plaintiff Jessica

19  Long.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

21      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

22  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

23  and beyond the issues raised in this litigation.

24      Subject to and without waiving any of the foregoing objections, Defendant responds as

25  follows:  Defendant shall produce all non-privileged documents that are responsive to this

26  Request.  All responsive documents are attached as part of Exhibit "A".

27  ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\41107522.1

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1  **REQUEST FOR PRODUCTION NO. 29:**

2      Any and all DOCUMENTS related to Bruce MacFarlane that concern Plaintiff Jessica

3  Long's daughter, plaintiff E.L.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

5      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

6  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

7  and beyond the issues raised in this litigation.

8      Subject to and without waiving any of the foregoing objections, Defendant responds as

9  follows:  Defendant shall produce all non-privileged documents that are responsive to this

10  Request.  All responsive documents are attached as part as of Exhibit "A".

11  **REQUEST FOR PRODUCTION NO. 30:**

12      Any and all DOCUMENTS related to Bruce MacFarlane that concern CEDAR.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

14      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

15  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

16  and beyond the issues raised in this litigation.

17      Subject to and without waiving any of the foregoing objections, Defendant responds as

18  follows:  Defendant shall produce all non-privileged documents that are responsive to this

19  Request.  All responsive documents are attached as part as of Exhibit "A".

20  **REQUEST FOR PRODUCTION NO. 31:**

21      Any and all DOCUMENTS related to Bruce MacFarlane that concern Plaintiff Jessica

22  Long.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

24      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

25  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

26  and beyond the issues raised in this litigation.

27  ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\41107522.1

Best Best & Krieger LLP
Attorneys at Law
1810 Von Karman Avenue, Suite 1000
Irvine, California 92612

1       Subject to and without waiving any of the foregoing objections, Defendant responds as

2  follows:  Defendant shall produce all non-privileged documents that are responsive to this

3  Request.  All responsive documents are attached as part as of Exhibit "A".

4  **REQUEST FOR PRODUCTION NO. 32:**

5       Any and all DOCUMENTS related to Bruce MacFarlane that concern Plaintiff Jessica

6  Long's daughter, Plaintiff E.L.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

8       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

9  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

10  and beyond the issues raised in this litigation.

11       Subject to and without waiving any of the foregoing objections, Defendant responds as

12  follows:  Defendant shall produce all non-privileged documents that are responsive to this

13  Request.  All responsive documents are attached as part as of Exhibit "A".

14  **REQUEST FOR PRODUCTION NO. 33:**

15       Any and all DOCUMENTS related to Bruce MacFarlane that concern CEDAR.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

17       Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

18  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

19  and beyond the issues raised in this litigation.

20       Subject to and without waiving any of the foregoing objections, Defendant responds as

21  follows:  Defendant shall produce all non-privileged documents that are responsive to this

22  Request.  All responsive documents are attached as part as of Exhibit "A".

23  **REQUEST FOR PRODUCTION NO. 34:**

24       Any and all DOCUMENTS related to Donald Maiden that concern Plaintiff Jessica Long.

25  ///

26  ///

27  ///

28

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

2      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

3  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

4  and beyond the issues raised in this litigation.

5      Subject to and without waiving any of the foregoing objections, Defendant responds as

6  follows:  Defendant shall produce all non-privileged documents that are responsive to this

7  Request.  All responsive documents are attached as part as of Exhibit "A".

8  **REQUEST FOR PRODUCTION NO. 35:**

9      Any and all DOCUMENTS related to Donald Maiden that concern Plaintiff Jessica

10  Long's daughter, plaintiff E.L.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

12      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

13  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

14  and beyond the issues raised in this litigation.

15      Subject to and without waiving any of the foregoing objections, Defendant responds as

16  follows:  Defendant shall produce all non-privileged documents that are responsive to this

17  Request.  All responsive documents are attached as part as of Exhibit "A".

18  **REQUEST FOR PRODUCTION NO. 36:**

19      Any and all DOCUMENTS related to Donald Maiden that concern CEDAR.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

21      Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

22  Attorney-client privilege and attorney work product doctrine.  Seeks information that is irrelevant

23  and beyond the issues raised in this litigation.

24      Subject to and without waiving any of the foregoing objections, Defendant responds as

25  follows:  Defendant shall produce all non-privileged documents that are responsive to this

26  Request.  All responsive documents are attached as part as of Exhibit "A".

27  ///

28

55398.00040\41107522.1

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1  **REQUEST FOR PRODUCTION NO. 37:**

2      Any and all DOCUMENTS related to Katherine Muse that concern Plaintiff Jessica Long.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

4      Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

5  Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

6  and beyond the issues raised in this litigation.

7      Subject to and without waiving any of the foregoing objections, Defendant responds as

8  follows: Defendant shall produce all non-privileged documents that are responsive to this

9  Request. All responsive documents are attached as part as of Exhibit "A".

10  **REQUEST FOR PRODUCTION NO. 38:**

11      Any and all DOCUMENTS related to Katherine Muse that concern Plaintiff Jessica

12  Long's daughter, Plaintiff E.L.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

14      Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

15  Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

16  and beyond the issues raised in this litigation.

17      Subject to and without waiving any of the foregoing objections, Defendant responds as

18  follows: Defendant shall produce all non-privileged documents that are responsive to this

19  Request. All responsive documents are attached as part as of Exhibit "A".

20  **REQUEST FOR PRODUCTION NO. 39:**

21      Any and all DOCUMENTS related to Katherine Muse that concern CEDAR.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

23      Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

24  Attorney-client privilege and attorney work product doctrine. Seeks information that is irrelevant

25  and beyond the issues raised in this litigation.

26  ///

27  ///

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\41107522.1

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1    Subject to and without waiving any of the foregoing objections, Defendant responds as

2    follows:  Defendant shall produce all non-privileged documents that are responsive to this

3    Request.  All responsive documents are attached as part as of Exhibit "A".

4    **REQUEST FOR PRODUCTION NO. 40:**

5    Any and all DOCUMENTS related to the SHASTA COUNTY SHERIFF'S

6    DEPARTMENT's policy, or policies, on possible theft of livestock.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

8    Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

9    Seeks information that is irrelevant and beyond the issues raised in this litigation.

10   **REQUEST FOR PRODUCTION NO. 41:**

11   Any and all DOCUMENTS related to the SHASTA COUNTY SHERIFF'S

12   DEPARTMENT's policy, or policies, on investigations related to Penal Code § 487a.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

14   Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

15   Seeks information that is irrelevant and beyond the issues raised in this litigation.

16   **REQUEST FOR PRODUCTION NO. 42:**

17   Any and all DOCUMENTS related to any training provided by the SHASTA COUNTY

18   SHERIFF'S DEPARTMENT to employees on possible theft of livestock.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

20   Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

21   Seeks information that is irrelevant and beyond the issues raised in this litigation.

22   **REQUEST FOR PRODUCTION NO. 43:**

23   Any and all DOCUMENTS related to any training provided by the SHASTA COUNTY

24   SHERIFF'S DEPARTMENT to employees related to Penal Code § 487a.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

26   Objection.  Vague, ambiguous, and overbroad.  Burdensome, oppressive and harassing.

27   Seeks information that is irrelevant and beyond the issues raised in this litigation.

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00040\41107522.1

2:22-CV-01527-DAD-AC
DEFENDANT LIEUTENANT JERRY
FERNANDEZ'S RESPONSES TO
PLAINTIFF'S REQUEST FOR
PRODUCTION OF DOCUMENTS, SET ONE

1 | **REQUEST FOR PRODUCTION NO. 44:**

2 |     Any and all DOCUMENTS related to the SHASTA COUNTY SHERIFF'S

3 | DEPARTMENT's supervision of investigations of possible theft of livestock.

4 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

5 |     Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

6 | Seeks information that is irrelevant and beyond the issues raised in this litigation.

7 | **REQUEST FOR PRODUCTION NO. 45:**

8 |     Any and all DOCUMENTS related to the SHASTA COUNTY SHERIFF'S

9 | DEPARTMENT's supervision of investigations related to Penal Code § 487a.

10 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

11 |     Objection. Vague, ambiguous, and overbroad. Burdensome, oppressive and harassing.

12 | Seeks information that is irrelevant and beyond the issues raised in this litigation.

13 | Dated: May 9, 2023                      BEST BEST & KRIEGER LLP

14 |

15 |                               By:

16 |                                 JEFFREY V. DUNN<br>CHRISTOPHER M. PISANO<br>DAMIAN A. NORTHCUTT

17 |

18 |                                 Attorneys for Defendants<br>LIEUTENANT JERRY FERNANDEZ,

19 |                                 DETECTIVE JACOB DUNCAN, and<br>DETECTIVE JEREMY ASHBEE

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

BEST BEST & KRIEGER LLP<br>ATTORNEYS AT LAW<br>18101 VON KARMAN AVENUE, SUITE 1000<br>IRVINE, CALIFORNIA 92612

55398.00040\41107522.1

2:22-CV-01527-DAD-AC<br>DEFENDANT LIEUTENANT JERRY<br>FERNANDEZ'S RESPONSES TO<br>PLAINTIFF'S REQUEST FOR<br>PRODUCTION OF DOCUMENTS, SET ONE

EXHIBIT A





# Shasta County Sheriff's Office

Incident #: 22S019984

Reporting Officer: Fernandez, Jerry

Report Time: 06/29/2022 11:00:00

## Incident

| | | |
|---|---|---|
| Incident Nature<br>GRAND THEFT REPORT | Address<br>1890 BRIGGS ST<br>ANDERSON, California 96007 | Occurred From<br>06/25/2022 09:00:00 |
| Occurred To<br>06/25/2022 22:30:00 | Received By<br>Severson, Reed | How Received<br>On View |
| Contact | Disposition<br>Closed Case | |
| Disposition Date<br>07/08/2022 | Cleared<br>N | |
| Cleared Date | Clearance<br>Report Required | Cargo Theft Related<br>N |

Responding Officer(s)
Fernandez, Jerry

## Offenses

### All Other Larceny

| | | |
|---|---|---|
| Completed?<br>C | Method Of Entry | Gambling Motivated? |
| Premises Entered? | Location Type<br>39 | Cargo Theft Related? |
| Statute<br>487A(A) PC F (23248) | Description<br>GRAND THEFT ANIMAL | Category<br>PC |

Bias Motivation

88

Offender Used

N

## Persons



## FOWLER, CHAD A
## Witness



## LONG, JESSICA E
## Suspect



## STOVER, KRISTIN E
## Witness



## ALLEN, RAYMOND J
## Witness

| Address | Phone | DOB |
|---|---|---|
| | | |

| Race | Sex | Ethnicity |
|---|---|---|
| | M | |

| Height | Weight | |
|---|---|---|
| | | |

## STARKEY, JUSTIN A
## Witness

| Address | Phone | DOB |
|---------|-------|-----|


| Race | Sex | Ethnicity |
|------|-----|-----------|

| Height | Weight | |
|--------|--------|--|

## MACFARLANE, BRUCE J
## Witness

| Address | Phone | DOB |
|---------|-------|-----|


| Race | Sex | Ethnicity |
|------|-----|-----------|

| Height | Weight | |
|--------|--------|--|

## MAIDEN, DONALD
## Witness

| Address | Phone | DOB |
|---------|-------|-----|


| Race | Sex | Ethnicity |
|------|-----|-----------|

| Height | Weight | |
|--------|--------|--|

## MUSE, KATHERINE R
## Victim

| Address | Phone | DOB |
|---------|-------|-----|


| Race | Sex | Ethnicity |
|------|-----|-----------|

| Height | Weight | |
|--------|--------|--|

## Property


## Audio CD                                           Evidence

| | | |
|---|---|---|
| Brand<br>378/1 Interview | Model | Serial Number |
| Color | Quantity<br>1 | Total Value<br>$0.00 |
| Measurement | Amount Recovered<br>$0.00 | Date Recovered |
| Status | Owner | |

## Data CD                                            Evidence

| | | |
|---|---|---|
| Brand<br>378/2 Emails | Model | Serial Number |
| Color | Quantity<br>1 | Total Value<br>$0.00 |
| Measurement | Amount Recovered<br>$0.00 | Date Recovered |
| Status | Owner | |

## CD-ROM                                             Evidence

| | | |
|---|---|---|
| Brand | Model | Serial Number |
| Color | Quantity<br>1 | Total Value<br>$0.00 |
| Measurement | Amount Recovered<br>$0.00 | Date Recovered |
| Status | Owner | |

## Narratives

## Original Narrative                      07/26/2022 12:14:17

I. INVESTIGATIVE NARRATIVE

On Wednesday, June 29, 2022 at about 1150 hours, I contacted Shasta District Fairgrounds Livestock Superintendent Bruce MacFarlane regarding a theft of a goat. MacFarlane provided me with the following statement in summary.

MacFarlane stated on Saturday, 6-25-22 at about 2230 hours, fair staff along with volunteers found a goat missing from the goat barn at the Shasta District Fairgrounds, located at 1890 Briggs Street Anderson. Staff found the goat missing while they were attempting to load livestock for transportation. MacFarlane advised the goat was sold earlier in the day during the Junior Livestock Auction. In the process of trying to locate the goat MacFarlane determined the goat was from the



Cow Creek 4-H Club. MacFarlane contacted Chad Fowler who is the Community Leader and Goat Leader for the Cow Creek 4-H Club. MacFarlane stated based on his conversation with Fowler, Fowler suspected the mother of the junior exhibitor stole the goat from the fairground to prevent it from being transported and slaughtered.

At about this time, MacFarlane informed me the junior exhibitor was Eliza Long and her mother was Jessica Long. MacFarlane advised Jessica had sent an email to the fairgrounds office on Monday, 6-27-22 admitting she had taken the goat from the fairgrounds. Jessica was requesting to resolve this incident and the CEO of the Shasta District Fair, Melanie Silva, responded in an email informing Jessica she needed to return the goat. Jessica responded by sending an email correspondence on the morning of Wednesday 6-29-22 and has not returned the goat.

At this time, I provided MacFarlane with my department email address and requested any and all documentation be forwarded to me regarding the sale of the goat and emails from Jessica Long and the Shasta District Fair.

On 6-29-22 at about 1230 hours, Silva emailed me the following items:

* Shasta District Fair Sale Invoice
* Fair entry form
* email correspondence from Jessica Long and Shasta District Fair CEO Silva.

I reviewed the documents Silva sent me. In regard to the Sale Invoice, I noted the date of the invoice was for June 25, 2022. The sale order was 132 and the ear tag number for the market goat was 367. The seller name was Eliza Long and the goat weighed 82 pounds and sold for $11.00 per pound, for a total of $902. There were two buyers listed on the invoice, Brian Dahle and Megan Dahle. who donated the goat to the 4-H and FFA Community BBQ. Based on this invoice, at the time of the sale Kathie Muse became the responsible owner of the market goat. Refer to the attached invoice for further detail.

Upon reviewing the fair entry form and Shasta District Fair accountability and liability form, I noted the following. By completing the entry form you agree to the following. You certify that you are the owner of the property specified or the supervisor of the project with authorization to act as agent and to bind the owners of the property in all matters herein. Online submission of data requires that a person has read, understands and agrees to abide by all the rules and regulations governing the fair entries as published in the official Shasta District Fair Handbook. Under penalty of perjury, you certify that the information provided is true and agree to defend, indemnify, and hold harmless the fair, the county, and the State of California, its officers, agents and employees from and against any liability, claim, loss or expense (including any reasonable attorney fees) arising out of any injury or damage, which is caused by, arises from or is in any way connected with the participation in the program or event, excepting only that caused by the sole active negligence of the Fair. The Fair Management shall not be responsible.

To enter online, you must be over 18 years of age or be the parent and/or guardian of the exhibitor if the exhibitor is under the age 18, or the 4-H Leader or FFA advisor, with the authorization from the parent and/or guardian of the exhibitor, or authorization from the exhibitor if 18 years of age or older. In addition to confirming you are one of the aforementioned, you must also confirm that you have read, understand and agree to abide by all the rules and regulations governing the Fair entries as published in the official Shasta District Fair Handbook, and that everything submitted is "true and correct."

On the entry form it listed Eliza Long as the exhibitor with personal identifying information. On the form it states "I've read the rules" with "I agree." The form asks if the "Information is true" with "I Agree." The form also states "Hold Harmless Clau" with "Parent/Guardian Agrees."

Based on this entry form and accountability and liability wavier, Jessica Long who is the parent of Eliza Long agreed to all rules and regulations set forth and published in the Shasta District Fair Handbook. Refer to the attached entry form and accountability and liability form for further detail.

I then reviewed emails from Jessica Long and the CEO of the Shasta District Fair, Melanie Silva. The first email was sent on Monday 6-27-22 at 1741 hours. The subject line of the email stated "Requesting solutions for the goat that was taken." The following is a summary of the email Jessica sent.

The first paragraph of the email stated, "I am the mom who took my daughter's goat from the fairgrounds and wanted to explain myself and look for solutions with you. If we can't come up with any other solution, I will bring the goat back for slaughter." Jessica goes on to explain that this was her daughters first year in 4-H and that they had joined 4-H so that she could learn how to properly take care of livestock. In addition to caring for livestock, her daughter would learn where her food comes from and the effort it takes to raise quality meat products. Jessica then talked about how she was made aware of how the animals were loaded after the sale and that this process didn't sit well with her. Jessica further advised that when she learned of this process several weeks ago, she began looking for another solution. Due to not having property to maintain and take care of the goat she began asking people she knew if she could give them the goat so it didn't have to be sold for slaughter. Jessica advised she eventually heard back from someone willing to take the goat, but it was the second day of fair. Jessica further advised that she spent the next couple of days reviewing the fair rules looking for a way out of the fair. Jessica stated she couldn't find any rules that would allow her to quite once at the fair. On Saturday night, 6-25-22, at about 2100 hours, Jessica advised her daughter was saying her final goodbyes and she was sobbing in the pen with her goat. Jessica explained the goat barn was mostly empty and at the last minute she decided to break the rules and take the goat. Jessica further stated she would deal with the consequences later. Jessica stated she would pay the for the goat and any other expenses and that she didn't fully understand that there are terminal and non-terminal fairs. Jessica further advised that she had been contacted by the livestock manager of the fair who had threatened to have her arrested for a felony for stealing the goat if she did not return it immediately. Jessica advises near the end of her email that if the only solution is to return the goat then she will return it to avoid being charged.

SDF CEO Silva responded to Jessica's email on Tuesday, 6-28-22, at about 1331 hours. Silva explained to Jessica that she had spoken with the California Department of Food and Agriculture and that the fair has to adhere to state rules. Silva informed Jessica she needed to bring the goat back to the Shasta District Fair immediately.

On Wednesday, 6-29-22 at about 0949 hours, Jessica sent another email to Silva. The email contained an attachment which was a letter regarding Dispute over Cedar (cedar is the goat). In this letter, Jessica stated she received another text message from BJ McFarlane (Bruce MacFarlane livestock superintendent) demanding the return of the goat. Jessica goes on to state that she has not violated CA PC 487a due to it not belonging to the organization (Shasta District Fair). Jessica further talks about the fair rules, the legality of ownership, and agrees to compensate the fair. She further explains that her daughter had bonded with the goat and had she known what a terminal auction entailed, she would have never gone down this path.

Based on this last email from Jessica, it was apparent she was not going to return the goat and based on her interpretation of the law she felt she had not committed any crime. Refer to the attached emails for further details.

At this time, I reviewed the Shasta District Fair & Event Center Livestock Rules, which is located on the SDF website. On page 51 of All General Livestock Rules and Guidelines it states the following.

"ALL ANIMALS (Steers - Replacement Heifers - Swine - Lambs - Meat Goats - Rabbit Meat Pens) ENTERED IN MARKET CLASSES & QUALIFYING FOR THE JUNIOR LIVESTOCK AUCTION MUST BE SOLD as listed on the Sale Order. There will be no set prices (or STOPS) AND NO "NO-SALES" at any time during the Sale."

"ALL ANIMALS sold in the Shasta Junior Livestock Auction sale MUST go to processing, directly from the Fairgrounds and will be transported on the trucks provided by the Fair on Saturday, June 25, 2022. No Junior Exhibitors will be allowed in barns while the animals are loading, failure to leave the barn when asked may result in the loss of premiums." Refer to the attached guidelines for


further.

On 6-29-22 at about 1720 hours, I responded to Jessica's residence, located at 1480 Atajo Ct. Redding, in an attempt to contact her regarding this incident. I attempted contact at the front door of the residence; however, no one responded to my knocks and I suspected no one was home. I entered my patrol vehicle and attempted to contact Jessica via cell phone at about 1724 hours. Jessica did not answer her phone and I left her a message requesting she contact me regarding the theft of the goat. The phone number I called was 206-851-5701.

On 6-29-22 at about 1735 hours, I contacted Chad Fowler via cell phone. Fowler was the Cow Creek 4-H Community Leader and Goat Leader for Eliza Long. The following is a summary of my phone conversation with Fowler.

Fowler advised he had learned that Jessica had taken the goat from the SDF and had taken the goat out of the area. Fowler stated he had allowed Jessica and Eliza to keep the goat at his property prior to the fair due to them not being able to have the goat at their residence. Fowler advised Jessica's claims about not knowing that the SDF required the animals be transported and slaughtered wasn't true. Fowler advised they had numerous meetings regarding the entire project to include that the animal would be butchered after the sale at the fair. Fowler further advised at one of the meetings, the 4-H members even ate goat to better explain/ demonstrate the importance of raising quality meat for buyers. When asked Fowler advised he didn't know where Jessica had taken the goat. This concluded my contact with Fowler.

On 6-30-22 at about 1741 hours, I again attempted to contact Jessica via cell phone. When I tried calling this time, her voicemail box was full and would not accept any new message.

On 7-7-21 SDF CEO Silva informed me of a post on social media. The social media post was made on Instagram from Bleatingheartsfarm. In the post the goat is pictured with an SDF ear tag and Scrapie ear tag. A Scrapie ear tag is a breeder ear tag that identifies the flock and the individual animal number. Silva advised Bleating Hearts Farm was located in Napa CA. I asked Silva to contact the breeder of the goat that was taken and obtain the Scrapie ear tag number. Silva later provided me with a Scrapie ear tag number of CAL0ZA0700. The SDF ear tag number was 367.

On 7-8-22 I contacted Lieutenant Donald Maiden with the Napa County Sheriff's Office. I informed Lieutenant Maiden of my investigation and believed the goat was located in his jurisdiction. I was requesting his office respond to the address listed for Bleating Hearts Farm, located at 1142 3rd Avenue, Napa CA., and determine if the goat was there and to take custody of the goat. While talking to Lieutenant Maiden on the phone, he checked his local database and determined the owners for Bleating Hearts Farm was Justin Starky. Lieutenant Maiden determined Starky worked for the Napa County Sheriff's Office in the records unit.

Based on this information, I contacted Detective Ashbee and provided him with a summary of events regarding this investigation. Detective Ashbee authored a Search Warrant for the location in Napa CA, which was signed by Superior Court Judge Monique McKee. As the warrant was being authored and signed, Detective Duncan and I responded to the Napa County Sheriff's Office, where we met with Lieutenant Maiden. At about 1932 hours, Detective Duncan, Lieutenant Maiden and two other Napa County Sheriff's Office employee's arrived at 1142 3rd Avenue, Napa CA to serve the warrant. Upon arrival, we contacted Justin Starky and Kristin Stover. We informed them of the reason why we were at their residence and provided them with a copy of the warrant. Starky and Stover advised the goat in question was not at their residence nor had it ever been at their residence. Starky and Stover then accompanied us to the back of the property were goats were located. I searched the property for the goat; however, was unable to locate the goat in question.

While in the back yard of the property, I conducted an interview with Starky. Starky advised he was contacted by Jessica via email and she was asking if he and Stover could take the goat. Starky informed Jessica they could facilitate taking the goat, but once he found out it was a terminal fair and the authorities were getting involved he refused the goat. Starky advised the goat never came to his property and he had no idea were Jessica took the goat.



While I was interviewing Starky, Detective Duncan was interviewing Stover. Detective Duncan informed me that Stover had admitted to knowing where the goat was taken to. Detective Duncan advised he also read email conversations between Stover and Jessica. Duncan advised the goat was located a a property in Sonoma County at Billy's Mini Farm. We located an address for this farm, which was located at 3440 Roblar Road, Petaluma, CA. Refer to Detective Duncan's supplemental report for further.

At about 2100 hours, Detective Duncan and I responded to the Roblar Road address and were accompanied by two Sonoma County Deputy Sheriff's. Upon arriving at the residence, I attempted contact at the front door to the residence, but it appeared as if no one was home. Detective Duncan had a phone number for Billy's Mini Goat Farm and called the number listed. Detective Duncan contacted a Raymond Allen. Detective Duncan talked with Allen for several minutes then got off the phone. Detective Duncan advised he had informed Allen of the reason why we were at his property. Allen advised he didn't know the goat was stolen and that we had his permission to retrieve the goat. Allen further advised that the goat still had both ear tags in it's ears.

We responded to the back of the property where there were pens with numerous goats located. I was able to identify the goat in question and retrieved it from the pen. Prior to leaving the property, I took digital photos of the goat and of the ear tags. The goat had the correct ear tags and distinct coloring/marks matched.

On 7-9-22 at about 0030 hours, I met with Bruce MacFarlane and turned the goat over into his care and control per Kathie Muse's request. I took digital photos of the goat in MacFarlane's custody.

In conclusion, Jessica Long signed her daughter Eliza Long up to be an exhibitor at the Shasta District Fair. By doing so she agreed to all the rules and terms of this fair. Jessica claims in emails that she didn't know that the SDF was a terminal (animals for slaughter/butcher) fair; however, she contradicts herself in emails and did know weeks in advance. Jessica further claims she did not violate any laws; however, once the goat was sold at the Junior Livestock Auction on 6-25-22 in the morning hours the goat became the property of Kathie Muse. Jessica in fact violated CA PC 487a (a) grand theft when she decided to knowingly violate the rules of the fair and state when she stole the goat at about 2100 hours on 6-25-22. Jessica admits to this theft via email and then went through great lengths to conceal the goat by taken it to a property in Petaluman CA. To further conceal where the goat was, Kristin Stover from Bleating Hearts Farm made posts on social media indicating the goat was safe at their location. If Jessica sincerely did not want to move forward with the sale of the goat at a terminal fair then she should have never have registered Eliza as an exhibitor in the fair and should have never taken the goat to the fair.

Based on the totality of the circumstances, I am requesting Jessica Long be charged with 487a(a) PC Grand Theft.


II. CASE STATUS: Closed


## Supplemental Narrative          07/12/2022 10:12:57 Duncan, Jacob


I. INVESTIGATIVE NARRATIVE - Bleating Hearts Goat Sanctuary

On Friday, July 8th, 2022, I was assigned to assist Lt. Fernandez with this investigation. At approximately 1932 hours, we arrived on the 1100 block of 3rd Avenue in Napa, CA, to serve a search warrant related to a stolen goat. Refer to Lt. Fernandez's report for additional information on the initial report and investigation. We contacted Justin Starkey and his wife, Kristin Stover, in front of the residence. It should be noted both of these subjects were the

file:///C:/Users/kobsh/AppData/Roaming/Spillman/Mobile/temp/Incident_FormOutput.html



owners of the on-site Goat Sanctuary, "Bleating Hearts." Our initial conversation with both of them as well as my interview with Kristin Stover was recorded on my department-issued recording device. Below is a summary of that conversation:

We introduced ourselves and stated our purpose was to serve them with a search warrant and retrieve a stolen goat. Lt. Fernandez asked Justin if he knew anything about the goat. He responded that he knew someone had reached out to his wife regarding the goat. Justin stated he did not know who the person was. Justin stated the goat was not at his residence and he would take us to check the property. At this point, Kristin walked up and overheard us talking about the goat. She stated the goat's name was Cedar and stated Cedar was not at the residence. They both claimed Cedar had never been at their residence.

Kristin stated the lady with Cedar was named "Jessica." I believed she was referencing the suspect of this investigation, Jessica Long. Kristin reiterated she did not know where the goat was and all they knew was the goat was safe. They both then allowed us to go with them to check the property. I asked what kind of communication Kristin has had with Jessica. Kristin began to tell me but then stopped and apologized and stated she had autism. I told Kristin she was giving me indicators of being deceitful. Kristin attributed her indicators to being nervous and having autism. Kristin told me she last heard from Jessica about a week ago in June. Kristin told me she could call Jessica and try and figure out where the goat was. Kristin claimed that all she heard was that Jessica drove the goat "hours away." Kristin stated if she found out where the goat was she would let us know.

I asked Kristin if she had Jessica's phone number. Kristin stated she did and it was written down in their house. Kristin stated she did not text Jessica and only spoke to her via phone call. Kristin stated again she did not know where the goat was. Kristin began looking through her phone and located Jessica's phone number. She began providing me with the phone number and I observed she was reading it from an email exchange she had with Jessica. I cut her off and asked her what the emails were. I asked her if I could see the emails. Kristin stated, "Yeah, go ahead," and she handed me her cellphone. As she handed me the cellphone she told me she had actually suggested "Billy's Mini Farm" to Jessica. I observed there were emails between Kristin and Jessica where Jessica told Kristin she had dropped the goat off at this location. I told Kristin my belief she had lied to me. I read through the emails with her and Kristin blamed not being forthcoming on her autism. She provided me consent to photograph these conversations via email and I did so with my department cellphone. I returned Kristin's cellphone to her. The emails indicated Jessica had dropped off the goat at Billy's Mini Farm in Petaluma, CA, on June 26th, 2022, in accordance with Kristin's suggestion. Kristin and I discussed where Billy's Mini Farm was located. I located the farm's website which included its contact information.

I was able to locate an address for Billy's Mini Farm off Roblar Road in Petaluma, CA, as well as, the contact information for one of the owners, Raymond Allen. Refer to my supplemental narrative regarding our contact with Billy's Mini Farm for additional information. I collected Kristin's identifying information and asked her not to contact Jessica and inform her we would be going to Billy's Mini Farm in an attempt to retrieve the goat.

**End of Interview**

A copy of my interview was booked into SCSO evidence under 378/1 and a copy of the photographed emails was booked into SCSO evidence under 378/2.

II. CASE STATUS: Open.



J. DUNCAN #378

## Supplemental Narrative    07/12/2022 10:24:19 Duncan, Jacob

I. INVESTIGATIVE NARRATIVE - Billy's Mini Goat Farm

On Friday, July 8th, 2022, at approximately 2100 hours, Lt. Fernandez and I, along with deputies with the Sonoma County Sheriff's Office arrived at Billy's Mini Goat Farm located off Roblar Road in Petaluma, CA. We attempted contact at the residence with negative results. I called the number listed on the website, 707-721-7781, and a subject identified as Raymond Allen answered the phone. Raymond stated he was not currently at the residence and was currently unable to meet us there. I asked if he knew anything about the stolen goat in question. Raymond stated a female subject had dropped the goat off a couple of weeks ago and told him it was a donation. I explained the goat was stolen and we were at his residence in an attempt to retrieve the stolen property. Raymond stated he was unaware of the goat being stolen and provided us with permission to retrieve the goat from his property. Raymond stated the goat still had its ear tag on and was located in the rear of his property.

Lt. Fernandez and I located the goat in the rear of Raymond's property and we were able to successfully recover the stolen goat. I left my business card at Raymond's residence in case he needed to further contact me. Lt. Fernandez and I transported the goat back to Shasta County. Refer to Lt. Fernandez's supplemental report for further details on the recovery of the stolen goat.

II. CASE STATUS: Open.

J. DUNCAN #378

## Supplemental Narrative    07/13/2022 07:38:32 Duncan, Jacob

I. INVESTIGATIVE NARRATIVE - Emails Between Jessica and Kristin

The purpose of this supplemental report is to document the email exchange between Jessica Long and Kristin Stover. These emails are currently booked into SCSO evidence under 378/2. Below is a summary of these emails:

-Jessica emailed Kristin on June 21st and told Kristin she wanted to drop their goat off at their sanctuary that weekend. Jessica detailed how the auction was coming up on that following Saturday and they did not want the goat auctioned to be used as meat. Jessica provided Kristin with her contact information and signed the end of the email with her and her daughter's full names, "Jessica and Eliza Long." Jessica also included an image of Eliza Long and the goat.

-On June 22nd, Kristin responded to the email and stated they would be happy to facilitate taking the goat in and adopting the goat out to a weed abatement company around the Napa County area.

-On June 22nd, Kristin sent Jessica another email stating she could send Jessica Billy's Mini Goat Farm contact information to receive updates on the goat.

-On June 22nd, Jessica responded stating she learned the fair was a "terminal fair" and there would be fines associated with taking the goat. Jessica asked Kristin if she had any options to get the goat out of there.

-On June 22nd, Kristin responded and asked Jessica what she had signed. Kristin also informed her that after it was on the fairgrounds property and the goat was signed over, "It gets hard." Kristin sent two other additional emails that contained fair rules and possible ways to get out of the goat being slaughtered. This included the goat having horns, being under the weight requirement, having any scurs

-On June 26th, Jessica emailed Kristin and told her that she and her daughter had the goat and were in Sacramento with plans to drive to Napa the following morning. Jessica stated they were dropping the goat off at Billy's Mini Farm. Jessica indicated she wanted to stop by and meet Kristin to see her rescue. Jessica provided Kristin with her phone number, +12068515701. Later on, on the same day, Jessica told Kristin they made it down there and back. Jessica also stated, "Now to deal with the consequences." Jessica thanked Kristin for helping her with a farm for the goat. Jessica also attached four pictures of the goat at Billy's Mini Farm.

**End of Emails**

II. CASE STATUS: Open.

J. DUNCAN #378

## STEPHANIE A. BRIDGETT - SHASTA COUNTY DISTRICT ATTORNEY
## CRIMINAL COMPLAINT WORKSHEET

## ------------------*LAW ENFORCMENT USE ONLY*----------------------

*NO* 1    *OF* 1

| DEF. NAME: LONG, JESSICA ELIZABETH | CASE/CITE #: 22S019984 |
|---|---|
| DOB: | SS#: UNKOWN |
| IN CUSTODY: NO    BAIL/OR Date: NONE | |

| DATE(S) | Fel/Misd /Inf/Enh | CODE SECTION | MISC. CHARGE INFORMATION | VICTIM NAME(S) |
|---|---|---|---|---|
| 6/25/2022 | FEL | 487a(a) PC | | Katherine Muse |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## --------------DISTRICT ATTORNEY USE ONLY------------------

DA ASSIGNED:_____

☐ WARRANT          ☐ CITE LETTER          ☐ PROPERTY/EVIDENCE
☐ BOOK NOTIFY      ☐ STAY AWAY ORDER      ☐ Firearm Dispo Req'd
☐ PROB. VIOL.                             ☐ Marijuana Dispo Req'd

☐ORDER DMV PACKET   ☐ORDER PRIORS   ☐ORDER 969B PRISON PACKET – CDC #

COMMENTS: ☐ ON PAROLE _____PAS _____E-PAS _____TOX

| Photos _____ |
|---|
| Audio _____ |
| Shascom _____ |
| Video _____ |

☐DECLINED (SEE ATTACHED FORM)

ISSUING ATTORNEY: _____        DATE: _____

PX: _____

DocuSign Envelope ID: C6741AE2-FC13-4809-B566-98FB2FAB7D21

SW No. 2022 - _____



**STATE OF CALIFORNIA
COUNTY OF SHASTA
SEARCH WARRANT AND AFFIDAVIT
(AFFIDAVIT)**

___Detective Jeremy Ashbee___ swears under penalty of perjury that the facts expressed by him/her in this **Search**
<span>(Name of Affiant)</span>

**Warrant** and **Affidavit** and in the attached and incorporated herein **Statement of Probable Cause** are true and correct
and that based thereon upon his/her experience and expertise that he/she has probable cause to believe and does believe
that the property and/or person described below is lawfully seizable pursuant to Penal Code § 1524, as indicated below,
and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

DocuSigned by:

*Jeremy Ashbee*
SAC917E(Signature of Affiant)

7/8/2022 | 6:25 PM PDT
_____
Date / Time(s)

**SEALING REQUESTED:**   ☒ **No**    ☐ **Yes**

☐ **Statement of Probable Cause**

☐ **Confidential Attachment**

**NIGHT SEARCH REQUESTED:**   ☒ **No**    ☐ **Yes**

## (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER, OR PEACE
OFFICER IN THE COUNTY OF SHASTA:** proof by affidavit having been made before me by
___Detective Jeremy Ashbee___ that there is probable cause to believe that the property and/or person described
<span>(Name of Affiant)</span>
herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code § 1524 as indicated
below by "X"(s) in that:

☒    the property was stolen or embezzled.

☐    the property or things were used as the means of committing a felony.

☐    the property or things are in the possession of any person with the intent to use them as a means of
committing a public offense, or in the possession of another to whom he or she may have delivered them for the
purpose of concealing them or preventing them from being discovered.

☐    the property or things to be seized consist of an item, or constitute evidence that tends to show a
felony has been committed, or tends to show that a particular person has committed a felony.

☐    the property or things to be seized consist of evidence that tends to show that sexual exploitation of a
child, in violation of California Penal Code § 311.3, or possession of matter depicting sexual conduct of a person
under the age of 18 years, in violation of California Penal Code § 311.11, has occurred or is occurring.

☐    there is a warrant to arrest a person.

Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

**SEARCH WARRANT AND AFFIDAVIT**

Page 1 of 15

FERN000015

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21

☐     a provider of electronic communication service or remote computing service has records or evidence, as specified in California Penal Code § 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery.

☐     the property or things to be seized include an item or any evidence that tends to show a violation of California Labor Code § 3700.5, or tends to show that a particular person has violated California Labor Code § 3700.5.

☐     the property or things to be seized include a firearm or any other deadly weapon at the scene of, or at the premises occupied or under the control of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault as provided in California Penal Code § 18250.

☐     the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms pursuant to § 6389 of the Family Code, if a prohibited firearm is possessed, owned, in the custody of, or controlled by a person against whom a protective order has been issued pursuant to § 6218 of the Family Code, the person has been lawfully served with that order, and the person failed to relinquish the firearm as required by law.

☐     the information to be received from the use of a tracking device constitutes evidence that tends to show that either a felony, a misdemeanor violation of the Fish and Game Code, or misdemeanor violation of the Public Resources Code has been committed or is being committed, tends to show that a particular person has committed a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code. A tracking device search warrant issued pursuant to this paragraph shall be executed in a manner meeting the requirements specified in subdivision (b) of § 1534.

☐     the property or things to be seized are firearms or ammunition or both that are owned by, in the possession of, or in the custody or control of a person who is the subject of a gun violence restraining order that has been issued pursuant to Division 3.2 (commencing with § 18100) of Title 2 of Part 6, if a prohibited firearm or ammunition or both is possessed, owned, in the custody of, or controlled by a person against whom a gun violence restraining order has been issued, the person has been lawfully served with that order, and the person has failed to relinquish the firearm as required by law.

☐     the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms pursuant to § 29800 or 29805, and the court has made a finding pursuant to subdivision (c) of § 29810 that the person has failed to relinquish the firearm as required by law.

☐     the property or things to be seized are controlled substances or a device, contrivance, instrument, or paraphernalia used for unlawfully using or administering a controlled substance pursuant to the authority described in §11472 of the Health and Safety Code.

Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

**SEARCH WARRANT AND AFFIDAVIT**

Page 2 of 15

FERN000016

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21

☐     all of the following apply:

(i) A sample of the blood of a person constitutes evidence that tends to show a violation of subdivision (b), (c), (d), (e), or (f) of § 655 of the Harbors and Navigation Code.

(ii) The person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by § 655.1 of the Harbors and Navigation Code.

(iii) The sample will be drawn from the person in a reasonable, medically approved manner.

(B) This paragraph is not intended to abrogate a court's mandate to determine the propriety of the issuance of a search warrant on a case-by-case basis.

☐     the property or things to be seized consists of evidence that tends to show that a violation of paragraph (1), (2), or (3) of subdivision (j) of § 647 has occurred or is occurring.

☐     the property or things to be seized include a firearm or other deadly weapon that is owned by, or in the possession of, or in the custody or control of, a person described in subdivision (a) of Section 8102 of the Welfare and Institutions Code.


**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**Bleating Hearts Farm and Sanctuary**
**1142 3rd Avenue,**
**Napa, CA 94558**

The location is a single family residence in a rural residential area. The property has a tan colored residence with a brown composite style roof. The front door and attached garage of the residence face west towards 3rd Ave. The number "1142" are posted vertically in bold black colored lettering on a white colored column to the left of the attached garage. There is a "U" shaped pull through driveway in front of the residence. Refer to the below photographs for further information.

The residence, including all rooms, attics, basements, and other parts therein, the surrounding grounds and any garages, sheds, storage rooms, and outbuildings of any kind large enough to accommodate a small goat.

Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 3 of 15

FERN000017



DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21



Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 4 of 15

FERN000018

DocuSign Envelope ID: C6741AE2-FC13-4809-B566-98FB2FAB7D21



Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 5 of 15

FERN000019

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21



**FOR THE FOLLOWING PROPERTY/PERSON:**

FERN000020

DocuSign Envelope ID: C6741AE2-FC13-4809-B566-96FB2FAB7D21

One white and brown colored, Boer type goat named, "Cedar." Having a purple colored ear tag marked Shasta District Fair "**SDF 367**" and a yellow colored breeder ID Tag marked "**CALOZA0700**"

And if you find the same or any part thereof, to hold such property in your possession under California Penal Code § 1536 or, in the alternative, to institute Federal or State asset forfeiture proceedings against any and all assets seized during the execution of this search warrant and believed to be derived from narcotics trafficking activity.

It is further ordered that upon adjudication of the case(s) against all defendant(s) in this action, including the resolution of any and all appeals, and the written concurrence of the Shasta County District Attorney's Office, the property be disposed of in accordance with the procedures set forth in California Penal Code § 1407-1422, without the necessity of a further Court Order issued pursuant to California Penal Code § 1536.

This **Search Warrant** and incorporated **Affidavit** were sworn to as true and subscribed before me.

Wherefore, I find probable cause for the issuance of this **Search Warrant** and do issue it.

Additionally:

|  |  |  |
|---|---|---|
| **SEALING ORDERED:** | ☒ **No** | ☐ **Yes** |
|  |  | ☐ **Statement of Probable Cause** |
|  |  | ☐ **Confidential Attachment** |
| **NIGHT SEARCH APPROVED:** | ☒ **No** | ☐ **Yes** |

DocuSigned by:

*Monique McKee*

SF22395A75C1414...        (Signature of Magistrate)

Monique Mckee

(Print Name of Magistrate)

**Judge of the Superior Court of the State of California, County of Shasta**

7/8/2022 | 6:33 PM PDT

Date / Time

This Search Warrant, Affidavit, and incorporated Statement of Probable Cause have been reviewed and approved as to form by the Shasta County District Attorney.

Name of District Attorney Approving Warrant

Date and Time Approved

Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

**SEARCH WARRANT AND AFFIDAVIT**

Page 7 of 15

FERN000021

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21

# STATE OF CALIFORNIA
# COUNTY OF SHASTA
## (Statement of Probable Cause)

## I.    EDUCATION AND EXPERIENCE OF AFFIANT

**Detective Jeremy Ashbee** of the **Shasta County Sheriff's Office** states that the following facts are true and that there is probable cause to believe, and does believe, that the designated articles, property, information, and/or persons are now in the described locations, including all rooms, buildings, and structures used in connection with the premises and buildings adjoining them, the vehicles, and the persons described in the search warrant:

Your Affiant became a sworn peace officer in December of 2016. Your affiant possesses an Intermediate POST Certificate through the California Peace Officer Standards and Training. Your Affiant has completed 1,553 training hours through the California Peace Officers Standards and Training, which included the Basic POST Police Academy and holds a Bachelor of Arts Degree from Simpson University. Your affiant has also completed the 80-hour Robert Presley Institute of Criminal Investigations (ICI) Investigators Core Course. Your Affiant has been conducting investigations involving burglaries, grand and petty thefts, fraud, identity thefts, stolen vehicles, narcotics, embezzlements, robberies, homicides, rapes, child molestations, felony batteries, traffic collisions and other related crimes for the past five years.

During this time Your Affiant has participated in hundreds of criminal filings and/or arrests of individuals regarding various crimes. Your Affiant has continued to keep current in both required and optional training provided by Peace Officer Standards and Training Organization.

## II.    NARRATIVE OF PROBABLE CAUSE

On Friday, July 8th, 2022, Kathi Muse reported a livestock theft to the Shasta County Sheriff's Office. According to Muse, Brian Dahle purchasing a goat for auction at the Shasta District Fair Livestock Auction for $902, and donated the animal to Muse for the 4H and FFA Community BBQ. The seller of the auctioned goat, Jessica Long, took the goat from the fairgrounds, after the sale was finalized, to prevent the animal from being slaughtered by the new owner.

Long drove the goat to an animal sanctuary (Bleating Hearts Farm and Sanctuary) in Napa, CA, to hide the animal from the new owner. Bleating Hearts Farm created an Instagram post, admitting the goat was in their custody, and asking the Shasta District Fairgrounds to pardon the goat from being slaughtered. In the Instagram post, it states, "Her mother [Jessica Long] has tried everything she possibly could to keep him [the goat] safe had even driven him hours away to find him a new home, knowing there may have been fees involved, but had no idea that it could be a felony." Refer to Attachment "A" Bleating Hearts Farm Instagram post for additional details.

The Shasta District Fairgrounds provided a letter sent to them by Long, in which she admits she intentionally took the goat from the fairgrounds. Refer to Attachment "B" Letter from Long to the Shasta District Fairgrounds for additional details.

**YOU ARE AUTHORIZED TO:** Utilize additional sworn and non-sworn personnel to assist with the service of this search warrant and the collection of evidence.

**YOU ARE AUTHORIZED TO:** Utilize breaching equipment to force open doorway(s), entry doors, exit doors, and locked containers during the service of this search warrant.

**YOU ARE AUTHORIZED** to photograph and/or videotape each and every location, vehicle, item or person authorized to be searched or seized pursuant to this warrant

DocuSign Envelope ID: C6741AE2-FC13-4609-B586-98FB2FAB7D21

**YOU ARE FURTHER AUTHORIZED TO:**

Use person(s) who are not peace officers to accompany the Peace Officers during the execution of this search warrant for the purpose of assisting in the service of this search warrant as provided for under California Penal Code Section 1530.

**AND TO SEIZE THE DESCRIBED ITEM(S) OR PROPERTY OR ANY PART THEREOF,** and bring evidence of those items seized forthwith before this Court, or to any other Court in which the offense in respect to which the property or things seized is triable, or retain such property in the custody of the seizing agency, subject to further order of this Court pursuant to Section 1536 of the Penal Code, or as otherwise specifically authorized by this search warrant.

Due to the fact the item(s) to be seized include living animals, Deputies shall secure the property in a humane and appropriate location, and the rightful owner of said property shall be notified of the location of the property. The property may be released to the owner upon seizure.

**III.    EVIDENCE SOUGHT**
One white and brown colored, Boer type goat named, "Cedar." Having a purple colored ear tag marked Shasta District Fair **"SDF 367"** and a yellow colored breeder ID Tag marked **"CALOZA0700"**

**IV.    DESCRIPTION OF LOCATION(S)**
**Bleating Hearts Farm and Sanctuary**
**1142 3rd Avenue,**
**Napa, CA 94558**

The location is a single family residence in a rural residential area. The property has a tan colored residence with a brown composite style roof. The front door and attached garage of the residence face west towards 3rd Ave. The number "**1142**" are posted vertically in bold black colored lettering on a white colored column to the left of the attached garage. There is a "U" shaped pull through driveway in front of the residence. Refer to the below photographs for further information.

The residence, including all rooms, attics, basements, and other parts therein, the surrounding grounds and any garages, sheds, storage rooms, and outbuildings of any kind large enough to accommodate a small goat.

Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 9 of 15

FERN000023

DocuSign Envelope ID: C6741AE2-FC13-4809-B566-98FB2FAB7D21



Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 10 of 15

FERN000024

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21



Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 11 of 15

FERN000025

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-58FB2FAB7D21



## V.    CONCLUDING OPINION

Based on information provided by the Napa County Sheriff's Office, the stolen goat is currently located at the above location. It is my opinion that a search of the above mentioned property will allow deputies to locate and recover the aforementioned stolen property and return that property to its rightful owner. Furthermore, location of the stolen animal, will provided evidence to assist deputies and detectives with the 487A(a) PC investigation.

Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 12 of 15

FERN000026

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21

**ATTACHMENT "A"**



 bleatingheartsfarm • Follow
henrymoodie • Original Audio

 bleatingheartsfarm UPDATE: Senator Brian D;
problem allowing Eliza to keep her goat and v
donate him back to her care. The fairgrounds
pardon him from slaughter and drop charges.
her forgiveness and to please pardon this bat

Shatsa District Fair
PH: 530-378-6789
FX: 530-378-6788
ceo@sdfeventcenter.com

We desperately need the help of our commur
this goat from a baby and fell absolutely in lo'
nor her mother had any idea that entering hir
a terminal auction until it was too late. Her go
senator Brian Dahle @briandahleca. Her moth
everything she possibly could to keep him saf
him hours away to find him a new home, kno'
have been fees involved, but had no idea that
felony.

We are asking for Shasta District Fairgrounds '
their heart to forgive this family for trying to k
give him a better life, and show their daughte
in the world, that love will prevail. This little gi
best for him.

Her goat is now back on the way to the fairgr
fairgrounds he will be slaughtered as fast as p
in their possession. Please find it in your heart
goat. Please help be the change to allow for li
wants him to go into fire prevention for our b
him live out his 15+ years. Please.

  

**268 likes**
JUNE 07

 Add a comment..

Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 13 of 15

FERN000027

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21

## ATTACHMENT "B"

**Requesting solutions for the goat that was taken**
Jessica Daum
Mon 6/27/2022 5:41 PM
To:

- ceo sdfeventcenter.com <ceo@sdfeventcenter.com>

Dear Shasta County Fair Manager,

I am the mom who took my daughter's goat from the fairgrounds and wanted to explain myself and look for solutions with you. If we can't come up with any other solution, I will bring the goat back for slaughter.

My daughter is 9-year-old and like most little girls she wants a horse someday. We hope to have land in the near future and hope that she gets a chance to have a horse. We joined 4-H for the opportunity for her to learn how to care for livestock, as well as it changed a great opportunity for her to learn about where her food comes from and the effort it takes to raise quality meat products. Our 4-H leader said that we could keep the goat on his property since we live in a residential neighborhood and couldn't keep it at ours. Every afternoon since the beginning of April, she fed her goat and walked it, and practiced bracing. At first the goat ran from her and she didn't like her goat. A few months later he was running up to the gate to see her and she was walking him around like a dog.

I wouldn't have signed her up for the project if I thought she'd get attached. I thought the goat was to feed the goat, and that was about it. I didn't know that showmanship was a part of 4-H until she got her goat and started working with it. It was that daily interaction that created a bond that I wasn't expecting from a goat. Being brand new to 4-H we had so much to learn.

A few weeks before fair, I was told by another parent to send my daughter off to ride rides after the sale because all the goats and lambs are put into one area before loading and start fighting because they aren't used to each other. This didn't sit right with me, and felt like I would be deceiving my child. The point of our 4-H experience was for her to participate and learn how to care for livestock, not hide her from ugly parts. On the last day of fair two of my forty-year-old friends retold their experiences of doing a pig one year each at fair. They both said that it changed fair for them and they had sad memories. The theme of fair this year was Sunshine and Smiles, but there were a lot of broken hearts and tears all over the fair barns.

A few weeks ago, when I learned that the goats are taken from their pens and loaded in a way that is upsetting for the animals and the people watching, I started looking for another solution. We don't own land so couldn't keep the goat. I started asking people if I could give the goat to them so we didn't have to see it for slaughter.

I wasn't able to find a solution until the second day of fair. I had heard back from someone that I had emailed a few days prior. It was a farm to donate my daughter's goat to where he would clear land for fire prevention. The farmer has contracts with CalFire, elementary schools, and other important agencies. This resonated strongly with us as a beautiful solution since we moved here shortly before the Carr Fire and almost lost our home to it. I asked people if we could leave fair and donate him to help support farmers that do brush clearing. They said it was too late since we were already at fair. I spent the next several days pouring over the fair rules looking for a way out. I couldn't find anything in the rules that said how to quit once we were at the fairgrounds.

The last night of fair at 8 pm, it was time to say her final goodbyes. My daughter sobbed in her pen with her goat. It was heart breaking. Like my friends who had only done a market animal once, I knew that this was our last time doing a market animal. The barn was mostly empty and at the last minute I decided to break the rules and take the goat that night and deal with the consequences later. I knew when I took it that my next steps were to make it right with the buyer and the fairgrounds.

I have communicated with the buyer, Senator Brian Dahle's office. They bought the goat to support the community and are okay with the alternative solution of the goat getting to be donated to a farm that does weed abatement. They said they were told that it's up to the fair, who has said that it has to be brought back and slaughtered.

Our daughter lost three grandparents within the last year and our family has had so much heartbreak and sadness that I couldn't bear the thought of the following weeks of sadness after the slaughter of her first livestock animal. Please help find a solution that is a happy ending for my daughter and for our community.

I can understand that you have to pursue this situation in a way that discourages others from doing what I did. But, please also think of what positive changes can be made for the kids. The 4-H pledge says to lead with your head and your heart. Our head and hearts told us that our animal would be important and beneficial to use the animal for fire clearing. We didn't join 4-H to make money, and we didn't take him for any monetary reasons. We just want to give him to a farm that does fire clearing and to make things right with the fair.

I will pay you back for the goat and any other expenses I caused. I would like to ask for your support in finding a solution. I have been inspired to start a goat program where kids can raise goats and donate them to farmers who run fire clearing teams. So many kids were disappointed at fair when their goats didn't make weight, and some enjoyed raising the goats, but were upset that this is a terminal fair.

I didn't fully understand that there are terminal and non-terminal fairs and that at some fairs kids have to kill the goat that they just spent 3 months or more working with and training daily, while at there are other solutions at a non-terminal fair. I am so thankful for meat and farmers, but I am also inspired to help our youth support farmers who do fire clearing for our communities. I hope that Shasta County District Fair will make changes to let our kids have a non-terminal options.

Form Approved for Optional Use
Shasta County Superior Court

CF-0060 [September 5, 2019]

SEARCH WARRANT AND AFFIDAVIT

Page 14 of 15

FERN000028

DocuSign Envelope ID: C6741AE2-FC13-4809-B586-98FB2FAB7D21

support solutions in clearing land to prevent fires.

If the only solution is to return the goat for slaughter and bbq meat, then I will return it so that I am not charged with a felony. I hope that I will gain your support to donate our goat to a fire clearing team and to provide another valuable farming solution for our kids that care for livestock.

Thank you so much again for supporting our 4-H kids and our farmers. Thank you for considering helping me find a solution to prevent my daughter's broken heart, a way to support fire management efforts, and to give other kids other options.

Sincerely,

Jessica Long
Mother of Eliza Long,
Shasta District Fair goat lot #132

Form Approved for Optional Use
Shasta County Superior Court

**SEARCH WARRANT AND AFFIDAVIT**

Page 15 of 15

CF-0060 [September 5, 2019]

FERN000029

# ALL GENERAL LIVESTOCK RULES & GUIDELINES

*Please Consult Local Rules (Dates and times subject to change due to COVID)*

## ENTRY INFORMATION

ALL LIVESTOCK ENTRIES ARE DUE BY MAY 20, 2022: ALL ENTRIES WILL BE ONLY ACCEPTED ONLINE. We will have several computers to do entries on in the office starting April 1st.   All livestock (including rabbits) entry forms must be accompanied by an online signed Exhibitor Liability Waiver. All market animal will need a Certificate of Animal Medication when their animal is weighed at the fair.

OPEN DIVISION ANIMAL LIMITS: All livestock Exhibitors in the Open Division will be limited to exhibiting not more than two (2) breeds in each Division. Sheep will be limited to sixteen (16) animals in Registered Classes. Dairy Goats will be limited to fourteen (14) entries per Division and no more than two (2) entries per class.

JUNIOR LIVESTOCK LIMITS: Junior livestock Exhibitors are limited to one (1) market animal per Exhibitor, and are allowed to bring only one (1) market animal onto the Fairgrounds (this includes Large Animal and Small Animal) also limited to two (2) breeds of fourteen (14) animals in Registered Classes of Sheep. Goats will be limited to fourteen (14) entries per Division and no more than two (2) entries per class. The Fair has the ability to consider combining age classes within 4-H and FFA when there are not adequate entries to provide ample competition.

****Beginning January 1, 2021, the Fairs and Exposition Branch (F&E) will require all California Fairs (County, Citrus & District Agricultural Associations) junior livestock (large and small animal) exhibitors to annually participate in the Youth for the Quality Care of Animals (YQCA) program or a quality assurance program established by their local fair and approved by CDFA. For more information on the YQCA program, please visit www.yqca.org.
Junior Livestock Exhibitors must complete course to participate in the 2022 Shasta District Fair. Certificate must be turned in with entries by May 20, 2022. You can complete the class online or attend a live training (TBA).

ENTRY REFUNDS: No refund of entry fees will be made except for accidental injury or sickness of animals. Refunds will be made only after a Veterinarian's Certificate is submitted proving such injury or sickness.

## STATE RULES: 
All Local & State Rules, Health Rules, and Score Cards for Judging, as prescribed by the Division of Fairs and Expositions, available online at www.cdfa.ca.gov/fe/Fair_Information/State_Rules_for_California_Fairs.asp, apply to all entries of this Fair. State Rules are available for viewing in the Fairgrounds Main Office and Livestock Office.

EXTENDED DIVISIONS: Shall be limited to the State of California except the extended divisions in the Horse Show, which are open to the World.

## LIVESTOCK GENERAL RULES & REGULATIONS

LIVESTOCK OFFICE HOURS: The Livestock Office will open June 18, 2022; from 9 AM to 5 PM. Starting June 21, 2022 the hours will be 7 AM-7 PM through the end of Fair.

LIVESTOCK ARRIVALS: Non-Market Livestock will be accepted on the grounds on Monday, June 20, 7 AM to 8 PM and Tuesday, June 21, 6 AM to 8 PM. Market Animals will arrive per specie and be weighed off of the trailer. See Livestock Schedule for species and times.

BEDDING: Shasta District Fair will NOT provide any bedding. Exhibitors must provide their own bedding. See livestock office for bedding requirements. Straw shall be for breeding animals only. Please notify the Livestock Office prior to fair if you intend to use straw for the safety of market animals that may be near your pens.

CLEAN PENS & STALLS: All pens and stalls must be cleaned before 8:00 AM each day and maintained in a clean condition to the satisfaction of the Fair Management in order to be eligible for awards. This rule will be strictly enforced. Clean barn duties are the responsibility of the Junior Livestock Exhibitor, not the parents, leaders, etc. Violators will be excluded from consideration in Clean Stall Awards. Clean Stall Awards will be judged randomly throughout the day.

REGISTRATION PAPERS: Registration papers on all registered livestock must be checked in the Livestock Office before 7 PM, Tuesday, June 21, 2022.

MUZZLES: Muzzles will not be allowed on animals during their stay at the Fair.

***REMINDER*** Must pre-enter in showmanship to participate except Jr. Market Swine exhibitors. Swine judge will pick exhibitors during market class to come back for showmanship

Exhibitor Guidebook & Entry Forms Now available on-line
### www.shastadistrictfairandeventcenter.com

# ALL GENERAL LIVESTOCK RULES & GUIDELINES
*Please Consult Local Rules (Dates and times subject to change due to COVID)*

All entries in Showmanship **MUST** be entered by the exhibit deadline; exhibitors CANNOT enter the day of the show. Exhibitors shall be on hand and ready to exhibit at the time called for judging. A Novice is an exhibitor that has never competed in any showmanship class, whether large or small livestock, in Fair competition. An exhibiter will no longer be eligible for any novice showmanship class in subsequent years. Date of birth for Grange and Independent Exhibitors MUST be on the entry form.

## AUCTION GUIDELINES – THIS IS A TERMINAL SALE - Date: Saturday, June 25, 2022, 8AM
The sale will begin promptly at 8:00 AM with the sale of Market Acceptable lots.  We will rotate the market animals periodically as we sell them.  The champions will sell at 10:00 AM.  Breakfast will be available for purchase starting at 6:30 AM while supplies last.  Lunch will be provided to all registered buyers from 11:30 AM - 1:00 PM.  After the sale of champions, we will continue selling our Market Ready animals in a similar rotation as the morning.

**Sale checks will be written when sufficient funds are collected from the buyers.**

SALE QUALIFICATIONS: The Shasta District Fair Junior Livestock Auction and Market Classes are open ONLY to those 4-H, FFA, Grange and Independent Exhibitors that reside in the valley are of Shasta County or have Cottonwood, Manton or Platina address (zip codes 96022, 96059, 96076) who meet the minimum age requirements and those who graduated from high school in 2022. Each Junior Exhibitor, who meets the above qualifications, will be allowed to enter and sell one (1) market animal. Exhibitors who have entered a market animal at any other District or County Fair in a calendar year are not eligible to sell at the Shasta District Fair in the same calendar year.

STEER/REPLACEMENT FEMALE EXHIBITORS: NEW FOR 2022, steers will need to be completely halter broke at weigh-ins. Any steer that is not able to be led on the scale by the exhibitor will not be tagged and not eligible for the 2022 Junior Livestock Show and Sale.

ANIMAL ELIGIBILITY: Only animals entered and shown in the market classes may be sold at the Auction. Only Market Steers, Market Lambs, Market Goats, and Market Swine grading Market Ready will be eligible to sell. Only Replacement Heifers grading group 1 or 2 will be eligible to sell. Only the rabbit meat pens that meet Market Ready will be eligible to sell. All Champion and Reserve Champion animals, who's Exhibitors qualify under the above qualification rule, MUST sell at the Auction on Saturday, June 26, 2021.

LIVESTOCK OWNERSHIP: Junior Exhibitors <u>MUST</u> prove ownership of animals to be able to exhibit in the Junior Livestock Department. Lease agreements are acceptable in Horse Department Only. All breeding animals must be owned at least 30 days. All horses must be owned or leased at least 120 days. Proof of lease or ownership for horses must be on file with the 4-H office. *All beef animals must be owned by the exhibitor by tagging day or 120 days prior to fair whichever date comes first.*

OWNERSHIP & MANDATORY TAGGING DATES:
All Junior Livestock Animals must be owned and under the control and supervision of the Exhibitor by the below listed dates. (This means someone else in a location other than your home area is not feeding, breaking to lead, and caring for the Exhibitor's animal.) All Exhibitors and animals must be present at tagging day. **Heifers do not need to come to tagging day** however fairgrounds must have received a copy of ownership papers & picture of heifer by February 21, 2021.

| Type | Ownership Date | Tagging Date | Tagging Time | Location |
|------|----------------|--------------|--------------|----------|
| Steers | Feb. 20, 2022 | Feb. 20, 2022 | 9:00AM - 11:00AM | Shasta Livestock |
| Steers | Feb. 20, 2022 | Feb. 20, 2022 | 1:00PM - 3:00PM | Shasta College Farm |
| Heifers | Feb. 20, 2022 | N/A | N/A | N/A |
| Swine | April 20, 2022 | N/A | N/A | N/A |
| Lambs | April 20, 2022 | N/A | N/A | N/A |
| Meat Goats | April 20, 2022 | N/A | N/A | N/A |
| Rabbit Meat Pens | May 20, 2022 | N/A | N/A | N/A |

LIVESTOCK WEIGH-IN: Fair weights for Market Animals for the 2022 Shasta District Fair are as follows: <u>All Junior Market Animal Exhibitors MUST take their own animals across the scales.  No one else will take these animals to the scales for</u>

Exhibitor Guidebook & Entry Forms Now available on-line
www.shastadistrictfairandeventcenter.com

# ALL GENERAL LIVESTOCK RULES & GUIDELINES

## *Please Consult Local Rules (Dates and times subject to change due to COVID)*

the Junior Exhibitor without prior permission from the Fair. After all market animals are weighed, each species weight classes will be made-up and will be posted as soon as convenient. The animals will be weighed at the designated times ONLY. There will be no Swine weighed after the beginning of Beef weighing and no Beef weighed after the beginning of Sheep weighing, no Sheep after the beginning of the Goat weighing. If any animal does not make weight, it will be removed from the scale, the scales will be re-balanced, and the animal immediately re-weighed. The second weight will be final. Heifers will be sold by the head and Chickens and Rabbits will be sold by the pen not by the pound.

| SPECIES | Min.Wt. | Max.Wt. | Time | Date |
|---|---|---|---|---|
| Swine | 220# | 285# | 8:00AM | TBD |
| Beef | 1,050# | 1,450# | following Swine | TBD |
| Sheep | 115# | 160# | following Beef | TBD |
| Meat Goat | 65# | 110# | following Sheep | TBD |
| Rabbit Meat Pens | 3.5# ea | 5# ea | 8:00 AM | TBD |

Exhibitors are only allowed to bring one market animal across the scales. All decisions regarding backups must be made before the animal arrives at the Fairgrounds.
WEIGHT SIFTED ANIMALS: Animals that do not meet weight requirements of their class will be required to leave the Fairgrounds after weigh-ins.

LIVESTOCK OWNERSHIP PAPERS: The Bill of Sale, Brand Inspection or Out-billing from a Sales Yard MUST be made out to the Junior Exhibitor, showing at least a 120-day ownership for Steers/Heifers and 60-day ownership for Sheep, goats and Swine or a signed statement that the animal was born from the Exhibitor's breeding project and was raised by the Exhibitor. Exhibitors must be able to show proof of ownership at any time should the question arise.

EAR TAGS: All Steers belonging to FFA, 4-H, Grange and Independent Exhibitors MUST come to the Fairground with an official Shasta District Fair Tag in their ear that is identified to the Exhibitor. Replacement heifers will be tagged Tuesday, June 21, 2022 at Vet Check at the fairgrounds, after market animals are finished at the scales. Sheep, Goats and Swine will be tagged prior to fair. Advisors and Leaders will be given tags from the fair to tag animals. Independent Exhibitors will need to contact the Shasta District Fair office to obtain tags.

MARKET ANIMALS SIFTED BY THE JUDGE: Market animals sifted in the judging arena may remain on the grounds if they are to be shown in showmanship. They must be removed no later than 8PM.

SELLING FEES: 7.0% of the sale price will be deducted from Seller's check to defray auction costs and the establishment of a Contingency Fund. A National Pork Board check-off fee of .004% of the value of each Swine marketed in the Junior Livestock Sale will be deducted from the check of the Swine Exhibitor/Seller. A Sheep check off fee of .007% of the value of each Sheep marketed in the Jr. Livestock Sale will be deducted from the check of the Sheep Exhibitors. $3.25 will be deducted from all Steer checks for brand inspection and beef promotion. *NO SHOW PREMIUMS WILL BE PAID ON MARKET ANIMALS.*

IMPORTANT: *All 4-H, FFA, Grange and Independent Exhibitors MUST be ready with animal and in the line as listed on Sales Order when called for the Junior Livestock Auction. If exhibitor is not ready, dressed in uniform & in line they will not be allowed to sell.*

ALL ANIMALS (Steers - Replacement Heifers - Swine - Lambs - Meat Goats – Rabbit Meat Pens) ENTERED IN MARKET CLASSES & QUALIFYING FOR THE JUNIOR LIVESTOCK AUCTION **MUST BE SOLD** as listed on the Sale Order. There will be no set prices (or STOPS) and no "NO-SALES" at any time during the Sale.

ALL ANIMALS sold in the Shasta Junior Livestock Auction sale MUST go to processing, directly from the Fairgrounds and will be transported on the trucks provided by the Fair on Saturday, June 25, 2022. No Junior Exhibitors will be allowed in barns while the animals are loading, failure to leave the barn when asked may result in the loss of premiums.

ALL REPLACEMENT HEIFERS will be released to the new owners at 5:00 pm on Saturday, June 25, 2022.

RABBIT MEAT PEN: The disposition of the Rabbit Pens will be at the discretion of the Buyer. The Market Ready meat pens will sell at the Junior Livestock Auction.

"FOR SALE": "For Sale" Signs are NOT allowed to be posted in any area of the Fairgrounds, including the Livestock and Horse Departments, until AFTER the Junior Livestock Auction, on Saturday, June 25, 2022.

Exhibitor Guidebook & Entry Forms Now available on-line
## www.shastadistrictfairandeventcenter.com

# ALL GENERAL LIVESTOCK RULES & GUIDELINES
*Please Consult Local Rules (Dates and times subject to change due to COVID)*

## ANIMAL HEALTH AND SAFETY

**WATER:** A visible source of water must be in every pen that contains livestock until Sunday, June 26, 2022, 8:00 AM. Failure to comply will result in the loss of premiums and/or sale proceeds.

**VETERINARIAN:** A Veterinarian will be on call or present at the Fairgrounds at all times. If you need vet services or wish to ask questions, contact the Livestock Supervisor. Any professional fees or medical expenses will be billed to the Exhibitor.

**SHEEP & GOAT HEALTH RULES:** In accordance with the State rules, the following rules regarding Sheep and Goats will be in affect:

1. All Sheep and Goats entering Fairs require individual identification. All official identification will be kept on the animals. The official identification may be official USDA individual identification ear tags, premises ear tags, Scrapie Flock Certification Program ear tags, registration tattoos if accompanied by registration papers, or other methods approved by the California Department of Food & Agriculture.

2. All Sheep & Goats from out of state require official individual identification, a certificate of veterinary inspection and a California entry permit.

3. Fairs will not accept Sheep & Goats from scrapie non-compliant flocks, or animals that are scrapie positive or scrapie suspects.

4. Fairs will not accept Sheep & Goats from scrapie-infected or source flocks, or animals that have been exposed to scrapie unless they have been evaluated and approved for exhibition by the State Scrapie Epidemiologist.

5. Fairs will keep records of the consignor, buyer, and animal identification for 5 years when animals change ownership at the Fair.

6. Fairs will try to accommodate Scrapie Flock Certification Program Members with separate space if practical. Breeding animals should be housed in separate enclosures or locations from animals that are not in the certifications program, if practical.

7. Sheep or Goats within 30 days of pre- or post-parturition, or with vaginal discharge, shall if practical, be kept separate from animals from different flocks and in an area that can be properly cleaned and disinfected.

8. Rams/Bucks older than 6 months require a negative Brucella Ovis test within 30 days of entry into California.

In an effort to prevent the spread of disease, Shasta District Fair will not allow Sheep or Goats within 30 days of pre- or post-parturition, or with vaginal discharge from entering in the Fair.

**SLICK SHORN:** All market Sheep will be clean and slick shorn from the knees up (including head) prior to being weighed. Sheep with excessive wool will not be weighed until shorn to the satisfaction of Show Management. Any sheep not meeting these requirements will not be eligible to show or sell.

**SHEEP TAIL DOCK:** To qualify for exhibit market Sheep must be docked such that the tail (dock) is healed and can be lifted from the exterior. Sheep that have no dock will not be eligible. Acceptable tail dock is determined by placing a ¼" round stock (like a pencil) beneath the Sheep's dock. When pressure is applied and the tail lifted up, some resistance should be felt due to the presence of tailbone (vertebrae). All Sheep will be checked prior to weighing by Fair designated veterinarian. Animals that do not meet this test will be sifted by the Fair designated veterinarian. All decisions are final.

**SURVEILLANCE OF SHEEP:** All Sheep will be checked during the weigh in process by a Veterinarian for any evidence of Club Lamb Fungus and Heavy Muscled (Callipyge) Mutation. These Sheep have no ready market value and are deemed undesirable; therefore, they must be removed immediately from the Fairgrounds. If any discrepancies arise on the Club Lamb Fungus and the Callipyge Mutation Lamb, a Fair designated veterinarian's decision will be final. All sheep and goats will be checked for yearling teeth.

**MUZZLES:** All animal muzzles are prohibited at the Fair. Muzzles are unnecessary for animal well-being.

## FAIRGROUND AND BARN REGULATIONS

**UNLOADING ANIMALS:** Livestock (other than Horses) will be permitted to enter Fairgrounds through Gate No. 3. Immediately after unloading, trucks and trailers will be removed from the grounds to the Northwest corner outside the Fairgrounds. Trailers are not allowed to park in the West Parking Lot (Lot #2) by gates 3 & 4. Trailer parking is in the North Parking Lot (Lot #4).

Exhibitor Guidebook & Entry Forms Now available on-line
www.shastadistrictfairandeventcenter.com
52                    revised 1/13/22 FERN000033

# ALL GENERAL LIVESTOCK RULES & GUIDELINES

*Please Consult Local Rules (Dates and times subject to change due to COVID)*

**STABLING:** *All livestock must be stabled according to the space allocated by the Livestock Superintendent. Changing of livestock from one stall to another positively will not be permitted.* All animals, feed and equipment must be housed in the barn within their pen area. Barn curfew Wednesday - Saturday is 10 PM. All Exhibitors and patrons must be out of barn area at that time. Barn Curfews will be strictly enforced. No sleeping/camping will be allowed in the barn area.

**ELECTRICAL EQUIPMENT:** There will be NO electric cords or electric fans plugged in the Fair electrical lines unless first approved by the State Fire Marshal or the Fair Electrician. Extension cords used to distribute power to each electrical apparatus shall be rated 15 AMPS minimum and contain ground wire. Cords not meeting these requirements shall be confiscated for the duration of the Fair. ALSO, all fans must be approved UL devices. We will be checking these by order of the OFFICE OF THE STATE FIRE MARSHAL.

**LIVESTOCK RELEASE:** Conditions permitting, the livestock barns will release in the following schedule on June 26, 2022
- Barn A - Jr. Breeding Beef on Sunday at 8:00 AM until 12 NOON.
- Barn C - Breeding Sheep on Sunday at 8:00 AM until 12 NOON.
- Barn D - all tack items may be carried out starting on Sunday at 8:00 AM until 12 NOON.
- Barn E - Jr./Sr. Goats/Cattle starting on Sunday at 8:00 AM until 12 NOON.

**Please note:** Fair Management may deem it necessary to alter the schedule.
All animals will be released by 12:00 NOON.

All weight sifted animals must be removed from the grounds immediately after weigh-in. Livestock release papers may be obtained in the livestock office. Market animals sifted in the judging arena may remain on the grounds if they are to be shown in showmanship. They must be removed no later than 8pm after participating in showmanship. NO SICK animals will be released unless a Veterinarian's Certificate & an approved Livestock Release Slip have been obtained in advance. Any animal removed from the grounds prior to release times, without permission and proper release forms will forfeit all premiums and awards.

**DECORATIONS, SUPPLIES, ANIMALS AND EDUCATIONAL DISPLAYS:** May NOT be taken down or removed from the grounds prior to Sunday, June 26, 2022 according to the release times shown above (Premiums will be forfeited if any are removed early). Items left behind are left at your own risk.

**FEED DELIVERY:** No vehicles will be allowed on the Fairgrounds for daily feed delivery, unless authorized by management. The Fair has designated a 20-minute unloading area at Gate 3 for the convenience of Exhibitors. This zone is for unloading of feed, kids, etc. The 20-minute time limit will be strictly enforced. Vehicles left longer than 20 minutes will be ticketed by the City of Anderson Police. Appropriate livestock parking pass must be displayed on the windshield of the vehicle at ALL times. ANY VEHICLE PARKED IN ANY LOT WITHOUT PASS VISIBLE WILL BE TOWED AWAY AT THE OWNER'S EXPENSE.

**LARGE TRUCK & TRAILER PARKING:** All trucks (larger than pick-ups) and trailers will be parked at the Northwest end of the North Parking lot (Lot #4) in the designated area. PLEASE DO NOT park trucks anywhere other than in the designated area. NO stock trailers or trailers of any sort will be allowed in the West Parking Lot (Lot #2) by gates 3 & 4 after Tuesday, June 21, 2022 at 5 PM. If a trailer is found in the parking lot after that time it will towed at owners' expense.

## ETHICS, COURTESY & PUBLIC SAFETY

**'CODE OF ETHICS':** Under no conditions may any Exhibitor use drugs or any artificial means to stimulate an animal so that it may be shown to a better advantage. This shall include, but not be limited to, injections, forced liquid intake, or any unethical or inhumane treatment of animals. Violators and/or animals in violation of any of the General Rules above will be required to leave the Fairgrounds immediately upon notice.

**APPROPRIATE BEHAVIOR:** All Exhibitors, leaders, volunteers, and parents participating in the Fair, must act appropriately while in the barn area. Exhibitors are expected to always act appropriately while on the grounds. A physical altercation involving an Exhibitor may result in the Exhibitor being disqualified and all premiums and sales proceeds forfeited.

**ANIMAL GROOMING:** Parents, teachers, advisors, other adults, or individuals not exhibiting in the Shasta District Fair Junior Livestock show may not provide any physical assistance in fitting; grooming and/or showing of market animals whatsoever (see state rules). Assistance may come from junior Exhibitor entered in the Fair ONLY. An advisor, leader, or parent may hold animals while an Exhibitor works, for safety reasons only. This rule applies to all FFA, 4-H and Independent Exhibitors.

Exhibitor Guidebook & Entry Forms Now available on-line
## www.shastadistrictfairandeventcenter.com

53

# ALL GENERAL LIVESTOCK RULES & GUIDELINES
### *Please Consult Local Rules (Dates and times subject to change due to COVID)*

NO change of the major color pattern of the animal by painting or dyeing will be allowed. Any grooming material that allows color to come off of any animal will not be allowed. Club members may share in feeding of animals and the cleaning and maintaining of pens.

**EXHIBITOR AND PUBLIC SAFETY:** Any livestock exhibit (including horses) that cannot be handled by the Exhibitor while on the Fairgrounds will be removed from the Fairgrounds, disqualified and all premiums will be forfeited.
**RULE COMPLIANCE:** Any Exhibitor, who fails to conform to accepted standards of conduct, will be removed immediately (with livestock) from the Fairgrounds and all premiums and auction proceeds forfeited, if the situation is of a serious nature.

**AWARDS:** All Exhibitors will be required to provide an appropriate Thank You note prior to receiving their award. The Thank You note must be in an <u>unsealed, addressed</u> envelope with appropriate postage affixed. Every award has the sponsor information attached to it. All awards and premiums will be held until the thank you is received.

## RV RULES AND GUIDELINES

Senior Livestock Exhibitors desiring to remain on the Fairgrounds at night must complete a RV parking application Form. RV parking will be limited to Senior Livestock Exhibitors living outside a 50-mile radius from the Fairgrounds. Please review all RV rules and limitations listed on the application form.

**RV FEES:** A fee of $180.00 per space will be charged for all RV trailer units (Tuesday - Sunday). RV space is available starting Sunday prior to and following Fair at $30.00/night. All fees are to be paid in advance. A permit will be issued and a space assigned. No camp units will be allowed in camping area without a permit. No tent units or sleeping bag only units will be allowed.

**CAMPGROUND CURFEW:** The campground curfew is midnight, and this curfew will be strictly enforced. Exhibitors must be in their beds by midnight. No disturbances will be tolerated. There will be NO drinking and/or loud parties. <u>No alcoholic beverages may be brought on the grounds - for camp area or other area. Anyone with alcoholic beverages of any kind will be asked to leave the grounds and not allowed to return.</u> Violators of these rules will be removed from the campgrounds and their premiums may be withheld.

**CAMPER RELEASE:** All camp units - trailers, pick-up campers, etc., MUST remain on the Fairgrounds in their camp space until the time livestock is released by the Fair Management. There will be NO EXCEPTIONS.

## GENERAL LIVESTOCK PASS & PARKING POLICIES

The following credential policy will be used during the 2022 Shasta District Fair. This credential policy is for the Livestock Exhibitor's convenience and is a courtesy of the Shasta District Fair Board of Directors. The Fair has the final decision of who will or will not receive passes. Please do not abuse this policy.

If any Exhibitor loses their wristband, there will be a $25 fee to replace it. Without the credentials Exhibitor must pay full admission price to get in the gate.

**JUNIOR EXHIBITORS:** Junior Livestock Exhibitors will be issued 1 wristband. The wristband will serve as your pass into the Fair. Market animal Exhibitors will receive their wristband when their animal is weighed, Tuesday, June 21, 2022. Parking credentials and other tickets may be purchased at the main office, please bring your 2022 Livestock Parent Pass Request Form with you.

**SENIOR EXHIBITORS:** Senior Livestock Exhibitors will be issued a wristband. The wristband will serve as your pass into the Fair. Senior Exhibitors may pick up their wristband in the livestock office. One (1) additional wristband may be purchased for the livestock handler for $19.00 and one parking pass can be purchased in the main office, please bring your 2022 Senior Livestock Pass Request Form with you.

**PARENT COURTESY TICKETS:** May be purchased by parents (only) of Junior Livestock Exhibitors at a reduced rate of $19.00 each, parents are limited to two (2) books of 4 admission credentials per family. Parent Credentials must be pre-ordered and on the parent pass form and can be purchased at the main office through June 17, 2022, please bring your Livestock Parent Pass Request Form. Be sure to get your hand stamped for re-entry if you leave the grounds for any reason.

**Exhibitor Guidebook & Entry Forms Now available on-line**
**www.shastadistrictfairandeventcenter.com**

revised 1/13/22 RN000035

# ALL GENERAL LIVESTOCK RULES & GUIDELINES
*Please Consult Local Rules (Dates and times subject to change due to COVID)*

**4-H LEADERS**: The 4-H Office will be allocated Fair passes to be distributed to Community & Project Leaders actively involved in the Fair. No passes for 4-H Leaders will be distributed from the Fair Office.

**PARKING**: No parking passes will be provided to livestock exhibitors. Senior and Junior Livestock exhibitors may purchase up to two (2) Parking Passes for $18.00 Each. These passes are only valid in Lots 2, 3 & 4. Parking passes must be pre-ordered on the Livestock Parent Pass Request and can be purchased at the main office through June 17, 2022, please bring your form.

## JUNIOR LIVESTOCK
## ELIGIBILITY REQUIREMENTS

<u>FFA MEMBERS</u>: FFA members may participate in breeding classes and may exhibit to the end of the calendar year following the year of graduation from high school.

All Future Farmers of America Exhibitors of livestock must wear the official uniform of their organization while showing their animals. The official FFA show uniform to be worn by all FFA Exhibitors and by helpers in individual and chapter groups while showing at Fairs and livestock shows shall consist of white trousers, white dress shirt (short or long sleeves) with the FFA emblem attached to the left pocket and the official FFA four-in-hand necktie. The official FFA jacket is optional; if worn, the shirt emblem is not required. Hats or headgear of any kind shall not be worn with the official show uniform while showing. If the Exhibitor does not have the official jacket on due to heat, the shirt worn must have capped sleeves or long sleeves. No tank tops allowed.

<u>4-H MEMBERS</u>: A 4-H member may enroll on his/her fifth birthday. Large breeding animals may be exhibited by a full member at age 9, until the end of the calendar year in which the member becomes age 19. <u>Youth under 9 years of age as of midnight on December 31, 2020 may not enter large animals or participate in auction. Exhibitor must be 9 years old as of December 31, 2020, to sell at auction.</u> See Junior. Livestock Sale eligibility under Sale Qualifications paragraph.
4-H Primary members (ages 5 thru 8) are not allowed to enter or show animals by which their size and/or nature are unsuitable for a young handler. These include: Horses, Beef Cattle, Dairy Cattle, Swine, Sheep, Goats (except Pygmy and Nigerian Dwarf Goats) of all classes. Upon conclusion of judging of each species, primary Exhibitors are allowed to participate in a discussion type setting with the judge. Primary Exhibitors are not judged but do receive a participation ribbon. Primary Exhibitors may only enter in primary classes. All other membership and project requirements must also be satisfied prior to showing a 4-H project animal.

4-H Exhibitors of livestock must wear 4-H hat, appropriate color, white/off white slacks or jeans (ankle length, belt should be worn if belt loops available), with white sleeved blouse or white sleeved shirt tucked in with 4-H tie or collar (girls) while showing and selling their animals. The 4-H uniform must be worn by all 4-H members and helpers. Appropriate footwear must be worn. 4-H Exhibitors must abide by rules set forth by the Shasta County 4-H office to qualify as a 4-H Exhibitor.

<u>INDEPENDENT/GRANGE JUNIOR EXHIBITORS</u>: Independent/Grange Junior Exhibitors may participate in the Junior Still Exhibits Department, ONLY, upon entering kindergarten or age 5 and not older than 18 years of age as of January 1, 2022. In the Livestock Department Independent Exhibitors must be at least 9 years of age and must not be older than 18 years of age on January 1, 2022. Independent/Grange Exhibitors may participate until the summer after completion of High School regardless of age. Independent/Grange Exhibitors must meet all ownership requirements. Independent/Grange Exhibitors must enter in an open Junior or Independent/Grange class unless one is not available. If an open or Independent/Grange class is not available, Junior Exhibitors may enter an appropriate 4-H or FFA Class. Advisor, leader, teacher, or parent/guardian signature on the entry form is required by the Fair to certify that: projects have been under their direct supervision in accordance with the rules and regulations of the organization and the Fair; and the entry is the project of the Exhibitor and is eligible for exhibit. Failure or refusal of such advisor, leader, or parent/guardian to sign the required entry form will prevent the Exhibitor from entering that particular class (es). Juniors who have been 4-H, FFA or Grange project member within 60 days (120 days for horse and market beef) prior to the Fair are not eligible to compete in that project as Independent Juniors. All Independent/Grange Exhibitors must have project management records and proof of supervision available as to the length of the project. Independent/Grange Junior Exhibitors entering market animals must provide Fair management with a picture of their animal, appropriate proof of ownership, permanent ear tag, tattoo and /or Swine ear notch information 120 days prior to the Fair for beef and 60 days for Sheep, goats or Swine. All Independent/Grange Exhibitors must have "on grounds" supervision by a responsible adult. The names of the responsible adult(s) must be on file with the livestock office. All Independent/Grange Exhibitors must participate in barn

Exhibitor Guidebook & Entry Forms Now available on-line
www.shastadistrictfairandeventcenter.com
55                                      revised 1/13/202 FERN000036

# ALL GENERAL LIVESTOCK RULES & GUIDELINES
### *Please Consult Local Rules (Dates and times subject to change due to COVID)*

duty. The show "uniform" for all Independent Exhibitors will be dark black pants and a white button-down shirt with sleeves. The show "uniform" for all Grange Exhibitors will be dark black pants, a white button-down shirt with sleeves and the Grange vest. **Independent & Grange exhibitors Ages 9 – 13 enter in 4-H Classes and Ages 14 - 18 enter in FFA Classes.**

**LIABILITY INSURANCE:** County, District and State Fairs cannot legally carry liability insurance covering Junior Exhibitors and/or their exhibits. Liability insurance is the responsibility and at the discretion of the Junior Exhibitor. The Shasta District Fair highly recommends all livestock Exhibitors carry liability insurance. Liability insurance can be added to a homeowner's policy or can be purchased through the Fairgrounds. Please call the Fairgrounds, 530-378-6789, for more information.

**INSURANCE COVERAGE FOR INDEPENDENT JUNIORS:** Independent Exhibitors shall provide insurance coverage as required by the Fair. Independent Exhibitors must provide the Fair office with a certificate of insurance showing proof of one million dollars ($1,000,000) liability coverage on the animal to be exhibited.

Exhibitor Guidebook & Entry Forms Now available on-line
www.shastadistrictfairandeventcenter.com
56                                          revised 1/13/18
BERN000037



## Sale Invoice
### Shasta District Fair
**JUNE 25, 2022**

Invoice: **132**
Sale Order: **132**

| Sale Order (lot) | Entry # | Tag ID | Division | Division # |
|---|---|---|---|---|
| 132 | 1543 | 367 | 4-H Market Goat | 706 |

**Floor Amount
(Market Value)**

Price: $3.40
Weight: 82
Total: $278.80

Floor this amount:

**Seller Name:**

Exhibitor Name: Eliza Long

*4-H MARKET GOAT*

Sale Weight (units): 82

Price per lb.

**Total Amount of Sale:**

**CUSTOM FEE:**
GOATS and LAMBS - $95.00
HOGS - $78.00
STEERS - $200.00

**BUYER :** _____

### *** NOTE: THIS IS A TERMINAL SALE- NO LIVE PICKUP (except rabbits)***

BUYER # 920  BUYER NAME_____ AMOUN _____

BUYER # 919  BUYER NAME_____ AMOUNT_____

BUYER #_____ BUYER NAME_____ AMOUNT_____

**Please MARK ONE:** _____ Consigned for **RESALE** at market price, bill buyer for difference

DONATE to _____ 4-H & FFA Community BBQ (Kents Meats)

_____ New Rescue Mission

_____ One Safe Place

_____ **PROCESS** & Deliver to selected locker below for cut & wrap

_____ A&R Custom Butcher (530) 527-6483      _____ Country Market**(530) 357-3830

_____ Bowman Meat (530) 347-4463      _____ Kents Meats (530) 365-4322

_____ Clear Creek Market (530) 246-9044   **Country Market accepts only current customer

**I CERTIFY THAN I AM AUTHORIZED TO SIGN FOR THIS PURCHASE AND ACCEPT RESPONSIBILITY FOR TOTAL
PAYMENT DUE AND/OR THE COLLECTION OF THE TOTAL AMOUNT DUE.**

_____   _____   _____   _____
Buyer #      Printed Name              Signature              Date

<u>ACCOUNTABILITY & LIABILITY</u>: Please accept the entries (property) described herein. I certify that I am the owner of the property specified herein or the supervisor of the project with authorization to act as agent and to bind the owners of the property in all matters herein. Online submission of data requires that a person has read, understands and agrees to abide by all the rules and regulations governing the fair entries as published in the official Shasta District Fair Handbook. Under penalty of perjury, I certify that the information provided is true and I agree to defend, indemnify, and hold harmless the fair, the county, and the State of California, its officers, agents and employees from and against any liability, claim, loss or expense (including any reasonable attorney fees) arising out of any injury or damage, which is caused by, arises from or is in any way connected with participation in the program or event, excepting only that caused by the sole active negligence of the Fair. The Fair Management shall not be responsible

To enter online, you must be over 18 years of age or be the parent and/or guardian of the exhibitor if the exhibitor is under age 18, or the 4-H Leader or FFA advisor, with the authorization from the parent and/or guardian of the exhibitor, or authorization from the exhibitor if 18 years of age or older. Please type "Yes" in the box to confirm. By entering "Yes", I am confirming that I am 18 years of age or older, the owner or authorized agent for these exhibits, that I have read, understand and agree to abide by all the rules and regulations governing the Fair entries as published in the official Shasta District Fair Handbook, and that everything submitted is "true and correct". Online entries for 4-H and FFA exhibitors will not be officially accepted until approved by the 4-H leader or FFA advisor.

<u>PHOTOGRAPHY AND NAME RELEASE</u>: By typing "Yes" below, I/we give the Shasta District Fair and anyone acting under the authority or permission thereof, the unqualified right to use my name and/or our company name for publication and/or for distribution of photographs, videotapes and/or recordings made of me and/or my/our company representatives, that may have been taken at past Shasta District Fairs, and/or could be taken at the fair(s) subject to this contract, for any marketing, public relations, publicity and/or other lawful purpose. Further, I waive all right of inspection or approval and irrevocably release Shasta District Fair from claims or demands which I or my company may or can have on account of the use or publication or arising of such photographs or information.

https://www.shastadistrictfairandeventcenter.com/enter-your-stuff

FERN000039



Mom is
Jessica Long-

653 Eliza Long

Address
City
State
Zip Code

Phone
e-mail
Status

SS#
Date of Birth
Age Calculated

School — Cow Creek 4-H
Grade

Notes — Eliza's first year in 4-H
I've read the rules — I agree

Information is true — I agree
Hold Harmless Clau... Parent/Guardian Agrees

FERN000040

**Requesting solutions for the goat that was taken**

Jessica Daum ███████████████

Mon 6/27/2022 5:41 PM

To:

- ceo sdfeventcenter.com <ceo@sdfeventcenter.com>

Dear Shasta County Fair Manager,

I am the mom who took my daughter's goat from the fairgrounds and wanted to explain myself and look for solutions with you. If we can't come up with any other solution, I will bring the goat back for slaughter.

My daughter is 9-year-old and like most little girls she wants a horse someday. We hope to have land in the near future and hope that she gets a chance to have a horse. We joined 4-H for the opportunity for her to learn how to care for livestock, as well as it being a great opportunity for her to learn about where her food comes from and the effort it takes to raise quality meat products. Our 4-H leader said that we could keep the goat on his property since we live in a residential neighborhood and couldn't keep it at ours. Every afternoon since the beginning of April, she fed her goat and walked it, and practiced bracing. At first the goat ran from her and she didn't like her goat. A few months later he was running up to the gate to see her and she was walking him around like a dog.

I wouldn't have signed her up for the project if I thought she'd get attached. I thought the goal was to feed the goat, and that was about it. I didn't know that showmanship was a part of 4-H until she got her goat and started working with it. It was that daily interaction that created a bond that I wasn't expecting from a goat. Being brand new to 4-H we had so much to learn.

A few weeks before fair, I was told by another parent to send my daughter off to ride rides after the sale because all the goats and lambs are put into one area before loading and start fighting because they aren't used to each other. This didn't sit right with me, and felt like I would be deceiving my child. The point of our 4-H experience was for her to participate and learn how to care for livestock, not hide her from ugly parts. On the last day of fair two of my forty-year-old friends retold their experiences of doing a pig one year each at fair. They both said that it changed fair for them and they had sad memories. The theme of fair this year was Sunshine and Smiles, but there were a lot of broken hearts and tears all over the fair barns.

A few weeks ago, when I learned that the goats are taken from their pens and loaded in a way that is upsetting for the animals and the people watching, I started looking for another solution. We don't own land so couldn't keep the goat. I started asking people if I could give the goat to them so we didn't have to sell it for slaughter.

I wasn't able to find a solution until the second day of fair. I had heard back from someone that I had emailed a few days prior. It was a farm to donate my daughter's goat to where he would clear land for fire prevention. The farmer has contracts with CalFire, elementary schools, and other important agencies. This resonated strongly with us as a beautiful solution since we moved here shortly before the Carr Fire and almost lost our home to it. I asked people if we could leave fair and donate him to help support farmers that do brush clearing. They said it was too late since we were already at fair. I spent the next several days pouring over the fair rules looking for a way out. I couldn't find anything in the rules that said how to quit once we were at the fairgrounds.

The last night of fair at 9 pm, it was time to say her final goodbyes. My daughter sobbed in her pen with her goat. It was heart breaking. Like my friends who had only done a market animal once, I knew that this was our last time doing a market animal. The barn was mostly empty and at the last minute I decided to break the rules and take the goat that night and deal with the consequences later. I knew when I took it that my next steps were to make it right with the buyer and the fairgrounds.

I have communicated with the buyer, Senator Brian Dahle's office. They bought the goat to support the community and are okay with the alternative solution of the goat getting to be donated to a farm that does weed abatement. They said they were told that it's up to the fair, who has said that it has to be brought back and slaughtered.

Our daughter lost three grandparents within the last year and our family has had so much heartbreak and sadness that I couldn't bear the thought of the following weeks of sadness after the slaughter of her first livestock animal. Please help find a solution that is a happy ending for my daughter and for our community.

I can understand that you have to pursue this situation in a way that discourages others from doing what I did. But, please also think of what positive changes can be made for the kids. The 4-H pledge says to lead with your head and your heart. Our head and hearts told us that our animal would be important and beneficial to use the animal for fire clearing. We didn't join 4-H to make money, and we didn't take him for any monetary reasons. We just want to give him to a farm that does fire clearing and to make things right with the fair.

I will pay you back for the goat and any other expenses I caused. I would like to ask for your support in finding a solution. I have been inspired to start a goat program where kids can raise goats and donate them to farmers who run fire clearing teams. So many kids were disappointed at fair when their goats didn't make weight, and some enjoyed raising the goats, but were upset that this is a terminal fair.

I didn't fully understand that there are terminal and non-terminal fairs and that at some fairs kids have to kill the goat that they just spent 3 months or more working with and training daily, while at there are other solutions at a non-terminal fair. I am so thankful for meat and farmers, but I am also inspired to help our youth support farmers who do fire clearing for our communities. I hope that Shasta County District Fair will make changes to let our kids have a non-terminal options.

The live stock manager has been in contact with me and is threatening to have me arrested for a felony of stealing livestock unless I return the goat for slaughter immediately. I am asking for your grace, forgiveness, and support in creating another solution and making positive changes for the future to

FERN000041

support solutions in clearing land to prevent fires.

If the only solution is to return the goat for slaughter and bbq meat, then I will return it so that I am not charged with a felony. I hope that I will gain your support to donate our goat to a fire clearing team and to provide another valuable farming solution for our kids that care for livestock.

Thank you so much again for supporting our 4-H kids and our farmers. Thank you for considering helping me find a solution to prevent my daughter's broken heart, a way to support fire management efforts, and to give other kids other options.

Sincerely,

Jessica Long
Mother of Eliza Long,
Shasta District Fair goat lot #132

Get Outlook for iOS

Re: Requesting solutions for the goat that was taken
ceo sdfeventcenter.com
Tue 6/28/2022 1:31 PM
To:

- Jessica Daum < ███████████ >

Bcc:

- Francesconi Mike@CDFA < ███████████ >

Hello Jessica,

Thank you Jessica for taking the time to contact me regarding this issue. As a mother I am not unsympathetic regarding your daughter and her love for her animal. Having said that please understand the fair industry is set up to teach our youth responsibility and for the future generations of ranchers and farmers to learn the process and effort it takes to raise quality meat. Making an exception for you will only teach out youth that they do not have to abide by the rules that are set up for all participants. Also in this era of social media this has been a negative experience for the fairgrounds as this has been all over Facebook and Instagram, not the best way to teach our youth the value of responsibility. Unfortunately this is out of my hands.

I have spoken with the California Department of Food and Agriculture and they have informed me that for the good of all we have to stick to the State Rules. You will need to bring the goat back to the Shasta District Fair immediately. I do hope you will continue with your idea of raising and providing quality animals for the purpose you have spoken about. I support that whole heartly. Obviously the fair experience is not the best for your family.

Thank you,
Melanie M Silva
CEO
**Shasta District Fair & Event Center**
Fair Dates June 22-25, 2022
(530)378-6789 ext 104
www.ShastaDistrictFairandEventCenter.com



Re: Requesting solutions for the goat that was taken

Jessica Daum <█████████████████>

Wed 6/29/2022 9:49 AM

To:

- ceo sdfeventcenter.com <ceo@sdfeventcenter.com>   ·

Please see attached.

Thank you,

Jessica Long

Get Outlook for iOS

FERN000044

Shasta District Fair
1890 Briggs Street
Anderson, CA 96007

---

**June 28, 2022**


*Re: Dispute over Cedar*

Dear Shasta District Fair;

This letter is in further response to my dispute with your organization concerning my daughter's goat, Cedar. My daughter's name is Eliza Long.

On June 27, 2022, I sent an email asking that your organization withdraw its demand for the return of Cedar and offering to pay for any costs or damages you have incurred as a result of this dispute. This morning, however, I received another text message from BJ McFarlane which seemingly ignored my letter and simply demanded return of my daughter's goat.

I've had time to review the documents that BJ McFarlane sent me, and I believe your organization is not within its rights to demand return of Cedar.

While you threatened to alert the authorities I had violated California Penal Code § 487a, upon examination, I have done no such thing. That statute makes it a crime to "feloniously steal[], take[], carr[y], lead[], or drive[] away…any caprine animal…,

[1] which is the personal property of another, or [2] who fraudulently appropriates that same property which has been entrusted to him or her, or [3] who knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of that same property...is guilty of grand theft." (*Id.*) I cannot possibly have done any of those things because Cedar was not your organization's personal property. To the contrary, and as the 2022 State Rules For California Fairs indicate ("State Rules"), it was my daughter's personal property. Specifically, the State Rules provide in relevant part that "exhibitors must be legal owners of all entries. Ownership must be maintained through show date(s)." (See State Rules at p. 6.) Cedar was removed during that period, so the State Rules admit he was still my daughter's personal property.

Consistent with the State Rules, your organization's All General Rules and Guidelines ("General Rules") also require that "Exhibitors must be able to show proof of ownership at any time...." (See General Rules at p. 3.) Again, Shasta District Fair was not the owner.

Finally, that your organization did not become the owner of Cedar is further confirmed by the provision in your General Rules advising the Junior Exhibitors to obtain liability insurance. (See General Rules at p. 8.)   If Cedar became your property by virtue of our entry to the fair, there would be no need for the Junior Exhibitors to obtain insurance, as the fair would be liable. In sum, Cedar was my daughter's personal property so California Penal Code § 487a is not even triggered.

FERN000046

Furthermore, in the event the Shasta District Fair could claim Cedar became its personal property, "[i]t is an established principle of the law of theft that a bona fide belief of a right or claim to the property taken, even if mistaken, negates the element of felonious intent." (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1017, citing *People v. Butler* (1967) 65 Cal.2d 569, 573.) As I believed in good faith that Cedar was not the Shasta District Fair's personal property, no violation of Penal Code § 487a was committed.

Lastly, if anyone other than my daughter has a right to the goat, it would be Senator Brian Dahle as he was the successful bidder at auction. But his office has represented to me that they have relinquished any rights they have to Cedar, dead or alive. As a result, not only was there no crime committed, but the Shasta District Fair now gets to keep his bid of $11.00 per pound x 82 pounds, $902.00. Thus, the Shasta District Fair has actually profited from this event—it cannot claim any harm. For the Shasta District Fair to claim it's been damaged by this event, it would have to show some loss arising from a breach I committed. (*See, e.g., Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 473 ["A breach of contract is not actionable without damage"].) But your General Rules state that the Shasta District Fair will be entitled to only "7.0% of the sale price deducted from the [Exhibitor's] check...." So, had the slaughter been accomplished, the Shasta District Fair would have collected only $63.14. But now, it has received, and gets to keep $902.00, a profit of $838.36. So if anything, Shasta District Fair has been unjustly enriched by this situation.

FERN000047

Lastly, it must be stated with clarity that, because Shasta District Fair was never the owner of Cedar, the only possible rights it has in transaction are to the monies it could have earned, i.e., $63.14, which it has more than retained. So any legal action on the matter would per se be frivolous. Nevertheless, my offer to reimburse any other reasonable costs associated with this event remains open. I cannot envision what those costs would be, but I will of course review them in good faith.

This letter is not a waiver of any rights. Further, while its purpose is in anticipation of litigation, I am equally sending this letter to resolve the matter. My daughter has/is bonded with Cedar and, had we known what a terminal auction entailed, we never would have gone down this path. Fortunately, Shasta District Fair has actually profited from this event so this dispute should be put to rest.

In your email you expressed concerns about social media postings. If we can resolve this situation with Cedar not being brought in for slaughter, I am willing to consider signing a non-disclosure agreement.

Moving forward, I request that any communications be directed to my email at Jessicadaum@hotmail.com

Sincerely,

Jessica Long
Jessicadaum@hotmail.com

1

<u>VERIFICATION</u>

2

   I have read the foregoing DEFENDANT LIEUTENANT JERRY FERNANDEZ'S
RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET

3    ONE and know its contents.

4

   I am a party to this action. The matters stated in it are true of my own knowledge except
as to those matters which are stated on information and belief, and as to those matters I believe

5    them to be true.

6

   I am _____ of _____, a party to this action, and am authorized to make
this verification for and on its behalf, and I make this verification for that reason. I have read the

7    foregoing document(s). I am informed and believe and on that ground allege that the matters
stated in it are true.

8

   I am one of the attorneys of record for _____, a party to this action. Such

9    party is absent from the county in which I have my office, and I make this verification for and on
behalf of that party for that reason. I have read the foregoing document(s). I am informed and

10   believe and on that ground allege that the matters stated in it are true.

11   Executed at <u>REDDING</u>, California on <u>MAY 8</u>, 2023.

12   I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

13

14                                                   #109
                                   _____
15                                   LIEUTENANT JERRY FERNANDEZ

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW

**PROOF OF SERVICE**

I, Linda Tapia, declare:

I am a citizen of the United States and employed in San Bernardino County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2855 E. Guasti Road, Suite 400, Ontario, California 91761. On May 9, 2023, I served a copy of the within document(s):

> DEFENDANT LIEUTENANT JERRY FERNANDEZ'S
> RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION
> OF DOCUMENTS, SET ONE

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Ontario, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Ryan Gordon
Vanessa T. Shakib
Advancing Law for Animals
407 N. Pacific Coast Hwy, #267
Redondo Beach, CA 90277
Phone:    (202) 996-8389
Email:    ryan.robert.gordon@gmail.com;
vshakib@advancinglawforanimals.org

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage

*Left margin (vertical):* BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

55398.00040\41302280.1

PROOF OF SERVICE

1    meter date is more than one day after date of deposit for mailing in affidavit.

2        I declare under penalty of perjury under the laws of the State of California that the above

3    is true and correct.

4        Executed on May 9, 2023, at Ontario, California.

5

6

7                        Linda Tapia

8

9

10

11

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28