# EXHIBIT L

# In The Matter Of:

*LONG vs.*

*FERNANDEZ*

---

*B.J. MACFARLANE*

*Vol. 2*

*February 9, 2024*

---

*Challe, Fisher & Morfin*

*1828 South Street*

*Redding, California  96001*

*(530)246-0942*

*cfmdepos@att.net*

Original File B.J. Macfarlane, Vol II.txt

**Min-U-Script® with Word Index**

1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF CALIFORNIA

3                         SACRAMENTO DIVISION

4

5    E.L., a minor, by and through      )
     her general guardian, JESSICA      )
6    LONG; JESSICA LONG, an             )
     individual,                        )
7                                       )
              Plaintiffs,               )   Case No.
8    vs.                                )   2:22-cv-01527-DAD-AC
                                        )
9    LIEUTENANT JERRY FERNANDEZ         )
     individually and in his           )
10   individual capacity as Sheriff    )
     for the County of Shasta;         )
11   DETECTIVE JACOB DUNCAN,           )
     individually and in his           )
12   individual capacity as Sheriff    )
     for the County of Shasta;         )
13   DETECTIVE JEREMY ASHBEE,          )
     individually and in his           )
14   individual capacity as Sheriff    )
     for the County of Shasta;         )
15   SHASTA DISTRICT FAIR AND EVENT    )
     CENTER, a district agricultural    )
16   association; COUNTY OF SHASTA;    )
     SHASTA COUNTY SHERIFF'S           )
17   DEPARTMENT; MELANIE SILVA, in     )
     her individual capacity; BJ        )
18   MACFARLANE, in his individual     )
     capacity; and DOES 1 through      )
19   10,                               )
                                        )
20            Defendants.               )
     _____)

21

22            VIDEO DEPOSITION OF BJ MACFARLANE

23                 PAGE 225-391, VOLUME II

24              FRIDAY, FEBRUARY 9, 2024

25

```
1                        APPEARANCES

2
   For the Plaintiffs:  LONG, etc.
3
               ADVANCING LAW FOR ANIMALS
4              407 N. Pacific Coast Highway, #267
               Redondo Beach, CA  90277
5              (202) 996-8389
               rgordon@advancinglawforanimals.org
6              vshakib@advancinglawforanimals.org

7              BY:  RYAN R. GORDON, ESQ.
                    VANESSA T. SHAKIB, ESQ.
8

9  For the Defendant:  LIEUTENANT FERNANDEZ, etc.

10             BEST, BEST & KRIEGER
               2855 East Guasti Road, Suite 400
11             Ontario, CA  91761
               (909) 989-8584
12             damian.northcutt@bbklaw.com

13             ZOOM APPEARANCE BY:  DAMIAN A. NORTHCUTT, ESQ.

14
   For the Defendant:  SHASTA DISTRICT FAIR, etc.
15
               CALIFORNIA ATTORNEY GENERAL'S OFFICE
16             DEPARTMENT OF JUSTICE
               1300 I Street
17             Sacramento, CA  95814-2963
               (916) 210-7529
18             john.bridges@doj.ca.com

19             BY:  JOHN BRIDGES, ESQ.

20
   Also Present:  Terry Fox, Video Specialist
21

22
                        ---oOo-
23

24

25
```



INDEX OF EXAMINATION

EXAMINATION BY:                              PAGE

RYAN GORDON                                230, 385

DAMIAN NORTHCUTT                           383

---oOo-

1                    INDEX OF EXHIBITS

2
   Macfarlane Depo      Description                    Page
3  Exhibit No.

4      G                Invoice from A & R             254
                        Custom Butchering,
5                       totaling 2 pages

6
       H                AT&T Phone records             275
7                       dated 6-25-22 through
                        9-1-22
8

9      I                Text chain between BJ          320
                        Macfarlane and Melanie
10                      Silva, date range 7-28-22
                        through 2-15-23, totaling
11                      9 pages

12
       J                Text chain between BJ          340
13                      Macfarlane and Melanie
                        Silva, date range 6-28-22
14                      through 7-18-22, totaling
                        8 pages
15

16     K                Text chain between BJ          362
                        Macfarlane and Melanie
17                      Silva, date range 6-27-22
                        through 6-28-22, totaling
18                      8 pages

19
       L                Text chain between BJ          366
20                      Macfarlane and Melanie
                        Silva, date range 6-25-22
21                      through 6-27-22, totaling
                        6 pages
22

23

24                      ---oOo---

25

## B.J. MACFARLANE

```
 1              BE IT REMEMBERED, that on Friday, February 9,
 2   2024, commencing at the hour of 8:06 a.m., of said day,
 3   at the offices of Challe, Fisher & Morfin, 1828 South
 4   Street, in Redding, California, before me, Suzanna
 5   Mickelson, a Certified Shorthand Reporter in and for the
 6   State of California, there appeared,
 7                        BJ MACFARLANE,
 8   who, being first duly sworn by me to tell the truth, was
 9   examined and testified as follows:
10              THE VIDEO SPECIALIST:  Ladies and gentlemen,
11   we're on video record with the deposition of BJ
12   Macfarlane.  The date's February 9th, 2024, and the time
13   is 8:06 a.m.  I'm Terry Fox, the video specialist, from
14   the firm of Redding Video Productions.  This is the
15   beginning of media number one regarding case number
16   22-cv-01527-DAD-AC of the United States District Court
17   for the Eastern District of California.  This deposition
18   is being taken at Challe, Fisher and Morfin at 1828
19   South Street, Redding, California.  The court reporter
20   is Suzanna Mickelson, 14270, associated with Challe,
21   Fisher and Morfin.
22              Counsel will now introduce themselves, who they
23   represent, and the witness will then be sworn in by the
24   court reporter.
25              MR. GORDON:  Ryan Gordon for Plaintiffs.
```

**B.J. MACFARLANE**

08:06:47AM 1          MS. SHAKIB:  Vanessa Shakib for Plaintiffs.

08:06:50AM 2          MR. BRIDGES:  John Bridges for Defendants Shasta

08:06:52AM 3  District Fair, BJ Macfarlane and Melanie Silva.

08:06:55AM 4          MR. GORDON:  And counsel for the sheriffs

08:07:01AM 5  defendants, Damian Northcutt, will make an appearance

08:07:04AM 6  later, just noting for the record.  And okay, shall we

08:07:08AM 7  begin?

8          (Whereupon, the witness was sworn in by the

9          court reporter.)

10

11                  EXAMINATION BY MR. GORDON

08:07:18AM 12         MR. GORDON:  Q.  Okay.  Good morning, Mr.

08:07:19AM 13  Macfarlane.

08:07:20AM 14  A.     Good morning.

08:07:20AM 15  Q.     Thank you again for being here, much

08:07:22AM 16  appreciated.

08:07:23AM 17         So you remember the beginning of our last

08:07:26AM 18  deposition I went over some ground rules.  I'm going to

08:07:29AM 19  go through them again quickly so just so you remember.

08:07:32AM 20  I know that you haven't been deposed before except for

08:07:35AM 21  that time we went over several things before, so.

08:07:38AM 22         So some of the rules are there's the court

08:07:43AM 23  reporter as last time.  She's going to transcribe

08:07:45AM 24  everything you say, and so it's important we give

08:07:48AM 25  audible answers.  You know, "yes," "no," "I don't know"

**B.J. MACFARLANE**

08:07:51AM 1  or whatever the response calls for.  Try to avoid

08:07:54AM 2  nodding or, you know, "um" or pointing, you know.  As

08:07:57AM 3  best you can, use your words.

08:07:58AM 4       And we don't talk -- we'll try not to talk over

08:08:02AM 5  each other.  You know, a conversational cadence begins,

08:08:05AM 6  and we did that the last time, not rudely, but it just

08:08:09AM 7  happens, so we should both try to I'll give you an

08:08:13AM 8  opportunity to respond. I silence myself or shut up

08:08:15AM 9  during that period.  You do the same for me.  Give your

08:08:19AM 10 attorney an opportunity to object, etcetera.

08:08:21AM 11      So do you understand everything I'm saying?

08:08:23AM 12 A.    Yes, sir.

08:08:24AM 13 Q.    And if you don't understand something, let me

08:08:29AM 14 know and -- let me know, and I'll rephrase it.  If your

08:08:33AM 15 attorney gives an objection, unless he instructs you not

08:08:36AM 16 to answer, he's simply preserving for the record.  If

08:08:40AM 17 you understand what I'm saying, you still answer.

08:08:42AM 18      But of course, if you don't understand what I'm

08:08:45AM 19 saying, please tell me.  If you don't tell me, I'm going

08:08:48AM 20 to assume you understand what I'm saying and proceed

08:08:51AM 21 with the question, so.

08:08:53AM 22      What else?  And you remember I'm entitled to

08:08:55AM 23 your best estimate.  I think I gave you the table

08:08:58AM 24 example last time which is you can estimate -- if I

08:09:00AM 25 asked you to estimate -- estimate the size of this

**B.J. MACFARLANE**

08:09:03AM 1  table, you could do it.  But if I asked you to estimate

08:09:06AM 2  the size of the table at my house, you couldn't.  You'd

08:09:09AM 3  just be guessing.  So you understand the distinction,

08:09:13AM 4  correct?

08:09:13AM 5  A.      Yes.

08:09:13AM 6  Q.      And no drugs in the last -- that are interfering

08:09:17AM 7  with your ability to testify today?

08:09:18AM 8  A.      No.

08:09:19AM 9  Q.      No alcohol?

08:09:20AM 10 A.      No.

08:09:21AM 11 Q.      Okay, great.  And are you on any meds today that

08:09:24AM 12 would affect anything?

08:09:25AM 13 A.      No.

08:09:26AM 14 Q.      Okay, great.  All right.  And no reason you

08:09:29AM 15 can't go forward with your depo today that you can think

08:09:31AM 16 of?

08:09:32AM 17 A.      No.

08:09:32AM 18 Q.      Great.  All right.  Okay.  So the last time we

08:09:36AM 19 went through vaguely a timeline of events what happened

08:09:40AM 20 in our last deposition, so I just want to go through

08:09:44AM 21 some of that again just for foundation so we're clear as

08:09:48AM 22 I understood your testimony, so.

08:09:50AM 23         So I'm basically just going to give some dates

08:09:54AM 24 and events, my description of them as I believe you

08:09:59AM 25 testified, you can tell me "correct" or "yes" or correct

**B.J. MACFARLANE**

| | |
|---|---|
| 08:10:02AM 1 | me if I'm wrong if that makes sense, so. |
| 08:10:05AM 2 | So to your memory, Jessica removed Cedar from |
| 08:10:08AM 3 | the fair on July -- Saturday, July 25th, and you found |
| 08:10:15AM 4 | out late that evening, correct? |
| 08:10:16AM 5 | A.      Yes. |
| 08:10:17AM 6 | Q.      And there was -- you worked with -- |
| 08:10:23AM 7 | MS. SHAKIB:  June. |
| 08:10:24AM 8 | MR. GORDON:  Q.  I'm sorry.  June 25th, yeah. |
| 08:10:27AM 9 | Good call.  June 25th.  It was a Saturday evening and |
| 08:10:30AM10 | you -- thank you, Vanessa.  And you and several other |
| 08:10:34AM11 | employees at that time were searching to find him, and |
| 08:10:38AM12 | you did not find him at the fair, correct? |
| 08:10:42AM13 | A.      Yes. |
| 08:10:43AM14 | Q.      And you I believe you said you spoke with Chad |
| 08:10:46AM15 | Fowler it was either that evening or the next morning, |
| 08:10:50AM16 | thereabouts, you could not remember precisely when and |
| 08:10:53AM17 | he said he believed Ms. Long and her daughter had taken |
| 08:10:56AM18 | Cedar, correct? |
| 08:10:57AM19 | A.      Yes. |
| 08:10:57AM20 | Q.      Okay.  And so then the next morning I believe |
| 08:11:01AM21 | you testified you also had a conversation with Jessica |
| 08:11:06AM22 | on the phone where she, I'm paraphrasing, said I didn't |
| 08:11:10AM23 | want -- her and her daughter didn't want to do it and |
| 08:11:13AM24 | were looking at bringing the goat back, correct? |
| 08:11:16AM25 | A.      Looking to do what? |

**B.J. MACFARLANE**

08:11:17AM 1  Q.     To not bring the goat back, correct?

08:11:19AM 2  A.     Yes.

08:11:20AM 3  Q.     Okay.  And that's about the morning after, so I

08:11:25AM 4  guess that's June 26 where you had this conversation

08:11:28AM 5  with Ms. Long and about her -- someone pop in?  One

08:11:40AM 6  second, BJ.

08:11:41AM 7         Damian, do you want to put yourself on the

08:11:44AM 8  record while you're here?

08:11:48AM 9         Good morning, Damian.  Do you want to put

08:11:50AM 10  yourself on the record?  I don't know if he can hear us.

08:11:57AM 11         MR. NORTHCUTT:  Hi everyone.  Sorry I'm late.

08:12:00AM 12         MR. BRIDGES:  No problem.  Would you like to put

08:12:01AM 13  your name on the record, and we'll keep going.

08:12:04AM 14         MR. NORTHCUTT:  Sure.  Damian Northcutt

08:12:06AM 15  appearing on behalf of the Shasta County Sheriff's

08:12:09AM 16  Department and the officers in this case.

08:12:11AM 17         MR. GORDON:  Okay, great.  Okay.  So where was

08:12:14AM 18  I?

08:12:15AM 19  Q.     Okay.  So you had -- you speak with Chad Fowler,

08:12:19AM 20  and he says something about he thinks Ms. Long and

08:12:24AM 21  Jessica took Cedar.  Then the next morning at 6:26 you

08:12:28AM 22  have a conversation with Jessica on the phone and she

08:12:31AM 23  tells you, you know, we don't -- me and my daughter

08:12:34AM 24  don't want to do this and doesn't want to bring the goat

08:12:39AM 25  back, and that's the morning of the 26th still.  Am I

**B.J. MACFARLANE**

08:12:44AM 1    right so far?

08:12:45AM 2    A.      I think so.

08:12:46AM 3    Q.      Okay.  And then after that did you -- you

08:12:52AM 4    engaged in several text messages with her for several

08:12:55AM 5    days at that point in time, correct?

08:12:56AM 6    A.      Yes.

08:12:56AM 7    Q.      Which I think we went over some of them the last

08:12:59AM 8    time but we'll -- and -- we do have them.

08:13:07AM 9            So at this point in time did you -- so this is

08:13:11AM10    June 26th or so the goat's already been taken.  Had you

08:13:15AM11    reviewed the state or local rules for procedurally what

08:13:20AM12    to do at that point in time?

08:13:21AM13    A.      No.  I don't recall if I looked at the rules or

08:13:32AM14    not.  It's -- I don't recall if I -- if I did or not.  I

08:13:43AM15    don't recall.

08:13:43AM16    Q.      Okay.  And that goes for either the -- when I

08:13:46AM17    say, "state and local," I'm saying the 2022 CDFA rules

08:13:51AM18    for state fairs.  We've been calling them the state

08:13:54AM19    rules.  And then the local rules I guess would be the

08:13:57AM20    exhibitor handbook or whatever else they handed to the

08:14:00AM21    exhibitors for the participation in the auction at the

08:14:03AM22    Shasta Fair.

08:14:04AM23            So you know what I'm referring to, correct?

08:14:06AM24    A.      Yes.

08:14:06AM25    Q.      Okay.  All right.  All right.  And it's your

**B.J. MACFARLANE**

08:14:10AM 1  understanding that Ms. Silva is, because she's the CEO,

08:14:15AM 2  it's your understanding that she is responsible for

08:14:17AM 3  enforcement of the rules at that point in time?

08:14:19AM 4  A.      Yes.

08:14:19AM 5  Q.      Okay.  All right.  All right.  So and then so

08:14:27AM 6  several days pass and I believe -- I'll represent to

08:14:32AM 7  you, you can tell me if you remember this, but Ms. Silva

08:14:35AM 8  sent Lieutenant Fernandez I believe on 6 -- on June 29th

08:14:42AM 9  an email containing -- several emails from Jessica and

08:14:47AM 10  communications from Jessica and I guess some documents

08:14:50AM 11  from the auction itself.  Do you -- is that your memory?

08:14:53AM 12  A.      Yes.

08:14:54AM 13  Q.      Okay.  All right.  And had you talked to

08:14:57AM 14  Lieutenant Fernandez before that point, before 6-29, if

08:15:00AM 15  you can recall?

08:15:01AM 16          MR. BRIDGES:  Do you mean about this case?

08:15:02AM 17          MR. GORDON:  Yes.  Yeah, yeah.  Thank you.

08:15:04AM 18          THE WITNESS:  I do not recall.

08:15:05AM 19          MR. GORDON:  Q.  You don't recall, okay.  And do

08:15:09AM 20  you -- so as far as do you remember reporting the

08:15:14AM 21  removal of Cedar to the sheriffs, or do you remember

08:15:17AM 22  that being Melanie?

08:15:18AM 23  A.      I remember it being Melanie.

08:15:21AM 24  Q.      Okay.  All right.  So and then -- okay.

08:15:30AM 25          So the last communication you had with Ms. Long

**B.J. MACFARLANE**

08:15:35AM 1  was by -- or the only -- after the phone -- strike that.

08:15:39AM 2          You had a phone call with her, but the remainder

08:15:42AM 3  of your communications is over text, correct?

08:15:44AM 4  A.     I believe so.

08:15:45AM 5  Q.     You believe so, okay.  That's my understanding

08:15:48AM 6  too.

08:15:48AM 7          Okay.  So your last text would have been about,

08:15:52AM 8  we have them, and I can get them out if we need to, but

08:15:55AM 9  I believe it's about June 29th or so thereabouts so

08:15:59AM 10 midweek.

08:15:59AM 11 A.     Yes.

08:16:00AM 12 Q.     Yeah.  And so after -- after your last text

08:16:11AM 13 about the same time Melanie presumably reports it to

08:16:15AM 14 the -- reports the removal to the sheriff's department

08:16:20AM 15 and then -- so after she reports it, what did you do?

08:16:28AM 16 Were you just waiting on the sheriffs at that point in

08:16:31AM 17 time?

08:16:31AM 18 A.     Yeah.  I was waiting on to hear anything from

08:16:38AM 19 Melanie or whoever.

08:16:40AM 20 Q.     Okay.  Okay.  Okay.  That's fine.  So -- so then

08:16:47AM 21 flash forward the Cedar gets delivered to your house on

08:16:51AM 22 July 8th, correct, late -- I don't know about what -- is

08:16:56AM 23 that correct?

08:16:56AM 24 A.     Yes.  I don't recall the date, but yes, it was

08:16:59AM 25 late at night.

**B.J. MACFARLANE**

08:17:00AM 1  Q.      Friday, July 8th?  Or is it Saturday July --

08:17:05AM 2          MS. SHAKIB:  I believe it was Friday late at

08:17:07AM 3  night.  It could even have been very early Saturday

08:17:10AM 4  morning.

08:17:10AM 5          MR. GORDON:  Q.  Well, was the date -- let me

08:17:13AM 6  check with the records.  It was the day before the

08:17:16AM 7  community barbecue.  I don't know if that's usually held

08:17:20AM 8  on -- yeah, so Friday, July -- so yes, it's a Friday.

08:17:22AM 9  Okay.  That's your memory, late at night on Friday, July

08:17:26AM10  8th.

08:17:28AM11          So did -- when they -- when -- now, did you talk

08:17:31AM12  to Lieutenant Duncan or just Fernandez when Cedar was

08:17:34AM13  dropped off?

08:17:34AM14  A.      There was somebody with him.  I thought it was a

08:17:38AM15  detective.

08:17:38AM16  Q.      Yes, Lieutenant Fernandez and Detective Duncan.

08:17:41AM17  I'm sorry.

08:17:42AM18  A.      Yeah.

08:17:42AM19  Q.      It was a younger gentleman, brown hair.  Yeah,

        20  okay.

08:17:46AM21          And did you speak with both of them?

08:17:47AM22  A.      Yes.

08:17:47AM23  Q.      Okay.  Did any of them give you any instructions

08:17:50AM24  with respect to Cedar?

08:17:50AM25  A.      I don't recall.  I said I would take care of it

**B.J. MACFARLANE**

08:17:56AM 1   until somebody told me what else was going to go on.

08:18:00AM 2   Q.    Okay.  Did -- who would -- did they tell you to

08:18:04AM 3   wait for someone to tell you what was going on?

08:18:06AM 4   A.    I don't know.  I could not recall our

08:18:09AM 5   conversation that night.  I don't recall.  I was taking

08:18:13AM 6   care of the goat.

08:18:14AM 7           MR. BRIDGES:  You've answered.

08:18:16AM 8           THE WITNESS:  Yeah.

08:18:16AM 9           MR. GORDON:  Q.  Okay.  So as far as you

08:18:19AM 10  remember, they just said take care of the goat?

08:18:22AM 11  A.    Yes.

08:18:23AM 12  Q.    Okay.  Who were you waiting on for further

08:18:26AM 13  instructions?

08:18:26AM 14  A.    Either Melanie or Kathie.  I don't --

08:18:33AM 15  Q.    Okay.  Okay.  Do you recall the last time we

08:18:36AM 16  went over your text messages where you were -- it stated

08:18:40AM 17  you were waiting on the sheriff and the DA?

08:18:42AM 18  A.    Yes.

08:18:44AM 19  Q.    Do you want me to pull the text out again?

08:18:46AM 20  A.    I do remember that text after reading it.

08:18:49AM 21  Q.    Okay.  Okay.  And you testified that it was

08:18:51AM 22  Sheriff Johnson you were referring to, correct?

08:18:52AM 23  A.    No.

08:18:53AM 24           MR. BRIDGES:  Just object.  It misstates his

08:18:55AM 25  testimony.

**B.J. MACFARLANE**

08:18:56AM 1          MR. NORTHCUTT:  Join in the objection.

08:18:59AM 2          THE WITNESS:  I don't -- I don't believe it was

08:19:01AM 3    Johnson.  I don't recall that.

08:19:03AM 4          MR. GORDON:  Well, let me get your transcript

08:19:05AM 5    out so I can read it.

          6          (Pause in proceedings.)

08:20:17AM 7          MR. GORDON:  Q.  Okay.  So the text -- I'm

08:20:19AM 8    reading from the transcript when I read you the text,

08:20:21AM 9    and I can show you the text if you -- if want to see it,

08:20:24AM10    but I'll just repeat it.  If they give an objection I'm

08:20:28AM11    misstating the text, I'm going to pull the text out

08:20:30AM12    again.

08:20:31AM13          The text read, "Good morning.  I'm gone till

08:20:33AM14    tomorrow" -- hold on one second.

08:20:38AM15          "Good morning.  I'm gone till tomorrow

08:20:40AM16    afternoon," comma, "talk to sheriff and he said to wait

08:20:43AM17    until he talks to DA before we kill goat.  It's pair --

08:20:49AM18    and you said, "And I believe because I thought Melanie

08:20:52AM19    we were in touch with CDFA's lawyer as well."

08:20:56AM20          Okay.  And then I ask -- when you say, "the

08:21:00AM21    sheriff" here, do you know -- "talk to sheriff," do you

08:21:04AM22    know who you, and you say, "Johnson."  I said, "Johnson.

08:21:08AM23    Okay.  And as far as the DA here, do you know which DA

08:21:12AM24    you're talking about?  It's the woman.  I don't know her

08:21:13AM25    name."

**B.J. MACFARLANE**

08:21:14AM 1          So at that point in time you're saying for that

08:21:16AM 2    text is referring to Sheriff Johnson, correct?

08:21:19AM 3          MR. BRIDGES:  Well, I object.  It misstates

08:21:20AM 4    testimony.  That's not what -- just briefly, the

08:21:25AM 5    question you asked was, "Do you know who you," and the

08:21:28AM 6    answer he said was, "Johnson."  Do you know who you,

08:21:31AM 7    what?  I don't think the question was completed.

08:21:33AM 8          MR. GORDON:  That's fine, but.

08:21:35AM 9          MR. NORTHCUTT:  Join in the objection.

08:21:37AM10          MR. GORDON:  That's fine, but.

08:21:38AM11    Q.    So at that point in time you did not -- you were

08:21:40AM12    not referring to Sheriff Johnson on your July 11 text?

08:21:44AM13    A.    I don't believe so, no.

08:21:45AM14    Q.    Okay.  What sheriff were you referring to in the

08:21:47AM15    text?

08:21:48AM16    A.    I don't recall.

08:21:50AM17    Q.    You testified -- okay.  You don't recall.

08:21:53AM18    A.    I don't recall.

08:21:53AM19    Q.    Okay.  You testified that you did have Sheriff

08:21:56AM20    Johnson's cell phone, correct?

08:21:57AM21    A.    I do not.  I might have, but I -- I don't.

08:22:01AM22    Q.    Do you now currently have his cell phone number?

08:22:05AM23    A.    I don't believe so.  I looked after the

08:22:07AM24    deposition the first time, and I don't think I do.

08:22:08AM25    Q.    Okay.  But you recall testifying that you had,

**B.J. MACFARLANE**

08:22:11AM 1  correct?

08:22:12AM 2  A.      I thought I had it.

08:22:14AM 3          MR. BRIDGES:  Just -- can you tell me where it

08:22:16AM 4  is that he said he had it?  I'm not saying you're wrong.

08:22:19AM 5  I just would like to read it.

         6          MR. GORDON:  Sure.

08:22:21AM 7          MR. BRIDGES:  Because you're asking him about a

08:22:22AM 8  220-page deposition transcript.  I don't even know if

08:22:27AM 9  he's reviewed the transcript since -- well, ever

08:22:29AM10  reviewed it, but.

08:22:30AM11          MR. GORDON:  We'll go off the record.

08:22:38AM12          (Discussion off the record.)

08:22:40AM13          THE VIDEO SPECIALIST:  We're off the record.

08:22:41AM14  The time is 8:23.

08:24:04AM15          MR. GORDON:  Back on the record.

08:24:06AM16          THE VIDEO SPECIALIST:  We're back on the record,

08:24:08AM17  and the time is 8:24.

08:24:09AM18          MR. GORDON:  Q.  Okay.  On your -- so Mr.

08:24:15AM19  Macfarlane, did you have Sheriff Johnson's cell phone

08:24:18AM20  number at some point in time between June 25th, 2022 and

08:24:23AM21  July 28th, 2022?

08:24:26AM22  A.      I do not recall.  I don't -- I don't recall.

08:24:31AM23  And that's what I think --

08:24:32AM24  Q.      Okay.  Okay.  You don't recall?  Does that mean

08:24:36AM25  you don't know?

**B.J. MACFARLANE**

08:24:36AM 1   A.      I don't -- I don't know.  I don't recall.

08:24:39AM 2   Q.      Let me -- do you -- there's -- I'm making a

08:24:44AM 3   distinction.  Do you mean you don't recall you might

08:24:45AM 4   have or you don't know -- do you mean I don't recall as

08:24:50AM 5   I don't remember?

08:24:50AM 6   A.      I don't remember if I have his number or not.

08:24:54AM 7   Q.      No, not now.  At that time?

08:24:56AM 8   A.      No, I don't recall.

08:24:57AM 9   Q.      Okay.  So you -- on page 207 of your deposition

08:25:01AM10   transcript I asked, "Do you know how many times between

08:25:04AM11   that period you talked with Johnson and the DA between

08:25:06AM12   the 11th and the 25th of July?"

08:25:08AM13           Answer, "A couple of times.  And this was -- I

08:25:13AM14   never talked to the DA."

08:25:15AM15           So talked to the sheriff a few times between

08:25:18AM16   that period?

08:25:19AM17   A.      I don't recall who -- if Melanie did or if I

08:25:26AM18   did.  I do not recall.  I -- I don't recall.

08:25:33AM19   Q.      Okay.  You don't recall.  Why did you reference

08:25:35AM20   the sheriff in your text message?

08:25:40AM21           MR. BRIDGES:  Well, I think that misstates what

08:25:43AM22   his text message said.  He didn't --

08:25:44AM23           MR. GORDON:  He referenced the sheriff in his

08:25:46AM24   text message.

08:25:46AM25           MR. BRIDGES:  The sheriff?

**B.J. MACFARLANE**

| | |
|---|---|
| 08:25:47AM 1 | MR. GORDON:  It says "sheriff."  I'm saying -- |
| 08:25:48AM 2 | and I'll ask him whatever sheriff it is. |
| 3 | MR. BRIDGES:  Okay. |
| 08:25:50AM 4 | MR. GORDON:  Q.  He said, "this sheriff."  He |
| 08:25:52AM 5 | didn't say "sheriff's deputy."  Why do you reference |
| 08:25:54AM 6 | "the sheriff" in your text message? |
| 08:25:56AM 7 | A.    It was I'm guessing the sheriff's department.  I |
| 08:25:58AM 8 | don't think it was necessarily the sheriff. |
| 08:26:02AM 9 | Q.    Okay. |
| 08:26:03AM 10 | A.    From -- I don't -- I don't know. |
| 08:26:10AM 11 | Q.    So when -- |
| 08:26:11AM 12 | A.    I don't believe I would say "the sheriff."  It |
| 08:26:15AM 13 | wasn't the sheriff.  I guess in common, just common, or |
| 08:26:20AM 14 | my saying the sheriff, I guess I should complete it the |
| 08:26:25AM 15 | sheriff's department.  I don't -- |
| 08:26:27AM 16 | Q.    Is there any reason -- is there any reason you |
| 08:26:28AM 17 | said "I believe so" when I asked you if it was Sheriff |
| 08:26:31AM 18 | Johnson? |
| 08:26:31AM 19 | A.    I -- that timeframe is -- I was -- and I think I |
| 08:26:37AM 20 | testified that I don't recall a lot of details.  It |
| 08:26:40AM 21 | was -- it was a very busy time.  I was extremely sleep |
| 08:26:44AM 22 | deprived.  I don't remember who I contacted or if |
| 08:26:47AM 23 | Melanie contacted them. |
| 08:26:50AM 24 | Q.    So one of you might have -- one of you contacted |
| 08:26:53AM 25 | the sheriff, is that your testimony, you just don't know |

**B.J. MACFARLANE**

08:26:55AM 1  if it was you or Melanie?

08:26:57AM 2        MR. BRIDGES:  What are you saying --

08:26:59AM 3        THE WITNESS:  I don't know if the sheriff.  The

08:27:00AM 4  sheriffs -- I guess I stated it wrong.  The sheriff's

08:27:02AM 5  department.

08:27:03AM 6        MR. GORDON:  Q.  Okay.  So after -- after -- so

08:27:10AM 7  on July 28th -- or I'm sorry, June 8th -- I'm confusing

08:27:16AM 8  myself here.

08:27:16AM 9        On July 8th, Cedar is dropped off.  And then

08:27:19AM 10  he's kept at your house until, you said, until you're

08:27:22AM 11  waiting for directions.  Presumably to send him to

08:27:26AM 12  slaughter, correct?

08:27:27AM 13  A.    Yes.

08:27:27AM 14  Q.    Okay.  Who were you waiting for directions from

08:27:31AM 15  at that point in time?

08:27:31AM 16        MR. BRIDGES:  Asked and answered.  You can

08:27:32AM 17  answer again.

08:27:33AM 18        THE WITNESS:  Melanie.  Melanie or Kathie who

08:27:37AM 19  are under -- Melanie or Kathie.

08:27:42AM 20        MR. GORDON:  Melanie or Kathie, okay.

08:27:43AM 21        THE WITNESS:  Anybody of authority.

08:27:44AM 22        MR. GORDON:  Q.  Okay.  So someone at the

08:27:46AM 23  sheriff's also potentially?

08:27:48AM 24  A.    Whoever.  But my -- I would wait to hear from

08:27:53AM 25  them talking to Melanie or Kathie because at that point

**B.J. MACFARLANE**

| | |
|---|---|
| 08:27:58AM 1 | Kathie I believe was the rightful owner, so that's what |
| 08:28:01AM 2 | I was waiting for was her. |
| 08:28:04AM 3 | Q.     Okay.  So and how many times did you talk with |
| 08:28:08AM 4 | Melanie between -- that you can recall, of course, and |
| 08:28:12AM 5 | the phone records will tell it, but how many times did |
| 08:28:14AM 6 | you talk with Melanie between July 8th and July 28th? |
| 08:28:21AM 7 | A.     I do not know. |
| 08:28:23AM 8 | Q.     Okay.  So how did you know based on your text |
| 08:28:31AM 9 | message because you'd said -- let me just pull it out |
| 08:28:34AM 10 | here. |
| 08:28:54AM 11 | (Pause in proceedings.) |
| 08:28:59AM 12 | Q.     BJ, this is a deposition -- or an exhibit at |
| 08:29:00AM 13 | your last deposition.  Just going to use it again. |
| 08:29:04AM 14 | Although, I don't remember what exhibit number it was. |
| 08:29:12AM 15 | MS. SHAKIB:  I'll be able to find it. |
| 08:29:42AM 16 | MR. GORDON:  Q.  Now -- okay.  It's Exhibit C. |
| 08:29:50AM 17 | Okay.  Okay. |
| 08:29:53AM 18 | So this is Exhibit C to your last deposition. |
| 08:29:55AM 19 | I'm not -- I'm not going to make it an exhibit here, but |
| 08:30:00AM 20 | so do you want to take a look at it again?  Make sure |
| 08:30:04AM 21 | you recall it. |
| 08:30:05AM 22 | It was Kathie Muse's text chain between you. |
| 08:30:10AM 23 | And you produced the same text chain just flipped, but |
| 08:30:14AM 24 | we're going with hers. |
| 08:30:18AM 25 | Do you recall this, yes? |

**B.J. MACFARLANE**

08:30:19AM 1  A.     Yes.

08:30:20AM 2  Q.     Okay, great.  So can you go to the second page

08:30:23AM 3  here.

08:30:25AM 4        So "Good morning.  I'm gone till tomorrow

08:30:28AM 5  afternoon.  Talked to sheriff and he said to wait until

08:30:31AM 6  he talks to DA before we kill goat."  Do you see where

08:30:35AM 7  it says that?

08:30:36AM 8  A.     Yes, sir.

08:30:36AM 9  Q.     When did you talk to the sheriff?

08:30:38AM 10  A.     I don't think it was the -- I'm guessing

08:30:47AM 11  before -- between July 9th -- maybe -- if that was our

08:30:53AM 12  last communication, it would have been that night.  So

08:30:55AM 13  the sheriff -- the sheriff I'm referring to would have

08:30:59AM 14  been whatever the deputy.

08:31:01AM 15  Q.     The deputies, okay.

08:31:03AM 16  A.     Yeah, and that's what I think I use -- used it

08:31:06AM 17  as sheriff where I mean the sheriff department.

08:31:09AM 18  Q.     You mean sheriff -- you're saying -- so it's

08:31:11AM 19  your testimony, you mean Sheriff Fernandez here?

08:31:13AM 20  A.     Yes.  Dropped the goat off.

08:31:15AM 21  Q.     Okay.

08:31:16AM 22  A.     Because if --

08:31:17AM 23        MR. NORTHCUTT:  Ryan, there's no Sheriff

08:31:19AM 24  Fernandez.

08:31:19AM 25        MR. GORDON:  Sorry, I apologize, Damian.  That's

**B.J. MACFARLANE**

08:31:22AM 1  honestly inadvertent.  You mean Lieutenant Fernandez?

08:31:25AM 2          THE WITNESS:  Yes.

08:31:26AM 3          MR. GORDON:  Q.  Okay.  But you also testified

08:31:28AM 4  that you had talked to the sheriff, we read it a few

08:31:31AM 5  minutes ago, several times between -- I gave two dates.

08:31:37AM 6  I can pull it back up again.

08:31:41AM 7  A.      And again, I believe that's my -- just as you

08:31:45AM 8  called him Sheriff Fernandez, that's what I called the

08:31:48AM 9  sheriffs the sheriff.  The department.  I don't say the

08:31:52AM10  sheriff.  I didn't mean it the sheriff.  I don't --

08:31:55AM11  especially this instance here.  It's not the sheriff.

08:31:58AM12  It's the sheriff's department.

08:31:59AM13  Q.      Okay.  So you believe you're referring to

08:32:01AM14  Fernandez?

08:32:02AM15  A.      Yes.

08:32:02AM16  Q.      In this context?  Okay.

08:32:06AM17          So now do you have the same belief when I asked

08:32:09AM18  you do you know how many times between that period you

08:32:11AM19  talked with Sheriff Johnson between the 11th and the

08:32:14AM20  25th of July, and you said a couple of times maybe?

08:32:19AM21  A.      I believe it was not Johnson.

08:32:23AM22  Q.      Not Johnson, okay.  Do you know -- so were you

08:32:27AM23  possibly -- after -- let me ask you this.

08:32:31AM24          After you -- after Fernandez dropped off Cedar

08:32:35AM25  on July 8th, and then between July 8th and July 28th,

**B.J. MACFARLANE**

08:32:40AM 1    how many times did you speak with Fernandez?

08:32:42AM 2    A.      Same as Melanie.  I do not recall.

08:32:47AM 3    Q.      You do not recall.  But did you speak with him

08:32:52AM 4    between that period?

08:32:53AM 5    A.      I do not recall.

08:32:56AM 6            MR. BRIDGES:  You answered.  That's fine.  You

08:32:58AM 7    don't remember.

08:32:58AM 8            MR. GORDON:  Q.  Okay.  So -- yeah, I prefer you

08:33:04AM 9    say "I do not recall" if you don't remember as opposed

08:33:07AM10    to "I don't know" because "I do not recall" means I

       11       don't recall.

08:33:10AM12    A.      Okay.

08:33:10AM13    Q.      Okay.  And do you have -- you have Lieutenant

08:33:12AM14    Fernandez's cell phone number, correct?

08:33:14AM15    A.      I do not.

08:33:15AM16    Q.      You do not now, or you did not then?

08:33:18AM17    A.      I think I had it then.  I don't have it now.  I

08:33:22AM18    don't know if -- I don't know his number.

08:33:24AM19    Q.      Okay.

08:33:25AM20    A.      It's not in my --

08:33:26AM21    Q.      It's not in your current phone is what you're

08:33:28AM22    saying?

08:33:28AM23    A.      No.

08:33:29AM24    Q.      Do you have the same -- did you delete his

08:33:31AM25    number?

**B.J. MACFARLANE**

08:33:32AM 1   A.      I never added him, I don't believe, as a

08:33:36AM 2   contact.  I have not seen it.  I lost a lot of stuff

08:33:39AM 3   when I changed my phone number here in -- I don't know.

08:33:43AM 4   Q.      Okay.  So who gave you the -- you said you were

08:33:48AM 5   waiting on permission to -- for direction to have Cedar

08:33:53AM 6   slaughtered, correct?

08:33:54AM 7   A.      Yes.

08:33:54AM 8   Q.      When it was at your house?  Who ultimately gave

08:33:58AM 9   you the direction to?

08:33:58AM 10  A.      I believe it was either Melanie or Kathie.

08:34:01AM 11  Q.      Melanie or Kathie.  Did -- why do you believe

08:34:04AM 12  that?

08:34:04AM 13  A.      Because that's who -- I don't know.  That's who

08:34:10AM 14  the -- my boss -- it wasn't even my boss.  The CEO of

08:34:16AM 15  the fair and the owner of the goat.

08:34:17AM 16  Q.      Okay.  And your understanding was that they were

08:34:20AM 17  in communication with law enforcement?

08:34:21AM 18  A.      Yes.

08:34:23AM 19  Q.      And by "law enforcement," I mean the sheriff's

08:34:26AM 20  office, and you said maybe the sheriff, but it maybe it

08:34:30AM 21  was the lieutenants as well?

08:34:32AM 22          MR. NORTHCUTT:  Objection.  Misstates testimony.

08:34:34AM 23  He never said it was the sheriff.  He, in fact,

08:34:37AM 24  testified he said it wasn't the sheriff.  It was the

08:34:40AM 25  sheriff's department.

**B.J. MACFARLANE**

| | |
|---|---|
| 08:34:40AM 1 | MR. GORDON:  Q.  He said -- I thought you said I |
| 08:34:42AM 2 | believe -- you don't believe so, so I'm assuming you |
| 08:34:45AM 3 | mean maybe you don't know who it was?  You said they |
| 08:34:49AM 4 | were in communication with -- |
| 08:34:50AM 5 | A.      The sheriff's department. |
| 08:34:51AM 6 | Q.      The sheriff's department, okay.  And the DA as |
| 08:34:54AM 7 | well?  Was your understanding? |
| 08:35:00AM 8 | A.      Yeah. |
| 08:35:01AM 9 | Q.      Why did you believe that Melanie was in |
| 08:35:04AM 10 | communication with the sheriff's department? |
| 08:35:06AM 11 | A.      Because she was the CEO.  She was the one -- |
| 08:35:14AM 12 | Q.      Did she tell that to you? |
| 08:35:16AM 13 | A.      I don't know.  I don't recall. |
| 08:35:19AM 14 | Q.      So you're assuming because she's the CEO that |
| 08:35:21AM 15 | she was in communication with the sheriff's department? |
| 08:35:23AM 16 | A.      Yes. |
| 08:35:24AM 17 | Q.      Okay.  So Melanie or Kathie Muse ultimately gave |
| 08:35:32AM 18 | you authority to kill -- have Cedar sent to slaughter? |
| 08:35:37AM 19 | A.      I believe so. |
| 08:35:40AM 20 | Q.      You believe so.  About what date did they do |
| 08:35:42AM 21 | that? |
| 08:35:43AM 22 | A.      I don't recall. |
| 08:35:44AM 23 | Q.      Where did you -- what date did you arrange for |
| 08:35:48AM 24 | Cedar's slaughter? |
| 08:35:49AM 25 | A.      I do not recall. |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 08:35:52AM | 1 | Q.     All right.  One second.  Let me -- so maybe this |
| 08:36:04AM | 2 | will -- |
| 08:36:04AM | 3 | A.     I believe it's in there -- |
| 08:36:05AM | 4 | Q.     -- refresh your memory, yeah.  So read the |
| 08:36:08AM | 5 | second page of text.  Said, "Bowman is killing the goat |
| 08:36:12AM | 6 | today." |
| 08:36:12AM | 7 | A.     July 28th. |
| 08:36:13AM | 8 | Q.     Okay.  So that's the date Bowman Meats came out |
| 08:36:17AM | 9 | to your property to kill -- to do Cedar?  Okay. |
| 08:36:21AM | 10 |        So do you remember about -- did you arrange with |
| 08:36:24AM | 11 | Bowman's to come out? |
| 08:36:25AM | 12 | A.     Yes. |
| 08:36:25AM | 13 | Q.     Okay.  And who did you speak with at Bowman's? |
| 08:36:28AM | 14 | A.     I don't remember her name.  Gal in our -- |
| 08:36:32AM | 15 | Q.     Serene?  Is that her name? |
| 08:36:35AM | 16 | A.     Could be. |
| 08:36:35AM | 17 | Q.     Okay.  Is there another woman at Bowman's |
| 08:36:38AM | 18 | besides Serene? |
| 08:36:39AM | 19 | A.     I'm not familiar with them, so. |
| 08:36:41AM | 20 | Q.     How often -- you're not familiar with them, |
| 08:36:44AM | 21 | okay. |
| 08:36:44AM | 22 |        How often have you done business with Bowman's |
| 08:36:46AM | 23 | prior to this slaughter? |
| 08:36:47AM | 24 | A.     Personally, never.  Through the fair, I've |
| 08:36:54AM | 25 | talked to, I'm guessing the same woman, I talked to her |

**B.J. MACFARLANE**

08:36:57AM 1   on the phone for the fair.  Years prior.  I don't

08:37:00AM 2   remember her name.

08:37:00AM 3   Q.     Okay.  But it might have been Serene?

08:37:03AM 4   A.     Could have been.

08:37:04AM 5   Q.     Okay.  Do you know a Serene there?

08:37:06AM 6   A.     I do not know.

7   Q.     Okay.  All right.

08:37:09AM 8   A.     I don't know a Serene.  If I saw them on the

08:37:14AM 9   street, I do not know a Serene.

08:37:15AM10   Q.     Okay.  So I just want to be clear for the record

08:37:18AM11   here.  So you definitely do not remember speaking with

08:37:24AM12   Sheriff Johnson at any point in time between July 8th

08:37:29AM13   when Cedar was dropped off and then July 28th when he

08:37:35AM14   was killed?

08:37:36AM15   A.     No.

08:37:36AM16   Q.     Okay.  No memory.  Okay.  And do you remember

08:37:42AM17   speaking with him at any point in time before July 8th?

08:37:45AM18   A.     I do not remember.

08:37:47AM19   Q.     Okay.  But you might have?  Is that what you're

08:37:49AM20   saying?

08:37:50AM21   A.     No.

08:37:50AM22          MR. BRIDGES:  Just to clarify, you mean about

08:37:52AM23   this case?

08:37:52AM24          MR. GORDON:  Yes, about this case.

08:37:55AM25   Q.     So I'm just curious, BJ, might you have or do

**B.J. MACFARLANE**

08:37:58AM 1    you --

08:37:59AM 2    A.     I don't think so.

08:38:01AM 3    Q.     Okay.  All right.  Okay.  So after Cedar was

08:38:23AM 4    slaughtered by Bowman's, do you know where his meat

08:38:26AM 5    went?

08:38:26AM 6    A.     I think it was a replacement for a goat at the

08:38:34AM 7    fair.

08:38:34AM 8    Q.     I understand.  I believe you testified to that

08:38:37AM 9    before but who -- this was produced in discovery.

08:38:47AM 10            All right.  BJ, that was produced in discovery.

08:39:02AM 11   I'm not sure if it was produced by you or Ms. Silva, but

08:39:06AM 12   nonetheless, take a look at it.  We're going to make it

08:39:12AM 13   G.

        14            (Whereupon, Plaintiff's Exhibit G, Invoice

        15            from A & R Custom Butchering, totaling 2

08:39:27AM 16           pages, was marked for identification.)

08:39:27AM 17           (Pause in proceedings.)

08:39:27AM 18   Q.     All right.  Are you -- do you understand what

08:39:30AM 19   that document is?

08:39:30AM 20   A.     Yeah.

08:39:31AM 21   Q.     Okay.  All right.  So how would you describe

08:39:33AM 22   that document?

08:39:34AM 23   A.     The first one -- I don't know what the first one

08:39:48AM 24   is, the first bill here.

08:39:49AM 25   Q.     Okay.

**B.J. MACFARLANE**

08:39:50AM 1   A.      19.6, is that pounds for goat?

08:39:56AM 2           Then the second one is kill -- kill charge on

08:39:59AM 3   August 10th.

08:40:02AM 4   Q.      Okay.  So is this kill --

08:40:04AM 5   A.      It says 9-22.  August 10th.

08:40:07AM 6   Q.      Yeah.  Is this potential -- is this the charge

08:40:11AM 7   for killing Cedar on your property for -- I know it's --

08:40:14AM 8   the invoice might be dated 8-10, but is this your

08:40:17AM 9   understanding this is the --

08:40:19AM 10  A.      This would be, but it's dated August 10th.

08:40:21AM 11  Q.      Okay.  Was -- did Bowman kill another goat at

08:40:25AM 12  your property on August 10th?

08:40:26AM 13  A.      No, sir.  I do not have any goats.

08:40:28AM 14  Q.      Okay.  All right.  Oh, you don't have any goats

08:40:34AM 15  on your property?

08:40:34AM 16  A.      No.  That was the only one.

08:40:36AM 17  Q.      All right.  So but this is the company, correct?

08:40:42AM 18  A.      Yes.

08:40:42AM 19  Q.      Bowman Meat?

08:40:43AM 20  A.      Yes.  Well, the front one's A & R.

08:40:48AM 21  Q.      No, I understand that, but the second page,

08:40:50AM 22  Bowman Meat.

           23  A.      Okay.

08:40:51AM 24  Q.      Sorry, that was confusing.  The first page --

08:40:52AM 25  are you familiar with the company, A & R Butchering?

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 08:40:55AM | 1 | A.      Yes. |
| 08:40:55AM | 2 | Q.      Okay.  Is your understanding that they receive |
| 08:41:00AM | 3 | Cedar's cuts after Bowman slaughtered him? |
| 08:41:03AM | 4 | A.      No. |
| 08:41:04AM | 5 | Q.      No?  Why not? |
| 08:41:06AM | 6 | A.      Because the -- trying to remember.  Because the |
| 08:41:19AM | 7 | customer who wanted the goat that got replaced was a |
| 08:41:23AM | 8 | Bowman Meats customer. |
| 08:41:26AM | 9 | Q.      Okay. |
| 08:41:26AM | 10 | A.      That bought a goat at the fair that -- however |
| 08:41:31AM | 11 | the -- it was their customer, so I believe Bowman did |
| 08:41:35AM | 12 | the processing all the way through to when the customer |
| 08:41:38AM | 13 | picked up the meat.  My belief.  I didn't -- |
| 08:41:43AM | 14 | Q.      And how do -- why do you believe that? |
| 08:41:44AM | 15 | A.      It was their customer. |
| 08:41:46AM | 16 | Q.      I know, but why do you believe that?  What |
| 08:41:49AM | 17 | prompted you to believe that? |
| 08:41:50AM | 18 | A.      Because the -- I believe Melanie had told me |
| 08:41:58AM | 19 | that the customer goat was missing that was supposed -- |
| 08:42:03AM | 20 | that was -- that customer was supposed to get the goat |
| 08:42:06AM | 21 | to Bowman because the way it happens if you buy a goat |
| 08:42:09AM | 22 | at the fair -- an animal at the fair, you put what |
| 08:42:10AM | 23 | facility you would want it processed at and that |
| 08:42:13AM | 24 | customer put they wanted it processed at Bowman Meats. |
| 08:42:15AM | 25 | Q.      I see.  Okay. |

**B.J. MACFARLANE**

08:42:16AM 1    A.      So that's where it would.

08:42:18AM 2    Q.      Do you know what customer this was, though?

08:42:20AM 3    A.      I do not recall.  No.

08:42:23AM 4    Q.      How would you find out if you wanted to -- if

08:42:25AM 5    you wanted to figure that out?

08:42:27AM 6    A.      Look at the sale records.

08:42:34AM 7    Q.      Okay.  Did you look at the sale records?

08:42:36AM 8    A.      No.

08:42:38AM 9    Q.      Well, how do you know what the customer wanted

08:42:40AM 10   that -- how do you know the customer wanted this meat to

08:42:43AM 11   go to Bowman's if you didn't look at the sale records?

08:42:45AM 12   A.      Because Melanie did.

08:42:47AM 13   Q.      Melanie did?

08:42:48AM 14   A.      Yes.  Because at that point I'm not -- I'm never

08:42:51AM 15   in the office.  I don't have those records with me on

08:42:54AM 16   me.  Those are her records at that point.  As soon as

08:42:57AM 17   the fair's over and she's the one that deals with the --

08:43:05AM 18   and I was just helping out.

08:43:06AM 19          She deals with the -- there's lots of -- not

08:43:10AM 20   lots.  There's a few mistakes that happen in

08:43:13AM 21   recordkeeping along the way in terms of getting the

08:43:15AM 22   animals to where they need to be so she's the one that

08:43:19AM 23   has to deal with that and she's the one that told me

08:43:22AM 24   about this goat missing.

           25   Q.      Okay.

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 08:43:23AM | 1 | A.      The gentleman not getting his goat. |
| 08:43:25AM | 2 | Q.      Okay.  Did she give you the name at the time? |
| 08:43:29AM | 3 | A.      I don't. |
| 08:43:33AM | 4 | Q.      You don't recall? |
| 08:43:34AM | 5 | A.      Don't recall. |
| 08:43:35AM | 6 | Q.      Okay.  So Melanie told you then to contact |
| 08:43:38AM | 7 | Bowman's to have the goat slaughtered at -- have Cedar |
| 08:43:41AM | 8 | slaughtered at your property? |
| 08:43:43AM | 9 | A.      To replace it, yes. |
| 08:43:44AM | 10 | Q.      Okay.  And it's a mobile slaughter, correct? |
| 08:43:46AM | 11 | A.      Yes. |
| 08:43:47AM | 12 | Q.      Do you remember if a gentleman by the name of |
| 08:43:49AM | 13 | Tennessee came out? |
| 08:43:51AM | 14 | A.      I don't recall. |
| 08:43:52AM | 15 | Q.      Do you know someone with a mobile slaughter |
| 08:43:55AM | 16 | truck named Tennessee? |
| 08:43:56AM | 17 | A.      No. |
| 08:43:57AM | 18 | Q.      No?  Okay.  All right.  So -- okay. |
| 08:44:03AM | 19 | So on the 28th, what happened after Bowman's |
| 08:44:07AM | 20 | comes out and slaughters Cedar on your property, then |
| 08:44:10AM | 21 | what happens with his cuts? |
| 08:44:12AM | 22 | A.      They apparently contacted him, and I have no |
| 08:44:18AM | 23 | record of -- I don't -- it's in their hands at that |
| 08:44:22AM | 24 | point. |
| 08:44:22AM | 25 | Q.      But Cedar was, in fact, killed on your property, |

**B.J. MACFARLANE**

08:44:25AM 1  correct?

08:44:25AM 2  A.      Yes.

08:44:26AM 3  Q.      Okay.  And Bowman's took his body?

08:44:32AM 4  A.      Correct.

08:44:33AM 5  Q.      Okay.  All right.  And would Bowman's have

08:44:39AM 6  butchered him or cut him up?  Is that their job as well?

08:44:43AM 7  A.      Process them, yes.

08:44:45AM 8  Q.      Process them as well.  Slaughter and process,

08:44:48AM 9  okay.  All right.  Okay.

08:44:58AM 10         So -- all right.  I have a question and I asked

08:44:59AM 11  you -- I know we went over the sheriff thing several

08:45:02AM 12  times but when I asked you -- when I asked you how many

08:45:12AM 13  times, it's on page 207 of your deposition, "Do you know

08:45:16AM 14  how many times between that period you talked with

08:45:18AM 15  Sheriff Johnson and the DA between the 11th and 25th,"

08:45:21AM 16  and you responded, "A couple of times," is there any

08:45:23AM 17  reason you didn't correct that testimony afterwards in

08:45:26AM 18  your transcript?

08:45:34AM 19         MR. BRIDGES:  Did you -- let me just ask.  Did

08:45:37AM 20  you ever review your transcript for the opportunity to

08:45:38AM 21  make changes?

08:45:39AM 22         THE WITNESS:  No.

08:45:40AM 23         MR. BRIDGES:  Yeah, I don't think I ever sent it

08:45:43AM 24  to him to even do that because I figured we were coming

08:45:46AM 25  back here and you'd be able to talk to him and the

**B.J. MACFARLANE**

08:45:47AM 1  deposition's not concluded yet, so.  So that's me not

08:45:50AM 2  him.

08:45:50AM 3       MR. GORDON:  Okay.  Okay.  Legally, I think

08:45:55AM 4  that's -- I understand you get an opportunity for today,

08:45:56AM 5  but legally, that's still final testimony.

08:45:59AM 6       MR. BRIDGES:  I understand, but I'm just saying

08:46:00AM 7  I don't think I gave him the opportunity to make the

08:46:02AM 8  change is my point.

08:46:03AM 9       MR. GORDON:  Okay.  All right.

08:46:05AM 10      MR. BRIDGES:  So blame me for it.  It's not him.

08:46:07AM 11      MR. GORDON:  Q.  Okay.  So after Bowman's

08:46:16AM 12  slaughtered Cedar, did you contact Melanie or Kathie to

08:46:21AM 13  let them know it was done?

08:46:22AM 14  A.     I believe I did, yeah.

08:46:26AM 15  Q.     Okay.  You believe you did?

08:46:30AM 16  A.     By reading this text, yes.

08:46:32AM 17  Q.     Okay.  Did you call Kathie and let her know it

08:46:35AM 18  was done?

08:46:35AM 19  A.     Looks like it was a text message.  I could have

08:46:37AM 20  called her too.  I do not recall.

08:46:39AM 21  Q.     Okay.  If Kathie -- I have a question, though.

08:46:41AM 22  Kathie received a replacement goat, correct, for the

08:46:44AM 23  barbecue?

08:46:45AM 24  A.     No.  Not to my -- that's not my -- I don't

08:46:51AM 25  believe so.

**B.J. MACFARLANE**

08:46:51AM 1   Q.    Well, let me ask you.  Cedar wasn't going to

08:46:53AM 2   Kathie, you testified to that, correct?

08:46:55AM 3   A.    No.

08:46:56AM 4   Q.    So why at this point in time --

08:46:58AM 5   A.    Yes.  I'm -- yes, the goat did not go to Kathie.

08:47:01AM 6   Q.    Okay.  So why at this point in time did you

08:47:04AM 7   believe Kathie was the owner?

08:47:05AM 8   A.    Because she was -- that goat was destined for

08:47:17AM 9   the barbecue.  And she was the coordinator, or I'm not

08:47:21AM 10  sure her position, but she was the one in charge of

08:47:25AM 11  that.  And that's why --

08:47:26AM 12  Q.    Did Kathie direct you to give this goat to

08:47:29AM 13  another person then?

08:47:30AM 14  A.    She was fine with that.  Melanie might have

08:47:38AM 15  talked to her.  I think somebody was -- yeah, she was

08:47:42AM 16  fine with it.

08:47:43AM 17  Q.    So you're not aware of Kathie getting

08:47:49AM 18  replacement meat for the barbecue?

08:47:51AM 19  A.    No.

08:47:52AM 20  Q.    Okay.  But earlier you said that Cedar was

08:47:55AM 21  replacement meat for someone who bought at the auction?

08:48:03AM 22  A.    I'd have to -- trying to recall.  Yes.

08:48:12AM 23  That's -- which I'm not sure of how that took place.

08:48:19AM 24  Q.    Okay.

08:48:20AM 25  A.    On Kathy's end.

**B.J. MACFARLANE**

08:48:22AM 1  Q.      You understood that Cedar was someone's

08:48:26AM 2  replacement meat, but you also understood that Kathie

08:48:28AM 3  was the owner, correct?

08:48:29AM 4  A.      Yes.

08:48:29AM 5  Q.      Okay.  Okay.  And did you ever talk to -- your

08:48:39AM 6  text mentions the DA as well.  Did you ever talk to the

08:48:43AM 7  DA?

08:48:43AM 8  A.      No.

08:48:44AM 9  Q.      Okay.  Do you know who the DA is or was at the

08:48:46AM 10  time?

08:48:46AM 11  A.      It was a woman.

08:48:47AM 12  Q.      Okay.  And you never spoke to on the phone?

08:48:50AM 13  A.      No.

08:48:51AM 14  Q.      Okay.  All right.  So when your text here

08:48:57AM 15  mentions waiting on permission from -- one moment.

08:49:05AM 16          I know that you when you say waiting on

08:49:09AM 17  permission -- wait -- sorry, I beg your pardon.  Talk to

08:49:14AM 18  sheriff.  To wait until he talks to DA.

08:49:17AM 19          So your -- I know you testified that this -- you

08:49:25AM 20  didn't know what sheriff you were referring to was

08:49:28AM 21  probably Fernandez, you believe.  But -- and this is G

08:49:33AM 22  I'm pointing to right now.

08:49:36AM 23          So it was your understanding that whichever

08:49:40AM 24  sheriff -- person from the sheriff's department you were

08:49:43AM 25  speaking to was waiting to talk to the DA at that time?

**B.J. MACFARLANE**

08:49:45AM 1  A.      And that's what I believe --

08:49:47AM 2           MR. NORTHCUTT:  Objection.  Misstates the

08:49:48AM 3  testimony.

08:49:50AM 4           MR. GORDON:  What was your understanding?

08:50:03AM 5           MR. BRIDGES:  Did you have an understanding, or

08:50:04AM 6  are you just guessing?

08:50:06AM 7           THE WITNESS:  That's why I'm saying I'm guessing

08:50:08AM 8  that that night when he dropped it off, he said to hold

08:50:11AM 9  on to it till --

08:50:13AM 10          MR. GORDON:  Q.  But -- okay.  BJ, this text is

08:50:16AM 11 three days after he dropped it off, though.  So at that

08:50:19AM 12 point in time what was your understanding?

08:50:21AM 13 A.      To wait till I hear from Kathie or Melanie or

08:50:28AM 14 somebody of authority.

08:50:28AM 15 Q.      Okay.  Was it your understanding that Kathie or

08:50:31AM 16 Melanie were talking with the sheriffs for permission

08:50:33AM 17 for you to have Cedar killed?  When I say, "sheriffs," I

08:50:38AM 18 mean the department.

08:50:39AM 19          MR. NORTHCUTT:  Ryan, are you saying the

08:50:41AM 20 sheriff's department or --

08:50:42AM 21          MR. GORDON:  Yeah.  Yeah, I just said that at

08:50:44AM 22 the end, Damian, when you started talking.  Sheriffs

08:50:45AM 23 broadly I mean on that question.

08:50:47AM 24 Q.      Was it your understanding that Kathie --

08:50:50AM 25 Kathie -- or that Kathie and Melanie were waiting on

**B.J. MACFARLANE**

08:50:52AM 1  permission from the sheriffs, broadly speaking, to --

08:50:55AM 2  and the DA to -- for permission to kill Cedar?

08:50:59AM 3  A.      Yes.

08:51:00AM 4  Q.      Okay.  All right.  So after July 11th, did you

08:51:08AM 5  talk to anyone at the sheriff's department?

08:51:10AM 6  A.      I don't recall.

08:51:11AM 7  Q.      Okay.  But you might have?

08:51:15AM 8  A.      There's a possibility, yes.  But I have no --

08:51:22AM 9  when the goat was killed July -- what was the date,

08:51:28AM 10  28th.

08:51:29AM 11  Q.      Okay.

08:51:29AM 12  A.      I don't recall.

08:51:30AM 13  Q.      Okay.  You don't recall.  So how did you know

08:51:32AM 14  when to call Bowman's to set up the slaughter?

08:51:36AM 15  A.      I think it was between Melanie and Kathie.

08:51:40AM 16  Q.      Okay.

08:51:41AM 17  A.      Touching bases with each other.  And --

08:51:46AM 18          MR. BRIDGES:  You've answered.  Go ahead.

08:51:48AM 19          MR. GORDON:  Q.  So you knew to call because it

08:51:52AM 20  was between Melanie and Kathie touching bases with each

08:51:54AM 21  other, correct?

08:51:54AM 22  A.      Yes.

08:51:55AM 23  Q.      And did any of them tell you that the sheriff

08:52:01AM 24  had -- by sheriff, Damian, don't need to object.  I'm

08:52:04AM 25  saying sheriffs broadly.  Had given a green light to

**B.J. MACFARLANE**

08:52:07AM 1  kill Cedar?

08:52:08AM 2  A.     That would --

08:52:10AM 3        MR. NORTHCUTT:  Can we use sheriff's department

08:52:12AM 4  instead of sheriffs broadly?

08:52:14AM 5        MR. GORDON:  Sure.  Sure.  Anyone at the

08:52:16AM 6  sheriffs -- did anyone at the sheriff's department -- is

08:52:19AM 7  it your understanding that -- that someone at the

08:52:23AM 8  sheriff's department told Melanie or Kathie that it's

08:52:27AM 9  okay to proceed with slaughtering Cedar?

08:52:29AM 10        MR. BRIDGES:  Calls for speculation.  If you

08:52:30AM 11  have a basis for it, you can answer.

08:52:33AM 12        MR. GORDON:  I'm not asking him to speculate.

08:52:35AM 13  I'm asking if it's his understanding.

08:52:38AM 14        THE WITNESS:  I don't know.

08:52:46AM 15        MR. GORDON:  Q.  Well, why did you mention in

08:52:48AM 16  your text waiting on them if that wasn't -- if you

08:52:56AM 17  weren't -- if you --

08:52:57AM 18  A.     Because I believe the sheriff's department was

08:52:59AM 19  in contact with Melanie or Kathie.

08:53:09AM 20  Q.     Okay.  How could -- now, you updated Kathie on

08:53:15AM 21  the slaughter date, correct, on the 28th?

08:53:18AM 22  A.     (Nods head up and down.)

08:53:18AM 23  Q.     So how could Kathie have -- why are you updating

08:53:23AM 24  Kathie on what day he's going to be slaughtered if she

08:53:26AM 25  told you to go ahead and do it?

**B.J. MACFARLANE**

08:53:28AM 1  A.      I was just letting her know.  Because it was a

08:53:36AM 2  couple days that we were waiting, I believe.

08:53:39AM 3  Q.      But shouldn't she already know if -- if Kathie

08:53:41AM 4  already is the one talking to the sheriff and Melanie,

08:53:44AM 5  shouldn't she already know that you can go ahead and

08:53:47AM 6  slaughter him?

08:53:48AM 7  A.      I think we were waiting -- the dates -- Bowman

08:53:52AM 8  couldn't get to it for several, a week maybe.  I don't

08:53:55AM 9  remember the timeline, but they could not get to it

08:53:57AM10  right away.

08:53:58AM11  Q.      So you, based on what you said, did you get a --

08:54:02AM12  and I'm saying -- you know what I mean by green light,

08:54:05AM13  permission.  Did you get permission from Kathie or

08:54:08AM14  Melanie a week -- strike that.

08:54:10AM15          Cedar was slaughtered on the 28th, correct?

08:54:12AM16  A.      Yes.

08:54:13AM17  Q.      Okay.  And did you get permission from Kathie or

08:54:16AM18  Melanie, is it your testimony, that it was approximately

08:54:20AM19  a week beforehand?

08:54:23AM20  A.      A guesstimate, yes.

08:54:25AM21  Q.      Yes, okay.  That's fine.  That's your best

08:54:28AM22  estimate --

08:54:29AM23  A.      Yes.

08:54:29AM24  Q.      -- a week beforehand?

08:54:32AM25          So it's your testimony that sometime between

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 08:54:34AM | 1 | July 11th and July 28th, Melanie or Kathie told you to |
| 08:54:39AM | 2 | have Cedar slaughtered? |
| 08:54:40AM | 3 | A.     Yes. |
| 08:54:41AM | 4 | Q.     Okay.  But likely, a week before July 28th |
| 08:54:46AM | 5 | because you needed to arrange with Bowman's? |
| 08:54:48AM | 6 | A.     Yes. |
| 08:54:49AM | 7 | Q.     I think I -- I think I asked you this, but feel |
| 08:55:00AM | 8 | free to answer again just so I'm clear.  So is it your |
| 08:55:03AM | 9 | testimony that between July 11 and July 28th, you did |
| 08:55:07AM | 10 | not speak with anyone at the sheriff's department?  Or |
| 08:55:11AM | 11 | the DA's office -- well, let's start with the sheriff's |
| | 12 | department. |
| | 13 |         MS. SHAKIB:  Can you restate the question? |
| 08:55:20AM | 14 |         MR. GORDON:  Is it your testimony that between |
| 08:55:21AM | 15 | July 11th and July 28th, you did not speak with anyone |
| 08:55:24AM | 16 | at the sheriff's department? |
| 08:55:26AM | 17 |         MR. BRIDGES:  Asked and answered.  Go ahead. |
| 08:55:30AM | 18 |         THE WITNESS:  I don't recall. |
| 08:55:31AM | 19 |         MR. GORDON:  Okay.  Is it your testimony that |
| 08:55:32AM | 20 | between July 11 and July 28th, you did not speak with |
| 08:55:35AM | 21 | anyone the DA's office? |
| 08:55:37AM | 22 |         MR. BRIDGES:  Asked and answered.  Go ahead. |
| | 23 |         THE WITNESS:  No. |
| 08:55:43AM | 24 |         MR. NORTHCUTT:  Join. |
| 08:55:56AM | 25 |         MR. GORDON:  Q.  By -- and you said "no."  Is |

**B.J. MACFARLANE**

08:55:57AM 1 that what you --

08:55:58AM 2 A.      The DA's office.

08:55:59AM 3 Q.      By "no," you mean, no, I did not speak with

08:56:03AM 4 someone, or, no, that is not my testimony, I did speak

08:56:06AM 5 with someone?  There's a double negative there.

08:56:09AM 6 A.      I do not recall speaking to anyone from the DA's

08:56:12AM 7 office.

08:56:12AM 8 Q.      During that time period of July 11 to July 28th?

08:56:15AM 9 A.      Yes.

08:56:15AM 10 Q.      Okay.  But what about prior to July 11th?

08:56:18AM 11 A.      No.  Do not recall speaking with anyone at the

08:56:21AM 12 DA's office.

08:56:22AM 13         MR. GORDON:  Okay.  Okay.  Let's take five.

08:56:28AM 14         THE VIDEO SPECIALIST:  We're off the record, and

08:56:30AM 15 the time is 8:56.

08:56:59AM 16         (Wthereupon, a break was taken from 8:56

08:58:24AM 17         till 9:07 a.m.)

09:07:30AM 18         THE VIDEO SPECIALIST:  We're back on the record,

09:07:36AM 19 and the time is 9:07.

09:07:39AM 20         MR. GORDON:  Q.  All right.  Mr. Macfarlane,

09:07:43AM 21 just trying to clean up some of the testimony here, so

09:07:46AM 22 I'd prefer if you answer "correct" or "incorrect" as

09:07:51AM 23 opposed to -- I know your answer earlier was "I don't

09:07:53AM 24 know," but these are going to be phrased as "correct" or

09:07:56AM 25 "incorrect" if I'm clarifying your testimony correctly,

**B.J. MACFARLANE**

09:07:59AM 1   all right?

09:08:00AM 2           Okay.  So it's your testimony that after Cedar

09:08:02AM 3   was dropped off at your house on the evening of July

09:08:05AM 4   8th, and between July 8th and July 28th, either Melanie

09:08:09AM 5   or Kathie told you to have Cedar slaughtered, correct?

09:08:12AM 6   A.      Correct.

09:08:13AM 7   Q.      All right.  So it's your testimony that after

09:08:16AM 8   Cedar was dropped off at your house on the evening of

09:08:18AM 9   July 8th, between that date and July 28th, you did not

09:08:21AM 10  speak with anyone at the sheriff's department; correct

09:08:23AM 11  or incorrect?

09:08:24AM 12  A.      Incorrect.  Say that again.

09:08:28AM 13  Q.      Okay.  So between the time that Cedar was

09:08:31AM 14  dropped off on July 8th through July 28th, it's your

09:08:34AM 15  testimony that you did not speak with anyone at the

09:08:36AM 16  sheriff's department; correct or incorrect?

09:08:38AM 17  A.      Incorrect.  I believe I said I don't recall.

09:08:42AM 18  Q.      So you might have?

09:08:43AM 19  A.      Yes.

09:08:46AM 20  Q.      Okay.  And it's your testimony that you've never

09:08:57AM 21  spoken with Michael Johnson, Sheriff Michael Johnson,

09:09:01AM 22  regarding Cedar the goat; correct or incorrect?

09:09:03AM 23  A.      Correct.

09:09:04AM 24  Q.      And it's your testimony that you do not know who

09:09:14AM 25  received Cedar's meat; correct or incorrect?

**B.J. MACFARLANE**

09:09:16AM 1   A.     Correct.

09:09:17AM 2   Q.     Do you know by chance who -- I know you said you

09:09:32AM 3 don't know who received it, but are you thinking of it's

09:09:34AM 4 an individual human being that received it, or is it a

09:09:36AM 5 company?  What is your understanding?

09:09:38AM 6   A.     That's -- there's 300, 400 buyers.  I don't --

09:09:43AM 7 it could be a company.  It could be a person.

09:09:45AM 8   Q.     Okay.  So you don't know who ultimately ate

09:09:49AM 9 Cedar?

09:09:49AM10   A.     No.

09:09:49AM11   Q.     Okay.  All right.  So it's your testimony that

09:09:52AM12 you do not know what happened with Cedar after he was

09:09:56AM13 slaughtered and removed from your property by Bowman's;

09:09:59AM14 correct or incorrect?

09:10:00AM15   A.     Correct.

09:10:00AM16   Q.     So is it your testimony or is it -- it's your

09:10:05AM17 testimony that everything you have done with respect to

09:10:07AM18 Cedar was at the direction of either Lieutenant

09:10:11AM19 Fernandez, Kathie Muse or Melanie Silva; correct or

09:10:13AM20 incorrect?

09:10:14AM21   A.     Correct.

09:10:15AM22       MR. NORTHCUTT:  Objection.  Misstates the

09:10:16AM23 testimony.

09:10:17AM24       THE WITNESS:  Sheriff's department.  I don't --

09:10:21AM25       MR. GORDON:  Q.  Well, who else at the sheriff's

**Challe, Fisher & Morfin** 270
**Redding, California  (530)246-0942**

**B.J. MACFARLANE**

09:10:23AM 1  department besides Lieutenant Fernandez?

09:10:26AM 2  A.    I don't know.  I don't -- do not recall.

09:10:32AM 3  Q.    Who else might it have been?

09:10:35AM 4  A.    Well, to my recollection, it would be Kathie or

09:10:38AM 5  Melanie.

09:10:39AM 6  Q.    Okay.  But a moment ago I just said it's your

09:10:44AM 7  testimony that everything you've done in connection with

09:10:46AM 8  Cedar was at the direction of either Lieutenant

09:10:48AM 9  Fernandez, Melanie or Kathie, and you said, "correct"?

09:10:51AM10  A.    Yes.

09:10:51AM11  Q.    And Mr. Northcutt objected to Fernandez.  Is

09:10:54AM12  it -- should Fernandez not be included in that list?

09:11:00AM13       MR. BRIDGES:  Well, other than what he testified

09:11:01AM14  to before about when Fernandez dropped him off?  And

09:11:04AM15  told him --

09:11:06AM16       MR. GORDON:  Yeah, that's why I said everything

09:11:08AM17  with respect to Cedar.

09:11:09AM18       THE WITNESS:  That night, yeah.

09:11:10AM19       MR. GORDON:  Q.  Okay.  And Fernandez gave you

09:11:13AM20  no directions afterwards?

09:11:14AM21  A.    No.

09:11:15AM22  Q.    Okay.  Is it your testimony that the only time

09:11:25AM23  you ever spoke with anyone at the sheriff's department

09:11:29AM24  about Cedar was at the drop-off when he was dropped off

09:11:32AM25  at your house?  On July 8th?

**B.J. MACFARLANE**

09:11:35AM 1   A.      I do not recall.  I know it was that night.  I

09:11:41AM 2   don't recall.

09:11:41AM 3   Q.      Did you speak -- that's what I'm asking.

09:11:43AM 4           Is it your testimony that you spoke with someone

09:11:45AM 5   at the sheriff's office at some other point in time?

09:11:47AM 6   A.      I do not recall.

09:11:50AM 7   Q.      So, no, it's not your testimony?  What I'm

09:11:54AM 8   asking is it your testimony that you spoke with anyone

09:11:57AM 9   at the sheriff's department at some point other than the

09:11:59AM10   drop-off?

09:12:01AM11   A.      I don't recall if I did.

09:12:03AM12   Q.      So John, do you want to help him out here?  It's

09:12:08AM13   not your testimony then?

09:12:09AM14           MR. BRIDGES:  Well, I think that's what he's

09:12:11AM15   saying.

09:12:12AM16           MR. GORDON:  When he's saying, "I don't recall,"

09:12:12AM17   he's not answering the question, so move to strike,

09:12:14AM18   nonresponsive.  Is it -- if you --

09:12:17AM19           MR. BRIDGES:  I think the issue is -- I'm not

09:12:19AM20   trying to argue with you about this.  He doesn't have to

09:12:21AM21   answer the question the way you want him to.  I think

09:12:23AM22   you asked, and he said he doesn't recall.  He is

09:12:26AM23   giving -- he's trying to give you the answer.

09:12:28AM24           MR. GORDON:  Well, it's a yes or no question, so

09:12:30AM25   maybe you don't need to say "correct" or "incorrect,"

**B.J. MACFARLANE**

09:12:32AM 1   but "yes" or "no" is fine too.

09:12:35AM 2          So is it your -- is it your testimony that you

09:12:37AM 3   did not speak with anyone at the sheriff's department

09:12:40AM 4   apart from when Fernandez dropped off Cedar at your

09:12:46AM 5   property?

09:12:51AM 6          MR. BRIDGES:  Is that your testimony?  Are you

09:12:52AM 7   saying --

09:12:53AM 8          THE WITNESS:  No.

09:12:55AM 9          MR. GORDON:  Q.  No.  Well, no, stop at "no,"

09:12:58AM 10  okay.  And so what are you saying?  Are you saying you

09:13:01AM 11  might have spoken to someone at some other point in

09:13:04AM 12  time?  Is that accurate?

09:13:05AM 13  A.     Possibility.

09:13:06AM 14  Q.     Okay.  So you don't recall speaking with a lot

09:13:17AM 15  of people.  But you do -- you do know for sure you

09:13:21AM 16  didn't speak with Sheriff Johnson; is that accurate?

09:13:23AM 17  A.     To my recollection.  Correct.

09:13:26AM 18  Q.     Let's go through some -- so Mr. Macfarlane, I'm

09:13:39AM 19  going to hand you -- I'm going to hand you some phone

09:13:45AM 20  records, and I've highlighted some numbers here.

09:13:56AM 21         So John, the full packet is like 180 pages.  I

09:14:00AM 22  only picked out the pages where I could find numbers

09:14:02AM 23  that I'm aware of.  So I'll send you the whole thing, of

09:14:05AM 24  course.

09:14:06AM 25         But BJ, these are your phone records from AT&T

**B.J. MACFARLANE**

09:14:10AM 1   from a subpoena that went out.  We're not going to let

09:14:12AM 2   all your calls go out.  This will be redacted, but we're

09:14:13AM 3   going to -- so don't worry about that.  So and I don't

09:14:17AM 4   quite frankly care who you talk to aside from this case

09:14:20AM 5   at all.

09:14:22AM 6          So but I do want to go over some dates and times

09:14:25AM 7   of people that you spoke with.  So I know this doesn't

09:14:28AM 8   say the person but I'm going to -- I know whose numbers

09:14:31AM 9   they are from testimony, so we're going to go over a few

09:14:35AM 10  of them, okay.

09:14:36AM 11         So I'm going to hand you -- Madame Court

09:14:41AM 12  Reporter, we're going to make this an exhibit.  However,

09:14:45AM 13  I would -- if this is possible, I'm going to, I spoke

09:14:49AM 14  with John about this, redact all the numbers on here and

09:14:54AM 15  then send it to you if that's okay.  So this is going to

09:14:57AM 16  be Exhibit H, and I'll send it to him beforehand so he

09:15:01AM 17  can say, yes, that's the exhibit.

09:15:03AM 18         But it will be -- so she's not taking this home

09:15:06AM 19  with her today.  Or you can.  You can have the paper, it

09:15:10AM 20  doesn't matter, but I'm going to send you a digital

09:15:13AM 21  version that will have everything redacted except the

09:15:16AM 22  numbers we discussed.

09:15:17AM 23         MR. BRIDGES:  Can we just go off the record?

09:15:19AM 24         MR. GORDON:  Sure.

09:15:20AM 25         MR. BRIDGES:  Do you have to read us off if we

**B.J. MACFARLANE**

09:15:22AM 1  do that?  I was just going to ask if the court reporter

09:15:26AM 2  it's easier for her to take the paper copy today just so

09:15:28AM 3  she has a placeholder.

09:15:30AM 4       MR. GORDON:  Yeah.

09:15:30AM 5       MR. BRIDGES:  If that's necessary, that's fine.

09:15:31AM 6  We can just replace it later.

09:15:32AM 7       MR. GORDON:  I don't care.  That's fine.  I'll

09:15:33AM 8  send you a replacement one later.

09:15:35AM 9       MR. BRIDGES:  Whatever's easier.

10       (Whereupon, Exhibit H, AT&T Phone records

11       dated 6-25-22 through 9-1-22, was marked

12       for identification.)

09:15:38AM 13      MR. GORDON:  Q.  Okay.  So Mr. Macfarlane, I'm

09:15:40AM 14  going to go over these in order, and here you go.

09:15:48AM 15      So you'll see highlights on them, so you'll see

09:15:52AM 16  incoming, outgoing.  So you recognize your cell phone at

09:15:55AM 17  the time and then another number to call, correct?

09:15:59AM 18  A.     Yes.

09:16:00AM 19  Q.     All right.  So the 005 -- the number highlighted

09:16:03AM 20  here, the 0058 number, do you see that?  That's the last

09:16:07AM 21  four digits?

09:16:08AM 22  A.     Yeah.

09:16:08AM 23  Q.     Okay.  That's Ms. Muse's cell phone number.  Is

09:16:13AM 24  that -- that's what he testified to that that is her

09:16:16AM 25  cell phone number.  Does that look familiar to you?  You

**B.J. MACFARLANE**

09:16:18AM 1    can check your phone if you want to.

09:16:21AM 2    A.      Yes.

09:16:26AM 3    Q.      All right.  One second.

09:16:29AM 4            MR. BRIDGES:  Do you have your cell phone with

09:16:30AM 5    you?

09:16:31AM 6            THE WITNESS:  Yeah.

09:16:31AM 7            MR. BRIDGES:  Okay.  Just make sure if he asks

09:16:33AM 8    you any questions about numbers, if you need to

09:16:35AM 9    reference your phone, I'm sure that's okay just to

09:16:37AM 10   confirm who people are if you need to do that.

09:16:40AM 11           MR. GORDON:  Q.  Sure.  So if you want to check

09:16:49AM 12   her cell phone number to verify.  At least at the time

09:16:51AM 13   it was 0058, and I can pull up her deposition transcript

09:16:55AM 14   so there's no objection.

09:17:15AM 15   A.      That's not the number I have.

09:17:19AM 16   Q.      The ████████████?  I don't know if it's her

09:17:26AM 17   cell, but it's one of her numbers.

09:17:28AM 18   A.      It's her business.

09:17:29AM 19   Q.      The business, okay.  That is -- you recognize

09:17:30AM 20   that as her number?

09:17:32AM 21   A.      Yeah.

09:17:33AM 22   Q.      Okay.  Okay.  So you spoke with her on it looks

09:17:38AM 23   like July 25th.  And this would have been the day Cedar

09:17:42AM 24   was removed.  The timestamp -- the first timestamp on

09:17:46AM 25   page two is earlier in the day.

**B.J. MACFARLANE**

09:17:48AM  1    A.      Yeah.

09:17:49AM  2    Q.      So --

09:17:49AM  3           MR. BRIDGES:  Just real quick.  June 25th.

09:17:51AM  4           MR. GORDON:  I'm sorry.  Yes, June 25th.

09:17:53AM  5           MR. BRIDGES:  You just said, "the 25th."  I want

09:17:55AM  6    to make sure we're --

09:17:55AM  7           MR. GORDON:  Yeah, June 25th.  I don't know if I

09:17:56AM  8    said "July."

09:17:57AM  9    Q.      Okay.  So this gel with your memory, you

09:18:00AM 10    speaking with her on it would have been the Saturday of

09:18:04AM 11    the fair?

09:18:09AM 12    A.      Yeah.  It says I did.  I don't recall.

09:18:13AM 13    Q.      And then you spoke with her, if you want to flip

09:18:15AM 14    the page, looks like there's another highlight at the

09:18:19AM 15    bottom, you spoke with her later in the evening as well.

09:18:24AM 16    It's the very last entry on the page.

09:18:28AM 17    A.      Yeah.

09:18:28AM 18    Q.      You would have been speaking with her at that

09:18:31AM 19    time because of the fair frequently, though, yes?

09:18:33AM 20    A.      Yeah.  Something about the sale.

09:18:35AM 21    Q.      Okay.  All right.  So and the next page as well,

09:18:41AM 22    looks like you had a few more contacts with her the same

09:18:44AM 23    day, June 25th, correct?

09:18:48AM 24    A.      Yeah.

09:18:49AM 25    Q.      Next page.  So this is, again, Ms. Silva's

**B.J. MACFARLANE**

09:18:57AM 1   number.  This is -- now this is the next -- this is the

09:19:01AM 2   looks like the morning about 3 a.m. you tried calling

09:19:04AM 3   her?

09:19:05AM 4        MR. BRIDGES:  You just said, "Ms. Silva's

09:19:07AM 5   number."  Do you mean Ms. Muse?

09:19:08AM 6        MR. GORDON:  No, no, Ms. Silva's.  We're still

09:19:10AM 7   on Silva's number, the 0058.

09:19:13AM 8        THE WITNESS:  I need to -- I thought you said

09:19:15AM 9   that was Muse's number.

09:19:16AM 10        MR. GORDON:  Did I say Muse's?  I thought I said

09:19:20AM 11   Silva.

09:19:20AM 12        MR. BRIDGES:  I was confused, I'm sorry.

09:19:21AM 13        THE WITNESS:  I was looking up Kathie Muse's

09:19:23AM 14   number.  Yes, that is Melanie Silva's number.

09:19:30AM 15        MR. GORDON:  Q.  Melanie Silva's number, okay.

09:19:31AM 16   Okay.  So for the record, all the numbers we've been

09:19:32AM 17   looking at are Ms. Silva, okay.

09:19:36AM 18        So looks like you're speaking with her, you

09:19:39AM 19   know, early in the morning, or at least you called her

09:19:42AM 20   early in the morning.  Do you recall why you would have

09:19:44AM 21   called her early in the morning on, it would have been

09:19:46AM 22   Sunday, a few hours after Cedar was removed?

09:19:50AM 23   A.     I called her about the goat, I'm guessing.

09:19:52AM 24   Q.     Okay.  Do you remember if you spoke with her, it

09:19:55AM 25   would have been 4 a.m. or so; do you remember?

**B.J. MACFARLANE**

09:19:57AM 1   A.      Do not recall.

09:19:59AM 2   Q.      Flip the page, BJ.  So looks like we're on the

09:20:07AM 3   15th now.  So this is a different number.  This is -- do

09:20:12AM 4   you see the number I have highlighted, BJ?

09:20:14AM 5   A.      On page 15?

09:20:17AM 6   Q.      Yeah.  Now, the last four digits are 6789.  It's

09:20:24AM 7   ████████████.  Looks like that number called you.  That

09:20:25AM 8   is the office line for the fair, correct?

09:20:28AM 9   A.      Yeah.

09:20:30AM 10   Q.     If you need to check, you can go -- you can go

09:20:32AM 11   check.  I believe that's the office number of the fair.

09:20:35AM 12          MS. SHAKIB:  Mr. Macfarlane, is your copy

09:20:38AM 13   showing highlights?

09:20:39AM 14          THE WITNESS:  Yeah.  It's faded, but.

09:20:41AM 15          MS. SHAKIB:  Okay.

09:20:41AM 16          MR. GORDON:  Q.  All right.  So on 6-27 you

09:20:45AM 17   had -- do you recall having a conversation with Ms.

09:20:48AM 18   Silva on 6-27?

09:20:49AM 19   A.      I don't recall.  It shows I did, but I do not

09:20:53AM 20   recall.

09:20:54AM 21   Q.      But you remember talking with her around that

09:20:56AM 22   time regarding Cedar, correct?

09:20:57AM 23   A.      I'm sure I did.  I do not recall our -- we

09:21:05AM 24   talked -- I think it was frantic at that point.  Yeah,

09:21:08AM 25   it shows that I did talk to her, yes, but I don't

**B.J. MACFARLANE**

09:21:11AM 1    recall.

09:21:11AM 2    Q.      But that's consistent with your memory that you

09:21:13AM 3    spoke with her on -- on or about June 27th --

09:21:16AM 4    A.      Yes.

09:21:16AM 5    Q.      -- regarding Cedar, correct?

09:21:19AM 6            And you testified, or is it your testimony that

09:21:21AM 7    you were at this time keeping her apprised of everything

09:21:25AM 8    that was going on with your communications with Ms. Long

09:21:27AM 9    and Cedar?

09:21:28AM 10   A.      Yes.

09:21:28AM 11   Q.      So go to the next page, which I believe is page

09:21:36AM 12   19.  So this is June 28th now.  It looks like the first

09:21:42AM 13   two calls highlighted, which are the item 299 and 300

09:21:47AM 14   were from the office line again.

09:21:50AM 15           And then looks like you've got the following two

09:21:54AM 16   ones, entry 301 and 302, are calls between you and --

09:22:00AM 17   Ms. Silva and you from her cell phone, her business

09:22:03AM 18   number, whatever the 0058 number.

09:22:05AM 19           So do you recall speaking with Ms. Silva on the

09:22:08AM 20   28th?  Of June?

09:22:10AM 21   A.      I'm sure I did, yes.

09:22:14AM 22   Q.      And you would have been discussing the Cedar

09:22:16AM 23   situation, correct?

09:22:17AM 24   A.      As -- yeah.  Yeah.

09:22:20AM 25   Q.      Yes?

**B.J. MACFARLANE**

09:22:20AM 1    A.      Yes.

09:22:22AM 2    Q.      That's fine.  Okay.  And looks like on 307 you

09:22:30AM 3    had another call with her.  Entry item number 307.  This

09:22:33AM 4    is the office line now.  So another call with her.  The

09:22:36AM 5    same deal.  You're just keeping her apprised of what's

09:22:39AM 6    going on, correct?

09:22:39AM 7    A.      And we have -- it's -- it's common that after

09:22:45AM 8    junior livestock auction trying to get everything done

09:22:48AM 9    in the show there's other conversations as well.

09:22:50AM 10   Q.      Okay.  All right.  And so same testimony, the

09:22:53AM 11   next page you have another call with her on looks like

09:22:56AM 12   about 6 p.m. on June 28th.  And again, you're -- you're

09:23:05AM 13   keeping her apprised of Cedar at this time and maybe

09:23:07AM 14   some other issues with the auction, correct?

09:23:09AM 15   A.      Yes.

09:23:10AM 16   Q.      Next page.  Same -- same thing.  It's another

09:23:18AM 17   call with Melanie Silva, item 331.

09:23:24AM 18          So same testimony, you're still just keeping her

09:23:29AM 19   apprised of Cedar and the other issues of the livestock

09:23:35AM 20   auction?

09:23:35AM 21   A.      Yes.

09:23:35AM 22   Q.      Were there any other issues by 6-28 with the

09:23:38AM 23   livestock auction?  To discuss with her?

09:23:43AM 24   A.      Nothing as major as this, no.

09:23:47AM 25   Q.      So it was mainly the Cedar conversations?

**B.J. MACFARLANE**

09:23:50AM 1   A.      Yes.

09:23:51AM 2   Q.      Do you recall anything she told you during these

09:23:53AM 3   phone calls?

09:23:54AM 4   A.      No.

09:23:56AM 5   Q.      But do you know at this time that she was

09:24:01AM 6   talking with CDFA?

09:24:03AM 7   A.      Yes.

09:24:04AM 8   Q.      Okay.  Okay.  You can go to the next page.

09:24:15AM 9           So this is -- now we're on -- we're on June 29th

09:24:20AM 10  now.  Looks like you've got several calls with Ms. Silva

09:24:25AM 11  on the 0058 number.  And June 29th -- I'm sorry, we're

09:24:32AM 12  on June 29th.  It's item 415, 416, 417, 418.

09:24:38AM 13          Now, on June 29th, Ms. Silva reported -- or sent

09:24:43AM 14  Fernandez documents for the investigation, that's your

09:24:45AM 15  understanding, correct?

09:24:47AM 16  A.      Yes.

09:24:48AM 17  Q.      So on this date and time would you have been

09:24:50AM 18  talking with Ms. Silva again about the Cedar situation

09:24:54AM 19  on June 29th, 2022?

09:24:56AM 20          MR. BRIDGES:  Calls for speculation.  If you

09:24:58AM 21  remember, go ahead.

09:24:59AM 22          THE WITNESS:  I assume so.

09:25:03AM 23          MR. GORDON:  Q.  Okay.  You believe so because

09:25:05AM 24  that was the only -- that was the only outstanding issue

09:25:09AM 25  with the fair at this point in time that you were

**B.J. MACFARLANE**

09:25:12AM 1    working for for the 2022 fair?

09:25:14AM 2    A.      I assume so, yes.

09:25:15AM 3    Q.      Yes?  Okay.  Go to the next page.  Again, more

09:25:25AM 4    calls.  Now this looks like 5 p.m. or so.  Your

09:25:28AM 5    understanding is you're just discussing Cedar with her

09:25:31AM 6    again at this point in time?  This is on -- again, more

09:25:34AM 7    calls on June 29th.  I'm looking at item 436, 437, 438.

09:25:39AM 8    More calls to Ms. Silva about the same, Cedar most

09:25:42AM 9    likely, correct?

09:25:43AM 10   A.      Most likely.

09:25:46AM 11   Q.      But that's your best estimate, correct?

09:25:49AM 12   A.      Correct.

09:25:50AM 13   Q.      All right.  Next page.  All right.  So we have

09:25:57AM 14   another call with -- on the 29th with -- between Ms.

09:26:02AM 15   Silva.  It's the 0058 number again.  So again, more

09:26:06AM 16   Cedar conversations is your best estimate, correct?

09:26:08AM 17   A.      Correct.

09:26:09AM 18   Q.      Next page.  All right.  So then we flash forward

09:26:21AM 19   to July 8th.  Is that the dates you're looking at for

09:26:24AM 20   highlights, BJ?

09:26:25AM 21   A.      Yeah.

09:26:26AM 22   Q.      So now this 9107 number, who is this?  Is that

09:26:44AM 23   Kathy's number, BJ, 9107?  I believe it is, but you tell

09:26:54AM 24   me.

09:26:54AM 25   A.      Yeah.

**B.J. MACFARLANE**

09:26:55AM  1   Q.      Yeah, okay.  All right.  So on July 8th you're

09:26:58AM  2   talking with Ms. Muse by cell phone looks like.  Do you

09:27:05AM  3   recall the content of that conversation, looking at item

09:27:09AM  4   648 on the phone records?  Do you recall the content of

09:27:12AM  5   this conversation with Kathie Muse?

09:27:14AM  6   A.      That would have been -- the content would have

09:27:16AM  7   been over the goat.

09:27:17AM  8   Q.      Okay.  And did she -- what instructions, if any,

09:27:21AM  9   did Ms. Muse provide you in this conversation?

09:27:23AM 10   A.      I do not recall.

09:27:28AM 11   Q.      What do you believe them to be?

09:27:30AM 12   A.      I couldn't even guesstimate what this call was

09:27:34AM 13   about, I mean.

09:27:35AM 14   Q.      Well, this is -- I'll refresh your memory.  This

09:27:38AM 15   is the date -- July 8th is the date Cedar was delivered

09:27:42AM 16   to your house so -- so do you recall her telling you

09:27:44AM 17   that the sheriffs were going to acquire Cedar that day

09:27:48AM 18   and bring him to you?

09:27:49AM 19   A.      I assume that's what the conversation was.

           20   Q.      Okay.

09:27:52AM 21   A.      That was the date.

09:27:53AM 22   Q.      That was the date.  Do you have a memory of that

09:27:55AM 23   conversation?  Doesn't have to be crystal clear your

09:28:02AM 24   memory but your best estimate is that conversation

09:28:04AM 25   occurred and it would have been around this time; is

**B.J. MACFARLANE**

09:28:08AM 1   that correct?

09:28:08AM 2   A.      Yes.

09:28:08AM 3   Q.      Okay.  So this phone call is -- you believe this

09:28:12AM 4   phone call is when that occurred, correct?

09:28:14AM 5   A.      Yes.

09:28:15AM 6   Q.      Okay.  All right.  Go to the next page.  Okay.

09:28:22AM 7   So same number.  This is July 8th again.  I'm looking at

09:28:27AM 8   item 682.  You're on page 43?

09:28:30AM 9   A.      43.

09:28:31AM 10  Q.      Yeah, okay.  So looks like this call is Kathie

09:28:35AM 11  late at night.  It's 11:18 or so.  So she called you.

09:28:41AM 12  Do you remember what she was telling you at that call?

09:28:46AM 13  A.      No.

09:28:50AM 14  Q.      Did it concern dropping Cedar off at your house?

09:28:53AM 15  A.      I would assume so if it was at 11 o'clock at

09:28:56AM 16  night.

09:28:56AM 17  Q.      Do you remember having a call regarding -- late

09:28:59AM 18  at night after with Kathie regarding Cedar at some -- on

09:29:04AM 19  some date around this time?

09:29:05AM 20  A.      No.  I don't recall.  It's here in front of me,

09:29:07AM 21  I can see that, but I do not recall the exact phone

09:29:10AM 22  call.

09:29:10AM 23  Q.      Okay.  But this call would have been about the

09:29:13AM 24  delivery of Cedar to your property, correct?

09:29:14AM 25  A.      Yes.

**B.J. MACFARLANE**

09:29:15AM 1  Q.     Okay.  Do you recall at that -- about the time

09:29:18AM 2  that Cedar was delivered to your property what

09:29:20AM 3  instructions Ms. Muse gave you?

09:29:22AM 4  A.     I believe it was just taking care of it.

09:29:30AM 5  Q.     I understand.

09:29:32AM 6  A.     Yeah.

09:29:31AM 7  Q.     Is that all -- is the only instruction -- so is

09:29:35AM 8  the only instruction she gave you was to take care of it

09:29:38AM 9  at that point in time?

09:29:39AM 10  A.     I believe so.

09:29:40AM 11  Q.     Okay.  Did -- what instructions did you have

09:29:43AM 12  from Melanie Silva at that point in time?

09:29:46AM 13  A.     To house the goat.

09:29:51AM 14  Q.     Okay.  And did they give you any other

09:29:54AM 15  instructions?

09:29:54AM 16  A.     Not that I recall.

09:29:57AM 17  Q.     Did they tell you -- but they did tell you to

09:30:00AM 18  wait on them for directions from them on what to do with

09:30:03AM 19  it, correct?

09:30:03AM 20  A.     Yes.

09:30:04AM 21  Q.     Okay.  So you can go to the next page, BJ.  So

09:30:12AM 22  July 9th looks like you have another conversation with

09:30:15AM 23  Kathie Muse.  This -- more discussions about Cedar

09:30:21AM 24  presumably.  Is that your recollection?

09:30:23AM 25  A.     Yes.

**B.J. MACFARLANE**

09:30:25AM 1    Q.     Okay.  And this is -- I'm referring to item 711,

09:30:32AM 2    to 715, 716, 717 and then 718.  It's all Kathie Muse

09:30:37AM 3    calls.  So you were talking with her on the 9th about

09:30:40AM 4    Cedar, correct?

09:30:40AM 5    A.     Correct.

09:30:41AM 6    Q.     Okay.  And then on July -- you can flip the

09:30:49AM 7    page, BJ.  Looks like you have another call with Ms.

09:30:53AM 8    Muse on July 11th.  And so this is now you've had Cedar

09:30:59AM 9    for a few days by July 11th.  Do you see the item number

09:31:05AM 10   725 on the highlight, BJ?  Do you see that?

09:31:08AM 11   A.     Yes.

09:31:08AM 12   Q.     Do you recall what this conversation concerned

09:31:11AM 13   on July 11th, 2022?

09:31:13AM 14   A.     I'm assuming it's over the goat.

09:31:16AM 15   Q.     Your best memory is it's over Cedar?

09:31:18AM 16   A.     Yeah.

09:31:18AM 17   Q.     Okay.  And did Ms. Muse give you any

09:31:21AM 18   instructions with respect to Cedar on this call?

09:31:23AM 19   A.     No.  I don't believe so.

09:31:27AM 20   Q.     But previously had she given you instructions to

09:31:32AM 21   just hold him?  Is that your memory?

09:31:34AM 22   A.     That's my memory.

09:31:35AM 23   Q.     Okay.  So at this point in time are you just

09:31:37AM 24   giving her updates?

09:31:39AM 25   A.     I don't recall.

**B.J. MACFARLANE**

09:31:39AM 1  Q.      But it would have concerned Cedar is your best

09:31:44AM 2  estimate?

09:31:44AM 3  A.      Yes.

09:31:45AM 4  Q.      Go to the next page.  So 7 -- we're now on July

09:31:54AM 5  13th.  Again, you're speaking with Ms. Muse.  And do you

09:31:59AM 6  recall this conversation on July 13th?

09:32:03AM 7  A.      I do not recall.

09:32:04AM 8  Q.      At this point in time, though, Ms. -- it's your

09:32:07AM 9  understanding that Ms. Muse and Ms. Silva are in

09:32:10AM 10  communication, correct?

09:32:11AM 11  A.      Yes.

09:32:11AM 12  Q.      Okay.  And it's also your understanding that

09:32:14AM 13  they're in communication with someone at the sheriff and

09:32:17AM 14  the DA's office, correct?

09:32:18AM 15          MR. BRIDGES:  Calls for speculation.  But if you

09:32:20AM 16  know, you can answer.

09:32:20AM 17          MR. GORDON:  I'm just asking his understanding.

09:32:22AM 18          MR. NORTHCUTT:  I'm going to join that

09:32:24AM 19  objection.

09:32:24AM 20          THE WITNESS:  I have no -- I have no

09:32:28AM 21  recollection of them being in contact with them.  I have

09:32:33AM 22  no idea if they were or not.

09:32:34AM 23          MR. GORDON:  BJ, I'm not asking if you witnessed

09:32:37AM 24  a call.  I'm saying at this point in time when you made

09:32:39AM 25  this call, it was your understanding that they were.

**B.J. MACFARLANE**

09:32:41AM 1      MR. BRIDGES:  I think that is calling for

09:32:43AM 2  speculation.  You're asking him to -- you're asking him

09:32:48AM 3  to speculate about what he thinks these other people

09:32:51AM 4  were doing.

09:32:53AM 5      MR. GORDON:  He texted it earlier on -- two days

09:32:57AM 6  earlier that -- so he had information from somewhere.

09:33:00AM 7  I'm asking what his understanding was.

09:33:02AM 8      MR. BRIDGES:  Okay.

09:33:03AM 9      MR. GORDON:  Your understanding at this point in

09:33:04AM 10  time was that Silva and Muse were in communication with

09:33:08AM 11  someone at the sheriff's office and the DA, correct?

09:33:11AM 12      MR. NORTHCUTT:  I'm going to join in the

09:33:12AM 13  speculation objection.

09:33:13AM 14      MR. BRIDGES:  Just to be clear, Ryan, I'm more

09:33:16AM 15  concerned that he's speculating without realizing what

09:33:19AM 16  it is you're trying to get from him.

09:33:21AM 17      MR. GORDON:  I'm just asking what his

09:33:23AM 18  understanding was at the time.  Not to speculate now as

09:33:25AM 19  to what happened.  I'm saying at the time what did you

09:33:27AM 20  think.

09:33:28AM 21      MR. BRIDGES:  Okay.

09:33:29AM 22      THE WITNESS:  At the time I thought -- I mean, I

09:33:31AM 23  guess the whole time it was Kathie Muse's goat.

09:33:34AM 24      MR. GORDON:  Q.  Okay.  But did you

09:33:36AM 25  understand -- at the time you were under the impression

**B.J. MACFARLANE**

09:33:38AM 1  that it was -- that Kathie and Ms. Silva were

09:33:42AM 2  communicating with the sheriff's department?

09:33:44AM 3  A.      I do not know.

09:33:45AM 4  Q.      You did not have any impression at that time one

09:33:48AM 5  way or the other about that?

09:33:49AM 6  A.      No.

09:33:50AM 7  Q.      BJ, why did you put it in a text message then?

09:33:54AM 8  A.      That's what the sheriff's office told me that

09:34:00AM 9  night I'm guessing.  That's --

09:34:03AM 10  Q.      Okay.  So you put this in the text message three

09:34:06AM 11  days after Cedar was dropped off because you -- based on

09:34:11AM 12  something Lieutenant Fernandez said that evening?

09:34:14AM 13  A.      Yes.  Because I was -- yeah.  We did -- I

09:34:19AM 14  don't --

09:34:22AM 15          MR. BRIDGES:  I think the confusion here is

09:34:26AM 16  you're asking him was it your belief that they were

09:34:29AM 17  talking to each other.  His answer is he has no personal

09:34:33AM 18  knowledge of whether they were or not which I think

09:34:36AM 19  you're just talking cross purposes.

09:34:38AM 20          MR. GORDON:  Okay.  I'm not asking -- I'm just

09:34:40AM 21  asking what his belief was.  I'm not asking -- I'm not

09:34:43AM 22  asking what -- you know, and if it was based off

09:34:46AM 23  something Fernandez said that evening like hold it, you

09:34:49AM 24  know, I'll talk with Melanie and the sheriff himself or

09:34:53AM 25  the DA, whoever, I don't know who, but did you have a

**B.J. MACFARLANE**

09:34:57AM 1  belief that, and it could be based off something that

09:35:00AM 2  Fernandez said, but did you have a belief when you're

09:35:03AM 3  talking to Kathie Muse during these conversations on

09:35:06AM 4  July 13th, July 11th that we've been going over that

09:35:10AM 5  Muse and Silva were in communication with the sheriff's

09:35:13AM 6  department -- someone at the sheriff's department and

09:35:16AM 7  DA?

09:35:18AM 8          THE WITNESS:  I have no recollection.  I don't

        9  know.

09:35:20AM 10          MR. GORDON:  Q.  You don't recall if you

09:35:22AM 11  believed it at the time?

09:35:23AM 12  A.     I think I -- I believed that Kathie Muse owned

09:35:25AM 13  this goat is what I --

09:35:28AM 14  Q.     But did you believe they were waiting from

09:35:30AM 15  someone at the sheriff's department, for example, to

09:35:32AM 16  give them the green light to have Cedar killed?

09:35:34AM 17  A.     They could have been.

09:35:38AM 18  Q.     But was that your understanding at the time?

09:35:40AM 19  That's all I'm asking, BJ.

09:35:43AM 20  A.     They could have been, yeah.  I --

09:35:52AM 21  Q.     So, yes, that was your understanding?

09:35:54AM 22  A.     It could have been.

09:35:55AM 23  Q.     That they could have been, okay.

09:35:57AM 24          So -- so is this text message then from

09:36:04AM 25  something -- based off something -- I'm looking now, for

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:36:08AM | 1 | the record, I'm pointing to the July 11th text message. |
| 09:36:10AM | 2 | Is this from -- your statement here about talk to |
| 09:36:15AM | 3 | sheriff and he said to wait until he talks to DA before |
| 09:36:18AM | 4 | we kill goat, is this based off something Fernandez said |
| 09:36:21AM | 5 | to you on July 8th?  Is that your testimony? |
| 09:36:24AM | 6 | A.      I believe so, yes. |
| 09:36:25AM | 7 | Q.      Okay.  So that is your testimony, yes? |
| 09:36:28AM | 8 | A.      (Nods head up and down.) |
| 09:36:28AM | 9 | Q.      Okay.  What did he say to you that evening? |
| 09:36:31AM | 10 | A.      To hold the goat.  That's -- I was housing the |
| 09:36:36AM | 11 | goat.  I housed it. |
| 09:36:37AM | 12 | Q.      Hold the goat until you hear from -- |
| 09:36:39AM | 13 | A.      I was housing it till I heard further from |
| 09:36:43AM | 14 | either Kathie or Melanie. |
| 09:36:45AM | 15 | Q.      Okay.  So he told you to house the goat until |
| 09:36:47AM | 16 | you heard further from Kathie or Melanie?  That's your |
| 09:36:51AM | 17 | testimony, correct? |
| 09:36:52AM | 18 | A.      Yes. |
| 09:36:52AM | 19 | Q.      Okay.  Is there -- why did you wait three days |
| 09:37:03AM | 20 | to share that information with Kathie by text? |
| 09:37:08AM | 21 | A.      Because I believe I was out of town.  July -- I |
| 09:37:19AM | 22 | could have been out of town.  I was -- I don't know. |
| 09:37:24AM | 23 | Q.      You were out of town, but you had Cedar under |
| 09:37:27AM | 24 | your care? |
| 09:37:28AM | 25 | A.      Yes. |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:37:29AM | 1 | Q.      Who was taking care of him? |
| 09:37:30AM | 2 | A.      My father. |
| 09:37:31AM | 3 | Q.      Okay. |
| 09:37:32AM | 4 | A.      At the house right next to him. |
| 09:37:33AM | 5 | Q.      Okay.  So you spoke with Ms. Muse, we just went |
| 09:37:40AM | 6 | through the call log -- |
| 09:37:41AM | 7 | A.      Yeah. |
| 09:37:41AM | 8 | Q.      -- several times before this -- while you had |
| 09:37:44AM | 9 | Cedar before -- after -- strike that. |
| 09:37:50AM | 10 | You spoke with Ms. Muse several times after |
| 09:37:53AM | 11 | Cedar was dropped off between sending this text on July |
| 09:37:56AM | 12 | 11th, though, correct? |
| 09:37:57AM | 13 | A.      Yes. |
| 09:37:57AM | 14 | Q.      By phone, correct? |
| 09:37:59AM | 15 | A.      (Nods head up and down.) |
| 09:38:01AM | 16 | Q.      Why didn't you tell her this content over -- |
| 09:38:03AM | 17 | over the phone? |
| 09:38:04AM | 18 | A.      I might have.  I don't know. |
| 09:38:08AM | 19 | Q.      Doesn't this suggest a new conversation, though, |
| 09:38:11AM | 20 | because you would have already told her all your |
| 09:38:13AM | 21 | conversations with Fernandez? |
| 09:38:15AM | 22 | A.      I do not recall why. |
| 09:38:20AM | 23 | MR. BRIDGES:  You answered. |
| 09:38:22AM | 24 | MR. GORDON:  Q.  Okay, you do not recall.  So |
| 09:38:25AM | 25 | this -- this testimony might refer to a new conversation |

**B.J. MACFARLANE**

09:38:30AM 1  with the sheriff -- someone at the sheriff's department

09:38:32AM 2  or DA, though, correct?  Because you had already had --

09:38:36AM 3  you had already had several conversations on the phone

09:38:38AM 4  with Ms. Muse after Cedar was dropped off, and you're

09:38:42AM 5  texting with Ms. Muse in this text chain.  So might this

09:38:47AM 6  refer to a new conversation with someone at the

09:38:50AM 7  sheriff's department or the DA?

09:38:52AM 8  A.      I do not recall.  I do not recall.

09:38:56AM 9  Q.      Move to strike.  I'm asking if it might refer to

09:38:58AM 10 one.

09:38:58AM 11         MR. BRIDGES:  It calls for speculation.

09:38:59AM 12         MR. NORTHCUTT:  Asked and answered.  Calls for

09:39:01AM 13 speculation.

09:39:01AM 14         MR. GORDON:  That's fine.  I'm not asking him to

09:39:03AM 15 speculate, but might it refer -- if you don't recall,

09:39:05AM 16 might it refer to a new conversation?

09:39:09AM 17         MR. NORTHCUTT:  He says he doesn't recall, Ryan.

09:39:11AM 18         MR. BRIDGES:  You are asking him to speculate.

09:39:13AM 19         MR. GORDON:  Q.  All right.  So BJ, you do not

09:39:20AM 20 recall after Cedar was dropped off telling Ms. Muse that

09:39:26AM 21 you had instructions from someone at the sheriff's

09:39:32AM 22 office to hold him, correct?  You spoke with her -- you

09:39:34AM 23 spoke with Ms. Muse on July 8th, 9th by phone.  Do you

09:39:41AM 24 recall during any of those conversations on phone, on

09:39:44AM 25 the phone, telling her -- or that you were told to hold

**B.J. MACFARLANE**

09:39:48AM 1  the goat by -- until further notice from the sheriff's

09:39:53AM 2  department?

09:39:53AM 3  A.    I do not recall.

09:39:55AM 4        MR. NORTHCUTT:  Misstates his testimony.  He

09:39:57AM 5  didn't say that he -- he didn't testify that to hold the

09:40:00AM 6  goat until further instructions from the sheriff's

09:40:03AM 7  department.  He said -- he testified earlier that he

09:40:05AM 8  said to hold the goat for either -- for either Kathie or

09:40:11AM 9  Melanie.

09:40:12AM 10        MR. GORDON:  I didn't say he testified to that,

09:40:14AM 11  Damian.  I said do you recall.

09:40:15AM 12        MR. NORTHCUTT:  No, you said -- your question

09:40:18AM 13  said that basically that he had said that -- I can have

09:40:24AM 14  the court reporter read it back.

09:40:25AM 15        MR. GORDON:  That's fine.  I'll do it again

09:40:27AM 16  without your -- with your objection in mind.

09:40:28AM 17        MR. NORTHCUTT:  Okay.  Let's do it again.

09:40:30AM 18        MR. GORDON:  All right.  Although, I'm

09:40:32AM 19  forgetting what I asked.

09:40:35AM 20        MR. NORTHCUTT:  We can have her read it back.

09:40:37AM 21        MR. GORDON:  No, no.  It's fine.  Just give me a

09:40:40AM 22  moment, Damian.

09:40:44AM 23  Q.    Okay.  Okay.  So we went over your calls a

09:40:47AM 24  moment ago, BJ.  You spoke with Ms. Muse on July 8th and

09:40:52AM 25  July 7th, you had several calls with her, correct?

**B.J. MACFARLANE**

09:40:56AM 1   A.     Yes.

09:40:56AM 2   Q.     Okay.  On any of those calls do you tell her

09:40:59AM 3   that you were instructed to hold the -- to hold Cedar

09:41:03AM 4   by -- sorry.  Strike that.

09:41:05AM 5        You testified that you spoke with Ms. Muse

09:41:09AM 6   several times on July 8th and July 9th by -- on the

09:41:13AM 7   phone, correct?

09:41:14AM 8   A.     (Nods head up and down.)

09:41:15AM 9   Q.     All right.  And this is after -- this is after

09:41:20AM 10   Lieutenant Fernandez dropped Cedar off on the -- on your

09:41:24AM 11   property, correct?

09:41:25AM 12   A.     Yes.

09:41:25AM 13   Q.     Okay.  Did you at any point in those calls tell

09:41:30AM 14   Ms. Muse any of the instructions Lieutenant Fernandez

09:41:32AM 15   provided you?

09:41:33AM 16   A.     I do not recall.

09:41:34AM 17   Q.     You do not recall, okay, all right.

09:41:40AM 18        So it's your testimony that even though you had

09:41:44AM 19   numerous conversations with Ms. Muse by phone, this text

09:41:49AM 20   message is the first time you communicated with her on

09:41:54AM 21   July -- strike that.

09:41:57AM 22        So it's your testimony that although you had

09:41:59AM 23   numerous phone calls with Kathie Muse between July 8th

09:42:03AM 24   and July 11th, the first time you told her someone from

09:42:05AM 25   the sheriff's office told you to hold Cedar before

**B.J. MACFARLANE**

09:42:08AM 1   killing was on -- was this text by July 8th.  Is that

09:42:11AM 2   your testimony?

09:42:11AM 3           MR. BRIDGES:  I think it misstates --

09:42:13AM 4           MS. SHAKIB:  July 11th.

09:42:15AM 5           MR. GORDON:  I'm sorry, July 11th.

09:42:15AM 6           MR. BRIDGES:  Misstates his testimony.

09:42:16AM 7           MR. GORDON:  That's why I'm asking if that's his

09:42:19AM 8   testimony.

09:42:19AM 9           MR. NORTHCUTT:  Join.

09:42:20AM 10          MS. SHAKIB:  I think the question got confused.

09:42:22AM 11  If we can clarify the question.

09:42:24AM 12          MR. GORDON:  Sure.  So it's your testimony that

09:42:27AM 13  although you had several calls with Ms. Muse between

09:42:31AM 14  July 8th and July 11th, the first time you told her that

09:42:35AM 15  someone from the sheriff's office told you to hold off

09:42:37AM 16  on killing Cedar was this July 11th text.  Is that your

09:42:40AM 17  testimony?

09:42:40AM 18          MR. NORTHCUTT:  Objection.  Misstates the

09:42:42AM 19  testimony.

09:42:43AM 20          MR. GORDON:  Damian, let me finish my question.

09:42:46AM 21  Is that -- is that -- I'm going to read it again.  Wait

09:42:49AM 22  till I'm done, Damian, because I don't think it's as

09:42:51AM 23  objectionable as you think.

09:42:53AM 24          So is it your testimony that although you had

09:42:55AM 25  numerous phone calls with Kathie Muse between July 8th

**B.J. MACFARLANE**

09:42:58AM 1  and July 11th, the first time you told her someone from

09:43:02AM 2  the sheriff's office told you to hold off on killing

09:43:05AM 3  Cedar was this text message.  Is that your testimony?

09:43:08AM 4        MR. NORTHCUTT:  Okay.  Hold on before we start

09:43:10AM 5  answering questions here, I'm going to object again

09:43:12AM 6  because I think it misstates the prior testimony.  He

09:43:15AM 7  never testified that somebody from the sheriff's

09:43:17AM 8  department told him to hold off on killing Cedar.

09:43:19AM 9        He testified that they told him to hold the goat

09:43:22AM 10 for Kathie or for Melanie.  And I think BJ can go ahead

09:43:28AM 11 and testify and clarify that point.

09:43:30AM 12        Am I mishearing something here?

09:43:32AM 13        MR. GORDON:  I'll ask him again.  I'm not -- I'm

09:43:35AM 14 not sure.

09:43:35AM 15        MR. BRIDGES:  Well, just also to be clear, he

09:43:37AM 16 said he didn't remember what they talked about on the

09:43:38AM 17 phone before that.  He might have told her before this

09:43:41AM 18 text message.  He doesn't really recall.

09:43:43AM 19        MR. GORDON:  Q.  So BJ, what did you mean by, so

09:43:45AM 20 we're clear for the record, "Talked to sheriff and he

09:43:47AM 21 said to wait until he talks to DA before we kill goat"?

09:43:55AM 22 A.     Would you say that again?

09:43:57AM 23 Q.     What did you mean by this statement, "Talked to

09:44:02AM 24 sheriff and he said to wait until he talks to DA before

09:44:05AM 25 we kill goat"?

**B.J. MACFARLANE**

09:44:08AM 1  A.      That is my recollection of what he told me

09:44:11AM 2  Saturday night when he dropped the goat off.

09:44:13AM 3  Q.      And by, "he" --

09:44:15AM 4  A.      Or it could have been detective too.  Both of

09:44:18AM 5  them were there.  One or the other.

09:44:19AM 6  Q.      And you spoke with both of them?

09:44:21AM 7  A.      Yes.

09:44:21AM 8  Q.      Okay.  All right.  So either Fernandez or

09:44:28AM 9  Detective Duncan made that statement to you?

09:44:30AM 10  A.      That's my recollection of where I -- yes.

09:44:34AM 11  Q.      Okay.  All right.  So and the first time that

09:44:38AM 12  you communicated that information to Ms. Muse was this

09:44:42AM 13  July 11th text.  Is that your testimony?

09:44:45AM 14          MR. BRIDGES:  Misstates his testimony.  You can

09:44:48AM 15  answer again.

09:44:48AM 16          THE WITNESS:  I don't recall I mentioned it to

09:44:53AM 17  her on the phone or not.

09:44:54AM 18          MR. GORDON:  Q.  Okay.  So you might have

09:44:55AM 19  mentioned it to her on the phone is your testimony,

09:44:57AM 20  correct?

09:44:57AM 21  A.      (Nods head up and down.)

09:44:58AM 22  Q.      You might have mentioned that to her on the

09:45:00AM 23  phone as well, correct?

09:45:02AM 24  A.      Yes.

09:45:02AM 25  Q.      Okay.  Any reason you would have -- if you did

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:45:04AM | 1 | mention it on the phone, why would you send a follow-up |
| 09:45:07AM | 2 | text of the same information? |
| 09:45:10AM | 3 | A.      I have no idea. |
| 09:45:14AM | 4 | Q.      Okay.  All right.  Okay.  All right.  Let's go |
| 09:45:20AM | 5 | back to the phone records which are going to be Exhibit |
| 09:45:25AM | 6 | H.  BJ, what page are you on? |
| 09:45:28AM | 7 | A.      I'm on 49. |
| 09:45:32AM | 8 | Q.      Okay.  Okay.  And that's the July 11th call you |
| 09:45:38AM | 9 | had with Ms. Muse is highlighted there, correct? |
| 09:45:41AM | 10 | A.      July 13th. |
| 09:45:42AM | 11 | Q.      July 13th, sorry.  Okay.  And you -- we did go |
| 09:45:52AM | 12 | over -- BJ, could you flashback to -- the next one is |
| 09:45:56AM | 13 | 46, right? |
| 09:45:56AM | 14 | A.      Yes. |
| 09:45:56AM | 15 | Q.      And that was a call you had with Ms. Muse as |
| 09:46:01AM | 16 | well, correct, on July 11th? |
| 09:46:04AM | 17 | A.      Yes. |
| 09:46:04AM | 18 | Q.      Okay.  Okay.  All right.  So let's go to the |
| 09:46:08AM | 19 | next page in order, which looks like 54.  So this is Ms. |
| 09:46:18AM | 20 | Muse again you're speaking with on July 14th.  Do you |
| 09:46:21AM | 21 | see this highlight? |
| 09:46:21AM | 22 | A.      Yeah. |
| 09:46:22AM | 23 | Q.      Do you recall this conversation? |
| 09:46:24AM | 24 | A.      No. |
| 09:46:24AM | 25 | Q.      Would it have been about Cedar again? |

**B.J. MACFARLANE**

09:46:27AM 1  A.      I assume so.

09:46:28AM 2  Q.      Okay.  Because this is the only thing you were

09:46:30AM 3  speaking about with Ms. Muse during this timeframe?

09:46:33AM 4  A.      Well, more than likely, yes.

09:46:37AM 5  Q.      Yes?  Okay.  All right.  Go to the next page.

09:46:44AM 6  This is July 16th, another call with Ms. Muse.  So do

09:46:52AM 7  you recall this conversation on July 16th?

09:46:54AM 8  A.      I do not.

09:46:55AM 9  Q.      Okay.  What would you -- what is your best

09:46:58AM 10  estimate of what you would have been -- or what you were

09:47:01AM 11  talking about with -- strike that.

09:47:03AM 12          What is your best estimate of what you were

09:47:06AM 13  likely talking with Ms. Muse about on July 16th?

09:47:09AM 14  A.      I'm guessing the goat.

09:47:10AM 15  Q.      The goat, okay.  Would she have -- do you have

09:47:13AM 16  any recollection of her giving you instructions in this

09:47:17AM 17  period of time?

09:47:18AM 18  A.      No.  No.

09:47:20AM 19  Q.      Okay.  All right.  Do you know if Ms. -- at this

09:47:26AM 20  point in time was it your understanding that Ms. Muse

09:47:28AM 21  was in communication with someone at the sheriff's

09:47:31AM 22  office or the DA?

09:47:33AM 23  A.      I don't -- I do not know.

09:47:34AM 24  Q.      You do not.  Did you ask her?

09:47:35AM 25  A.      I do not recall.

**B.J. MACFARLANE**

09:47:37AM 1   Q.      Okay.  You do not recall asking her?

09:47:39AM 2   A.      No.

09:47:40AM 3   Q.      All right.  You can go to the next page, BJ.

09:47:45AM 4   Again, more conversations with Kathie on July 16th.  So

09:47:52AM 5   same answer as before, these are still Cedar

09:47:54AM 6   conversations?

09:47:55AM 7   A.      Correct.

09:47:56AM 8   Q.      Okay.  So you can go to the next page, BJ.  So

09:48:04AM 9   looks like -- looks like the very bottom of the page,

09:48:13AM10   it's the last one is highlighted.  It's item 1099.  This

09:48:17AM11   looks like a conversation with the fair office.

09:48:19AM12          So is it your understanding you were speaking

09:48:21AM13   with Melanie Silva this day on July 22nd?

09:48:24AM14   A.      Yes.

09:48:25AM15   Q.      Would this conversation have also been about

09:48:27AM16   Cedar?

09:48:28AM17   A.      Yes.  More than likely.

09:48:30AM18   Q.      And what instructions would -- do you recall

09:48:33AM19   receiving from this conversation?

09:48:34AM20   A.      I do not recall.

09:48:36AM21   Q.      Does the date refresh your memory on a

09:48:38AM22   conversation you would have had with Melanie Silva

09:48:40AM23   around that time?  Mind you, this is, you know, about a

09:48:43AM24   week before, six days before Cedar is slaughtered, so.

09:48:49AM25   A.      Yeah.  Cedar the goat, and possibly at some

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:48:54AM | 1 | point we talked about that missing goat.  So it's both |
| 09:48:58AM | 2 | of them. |
| 09:48:59AM | 3 | Q.     What missing -- there's a different missing -- |
| 09:49:02AM | 4 | A.     The one that Cedar replaced. |
| 09:49:03AM | 5 | Q.     Okay.  Okay.  But that's still in -- the missing |
| 09:49:07AM | 6 | goat was in relation to Cedar, correct?  You're only |
| 09:49:10AM | 7 | talking about the missing goat because of Cedar, |
| 09:49:14AM | 8 | correct?  Or the replacement goat, rather, because of |
| 09:49:16AM | 9 | Cedar? |
| 09:49:18AM | 10 | A.     Yes. |
| 09:49:18AM | 11 | Q.     Okay.  All right.  So you can go to the next |
| 09:49:23AM | 12 | page, BJ. |
| 09:49:27AM | 13 |        All right.  So this is more conversations it |
| 09:49:32AM | 14 | looks like with Ms. Silva and Ms. Muse.  Looks like you |
| 09:49:41AM | 15 | had conversations with the both of them that day.  Do |
| 09:49:43AM | 16 | you recall having -- are you -- so you have a call looks |
| 09:49:49AM | 17 | like with -- so your first call is with, you know, |
| 09:49:53AM | 18 | little after 1800, at 18:22, is with -- is with Ms. |
| 09:49:59AM | 19 | Muse, the 9107 number.  Then you -- then you looks like |
| 09:50:03AM | 20 | you call the 4463 number, which is I believe Bowman |
| 09:50:09AM | 21 | Meats.  Is that your understanding? |
| 09:50:10AM | 22 | A.     Yes. |
| 09:50:11AM | 23 | Q.     All right.  So was 7-22 the day when you would |
| 09:50:16AM | 24 | have gotten instructions to kill Cedar?  Or when you did |
| 09:50:21AM | 25 | get instructions to kill Cedar? |

**B.J. MACFARLANE**

09:50:23AM 1    A.      I don't recall the date.

09:50:25AM 2    Q.      Looking at these phone records, does that

09:50:28AM 3    refresh your memory as that being the date?  Because it

09:50:31AM 4    looks like you -- it looks like you speak with -- it

09:50:34AM 5    looks like you speak with Muse and then call Bowman's.

09:50:38AM 6    Looks like you speak with the fair office then Muse and

09:50:42AM 7    then call Bowman's?

09:50:45AM 8    A.      You could -- yeah, you can assume that, I guess.

09:50:49AM 9    Q.      Is that -- does that gel with your memory?

09:50:51AM10            MR. BRIDGES:  We don't want you to assume, so.

09:50:53AM11            THE WITNESS:  I don't recall the exact -- the

09:51:03AM12    conversation.

09:51:04AM13            MR. GORDON:  Q.  I understand that, BJ.  You

09:51:06AM14    might not recall the exact words that were expressed,

09:51:09AM15    but you recall getting permission from -- because you

09:51:12AM16    see the phone records.  It looks like you called the

09:51:14AM17    fair office on July 22nd.  Then you called Ms. Muse, and

09:51:19AM18    then you called Bowman's.  So does this refresh your

09:51:23AM19    memory of getting permission from the fair then Kathie

09:51:26AM20    then calling Bowman's for slaughter of Cedar?

09:51:28AM21    A.      It could, yes.

09:51:34AM22    Q.      Yes is your answer?

09:51:35AM23    A.      It could.

09:51:36AM24    Q.      Is that your -- is that your best -- does

09:51:39AM25    that -- is that your, let's say, best estimate of events

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:51:42AM | 1 | of what happened based off refreshing your memory from |
| 09:51:45AM | 2 | these phone records? |
| 09:51:47AM | 3 | A.    From looking at the phone records, it definitely |
| 09:51:49AM | 4 | could be. |
| 09:51:50AM | 5 | Q.    What else could it have been? |
| 09:51:52AM | 6 | A.    But I don't recall our conversation, so that's |
| 09:51:59AM | 7 | what I'm -- |
| 09:52:00AM | 8 | Q.    But you generally remember the order of events, |
| 09:52:03AM | 9 | correct?  You might not recall the exact conversations, |
| 09:52:05AM | 10 | but you generally remember the order of events, correct? |
| 09:52:08AM | 11 | A.    Yes. |
| 09:52:08AM | 12 | Q.    So your testimony was that you were waiting for |
| 09:52:10AM | 13 | permission from Melanie and Kathie, correct? |
| 09:52:13AM | 14 | A.    Yes. |
| 09:52:13AM | 15 | Q.    All right.  And they at some point gave you |
| 09:52:16AM | 16 | permission, correct? |
| 09:52:17AM | 17 | A.    Yes. |
| 09:52:18AM | 18 | Q.    Okay.  And it was about -- you said it took |
| 09:52:20AM | 19 | Bowman's a week to get out there, correct? |
| 09:52:22AM | 20 | A.    Yes. |
| 09:52:23AM | 21 | Q.    So on 7-22 you called the fair and had a |
| 09:52:29AM | 22 | conversation with Kathie.  Is that -- and then -- or had |
| 09:52:32AM | 23 | a conversation with Ms. Muse and then had a -- then |
| 09:52:35AM | 24 | spoke with Kathie, and then you called Bowman's? |
| 09:52:41AM | 25 | A.    Is that 7 at night? |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 09:52:45AM | 1 | Q.      Would have been -- yeah, the -- the last call? |
| 09:52:50AM | 2 | A.      Military time, isn't that 7:22?  Yeah. |
| 09:52:55AM | 3 | Q.      Yes.  Yes. |
| 09:52:56AM | 4 | A.      I called them it seems late, but. |
| 09:52:59AM | 5 | Q.      You called 'em? |
| 09:53:01AM | 6 | A.      Yeah. |
| 09:53:01AM | 7 | Q.      So but that gels with your memory that they each |
| 09:53:07AM | 8 | gave you permission around -- around that time, 7:22, |
| 09:53:09AM | 9 | and then you called Bowman's to arrange for the |
| 09:53:11AM | 10 | slaughter, correct? |
| 09:53:12AM | 11 | A.      Yes.  I called them to arrange for slaughter. |
| 09:53:15AM | 12 | Q.      Okay.  All right.  But after speaking with -- |
| 09:53:19AM | 13 | A.      Yes. |
| 09:53:19AM | 14 | Q.      -- Kathie and Melanie to get the okay? |
| 09:53:21AM | 15 | A.      Yes. |
| 09:53:21AM | 16 | Q.      Correct? |
| 09:53:22AM | 17 | A.      Yes. |
| 09:53:23AM | 18 | Q.      Okay.  All right.  So you can go to the next |
| 09:53:28AM | 19 | page, BJ.  So this is -- this is now -- so if they gave |
| 09:53:36AM | 20 | you the okay, was it your understanding at the time that |
| 09:53:42AM | 21 | the -- someone at the sheriff's department or the DA had |
| 09:53:46AM | 22 | approved the killing? |
| 09:53:48AM | 23 | MR. BRIDGES:  Calls for speculation. |
| 09:53:50AM | 24 | MR. NORTHCUTT:  Calls for speculation.  Join. |
| 09:53:51AM | 25 | MR. GORDON:  I'm just asking what his |

**B.J. MACFARLANE**

09:53:53AM 1    understanding at the time was.  I'm not asking him to

09:53:55AM 2    speculate as to what they did.  I'm asking him what his

09:53:58AM 3    understanding at the time was.

09:53:59AM 4            THE WITNESS:  My understanding is it was Kathy's

09:54:01AM 5    goat and she -- I don't know if she -- who she talked

09:54:04AM 6    to, but she wanted the goat processed is what my

09:54:10AM 7    understanding is.

09:54:11AM 8            MR. GORDON:  Okay.  But did you understand that

09:54:12AM 9    you were holding the goat until they had coordinated

09:54:15AM 10   with someone at the sheriff's or the DA's office at this

09:54:19AM 11   point in time?

09:54:19AM 12           MR. BRIDGES:  Still calls for speculation.  He's

09:54:21AM 13   just asking you to assume.  What were you assuming at

        14   the time?

09:54:24AM 15           THE WITNESS:  That Kathie --

09:54:24AM 16           MR. NORTHCUTT:  Same objection.

09:54:25AM 17           MR. GORDON:  Yeah, I'm asking what was in his

09:54:27AM 18   head at the time not necessarily -- I don't want you to

09:54:29AM 19   assume now what you were assuming at the time.  I'm

09:54:31AM 20   asking in your head at the time were you under the

09:54:34AM 21   impression that they were -- that Kathie and Melanie

09:54:37AM 22   were waiting for some approval or some direction from

09:54:43AM 23   the sheriff's department or the DA?

09:54:46AM 24           MR. NORTHCUTT:  Same objection.

09:54:49AM 25           MR. GORDON:  Q.  They can object, BJ.  You can

**B.J. MACFARLANE**

09:54:51AM 1  still answer.  I'm just asking what was in your head at

09:54:55AM 2  the time.

09:54:55AM 3  A.     If you're asking what was in my head is it was

09:54:57AM 4  Kathy's goat.

09:54:58AM 5  Q.     I understand that, but did you think Kathie was

09:55:00AM 6  waiting to hear something from the sheriff's department

09:55:02AM 7  or the DA?

09:55:03AM 8          MR. NORTHCUTT:  Asked and answered.

09:55:05AM 9          MR. GORDON:  Then I move to strike his answer as

09:55:07AM10  nonresponsive because I'm just asking if he understands

09:55:09AM11  that Kathie was waiting to hear something from the DA or

09:55:13AM12  sheriff.  That's all I'm asking what his understanding

09:55:16AM13  was at the time.

09:55:17AM14          MR. NORTHCUTT:  Same objection.

09:55:21AM15          THE WITNESS:  I'm not sure what her -- because

09:55:25AM16  in my head at that time it was Kathy's goat.

09:55:27AM17          MR. GORDON:  Q.  What did you -- then why delay

09:55:30AM18  slaughtering him for three weeks?  And why text that you

09:55:35AM19  were waiting for the sheriff -- for -- why -- why your

09:55:41AM20  text on July 11th?

09:55:44AM21  A.     Because that's what I was told and we -- I'm

09:55:49AM22  assuming they were, yes.  I guess, yes, I'm assuming

09:55:53AM23  they were, but I'm assuming.

09:55:54AM24  Q.     Yeah.  That's all I'm -- at the time it was in

09:55:58AM25  your head -- yeah, that's fine.  That's all I'm asking.

**B.J. MACFARLANE**

09:55:59AM 1          At the time you were under the impression that
09:56:01AM 2    they were waiting for the sheriff or the DA, correct?
09:56:05AM 3    A.      Yes.
09:56:05AM 4          MR. NORTHCUTT:  Asked and answered.
09:56:06AM 5          MR. GORDON:  Q.  Okay.  Okay.  All right.  So
09:56:11AM 6    then you have some more calls with -- BJ, what page are
09:56:15AM 7    you on?
09:56:15AM 8    A.      74.
09:56:16AM 9    Q.      Okay, that's what I'm on too.  So this is July
09:56:19AM 10   25th now.  So looks like you have some more calls with
09:56:23AM 11   Ms. Muse.  And then -- several calls with Ms. Muse.  And
09:56:31AM 12   then at around 10 o'clock at night at the very bottom of
09:56:36AM 13   the page looks like you have a call with the fair, so on
09:56:41AM 14   the same date.  Do you have any recollection of these
09:56:44AM 15   calls?
09:56:44AM 16   A.      I do not.
09:56:45AM 17   Q.      Would they have concerned Cedar as well?
09:56:47AM 18   A.      Yes.
09:56:48AM 19   Q.      And then it looks like the -- you can go to the
09:56:55AM 20   next page, BJ.  It's another one at 7-25.  Looks like
09:56:59AM 21   another -- another call with the fair office.  So you
09:57:04AM 22   spoke with -- or you were keeping Melanie apprised at
09:57:08AM 23   this point in time of events as well?  This is now July
09:57:11AM 24   25th.
09:57:12AM 25   A.      Yes.

**B.J. MACFARLANE**

09:57:13AM 1   Q.      Yes, okay.  All right.  Go to the next page.

09:57:16AM 2   And by keeping apprised of events, I mean keeping her

09:57:20AM 3   apprised of what was going on with Cedar and the

09:57:22AM 4   slaughter, etcetera, correct?

09:57:23AM 5   A.      Yes.

09:57:23AM 6   Q.      Okay.  All right.  So you had another call

09:57:28AM 7   with -- what page are you on, BJ?

09:57:31AM 8   A.      78.

09:57:32AM 9   Q.      78.  Okay.  So this is now July 27th.  Looks

09:57:40AM10   like you have a call with Bowman's.  This is the 4463

09:57:43AM11   number.  And this -- was this call, this would have

09:57:47AM12   concerned the slaughter of Cedar on July 27th; is that

09:57:51AM13   correct?

09:57:51AM14   A.      Yes.

09:57:51AM15   Q.      Okay.  All right.  And that's both calls at the

09:57:56AM16   bottom there.

09:57:57AM17           All right.  So you can go to the next page.

09:58:02AM18   July 28th, this is another call with Bowman's.  This is,

09:58:06AM19   again, concerning the slaughter of Cedar?

09:58:08AM20   A.      Yes.

09:58:09AM21   Q.      Okay.  The very bottom on line 126 there, item

09:58:15AM22   1276 there's also another call with Bowman's.  Again,

09:58:18AM23   concerning Cedar?

09:58:19AM24   A.      Yes.

09:58:20AM25   Q.      Okay.  And BJ, you said you do not have -- you

**B.J. MACFARLANE**

09:58:31AM 1  were -- do you have the Bowman's number on your phone?

09:58:34AM 2  Do they -- you don't keep that on?

09:58:37AM 3  A.      (Shakes head side to side.)

09:58:37AM 4  Q.      Okay.  Do you have another number for Bowman's

09:58:39AM 5  by chance?

09:58:43AM 6  A.      I don't have it, no.

09:58:46AM 7  Q.      No?  Okay.  And you don't have the sheriff's

09:58:47AM 8  number in there, either?

09:58:48AM 9  A.      No.

09:58:49AM 10       MR. BRIDGES:  Real quick, you mean Sheriff

09:58:52AM 11  Johnson?

09:58:52AM 12       MR. GORDON:  Sheriff Johnson, yes.  I was being

09:58:54AM 13  careful with my words there, the actual sheriffs.  But I

09:58:56AM 14  see why you'd ask because that would have been a gotcha.

09:59:00AM 15  Q.      I mean Sheriff Johnson, you don't have his phone

09:59:02AM 16  number?

09:59:03AM 17  A.      No.

09:59:03AM 18  Q.      And do you have -- I do have a number for

09:59:04AM 19  Fernandez but you -- do you have a number -- I want to

09:59:11AM 20  see if it's the same number.  Do you have any number for

09:59:13AM 21  Fernandez in your phone?

09:59:14AM 22  A.      No.

09:59:14AM 23  Q.      No?  Okay.  Do you want to just check really

09:59:18AM 24  quick?

09:59:18AM 25       (Pause in proceedings.)

**B.J. MACFARLANE**

09:59:22AM 1    A.      No.

09:59:22AM 2            MR. GORDON:  No.  Okay.  All right.  Okay.

09:59:26AM 3    Let's -- I have to use the restroom, so let's take five.

09:59:30AM 4            THE VIDEO SPECIALIST:  I'm at 1:41.  Another 10

09:59:32AM 5    minutes you're going to have to change, so should I

09:59:35AM 6    change now?

09:59:37AM 7            MR. GORDON:  Yeah, I guess so.  Well, yeah,

09:59:41AM 8    that's fine you can change now.  All right.

09:59:44AM 9            THE VIDEO SPECIALIST:  We're off the record.

09:59:45AM 10   The time is 10 o'clock, and we are at the end of DVD

09:59:51AM 11   media number one.

09:59:54AM 12           (Whereupon, a break was taken from 10:00

10:14:52AM 13           till 10:15 a.m.)

10:14:52AM 14           THE VIDEO SPECIALIST:  We're back on the record.

10:14:54AM 15   The time is 10:15, and this is the start of media number

10:14:57AM 16   two.

10:14:58AM 17           MR. GORDON:  All right.  BJ, we're still --

10:15:01AM 18           THE WITNESS:  We're muted.

10:15:03AM 19           MR. BRIDGES:  Sorry about that.  Damian, we're

10:15:12AM 20   about to go back on, okay.

10:15:15AM 21           MR. NORTHCUTT:  Sounds good.

10:15:16AM 22           MR. GORDON:  Q.  All right.  So BJ, we're just

10:15:20AM 23   going to finish up the phone records really quick.  So

10:15:23AM 24   you're on page 95?

10:15:24AM 25   A.      Yeah.

### B.J. MACFARLANE

10:15:25AM 1   Q.     All right.  So we're now in August, so this is

10:15:28AM 2   August 8th -- or I'm sorry, August 9th.  Looks like

10:15:31AM 3   you're having a conversation with Melanie Silva again

10:15:36AM 4   and then -- a few of them that day on August 9th.  Would

10:15:41AM 5   this -- would this concern Cedar at this time?

10:15:44AM 6   A.     I don't remember any other -- again, I don't

10:15:52AM 7   remember any other issues, so I assume so.

10:15:57AM 8   Q.     Okay.  All right.  And what's the next page you

10:16:04AM 9   got there?  You want to flip it?

10:16:05AM 10  A.     127.

10:16:06AM 11  Q.     All right.  Now, this is next call with looks

10:16:17AM 12  like the 9107 number that's Kathie Muse.  So this is

10:16:22AM 13  August 31st.  That was the date that this lawsuit was

10:16:26AM 14  filed.  Did this call concern that lawsuit?

10:16:28AM 15  A.     Yes.

10:16:31AM 16  Q.     We're on page 127 on item 225.  That's your

10:16:43AM 17  understanding, correct?

10:16:44AM 18  A.     Correct.

10:16:45AM 19  Q.     BJ, what's the next page?

10:16:53AM 20  A.     130.

10:16:54AM 21  Q.     Now, this is a September 1st call you had with

10:17:01AM 22  Melanie Silva again, the 0058 number, on September 1st.

10:17:06AM 23  I'm looking at item 2084.  Would this again have

10:17:10AM 24  concerned the lawsuit that was filed the preceding day?

10:17:13AM 25         MR. BRIDGES:  Just object it lacks foundation

**B.J. MACFARLANE**

10:17:16AM 1  and maybe calls for speculation.  But to the extent that

10:17:19AM 2  you recall or you know --

10:17:20AM 3          MR. GORDON:  I'll rephrase the question.  This

10:17:24AM 4  nine -- September 1st call on -- with Melanie Silva, the

10:17:30AM 5  0058 number, it's item 2084 on the phone records, did

10:17:34AM 6  that conversation concern the lawsuit that -- this

10:17:37AM 7  lawsuit that was filed the preceding day?

10:17:39AM 8          MR. BRIDGES:  Still lacks foundation that he --

10:17:42AM 9  I just said there hasn't been any questioning about

10:17:44AM 10 whether or not he knew a lawsuit had been filed or how

10:17:46AM 11 he found out or anything like that.

10:17:48AM 12         MR. GORDON:  Fair enough.

10:17:50AM 13 Q.     BJ, were you aware that a lawsuit was filed on

10:17:52AM 14 August 31st, 2022?

10:17:54AM 15 A.     Yeah.  Yes.  Yes.  I don't know the exact date,

10:18:01AM 16 but I knew when it happened because --

10:18:05AM 17 Q.     You were texting about it that --

10:18:06AM 18 A.     That's when I started getting my -- the threats.

10:18:10AM 19 Q.     Okay.  All right.  Okay.  So -- so this

10:18:17AM 20 conversation you had on September 1st, 2022, with

10:18:23AM 21 Melanie Silva concerned the lawsuit, correct?

10:18:26AM 22 A.     Yes.

10:18:27AM 23 Q.     Okay.  And then you had a -- that's the office

10:18:35AM 24 number for the fair.  So it looks like you had another

10:18:38AM 25 conversation, you can go to page 131, on September 1st.

**B.J. MACFARLANE**

10:18:43AM 1   So this is, again, would have concerned the lawsuit?

10:18:46AM 2   A.     And the -- it was because of the lawsuit, but

10:18:53AM 3   both of us were getting extreme threats at that time.

10:18:56AM 4   That's when --

10:18:57AM 5   Q.     The day it was filed?

10:18:58AM 6   A.     Was that the day it was filed?

10:19:00AM 7   Q.     It was filed August 31st, so this is the

10:19:02AM 8   following day.

10:19:03AM 9   A.     So maybe not.  It was to do with the lawsuit,

10:19:06AM 10  but I thought at some point -- what -- I'd have to look

10:19:11AM 11  at a calendar.  So that was -- started getting them when

10:19:14AM 12  I went to the Inter-Mountain Fair.  That's right around

10:19:18AM 13  there.

10:19:18AM 14  Q.     Okay.  All right.  We can go off the -- if you

10:19:22AM 15  want to give -- you can give this stack to the court

10:19:25AM 16  reporter.  And this will just be a placeholder.  I'll

10:19:27AM 17  send you redacted versions, and then you can toss that

10:19:30AM 18  or whatever, so.

10:19:30AM 19         John, so it doesn't lack foundation, I am,

10:19:33AM 20  however, going to send the entirety of the records

10:19:36AM 21  redacted.

10:19:37AM 22         MR. BRIDGES:  Okay.  All 180 pages or whatever?

10:19:40AM 23         MR. GORDON:  Yes.  Just so you don't -- unless

10:19:41AM 24  you're going to say you're not going to object to the

10:19:43AM 25  piecemeal.

**B.J. MACFARLANE**

10:19:44AM 1         MR. BRIDGES:  I don't have a problem with

10:19:46AM 2  piecemeal as long as the other phone numbers that we

10:19:49AM 3  haven't testified about are redacted.

10:19:51AM 4         MR. GORDON:  Yes.

10:19:51AM 5         MR. BRIDGES:  But that's fine.  If you want to

10:19:53AM 6  just produce the ones that he talked about today, that's

10:19:56AM 7  fine.

10:19:56AM 8         MR. GORDON:  Yes.  That would only be the ones

10:19:57AM 9  that he -- now if there's other -- but if there's

10:19:59AM 10  other -- I'll redact them, of course, but if there's --

10:20:00AM 11  I'm not waiving any rights to numbers that are redacted

10:20:03AM 12  because he hasn't testified to them today.  There might

10:20:05AM 13  be other numbers in the log that concern other people

10:20:07AM 14  that I don't have -- that I don't have the phone numbers

10:20:09AM 15  to at this point.

10:20:10AM 16         MR. BRIDGES:  Okay.  But for the purposes of the

10:20:12AM 17  deposition --

10:20:12AM 18         MR. GORDON:  His deposition, yes, it will be

10:20:14AM 19  only the ones we talked about.  The rest will be

10:20:16AM 20  redacted.

10:20:17AM 21         MR. BRIDGES:  Correct.

10:20:17AM 22         MR. GORDON:  Okay.  All right.  Okay.

10:20:25AM 23  Q.     BJ, we're going to go through some text messages

10:20:27AM 24  now, which were produced from -- they purport to be text

10:20:34AM 25  messages from you to -- between you and Ms. Silva.  And

**B.J. MACFARLANE**

10:20:38AM 1  you recall producing these text messages?

10:20:39AM 2  A.      Yes.

10:20:39AM 3  Q.      Okay.  I'll give you the first stack.  Okay.

10:21:04AM 4          BJ, so it says December 15th, 20 -- I'm looking

10:21:08AM 5  at -- I gave you a stack of text messages.  We'll turn

10:21:12AM 6  them into an exhibit, but it says December 15th at 3:40

10:21:17AM 7  p.m.  Do you see this text message?

10:21:19AM 8  A.      Yes.

10:21:19AM 9  Q.      Do you know what year this was?  You can check

10:21:22AM 10 your phone if you need to.

10:21:26AM 11 A.      I assume 2022.

         12          (Pause in proceedings.)

10:21:46AM 13 A.      2022.

10:21:47AM 14 Q.      Okay.  All right.  Some of these dates are

10:21:49AM 15 missing in here, so you might have to help me order --

10:21:52AM 16 put this in the correct order, so I'm going to work with

10:21:55AM 17 you on that.

10:21:57AM 18          Okay.  So December 15th, 2022.  And then the

10:22:01AM 19 February 15th.  So we'll put this here.

10:22:04AM 20          And then so do you know, and this is December

10:22:09AM 21 11th, this next page.  So this would be -- preceded

10:22:15AM 22 that, correct, so this would go here?

10:22:17AM 23 A.      Yeah.

10:22:17AM 24 Q.      The pages are out of order, so I'm just trying

10:22:21AM 25 to help you -- me get them in order.

## B.J. MACFARLANE

10:22:22AM 1          So and then we have a September 1st -- and these

10:22:27AM 2   are September 1st -- and these are 2022 you say,

10:22:32AM 3   correct, the December dates, BJ, that you're looking at

10:22:32AM 4   here, the December 15th?

10:22:32AM 5   A.     2022.

10:22:34AM 6   Q.     2022.  So here's 2022 as well, this "CDFA needs

10:22:42AM 7   to nip this in the butt."  So this is right after the

10:22:43AM 8   lawsuit's filed, and I'll ask you specific questions

10:22:46AM 9   about them in a moment.  I'm just trying to have you

10:22:50AM 10  help me get this in correct order.

10:22:51AM 11          So -- so this would go here, correct?

10:22:55AM 12          And then do you know what date -- do you know

10:23:00AM 13  this "Bruce Ross sent this to me."

10:23:03AM 14  A.     That's the next one.

10:23:04AM 15  Q.     That's the next one, okay.  So are these just

10:23:07AM 16  backwards or?

10:23:08AM 17  A.     Yeah.

10:23:08AM 18  Q.     Okay.  Okay.  All right.  Hard for me to tell.

10:23:11AM 19          All right.  So then this one -- supposedly this

10:23:14AM 20  one would go here on top of it?

10:23:18AM 21  A.     What's the date?

10:23:21AM 22  Q.     There's no dates on this one.  That's my

10:23:23AM 23  confusion.

10:23:46AM 24          You're talking about comments, so I presume this

10:23:49AM 25  is also about the lawsuit and Sam Stanton calling,

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:23:51AM | 1 | etcetera.  We'll go over specifically in a moment, so |
| 10:23:54AM | 2 | but I'm just trying to have you help me order these. |
| 10:23:56AM | 3 | A.      Yeah.  I'm trying to find it. |
| 10:23:58AM | 4 | Q.      Okay. |
| 10:24:00AM | 5 | A.      That's me saying -- |
| 10:24:04AM | 6 | Q.      Yes.  That's probably midtext, though, BJ. |
| 10:24:09AM | 7 |         BJ, I think the text started this way. |
| 10:24:14AM | 8 |         BJ, take a look.  You wrote your name, "BJ, good |
| 10:24:19AM | 9 | morning."  So I'm assuming this goes like this.  And |
| 10:24:23AM | 10 | these are just backwards and this goes above but you |
| 10:24:26AM | 11 | tell me. |
| 10:24:26AM | 12 | A.      Yes.  The 31st. |
| 10:24:28AM | 13 | Q.      All right.  So then is this still going |
| 10:24:30AM | 14 | backwards in time with -- this should be above this? |
| 10:24:38AM | 15 | A.      Yes.  That's next. |
| 10:24:39AM | 16 | Q.      Okay.  All right.  John, feel free to jump in. |
| 10:24:42AM | 17 | Are these just all backwards? |
| 10:24:44AM | 18 |         MR. BRIDGES:  I think it's just reverse |
| 10:24:45AM | 19 | chronological, yes. |
| 10:24:47AM | 20 |         MR. GORDON:  Q.  Okay.  All right.  So this here |
| 10:24:48AM | 21 | like this? |
| 10:24:49AM | 22 | A.      Next.  That's a duplicate. |
| 10:24:55AM | 23 | Q.      Duplicate, okay.  So this is -- okay.  So this |
| 10:24:59AM | 24 | stops there.  There's two sets of texts in here for |
| 10:25:03AM | 25 | whatever reason.  Looks like the same thing. |

**B.J. MACFARLANE**

10:25:08AM 1          This is from one of the pdf's you sent us, so.

10:25:20AM 2          Yeah, I think it's this.

10:25:31AM 3          It's the same.  Although this may go back -- BJ,

10:25:45AM 4   you might want to keep your phone out.  This chain might

10:25:49AM 5   go back -- this one looks like it goes back further.  Or

10:25:54AM 6   no, it's the same thing.

10:25:55AM 7   A.     August 1st.

10:25:56AM 8   Q.     It's the same thing just repeating three times

10:25:58AM 9   in a row, okay.  All right.  I think these are all the

10:26:04AM 10  same, but.

10:26:12AM 11          Yeah.  Okay.  I'll double check that.

10:26:17AM 12          Let's go -- so this will be -- this will be

10:26:21AM 13  Exhibit I.  BJ, keep them in order.

10:26:29AM 14          So these appear to be the same.  Let me just

10:26:31AM 15  reverse order this once, then I'll go through it with

10:26:34AM 16  you.

17          (Whereupon, Exhibit I, text chain between

18          BJ Macfarlane and Melanie Silva, date range

19          7-28-22 through 2-15-23, totaling 9 pages,

10:27:03AM 20          was marked for identification.)

10:27:03AM 21  Q.     Okay.  So BJ, this text looks like it starts off

10:27:23AM 22  with, we're on Exhibit I, and do you know what this --

10:27:26AM 23  for the record, BJ, what are you holding right now?

10:27:28AM 24  A.     Text message from Melanie.

10:27:30AM 25  Q.     Between you and Melanie Silva?

**B.J. MACFARLANE**

10:27:33AM 1  A.     Yes.

10:27:33AM 2  Q.    And the first text it looks like your writing on

10:27:37AM 3  the right hand -- the text on the right-hand side of

10:27:41AM 4  yours, correct?

10:27:42AM 5  A.     Yes.

10:27:42AM 6  Q.    Okay.  Says, "Goat is getting butchered within

10:27:46AM 7  the half hour."  So did that tell you that you must have

10:27:49AM 8  sent this text on July 28th, correct?

10:27:52AM 9  A.     Yes.

10:27:52AM 10  Q.    Okay.  And then she responds, "I'm going to come

10:27:57AM 11  by" -- and you write, "I'm going to come by tomorrow if

10:28:00AM 12  you are around after kids doctors appointment.  Can I

10:28:03AM 13  use Zoom one more time."

10:28:04AM 14       And then Melanie responds, "Yes you can.  I

10:28:07AM 15  should be here trying to figure out 3K and add-ons and

10:28:11AM 16  where it should go.  I hate figuring that out."

10:28:15AM 17       Okay.  So the top text where it says, "Goat is

10:28:17AM 18  getting butchered within the half hour," you were just

10:28:22AM 19  explaining to Melanie -- the goat -- strike that.

10:28:24AM 20       The goat here is Cedar, correct?

10:28:26AM 21  A.     Yes.

10:28:26AM 22  Q.    And you were explaining to Melanie that he's

10:28:29AM 23  getting butchered within that day by -- and that, you

10:28:34AM 24  know -- what time of day would this have been, if you

10:28:37AM 25  know?

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:28:37AM | 1 | A.      1:05 p.m. |
| 10:29:20AM | 2 | Q.      1:05 p.m.  Okay.  All right.  Okay.  And when |
| 10:29:24AM | 3 | you say, "I'm going to come by tomorrow if the kids are |
| 10:29:27AM | 4 | around," what were you referring to? |
| 10:29:31AM | 5 |         After the kids -- "I'm going to come by tomorrow |
| 10:29:35AM | 6 | if you are around after kids doctors appointments." |
| 10:29:40AM | 7 | A.      I'm not sure why I wrote that. |
| 10:29:42AM | 8 | Q.      Did you bring Cedar's meat to Melanie the next |
| 10:29:45AM | 9 | day? |
| 10:29:46AM | 10 | A.      No. |
| 10:29:46AM | 11 | Q.      No?  Okay. |
| 10:29:48AM | 12 |         MR. BRIDGES:  Just -- |
| 10:29:51AM | 13 |         MR. GORDON:  That's why I was asking. |
| 10:29:52AM | 14 |         MR. BRIDGES:  Yeah, he said he didn't know what |
| 10:29:55AM | 15 | happened to the meat. |
| 10:29:55AM | 16 |         MR. GORDON:  Yeah.  I wasn't saying he testified |
| 10:29:57AM | 17 | to it.  I was asking looking at this text. |
| 10:30:00AM | 18 | Q.      Okay.  All right.  You respond on the bottom of |
| 10:30:05AM | 19 | that page, "Can you send me buyers list with addresses |
| 10:30:10AM | 20 | in Excel."  What were you referring to there, BJ? |
| 10:30:13AM | 21 | A.      I think I was lining up the pictures for her |
| 10:30:26AM | 22 | because after that we do pictures for the buyers. |
| 10:30:33AM | 23 | Q.      Okay.  Did this -- did that text have anything |
| 10:30:36AM | 24 | to do with Cedar? |
| 10:30:37AM | 25 | A.      No. |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:30:37AM | 1 | Q.      No? |
| 10:30:38AM | 2 | A.      That had to do with getting -- time-consuming |
| 10:30:43AM | 3 | bad process, but we had to line up the buyers with the |
| 10:30:46AM | 4 | pictures so we can give them to the buyers. |
| 10:30:48AM | 5 | Q.      Did you already have the pictures at this time? |
| 10:30:51AM | 6 | A.      No.  The photographer did. |
| 10:30:52AM | 7 | Q.      Okay.  All right.  So you weren't asking for a |
| 10:30:54AM | 8 | buyers list to determine where Cedar went? |
| 10:30:55AM | 9 | A.      No.  I was completing the pictures. |
| 10:30:59AM | 10 | Q.      All right.  Okay.  So August 17th Cedar's dead |
| 10:31:07AM | 11 | at that point, so you write, "Good evening.  Did you by |
| 10:31:10AM | 12 | chance forget us?"  What were you referring to here? |
| 10:31:14AM | 13 | A.      Carcass contest. |
| 10:31:32AM | 14 | Q.      Carcass contest? |
| 10:31:35AM | 15 | A.      Beef carcass contest. |
| 10:31:40AM | 16 | Q.      Okay.  All right.  So BJ, let's go forward to it |
| 10:31:46AM | 17 | will be there's a text from you, the one that starts, |
| 10:31:49AM | 18 | "BJ good morning." |
| 10:31:50AM | 19 | A.      Yeah. |
| 10:31:51AM | 20 | Q.      BJ -- any reason you wrote your name on a text |
| 10:31:57AM | 21 | you were sending? |
| 10:31:58AM | 22 | A.      Probably one I copied. |
| 10:32:02AM | 23 | Q.      Oh, you -- what do you mean, one you copied? |
| 10:32:05AM | 24 | A.      Sam. |
| 10:32:07AM | 25 | Q.      Because you sent this text to Melanie -- |

## B.J. MACFARLANE

10:32:09AM 1   A.      Yes.

10:32:10AM 2   Q.      -- so when I first read it, I thought she was

10:32:12AM 3   saying -- talking to you and it's from her, but it's

10:32:14AM 4   from you to her?

5   A.      Yeah.

10:32:16AM 6   Q.      Correct?  So you just wrote your name just to

10:32:18AM 7   let her know it was you?  Or you said -- you copy and

10:32:23AM 8   pasted from something?

10:32:25AM 9   A.      I don't know why that is.

10:32:33AM 10  Q.      Did you get a -- did you get a -- did you copy

10:32:38AM 11  this text from someone else?

10:32:39AM 12  A.      Not that I remember, no.

10:32:41AM 13  Q.      So no one sent you a text saying, "BJ good

10:32:45AM 14  morning," that you copied from?

10:32:46AM 15  A.      Not that I recall.

10:32:46AM 16  Q.      A moment ago you did say copy and paste or

10:32:50AM 17  uttered those words.

10:32:52AM 18  A.      I don't recall who sent that to me.

10:33:01AM 19  Q.      But someone sent it to you?

10:33:03AM 20  A.      I'm guessing so, yeah.  I don't recall.

10:33:05AM 21  Q.      Okay.  So is it possible you wrote it yourself?

10:33:11AM 22  A.      Possible.

10:33:12AM 23  Q.      Did you get a call from Sam Stanton on August

10:33:15AM 24  31st?

10:33:15AM 25  A.      I don't remember the day, but yes, I did.

**B.J. MACFARLANE**

10:33:17AM 1  Q.    Okay.  It says, "we."  Would you have referred

10:33:20AM 2  to yourself as we, or do you mean your livestock

10:33:23AM 3  company?

10:33:23AM 4  A.    My livestock company would have nothing to do

10:33:27AM 5  with this.

10:33:28AM 6  Q.    No, but I didn't know if someone called

10:33:31AM 7  Macfarlane Livestock, and you meant we as in the

10:33:34AM 8  livestock company?

10:33:35AM 9  A.    Could have been.

10:33:38AM 10  Q.    Okay.  So you might have written this?

10:33:40AM 11  A.    Yes.

10:33:42AM 12  Q.    Okay.  Any reason you -- well, who did you

10:33:49AM 13  understand we to be then?  Or who do you understand we

10:33:55AM 14  to be?

10:33:56AM 15  A.    I don't recall.

10:33:57AM 16  Q.    You and the fair?  If they were -- if Sam

10:34:04AM 17  Stanton was, for example, calling for comment, I'm

10:34:06AM 18  assuming --

10:34:07AM 19  A.    It could have been the fair.

10:34:09AM 20  Q.    Okay.  And what did you mean by "PETA friends"?

10:34:13AM 21  A.    I guess people that -- somebody that was

10:34:30AM 22  involved in PETA, I guess.

10:34:32AM 23  Q.    Okay.  Did you have knowledge that anyone in

10:34:36AM 24  this case involving Cedar was with PETA?

10:34:38AM 25  A.    No.

**Challe, Fisher & Morfin**                                    325
**Redding, California   (530)246-0942**

**B.J. MACFARLANE**

10:34:39AM 1    Q.      Okay.  You were assuming --

10:34:41AM 2    A.      Just assuming.  Gross generalization.

10:34:44AM 3    Q.      It's fine, okay.  Why did you -- just -- why do

10:34:48AM 4    you assume it?

10:34:49AM 5    A.      Because of the -- I'm guessing because of the

10:34:54AM 6    outcry on -- the sanctuary they were at.

10:35:03AM 7    Q.      Okay.  That's right.  The sanctuary when she --

10:35:07AM 8    Jessica removed Cedar and the -- and you thought

10:35:11AM 9    partially because it was, correct me if I'm wrong, but

10:35:15AM10    because he was delivered to Bleating Hearts and you

10:35:18AM11    looked at their website and you thought this -- you

10:35:21AM12    thought the whole thing was some sort of animal rights

10:35:25AM13    stunt, correct?

10:35:25AM14    A.      Yes.

10:35:25AM15    Q.      Okay.  And then the next page, BJ, you write,

10:35:40AM16    "Sam says you are named in the complaint though you are

10:35:43AM17    not a defendant.  Would you have any interest in talking

10:35:44AM18    to a reporter?"

10:35:47AM19            So Sam, you mean Sam Stanton at the Sacramento

10:35:51AM20    Bee?

10:35:51AM21    A.      I believe so.

10:35:52AM22    Q.      Okay.  All right.  And you're asking Melanie if

10:35:55AM23    she would have any interest in talking to a reporter?

10:35:58AM24    A.      Yeah.

10:35:58AM25    Q.      Okay.  Okay.  So moving down, Melanie responds

**B.J. MACFARLANE**

10:36:09AM 1   to you, "He called here already.  I have no comments for

10:36:12AM 2   him though."  Did you forward that message from someone?

10:36:18AM 3          So I guess same question, did you forward that

10:36:21AM 4   message from someone else?  Or do you believe you wrote

10:36:23AM 5   it?  The above message I'm referring to where you talk

10:36:28AM 6   about the "BJ, comma, "good morning."

10:36:32AM 7   A.      I do not recall.

10:36:33AM 8   Q.      But you think you might have written it?

10:36:35AM 9   A.      Yes.

10:36:35AM 10  Q.      Okay.  All right.  All right.  And then she

10:36:41AM 11  says, "It's all in law enforcement's hands."  What did

10:36:45AM 12  you understood her to mean by that?

10:36:47AM 13  A.      As it states.  I'm not sure of the context.  I

10:36:54AM 14  mean, I guess I --

10:36:55AM 15  Q.      Well, it's a civil lawsuit, so the law

10:36:58AM 16  enforcement isn't, you know, prosecuting anything.  Did

10:37:07AM 17  you have -- what did you interpret that to mean at the

10:37:09AM 18  time?

10:37:09AM 19  A.      That it was in law enforcement's hands.  I'm not

10:37:15AM 20  privy -- I mean, I'm not knowledgeable enough to -- I

10:37:18AM 21  just generalization just like calling the sheriff.

10:37:21AM 22  Q.      Yeah.

10:37:21AM 23  A.      I just don't know the court systems, don't know

10:37:24AM 24  any of it.  Just thought it was --

10:37:26AM 25  Q.      Okay.  All right.  And then -- and then you

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:37:29AM | 1 | write, "Bruce Ross sent that to me."  Are you |
| 10:37:33AM | 2 | referring -- now that you -- do you see the next page it |
| 10:37:37AM | 3 | says, "Bruce Ross sent that to me."  Are you referring |
| 10:37:39AM | 4 | to the link below or -- |
| 10:37:40AM | 5 | A.      Yes. |
| 10:37:41AM | 6 | Q.      You're not referring to the message copy and |
| 10:37:43AM | 7 | pasted previously because she asked I believe did |
| 10:37:45AM | 8 | someone forward that message to you, so what's it that |
| 10:37:49AM | 9 | you're responding to?  When you say, "Bruce Ross," do |
| 10:37:51AM | 10 | you mean Bruce Ross -- strike all that.  I'll ask again. |
| 10:37:58AM | 11 |         MR. BRIDGES:  Make sure you go one at a time. |
| 10:38:01AM | 12 | You started talking over him before he finished. |
| 10:38:01AM | 13 |         MR. GORDON:  Q.  Yeah.  Previously, BJ, you have |
| 10:38:03AM | 14 | a text message that starts, "BJ," comma, "good morning," |
| 10:38:06AM | 15 | and Melanie asks you, "Did you forward that message from |
| 10:38:10AM | 16 | someone?"  You see that? |
| 10:38:12AM | 17 | A.      Yes. |
| 10:38:12AM | 18 | Q.      And then you respond, "Bruce Ross sent that to |
| 10:38:14AM | 19 | me."  So did Bruce Ross send you the message above where |
| 10:38:18AM | 20 | it says, "BJ good morning," or did you type that?  Or |
| 10:38:24AM | 21 | alternatively, are you referring to the link below where |
| 10:38:27AM | 22 | it says, "Lawsuit filed"? |
| 10:38:28AM | 23 | A.      I thought it was the link below. |
| 10:38:30AM | 24 | Q.      Okay.  So you think you typed the text, and |
| 10:38:33AM | 25 | Bruce Ross sent you the "lawsuit filed" link? |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:38:36AM | 1 | A.      I remember him sending me this.  The link -- I |
| 10:38:51AM | 2 | remember him sending me the link of this.  I don't |
| 10:38:55AM | 3 | recall. |
| 10:38:55AM | 4 | Q.      Okay.  How did Bruce Ross send the link?  Did he |
| 10:38:58AM | 5 | email it to you or text it to you? |
| 10:39:00AM | 6 | A.      I don't recall. |
| 10:39:06AM | 7 | Q.      Okay.  Did you check your email to see if you |
| 10:39:09AM | 8 | have an email from Bruce Ross? |
| 10:39:12AM | 9 | A.      No.  I -- no. |
| 10:39:15AM | 10 | Q.      Okay.  So I guess in searching for documents to |
| 10:39:18AM | 11 | produce, did you check your email from anything from |
| 10:39:22AM | 12 | Bruce Ross in relation to this matter? |
| 10:39:24AM | 13 | A.      No. |
| 10:39:24AM | 14 | Q.      No?  Okay. |
| 10:39:26AM | 15 | MR. BRIDGES:  Did you search for anything |
| 10:39:29AM | 16 | directly from Bruce Ross?  I mean, if you did a search |
| 10:39:33AM | 17 | procedure and it might have come up from Bruce Ross, is |
| 10:39:36AM | 18 | that what you're asking specifically for something from |
| 10:39:37AM | 19 | Bruce Ross? |
| 10:39:37AM | 20 | MR. GORDON:  I'm asking for Bruce Ross because |
| 10:39:39AM | 21 | it's referencing that he's sending me a text or an email |
| 10:39:43AM | 22 | link presumably. |
| 10:39:46AM | 23 | THE WITNESS:  Well, I did a search, and it |
| 10:39:48AM | 24 | didn't come up. |
| 10:39:49AM | 25 | MR. GORDON:  Q.  Okay.  Okay.  Did you delete |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:39:54AM | 1 | any text messages from Bruce Ross? |
| 10:39:56AM | 2 | A.      No. |
| 10:39:56AM | 3 | Q.      Okay.  So you would still have them.  Did you |
| 10:39:59AM | 4 | delete any emails from Bruce Ross? |
| 10:40:01AM | 5 | A.      I don't believe so. |
| 10:40:02AM | 6 | Q.      You don't believe so, okay.  Okay.  Well, we'll |
| 10:40:04AM | 7 | refer with your counsel afterwards to see if he has |
| 10:40:08AM | 8 | that.  I mean, not right now, John.  I just mean when |
| 10:40:09AM | 9 | this is done.  Because we have a meet and confer letter |
| 10:40:13AM | 10 | stating it. |
| 10:40:14AM | 11 |         By the way, do you have Bruce Ross's cell phone |
| 10:40:16AM | 12 | number? |
| 10:40:17AM | 13 | A.      Yes. |
| 10:40:33AM | 14 | Q.      And what is that? |
| 10:40:34AM | 15 | A.      ██████████. |
| 10:40:40AM | 16 | Q.      Okay.  And Bruce Ross is a -- does he work for |
| 10:40:45AM | 17 | Senator Dahle; is that accurate? |
| 10:40:47AM | 18 | A.      I believe so. |
| 10:40:49AM | 19 | Q.      And how long have you known Bruce Ross? |
| 10:40:53AM | 20 | A.      Not very long.  I mean, at this time, since |
| 10:41:05AM | 21 | COVID is the first time I believe I met him. |
| 10:41:07AM | 22 | Q.      Okay.  All right. |
| 10:41:08AM | 23 |         MR. BRIDGES:  Real quick, just to be clear, in |
| 10:41:10AM | 24 | his first deposition he did reference the email from |
| 10:41:12AM | 25 | Bruce Ross.  I think that was produced. |

**B.J. MACFARLANE**

| | |
|---|---|
| 10:41:16AM 1 | MR. GORDON:  Not with this link attached to it, |
| 10:41:19AM 2 | though, I don't believe.  That's what I'm referring to, |
| 10:41:20AM 3 | John.  But I'll check it again, but I don't -- I don't |
| 10:41:23AM 4 | believe it was with this link so but I will -- I'm |
| 10:41:26AM 5 | prepared to be wrong on that.  Obviously a lot's been |
| 10:41:31AM 6 | produced.  I can't recall everything. |
| 10:41:33AM 7 | Q.    Okay.  So next page, BJ, the text, you write -- |
| 10:41:43AM 8 | you write to Melanie, "CDFA needs to nip this in the |
| 10:41:47AM 9 | butt right now."  I assume you mean bud, but you wrote, |
| 10:41:50AM 10 | "butt."  Has the same effect, right? |
| 10:41:58AM 11 | A.    That's how I say it. |
| 10:41:58AM 12 | Q.    All right.  And you meant -- by that, did you |
| 10:42:00AM 13 | mean you wanted CDFA to take steps so this didn't -- |
| 10:42:05AM 14 | wasn't perceived negatively in the public?  The lawsuit, |
| 10:42:09AM 15 | that is. |
| 10:42:10AM 16 | A.    I believe I was talking about the threats that I |
| 10:42:12AM 17 | was getting.  That's what made me send that message. |
| 10:42:15AM 18 | Q.    Were you getting threats on September 1st? |
| 10:42:19AM 19 | Within hours -- |
| 10:42:20AM 20 | A.    I believe so. |
| 10:42:21AM 21 | Q.    Within hours of this getting filed? |
| 10:42:22AM 22 | A.    I believe so. |
| 10:42:24AM 23 | Q.    Before any news stories were printed? |
| 10:42:27AM 24 | A.    I'll go back and look at the calendar, but I do |
| 10:42:32AM 25 | remember being at the Inter-Mountain Fair helping my |

**B.J. MACFARLANE**

10:42:39AM 1  brother, which was August or September.  September 1st

10:42:46AM 2  was a Thursday, so, yes, Thursday.

10:42:53AM 3  Q.      What threat did you get on September 1st?

10:42:55AM 4  A.      Several phone calls.

10:42:57AM 5  Q.      Did you save any of these calls?

10:43:01AM 6  A.      I'm not sure if I saved these ones, no.

7  Q.      Okay.

10:43:04AM 8  A.      The next round I did.

10:43:05AM 9  Q.      Okay.  So it's your testimony that right here,

10:43:08AM 10  "CDFA needs to nip this in the butt" because -- was --

10:43:14AM 11  explain to me again.  What did you mean by that?

10:43:16AM 12  A.      I believe it was because I was getting calls of

10:43:24AM 13  death threats and hate that I wanted -- somehow -- I

10:43:30AM 14  don't know how or why.  Again, I'm not privy or

10:43:33AM 15  knowledgeable enough in any of this, but somehow get

10:43:36AM 16  ahold of this.

10:43:37AM 17  Q.      And by "get ahold of this," do you mean keep the

10:43:39AM 18  lawsuit from being publicly known?

10:43:43AM 19  A.      I don't know about being publicly known.  Yeah,

10:43:45AM 20  I don't know -- I just wanted it to stop is all I

10:43:48AM 21  wanted.

10:43:48AM 22  Q.      Yes, I understand.  But because -- and if you

10:43:50AM 23  need a moment, I'm happy to give you one.

10:43:52AM 24          But by "stop," you mean you wanted -- this was

10:43:55AM 25  now in public domain and you wanted -- you wanted news

**B.J. MACFARLANE**

10:43:59AM 1   of the lawsuit not to spread, correct, because you

10:44:01AM 2   thought it was leading to threats for you?

10:44:04AM 3   A.     Yes.

10:44:05AM 4   Q.     Okay.  All right.  Okay.  Okay.  And then she

10:44:16AM 5   responds, "I will forward the info.  Thanks.  Sheesh."

10:44:20AM 6   What -- and that was -- this is September 1st still.

10:44:23AM 7   What did you -- actually one second.

10:44:27AM 8          Actually, BJ, it looks like this text where you

10:44:34AM 9   said, "CDFA needs to nip this in the butt right now,"

10:44:38AM 10  that looks like that's an August 31st text.  Tell me if

10:44:41AM 11  I'm wrong.

10:44:42AM 12  A.     Yes.  Yes.

10:44:43AM 13  Q.     Okay.  So the day it was filed, you had already

10:44:44AM 14  gotten threatening phone calls that day?

10:44:46AM 15  A.     Yes.

10:44:47AM 16  Q.     The same day it was filed?

10:44:48AM 17  A.     (Nods head up and down.)

10:44:49AM 18  Q.     Okay.  All right.  That's your testimony.  Okay.

10:44:51AM 19  And you said 10 calls that day?

10:44:53AM 20         MS. SHAKIB:  I don't think there was a clear

10:44:55AM 21  answer on the record.

10:44:56AM 22         MR. GORDON:  Q.  Oh, okay.  All right.  So your

10:44:58AM 23  testimony is the day the lawsuit was filed you were

10:45:01AM 24  receiving threatening calls?

10:45:02AM 25  A.     Yes.

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:45:02AM | 1 | Q.      Okay.  And that is August 31st? |
| 10:45:05AM | 2 | A.      (Nods head up and down.) |
| 10:45:06AM | 3 | Q.      And how many calls did you about receive that |
| 10:45:08AM | 4 | day? |
| 10:45:08AM | 5 | A.      I don't recall.  Roughly five to ten |
| 10:45:13AM | 6 | threatening -- threatening me and my family. |
| 10:45:22AM | 7 | Q.      Okay.  Did you -- now, when you say calls, and |
| 10:45:35AM | 8 | I'm sorry if you need a moment if it's hard to talk |
| 10:45:37AM | 9 | about but did -- were these voicemails, or did you speak |
| 10:45:40AM | 10 | with people on the phone? |
| 10:45:41AM | 11 | A.      I didn't -- I don't make it a habit of answering |
| 10:45:44AM | 12 | calls I don't know.  But this has made it even worse. |
| 10:45:48AM | 13 | So I -- it was all voicemails. |
| | 14 | Q.      Okay. |
| 10:45:49AM | 15 | A.      I might have answered the first one, but after |
| 10:45:54AM | 16 | that I stopped answering my phone. |
| 10:45:56AM | 17 | Q.      Okay.  Did you retain those voicemails? |
| 10:45:58AM | 18 | A.      I don't believe so. |
| 10:45:59AM | 19 | Q.      Okay.  All right.  But you think it was about 10 |
| 10:46:03AM | 20 | voicemails? |
| 10:46:03AM | 21 | A.      Five to ten.  I do not recall. |
| 10:46:06AM | 22 | Q.      And this would have been on the number that we |
| 10:46:08AM | 23 | went through earlier with the phone records? |
| 10:46:09AM | 24 | A.      Yes. |
| 10:46:10AM | 25 | Q.      Okay.  All right.  Okay.  And the next day you |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:46:16AM | 1 | talked with Melanie again.  "Have you heard anything |
| 10:46:18AM | 2 | from CDFA?  I'm going to call them if not.  My name is |
| 10:46:22AM | 3 | getting mentioned in this bullshit." |
| 10:46:25AM | 4 | Did you -- did you call -- then the next -- your |
| 10:46:29AM | 5 | next text, "I'm calling Mike" -- how do I say that? |
| 10:46:34AM | 6 | A.    That's spelled wrong, but it's Francesconi. |
| 10:46:35AM | 7 | Q.    Francesconi, okay.  Did you call Mike |
| 10:46:39AM | 8 | Francesconi? |
| 10:46:39AM | 9 | A.    Yes, I did. |
| 10:46:39AM | 10 | Q.    Okay.  And what did -- did you speak with him? |
| 10:46:42AM | 11 | A.    I believe I did not, no.  I left a message. |
| 10:46:48AM | 12 | Q.    Okay.  What -- do you have his phone number so I |
| 10:46:51AM | 13 | can cross-reference on the phone records at some point? |
| 10:46:54AM | 14 | A.    I do not.  He's not in my contacts. |
| 10:47:12AM | 15 | Q.    Did you call his cell or did you -- did you call |
| 10:47:16AM | 16 | his cell? |
| 10:47:17AM | 17 | A.    I don't recall, but if I didn't have his |
| 10:47:21AM | 18 | contact, I probably just called CDFA. |
| 10:47:23AM | 19 | Q.    Okay.  So it was either CDFA or his cell if you |
| 10:47:27AM | 20 | had it at the time? |
| 10:47:27AM | 21 | A.    Yeah. |
| 10:47:28AM | 22 | Q.    Correct? |
| 10:47:28AM | 23 | A.    Yes. |
| 10:47:29AM | 24 | Q.    The next page says, "I left" -- from a flip, BJ. |
| 10:47:37AM | 25 | "I left Mike a message and talked to Sarah."  Who are |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:47:40AM | 1 | you talking about with Sarah? |
| 10:47:41AM | 2 | A.      She's somebody that works at CDFA.  I don't know |
| 10:47:46AM | 3 | her job title.  I think she's second in charge maybe. |
| 10:47:50AM | 4 | Q.      So are these two separate calls, or did Sarah |
| 10:47:54AM | 5 | take a message from Mike? |
| 10:47:56AM | 6 | A.      I believe I called Sarah afterwards.  And it was |
| 10:48:05AM | 7 | not a -- I called Sarah after that. |
| 10:48:11AM | 8 | Q.      Okay.  And what did you talk about with Sarah? |
| 10:48:13AM | 9 | A.      That I was getting threats.  I don't have her |
| 10:48:25AM | 10 | number. |
| 10:48:25AM | 11 | Q.      What is her last name? |
| 10:48:27AM | 12 | A.      I do not recall. |
| 10:48:30AM | 13 | Q.      Do you kind of remember what it might have |
| 10:48:34AM | 14 | sounded like? |
| 10:48:35AM | 15 | A.      There's three or four gals that worked in there. |
| 10:48:42AM | 16 | I don't remember her last name. |
| 10:48:43AM | 17 | Q.      Okay.  All right. |
| 10:48:49AM | 18 | A.      Yeah, I don't remember. |
| 10:48:50AM | 19 | Q.      Okay.  All right.  Well -- and then did you |
| 10:49:01AM | 20 | ever -- you talked with Sarah.  After this text message, |
| 10:49:04AM | 21 | this is now, I believe this is September 1st text |
| 10:49:08AM | 22 | message, did Mike ever get back to you? |
| 10:49:10AM | 23 | A.      No. |
| 10:49:10AM | 24 | Q.      No?  Did Sarah ever get back to you? |
| 10:49:13AM | 25 | A.      Yes, because I talked to her. |

**B.J. MACFARLANE**

10:49:14AM 1  Q.      Was that your only conversation with her?

10:49:17AM 2  A.      I do not know.  I do not recall.

10:49:26AM 3  Q.      What steps did Sarah say CDFA would take to nip

10:49:31AM 4  this in the butt when you talked with her?

10:49:33AM 5  A.      I don't recall.

10:49:37AM 6  Q.      You don't recall what she said or you do not

10:49:41AM 7  recall -- you don't recall the steps, or you don't

10:49:43AM 8  recall --

10:49:43AM 9  A.      I don't recall what she said.  I was highly

10:49:45AM 10 upset at that point in time.

10:49:46AM 11 Q.      All right.  Okay.  And then going to the next

10:49:55AM 12 page.  So now we're going to go to February -- sorry.

10:50:03AM 13         Let's go to the December 15th, the very last

10:50:07AM 14 page of the text chain.  "Hi, BJ.  I really need to talk

10:50:12AM 15 to you if you could call me back please."  Do you know

10:50:14AM 16 what Melanie is referring to here?

10:50:15AM 17 A.      I believe wanting me to come back to the

10:50:18AM 18 livestock.  I'm pretty sure it was wanting me to come

10:50:21AM 19 back and help with the livestock.

10:50:23AM 20 Q.      Okay.  To the next text, "Hi BJ.  I get we are

10:50:25AM 21 probably the last people you want to talk to but can you

10:50:27AM 22 give me a call back please."  Why would you be the less

10:50:31AM 23 people -- why would they, you know, the fair, we, be the

10:50:32AM 24 last people you want to talk to?

10:50:35AM 25         MR. BRIDGES:  Calls for speculation.  If you

**B.J. MACFARLANE**

10:50:36AM 1   know.

10:50:37AM 2           MR. GORDON:  If you know.

10:50:39AM 3           THE WITNESS:  I have no idea.

10:50:43AM 4           MR. GORDON:  Q.  What did you understand her to

10:50:45AM 5   mean at the time?

10:50:46AM 6   A.      I couldn't tell you.  Guessing over the goat.

10:51:00AM 7   Q.      Okay.  The situation with Cedar was upsetting so

10:51:03AM 8   you -- did -- you did not want to deal with the fair at

10:51:09AM 9   that time?

10:51:09AM10   A.      Correct.

10:51:09AM11   Q.      Okay.  All right.  Did you think the fair -- she

10:51:16AM12   says, "We are probably the last people you would want to

10:51:18AM13   talk to."  Is there any reason that you can think of

10:51:23AM14   that -- or let me ask you this.  Strike that.

10:51:27AM15           At that time were you upset at the way the fair

10:51:31AM16   handled the goat matter?

10:51:31AM17   A.      No.

10:51:32AM18   Q.      No?  Why would you believe that -- why would

10:51:37AM19   she -- well, why did she have the impression you would

10:51:42AM20   probably be the last people you would want to talk to?

10:51:44AM21           MR. BRIDGES:  Calls for speculation.

10:51:45AM22           THE WITNESS:  I don't know.  Over the goat I

10:51:49AM23   said.

10:51:51AM24           MR. GORDON:  Over the goat, okay.  All right.

10:51:52AM25   Let's go to the next.  John, before I go through the

**B.J. MACFARLANE**

10:51:55AM  1    entire exercise with him again, are these other ones

10:51:58AM  2    just backwards as well?

10:51:59AM  3              MR. BRIDGES:  I don't know which ones you're

10:52:00AM  4    looking at, so.

10:52:01AM  5              MR. GORDON:  I'm looking at set -- I'll tell you

10:52:04AM  6    in a second.  Do you know what they are in order?

10:52:06AM  7              MR. BRIDGES:  I do not.

10:52:07AM  8              MR. GORDON:  You do not, okay.  Why are you

10:52:09AM  9    asking which ones we're looking at?

10:52:13AM 10              MR. BRIDGES:  Well, I don't know which ones

10:52:14AM 11    you're looking at anyway.

10:52:14AM 12              MR. GORDON:  No, no, no, I understand.

10:52:16AM 13              Sorry, did you want a copy?  This is just what

10:52:20AM 14    we were going over.

10:52:21AM 15              MR. BRIDGES:  Oh, those ones I saw.

10:52:22AM 16              MR. GORDON:  Well, I assume you've seen all of

10:52:24AM 17    them, but.

10:52:33AM 18              So BJ, help me reorder these ones as well.

10:52:38AM 19    Maybe they are -- this is text messages dash two pdf,

10:52:46AM 20    John.

10:52:48AM 21              So BJ, are these just backwards?  I don't know

10:52:51AM 22    if you want to take a look and tell me if it's the same

10:52:55AM 23    as before.  This is the exhibit whichever one we were

10:53:00AM 24    just on, Madame Court Reporter.

10:53:03AM 25              BJ, keep this in order for the court reporter.

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 10:53:40AM | 1 | Are they just backwards again, BJ? |
| 10:54:21AM | 2 | THE WITNESS:  There's two copies here. |
| 10:54:22AM | 3 | MR. GORDON:  Are there?  There might be.  If |
| 10:54:25AM | 4 | there is, you want to give me the second copy and you |
| 10:54:29AM | 5 | keep the first? |
| 10:55:03AM | 6 | (Pause in proceedings.) |
| 10:55:16AM | 7 | THE WITNESS:  Sorry. |
| 10:55:19AM | 8 | MR. GORDON:  That's fine. |
| 10:55:23AM | 9 | (Pause in proceedings.) |
| 10:57:38AM | 10 | THE WITNESS:  This is an extra page. |
| 10:57:40AM | 11 | MR. GORDON:  That's an extra page, okay.  All |
| 10:57:42AM | 12 | right.  Okay.  So this will be Exhibit J. |
| 10:57:48AM | 13 | BJ, this will be Exhibit J. |
| | 14 | (Whereupon, Exhibit J, text chain between |
| | 15 | BJ Macfarlane and Melanie Silva, date range |
| | 16 | 6-28-22 through 7-18-22, totaling 8 pages, |
| | 17 | was marked for identification.) |
| 10:57:56AM | 18 | MR. GORDON:  So let me really quickly I'm just |
| 10:57:58AM | 19 | going to rearrange the exhibit in my pdf so I can -- |
| 10:58:22AM | 20 | (Pause in proceedings.) |
| 10:58:23AM | 21 | MR. GORDON:  Q.  Looks like it's just backwards |
| 10:58:24AM | 22 | again.  No, it's not. |
| 10:58:31AM | 23 | All right.  I'll just go -- so BJ, give you this |
| 10:58:35AM | 24 | one.  So the first page, do you know about what date |
| 10:58:40AM | 25 | this was?  The way this -- on this exhibit it says, "You |

**B.J. MACFARLANE**

10:58:44AM 1  all right with sending goat lady that she has till

10:58:47AM 2  tomorrow morning at 8 or authorities are going to be

10:58:50AM 3  contacting her," what date that is?  Check your phone if

10:58:54AM 4  you need to.

10:58:55AM 5  A.      June 28th.

10:58:57AM 6  Q.      Okay.  So June 28th this begins.  And we're on

10:59:06AM 7  Exhibit J.  This is Exhibit J.  June 28th it begins.  At

10:59:10AM 8  what time?

10:59:11AM 9  A.      5:41 p.m.

10:59:16AM10  Q.      Okay.  All right.  Okay.  So what is the next

10:59:25AM11  page?

10:59:27AM12          Now, actually before we change, BJ, who is -- it

10:59:30AM13  says, "I just saw voicemail" -- at the bottom, Ms.

10:59:34AM14  Silva, she writes, "I just saw voicemail.  I emailed

10:59:39AM15  Orlando list Monday."  What list is being referred to

10:59:41AM16  here?

10:59:41AM17  A.      Orland Butcher.

10:59:44AM18  Q.      For -- okay, for Cedar?

10:59:46AM19  A.      No.  Nothing to do with this.

10:59:49AM20  Q.      Okay.  All right.  What I suspected, but I'm

10:59:50AM21  just confirming.

10:59:52AM22          All right.  So let's go to the next page.  And

10:59:55AM23  what's the top of the next page says, "Yes"?

10:59:57AM24  A.      "Yes."

10:59:57AM25  Q.      Okay.  "Yes.  I emailed Mike and left voice" --

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:00:00AM | 1 | that same one?  Okay.  All right.  Yeah. |
| 11:00:04AM | 2 | "Good morning.  Any word from our goat lady?" |
| 11:00:06AM | 3 | So you were asking as of June 29th if she had heard from |
| 11:00:13AM | 4 | Ms. Long presumably, correct? |
| 11:00:14AM | 5 | A.      Yes. |
| 11:00:15AM | 6 | Q.      All right.  And then at the bottom of that you |
| 11:00:19AM | 7 | write, "Kathie is pissed now too because," and then -- |
| 11:00:25AM | 8 | and then where is -- what's the next page after this? |
| 11:00:36AM | 9 | A.      Sorry, I'm out of order. |
| 11:00:38AM | 10 | Q.      You're out of order.  So one second.  Which one |
| 11:00:46AM | 11 | is that? |
| 11:00:56AM | 12 | "She owns the goat.  Do you want me to call CHP |
| 11:01:00AM | 13 | or you want me to" -- or it says, "Do you want to call |
| 11:01:04AM | 14 | CHP or you want me to?"  Where did you get the idea to |
| 11:01:07AM | 15 | call CHP? |
| 11:01:08AM | 16 | A.      Because it's the state fairgrounds.  They have |
| 11:01:10AM | 17 | jurisdiction over the state fairgrounds. |
| 11:01:11AM | 18 | Q.      Understood.  Okay.  And this is -- the date of |
| 11:01:15AM | 19 | this text is what?  This is the 29th? |
| 11:01:18AM | 20 | A.      June 29th. |
| 11:01:19AM | 21 | Q.      29th, okay.  Okay.  All right.  And then at that |
| 11:01:26AM | 22 | point in time you had Jessica's phone labeled as "goat |
| 11:01:30AM | 23 | thief" it appears? |
| 11:01:31AM | 24 | A.      Yes. |
| 11:01:32AM | 25 | Q.      We are -- and then she responds, "We are |

**B.J. MACFARLANE**

11:01:35AM 1  contacting the sheriff for the goat."  What is the next?

11:01:45AM 2          Hold on a second.  Mine is out of order.  You

11:01:48AM 3  give a thumbs-up.  All right.  What's the next page?

11:01:51AM 4  A.      "We need something" --

11:01:53AM 5  Q.      I'm going to give it right back to you.  Not the

11:01:57AM 6  whole stack.  Just going to buzz through this.

11:02:25AM 7          (Pause in proceedings.)

11:02:26AM 8  Q.      Okay.  So -- so the next one -- did Jerry -- it

11:02:38AM 9  says or -- she writes, "or Jerry Fernandez is going to

11:02:43AM 10  call you for" -- do you want to read that?

11:02:46AM 11  A.      "Or Jerry Fernandez is going to call you for

11:02:51AM 12  info on goat.  Please pick up if you can."

13  Q.      Okay.

14  A.      Lieutenant Jerry Fernandez of the sheriff's

15  office.

11:02:56AM 16  Q.      Okay.  And did Mr. Fernandez -- or Lieutenant

11:02:57AM 17  Fernandez call you that day?

11:02:58AM 18  A.      I do not recall.

11:02:59AM 19  Q.      Okay.  Then you populated his email.  Where did

11:03:05AM 20  you get his email from?

11:03:06AM 21  A.      I've searched.  I have no idea.  I've searched

11:03:09AM 22  that on the phone.  I don't know where I got it.

11:03:11AM 23  Q.      Okay.  Do you know who might have given it to

11:03:14AM 24  you?  Do you have any idea?

11:03:16AM 25  A.      No.

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:03:19AM | 1 | Q.     Did he call you and give you the email? |
| 11:03:21AM | 2 | A.     He could have called me and gave it to me |
| 11:03:23AM | 3 | because I can't find it in anything else. |
| 11:03:26AM | 4 | Q.     For what it's worth, I couldn't find his email |
| 11:03:29AM | 5 | either in the beginning when I was trying to track down |
| 11:03:32AM | 6 | Cedar, so, all right.  Or having trouble finding it. |
| 11:03:37AM | 7 |        Okay.  What's the next page here? |
| 11:03:40AM | 8 | A.     From A & R. |
| 11:03:52AM | 9 | Q.     Can I see this?  Sorry, BJ.  It wasn't in order |
| 11:04:22AM | 10 | on my end.  I need to put it in order.  So I'm looking |
| 11:04:25AM | 11 | at ones that are out of order. |
| 11:04:32AM | 12 |        (Pause in proceedings.) |
| 11:04:33AM | 13 | Q.     All right.  Here you go, BJ, sorry. |
| 11:05:16AM | 14 |        All right.  So the preceding page, what is "from |
| 11:05:30AM | 15 | and R"?  What are you referring to at the top of this? |
| 11:05:32AM | 16 | A.     A & R. |
| 11:05:33AM | 17 | Q.     A & R.  And what is that? |
| 11:05:34AM | 18 | A.     Butcher shop in Red Bluff. |
| 11:05:36AM | 19 | Q.     Okay.  Isn't that the one you said earlier you |
| 11:05:38AM | 20 | were unfamiliar with? |
| 11:05:40AM | 21 | A.     I never said -- A & R Butcher Shop in Red Bluff |
| 11:05:43AM | 22 | I'm very familiar with. |
| 11:05:45AM | 23 | Q.     Very familiar with, okay.  Not trying to put |
| 11:05:47AM | 24 | words in your mouth. |
| 11:05:48AM | 25 |        All right.  Okay.  "Thank you.  I will |

**B.J. MACFARLANE**

| | |
|---|---|
| 11:05:49AM 1 | investigate and call.  Still have to have phones |
| 11:05:52AM 2 | forwarded due to goat calls."  So this is presumably in |
| 11:05:56AM 3 | response to the Instagram post at that time for Bleating |
| 11:05:59AM 4 | Hearts? |
| 11:05:59AM 5 | A.      Yes. |
| 11:05:59AM 6 | Q.      Okay.  So do you know what she's referring to |
| 11:06:03AM 7 | here?  The next one down says, "I'm sorry to bother you. |
| 11:06:06AM 8 | I have a" -- a July 1st text.  "I have a goat that was |
| 11:06:09AM 9 | supposed to go to Bowman's Meats for Vista Real Estate." |
| 11:06:13AM 10 | Do you know what this is being referred to? |
| 11:06:15AM 11 | A.      That's this goat. |
| 11:06:16AM 12 | Q.      That's this goat? |
| 11:06:17AM 13 | A.      Yes. |
| 11:06:18AM 14 | Q.      Okay.  All right.  So this goat is not Cedar? |
| 11:06:20AM 15 | A.      Yes. |
| 11:06:23AM 16 | Q.      Yes, it's not? |
| 11:06:24AM 17 | A.      This is the one we replaced. |
| 11:06:27AM 18 | Q.      Okay.  So this is not -- this is not an invoice |
| 11:06:28AM 19 | for Cedar's slaughter.  Or is Bowman's -- Bowman's is, |
| 11:06:32AM 20 | but this one isn't -- I'll rephrase. |
| 11:06:47AM 21 |         So on Exhibit G, the top page, the invoice for A |
| 11:06:51AM 22 | & R, that is not an invoice for Cedar's -- anything to |
| 11:06:55AM 23 | do with Cedar, correct? |
| 11:06:56AM 24 | A.      Correct.  I believe I said that before. |
| 11:06:58AM 25 | Q.      Okay.  I misunderstood you if you did.  Okay. |

**B.J. MACFARLANE**

11:07:00AM 1  But Bowman's, which is the second page of Exhibit G,

11:07:04AM 2  that is in relation to Cedar or referring to Cedar?

11:07:06AM 3  A.      Yes.

11:07:07AM 4  Q.      Okay.  All right.  And how do you know by

11:07:12AM 5  looking at the paper on Exhibit G?

11:07:16AM 6          MR. BRIDGES:  How do you know what?

11:07:18AM 7          MR. GORDON:  How can he tell it's not for Cedar?

11:07:20AM 8  Do you --

11:07:21AM 9          THE WITNESS:  I'm guessing this -- A & R tried

11:07:25AM 10  to replace the goat with another goat, and they got a

11:07:29AM 11  tiny one that is not sufficient.  So that's -- the fair

11:07:34AM 12  ate this one and replaced it with Cedar.

11:07:38AM 13          MR. GORDON:  Okay.

11:07:39AM 14          MR. BRIDGES:  You don't mean actually ate it?

11:07:42AM 15          THE WITNESS:  Sorry.

11:07:45AM 16          MR. BRIDGES:  Do you?

11:07:46AM 17          THE WITNESS:  No.  The fair -- the fair had

11:07:52AM 18  to --

11:07:53AM 19          MR. BRIDGES:  Took the loss?

11:07:54AM 20          THE WITNESS:  Took the loss on this 19-pound

11:07:57AM 21  goat.

11:07:57AM 22          MR. GORDON:  Okay.

11:08:00AM 23          MR. BRIDGES:  Just want to make sure we're clear

11:08:01AM 24  the fair staff didn't eat the other goat.

11:08:04AM 25          MR. GORDON:  Q.  Now, BJ, how do you know that

**Challe, Fisher & Morfin**
**Redding, California  (530)246-0942**

346

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:08:07AM | 1 | from looking at -- strike that. |
| 11:08:08AM | 2 | Did you already know those facts before looking |
| 11:08:10AM | 3 | at this paper and this paper -- on Exhibit G?  Do you |
| 11:08:14AM | 4 | remember -- strike that again. |
| 11:08:16AM | 5 | Do you remember those occurrences that you just |
| 11:08:18AM | 6 | testified to with respect to A & R? |
| 11:08:20AM | 7 | A.     Yes. |
| 11:08:22AM | 8 | Q.     Okay.  And this Exhibit G is just confirming |
| 11:08:26AM | 9 | that in your -- in your brain? |
| 11:08:28AM | 10 | A.     Yes. |
| 11:08:29AM | 11 | Q.     Okay.  So there's nothing on Exhibit G that's |
| 11:08:31AM | 12 | telling you this is not Cedar? |
| 11:08:33AM | 13 | A.     Yeah.  On Exhibit G. |
| 11:08:38AM | 14 | Q.     Page one? |
| 11:08:39AM | 15 | A.     Page one.  I have laid eyes on Cedar and her |
| 11:08:44AM | 16 | carcass would have been -- or its carcass would have |
| 11:08:45AM | 17 | been more than 19.6 pounds for a whole goat. |
| 11:08:48AM | 18 | MR. BRIDGES:  I think he also testified A & R |
| 11:08:51AM | 19 | didn't process Cedar, so. |
| 11:08:52AM | 20 | MR. GORDON:  Q.  Okay.  All right.  Okay.  So |
| 11:08:55AM | 21 | next page on here, which is -- may I see it for one |
| 11:09:00AM | 22 | second? |
| 11:09:19AM | 23 | Okay.  So, all right, here we go. |
| 11:09:23AM | 24 | So "The word goat makes my eyes twitch now."  Do |
| 11:09:30AM | 25 | you know what was meant by that?  Let me strike that. |

**B.J. MACFARLANE**

| | |
|---|---|
| 11:09:38AM 1 | Is that text, did you understand that to refer |
| 11:09:41AM 2 | to Cedar because you were having a lot of issues with |
| 11:09:43AM 3 | Cedar around that point in time? |
| 11:09:45AM 4 | A.     Yes. |
| 11:09:47AM 5 | Q.     Okay.  Now, this is -- do you know the date of |
| 11:09:50AM 6 | that text? |
| 11:09:50AM 7 | A.     July 28th.  Or July 18th, I'm sorry.  July 18th. |
| 11:10:11AM 8 | Q.     Okay.  So the next text on here you have -- it |
| 11:10:17AM 9 | goes to July 22nd, and you have "FOF pig 263 pounds." |
| 11:10:22AM 10 | That has nothing to do with Cedar, correct? |
| 11:10:24AM 11 | A.     No. |
| 11:10:24AM 12 | Q.     And FOF is just Friends of Fair? |
| 11:10:27AM 13 | A.     Yeah. |
| 11:10:28AM 14 | Q.     Okay, thanks.  And then you respond, "What's |
| 11:10:30AM 15 | gal's name at Bowman?  Kathie said okay but no one needs |
| 11:10:33AM 16 | to know about this.  You and me are the" -- "and Kathie |
| 11:10:37AM 17 | are the only ones" -- "are only ones."  This is |
| 11:10:39AM 18 | referring to Cedar, yes? |
| 11:10:40AM 19 | A.     Yes. |
| 11:10:41AM 20 | Q.     Okay.  "It got killed and donated to nonprofit |
| 11:10:44AM 21 | if anyone asks." |
| 11:10:47AM 22 | Why would -- why would there be -- why did you |
| 11:10:51AM 23 | say this should have been donated to a nonprofit if |
| 11:10:55AM 24 | anyone asks? |
| 11:10:56AM 25 | A.     Because the -- I think Kathie's the one that |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:11:02AM | 1 | said that, and I probably agreed that no one needs to |
| 11:11:07AM | 2 | know where that -- that we didn't want to cause that guy |
| 11:11:11AM | 3 | that got the goat any grief. |
| 11:11:13AM | 4 | Q.      Why would that guy get grief? |
| 11:11:17AM | 5 | A.      For having that goat that Melanie and I have |
| 11:11:30AM | 6 | gotten phone calls and death threats before.  I think |
| 11:11:35AM | 7 | the guy that got the meat would get that. |
| 11:11:39AM | 8 | Q.      Okay.  Was this person -- and to be clear, you |
| 11:11:43AM | 9 | don't know what guy this is? |
| 11:11:44AM | 10 | A.      Well, we saw Vista.  Vista Real Estate. |
| 11:11:50AM | 11 | Q.      Vista Real Estate is who got Cedar? |
| 11:11:53AM | 12 | A.      That's what I believe is what's written here and |
| 11:11:56AM | 13 | that's -- |
| 11:11:57AM | 14 | Q.      Okay.  That's -- okay.  So may I see that text |
| 11:12:00AM | 15 | for one second?  "Vista Real Estate got marked" -- "got |
| 11:12:08AM | 16 | Cedar."  Okay.  That's your understanding.  Okay.  So |
| 11:12:11AM | 17 | it's a company? |
| 11:12:12AM | 18 | A.      Yes. |
| 11:12:13AM | 19 | Q.      Some company?  Okay.  Vista Real Estate got |
| 11:12:17AM | 20 | Cedar. |
| 11:12:18AM | 21 |         Okay.  And so you were doing this to protect |
| 11:12:23AM | 22 | Vista Real Estate? |
| 11:12:24AM | 23 | A.      Yes. |
| 11:12:25AM | 24 | Q.      Didn't you testify earlier that you didn't know |
| 11:12:32AM | 25 | who got Cedar, though? |

**B.J. MACFARLANE**

11:12:33AM  1    A.      I did testify earlier that I did not know who

11:12:36AM  2    got Cedar, but I read it in the email or text messages

11:12:38AM  3    here and that is --

11:12:40AM  4    Q.      So that's Melanie telling you Vista Real

11:12:42AM  5    Estate --

11:12:42AM  6    A.      Yes.

11:12:43AM  7    Q.      -- is getting Cedar?  Okay.  All right.

11:12:44AM  8    A.      I did testify that I did not know.  And I did

11:12:47AM  9    not know until I read that.

11:12:49AM 10    Q.      Okay.  All right.  All right.  And then the next

11:12:53AM 11    page Melanie -- Melanie texts you, "Thank you.  We are a

11:13:00AM 12    nonprofit."  What did that -- how do you interpret that?

11:13:05AM 13    A.      As it reads.  We are a nonprofit.

11:13:17AM 14    Q.      What does she mean by "we," if you know?

11:13:19AM 15    A.      The junior livestock auction.

11:13:21AM 16    Q.      Okay.  So reading that in conjunction with the

11:13:26AM 17    prior text for Kathie when she said, "Tell anyone that

11:13:29AM 18    Cedar was donated to a nonprofit," and Melanie saying

11:13:32AM 19    the junior livestock auction, doesn't that imply that

11:13:35AM 20    Cedar was donated to the junior livestock auction?

11:13:38AM 21            MR. BRIDGES:  Calls for speculation about what

11:13:39AM 22    Melanie meant, but if you know, you can answer.

11:13:42AM 23            THE WITNESS:  No, I don't -- I think she was

11:13:46AM 24    making light of the situation of a nonprofit.  I have no

11:13:48AM 25    idea, though, no clue what was she thinking.

**B.J. MACFARLANE**

| | |
|---|---|
| 11:13:52AM 1 | MR. GORDON:  Q.  Okay.  So you wanted to spare |
| 11:13:58AM 2 | Vista -- what was the name of it? |
| 11:14:00AM 3 | A.    Real Estate. |
| 11:14:01AM 4 | Q.    Vista Real Estate.  You wanted to spare them |
| 11:14:05AM 5 | death threats? |
| 11:14:06AM 6 | A.    Yeah, any backlash that could happen.  And I |
| 11:14:09AM 7 | thought it was quite evident that they would.  The fair |
| 11:14:12AM 8 | and myself were getting death threats. |
| 11:14:15AM 9 | Q.    Well, wasn't this -- what is the date of this |
| 11:14:17AM 10 | text, though, July 22nd or so? |
| 11:14:19AM 11 | A.    Yeah. |
| 11:14:20AM 12 | Q.    This is before the lawsuit is filed.  So what -- |
| 11:14:25AM 13 | was there death threats at that point in time or threats |
| 11:14:28AM 14 | of violence at that point in time? |
| 11:14:29AM 15 | A.    No, there wasn't actually. |
| 11:14:32AM 16 | MR. BRIDGES:  You mean specifically to him? |
| 11:14:34AM 17 | Right? |
| 11:14:34AM 18 | MR. GORDON:  Him or the fair, any that he's |
| 11:14:36AM 19 | aware of. |
| 11:14:37AM 20 | THE WITNESS:  I do not recall.  I guess I wanted |
| 11:14:41AM 21 | to spare him of any backlash that could come, I guess. |
| 11:14:48AM 22 | Or I -- Kathie -- |
| 11:14:49AM 23 | MR. GORDON:  Kathie told you to -- |
| 11:14:50AM 24 | THE WITNESS:  Yes. |
| 11:14:51AM 25 | MR. GORDON:  Q.  Kathie is the one that came |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:14:52AM | 1 | up -- strike that. |
| 11:14:53AM | 2 | So it's your testimony that Kathie made the |
| 11:14:55AM | 3 | suggestion that we -- that you, Melanie and her tell |
| 11:14:59AM | 4 | anyone that the goat was donated to a nonprofit if |
| 11:15:06AM | 5 | anyone asked? |
| 11:15:07AM | 6 | A.   Yeah.  It was a -- I don't know if it was her |
| 11:15:13AM | 7 | sole idea but -- |
| 11:15:14AM | 8 | Q.   Whose other idea was it?  Was it yours? |
| 11:15:17AM | 9 | A.   Yeah.  It could have been mine too. |
| 11:15:19AM | 10 | Q.   Okay.  Both of you might have had this idea? |
| 11:15:21AM | 11 | A.   (Nods head up and down.) |
| 11:15:22AM | 12 | MR. BRIDGES:  Do you know, or are you just |
| 11:15:23AM | 13 | making it up?  That's what I can't figure out.  Are you |
| 11:15:26AM | 14 | speculating, or do you actually know?  Because he's |
| 11:15:29AM | 15 | asking what you know, so you need to be sure if you're |
| | 16 | telling him that you know that. |
| 11:15:31AM | 17 | THE WITNESS:  I do not know that. |
| 11:15:32AM | 18 | MR. GORDON:  Q.  Okay.  But it -- let's go back |
| 11:15:35AM | 19 | to the page again. |
| 11:15:42AM | 20 | "It got killed and donated to nonprofit if |
| 11:15:45AM | 21 | anyone asks."  Do you see that in the text, BJ? |
| 11:15:48AM | 22 | A.   Yes. |
| 11:15:49AM | 23 | Q.   You wrote that text, correct? |
| 11:15:51AM | 24 | A.   Yes. |
| 11:15:52AM | 25 | Q.   Why did you put that language there? |

## B.J. MACFARLANE

| | |
|---|---|
| 11:16:01AM 1 | MR. BRIDGES:  It's asked and answered about |
| 11:16:03AM 2 | Kathie Muse telling him to do that. |
| 11:16:05AM 3 | MR. GORDON:  Well, he just said he didn't |
| 11:16:07AM 4 | remember a moment ago, John. |
| 11:16:09AM 5 | THE WITNESS:  Well, the way I read it on this is |
| 11:16:11AM 6 | Kathie said okay but no one needs to know, so I'm taking |
| 11:16:16AM 7 | it that's how she wanted it to go. |
| 11:16:21AM 8 | MR. GORDON:  Q.  Okay.  So did Kathie tell you |
| 11:16:22AM 9 | to say if it -- if it got -- if got killed, Cedar, if |
| 11:16:27AM10 | Cedar was killed, tell anyone who asks that he was |
| 11:16:29AM11 | donated to a nonprofit? |
| 11:16:31AM12 | A.    I do not recall. |
| 11:16:32AM13 | Q.    You don't recall her saying it, but you believe |
| 11:16:34AM14 | she did based upon the content of the text message? |
| 11:16:44AM15 | MR. BRIDGES:  Answer it. |
| 11:16:45AM16 | THE WITNESS:  I don't recall.  I couldn't -- |
| 11:16:50AM17 | MR. GORDON:  Q.  Well, I'm asking -- I'm not |
| 11:16:51AM18 | asking what -- now I'm not asking what you recall from |
| 11:16:53AM19 | the time.  I'm asking a moment ago -- you wrote it, so |
| 11:16:56AM20 | do you believe you wrote it because she told it to you? |
| 11:16:59AM21 | Because Kathie told you that at the time? |
| 11:17:02AM22 | A.    I don't recall. |
| 11:17:04AM23 | Q.    Okay. |
| 11:17:04AM24 | A.    I mean -- |
| 11:17:07AM25 | Q.    BJ, why do you suspect you wrote it then? |

## B.J. MACFARLANE

11:17:11AM 1   A.      "Kathie said okay, but no one needs to know."

11:17:17AM 2   That's what's making me -- I don't know.

11:17:19AM 3   Q.      That's what I'm asking.  So are you inferring

11:17:23AM 4   that Kathie told you because of what you wrote in the

11:17:25AM 5   text earlier that Kathie said, "Okay, but no one needs

11:17:28AM 6   to know about this"?

11:17:29AM 7           I'm just asking if that's what's making you say

11:17:31AM 8   it now?  Not a right or wrong answer to this.  I'm just

11:17:36AM 9   asking what's motivating your statement.

11:17:38AM 10          MR. BRIDGES:  You're overthinking it.

11:17:39AM 11          MR. GORDON:  Yeah, I'm not trying -- I'm not

11:17:40AM 12  trying to trick you.  I'm not trying to trick you.

11:17:41AM 13          THE WITNESS:  Yes.  Yes.

11:17:42AM 14          MR. GORDON:  Q.  Okay.  So Kathie -- so you

11:17:44AM 15  think because you wrote, "Kathie said no one needs to

11:17:46AM 16  know about this" that you then, yourself, said -- or

11:17:50AM 17  maybe she told you that -- or actually you're inferring

11:17:54AM 18  that you wrote, "It got killed and donated to a

11:17:57AM 19  nonprofit if anyone asks," you're inferring that you

11:18:00AM 20  wrote that statement because immediately preceding that,

11:18:03AM 21  Kathie said no one needs to know about this?

11:18:12AM 22  A.      I don't -- I don't recall what -- I'm guessing,

11:18:18AM 23  yes, because that's what I wrote.

11:18:19AM 24  Q.      Okay.  But you have no memory at the time of

11:18:23AM 25  actually why you wrote the statement.  You're just

**B.J. MACFARLANE**

11:18:25AM 1    guessing it from the content of the text now?

11:18:27AM 2    A.      Yes.

11:18:28AM 3    Q.      Okay.  All right.  Okay.

11:18:35AM 4            THE VIDEO SPECIALIST:  Can we take a quick

11:18:37AM 5    break?

11:18:37AM 6            MR. GORDON:  Yeah.  Let me ask one more

11:18:39AM 7    question.  So are you, Melanie and Kathie the only

11:18:42AM 8    people that know of the -- of the recipient of Cedar's

11:18:48AM 9    meat?

11:18:49AM 10           MR. BRIDGES:  You mean as of today or at the

11:18:51AM 11   time?

11:18:51AM 12           MR. GORDON:  At the time.

11:18:53AM 13           THE WITNESS:  And Bowman Meats.

11:18:56AM 14           MR. GORDON:  Q.  Bowman Meats would know, okay.

11:18:58AM 15   And what about Vista?

11:19:00AM 16   A.      I don't believe so.  I could be wrong.  Bowman

11:19:04AM 17   Meats, that was their customer, they could have said

11:19:08AM 18   something, I guess.

11:19:09AM 19   Q.      I understand.  But obviously Vista Real would

11:19:13AM 20   know too if they got -- that they received meat,

11:19:15AM 21   correct?

11:19:16AM 22   A.      Yes.

11:19:16AM 23   Q.      Okay.

11:19:16AM 24           MR. BRIDGES:  Just not necessarily that it was

11:19:18AM 25   this particular goat's meat.

**B.J. MACFARLANE**

11:19:20AM 1        MR. GORDON:  Yeah, maybe not.  I don't know

11:19:22AM 2   that.  Okay.  All right.  You're asking for a break.

11:19:26AM 3        THE VIDEO SPECIALIST:  We're off the record, and

11:19:27AM 4   the time is 11:19.

11:19:30AM 5        (Whereupon, a break was taken from 11:19

11:29:30AM 6        till 11:30 a.m.)

11:29:30AM 7        THE VIDEO SPECIALIST:  We're back on the record,

11:29:37AM 8   and the time is 11:30.

11:29:39AM 9        MR. GORDON:  Q.  All right.  So BJ, a moment ago

11:29:41AM 10  you testified that now after reading this text chain,

11:29:45AM 11  you believe Cedar went to Vista Real Estate, correct?

11:29:53AM 12  Vista Real Estate, sorry.

11:29:54AM 13  A.     Yes.

11:29:55AM 14  Q.     Okay.  So I'm looking at this July 1st text.  It

11:29:59AM 15  says -- from Melanie to you.  Starts with, "I'm sorry to

11:30:03AM 16  bother you."  It's cut off at the bottom of the page.

11:30:10AM 17  A.     Yeah.

11:30:11AM 18  Q.     Okay.  All right.  And this is July 1st,

11:30:13AM 19  correct?

11:30:14AM 20  A.     Yes.

11:30:14AM 21  Q.     "I have a goat that was supposed to go to Bowman

11:30:17AM 22  Meats for Vista Real Estate."  Why are you inferring

11:30:21AM 23  this was -- she's referring to Cedar.  She says, "I have

11:30:24AM 24  a goat that was supposed to go to Bowman Real Estate."

11:30:28AM 25  It's July 1st.  She doesn't have Cedar in her possession

## B.J. MACFARLANE

11:30:31AM 1   at that point.  She's saying "a goat" not "the goat."

11:30:33AM 2   A.      It was just a goat.

11:30:34AM 3   Q.      Okay.  But did she have Cedar at that time?

11:30:37AM 4   A.      No.

11:30:37AM 5   Q.      Okay.  So why do you think this was the -- I

11:30:42AM 6   guess I'm confused as to what she's saying here.

11:30:45AM 7   A.      Because we replaced the miss -- the goat that

11:30:53AM 8   Vista Real Estate was supposed to get got put I believe

11:30:59AM 9   in, I think I testified to this before, that goat that

11:31:03AM 10  Vista Real Estate was supposed to get got put towards --

11:31:07AM 11  I don't know how it went.  But that goat -- I don't

11:31:12AM 12  remember.

11:31:14AM 13          Vista Real Estate's goat -- Melanie would know.

11:31:24AM 14  Trying to think.

11:31:26AM 15          MR. BRIDGES:  Don't think.  Just answer the

11:31:27AM 16  question.

11:31:29AM 17          THE WITNESS:  It was a replacement goat.  It was

11:31:32AM 18  a replacement goat for -- Cedar ended up being a

11:31:34AM 19  replacement goat for this goat.

11:31:36AM 20          MR. GORDON:  Q.  Okay.  And you're certain of

11:31:37AM 21  that?

11:31:38AM 22  A.      Yes.

11:31:42AM 23  Q.      Okay.  And you're certain of that because of

11:31:47AM 24  this text, or you now have -- you now independently

11:31:49AM 25  remember?

## B.J. MACFARLANE

| | | |
|---|---|---|
| 11:31:50AM | 1 | A.      I do remember conversations with that A & R Meat |
| 11:31:57AM | 2 | bill that the fair got and this that that's -- Cedar |
| 11:32:04AM | 3 | replaced this goat. |
| 11:32:05AM | 4 | Q.      Okay.  So what Melanie's telling you, "Sorry to |
| 11:32:11AM | 5 | bother you.  I have a goat," the goat she's referring to |
| 11:32:13AM | 6 | is not Cedar there.  It's a replacement goat? |
| 11:32:16AM | 7 | A.      I think in this text, "I have a goat," means |
| 11:32:19AM | 8 | that she doesn't have a goat.  It says that she's -- it |
| 11:32:29AM | 9 | was supposed to go to Bowman's Meats that went somewhere |
| 11:32:32AM | 10 | else. |
| 11:32:33AM | 11 | Q.      Okay.  Okay.  So to be clear, you're saying |
| 11:32:46AM | 12 | Vista Real Estate received Cedar's meat.  That's your |
| 11:32:48AM | 13 | testimony now? |
| 11:32:48AM | 14 | A.      Yes.  It has been. |
| 11:32:50AM | 15 | Q.      Okay.  Okay.  So well, at first you didn't |
| 11:32:57AM | 16 | recall.  Now you recall?  Because at first you didn't |
| 11:33:01AM | 17 | recall who received Cedar's meats, but now you do |
| 11:33:04AM | 18 | recall, correct? |
| 11:33:05AM | 19 | A.      Correct.  I remember -- I know it went to |
| 11:33:09AM | 20 | somebody, but it's Vista Real Estate. |
| 11:33:11AM | 21 | Q.      Okay.  All right.  And do you know anyone at |
| 11:33:15AM | 22 | Vista Real Estate? |
| 11:33:15AM | 23 | A.      Do not. |
| 11:33:16AM | 24 | Q.      Do not.  So you and Kathie and Melanie agreed to |
| 11:33:24AM | 25 | hide the ultimate transfer of Cedar if anyone asks, |

**B.J. MACFARLANE**

| | |
|---|---|
| 11:33:30AM **1** | correct? |
| 11:33:31AM **2** | MR. BRIDGES:  I'll object to the term, "hide," |
| 11:33:32AM **3** | but you can answer if you want. |
| 11:33:34AM **4** | MR. GORDON:  Well, John, you're going to object |
| 11:33:35AM **5** | to the term.  I mean, the expression I want to use, |
| 11:33:38AM **6** | which I'll use it, and you can object. |
| 11:33:40AM **7** | Q.     But BJ, do you know what the term, "noble lie," |
| 11:33:42AM **8** | is? |
| 11:33:42AM **9** | A.     No. |
| 11:33:43AM**10** | Q.     Okay.  So basically, and you can jump if you |
| 11:33:46AM**11** | want, John, it basically means where people say like |
| 11:33:48AM**12** | we're going to agree to -- or one person or several |
| 11:33:50AM**13** | people, we're going to agree to not tell the truth, but |
| 11:33:53AM**14** | it's for this greater good purpose, something like that, |
| 11:33:56AM**15** | so. |
| 11:33:57AM**16** | So it's your testimony that essentially you, |
| 11:34:01AM**17** | Kathie and Melanie agreed to create up -- to create a |
| 11:34:04AM**18** | lie of where Cedar went if anyone asks to protect |
| 11:34:07AM**19** | Bowman's?  Not Bowman's, I'm sorry.  To protect Vista |
| 11:34:12AM**20** | Real Estate? |
| 11:34:13AM**21** | A.     Yes. |
| 11:34:14AM**22** | Q.     Okay.  All right.  And have there been any other |
| 11:34:28AM**23** | fabrications created to protect anyone else in relation |
| 11:34:31AM**24** | to Cedar? |
| 11:34:32AM**25** | A.     No. |

**B.J. MACFARLANE**

11:34:32AM 1    Q.      None that you can think of?  Or know?  None that

11:34:36AM 2    you know of?

11:34:37AM 3    A.      No.

11:34:38AM 4    Q.      No, okay.  So if Vista Real Estate got Cedar,

11:34:49AM 5    what documents should they have showing that receipt?

11:34:53AM 6            MR. BRIDGES:  Calls for speculation.  If you

11:34:55AM 7    know.

11:34:57AM 8            THE WITNESS:  I don't -- whatever Bowman Meats,

11:35:01AM 9    between them and Bowman Meats.

11:35:03AM10            MR. GORDON:  Q.  Okay.  So Bowman Meats would

11:35:05AM11    potentially have records, and Vista Real Estate would

11:35:12AM12    potentially have a receipt or something, correct?

11:35:15AM13    A.      Of a goat.

11:35:16AM14    Q.      Of a goat, yeah.  I understand it would not say

11:35:19AM15    "Cedar" on it.  Well, it might but not necessarily.

11:35:21AM16    A.      (Shakes head side to side.)

11:35:22AM17    Q.      Okay.  Would Melanie or the fair have records of

11:35:27AM18    this transaction?

11:35:29AM19            MR. BRIDGES:  Calls for speculation.  If you

11:35:31AM20    know.

11:35:31AM21            THE WITNESS:  I don't know.

11:35:32AM22            MR. GORDON:  Q.  Okay.  When -- you were

11:35:34AM23    previously CEO of the fair, correct?

11:35:36AM24    A.      (Nods head up and down.)

11:35:38AM25    Q.      So it's the same --

**B.J. MACFARLANE**

11:35:38AM 1    A.      Yes.  Sorry.

11:35:39AM 2    Q.      Had the same situation happened when you were

11:35:43AM 3    CEO, would you have expected to get records from

11:35:45AM 4    Bowman's in that situation?

11:35:46AM 5    A.      Yeah.

11:35:51AM 6    Q.      Yes?  Okay.  All right.  So then there's a good

11:35:55AM 7    chance the fair should have -- there's a -- I don't want

11:36:00AM 8    to say -- "good" might be too loaded for John but

11:36:03AM 9    there's a -- there's a likelihood that the -- that the

11:36:08AM 10   fair has some -- should have some record of receipt of

11:36:13AM 11   where Cedar's meats went.  Is that your understanding?

11:36:15AM 12           MR. BRIDGES:  Calls for speculation and

11:36:16AM 13   misstates his testimony about what the fair actually

11:36:19AM 14   would have received from Bowman Meats.  And you said

11:36:23AM 15   would you have expected to receive something from Bowman

11:36:25AM 16   not did you --

11:36:27AM 17           MR. GORDON:  Yeah.  I'll rephrase it.  I'll

         18   rephrase it.

11:36:29AM 19   Q.      So you would expect the fair now then to have

11:36:31AM 20   received something from Bowman's Meats as well with

11:36:34AM 21   respect to Cedar's slaughter and delivery, correct?

11:36:36AM 22   A.      Yes.

11:36:36AM 23   Q.      Okay.  Okay.  All right.  Let's keep going.

11:36:42AM 24           So you ordered these text messages, correct, BJ?

11:36:45AM 25   A.      Yes.

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:36:45AM | 1 | Q.     So let's put that one back the way it was. |
| 11:36:48AM | 2 | May I have another set here? |
| 11:36:50AM | 3 | All right.  So what were these then?  Extra |
| 11:36:52AM | 4 | pages or? |
| 11:36:53AM | 5 | A.     Yeah.  These are from -- these are the same |
| 11:36:55AM | 6 | thing.  It was ones I sent before that were in daylight |
| 11:36:59AM | 7 | or daytime. |
| 11:37:00AM | 8 | Q.     Okay.  Okay, BJ, so is there any reason this |
| 11:37:56AM | 9 | text chain was produced as a separate -- and this might |
| 11:37:57AM | 10 | be a question for your attorney too, but John, why |
| 11:38:00AM | 11 | wasn't this one long string, if you know? |
| 11:38:02AM | 12 | MR. BRIDGES:  I do not know. |
| 11:38:04AM | 13 | THE WITNESS:  It looks like screenshots. |
| 11:38:06AM | 14 | MR. GORDON:  Okay.  All right.  It's fine.  I |
| 11:38:08AM | 15 | was just curious.  Duplicate page here. |
| 11:38:17AM | 16 | Q.     All right.  So BJ, let's go to this one.  And |
| 11:38:25AM | 17 | this will be Exhibit K. |
| | 18 | (Whereupon, Exhibit K, text chain between |
| | 19 | BJ Macfarlane and Melanie Silva, date range |
| | 20 | 6-27-22 through 6-28-22, totaling 8 pages, |
| | 21 | was marked for identification.) |
| 11:38:37AM | 22 | Q.     Okay.  Do you know what you're referring to in |
| 11:38:42AM | 23 | the first text in this chain?  It looks like there's |
| 11:38:45AM | 24 | something on Orland, Brian Pacheco auctioneer.  Do you |
| 11:38:48AM | 25 | know what's being discussed there? |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:38:50AM | 1 | A.      Paying auctioneer. |
| 11:38:51AM | 2 | Q.      Paying the auctioneer.  For the junior livestock |
| 11:38:55AM | 3 | auction? |
| 11:38:55AM | 4 | A.      Yes. |
| 11:38:56AM | 5 | Q.      Okay.  I'll come back to you in a moment. |
| 11:39:14AM | 6 | So on July, looks like July 28th -- or I'm |
| 11:39:20AM | 7 | sorry, June 28th, I'm sorry, Melanie says, "Please call |
| 11:39:23AM | 8 | me asap."  Do you see that text? |
| 11:39:25AM | 9 | A.      Yeah. |
| 11:39:26AM | 10 | Q.      Did you call her after that? |
| 11:39:31AM | 11 | A.      I don't recall. |
| 11:39:31AM | 12 | Q.      Okay.  You might have.  It would be on the call |
| 11:39:34AM | 13 | records, presumably. |
| 11:39:35AM | 14 | A.      Yeah. |
| 11:39:36AM | 15 | Q.      So but you send her a screenshot.  It looks |
| 11:39:43AM | 16 | like -- this is a screenshot of it looks like something |
| 11:39:48AM | 17 | regarding Cedar, correct? |
| 11:39:50AM | 18 | A.      Yes. |
| 11:39:55AM | 19 | Q.      Okay.  All right.  So then after that you write, |
| 11:40:00AM | 20 | "This livestock shit sucks huh.  A & R needs info" -- "A |
| 11:40:10AM | 21 | & R needs info."  And then it gets cut off on my end. |
| 11:40:20AM | 22 | Okay.  I'm not sure. |
| 11:40:36AM | 23 | Oh, yeah.  Okay.  "Info on a pig.  Also I need |
| 11:40:39AM | 24 | the buyer information for tag 714.  It's a pig."  So |
| 11:40:43AM | 25 | none of this has to do with Cedar, correct? |

**B.J. MACFARLANE**

| | |
|---|---|
| 11:40:46AM 1 | A.      No. |
| 11:40:46AM 2 | Q.      "Second one is what you sent me."  What are you |
| 11:40:50AM 3 | referring to there?  "Second one is what he sent me." |
| 11:40:54AM 4 | A.      Where are we at?  "Second one is what he sent |
| 11:40:58AM 5 | me."  It looks like -- animals are supposed to go to A & |
| 11:41:01AM 6 | R. |
| 11:41:01AM 7 | Q.      Okay.  All right.  So and then what's the next |
| 11:41:04AM 8 | page?  This page, okay. |
| 11:41:05AM 9 |          "I called Kathie and it's going to A & R now." |
| 11:41:09AM 10 | What is that referring to? |
| 11:41:09AM 11 | A.      Another animal.  Those animals are there. |
| 11:41:12AM 12 | Q.      Okay.  That isn't referring to a replacement |
| 11:41:15AM 13 | goat for Cedar? |
| 11:41:15AM 14 | A.      No.  No.  Kathie has lots of animals. |
| 11:41:19AM 15 | Q.      Okay.  Okay.  What is this below from Melanie? |
| 11:41:26AM 16 | Looks like two photos of a -- |
| 11:41:28AM 17 | A.      Something to do with pigs. |
| 11:41:30AM 18 | Q.      Is that a girl giving the pig beer or something? |
| 11:41:33AM 19 | I don't know why she would sending it.  Not judging. |
| 11:41:37AM 20 | Just curious what it is. |
| 11:41:38AM 21 | A.      Yes.  I was judging.  I wasn't very happy. |
| 11:41:42AM 22 | Q.      You weren't happy with it, gotcha.  And what was |
| 11:41:43AM 23 | your response?  "You got to be fucking kidding me." |
| 11:41:47AM 24 | What is that in reference to? |
| 11:41:48AM 25 | A.      That picture.  The pig picture. |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:41:50AM | 1 | Q.    The pig picture.  I assume that's frowned upon |
| 11:41:53AM | 2 | giving the pigs beer? |
| 11:41:55AM | 3 | A.    Yes. |
| 11:41:56AM | 4 | Q.    Okay.  All right.  "Any word on the goat," is |
| 11:41:59AM | 5 | this in reference to Cedar? |
| 11:42:00AM | 6 | A.    Yes. |
| 11:42:01AM | 7 | Q.    This is the next page of the text.  Okay. |
| 11:42:06AM | 8 | And she writes, "Nope.  I responded and heard |
| 11:42:09AM | 9 | nothing from her.  Mike with CDFA" -- and what's the |
| 11:42:13AM | 10 | date?  BJ, do you know the date of this text from her? |
| 11:42:17AM | 11 | This text that says, "Nope.  I responded and," dot, dot, |
| 11:42:20AM | 12 | dot, I'm referring to that text.  What is the date? |
| 11:42:23AM | 13 | A.    June 28th. |
| 11:42:41AM | 14 | Q.    June 28th.  Okay.  All right.  Okay.  And you |
| 11:42:51AM | 15 | state, "I guess CHP needs to be contacted," correct? |
| 11:42:54AM | 16 | A.    Yes. |
| 11:42:55AM | 17 | Q.    Did you contact CHP? |
| 11:42:59AM | 18 | A.    I don't believe I did. |
| 11:43:02AM | 19 | Q.    Okay. |
| 11:43:03AM | 20 | A.    Because that -- |
| 11:43:05AM | 21 | Q.    And Melanie responds, "You don't want to get it |
| 11:43:07AM | 22 | anymore."  This is in reference to Cedar?  As you |
| 11:43:12AM | 23 | understood it? |
| 11:43:13AM | 24 | A.    Yes. |
| 11:43:27AM | 25 | Q.    Okay.  All right.  And "Yes, I do but she is not |

**B.J. MACFARLANE**

11:43:34AM 1  replying to you or to me."  Is that in reference to

11:43:38AM 2  Jessica?

11:43:38AM 3  A.      Yes.

11:43:38AM 4  Q.      And Melanie responds, "Oh gotcha."

11:43:41AM 5          Okay.  And then you send a voicemail.  Do you

11:43:43AM 6  know what this is?

11:43:44AM 7  A.      No.

11:43:44AM 8  Q.      No?  Okay.  All right.  And what is the other

11:43:48AM 9  text chain you ordered for me?

11:44:10AM 10         (Pause in proceedings.)

11:44:12AM 11 Q.      Okay.  So I'll hand them back in a moment.

11:45:17AM 12         (Pause in proceedings.)

11:45:18AM 13 Q.      All right.  BJ, I'm going to hand this back to

11:45:41AM 14 you.  So this is L.  This will be Exhibit L, BJ.  And

11:45:51AM 15 ask you to take a look.

16         (Whereupon, Exhibit L, text chain between

17          BJ Macfarlane and Melanie Silva, date range

18          6-25-22 through 6-27-22, totaling 6 pages,

19          was marked for identification.)

11:45:54AM 20 Q.      Now, this is another text message between you

11:45:58AM 21 and Melanie Silva, correct, or a text chain between you

11:46:00AM 22 and Melanie Silva, correct?

11:46:02AM 23 A.      Yes.

11:46:02AM 24 Q.      Now, this is not on a separate phone number.

11:46:08AM 25 These are all the same -- the texts we've been reviewing

**B.J. MACFARLANE**

11:46:12AM 1  to -- reviewing, the several pages of exhibits, these

11:46:14AM 2  are all the same chain, correct?

11:46:15AM 3  A.      Yes.

11:46:15AM 4  Q.      So I could put them in one giant long text

11:46:19AM 5  chain, correct?

11:46:19AM 6  A.      Yes.

11:46:20AM 7  Q.      Okay.  All right.  So the -- let's go to -- all

11:46:29AM 8  right.  Let's go to this next page.  This page.

11:46:35AM 9          So, you know, the text I'm pointing to right

11:46:39AM 10 now, the top of the pdf says, "I bet you are" -- "I bet

11:46:43AM 11 you were exhausted," so we're looking at this page of

11:46:46AM 12 this text chain.  And this is Melanie writing to you.

11:46:50AM 13 "So what do I do with that," question mark, "or you want

11:46:53AM 14 to chat about it tomorrow," question mark.  Okay.

11:46:58AM 15         So what is Melanie referring to in that text as

11:47:01AM 16 you understood it?

11:47:02AM 17 A.      This one?

11:47:04AM 18 Q.      Yeah.  You might have to check -- you may have

11:47:06AM 19 to check the preceding page.

11:47:07AM 20 A.      "I bet you were" -- it's an overlap.

11:47:10AM 21 Q.      Okay.  Well, what does she want to chat -- it

11:47:14AM 22 says, "Or you want to chat tomorrow about it."  What is

11:47:17AM 23 the "it"?  Cedar again?  Cedar issues?

11:47:20AM 24 A.      Yes.

11:47:21AM 25 Q.      Okay.  All right.  And calling the authorities

**B.J. MACFARLANE**

11:47:23AM 1   at that point in time?

11:47:24AM 2   A.      "That they texted the clerks this afternoon that

11:47:31AM 3   they confessed to taking the goat."

11:47:33AM 4   Q.      Okay.  So she's talking about -- do you know

11:47:36AM 5   what dates these --

11:47:37AM 6   A.      June 26th.

11:47:37AM 7   Q.      Okay.  And what is the date of this?

11:47:39AM 8   A.      June 26th.

11:47:40AM 9   Q.      Still June 26th, okay.

11:47:41AM 10  A.      Yes.

11:47:42AM 11  Q.      Okay.  So you write, "We can chat but if" -- or

11:47:47AM 12  do you want to read what you wrote, BJ?  Why don't you

11:47:49AM 13  do that.

11:47:50AM 14  A.      "We can chat but if they haven't called you, I'm

11:47:52AM 15  going to contact them tonight and get the goat tomorrow.

11:47:55AM 16  Kenny will take it as resale which I took a resale to

11:47:59AM 17  replace it.  The goat taken was donated to the barbecue

11:48:01AM 18  thank god.  My thoughts are we don't press charges and

11:48:06AM 19  they don't ever show again.  Not sure, never had this

11:48:10AM 20  happen."

11:48:10AM 21  Q.      Okay.  And so who is Kenny?

11:48:16AM 22  A.      The gentleman that bought the resale goats.

11:48:19AM 23  Q.      What is a resale -- I don't know, what is a

11:48:24AM 24  resale goat?

11:48:25AM 25  A.      It's one that somebody doesn't want to --

**B.J. MACFARLANE**

11:48:31AM 1  they're just helping the kids out and they get -- they

11:48:35AM 2  pay 10 bucks a pound for the goat.  The kid gets 10

11:48:38AM 3  bucks a pound.  And they don't want the meat, so then

11:48:43AM 4  Kenny buys the goat for a lesser price and takes the

11:48:48AM 5  meat.

11:48:48AM 6  Q.     I see.  I see.  So someone's basically just

11:48:52AM 7  doing charity for the child?

11:48:54AM 8  A.     Yes.

11:48:54AM 9  Q.     And then -- but they really don't want the

11:48:57AM 10  animal or the cuts of the animal, and then Kenny buys it

11:49:00AM 11  at a discount?

11:49:01AM 12  A.     (Nods head up and down.)

11:49:01AM 13  Q.     So the fair gets two -- or the -- someone's

11:49:05AM 14  getting paid twice, I guess?  Is that -- or is the fair

11:49:11AM 15  selling it to the -- anyway, don't even worry about

11:49:14AM 16  that.

11:49:14AM 17         Okay.  All right.  But the goat's getting sold

11:49:16AM 18  twice basically --

11:49:17AM 19  A.     Yes.

11:49:18AM 20  Q.     -- correct?  All right.  Okay.  Okay.  So and

11:49:28AM 21  "My thoughts is" -- "My thoughts are we don't press

11:49:31AM 22  charges and they don't ever show again."  And you're

11:49:34AM 23  referring to the Longs at that point in time, correct?

11:49:37AM 24  Cedar's --

11:49:38AM 25  A.     Yes.

**B.J. MACFARLANE**

11:49:38AM 1   Q.      Okay.  And why is Melanie asking you for your

11:49:45AM 2   thoughts on this?  Or why are you volunteering your

11:49:47AM 3   thoughts on this, rather?

11:49:49AM 4   A.      Because I was livestock superintendant, I guess.

11:49:54AM 5   Q.      So you were aiding in decisionmaking on this

11:49:57AM 6   issue?

11:49:57AM 7   A.      No.

8   Q.      No?

11:49:58AM 9   A.      I didn't have that authority.

11:49:59AM 10  Q.      Okay.  But this is what you were suggesting?

11:50:00AM 11  A.      Yeah.

11:50:01AM 12  Q.      Okay.  All right.  So did you -- so did you not

11:50:09AM 13  think at the time this was worth pressing charges over?

11:50:12AM 14  A.      I believe at the time she had mentioned that we

11:50:16AM 15  were going to get goat back, and I was just going to

11:50:20AM 16  grab the goat and be all over.  She was going to bring

11:50:22AM 17  it back to me.

11:50:23AM 18  Q.      Okay.  So if she brought it back to you, no

11:50:27AM 19  charges would be -- you did not want to pursue any

11:50:30AM 20  criminal charges, and they would never show in the fair

11:50:33AM 21  again?

11:50:34AM 22  A.      Yes.

11:50:36AM 23  Q.      Okay.  But the plan for Kenny to take it never

11:50:43AM 24  arose because you didn't get Cedar back the next day,

11:50:45AM 25  correct?

**B.J. MACFARLANE**

11:50:46AM 1   A.      Correct.

11:50:46AM 2   Q.      Now, for the phrase here you wrote, "and they

11:50:56AM 3   don't ever show again."  Why did you write that, or why

11:51:01AM 4   did you think that?  As a --

11:51:05AM 5   A.      Because they stole the goat.

11:51:07AM 6   Q.      Okay.  I understand that you're saying they did

11:51:10AM 7   something wrong but did you -- was -- was precluding

11:51:14AM 8   them from ever showing at the fair again something you

11:51:17AM 9   thought appropriate, or did you read it in the rules,

11:51:19AM 10  for example?

11:51:20AM 11  A.      I don't know if it's in the rules.  It's just

11:51:24AM 12  something I said.  I don't know.  Has no -- no bearing.

11:51:29AM 13  Q.      You independently came up with it?

11:51:31AM 14  A.      Yes.  Yes.

11:51:32AM 15  Q.      Have you ever read the rules, the local rules,

11:51:37AM 16  or the fair rules, for what happens when someone

11:51:39AM 17  violates -- when a child or an exhibitor or parent

11:51:43AM 18  violates them?

11:51:44AM 19  A.      It's up to discretion, I believe.

11:51:47AM 20  Q.      But have you ever read them?

11:51:50AM 21  A.      Yes.

11:51:50AM 22  Q.      Okay.  Did you read them before taking any

11:51:55AM 23  action in relation to Cedar?

11:51:57AM 24  A.      No.

11:51:59AM 25  Q.      I mean the local rules or the state rules?

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:52:02AM | 1 | A.      I don't recall. |
| 11:52:04AM | 2 | Q.      You don't recall one way or the other? |
| 11:52:07AM | 3 | A.      I don't recall reading them right before this or |
| 11:52:10AM | 4 | at this.  I've read them several times in my lifetime. |
| 11:52:13AM | 5 | Q.      Okay.  Okay.  All right.  When was the last time |
| 11:52:16AM | 6 | you recall reading them? |
| 11:52:17AM | 7 | A.      No idea. |
| 11:52:17AM | 8 | Q.      No idea.  Last five years? |
| 11:52:21AM | 9 | A.      Yeah. |
| 11:52:22AM | 10 | Q.      Within the last five.  Now, would that have been |
| 11:52:24AM | 11 | when you were the CEO? |
| 11:52:25AM | 12 | A.      Yes. |
| 11:52:26AM | 13 | Q.      And just refresh my memory, BJ.  When -- it's |
| 11:52:31AM | 14 | been several years.  When were you CEO?  I know you |
| 11:52:35AM | 15 | answered this before in your earlier depo.  I'm just |
| 11:52:38AM | 16 | trying to see if I have any follow-up in relation to |
| 11:52:40AM | 17 | that date.  It was before Melanie, correct? |
| 11:52:44AM | 18 | A.      Yes.  '18 to '22 maybe. |
| 11:52:45AM | 19 | Q.      '18 to '22? |
| 11:52:46AM | 20 | A.      '21.  '18 to '21. |
| 11:52:48AM | 21 | Q.      So you would have read the rules at that time |
| 11:52:50AM | 22 | period?  Or you believe you read the rules during that |
| 11:52:53AM | 23 | time period? |
| 11:52:54AM | 24 | A.      Yes. |
| 11:52:54AM | 25 | Q.      Okay.  All right.  And by "rules," I'm talking |

**B.J. MACFARLANE**

11:52:56AM 1  about the state rules and the whatever local rules were

11:53:00AM 2  then in existence.

11:53:01AM 3          Okay.  So you haven't read the rules -- they're

11:53:04AM 4  updated yearly, though, correct?

11:53:05AM 5  A.      Yes.

11:53:06AM 6  Q.      Okay.  So you haven't -- you did not read the --

11:53:10AM 7  for this fair would have been the 2022 rules.  You did

11:53:13AM 8  not read those rules, correct?

11:53:14AM 9  A.      I believe I did because the updates they

11:53:19AM 10 highlight when they send them out.

11:53:20AM 11 Q.      I remember you said that before, yeah.

11:53:22AM 12 A.      So the highlights I did read.

11:53:24AM 13 Q.      You read the highlights, and the rest you

11:53:26AM 14 presume is the same?

11:53:27AM 15 A.      Same.

11:53:28AM 16 Q.      Okay.  All right.  Okay.  Okay.  Now, when --

11:53:33AM 17 these are just some other little questions we have.

11:53:49AM 18          BJ, I'm going to hand you a meet and confer

11:54:02AM 19 letter.  John, I believe you said -- I believe you said

11:54:04AM 20 you forwarded the letter to them, told that to me and

11:54:09AM 21 Vanessa, so I think he's already seen it, but I'm

11:54:12AM 22 assuming you did.

11:54:13AM 23          MR. BRIDGES:  I don't know what letter you're

11:54:14AM 24 talking about.

11:54:14AM 25          MR. GORDON:  It's a meet and confer letter that

**B.J. MACFARLANE**

11:54:16AM 1   we gave for discovery.

11:54:16AM 2         MR. BRIDGES:  Oh, okay.

11:54:18AM 3         MR. GORDON:  Okay.  All right.  If you need to

11:54:19AM 4   take a look.  I remember you at the time saying I just

11:54:21AM 5   forwarded to them the other documents, so there's not

11:54:24AM 6   like anything in it.  It's stuff we've already

11:54:26AM 7   discussed, but it's just so I can go over this with him.

11:54:31AM 8   Q.     BJ, I'm assuming you saw this document before?

11:54:34AM 9   A.     I don't recall.

11:54:35AM 10  Q.     Okay.  That's fine.  I just have some questions.

11:54:38AM 11  So start on page five.

11:54:45AM 12        Okay.  There's just a list of names at the

11:54:47AM 13  bottom.  So this was our letter to your attorney just

11:54:50AM 14  for some other documents we were looking for.  And I

11:54:53AM 15  know you've given text chains and perhaps some other

11:54:57AM 16  documents, but I just want to see maybe if specifically

11:55:00AM 17  what you looked for on other matters here, okay.

11:55:03AM 18        So let's start on page -- so page six.  And this

11:55:10AM 19  will be Exhibit L.

11:55:15AM 20        MR. BRIDGES:  I'll just object to the use of

11:55:16AM 21  this.  It's not evidence.  It's just correspondence

11:55:19AM 22  between two attorneys.  So I don't know why it's being

11:55:21AM 23  attached to a deposition.

11:55:23AM 24        MR. GORDON:  Okay, that's fine.  We don't need

11:55:25AM 25  to attach it.  That's fine, John.  That's fine.  But I'm

**B.J. MACFARLANE**

11:55:28AM 1  just going to over -- this is just for the names so I

11:55:31AM 2  can go over it with him but we don't need to -- we don't

11:55:33AM 3  need to attach it then.  That's fine.

11:55:34AM 4  Q.     So BJ, you reviewed for and you testified to

11:55:38AM 5  this earlier.  I'm just checking it off my list for due

11:55:41AM 6  diligence.  You looked for all -- for all your texts and

11:55:44AM 7  emails concerning Cedar?

11:55:45AM 8  A.     Yes.

11:55:46AM 9  Q.     And what steps did you undertake to do that?

11:55:49AM 10 A.     Jessica Long, Cedar, goat.

11:55:53AM 11 Q.     Now you're saying terms.  Are you trying to

11:55:55AM 12 communicate that you searched for -- used those as

11:55:59AM 13 search terms on your computer and phone?

11:56:00AM 14 A.     Yes.

11:56:00AM 15 Q.     And did you look at any other places other than

11:56:03AM 16 your computer and phone?

11:56:04AM 17 A.     No.

11:56:04AM 18 Q.     Okay.  All right.  And did you look for any

11:56:07AM 19 correspondence of Baron Browning?

11:56:12AM 20 A.     No.

11:56:13AM 21 Q.     Okay.  You did not, okay.  We'll talk about that

11:56:17AM 22 with your attorney afterwards because we're -- I believe

11:56:20AM 23 you testified at your previous deposition that he might

11:56:24AM 24 have given you -- that you thought he may have given you

11:56:27AM 25 Sheriff Michael Johnson's number.

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:56:29AM | 1 | Now, did you look for Cedar's ear tags? |
| 11:56:32AM | 2 | A.    No. |
| 11:56:37AM | 3 | Q.    No?  Okay.  Do you think you still have them? |
| 11:56:39AM | 4 | A.    Possibly. |
| 11:56:40AM | 5 | Q.    Possibly.  Okay.  All right.  Well, they should |
| 11:56:44AM | 6 | probably be produced or should be produced.  Okay. |
| 11:56:49AM | 7 | So there's a list of names here too.  So Melanie |
| 11:56:56AM | 8 | Silva you gave us.  I saw your text messages.  Did you |
| 11:56:59AM | 9 | search for emails from her? |
| 11:57:00AM | 10 | A.    Yes. |
| 11:57:01AM | 11 | Q.    And no emails? |
| 11:57:01AM | 12 | A.    No emails. |
| 11:57:02AM | 13 | Q.    And for Kathie Muse, did you have any other text |
| 11:57:05AM | 14 | messages with Kathie Muse? |
| 11:57:06AM | 15 | A.    No. |
| 11:57:08AM | 16 | Q.    No?  Did you look? |
| 11:57:10AM | 17 | A.    Yeah. |
| 11:57:10AM | 18 | Q.    Okay.  Any emails from her? |
| 11:57:12AM | 19 | A.    No. |
| 11:57:12AM | 20 | Q.    Okay.  All right.  And we already asked Baron |
| 11:57:16AM | 21 | Browning.  Mike Flores, any text messages or emails with |
| 11:57:19AM | 22 | him? |
| 11:57:19AM | 23 | A.    I don't believe so. |
| 11:57:21AM | 24 | Q.    Okay.  Did you look? |
| 11:57:22AM | 25 | A.    Yes. |

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 11:57:23AM | 1 | Q.      Okay. |
| 11:57:24AM | 2 | A.      Not specifically his name. |
| 11:57:26AM | 3 | Q.      Oh, so you didn't really look? |
| 11:57:27AM | 4 | A.      Well, I looked for goat, Cedar. |
| 11:57:30AM | 5 | Q.      Okay.  But there might have been something not |
| 11:57:32AM | 6 | captured by that.  You didn't look for his name? |
| 11:57:34AM | 7 | A.      Correct. |
| 11:57:35AM | 8 | Q.      And Mike Francesconi, same question, you looked |
| 11:57:39AM | 9 | for -- you didn't look for him specifically in relation |
| 11:57:41AM | 10 | to Cedar? |
| 11:57:42AM | 11 | A.      Yes. |
| 11:57:42AM | 12 | Q.      Okay.  And Sheriff Michael Johnson, did you look |
| 11:57:45AM | 13 | for anything with him in relation to Cedar? |
| 11:57:48AM | 14 | A.      Yes. |
| 11:57:48AM | 15 | Q.      His name specifically? |
| 11:57:49AM | 16 | A.      His name specifically. |
| 11:57:50AM | 17 | Q.      Okay.  And what about Fernandez? |
| 11:57:53AM | 18 | A.      Yes.  I looked specifically for Fernandez. |
| 11:57:56AM | 19 | Q.      Okay, gotcha.  And Detective Duncan? |
| 11:57:58AM | 20 | A.      No. |
| 11:57:59AM | 21 | Q.      Okay.  You did not look for Duncan? |
| 11:58:00AM | 22 | A.      No. |
| 11:58:01AM | 23 | Q.      All right.  And what about Detective Ashbee? |
| 11:58:04AM | 24 | A.      No. |
| 11:58:06AM | 25 | Q.      No?  Okay.  All right.  And -- okay. |

**B.J. MACFARLANE**

11:58:21AM 1          Yeah, the date ranges, BJ, do you know what date

11:58:25AM 2  ranges you searched for, if you recall?

11:58:27AM 3  A.     Yeah.  Forever.  Whatever's on the phone.

11:58:31AM 4  Q.     Forever?  Okay.  So that would have -- did

11:58:41AM 5  you -- forever.  So you didn't restrict your date range

11:58:44AM 6  at all is what you're saying?

11:58:44AM 7  A.     No.

11:58:45AM 8  Q.     So at any point in time you looked.  Okay.

11:59:01AM 9          Okay.  Did you look specifically for just date

11:59:04AM10  ranges -- did you look for -- did you do any searches

11:59:08AM11  that were not by key terms but just by date ranges?  So

11:59:12AM12  for example, June 22nd to like September 19th, so you

11:59:15AM13  just looked for everything coming in and outgoing there?

11:59:19AM14  A.     Yes.

11:59:20AM15  Q.     Okay.  Okay.  And same thing from March 29th to

11:59:22AM16  April 22nd, did you look for everything incoming and

11:59:25AM17  outgoing for those dates?

11:59:27AM18  A.     No.

11:59:27AM19  Q.     Because sometimes a key term won't capture

11:59:30AM20  something that's relevant.  So you did not for March

11:59:34AM21  29th to April 22nd?

11:59:35AM22          Okay.  And what about November 7th through

11:59:41AM23  November 15th, 2023, did you look through?

11:59:44AM24  A.     No.

11:59:44AM25  Q.     Okay, that's fine.

**B.J. MACFARLANE**

| | |
|---|---|
| 11:59:45AM 1 | MR. BRIDGES:  You mean specifically -- not just, |
| 11:59:48AM 2 | as he said, he did a general search for all these |
| 11:59:51AM 3 | things, but he didn't specifically do a search limited |
| 11:59:54AM 4 | to those date ranges. |
| 11:59:55AM 5 | MR. GORDON:  Yeah, those dates for no terms. |
| 11:59:56AM 6 | Just like maybe something fell through that a term |
| 11:59:58AM 7 | didn't capture just to look at those dates.  That's all |
| 12:00:01PM 8 | I'm asking. |
| 12:00:02PM 9 | So it's just the first date you testified the |
| 12:00:04PM 10 | 22nd to the 19th of June -- that date you did, but the |
| 12:00:10PM 11 | other days you did not, okay. |
| 12:00:12PM 12 | A.      Yeah. |
| 12:00:15PM 13 | Q.      Oh, we didn't finish the names here. |
| 12:00:17PM 14 | And did you -- did you search for any email |
| 12:00:23PM 15 | address -- emails or email addresses for any employee or |
| 12:00:27PM 16 | personnel at the district attorney's office? |
| 12:00:29PM 17 | A.      No. |
| 12:00:29PM 18 | Q.      You didn't search for that? |
| 12:00:32PM 19 | A.      No. |
| 12:00:33PM 20 | Q.      Okay.  Do you know any employees at the district |
| 12:00:36PM 21 | attorney's office? |
| 12:00:36PM 22 | A.      I do not. |
| 12:00:37PM 23 | Q.      No, okay.  So when you said the woman before, |
| 12:00:40PM 24 | you're referring to whoever the DA is, but you don't |
| 12:00:43PM 25 | know the name; is that correct? |

**B.J. MACFARLANE**

12:00:44PM 1   A.      Correct.

12:00:45PM 2   Q.      Okay.  That's fine.  All right.  And you

12:00:47PM 3   searched for -- I believe you testified there was a

12:00:53PM 4   Jessica at the fair that worked there, but you didn't

12:00:55PM 5   know the last name.  Did you search for any

12:00:58PM 6   communications with her in relation to Cedar?

12:01:01PM 7   A.      Just my general search.

12:01:04PM 8   Q.      Just your general search, okay, but not her

12:01:06PM 9   specifically.

12:01:07PM 10          What about Andrea Thomas, any emails from her?

12:01:10PM 11  A.      No.

12:01:11PM 12  Q.      Or texts?

12:01:13PM 13  A.      I did not search for the rest of these.

12:01:15PM 14  Q.      Okay.  All right.  Okay, that's fine.  All

12:01:17PM 15  right.

12:01:23PM 16          The same thing for text messages for those

12:01:25PM 17  people like Brian Dahle, Megan Dahle, you did not search

12:01:28PM 18  for emails or texts from them?

12:01:30PM 19  A.      No.

12:01:30PM 20  Q.      Or Lori Murchi (phonetic spelling).  I don't

12:01:33PM 21  know if I'm saying that correctly.  I think you just

12:01:35PM 22  said a moment ago you didn't search for anything for

12:01:38PM 23  her, okay.

12:01:38PM 24          And Bruce Ross, there might be -- he was

12:01:42PM 25  mentioned in your text chain.  He might have sent you

**B.J. MACFARLANE**

12:01:45PM  1   something, but you didn't specifically search for him?

12:01:47PM  2   A.      I did not.

12:01:48PM  3   Q.      Okay.

12:01:49PM  4           MR. BRIDGES:  Just to be clear, we did

12:01:50PM  5   previously produce at least one email from Bruce Ross.

12:01:53PM  6           MR. GORDON:  Yeah, yeah.  John, it's just that

12:01:55PM  7   looked like it might have been referencing something

12:01:58PM  8   else.  Maybe it's the same email, I'm not sure.  Okay.

12:02:02PM  9           All right.  Give me one second.  We're trying to

12:02:04PM 10   wrap up for you, BJ.

12:02:07PM 11   Q.      So this is -- might be -- I'm going to jump

12:02:12PM 12   around maybe a little, but I think I have a few hanging

12:02:17PM 13   questions.

12:02:17PM 14           So just to be clear, when you had -- and I know

12:02:21PM 15   the answer to this, and you know the answer to this.

12:02:23PM 16   This is just confirming for the record, so don't think

12:02:26PM 17   I'm trying to trick you.

12:02:27PM 18           When you had Cedar at your house, you had no

12:02:29PM 19   court order permitting you to have Cedar at the house,

12:02:32PM 20   correct?

12:02:32PM 21   A.      No.

12:02:32PM 22   Q.      No, okay.  Thank you.  And when he was there,

12:02:37PM 23   you nor anyone else at the fair that you know of gave

12:02:41PM 24   notice to Jessica that he was there?

12:02:44PM 25   A.      No.

**B.J. MACFARLANE**

12:02:45PM 1   Q.      No, okay.  Let me talk to Vanessa for a moment

12:02:52PM 2   and back in one second.

12:02:54PM 3           THE VIDEO SPECIALIST:  Off the record?

           4           MR. BRIDGES:  Yes.  Go off the record.

12:02:56PM 5           THE VIDEO SPECIALIST:  We're off the record, and

12:02:58PM 6   the time is 12:03.

12:03:05PM 7           (Whereupon, a break was taken from 12:03

12:05:34PM 8           till 12:06 p.m.)

12:05:34PM 9           THE VIDEO SPECIALIST:  We're back on the record,

12:05:42PM10   and the time is 12:06.

12:05:44PM11           MR. GORDON:  We're back on the record.  So we're

12:05:49PM12   going to -- we're going to end the deposition today.

12:05:54PM13           John, we believe we're probably done with him,

12:05:58PM14   but we're just reserving any rights if he has any more

12:06:02PM15   documents for the few minutes we have left on the depo.

12:06:06PM16   I know we'll probably fight about it later but we're

12:06:06PM17   still reserving rights if he finds more documents if I

12:06:10PM18   have any questions about them but that's it.

12:06:12PM19           MR. BRIDGES:  I mean, I won't agree to that, but

12:06:15PM20   I understand.

12:06:15PM21           MR. GORDON:  Understand, yeah.  Okay.  That's

12:06:17PM22   fine.  So because he doesn't have them today and there's

12:06:19PM23   some of them he's saying he might not have looked for.

12:06:22PM24   But, you know, and maybe they're not even salient but

12:06:25PM25   once he performs a search and talks to you about so if

**B.J. MACFARLANE**

12:06:28PM 1  anything else is even absent.

12:06:30PM 2          Okay.  That's it for today.  Damian, go ahead.

12:06:34PM 3  It for me unless I have recross.

12:06:38PM 4          MR. NORTHCUTT:  I just have a couple questions

12:06:39PM 5  here.

6

7                EXAMINATION BY MR. NORTHCUTT

12:06:45PM 8          MR. NORTHCUTT:  Q.  Good afternoon, Mr.

12:06:46PM 9  Macfarlane.  My name's Damian Northcutt.  You may recall

12:06:49PM10  me from the last deposition.  We represent the sheriff's

12:06:52PM11  office.  I just have a couple follow-up questions

12:06:57PM12  regarding your testimony I just want to make sure I'm

12:06:59PM13  clear on.

12:07:00PM14          Earlier you testified that you've never spoken

12:07:03PM15  with Sheriff Johnson regarding Cedar the goat.  I want

12:07:08PM16  to follow up with that.  I'm assuming since you've never

12:07:11PM17  spoken with him that -- can you tell me, did Sheriff

12:07:17PM18  Johnson ever instruct you to kill Cedar the goat at any

12:07:19PM19  time?

12:07:20PM20  A.      No.

12:07:21PM21  Q.      Has anyone from the Shasta County sheriff's

12:07:25PM22  department ever instructed you at any time to kill Cedar

12:07:27PM23  the goat?

12:07:28PM24  A.      Not to my recollection.

12:07:31PM25  Q.      There was a conversation that you had earlier

**B.J. MACFARLANE**

| | | |
|---|---|---|
| 12:07:38PM | 1 | where I think you testified between July 8th and July |
| 12:07:44PM | 2 | 28th, I think it's 2022, you did not recall actually |
| 12:07:48PM | 3 | speaking with anyone from the sheriff's department.  You |
| 12:07:51PM | 4 | mentioned that it could have been a possibility.  So is |
| 12:07:54PM | 5 | it fair to say it's also a possibility that you didn't |
| 12:07:57PM | 6 | have any phone calls with the sheriff's department |
| 12:07:59PM | 7 | during that timeframe? |
| 12:08:00PM | 8 | A.      It's a possibility. |
| 12:08:02PM | 9 | Q.      Okay.  You also testified that, and again, I'm |
| 12:08:10PM | 10 | paraphrasing here, so if anything's incorrect, please |
| 12:08:12PM | 11 | correct me, but since you were waiting on Melanie or |
| 12:08:16PM | 12 | Kathie as to what to do with Cedar the goat, and you |
| 12:08:24PM | 13 | have testified that you assumed that they were in |
| 12:08:27PM | 14 | communication with the sheriff's department.  I think |
| 12:08:28PM | 15 | you actually said they could have been.  Was that just |
| 12:08:31PM | 16 | an assumption on your behalf? |
| 12:08:34PM | 17 | A.      It was an assumption. |
| 12:08:37PM | 18 | Q.      Okay.  So you don't have -- did you have any |
| 12:08:39PM | 19 | sort of direct knowledge whether or not they actually |
| 12:08:42PM | 20 | were in communications with the sheriff's department in |
| 12:08:45PM | 21 | July, after July 8th? |
| 12:08:46PM | 22 | MR. GORDON:  Vague as to direct knowledge. |
| 12:08:50PM | 23 | THE WITNESS:  I have no direct knowledge that I |
| 12:08:54PM | 24 | can recollect. |
| 12:08:56PM | 25 | MR. NORTHCUTT:  Q.  Okay.  There was a |

**B.J. MACFARLANE**

12:09:01PM 1   conversation that occurred I guess between you and

12:09:07PM 2   either Lieutenant Fernandez or Detective Duncan on the

12:09:10PM 3   evening of July 8th or the morning of July 9th when

12:09:13PM 4   Cedar the goat was actually being turned over to you.

12:09:17PM 5   Do you actually recall specifically the conversation you

12:09:20PM 6   had with either of those officers?

12:09:22PM 7   A.      Not specifically, no.

12:09:25PM 8   Q.      Do you actually recall what they said to you

12:09:33PM 9   or --

12:09:37PM10   A.      I thought I recalled them just told me to hold

12:09:40PM11   on to the goat till --

12:09:42PM12   Q.      Did they say anything further other than to hold

12:09:45PM13   on to the goat, or was it just for you to hold on to the

12:09:50PM14   goat?

12:09:50PM15   A.      I don't recall.  I mean, I --

12:09:55PM16           MR. NORTHCUTT:  All right.  Yeah, it's fine.  If

12:09:57PM17   you don't recall, you don't recall.

12:09:59PM18           I think that's it on my end.

12:10:12PM19           MR. GORDON:  Okay.  Just one or two follow-ups

12:10:16PM20   really quick.

21

22                FURTHER EXAMINATION BY MR. GORDON

12:10:17PM23           MR. GORDON:  Q.  So BJ, a moment ago you

12:10:18PM24   testified that you had no direct knowledge of

12:10:24PM25   communications between anyone at the sheriff's

**B.J. MACFARLANE**

| | |
|---|---|
| 12:10:28PM 1 | department and the fair, correct? |
| 12:10:31PM 2 | A.      Correct. |
| 12:10:32PM 3 | Q.      Did you have any -- and Kathie Muse, correct? |
| 12:10:35PM 4 | A.      Correct. |
| 12:10:35PM 5 | Q.      Do you have any indirect knowledge of that?  So |
| 12:10:39PM 6 | just maybe one of the -- Melanie or -- or Silva said |
| 12:10:43PM 7 | something in passing that you can recall? |
| 12:10:46PM 8 | A.      I do not recall. |
| 12:10:47PM 9 | Q.      So you might have heard something, but you don't |
| 12:10:50PM 10 | recall? |
| 12:10:51PM 11 | A.      I don't recall. |
| 12:10:53PM 12 | Q.      Is that a yes then?  You might have heard |
| 12:10:55PM 13 | something, but you don't recall? |
| 12:10:57PM 14 | A.      I don't remember hearing anything. |
| 12:10:58PM 15 | Q.      I understand that.  But you don't remember |
| 12:11:00PM 16 | hearing anything one way or the other, correct? |
| 12:11:03PM 17 | A.      Yes. |
| 12:11:04PM 18 | Q.      Okay.  All right. |
| 12:11:09PM 19 |         MR. NORTHCUTT:  I think he said it was an |
| 12:11:11PM 20 | assumption on his part, but.  Anyway, that's it from us |
| 12:11:15PM 21 | on our end here. |
| 12:11:18PM 22 |         I'd like a copy of the transcript, please, and a |
| 12:11:20PM 23 | video copy as well. |
| 12:11:23PM 24 |         And Ryan, do you want to do the same |
| 12:11:25PM 25 | stipulation? |

**B.J. MACFARLANE**

12:11:26PM  1          MR. GORDON:  Yeah.  I'm just debating if we have

12:11:28PM  2     one more.

12:11:29PM  3     Q.     Yeah, so just, BJ real quick.  So you don't

12:11:30PM  4     recall talking with any of the -- this is just so the

12:11:34PM  5     record's clear.  You don't recall talking with Fernandez

12:11:38PM  6     or anyone else at the sheriff's office after Cedar was

12:11:41PM  7     delivered.  You don't recall -- you might have had

12:11:44PM  8     conversations, but you don't recall, correct?

12:11:45PM  9     A.     Yes.

12:11:45PM 10     Q.     But you definitely know you did not talk to

12:11:48PM 11     Sheriff Johnson, correct?

12:11:49PM 12     A.     Yes.

12:11:50PM 13          MR. GORDON:  Okay.

12:11:54PM 14          MR. BRIDGES:  Nothing.

12:11:56PM 15          THE VIDEO SPECIALIST:  Is that it?

12:11:56PM 16          MR. GORDON:  That's it, yeah.  Damian, go ahead

12:11:59PM 17     and read your stip.  That's fine.

12:12:00PM 18          MR. NORTHCUTT:  We'll stipulate that a copy of

12:12:03PM 19     the transcript can be used the same as the original in

12:12:06PM 20     discovery and at the time of trial.

12:12:08PM 21          MR. BRIDGES:  Just for the record, I will take a

12:12:10PM 22     copy, please.  Thank you.  Not the video.  Just the

12:12:13PM 23     written.

12:12:14PM 24          THE VIDEO SPECIALIST:  That answered my

12:12:15PM 25     question.

**B.J. MACFARLANE**

12:12:15PM 1    MR. NORTHCUTT:  Is everyone on board with that

12:12:17PM 2    stip?

12:12:18PM 3    MR. GORDON:  That a certified copy can be used

12:12:21PM 4    at the trial, is that what you said, Damian?

12:12:22PM 5    MR. NORTHCUTT:  Yeah, a certified copy can be

12:12:25PM 6    used the same as the original for discovery and at the

12:12:28PM 7    time of trial.

12:12:29PM 8    MR. GORDON:  Yeah, so stipulated.

12:12:30PM 9    MR. BRIDGES:  Yes.

12:12:30PM 10    MS. SHAKIB:  And we'd like a copy of the

12:12:32PM 11    transcript also.  Thank you.

12:12:32PM 12    MR. BRIDGES:  Stipulate.

12:12:34PM 13    THE VIDEO SPECIALIST:  Okay.  This is the end of

12:12:36PM 14    the deposition of BJ Macfarlane.  All video originals

12:12:40PM 15    will be retained at the offices of Redding Video

12:12:42PM 16    Productions at 8954 Old Oregon Trail.  We're off the

12:12:47PM 17    record, and the time is 12:13.

18    (Whereupon, the deposition concluded at

19    12:13 p.m.)

20                    ---oOo---

21

22

23

24

25

```
 1              PENALTY OF PERJURY

 2      Please be advised I have read the foregoing

 3      deposition, and I hereby state there are:

 4

 5      (Check one)    _____  no corrections

 6                     _____  corrections attached

 7

 8      Executed on _____

 9                         Date

10

11             _____

12             BJ MACFARLANE

13

14                  ---oOo-

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              DEPONENT'S CHANGES OR CORRECTIONS

 2   Note:  If you are adding to your testimony, print the
     exact words you want to add.  If you are deleting from
 3   your testimony, print the exact words you want to
     delete.  Specify with "Add" or "Delete" before each
 4   entry.  Please sign and date this form.

 5   Deposition of:  BJ MACFARLANE
     Name of Case:  LONG vs. FERNANDEZ, etc.
 6   Date of Deposition:  FEBRUARY 9, 2023

 7
     I, _____, have made the
 8   following changes in my deposition:

 9   PAGE       LINE       ADD/DELETE

10   _____      _____      _____

11
     _____      _____      _____
12
     _____      _____      _____
13

14   _____      _____      _____

15
     _____      _____      _____
16

17   _____      _____      _____

18
     _____      _____      _____
19

20   _____      _____      _____

21
     _____      _____      _____
22

23   _____      _____      _____

24

25   SIGNATURE _____DATE _____
```

1                    REPORTER'S CERTIFICATE

2

3           I hereby certify that the witness in the

4    foregoing deposition was duly sworn by me to tell the

5    truth, the whole truth, and nothing but the truth in the

6    within-entitled cause; that said deposition was taken at

7    the time and place herein named; and that the testimony

8    of said witness was reported by me, a duly certified

9    shorthand reporter and disinterested person, and was

10   thereafter transcribed under my direction by

11   computer-assisted transcription.

12          I further certify that I am not of counsel or

13   attorney for either or any of the parties to said

14   deposition, nor in any way interested in the outcome of

15   the case named in said caption.

16          IN WITNESS WHEREOF, I have hereunto set my

17   hand.

18

19          DATED:  FEBRUARY 25, 2024

20

21

22   _____

23          SUZANNA MICKELSON, CSR No. 14270

24              State of California

25

## A

**ability (1)**
232:7
**able (2)**
246:15;259:25
**above (4)**
319:10,14;327:5;
328:19
**absent (1)**
383:1
**accurate (3)**
273:12,16;330:17
**acquire (1)**
284:17
**action (1)**
371:23
**actual (1)**
311:13
**actually (15)**
333:7,8;341:12;
346:14;351:15;
352:14;354:17,25;
361:13;384:2,15,19;
385:4,5,8
**added (1)**
250:1
**add-ons (1)**
321:15
**address (1)**
379:15
**addresses (2)**
322:19;379:15
**affect (1)**
232:12
**afternoon (4)**
240:16;247:5;
368:2;383:8
**afterwards (5)**
259:17;271:20;
330:7;336:6;375:22
**again (57)**
230:15,19;232:21;
239:19;240:12;
245:17;246:13,20;
248:6,7;267:8;
269:12;277:25;
280:14;281:12;
282:18;283:3,6,6,15,
15;285:7;288:5;
295:15,17;297:21;
298:5,13,22;299:15;
300:20,25;302:4;
310:19,22;313:3,6,22,
23;315:1;328:10;
331:3;332:11,14;
335:1;339:1;340:1,
22;347:4;352:19;
367:23;368:19;
369:22;370:21;371:3,
8;384:9
**ago (9)**

248:5;271:6;
295:24;324:16;353:4,
19;356:9;380:22;
385:23
**agree (3)**
359:12,13;382:19
**agreed (3)**
349:1;358:24;
359:17
**ahead (9)**
264:18;265:25;
266:5;267:17,22;
282:21;298:10;383:2;
387:16
**ahold (2)**
332:16,17
**aiding (1)**
370:5
**alcohol (1)**
232:9
**along (1)**
257:21
**alternatively (1)**
328:21
**Although (6)**
246:14;295:18;
296:22;297:13,24;
320:3
**Andrea (1)**
380:10
**animal (5)**
256:22;326:12;
364:11;369:10,10
**animals (4)**
257:22;364:5,11,14
**answered (14)**
239:7;245:16;
249:6;264:18;267:17,
22;293:23;294:12;
308:8;309:4;334:15;
353:1;372:15;387:24
**anymore (1)**
365:22
**anything's (1)**
384:10
**apart (1)**
273:4
**apologize (1)**
247:25
**apparently (1)**
258:22
**appear (1)**
320:14
**appearance (1)**
230:5
**appeared (1)**
229:6
**appearing (1)**
234:15
**appears (1)**
342:23
**appointment (1)**
321:12

**appointments (1)**
322:6
**appreciated (1)**
230:16
**apprised (7)**
280:7;281:5,13,19;
309:22;310:2,3
**appropriate (1)**
371:9
**approval (1)**
307:22
**approved (1)**
306:22
**approximately (1)**
266:18
**April (2)**
378:16,21
**argue (1)**
272:20
**arose (1)**
370:24
**around (13)**
279:21;284:25;
285:19;302:23;306:8,
8;309:12;315:12;
321:12;322:4,6;
348:3;381:12
**arrange (5)**
251:23;252:10;
267:5;306:9,11
**asap (1)**
363:8
**Ashbee (1)**
377:23
**aside (1)**
274:4
**associated (1)**
229:20
**assume (16)**
231:20;282:22;
283:2;284:19;285:15;
301:1;304:8,10;
307:13,19;313:7;
317:11;326:4;331:9;
339:16;365:1
**assumed (1)**
384:13
**assuming (15)**
251:2,14;287:14;
307:13,19;308:22,22,
23;319:9;325:18;
326:1,2;373:22;
374:8;383:16
**assumption (3)**
384:16,17;386:20
**AT&T (2)**
273:25;275:10
**ate (3)**
270:8;346:12,14
**attach (2)**
374:25;375:3
**attached (2)**
331:1;374:23

**attorney (5)**
231:10,15;362:10;
374:13;375:22
**attorneys (1)**
374:22
**attorney's (2)**
379:16,21
**auction (5)**
235:21;236:11;
261:21;281:8,14,20,
23;350:15,19,20;
363:3
**auctioneer (3)**
362:24;363:1,2
**audible (1)**
230:25
**August (17)**
255:3,5,10,12;
313:1,2,2,4,13;
314:14;315:7;320:7;
323:10;324:23;332:1;
333:10;334:1
**authorities (2)**
341:2;367:25
**authority (4)**
245:21;251:18;
263:14;370:9
**avoid (1)**
231:1
**aware (4)**
261:17;273:23;
314:13;351:19
**away (1)**
266:10

## B

**back (37)**
233:24;234:1,25;
242:15,16;248:6;
259:25;268:18;
295:14,20;300:5;
312:14,20;320:3,5,5;
331:24;336:22,24;
337:15,17,19,22;
343:5;352:18;356:7;
362:1;363:5;366:11,
13;370:15,17,18,24;
382:2,9,11
**backlash (2)**
351:6,21
**backwards (8)**
318:16;319:10,14,
17;339:2,21;340:1,21
**bad (1)**
323:3
**barbecue (5)**
238:7;260:23;
261:9,18;368:17
**Baron (2)**
375:19;376:20
**based (9)**
246:8;266:11;

290:11,22;291:1,25;
292:4;305:1;353:14
**bases (2)**
264:17,20
**basically (6)**
232:23;295:13;
359:10,11;369:6,18
**basis (1)**
265:11
**bearing (1)**
371:12
**Bee (1)**
326:20
**Beef (1)**
323:15
**beer (2)**
364:18;365:2
**beforehand (3)**
266:19,24;274:16
**beg (1)**
262:17
**begin (1)**
230:7
**beginning (3)**
229:15;230:17;
344:5
**begins (3)**
231:5;341:6,7
**behalf (1)**
234:15;384:16
**belief (6)**
248:17;256:13;
290:16,21;291:1,2
**below (4)**
328:4,21,23;364:15
**besides (2)**
252:18;271:1
**best (12)**
231:3,23;266:21;
283:11,16;284:24;
287:15;288:1;301:9,
12;304:24,25
**bet (3)**
367:10,10,20
**bill (2)**
254:24;358:2
**BJ (99)**
229:7,11;230:3;
234:6;246:12;253:25;
254:10;263:10;
273:25;279:2,4;
283:20,23;286:21;
287:7,10;288:23;
290:7;291:19;294:19;
295:24;298:10,19;
300:6,12;302:3,8;
303:12;304:13;
306:19;307:25;309:6,
20;310:7,25;312:17,
22;313:19;314:13;
316:23;317:4;318:3;
319:6,7,8,8;320:3,13,
18,21,23;322:20;

323:16,18,20;324:13;
326:15;327:6;328:13,
14,20;331:7;333:8;
335:24;337:14,20;
339:18,21,25;340:1,
13,15,23;341:12;
344:9,13;346:25;
352:21;353:25;356:9;
359:7;361:24;362:8,
16,19;365:10;366:13,
14,17;368:12;372:13;
373:18;374:8;375:4;
378:1;381:10;385:23;
387:3;388:14
**blame (1)**
260:10
**Bleating (2)**
326:10;345:3
**Bluff (2)**
344:18,21
**board (1)**
388:1
**body (1)**
259:3
**boss (2)**
250:14,14
**both (9)**
231:7;238:21;
299:4,6;303:1,15;
310:15;315:3;352:10
**bother (3)**
345:7;356:16;358:5
**bottom (10)**
277:15;302:9;
309:12;310:16,21;
322:18;341:13;342:6;
356:16;374:13
**bought (3)**
256:10;261:21;
368:22
**Bowman (23)**
252:5,8;255:11,19,
22;256:3,8,11,21,24;
266:7;303:20;348:15;
355:13,14,16;356:21,
24;360:8,9,10;361:14,
15
**Bowman's (35)**
252:11,13,17,22;
254:4;257:11;258:7,
19;259:3,5;260:11;
264:14;267:5;270:13;
304:5,7,18,20;305:19,
24;306:9;310:10,18,
22;311:1,4;345:9,19,
19;346:1;358:9;
359:19,19;361:4,20
**brain (1)**
347:9
**break (6)**
268:16;312:12;
355:5;356:2,5;382:7
**Brian (2)**

362:24;380:17
**BRIDGES (108)**
230:2,2;234:12;
236:16;239:7,24;
241:3;242:3,7;
243:21,25;244:3;
245:2,16;249:6;
253:22;259:19,23;
260:6,10;263:5;
264:18;265:10;
267:17,22;271:13;
272:14,19;273:6;
274:23,25;275:5,9;
276:4,7;277:3,5;
278:4,12;282:20;
288:15;289:1,8,14,21;
290:15;293:23;
294:11,18;297:3,6;
298:15;299:14;
304:10;306:23;
307:12;311:10;
312:19;313:25;314:8;
315:22;316:1,5,16,21;
319:18;322:12,14;
328:11;329:15;
330:23;337:25;
338:21;339:3,7,10,15;
346:6,14,16,19,23;
347:18;350:21;
351:16;352:12;353:1,
15;354:10;355:10,24;
357:15;359:2;360:6,
19;361:12;362:12;
373:23;374:2,20;
379:1;381:4;382:4,
19;387:14,21;388:9,
12
**briefly (1)**
241:4
**bring (5)**
234:1,24;284:18;
322:8;370:16
**bringing (1)**
233:24
**broadly (4)**
263:23;264:1,25;
265:4
**brother (1)**
332:1
**brought (1)**
370:18
**brown (1)**
238:19
**Browning (2)**
375:19;376:21
**Bruce (23)**
318:13;328:1,3,9,
10,18,19,25;329:4,8,
12,16,17,19,20;330:1,
4,11,16,19,25;380:24;
381:5
**bucks (2)**
369:2,3

**bud (1)**
331:9
**bullshit (1)**
335:3
**business (4)**
252:22;276:18,19;
280:17
**busy (1)**
244:21
**Butcher (3)**
341:17;344:18,21
**butchered (4)**
259:6;321:6,18,23
**Butchering (2)**
254:15;255:25
**butt (6)**
318:7;331:9,10;
332:10;333:9;337:4
**buy (1)**
256:21
**buyer (1)**
363:24
**buyers (6)**
270:6;322:19,22;
323:3,4,8
**buys (2)**
369:4,10
**buzz (1)**
343:6

# C

**cadence (1)**
231:5
**calendar (2)**
315:11;331:24
**California (4)**
229:4,6,17,19
**call (63)**
233:9;237:2;
260:17;264:14,19;
275:17;281:3,4,11,17;
283:14;284:12;285:3,
4,10,12,17,22,23;
287:7,18;288:24,25;
293:6;300:8,15;
301:6;303:16,17,20;
304:5,7;306:1;
309:13,21;310:6,10,
11,18,22;313:11,14,
21;314:4;324:23;
335:2,4,7,15,15;
337:15,22;342:12,13,
15;343:10,11,17;
344:1;345:1;363:7,
10,12
**called (25)**
248:8,8;260:20;
278:19,21,23;279:7;
285:11;304:16,17,18;
305:21,24;306:4,5,9,
11;325:6;327:1;
335:18;336:6,7;

344:2;364:9;368:14
**calling (9)**
235:18;278:2;
289:1;304:20;318:25;
325:17;327:21;335:5;
367:5
**calls (50)**
231:1;265:10;
274:2;280:13,16;
282:3,10,20;283:4,7,
8;287:3;288:15;
294:11,12;295:23,25;
296:2,13,23;297:13,
25;306:23,24;307:12;
309:6,10,11,15;
310:15;314:1;332:4,
5,12;333:14,19,24;
334:3,7,12;336:4;
337:25;338:21;345:2;
349:6;350:21;360:6,
19;361:12;384:6
**came (4)**
252:8;258:13;
351:25;371:13
**can (80)**
231:3,24;232:15,
25;234:10;236:7,15;
237:8;240:5,9;242:3;
245:16;246:4;247:2;
248:6;265:3,11;
266:5;267:13;274:17,
19,19,23;275:6;276:1,
13;279:10,10;282:8;
285:21;286:21;287:6;
288:16;295:13,20;
297:11;298:10;
299:14;302:3,8;
303:11;304:8;306:18;
307:25,25;309:19;
310:17;312:8;314:25;
315:14,15,17;317:9;
321:12,14;322:19;
323:4;335:13;337:21;
338:13;340:19;
343:12;344:9;346:7;
350:22;355:4;359:3,
6,10;360:1;368:11,
14;374:7;375:2;
383:17;384:24;386:7;
387:19;388:3,5
**capture (2)**
378:19;379:7
**captured (1)**
377:6
**Carcass (5)**
323:13,14,15;
347:16,16
**care (9)**
238:25;239:6,10;
274:4;275:7;286:4,8;
292:24;293:1
**careful (1)**
311:13

**case (7)**
229:15;234:16;
236:16;253:23,24;
274:4;325:24
**cause (1)**
349:2
**CDFA (13)**
235:17;282:6;
318:6;331:8,13;
332:10;333:9;335:2,
18,19;336:2;337:3;
365:9
**CDFA's (1)**
240:19
**Cedar (162)**
233:2,18;234:21;
236:21;237:21;
238:12,24;245:9;
248:24;250:5;251:18;
252:9;253:13;254:3;
255:7;258:7,20,25;
260:12;261:1,20;
262:1;263:17;264:2;
265:1,9;266:15;
267:2;269:2,5,8,13,
22;270:9,12,18;271:8,
17,24;273:4;276:23;
278:22;279:22;280:5,
9,22;281:13,19,25;
282:18;283:5,8,16;
284:15,17;285:14,18,
24;286:2,23;287:4,8,
15,18;288:1;290:11;
291:16;292:23;293:9,
11;294:4,20;296:3,10,
25;297:16;298:3,8;
300:25;302:5,16,24,
25;303:4,6,7,9,24,25;
304:20;309:17;310:3,
12,19,23;313:5;
321:20;322:24;323:8;
325:24;326:8;338:7;
341:18;344:6;345:14,
23;346:2,2,7,12;
347:12,15,19;348:2,3,
10,18;349:11,16,20,
25;350:2,7,18,20;
353:9,10;356:11,23,
25;357:3,18;358:2,6,
25;359:18,24;360:4,
15;363:17,25;364:13;
365:5,22;367:23,23;
370:24;371:23;375:7,
10;377:4,10,13;
380:6;381:18,19;
383:15,18,22;384:12;
385:4;387:6
**Cedar's (14)**
251:24;256:3;
269:25;322:8;323:10;
345:19,22;355:8;
358:12,17;361:11,21;
369:24;376:1

**cell (16)**
241:20,22;242:19;
249:14;275:16,23,25;
276:4,12,17;280:17;
284:2;330:11;335:15,
16,19

**CEO (8)**
236:1;250:14;
251:11,14;360:23;
361:3;372:11,14

**certain (2)**
357:20,23

**Certified (3)**
229:5;388:3,5

**Chad (2)**
233:14;234:19

**chain (18)**
246:22,23;294:5;
320:4,17;337:14;
340:14;356:10;362:9,
18,23;366:9,16,21;
367:2,5,12;380:25

**chains (1)**
374:15

**Challe (3)**
229:3,18,20

**chance (4)**
270:2;311:5;
323:12;361:7

**change (5)**
260:8;312:5,6,8;
341:12

**changed (1)**
250:3

**changes (1)**
259:21

**charge (4)**
255:2,6;261:10;
336:3

**charges (5)**
368:18;369:22;
370:13,19,20

**charity (1)**
369:7

**chat (5)**
367:14,21,22;
368:11,14

**check (14)**
238:6;276:1,11;
279:10,11;311:23;
317:9;320:11;329:7,
11;331:3;341:3;
367:18,19

**checking (1)**
375:5

**child (2)**
369:7;371:17

**CHP (5)**
342:12,14,15;
365:15,17

**chronological (1)**
319:19

**civil (1)**

**327:15**

**clarify (3)**
253:22;297:11;
298:11

**clarifying (1)**
268:25

**clean (1)**
268:21

**clear (16)**
232:21;253:10;
267:8;284:23;289:14;
298:15,20;330:23;
333:20;346:23;349:8;
358:11;381:4,14;
383:13;387:5

**clerks (1)**
368:2

**clue (1)**
350:25

**coming (2)**
259:24;378:13

**comma (3)**
240:16;327:6;
328:14

**commencing (1)**
229:2

**comment (1)**
325:17

**comments (2)**
318:24;327:1

**common (3)**
244:13,13;281:7

**communicate (1)**
375:12

**communicated (2)**
296:20;299:12

**communicating (1)**
290:2

**communication (12)**
236:25;247:12;
250:17;251:4,10,15;
288:10,13;289:10;
291:5;301:21;384:14

**communications (6)**
236:10;237:3;
280:8;380:6;384:20;
385:25

**community (1)**
238:7

**company (9)**
255:17,25;270:5,7;
325:3,4,8;349:17,19

**complaint (1)**
326:16

**complete (1)**
244:14

**completed (1)**
241:7

**completing (1)**
323:9

**computer (2)**
375:13,16

**concern (5)**

**285:14;313:5,14;**
314:6;316:13

**concerned (8)**
287:12;288:1;
289:15;309:17;
310:12;313:24;
314:21;315:1

**concerning (3)**
310:19,23;375:7

**concluded (2)**
260:1;388:18

**confer (3)**
330:9;373:18,25

**confessed (1)**
368:3

**confirm (1)**
276:10

**confirming (3)**
341:21;347:8;
381:16

**confused (3)**
278:12;297:10;
357:6

**confusing (2)**
245:7;255:24

**confusion (2)**
290:15;318:23

**conjunction (1)**
350:16

**connection (1)**
271:7

**consistent (1)**
280:2

**contact (8)**
250:2;258:6;
260:12;265:19;
288:21;335:18;
365:17;368:15

**contacted (5)**
244:22,23,24;
258:22;365:15

**contacting (2)**
341:3;343:1

**contacts (2)**
277:22;335:14

**containing (1)**
236:9

**content (6)**
284:3,4,6;293:16;
353:14;355:1

**contest (3)**
323:13,14,15

**context (2)**
248:16;327:13

**conversation (36)**
233:21;234:4,22;
239:5;279:17;284:3,
5,9,19,23,24;286:22;
287:12;288:6;293:19,
25;294:6,16;300:23;
301:7;302:11,15,19,
22;304:12;305:6,22,
23;313:3;314:6,20,

**25;337:1;383:25;**
385:1,5

**conversational (1)**
231:5

**conversations (15)**
281:9,25;283:16;
291:3;293:21;294:3,
24;296:19;302:4,6;
303:13,15;305:9;
358:1;387:8

**coordinated (1)**
307:9

**coordinator (1)**
261:9

**copied (3)**
323:22,23;324:14

**copies (1)**
340:2

**copy (15)**
275:2;279:12;
324:7,10,16;328:6;
339:13;340:4;386:22,
23;387:18,22;388:3,5,
10

**correctly (2)**
268:25;380:21

**correspondence (2)**
374:21;375:19

**Counsel (3)**
229:22;230:4;330:7

**County (2)**
234:15;383:21

**couple (6)**
243:13;248:20;
259:16;266:2;383:4,
11

**course (4)**
231:18;246:4;
273:24;316:10

**Court (13)**
229:16,19,24;
230:9,22;274:11;
275:1;295:14;315:15;
327:23;339:24,25;
381:19

**COVID (1)**
330:21

**create (2)**
359:17,17

**created (1)**
359:23

**criminal (1)**
370:20

**cross (1)**
290:19

**cross-reference (1)**
335:13

**crystal (1)**
284:23

**curious (3)**
253:25;362:15;
364:20

**current (1)**

**249:21**

**currently (1)**
241:22

**Custom (1)**
254:15

**customer (12)**
256:7,8,11,12,15,
19,20,24;257:2,9,10;
355:17

**cut (3)**
259:6;356:16;
363:21

**cuts (3)**
256:3;258:21;
369:10

**D**

**DA (30)**
239:17;240:17,23,
23;243:11,14;247:6;
251:6;259:15;262:6,
7,9,18,25;264:2;
289:11;290:25;291:7;
292:3;294:2,7;
298:21,24;301:22;
306:21;307:23;308:7,
11;309:2;379:24

**Dahle (3)**
330:17;380:17,17

**Damian (16)**
230:5;234:7,9,14;
247:25;263:22;
264:24;295:11,22;
297:20,22;312:19;
383:2,9;387:16;388:4

**DA's (7)**
267:11,21;268:2,6,
12;288:14;307:10

**dash (1)**
339:19

**date (44)**
237:24;238:5;
251:20,23;252:8;
264:9;265:21;269:9;
282:17;284:15,21,
22;285:19;302:21;
304:1,3;309:14;
313:13;314:15;
318:12,21;320:18;
340:15,24;341:3;
342:18;348:5;351:9;
362:19;365:10,10,12;
366:17;368:7;372:17;
378:1,1,5,9,11;379:4,
9,10

**dated (3)**
255:8,10;275:11

**dates (12)**
232:23;248:5;
266:7;274:6;283:19;
317:14;318:3,22;
368:5;378:17;379:5,7

**date's (1)**
229:12
**daughter (2)**
233:17,23;234:23
**day (29)**
229:2;238:6;
265:24;276:23,25;
277:23;284:17;
302:13;303:15,23;
313:4,24;314:7;
315:5,6,8;321:23,24;
322:9;324:25;333:13,
14,16,19,23;334:4,25;
343:17;370:24
**daylight (1)**
362:6
**days (10)**
235:5;236:6;
263:11;266:2;287:9;
289:5;290:11;292:19;
302:24;379:11
**daytime (1)**
362:7
**dead (1)**
323:10
**deal (3)**
257:23;281:5;338:8
**deals (2)**
257:17,19
**death (5)**
332:13;349:6;
351:5,8,13
**debating (1)**
387:1
**December (7)**
317:4,6,18,20;
318:3,4;337:13
**decisionmaking (1)**
370:5
**defendant (1)**
326:17
**Defendants (2)**
230:2,5
**definitely (3)**
253:11;305:3;
387:10
**delay (1)**
308:17
**delete (3)**
249:24;329:25;
330:4
**delivered (5)**
237:21;284:15;
286:2;326:10;387:7
**delivery (2)**
285:24;361:21
**Department (49)**
234:16;237:14;
244:7,15;245:5;
247:17;248:9,12;
250:25;251:5,6,10,15;
262:24;263:18,20;
264:5;265:3,6,8,18;

267:10,12,16;269:10,
16;270:24;271:1,23;
272:9;273:3;290:2;
291:6,6,15;294:1,7;
295:2,7;298:8;
306:21;307:23;308:6;
383:22;384:3,6,14,20;
386:1
**depo (3)**
232:15;372:15;
382:15
**deposed (1)**
230:20
**deposition (21)**
229:11,17;230:18;
232:20;241:24;242:8;
243:9;246:12,13,18;
259:13;276:13;
316:17,18;330:24;
374:23;375:23;
382:12;383:10;
388:14,18
**deposition's (1)**
260:1
**deprived (1)**
244:22
**deputies (1)**
247:15
**deputy (2)**
244:5;247:14
**describe (1)**
254:21
**description (1)**
232:24
**destined (1)**
261:8
**details (1)**
244:20
**detective (7)**
238:15,16;299:4,9;
377:19,23;385:2
**determine (1)**
323:8
**different (2)**
279:3;303:3
**digital (1)**
274:20
**digits (2)**
275:21;279:6
**diligence (1)**
375:6
**direct (5)**
261:12;384:19,22,
23;385:24
**direction (5)**
250:5,9;270:18;
271:8;307:22
**directions (4)**
245:11,14;271:20;
286:18
**directly (1)**
329:16
**discount (1)**

369:11
**discovery (5)**
254:9,10;374:1;
387:20;388:6
**discretion (1)**
371:19
**discuss (1)**
281:23
**discussed (3)**
274:22;362:25;
374:7
**discussing (2)**
280:22;283:5
**Discussion (1)**
242:12
**discussions (1)**
286:23
**distinction (2)**
232:3;243:3
**District (5)**
229:16,17;230:3;
379:16,20
**doctors (2)**
321:12;322:6
**document (3)**
254:19,22;374:8
**documents (9)**
236:10;282:14;
329:10;360:5;374:5,
14,16;382:15,17
**domain (1)**
332:25
**donated (9)**
348:20,23;350:18,
20;352:4,20;353:11;
354:18;368:17
**done (9)**
252:22;260:13,18;
270:17;271:7;281:8;
297:22;330:9;382:13
**dot (3)**
365:11,11,12
**double (2)**
268:5;320:11
**down (13)**
265:22;292:8;
293:15;296:8;299:21;
326:25;333:17;334:2;
344:5;345:7;352:11;
360:24;369:12
**drop-off (2)**
271:24;272:10
**dropped (19)**
238:13;245:9;
247:20;248:24;
253:13;263:8,11;
269:3,8,14;271:14,24;
273:4;290:11;293:11;
294:4,20;296:10;
299:2
**dropping (1)**
285:14
**drugs (1)**

232:6
**due (2)**
345:2;375:5
**duly (1)**
229:8
**Duncan (6)**
238:12,16;299:9;
377:19,21;385:2
**duplicate (3)**
319:22,23;362:15
**during (8)**
231:9;268:8;282:2;
291:3;294:24;301:3;
372:22;384:7
**DVD (1)**
312:10

# E

**ear (1)**
376:1
**earlier (15)**
261:20;268:23;
276:25;289:5,6;
295:7;334:23;344:19;
349:24;350:1;354:5;
372:15;375:5;383:14,
25
**early (4)**
238:3;278:19,20,21
**easier (2)**
275:2,9
**Eastern (1)**
229:17
**eat (1)**
346:24
**effect (1)**
331:10
**either (16)**
233:15;235:16;
239:14;250:10;269:4;
270:18;271:8;292:14;
295:8,8;299:8;311:8;
335:19;344:5;385:2,6
**else (15)**
231:22;235:20;
239:1;270:25;271:3;
305:5;324:11;327:4;
344:3;358:10;359:23;
381:8,23;383:1;387:6
**em (1)**
306:5
**email (16)**
236:9;329:5,7,8,11,
21;330:24;343:19,20;
344:1,4;350:2;
379:14,15;381:5,8
**emailed (2)**
341:14,25
**emails (11)**
236:9;330:4;375:7;
376:9,11,12,18,21;
379:15;380:10,18

**employee (1)**
379:15
**employees (2)**
233:11;379:20
**end (9)**
261:25;263:22;
312:10;344:10;
363:21;382:12;
385:18;386:21;
388:13
**ended (1)**
357:18
**enforcement (4)**
236:3;250:17,19;
327:16
**enforcement's (2)**
327:11,19
**engaged (1)**
235:4
**enough (3)**
314:12;327:20;
332:15
**entire (1)**
339:1
**entirety (1)**
315:20
**entitled (1)**
231:22
**entry (3)**
277:16;280:16;
281:3
**especially (1)**
248:11
**essentially (1)**
359:16
**Estate (21)**
345:9;349:10,11,
15,19,22;350:5;351:3,
4;356:11,12,22,24;
357:8,10;358:12,20,
22;359:20;360:4,11
**Estate's (1)**
357:13
**estimate (13)**
231:23,24,25,25;
232:1;266:22;283:11,
16;284:24;288:2;
301:10,12;304:25
**etcetera (3)**
231:10;310:4;319:1
**even (10)**
238:3;242:8;
250:14;259:24;
284:12;296:18;
334:12;369:15;
382:24;383:1
**evening (11)**
233:4,9,15;269:3,8;
277:15;290:12,23;
292:9;323:11;385:3
**events (7)**
232:19,24;304:25;
305:8,10;309:23;

310:2
**everyone (2)**
234:11;388:1
**evidence (1)**
374:21
**evident (1)**
351:7
**exact (5)**
285:21;304:11,14;
305:9;314:15
**EXAMINATION (3)**
230:11;383:7;
385:22
**examined (1)**
229:9
**example (5)**
231:24;291:15;
325:17;371:10;
378:12
**Excel (1)**
322:20
**except (2)**
230:20;274:21
**exercise (1)**
339:1
**exhausted (1)**
367:11
**exhibit (35)**
246:12,14,16,18,19;
254:14;274:12,16,17;
275:10;300:5;317:6;
320:13,17,22;339:23;
340:12,13,14,19,25;
341:7,7;345:21;
346:1,5;347:3,8,11,
13;362:17,18;366:14,
16;374:19
**exhibitor (2)**
235:20;371:17
**exhibitors (1)**
235:21
**exhibits (1)**
367:1
**existence (1)**
373:2
**expect (1)**
361:19
**expected (2)**
361:3,15
**explain (1)**
332:11
**explaining (2)**
321:19,22
**expressed (1)**
304:14
**expression (1)**
359:5
**extent (1)**
314:1
**extra (3)**
340:10,11;362:3
**extreme (1)**
315:3

**extremely (1)**
244:21
**eyes (2)**
347:15,24

## F

**fabrications (1)**
359:23
**facility (1)**
256:23
**fact (2)**
250:23;258:25
**facts (1)**
347:2
**faded (1)**
279:14
**Fair (58)**
230:3;233:3,12;
235:22;250:15;
252:24;253:1;254:7;
256:10,22,22;277:11,
19;279:8,11;282:25;
283:1;302:11;304:6,
17,19;305:21;309:13,
21;314:12,24;315:12;
325:16,19;331:25;
337:23;338:8,11,15;
346:11,17,17,24;
348:12;351:7,18;
358:2;360:17,23;
361:7,10,13,19;
369:13,14;370:20;
371:8,16;373:7;
380:4;381:23;384:5;
386:1
**fairgrounds (2)**
342:16,17
**fairs (1)**
235:18
**fair's (1)**
257:17
**familiar (6)**
252:19,20;255:25;
275:25;344:22,23
**family (1)**
334:6
**far (4)**
235:1;236:20;
239:9;240:23
**father (1)**
293:2
**February (4)**
229:1,12;317:19;
337:12
**feel (2)**
267:7;319:16
**fell (1)**
379:6
**Fernandez (40)**
236:8,14;238:12,
16;247:19,24;248:1,8,
14,24;249:1;262:21;

270:19;271:1,9,11,12,
14,19;273:4;282:14;
290:12,23;291:2;
292:4;293:21;296:10,
14;299:8;311:19,21;
343:9,11,14,16,17;
377:17,18;385:2;
387:5
**Fernandez's (1)**
249:14
**few (10)**
243:15;248:4;
257:20;274:9;277:22;
278:22;287:9;313:4;
381:12;382:15
**fight (1)**
382:16
**figure (3)**
257:5;321:15;
352:13
**figured (1)**
259:24
**figuring (1)**
321:16
**filed (16)**
313:14,24;314:7,
10,13;315:5,6,7;
318:8;328:22,25;
331:21;333:13,16,23;
351:12
**final (1)**
260:5
**find (8)**
233:11,12;246:15;
257:4;273:22;319:3;
344:3,4
**finding (1)**
344:6
**finds (1)**
382:17
**fine (32)**
237:20;241:8,10;
249:6;261:14,16;
266:21;273:1;275:5,
7;281:2;294:14;
295:15,21;308:25;
312:8;316:5,7;326:3;
340:8;362:14;374:10,
24,25,25;375:3;
378:25;380:2,14;
382:22;385:16;
387:17
**finish (3)**
297:20;312:23;
379:13
**finished (1)**
328:12
**firm (1)**
229:14
**first (26)**
229:8;241:24;
254:23,23,24;255:24;
276:24;280:12;

296:20,24;297:14;
298:1;299:11;303:17;
317:3;321:2;324:2;
330:21,24;334:15;
340:5,24;358:15,16;
362:23;379:9
**Fisher (3)**
229:3,18,21
**five (7)**
268:13;312:3;
334:5,21;372:8,10;
374:11
**flash (2)**
237:21;283:18
**flashback (1)**
300:12
**flip (5)**
277:13;279:2;
287:6;313:9;335:24
**flipped (1)**
246:23
**Flores (1)**
376:21
**FOF (2)**
348:9,12
**follow (1)**
383:16
**following (2)**
280:15;315:8
**follows (1)**
229:9
**follow-up (3)**
300:1;372:16;
383:11
**follow-ups (1)**
385:19
**Forever (3)**
378:3,4,5
**forget (1)**
323:12
**forgetting (1)**
295:19
**forward (9)**
232:15;237:21;
283:18;323:16;327:2,
3;328:8,15;333:5
**forwarded (3)**
345:2;373:20;374:5
**found (2)**
233:3;314:11
**foundation (4)**
232:21;313:25;
314:8;315:19
**four (3)**
275:21;279:6;
336:15
**Fowler (2)**
233:15;234:19
**Fox (1)**
229:13
**Francesconi (4)**
335:6,7,8;377:8
**frankly (1)**

274:4
**frantic (1)**
279:24
**free (2)**
267:8;319:16
**frequently (1)**
277:19
**Friday (5)**
229:1;238:1,2,8,8,9
**friends (2)**
325:20;348:12
**front (2)**
255:20;285:20
**frowned (1)**
365:1
**fucking (1)**
364:23
**full (1)**
273:21
**further (8)**
239:12;292:13,16;
295:1,6;320:5;
385:12,22

## G

**Gal (1)**
252:14
**gals (1)**
336:15
**gal's (1)**
348:15
**gave (17)**
231:23;248:5;
250:4,8;251:17;
260:7;271:19;286:3,
8;305:15;306:8,19;
317:5;344:2;374:1;
376:8;381:23
**gel (2)**
277:9;304:9
**gels (1)**
306:7
**general (3)**
379:2;380:7,8
**generalization (2)**
326:2;327:21
**generally (2)**
305:8,10
**gentleman (4)**
238:19;258:1,12;
368:22
**gentlemen (1)**
229:10
**gets (4)**
237:21;363:21;
369:2,13
**giant (1)**
367:4
**girl (1)**
364:18
**given (6)**
264:25;287:20;

343:23;374:15;
375:24,24
**gives (1)**
231:15
**giving (5)**
272:23;287:24;
301:16;364:18;365:2
**goat (127)**
233:24;234:1,24;
239:6,10;240:17;
247:6,20;250:15;
252:5;254:6;255:1,
11;256:7,10,19,20,21;
257:24;258:1,7;
260:22;261:5,8,12;
264:9;269:22;278:23;
284:7;286:13;287:14;
289:23;291:13;292:4,
10,11,12,15;295:1,6,
8;298:9,21,25;299:2;
301:14,15;302:25;
303:1,6,7,8;307:5,6,9;
308:4,16;321:6,17,19,
20;338:6,16,22,24;
341:1;342:2,12,22;
343:1,12;345:2,8,11,
12,14;346:10,10,21,
24;347:17,24;349:3,
5;352:4;356:21,24;
357:1,1,2,7,9,11,13,
17,18,19,19;358:3,5,
5,6,7,8;360:13,14;
364:13;365:4;368:3,
15,17,24;369:2,4;
370:15,16;371:5;
375:10;377:4;383:15,
18,23;384:12;385:4,
11,13,14
**goats (3)**
255:13,14;368:22
**goat's (3)**
255:10;355:25;
369:17
**god (1)**
368:18
**goes (5)**
235:16;319:9,10;
320:5;348:9
**Good (20)**
230:12,14;233:9;
234:9;240:13,15;
247:4;312:21;319:8;
323:11,18;324:13;
327:6;328:14,20;
342:2;359:14;361:6,
8;383:8
**Gordon (168)**
229:25,25;230:4,
11,12;233:8;234:17;
236:17,19;238:5;
239:9;240:4,7;241:8,
10;242:6,11,15,18;
243:23;244:1,4;

245:6,20,22;246:16;
247:25;248:3;249:8;
251:1;253:24;260:3,
9,11;263:4,10,21;
264:19;265:5,12,15;
267:14,19,25;268:13,
20;270:25;271:16,19;
272:16,24;273:9;
274:24;275:4,7,13;
276:11;277:4,7;
278:6,10,15;279:16;
282:23;288:17,23;
289:5,9,17,24;290:20;
291:10;293:24;
294:14,19;295:10,15,
18,21;297:5,7,12,20;
298:13,19;299:18;
304:13;306:25;307:8,
17,25;308:9,17;
309:5;311:12;312:2,
7,17,22;314:3,12;
315:23;316:4,8,18,22;
319:20;322:13,16;
328:13;329:20,25;
331:1;333:22;338:2,
4,24;339:5,8,12,16;
340:3,8,11,18,21;
346:7,13,22,25;
347:20;351:1,18,23,
25;352:18;353:3,8,
17;354:11,14;355:6,
12,14;356:1,9;
357:20;359:4;360:10,
22;361:17;362:14;
373:25;374:3,24;
379:5;381:6;382:11,
21;384:22;385:19,22,
23;387:1,13,16;388:3,
8
**gotcha (4)**
311:14;364:22;
366:4;377:19
**grab (1)**
370:16
**great (5)**
232:11,14,18;
234:17;247:2
**greater (1)**
359:14
**green (3)**
264:25;266:12;
291:16
**grief (2)**
349:3,4
**Gross (1)**
326:2
**ground (1)**
230:18
**guess (23)**
234:4;235:19;
236:10;244:13,14;
245:4;289:23;304:8;
308:22;312:7;325:21,

22;327:3,14;329:10;
351:20,21;355:18;
357:6;365:15;369:14;
370:4;385:1
**guessing (15)**
232:3;244:7;
247:10;252:25;263:6,
7;278:23;290:9;
301:14;324:20;326:5;
338:6;346:9;354:22;
355:1
**guesstimate (2)**
266:20;284:12
**guy (4)**
349:2,4,7,9

## H

**habit (1)**
334:11
**hair (1)**
238:19
**half (2)**
321:7,18
**hand (7)**
273:19,19;274:11;
321:3;366:11,13;
373:18
**handbook (1)**
235:20
**handed (1)**
235:20
**handled (1)**
338:16
**hands (3)**
258:23;327:11,19
**hanging (1)**
381:12
**happen (3)**
257:20;351:6;
368:20
**happened (8)**
232:19;258:19;
270:12;289:19;305:1;
314:16;322:15;361:2
**happens (4)**
231:7;256:21;
258:21;371:16
**happy (3)**
332:23;364:21,22
**Hard (2)**
318:18;334:8
**hate (2)**
321:16;332:13
**head (18)**
265:22;292:8;
293:15;296:8;299:21;
307:18,20;308:1,3,16,
25;311:3;333:17;
334:2;352:11;360:16,
24;369:12
**hear (7)**
234:10;237:18;

245:24;263:13;
292:12;308:6,11
**heard (7)**
292:13,16;335:1;
342:3;365:8;386:9,12
**hearing (2)**
386:14,16
**Hearts (2)**
326:10;345:4
**held (1)**
328:7
**help (7)**
272:12;317:15,25;
318:10;319:2;337:19;
339:18
**helping (3)**
257:18;331:25;
369:1
**here's (1)**
318:6
**Hi (3)**
234:11;337:14,20
**hide (2)**
358:25;359:2
**highlight (4)**
277:14;287:10;
300:21;373:10
**highlighted (6)**
273:20;275:19;
279:4;280:13;300:9;
302:10
**highlights (5)**
275:15;279:13;
283:20;373:12,13
**highly (1)**
337:9
**himself (1)**
290:24
**hold (22)**
240:14;263:8;
287:21;290:23;
292:10,12;294:22,25;
295:5,8;296:3,3,25;
297:15;298:2,4,8,9;
343:2;385:10,12,13
**holding (2)**
307:9;320:23
**home (1)**
274:18
**honestly (1)**
248:1
**hour (3)**
229:2;321:7,18
**hours (3)**
278:22;331:19,21
**house (14)**
232:2;237:21;
245:10;250:8;269:3,
8;271:25;284:16;
285:14;286:13;
292:15;293:4;381:18,
19
**housed (1)**

292:11
**housing (2)**
292:10,13
**huh (1)**
363:20
**human (1)**
270:4

## I

**idea (12)**
288:22;300:3;
338:3;342:14;343:21,
24;350:25;352:7,8,
10;372:7,8
**identification (6)**
254:16;275:12;
320:20;340:17;
362:21;366:19
**immediately (1)**
354:20
**imply (1)**
350:19
**important (1)**
230:24
**impression (5)**
289:25;290:4;
307:21;309:1;338:19
**inadvertent (1)**
248:1
**included (1)**
271:12
**incoming (2)**
275:16;378:16
**incorrect (12)**
268:22,25;269:11,
12,16,17,22,25;
270:14,20;272:25;
384:10
**independently (2)**
357:24;371:13
**indirect (1)**
386:5
**individual (1)**
270:4
**inferring (4)**
354:3,17,19;356:22
**info (5)**
333:5;343:12;
363:20,21,23
**information (5)**
289:6;292:20;
299:12;300:2;363:24
**Instagram (1)**
345:3
**instance (1)**
248:11
**instead (1)**
265:4
**instruct (1)**
383:18
**instructed (2)**
296:3;383:22

**instruction (2)**
286:7,8
**instructions (15)**
238:23;239:13;
284:8;286:3,11,15;
287:18,20;294:21;
295:6;296:14;301:16;
302:18;303:24,25
**instructs (1)**
231:15
**interest (2)**
326:17,23
**interfering (1)**
232:6
**Inter-Mountain (2)**
315:12;331:25
**interpret (2)**
327:17;350:12
**into (1)**
317:6
**introduce (1)**
229:22
**investigate (1)**
345:1
**investigation (1)**
282:14
**Invoice (5)**
254:14;255:8;
345:18,21,22
**involved (1)**
325:22
**involving (1)**
325:24
**issue (3)**
272:19;282:24;
370:6
**issues (6)**
281:14,19,22;
313:7;348:2;367:23
**item (14)**
280:13;281:3,17;
282:12;283:7;284:3;
285:8;287:1,9;
302:10;310:21;
313:16,23;314:5

**J**

**Jerry (4)**
343:8,9,11,14
**Jessica (11)**
233:2,21;234:21,
22;236:9,10;326:8;
366:2;375:10;380:4;
381:24
**Jessica's (1)**
342:22
**job (2)**
259:6;336:3
**John (19)**
230:2;272:12;
273:21;274:14;
315:19;319:16;330:8;

331:3;338:25;339:20;
353:4;359:4,11;
361:8;362:10;373:19;
374:25;381:6;382:13
**Johnson (24)**
239:22;240:3,22,
22;241:2,6,12;
243:11;244:18;
248:19,21,22;253:12;
259:15;269:21,21;
273:16;311:11,12,15;
377:12;383:15,18;
387:11
**Johnson's (3)**
241:20;242:19;
375:25
**Join (7)**
240:1;241:9;
267:24;288:18;
289:12;297:9;306:24
**judging (2)**
364:19,21
**July (116)**
233:3,3;237:22;
238:1,1,8,9;241:12;
242:21;243:12;245:7,
9;246:6,6;247:11;
248:20,25,25,25;
252:7;253:12,13,17;
264:4,9;267:1,1,4,9,9,
15,15,20,20;268:8,8,
10;269:3,4,4,9,9,14,
14;271:25;276:23;
277:8;283:19;284:1,
15;285:7;286:22;
287:6,8,9,13;288:4,6;
291:4,4;292:1,5,21;
293:11;294:23;
295:24,25;296:6,6,21,
23,24;297:1,4,5,14,
14,16,25;298:1;
299:13;300:8,10,11,
16,20;301:6,7,13;
302:4,13;304:17;
308:20;309:9,23;
310:9,12,18;321:8;
345:8;348:7,7,7,9;
351:10;356:14,18,25;
363:6,6;384:1,1,21,
21;385:3,3
**jump (3)**
319:16;359:10;
381:11
**June (36)**
233:7,8,9;234:4;
235:10;236:8;237:9;
242:20;245:7;277:3,
4,7,23;280:3,12,20;
281:12;282:9,11,12,
13,19;283:7;341:5,6,
7;342:3,20;363:7;
365:13,14;368:6,8,9;
378:12;379:10

**junior (5)**
281:8;350:15,19,
20;363:2
**jurisdiction (1)**
342:17

**K**

**Kathie (95)**
239:14;245:18,19,
20,25;246:1,22;
250:10,11;251:17;
260:12,17,21,22;
261:2,5,7,12,17;
262:2;263:13,15,24,
25,25;264:15,20;
265:8,19,20,23,24;
266:3,13,17;267:1;
269:5;270:19;271:4,
9;278:13;284:5;
285:10,18;286:23;
287:2;289:23;290:1;
291:3,12;292:14,16,
20;295:8;296:23;
297:25;298:10;302:4;
304:19;305:13,22,24;
306:14;307:15,21;
308:5,11;313:12;
342:7;348:15,16;
350:17;351:22,23,25;
352:2;353:2,6,8,21;
354:1,4,5,14,15,21;
355:7;358:24;359:17;
364:9,14;376:13,14;
384:12;386:3
**Kathie's (1)**
348:25
**Kathy's (5)**
261:25;283:23;
307:4;308:4,16
**keep (8)**
234:13;311:2;
320:4,13;332:17;
339:25;340:5;361:23
**keeping (7)**
280:7;281:5,13,18;
309:22;310:2,2
**Kenny (5)**
368:16,21;369:4,
10;370:23
**kept (1)**
245:10
**key (2)**
378:11,19
**kid (1)**
369:2
**kidding (1)**
364:23
**kids (5)**
321:12;322:3,5,6;
369:1
**kill (17)**
240:17;247:6;

251:18;252:9;255:2,
2,4,11;264:2;265:1;
292:4;298:21,25;
303:24,25;383:18,22
**killed (10)**
253:14;258:25;
263:17;264:9;291:16;
348:20;352:20;353:9,
10;354:18
**killing (7)**
252:5;255:7;297:1,
16;298:2,8;306:22
**kind (1)**
336:13
**knew (3)**
264:19;314:10,16
**knowledge (7)**
290:18;325:23;
384:19,22,23;385:24;
386:5
**knowledgeable (2)**
327:20;332:15
**known (3)**
330:19;332:18,19

**L**

**labeled (1)**
342:22
**lack (1)**
315:19
**lacks (2)**
313:25;314:8
**Ladies (1)**
229:10
**lady (2)**
341:1;342:2
**laid (1)**
347:15
**language (1)**
352:25
**last (32)**
230:17,23;231:6,
24;232:6,18,20;
235:7;236:25;237:7,
12;239:15;246:13,18;
247:12;275:20;
277:16;279:6;302:10;
306:1;336:11,16;
337:13,21,24;338:12,
20;372:5,8,10;380:5;
383:10
**late (9)**
233:4;234:11;
237:22,25;238:2,9;
285:11,17;306:4
**later (5)**
230:6;275:6,8;
277:15;382:16
**law (5)**
250:17,19;327:11,
15,19
**lawsuit (20)**

313:13,14,24;
314:6,7,10,13,21;
315:1,2,9;318:25;
327:15;328:22,25;
331:14;332:18;333:1,
23;351:12
**lawsuit's (1)**
318:8
**lawyer (1)**
240:19
**leading (1)**
333:2
**least (3)**
276:12;278:19;
381:5
**left (5)**
335:11,24,25;
341:25;382:15
**Legally (2)**
260:3,5
**less (1)**
337:22
**lesser (1)**
369:4
**letter (4)**
330:9;373:19,20,
23,25;374:13
**letting (1)**
266:1
**lie (2)**
359:7,18
**Lieutenant (15)**
236:8,14;238:12,
16;248:1;249:13;
270:18;271:1,8;
290:12;296:10,14;
343:14,16;385:2
**lieutenants (1)**
250:21
**lifetime (1)**
372:4
**light (4)**
264:25;266:12;
291:16;350:24
**likelihood (1)**
361:9
**likely (6)**
267:4;283:9,10;
301:4,13;302:17
**limited (1)**
379:3
**line (5)**
279:8;280:14;
281:4;310:21;323:3
**lining (1)**
322:21
**link (10)**
328:4,21,23,25;
329:1,2,4,22;331:1,4
**list (8)**
271:12;322:19;
323:8;341:15,15;
374:12;375:5;376:7

little (3)
303:18;373:17;
381:12
livestock (15)
281:8,19,23;325:2,
4,7,8;337:18,19;
350:15,19,20;363:2,
20;370:4
loaded (1)
361:8
local (6)
235:11,17,19;
371:15,25;373:1
log (2)
293:6;316:13
Long (12)
233:17;234:5,20;
236:25;280:8;316:2;
330:19,20;342:4;
362:11;367:4;375:10
Longs (1)
369:23
look (27)
246:20;254:12;
257:6,7,11;275:25;
315:10;319:8;331:24;
339:22;366:15;374:4;
375:15,18;376:1,16,
24;377:3,6,9,12,21;
378:9,10,16,23;379:7
looked (12)
235:13;241:23;
326:11;374:17;375:6;
377:4,8,18;378:8,13;
381:7;382:23
looking (26)
233:24,25;278:13,
17;283:7,19;284:3;
285:7;291:25;304:2;
305:3;313:23;317:4;
318:3;322:17;339:4,
5,9,11;344:10;346:5;
347:1,2;356:14;
367:11;374:14
Looks (53)
260:19;276:22;
277:14,22;278:2,18;
279:2,7;280:12,15;
281:2,11;282:10;
283:4;284:2;285:10;
286:22;287:7;300:19;
302:9,9,11;303:14,14,
16,19;304:4,4,5,6,16;
309:10,13,19,20;
310:9;313:2,11;
314:24;319:25;320:5,
21;321:2;333:8,10;
340:21;362:13,23;
363:6,15,16;364:5,16
Lori (1)
380:20
loss (2)
346:19,20

lost (1)
250:2
lot (4)
244:20;250:2;
273:14;348:2
lots (3)
257:19,20;364:14
lot's (1)
331:5

## M

MACFARLANE (16)
229:7,12;230:3,13;
242:19;268:20;
273:18;275:13;
279:12;320:18;325:7;
340:15;362:19;
366:17;383:9;388:14
Madame (2)
274:11;339:24
mainly (1)
281:25
major (1)
281:24
makes (2)
233:1;347:24
making (5)
243:2;350:24;
352:13;354:2,7
many (8)
243:10;246:3,5;
248:18;249:1;259:12,
14;334:3
March (2)
378:15,20
mark (2)
367:13,14
marked (7)
254:16;275:11;
320:20;340:17;
349:15;362:21;
366:19
matter (3)
274:20;329:12;
338:16
matters (1)
374:17
may (7)
320:3;347:21;
349:14;362:2;367:18;
375:24;383:9
maybe (22)
247:11;248:20;
250:20,20;251:3;
252:1;266:8;272:25;
281:13;314:1;315:9;
336:3;339:19;354:17;
356:1;372:18;374:16;
379:6;381:8,12;
382:24;386:6
mean (53)
236:16;242:24;

243:3,4;247:17,18,19;
248:1,10;250:19;
251:3;253:22;263:18,
23;266:12;268:3;
278:5;284:13;289:22;
298:19,23;310:2;
311:10,15;323:23;
325:2,20;326:19;
327:12,14,17,20;
328:10;329:16;330:8,
8,20;331:9,13;332:11,
17,24;338:5;346:14;
350:14;351:16;
353:24;355:10;359:5;
371:25;379:1;382:19;
385:15
means (3)
249:10;358:7;
359:11
meant (4)
325:7;331:12;
347:25;350:22
meat (19)
254:4;255:19,22;
256:13;257:10;
261:18,21;262:2;
269:25;322:8,15;
349:7;355:9,20,25;
358:1,12;369:3,5
Meats (17)
252:8;256:8,24;
303:21;345:9;355:13,
14,17;356:22;358:9,
17;360:8,9,10;361:11,
14,20
media (3)
229:15;312:11,15
meds (1)
232:11
meet (3)
330:9;373:18,25
Megan (1)
380:17
Melanie (105)
230:3;236:22,23;
237:13,19;239:14;
240:18;243:17;
244:23;245:1,18,18,
19,20,25;246:4,6;
249:2;250:10,11;
251:9,17;256:18;
257:12,13;258:6;
260:12;261:14;
263:13,16,25;264:15,
20;265:8,19;266:4,14,
18;267:1;269:4;
270:19;271:5,9;
278:14,15;281:17;
286:12;290:24;
292:14,16;295:9;
298:10;302:13,22;
305:13;306:14;
307:21;309:22;313:3,

22;314:4,21;320:18,
24,25;321:14,19,22;
322:8;323:25;326:22,
25;328:15;331:8;
335:1;337:16;340:15;
349:5;350:4,11,11,18,
22;352:3;355:7;
356:15;357:13;
358:24;359:17;
360:17;362:19;363:7;
364:15;365:21;366:4,
17,21,22;367:12,15;
370:1;372:17;376:7;
384:11;386:6
Melanie's (1)
358:4
memory (21)
233:2;236:11;
238:9;252:4;253:16;
277:9;280:2;284:14,
22,24;287:15,21,22;
302:21;304:3,9,19;
305:1;306:7;354:24;
372:13
mention (2)
265:15;300:1
mentioned (7)
299:16,19,22;
335:3;370:14;380:25;
384:4
mentions (2)
262:6,15
message (31)
243:20,22,24;
244:6;246:9;260:19;
290:7,10;291:24;
292:1;296:20;298:3,
18;317:7;320:24;
327:2,4,5;328:6,8,14,
15,19;331:17;335:11,
25;336:5,20,22;
353:14;366:20
messages (14)
235:4;239:16;
316:23,25;317:1,5;
330:1;339:19;350:2;
361:24;376:8,14,21;
380:16
met (1)
330:21
Michael (4)
269:21,21;375:25;
377:12
Mickelson (2)
229:5,20
midtext (1)
319:6
midweek (1)
237:10
might (50)
241:21;243:3;
244:24;253:3,19,25;
255:8;261:14;264:7;

269:18;271:3;273:11;
293:18,25;294:5,9,15,
16;298:17;299:18,22;
304:14;305:9;316:12;
317:15;320:4,4;
325:10;327:8;329:17;
334:15;336:13;340:3;
343:23;352:10;
360:15;361:8;362:9;
363:12;367:18;
375:23;377:5;380:24,
25;381:7,11;382:23;
386:9,12;387:7
Mike (9)
335:5,7,25;336:5,
22;341:25;365:9;
376:21;377:8
Military (1)
306:2
mind (2)
295:16;302:23
Mine (2)
343:2;352:9
minutes (3)
248:5;312:5;382:15
mishearing (1)
298:12
miss (1)
357:7
missing (8)
256:19;257:24;
303:1,3,3,5,7;317:15
misstates (5)
239:24;241:3;
243:21;250:22;263:2;
270:22;295:4;297:3,
6,18;298:6;299:14;
361:13
misstating (1)
240:11
mistakes (1)
257:20
misunderstood (1)
345:25
mobile (2)
258:10,15
moment (17)
262:15;271:6;
295:22,24;318:9;
319:1;324:16;332:23;
334:8;353:4,19;
356:9;363:5;366:11;
380:22;382:1;385:23
Monday (1)
341:15
more (19)
277:22;283:3,6,8,
15;286:23;289:14;
301:4;302:4,17;
303:13;309:6,10;
321:13;347:17;355:6;
382:14,17;387:2
Morfin (3)

229:3,18,21
**morning (25)**
230:12,14;233:15,
20;234:3,9,21,25;
238:4;240:13,15;
247:4;278:2,19,20,21;
319:9;323:18;324:14;
327:6;328:14,20;
341:2;342:2;385:3
**most (2)**
283:8,10
**motivating (1)**
354:9
**mouth (1)**
344:24
**move (3)**
272:17;294:9;308:9
**moving (1)**
326:25
**much (1)**
230:15
**Murchi (1)**
380:20
**Muse (51)**
251:17;270:19;
278:5;284:2,5,9;
286:3,23;287:2,8,17;
288:5,9;289:10;
291:3,5,12;293:5,10;
294:4,5,20,23;295:24;
296:5,14,19,23;
297:13,25;299:12;
300:9,15,20;301:3,6,
13,20;303:14,19;
304:5,6,17;305:23;
309:11,11;313:12;
353:2;376:13,14;
386:3
**Muse's (6)**
246:22;275:23;
278:9,10,13;289:23
**must (1)**
321:7
**muted (1)**
312:18
**myself (3)**
231:8;245:8;351:8

**N**

**name (21)**
234:13;240:25;
252:14,15;253:2;
258:2,12;319:8;
323:20;324:6;335:2;
336:11,16;348:15;
351:2;377:2,6,15,16;
379:25;380:5
**named (2)**
258:16;326:16
**names (4)**
374:12;375:1;
376:7;379:13

**name's (1)**
383:9
**necessarily (4)**
244:8;307:18;
355:24;360:15
**necessary (1)**
275:5
**need (7)**
237:8;257:22;
264:24;272:25;276:8,
10;278:8;279:10;
317:10;332:23;334:8;
337:14;341:4;343:4;
344:10;352:15;
363:23;374:3,24;
375:2,3
**needed (1)**
267:5
**needs (14)**
318:6;331:8;
332:10;333:9;348:15;
349:1;353:6;354:1,5,
15,21;363:20,21;
365:15
**negative (1)**
268:5
**negatively (1)**
331:14
**new (4)**
293:19,25;294:6,16
**news (2)**
331:23;332:25
**next (63)**
233:15,20;234:21;
277:21,25;278:1;
280:11;281:11,16;
282:8;283:3,13,18;
285:6;286:21;288:4;
293:4;300:12,19;
301:5;302:3,8;
303:11;306:18;
309:20;310:1,17;
313:8,11,19;317:21;
318:14,15;319:15,22;
322:8;326:15;328:2;
331:7;332:8;334:25;
335:4,5,24;337:11,20;
338:25;341:10,22,23;
342:8;343:1,3,8;
344:7;345:7;347:21;
348:8;350:10;364:7;
365:7;367:8;370:24
**night (15)**
237:25;238:3,9;
239:5;247:12;263:8;
271:18;272:1;285:11,
16,18;290:9;299:2;
305:25;309:12
**nine (1)**
314:4
**nip (5)**
318:7;331:8;
332:10;333:9;337:3

**noble (1)**
359:7
**nodding (1)**
231:2
**Nods (10)**
265:22;292:8;
293:15;296:8;299:21;
333:17;334:2;352:11;
360:24;369:12
**None (3)**
360:1,1;363:25
**nonetheless (1)**
254:12
**nonprofit (10)**
348:20,23;350:12,
13,18,24;352:4,20;
353:11;354:19
**nonresponsive (2)**
272:18;308:10
**Nope (2)**
365:8,11
**nor (1)**
381:23
**Northcutt (42)**
230:5;234:11,14,
14;240:1;241:9;
247:23;250:22;263:2,
19;265:3;267:24;
270:22;271:11;
288:18;289:12;
294:12,17;295:4,12,
17,20;297:9,18;
298:4;306:24;307:16,
24;308:8,14;309:4;
312:21;383:4,7,8,9;
384:25;385:16;
386:19;387:18;388:1,
5
**notice (2)**
295:1;381:24
**noting (1)**
230:6
**November (2)**
378:22,23
**number (61)**
229:15,15;241:22;
242:20;243:6;246:14;
249:14,18,25;250:3;
275:17,19,20,23,25;
276:12,15,20;278:1,5,
7,9,14,14,15;279:3,4,
7,11;280:18,18;
281:3;282:11;283:15,
22,23;285:7;287:9;
303:19,20;310:11;
311:1,4,8,16,18,19,20,
20;312:11,15;313:12,
22;314:5,24;330:12;
334:22;335:12;
336:10;366:24;
375:25
**numbers (12)**
273:20,22;274:8,

14,22;276:8,17;
278:16;316:2,11,13,
14
**numerous (3)**
296:19,23;297:25

**O**

**object (12)**
231:10;239:24;
241:3;264:24;298:5;
307:25;313:25;
315:24;359:2,4,6;
374:20
**objected (1)**
271:11
**objection (15)**
231:15;240:1,10;
241:9;250:22;263:2;
270:22;276:14;
288:19;289:13;
295:16;297:18;
307:16,24;308:14
**objectionable (1)**
297:23
**Obviously (2)**
331:5;355:19
**occurred (3)**
284:25;285:4;385:1
**occurrences (1)**
347:5
**o'clock (3)**
285:15;309:12;
312:10
**off (45)**
238:13;242:11,12,
13;245:9;247:20;
248:24;253:13;263:8,
11;268:14;269:3,8,
14;271:14,24;273:4;
274:23,25;285:14;
290:11,22;291:1,25;
292:4;293:11;294:4,
20;296:10;297:15;
298:2,8;299:2;305:1;
312:9;315:14;320:21;
356:3,16;363:21;
375:5;382:3,4,5;
388:16
**office (31)**
250:20;257:15;
267:11,21;268:2,7,12;
272:5;279:8,11;
280:14;281:4;288:14;
289:11;290:8;294:22;
296:25;297:15;298:2;
301:22;302:11;304:6,
17;307:10;309:21;
314:23;343:15;
379:16,21;383:11;
387:6
**officers (2)**
234:16;385:6

**offices (2)**
229:3;388:15
**often (2)**
252:20,22
**Old (1)**
388:16
**once (2)**
320:15;382:25
**one (88)**
229:15;234:5;
240:14;244:24,24;
251:11;252:1;254:23,
23;255:2,16;257:17,
22,23;261:10;262:15;
266:4;275:8;276:3,
17;290:4;294:10;
299:5;300:12;302:10;
303:4;309:20;312:11;
318:14,15,19,20,22;
320:1,5;321:13;
323:17,22,23;324:13;
328:11;332:23;333:7;
334:15;339:23;
340:24;342:1,10,10;
343:8;344:19;345:7,
17,20;346:11,12;
347:14,15,21;348:15,
25;349:1,15;351:25;
353:6;354:1,5,15,21;
355:6;359:12;362:1,
11,16;364:2,3,4;
367:4,17;368:25;
372:2;381:5,9;382:2;
385:19;386:6,16;
387:2
**ones (25)**
280:16;316:6,8,19;
332:6;339:1,3,9,10,
15,18;344:11;348:17,
17;362:6
**one's (1)**
255:20
**only (16)**
237:1;255:16;
271:22;273:22;
282:24,24;286:7,8;
301:2;303:6;316:8,
19;337:1;348:17,17;
355:7
**oOo- (1)**
388:20
**opportunity (5)**
231:8,10;259:20;
260:4,7
**opposed (2)**
249:9;268:23
**order (21)**
275:14;300:19;
305:8,10;317:15,16,
24,25;318:10;319:2;
320:13,15;339:6,25;
342:9,10;343:2;
344:9,10,11;381:19

ordered (2)
    361:24;366:9
Oregon (1)
    388:16
original (2)
    387:19;388:6
originals (1)
    388:14
Orland (2)
    341:17;362:24
Orlando (1)
    341:15
out (33)
    233:4;237:8;
    239:19;240:5,11;
    246:9;252:8,11;
    257:4,5,18;258:13,20;
    272:12;273:22;274:1,
    2;292:21,22,23;
    305:19;314:11;
    317:24;320:4;321:15,
    16;342:9,10;343:2;
    344:11;352:13;369:1;
    373:10
outcry (1)
    326:6
outgoing (3)
    275:16;378:13,17
outstanding (1)
    282:24
over (32)
    230:18,21;231:4;
    235:7;237:3;239:16;
    257:17;259:11;274:6,
    9;275:14;284:7;
    287:14,15;291:4;
    293:16,17;295:23;
    300:12;319:1;328:12;
    338:6,22,24;339:14;
    342:17;370:13,16;
    374:7;375:1,2;385:4
overlap (1)
    367:20
overthinking (1)
    354:10
owned (1)
    291:12
owner (4)
    246:1;250:15;
    261:7;262:3
owns (1)
    342:12

P

Pacheco (1)
    362:24
packet (1)
    273:21
page (82)
    243:9;247:2;252:5;
    255:21,24;259:13;
    276:25;277:14,16,21,

25;279:2,5;280:11,
    11;281:11,16;282:8;
    283:3,13,18;285:6,8;
    286:21;287:7;288:4;
    300:6,19;301:5;
    302:3,8,9;303:12;
    306:19;309:6,13,20;
    310:1,7,17;312:24;
    313:8,16,19;314:25;
    317:21;322:19;
    326:15;328:2;331:7;
    335:24;337:12,14;
    340:10,11,24;341:11,
    22,23;342:8;343:3;
    344:7,14;345:21;
    346:1;347:14,15,21;
    350:11;352:19;
    356:16;362:15;364:8,
    8;365:7;367:8,8,11,
    19;374:11,18,18
pages (18)
    254:16;273:21,22;
    315:22;317:24;
    320:19;340:16;362:4,
    20;366:18;367:1
paid (1)
    369:14
pair (1)
    240:17
paper (5)
    274:19;275:2;
    346:5;347:3,3
paraphrasing (2)
    233:22;384:10
pardon (1)
    262:17
parent (1)
    371:17
part (1)
    386:20
partially (1)
    326:9
participation (1)
    235:21
particular (1)
    355:25
pass (1)
    236:6
passing (1)
    386:7
paste (1)
    324:16
pasted (2)
    324:8;328:7
Pause (12)
    240:6;246:11;
    254:17;311:25;
    317:12;340:6,9,20;
    343:7;344:12;366:10,
    12
pay (1)
    369:2
Paying (2)

363:1,2
pdf (3)
    339:19;340:19;
    367:10
pdf's (1)
    320:1
people (16)
    273:15;274:7;
    276:10;289:3;316:13;
    325:21;334:10;
    337:21,23,24;338:12,
    20;355:8;359:11,13;
    380:17
perceived (1)
    331:14
performs (1)
    382:25
perhaps (1)
    374:15
period (10)
    231:9;243:11,16;
    248:18;249:4;259:14;
    268:8;301:17;372:22,
    23
permission (14)
    250:5;262:15,17;
    263:16;264:1,2;
    266:13,13,17;304:15,
    19;305:13,16;306:8
permitting (1)
    381:19
person (6)
    261:13;262:24;
    270:7;274:8;349:8;
    359:12
personal (1)
    290:17
Personally (1)
    252:24
personnel (1)
    379:16
PETA (3)
    325:20,22,24
phone (76)
    233:22;234:22;
    237:1,2;241:20,22;
    242:19;246:5;249:14,
    21;250:3;253:1;
    262:12;273:19,25;
    275:10,16,23,25;
    276:1,4,9,12;280:17;
    282:3;284:2,4;285:3,
    4,21;293:14,17;294:3,
    23,24,25;296:7,19,23;
    297:25;298:17;
    299:17,19,23;300:1,5;
    304:2,16;305:2,3;
    311:1,15,21;312:23;
    314:5;316:2,14;
    317:10;320:4;330:11;
    332:4;333:14;334:10,
    16,23;335:12,13;
    341:3;342:22;343:22;

349:6;366:24;375:13,
    16;378:3;384:6
phones (1)
    345:1
phonetic (1)
    380:20
photographer (1)
    323:6
photos (1)
    364:16
phrase (1)
    371:2
phrased (1)
    268:24
pick (1)
    343:12
picked (2)
    256:13;273:22
picture (3)
    364:25,25;365:1
pictures (5)
    322:21,22;323:4,5,
    9
piecemeal (2)
    315:25;316:2
pig (6)
    348:9;363:23,24;
    364:18,25;365:1
pigs (2)
    364:17;365:2
pissed (1)
    342:7
place (1)
    261:23
placeholder (2)
    275:3;315:16
places (1)
    375:15
Plaintiffs (2)
    229:25;230:1
Plaintiff's (1)
    254:14
plan (1)
    370:23
please (8)
    231:19;337:15,22;
    343:12;363:7;384:10;
    386:22;387:22
pm (8)
    281:12;283:4;
    317:7;322:1,2;341:9;
    382:8;388:19
point (52)
    235:5,9,12;236:3,
    14;237:16;241:1,11;
    242:20;245:15,25;
    253:12,17;257:14,16;
    258:24;260:8;261:4,
    6;263:12;272:5,9;
    273:11;279:24;
    282:25;283:6;286:9,
    12;287:23;288:8,24;
    289:9;296:13;298:11;

301:20;303:1;305:15;
    307:11;309:23;
    315:10;316:15;
    323:11;335:13;
    337:10;342:22;348:3;
    351:13,14;357:1;
    368:1;369:23;378:8
pointing (4)
    231:2;262:22;
    292:1;367:9
pop (1)
    234:5
populated (1)
    343:19
position (1)
    261:10
possession (1)
    356:25
possibility (5)
    264:8;273:13;
    384:4,5,8
possible (3)
    274:13;324:21,22
possibly (4)
    248:23;302:25;
    376:4,5
post (1)
    345:3
potential (1)
    255:6
potentially (3)
    245:23;360:11,12
pound (2)
    369:2,3
pounds (3)
    255:1;347:17;348:9
preceded (1)
    317:21
preceding (5)
    313:24;314:7;
    344:14;354:20;
    367:19
precisely (1)
    233:16
precluding (1)
    371:7
prefer (2)
    249:8;268:22
prepared (1)
    331:5
preserving (1)
    231:16
press (2)
    368:18;369:21
pressing (1)
    370:13
presumably (7)
    237:13;245:11;
    286:24;329:22;342:4;
    345:2;363:13
presume (2)
    318:24;373:14
pretty (1)

337:18
**previous (1)**
375:23
**previously (5)**
287:20;328:7,13;
360:23;381:5
**price (1)**
369:4
**printed (1)**
331:23
**prior (5)**
252:23;253:1;
268:10;298:6;350:17
**privy (2)**
327:20;332:14
**probably (11)**
262:21;319:6;
323:22;335:18;
337:21;338:12,20;
349:1;376:6;382:13,
16
**problem (2)**
234:12;316:1
**procedurally (1)**
235:11
**procedure (1)**
329:17
**proceed (2)**
231:20;265:9
**proceedings (12)**
240:6;246:11;
254:17;311:25;
317:12;340:6,9,20;
343:7;344:12;366:10,
12
**Process (5)**
259:7,8,8;323:3;
347:19
**processed (3)**
256:23,24;307:6
**processing (1)**
256:12
**produce (3)**
316:6;329:11;381:5
**produced (10)**
246:23;254:9,10,
11;316:24;330:25;
331:6;362:9;376:6,6
**producing (1)**
317:1
**Productions (2)**
229:14;388:16
**prompted (1)**
256:17
**property (12)**
252:9;255:7,12,15;
258:8,20,25;270:13;
273:5;285:24;286:2;
296:11
**prosecuting (1)**
327:16
**protect (4)**
349:21;359:18,19,

23
**provide (1)**
284:9
**provided (1)**
296:15
**public (2)**
331:14;332:25
**publicly (2)**
332:18,19
**pull (5)**
239:19;240:11;
246:9;248:6;276:13
**purport (1)**
316:24
**purpose (1)**
359:14
**purposes (2)**
290:19;316:16
**pursue (1)**
370:19
**put (16)**
234:7,9,12;256:22,
24;290:7,10;317:16,
19;344:10,23;352:25;
357:8,10;362:1;367:4

## Q

**quick (8)**
277:3;311:10,24;
312:23;330:23;355:4;
385:20;387:3
**quickly (2)**
230:19;340:18
**quite (2)**
274:4;351:7

## R

**range (5)**
320:18;340:15;
362:19;366:17;378:5
**ranges (5)**
378:1,2,10,11;
379:4
**rather (2)**
303:8;370:3
**read (29)**
240:5,8,13;242:5;
248:4;252:4;274:25;
295:14,20;297:21;
324:2;343:10;350:2,
9;353:5;368:12;
371:9,15,20,22;372:4,
21,22;373:3,6,8,12,
13;387:17
**reading (7)**
239:20;240:8;
260:16;350:16;
356:10;372:3,6
**reads (1)**
350:13
**real (27)**

277:3;311:10;
330:23;345:9;349:10,
11,15,19,22;350:4;
351:3,4;355:19;
356:11,12,22,24;
357:8,10,13;358:12,
20,22;359:20;360:4,
11;387:3
**realizing (1)**
289:15
**really (8)**
298:18;311:23;
312:23;337:14;
340:18;369:9;377:3;
385:20
**rearrange (1)**
340:19
**reason (10)**
232:14;244:16,16;
259:17;299:25;
319:25;323:20;
325:12;338:13;362:8
**recall (167)**
235:13,14,15;
236:15,18,19;237:24;
238:25;239:4,5,15;
240:3;241:16,17,18,
25;242:22,22,24;
243:1,3,4,8,17,18,18,
19;244:20;246:4,21,
25;249:2,3,5,9,10,11;
251:13,22,25;257:3;
258:4,5,14;260:20;
261:22;264:6,12,13;
267:18;268:6,11;
269:17;271:2;272:1,
2,6,11,16,22;273:14;
277:12;278:20;279:1,
17,19,20,23;280:1,19;
282:2;284:3,4,10,16;
285:20,21;286:1,16;
287:12,25;288:6,7;
291:10;293:22,24;
294:8,8,15,17,20,24;
295:3,11;296:16,17;
298:18;299:16;
300:23;301:7,25;
302:1,18,20;303:16;
304:1,11,14,15;305:6,
9;314:2;317:1;
324:15,18,20;325:15;
327:7;329:3,6;331:6;
334:5,21;335:17;
336:12;337:2,5,6,7,7,
8,9;343:18;351:20;
353:12,13,16,18,22;
354:22;358:16,16,17,
18;363:11;372:1,2,3,
6;374:9;378:2;383:9;
384:2;385:5,8,15,17,
17;386:7,8,10,11,13;
387:4,5,7,8
**recalled (1)**

385:10
**receipt (3)**
360:5,12;361:10
**receive (3)**
256:2;334:3;361:15
**received (9)**
260:22;269:25;
270:3,4;355:20;
358:12,17;361:14,20
**receiving (2)**
302:19;333:24
**recipient (1)**
355:8
**recognize (2)**
275:16;276:19
**recollect (1)**
384:24
**recollection (10)**
271:4;273:17;
286:24;288:21;291:8;
299:1,10;301:16;
309:14;383:24
**record (34)**
229:11;230:6;
231:16;234:8,10,13;
242:11,12,13,15,16;
253:10;258:23;
268:14,18;274:23;
278:16;292:1;298:20;
312:9,14;320:23;
333:21;356:3,7;
361:10;381:16;382:3,
4,5,9,11;387:21;
388:17
**recordkeeping (1)**
257:21
**records (25)**
238:6;246:5;257:6,
7,11,15,16;273:20,25;
275:10;284:4;300:5;
304:2,16;305:2,3;
312:23;314:5;315:20;
334:23;335:13;
360:11,17;361:3;
363:13
**record's (1)**
387:5
**recross (1)**
383:3
**Red (2)**
344:18,21
**redact (1)**
274:14;316:10
**redacted (7)**
274:2,21;315:17,
21;316:3,11,20
**Redding (4)**
229:4,14,19;388:15
**refer (7)**
293:25;294:6,9,15,
16;330:7;348:1
**reference (8)**
243:19;244:5;

276:9;330:24;364:24;
365:5,22;366:1
**referenced (1)**
243:23
**referencing (2)**
329:21;381:7
**referred (3)**
325:1;341:15;
345:10
**referring (33)**
235:23;239:22;
241:2,12,14;247:13;
248:13;262:20;287:1;
322:4,20;323:12;
327:5;328:2,3,6,21;
331:2;337:16;344:15;
345:6;346:2;348:18;
356:23;358:5;362:22;
364:3,10,12;365:12;
367:15;369:23;
379:24
**refresh (6)**
252:4;284:14;
302:21;304:3,18;
372:13
**refreshing (1)**
305:1
**regarding (9)**
229:15;269:22;
279:22;280:5;285:17,
18;363:17;383:12,15
**relation (9)**
303:6;329:12;
346:2;359:23;371:23;
372:16;377:9,13;
380:6
**relevant (1)**
378:20
**remainder (1)**
237:2
**remember (55)**
230:17,19;231:22;
233:16;236:7,20,21,
23;239:10,20;243:5,
6;244:22;246:14;
249:7,9;252:10,14;
253:2,11,16,18;256:6;
258:12;266:9;278:24,
25;279:21;282:21;
285:12,17;298:16;
305:8,10;313:6,7;
324:12,25;329:1,2;
331:25;336:13,16,18;
347:4,5;353:4;
357:12,25;358:1,19;
373:11;374:4;386:14,
15
**REMEMBERED (1)**
229:1
**removal (2)**
236:21;237:14
**removed (5)**
233:2;270:13;

276:24;278:22;326:8
**reorder (1)**
    339:18
**repeat (1)**
    240:10
**repeating (1)**
    320:8
**rephrase (5)**
    231:14;314:3;
    345:20;361:17,18
**replace (4)**
    258:9;275:6;
    346:10;368:17
**replaced (6)**
    256:7;303:4;
    345:17;346:12;357:7;
    358:3
**replacement (12)**
    254:6;260:22;
    261:18,21;262:2;
    275:8;303:8;357:17,
    18,19;358:6;364:12
**replying (1)**
    366:1
**reported (1)**
    282:13
**Reporter (13)**
    229:5,19,24;230:9,
    23;274:12;275:1;
    295:14;315:16;
    326:18,23;339:24,25
**reporting (1)**
    236:20
**reports (3)**
    237:13,14,15
**represent (3)**
    229:23;236:6;
    383:10
**resale (5)**
    368:16,16,22,23,24
**reserving (2)**
    382:14,17
**respect (6)**
    238:24;270:17;
    271:17;287:18;347:6;
    361:21
**respond (4)**
    231:8;322:18;
    328:18;348:14
**responded (3)**
    259:16;365:8,11
**responding (1)**
    328:9
**responds (7)**
    321:10,14;326:25;
    333:5;342:25;365:21;
    366:4
**response (3)**
    231:1;345:3;364:23
**responsible (1)**
    236:2
**rest (3)**
    316:19;373:13;

380:13
**restate (1)**
    267:13
**restrict (1)**
    378:5
**restroom (1)**
    312:3
**retain (1)**
    334:17
**retained (1)**
    388:15
**reverse (2)**
    319:18;320:15
**review (1)**
    259:20
**reviewed (4)**
    235:11;242:9,10;
    375:4
**reviewing (2)**
    366:25;367:1
**right (178)**
    232:14,18;235:1,
    25,25;236:5,5,13,24;
    252:1;253:7;254:3,
    10,18,21;255:14,17;
    258:18;259:5,9,10;
    260:9;262:14,22;
    264:4;266:10;268:20;
    269:1,7;270:11;
    275:19;276:3;277:21;
    279:16;281:10;
    283:13,13,18;284:1;
    285:6;293:4;294:19;
    295:18;296:9,17;
    299:8,11;300:4,4,13,
    18;301:5,19;302:3;
    303:11,13,23;305:15;
    306:12,18;309:5;
    310:1,6,15,17;312:2,
    8,17,22;313:1,8,11;
    314:19;315:12,14;
    316:22;317:14;318:7,
    18,19;319:13,16,20;
    320:9,23;321:3;
    322:2,18;323:7,10,16;
    326:7,22;327:10,10,
    25;330:8,22;331:9,10,
    12;332:9;333:4,9,18,
    22;334:19,25;336:17,
    19;337:11;338:11,24;
    340:12,23;341:1,10,
    20,22;342:1,6,21;
    343:3,5;344:6,13,14,
    25;345:14;346:4;
    347:20,23;350:7,10,
    10;351:17;354:8;
    355:3;356:2,9,18;
    358:21;359:22;361:6,
    23;362:3,14,16;
    363:19;364:7;365:4,
    14,25;366:8,13;367:7,
    8,9,25;369:17,20;
    370:12;372:3,5,25;

373:16;374:3;375:18;
    376:5,20;377:23,25;
    380:2,14,15;381:9;
    385:16;386:18
**rightful (1)**
    246:1
**right-hand (1)**
    321:3
**rights (4)**
    316:11;326:12;
    382:14,17
**Ross (22)**
    318:13;328:1,3,9,
    10,18,19,25;329:4,8,
    12,16,17,19,20;330:1,
    4,16,19,25;380:24;
    381:5
**Ross's (1)**
    330:11
**Roughly (1)**
    334:5
**round (1)**
    332:8
**row (1)**
    320:9
**rudely (1)**
    231:6
**rules (23)**
    230:18,22;235:11,
    13,17,19,19;236:3;
    371:9,11,15,15,16,25,
    25;372:21,22,25;
    373:1,1,3,7,8
**Ryan (6)**
    229:25;247:23;
    263:19;289:14;
    294:17;386:24

## S

**Sacramento (1)**
    326:19
**sale (4)**
    257:6,7,11;277:20
**salient (1)**
    382:24
**Sam (7)**
    318:25;323:24;
    324:23;325:16;
    326:16,19,19
**same (47)**
    231:9;237:13;
    246:23;248:17;249:2,
    24;252:25;277:22;
    281:5,10,16,16,18;
    283:8;285:7;300:2;
    302:5;307:16,24;
    308:14;309:14;
    311:20;319:25;320:3,
    6,8,10,14;327:3;
    331:10;333:16;
    339:22;342:1;360:25;
    361:2;362:5;366:25;

367:2;373:14,15;
    377:8;378:15;380:16;
    381:8;386:24;387:19;
    388:6
**sanctuary (2)**
    326:6,7
**Sarah (9)**
    335:25;336:1,4,6,7,
    8,20,24;337:3
**Saturday (6)**
    233:3,9;238:1,3;
    277:10;299:2
**save (1)**
    332:5
**saved (1)**
    332:6
**saw (7)**
    253:8;339:15;
    341:13,14;349:10;
    374:8;376:8
**saying (40)**
    231:11,17,19,20;
    235:17;241:1;242:4;
    244:1,14;245:2;
    247:18;249:22;
    253:20;260:6;263:7,
    19;264:25;266:12;
    272:15,16;273:7,10,
    10;288:24;289:19;
    319:5;322:16;324:3,
    13;350:18;353:13;
    357:1,6;358:11;
    371:6;374:4;375:11;
    378:6;380:21;382:23
**screenshot (2)**
    363:15,16
**screenshots (1)**
    362:13
**search (17)**
    329:15,16,23;
    375:13;376:9;379:2,
    3,14,18;380:5,7,8,13,
    17,22;381:1;382:25
**searched (5)**
    343:21,21;375:12;
    378:2;380:3
**searches (1)**
    378:10
**searching (2)**
    233:11;329:10
**second (22)**
    234:6;240:14;
    247:2;252:1,5;255:2,
    21;276:3;333:7;
    336:3;339:6;340:4;
    342:10;343:2;346:1;
    347:22;349:15;364:2,
    3,4;381:9;382:2
**seems (1)**
    306:4
**selling (1)**
    369:15
**Senator (1)**

330:17
**send (16)**
    245:11;273:23;
    274:15,16,20;275:8;
    300:1;315:17,20;
    322:19;328:19;329:4;
    331:17;363:15;366:5;
    370:17
**sending (7)**
    293:11;323:21;
    329:1,2,21;341:1;
    364:19
**sense (1)**
    233:1
**sent (20)**
    236:8;251:18;
    259:23;282:13;
    318:13;320:1;321:8;
    323:25;324:13,18,19;
    328:1,3,18,25;362:6;
    364:2,3,4;380:25
**separate (3)**
    336:4;362:9;366:24
**September (14)**
    313:21,22;314:4,
    20,25;318:1,2;
    331:18;332:1,1,3;
    333:6;336:21;378:12
**Serene (6)**
    252:15,18;253:3,5,
    8,9
**set (3)**
    264:14;339:5;362:2
**sets (1)**
    319:24
**several (22)**
    230:21;233:10;
    235:4,4;236:6,9;
    248:5;259:11;266:8;
    282:10;293:8,10;
    294:3;295:25;296:6;
    297:13;309:11;332:4;
    359:12;367:1;372:4,
    14
**Shakes (2)**
    311:3;360:16
**Shakib (12)**
    230:1,1;233:7;
    238:2;246:15;267:13;
    279:12,15;297:4,10;
    333:20;388:10
**shall (1)**
    230:6
**share (1)**
    292:20
**Shasta (4)**
    230:2;234:15;
    235:22;383:21
**Sheesh (1)**
    333:5
**sheriff (74)**
    239:17,22;240:16,
    21,21;241:2,12,14,19;

242:19;243:15,20,23,
25;244:1,2,4,6,8,12,
13,14,17,25;245:3;
247:5,9,13,13,17,17,
18,19,23;248:4,8,9,
10,10,11,19;250:20,
23,24;253:12;259:11,
15;262:18,20,24;
264:23,24;266:4;
269:21;273:16;
288:13;290:24;292:3;
294:1;298:20,24;
308:12,19;309:2;
311:10,12,15;327:21;
343:1;375:25;377:12;
383:15,17;387:11
**sheriffs (14)**
230:4;236:21;
237:16;245:4;248:9;
263:16,17,22;264:1,
25;265:4,6;284:17;
311:13
**Sheriff's (62)**
234:15;237:14;
244:5,7,15;245:4,23;
248:12;250:19,25;
251:5,6,10,15;262:24;
263:20;264:5;265:3,
6,8,18;267:10,11,16;
269:10,16;270:24,25;
271:23;272:5,9;
273:3;289:11;290:2,
8;291:5,6,15;294:1,7,
21;295:1,6;296:25;
297:15;298:2,7;
301:21;306:21;
307:10,23;308:6;
311:7;343:14;383:10,
21;384:3,6,14,20;
385:25;387:6
**shit (1)**
363:20
**shop (2)**
344:18,21
**Shorthand (1)**
229:5
**show (6)**
240:9;281:9;
368:19;369:22;
370:20;371:3
**showing (3)**
279:13;360:5;371:8
**shows (2)**
279:19,25
**shut (1)**
231:8
**side (5)**
311:3,3;321:3;
360:16,16
**silence (1)**
231:8
**Silva (39)**
230:3;236:1,7;

254:11;270:19;
278:11,17;279:18;
280:17,19;281:17;
282:10,13,18;283:8,
15;286:12;288:9;
289:10;290:1;291:5;
302:13,22;303:14;
313:3,22;314:4,21;
316:25;320:18,25;
340:15;341:14;
362:19;366:17,21,22;
376:8;386:6
**Silva's (6)**
277:25;278:4,6,7,
14,15
**simply (1)**
231:16
**situation (6)**
280:23;282:18;
338:7;350:24;361:2,4
**six (2)**
302:24;374:18
**size (2)**
231:25;232:2
**slaughter (18)**
245:12;251:18,24;
252:23;258:10,15;
259:8;264:14;265:21;
266:6;304:20;306:10,
11;310:4,12,19;
345:19;361:21
**slaughtered (12)**
250:6;254:4;256:3;
258:7,8;260:12;
265:24;266:15;267:2;
269:5;270:13;302:24
**slaughtering (2)**
265:9;308:18
**slaughters (1)**
258:20
**sleep (1)**
244:21
**sold (1)**
369:17
**sole (1)**
352:7
**somebody (9)**
238:14;239:1;
261:15;263:14;298:7;
325:21;336:2;358:20;
368:25
**somehow (2)**
332:13,15
**someone (31)**
234:5;239:3;
245:22;258:15;
261:21;265:7;268:4,
5;272:4;273:11;
288:13;289:11;291:6,
15;294:1,6,21;
296:24;297:15;298:1;
301:21;306:21;
307:10;324:11,19;

325:6;327:2,4;328:8,
16;371:16
**someone's (3)**
262:1;369:6,13
**sometime (1)**
266:25
**sometimes (1)**
378:19
**somewhere (2)**
289:6;358:9
**soon (1)**
257:16
**sorry (32)**
233:8;234:11;
238:17;245:7;247:25;
255:24;262:17;277:4;
278:12;282:11;296:4;
297:5;300:11;312:19;
313:2;334:8;337:12;
339:13;340:7;342:9;
344:9,13;345:7;
346:15;348:7;356:12,
15;358:4;359:19;
361:1;363:7,7
**sort (2)**
326:12;384:19
**sounded (1)**
336:14
**Sounds (1)**
312:21
**South (2)**
229:3,19
**spare (3)**
351:1,4,21
**speak (20)**
234:19;238:21;
249:1,3;252:13;
267:10,15,20;268:3,4;
269:10,15;272:3;
273:3,16;304:4,5,6;
334:9;335:10
**speaking (17)**
253:11,17;262:25;
264:1;268:6,11;
273:14;277:10,18;
278:18;280:19;288:5;
300:20;301:3;302:12;
306:12;384:3
**SPECIALIST (18)**
229:10,13;242:13,
16;268:14,18;312:4,9,
14;355:4;356:3,7;
382:3,5,9;387:15,24;
388:13
**specific (1)**
318:8
**specifically (16)**
319:1;329:18;
351:16;374:16;377:2,
9,15,16,18;378:9;
379:1,3;380:9;381:1;
385:5,7
**speculate (6)**

265:12;289:3,18;
294:15,18;307:2
**speculating (2)**
289:15;352:14
**speculation (17)**
265:10;282:20;
288:15;289:2,13;
294:11,13;306:23,24;
307:12;314:1;337:25;
338:21;350:21;360:6,
19;361:12
**spelled (1)**
335:6
**spelling (1)**
380:20
**spoke (21)**
233:14;262:12;
271:23;272:8,8;
274:7,13;276:22;
277:13,15;278:24;
280:3;293:5,10;
294:22,23;295:24;
296:5;299:6;305:24;
309:22
**spoken (4)**
269:21;273:11;
383:14,17
**spread (1)**
333:1
**stack (4)**
315:15;317:3,5;
343:6
**staff (1)**
346:24
**Stanton (4)**
318:25;324:23;
325:17;326:19
**start (5)**
267:11;298:4;
312:15;374:11,18
**started (5)**
263:22;314:18;
315:11;319:7;328:12
**starts (4)**
320:21;323:17;
328:14;356:15
**State (10)**
229:6;235:11,17,
18,18;342:16,17;
365:15;371:25;373:1
**stated (2)**
239:16;245:4
**statement (6)**
292:2;298:23;
299:9;354:9,20,25
**States (2)**
229:16;327:13
**stating (1)**
330:10
**steps (4)**
331:13;337:3,7;
375:9
**still (18)**

231:17;234:25;
260:5;278:6;281:18;
302:5;303:5;307:12;
308:1;312:17;314:8;
319:13;330:3;333:6;
345:1;368:9;376:3;
382:17
**stip (2)**
387:17;388:2
**stipulate (2)**
387:18;388:12
**stipulated (1)**
388:8
**stipulation (1)**
386:25
**stole (1)**
371:5
**stop (3)**
273:9;332:20,24
**stopped (1)**
334:16
**stops (1)**
319:24
**stories (1)**
331:23
**Street (3)**
229:4,19;253:9
**strike (16)**
237:1;266:14;
272:17;293:9;294:9;
296:4,21;301:11;
308:9;321:19;328:10;
338:14;347:1,4,25;
352:1
**string (1)**
362:11
**stuff (2)**
250:2;374:6
**stunt (1)**
326:13
**subpoena (1)**
274:1
**sucks (1)**
363:20
**sufficient (1)**
346:11
**suggest (1)**
293:19
**suggesting (1)**
370:10
**suggestion (1)**
352:3
**Sunday (1)**
278:22
**superintendant (1)**
370:4
**supposed (9)**
256:19,20;345:9;
356:21,24;357:8,10;
358:9;364:5
**supposedly (1)**
318:19
**Sure (30)**

234:14;242:6;
246:20;254:11;
261:10,23;265:5,5;
273:15;274:24;276:7,
9,11;277:6;279:23;
280:21;297:12;
298:14;308:15;322:7;
327:13;328:11;332:6;
337:18;346:23;
352:15;363:22;
368:19;381:8;383:12
**suspect (1)**
353:25
**suspected (1)**
341:20
**Suzanna (2)**
229:4,20
**sworn (3)**
229:8,23;230:8
**systems (1)**
327:23

**T**

**table (3)**
231:23;232:1,2
**tag (1)**
363:24
**tags (1)**
376:1
**talk (29)**
231:4,4;238:11;
240:16,21;246:3,6;
247:9;259:25;262:5,
6,17,25;264:5;274:4;
279:25;290:24;292:2;
327:5;334:8;336:8;
337:14,21,24;338:13,
20;375:21;382:1;
387:10
**talked (24)**
236:13;243:11,14,
15;247:5;248:4,19;
252:25,25;259:14;
261:15;279:24;
298:16,20,23;303:1;
307:5;316:6,19;
335:1,25;336:20,25;
337:4
**talking (28)**
240:24;245:25;
263:16,22;266:4;
279:21;282:6,18;
284:2;287:3;290:17,
19;291:3;301:11,13;
303:7;318:24;324:3;
326:17,23;328:12;
331:16;336:1;368:4;
372:25;373:24;387:4,
5
**talks (7)**
240:17;247:6;
262:18;292:3;298:21,

24;382:25
**telling (9)**
284:16;285:12;
294:20,25;347:12;
350:4;352:16;353:2;
358:4
**tells (1)**
234:23
**ten (2)**
334:5,21
**Tennessee (2)**
258:13,16
**term (5)**
359:2,5,7;378:19;
379:6
**terms (5)**
257:21;375:11,13;
378:11;379:5
**Terry (1)**
229:13
**testified (36)**
229:9;232:25;
233:21;239:21;
241:17,19;244:20;
248:3;250:24;254:8;
261:2;262:19;271:13;
275:24;280:6;295:7,
10;296:5;298:7,9;
316:3,12;322:16;
347:6,18;356:10;
357:9;375:4,23;
379:9;380:3;383:14;
384:1,9,13;385:24
**testify (6)**
232:7;295:5;
298:11;349:24;350:1,
2
**testifying (1)**
241:25
**testimony (66)**
232:22;239:25;
241:4;244:25;247:19;
250:22;259:17;260:5;
263:3;266:18,25;
267:9,14,19;268:4,21,
25;269:2,7,15,20,24;
270:11,16,17,23;
271:7,22;272:4,7,8,
13;273:2,6;274:9;
280:6;281:10,18;
292:5,7,17;293:25;
295:4;296:18,22;
297:2,6,8,12,17,19,
24;298:3,6;299:13,14,
19;305:12;332:9;
333:18,23;352:2;
358:13;359:16;
361:13;383:12
**texted (2)**
289:5;368:2
**texting (2)**
294:5;314:17
**texts (6)**

319:24;350:11;
366:25;375:6;380:12,
18
**Thanks (2)**
333:5;348:14
**thereabouts (2)**
233:16;237:9
**thief (1)**
342:23
**thinking (2)**
270:3;350:25
**Thomas (1)**
380:10
**though (17)**
257:2;260:21;
263:11;277:19;288:8;
293:12,19;294:2;
296:18;319:6;326:16;
327:2;331:2;349:25;
350:25;351:10;373:4
**thought (19)**
238:14;240:18;
242:2;251:1;278:8,
10;289:22;315:10;
324:2;326:8,11,12;
327:24;328:23;333:2;
351:7;371:9;375:24;
385:10
**thoughts (5)**
368:18;369:21,21;
370:2,3
**threat (1)**
332:3
**threatening (4)**
333:14,24;334:6,6
**threats (12)**
314:18;315:3;
331:16,18;332:13;
333:2;336:9;349:6;
351:5,8,13,13
**three (6)**
263:11;290:10;
292:19;308:18;320:8;
336:15
**thumbs-up (1)**
343:3
**Thursday (2)**
332:2,2
**till (13)**
240:13,15;247:4;
263:9,13;268:17;
292:13;297:22;
312:13;341:1;356:6;
382:8;385:11
**time-consuming (1)**
323:2
**timeframe (3)**
244:19;301:3;384:7
**timeline (2)**
232:19;266:9
**times (19)**
243:10,13,15;
246:3,5;248:5,18,20;

249:1;259:12,13,14,
16;274:6;293:8,10;
296:6;320:8;372:4
**timestamp (2)**
276:24,24
**tiny (1)**
346:11
**title (1)**
336:3
**today (13)**
232:7,11,15;252:6;
260:4;274:19;275:2;
316:6,12;355:10;
382:12,22;383:2
**told (32)**
239:1;256:18;
257:23;258:6;265:8,
25;267:1;269:5;
271:15;282:2;290:8;
292:15;293:20;
294:25;296:24,25;
297:14,15;298:1,2,8,
9,17;299:1;308:21;
351:23;353:20,21;
354:4,17;373:20;
385:10
**tomorrow (10)**
240:14,15;247:4;
321:11;322:3,5;
341:2;367:14,22;
368:15
**tonight (1)**
368:15
**took (7)**
234:21;259:3;
261:23;305:18;
346:19,20;368:16
**top (6)**
318:20;321:17;
341:23;344:15;
345:21;367:10
**toss (1)**
315:17
**totaling (5)**
254:15;320:19;
340:16;362:20;
366:18
**touch (1)**
240:19
**Touching (2)**
264:17,20
**towards (1)**
357:10
**town (3)**
292:21,22,23
**track (1)**
344:5
**Trail (1)**
388:16
**transaction (1)**
360:18
**transcribe (1)**
230:23

**transcript (11)**
240:4,8;242:8,9;
243:10;259:18,20;
276:13;386:22;
387:19;388:11
**transfer (1)**
358:25
**trial (3)**
387:20;388:4,7
**trick (3)**
354:12,12;381:17
**tried (2)**
278:2;346:9
**trouble (1)**
344:6
**truck (1)**
258:16
**truth (2)**
229:8;359:13
**Try (3)**
231:1,4,7
**trying (22)**
256:6;261:22;
268:21;272:20,23;
281:8;289:16;317:24;
318:9;319:2,3;
321:15;344:5,23;
354:11,12,12;357:14;
372:16;375:11;381:9,
17
**turn (1)**
317:5
**turned (1)**
385:4
**twice (2)**
369:14,18
**twitch (1)**
347:24
**two (14)**
248:5;276:25;
280:13,15;289:5;
312:16;319:24;336:4;
339:19;340:2;364:16;
369:13;374:22;
385:19
**type (1)**
328:20
**typed (1)**
328:24

**U**

**ultimate (1)**
358:25
**ultimately (3)**
250:8;251:17;270:8
**um (1)**
231:2
**under (5)**
245:19;289:25;
292:23;307:20;309:1
**understands (1)**
308:10

understood (7)
  232:22;262:1,2;
  327:12;342:18;
  365:23;367:16
undertake (1)
  375:9
unfamiliar (1)
  344:20
United (1)
  229:16
unless (3)
  231:15;315:23;
  383:3
up (32)
  231:8;248:6;
  256:13;259:6;264:14;
  265:22;268:21;
  276:13;278:13;292:8;
  293:15;296:8;299:21;
  312:23;322:21;323:3;
  329:17,24;333:17;
  334:2;343:12;352:1,
  11,13;357:18;359:17;
  360:24;369:12;
  371:13,19;381:10;
  383:16
updated (2)
  265:20;373:4
updates (2)
  287:24;373:9
updating (1)
  265:23
upon (2)
  353:14;365:1
upset (2)
  337:10;338:15
upsetting (1)
  338:7
use (9)
  231:3;246:13;
  247:16;265:3;312:3;
  321:13;359:5,6;
  374:20
used (5)
  247:16;375:12;
  387:19;388:3,6
usually (1)
  238:7
uttered (1)
  324:17

V

Vague (1)
  384:22
vaguely (1)
  232:19
Vanessa (4)
  230:1;233:10;
  373:21;382:1
verify (1)
  276:12
version (1)

274:21
versions (1)
  315:17
VIDEO (24)
  229:10,11,13,14;
  242:13,16;268:14,18;
  312:4,9,14;355:4;
  356:3,7;382:3,5,9;
  386:23;387:15,22,24;
  388:13,14,15
violates (2)
  371:17,18
violence (1)
  351:14
Vista (24)
  345:9;349:10,10,
  11,15,19,22;350:4;
  351:2,4;355:15,19;
  356:11,12,22;357:8,
  10,13;358:12,20,22;
  359:19;360:4,11
voice (1)
  341:25
voicemail (3)
  341:13,14;366:5
voicemails (4)
  334:9,13,17,20
volunteering (1)
  370:2

W

wait (13)
  239:3;240:16;
  245:24;247:5;262:17,
  18;263:13;286:18;
  292:3,19;297:21;
  298:21,24
waiting (23)
  237:16,18;239:12,
  17;245:11,14;246:2;
  250:5;262:15,16,25;
  263:25;265:16;266:2,
  7;291:14;305:12;
  307:22;308:6,11,19;
  309:2;384:11
waiving (1)
  316:11
way (13)
  256:12,21;257:21;
  272:21;290:5;319:7;
  330:11;338:15;
  340:25;353:5;362:1;
  372:2;386:16
website (1)
  326:11
week (7)
  266:8,14,19,24;
  267:4;302:24;305:19
weeks (1)
  308:18
weren't (3)
  265:17;323:7;

364:22
Whatever's (2)
  275:9;378:3
what's (17)
  281:5;313:8,19;
  318:21;328:8;341:23;
  342:8;343:3;344:7;
  348:14;349:12;354:2,
  7,9;362:25;364:7;
  365:9
Whereupon (12)
  230:8;254:14;
  268:16;275:10;
  312:12;320:17;
  340:14;356:5;362:18;
  366:16;382:7;388:18
whichever (2)
  262:23;339:23
whole (5)
  273:23;289:23;
  326:12;343:6;347:17
whose (2)
  274:8;352:8
within (6)
  321:6,18,23;
  331:19,21;372:10
without (2)
  289:15;295:16
witness (54)
  229:23;230:8;
  236:18;239:8;240:2;
  245:3,18,21;248:2;
  259:22;263:7;265:14;
  267:18,23;270:24;
  271:18;273:8;276:6;
  278:8,13;279:14;
  282:22;288:20;
  289:22;291:8;299:16;
  304:11;307:4,15;
  308:15;312:18;
  329:23;338:3,22;
  340:2,7,10;346:9,15,
  17,20;350:23;351:20,
  24;352:17;353:5,16;
  354:13;355:13;
  357:17;360:8,21;
  362:13;384:23
witnessed (1)
  288:23
woman (5)
  240:24;252:17,25;
  262:11;379:23
word (3)
  342:2;347:24;365:4
words (5)
  231:3;304:14;
  311:13;324:17;
  344:24
work (2)
  317:16;330:16
worked (3)
  233:6;336:15;380:4
working (1)

283:1
works (1)
  336:2
worry (2)
  274:3;369:15
worse (1)
  334:12
worth (2)
  344:4;370:13
wrap (1)
  381:10
write (10)
  321:11;323:11;
  326:15;328:1;331:7,
  8;342:7;363:19;
  368:11;371:3
writes (3)
  341:14;343:9;365:8
writing (2)
  321:2;367:12
written (4)
  325:10;327:8;
  349:12;387:23
wrong (10)
  233:1;242:4;245:4;
  326:9;331:5;333:11;
  335:6;354:8;355:16;
  371:7
wrote (19)
  319:8;322:7;
  323:20;324:6,21;
  327:4;331:9;352:23;
  353:19,20,25;354:4,
  15,18,20,23,25;
  368:12;371:2

Y

year (1)
  317:9
yearly (1)
  373:4
Years (3)
  253:1;372:8,14
younger (1)
  238:19

Z

Zoom (1)
  321:13

0

005 (1)
  275:19
0058 (8)
  275:20;276:13;
  278:7;280:18;282:11;
  283:15;313:22;314:5

1

1:05 (2)
  322:1,2
1:41 (1)
  312:4
10 (7)
  309:12;312:4,10;
  333:19;334:19;369:2,
  2
10:00 (1)
  312:12
10:15 (2)
  312:13,15
1099 (1)
  302:10
10th (4)
  255:3,5,10,12
11 (5)
  241:12;267:9,20;
  268:8;285:15
11:18 (1)
  285:11
11:19 (2)
  356:4,5
11:30 (2)
  356:6,8
11th (24)
  243:12;248:19;
  259:15;264:4;267:1,
  15;268:10;287:8,9,
  13;291:4;292:1;
  293:12;296:24;297:4,
  5,14,16;298:1;
  299:13;300:8,16;
  308:20;317:21
12:03 (2)
  382:6,7
12:06 (2)
  382:8,10
12:13 (2)
  388:17,19
126 (1)
  310:21
127 (2)
  313:10,16
1276 (1)
  310:22
130 (1)
  313:20
131 (1)
  314:25
13th (5)
  288:5,6;291:4;
  300:10,11
14270 (1)
  229:20
14th (1)
  300:20
15 (1)
  279:5
15th (8)
  279:3;317:4,6,18,
  19;318:4;337:13;
  378:23

**16th (4)**
301:6,7,13;302:4
**17th (1)**
323:10
**18 (3)**
372:18,19,20
**18:22 (1)**
303:18
**180 (2)**
273:21;315:22
**1800 (1)**
303:18
**1828 (2)**
229:3,18
**18th (2)**
348:7,7
**19 (1)**
280:12
**19.6 (2)**
255:1;347:17
**19-pound (1)**
346:20
**19th (2)**
378:12;379:10
**1st (17)**
313:21,22;314:4,
20,25;318:1,2;320:7;
331:18;332:1,3;
333:6;336:21;345:8;
356:14,18,25

**2**

**2 (1)**
254:15
**20 (1)**
317:4
**2022 (17)**
235:17;242:20,21;
282:19;283:1;287:13;
314:14,20;317:11,13,
18;318:2,5,6,6;373:7;
384:2
**2023 (1)**
378:23
**2024 (2)**
229:2,12
**207 (2)**
243:9;259:13
**2084 (2)**
313:23;314:5
**21 (2)**
372:20,20
**2-15-23 (1)**
320:19
**22 (2)**
372:18,19
**220-page (1)**
242:8
**225 (1)**
313:16
**22-cv-01527-DAD-AC (1)**
229:16

**22nd (8)**
302:13;304:17;
348:9;351:10;378:12,
16,21;379:10
**25th (15)**
233:3,8,9;242:20;
243:12;248:20;
259:15;276:23;277:3,
4,5,7,23;309:10,24
**26 (1)**
234:4
**263 (1)**
348:9
**26th (5)**
234:25;235:10;
368:6,8,9
**27th (3)**
280:3;310:9,12
**28th (33)**
242:21;245:7;
246:6;248:25;252:7;
253:13;258:19;
264:10;265:21;
266:15;267:1,4,9,15,
20;268:8;269:4,9,14;
280:12,20;281:12;
310:18;321:8;341:5,
6,7;348:7;363:6,7;
365:13,14;384:2
**299 (1)**
280:13
**29th (15)**
236:8;237:9;282:9,
11,12,13,19;283:7,14;
342:3,19,20,21;
378:15,21

**3**

**3 (1)**
278:2
**3:40 (1)**
317:6
**300 (2)**
270:6;280:13
**301 (1)**
280:16
**302 (1)**
280:16
**307 (2)**
281:2,3
**31st (7)**
313:13;314:14;
315:7;319:12;324:24;
333:10;334:1
**331 (1)**
281:17
**3K (1)**
321:15

**4**

**4 (1)**

278:25
**400 (1)**
270:6
**415 (1)**
282:12
**416 (1)**
282:12
**417 (1)**
282:12
**418 (1)**
282:12
**43 (2)**
285:8,9
**436 (1)**
283:7
**437 (1)**
283:7
**438 (1)**
283:7
**4463 (2)**
303:20;310:10
**46 (1)**
300:13
**49 (1)**
300:7

**5**

**5 (1)**
283:4
**5:41 (1)**
341:9
██████████ **(1)**
330:15
██████████ **(1)**
279:7
█████████1)
276:16
**54 (1)**
300:19

**6**

**6 (3)**
236:8;281:12;
366:18
**6:26 (1)**
234:21
**6-25-22 (2)**
275:11;366:18
**6-27 (2)**
279:16,18
**6-27-22 (2)**
362:20;366:18
**6-28 (1)**
281:22
**6-28-22 (2)**
340:16;362:20
**6-29 (1)**
236:14
**648 (1)**
284:4
**6789 (1)**

279:6
**682 (1)**
285:8

**7**

**7 (2)**
288:4;305:25
**7:22 (2)**
306:2,8
**711 (1)**
287:1
**714 (1)**
363:24
**715 (1)**
287:2
**716 (1)**
287:2
**717 (1)**
287:2
**718 (1)**
287:2
**7-18-22 (1)**
340:16
**7-22 (2)**
303:23;305:21
**725 (1)**
287:10
**7-25 (1)**
309:20
**7-28-22 (1)**
320:19
**74 (1)**
309:8
**78 (2)**
310:8,9
**7th (2)**
295:25;378:22

**8**

**8 (3)**
340:16;341:2;
362:20
**8:06 (2)**
229:2,13
**8:23 (1)**
242:14
**8:24 (1)**
242:17
**8:56 (2)**
268:15,16
**8-10 (1)**
255:8
**8954 (1)**
388:16
**8th (31)**
237:22;238:1,10;
245:7,9;246:6;
248:25,25;253:12,17;
269:4,4,9,14;271:25;
283:19;284:1,15;
285:7;292:5;294:23;

295:24;296:6,23;
297:1,14,25;313:2;
384:1,21;385:3

**9**

**9 (2)**
229:1;320:19
**9:07 (2)**
268:17,19
**9107 (4)**
283:22,23;303:19;
313:12
**9-1-22 (1)**
275:11
**9-22 (1)**
255:5
**95 (1)**
312:24
**9th (9)**
229:12;247:11;
286:22;287:3;294:23;
296:6;313:2,4;385:3