RYAN R. GORDON (SBN 278414)
VANESSA T. SHAKIB (SBN 287339)
**ADVANCING LAW FOR ANIMALS**
407 N. Pacific Coast Highway #267
Redondo Beach, CA 90277
Tel: (202) 996-8389
rgordon@advancinglawforanimals.org
vshakib@advancinglawforanimals.org

DANIEL J. KOLDE, ESQ.
**LAW OFFICES OF DANIEL J. KOLDE**
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel: 636.675.5383
Email: daniel.kolde.law@gmail.com
(*pro hac vice application to be filed*)

Attorneys for Plaintiffs

ADVANCING LAW FOR ANIMALS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,

Plaintiffs,

v.

LIEUTENANT JERRY FERNANDEZ, in his individual capacity; DETECTIVE JACOB DUNCAN, in his individual capacity; DETECTIVE JEREMY ASHBEE, in his individual capacity; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association; COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual and official capacity; BJ MACFARLANE, in his individual and official capacity; KATHIE MUSE, in her individual and official capacity, and DOES 1 through 10,

Case No. 2:22-cv-01527-DAD-AC

**NOTICE OF MOTION AND MOTION TO APPROVE SETTLEMENT OF A MINOR'S CLAIM**

[*Supporting Declarations of Jessica Long, Ryan Gordon and Vanessa Shakib filed concurrently*]

Date: Tuesday, November 5, 2024
Time: 1:30 pm
Courtroom: 4, 15th Floor

Trial Date: March 24, 2025

Action Filed: August 31, 2022

**TO THE COURT, THE PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Tuesday, November 5, 2024, at 1:30 pm in Courtroom 4 of the United States District Court for the Eastern District of California, located on the 15th Floor in the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Plaintiff E.L. will and does move this Court, pursuant to Rule 202(b) of the Local Rules of the United States District Court for the Eastern District of California, for an order approving settlement of E.L.'s claims against Defendants County of Shasta, the Shasta County Sheriff's Department, Lieutenant Jerry Fernandez, Detective Jacob Duncan, and Detective Jeremy Ashbee, for $100,000 in settlement proceeds to E.L., minus $35,000 in attorney's fees, and $0 in costs, to be secured and invested on E.L.'s behalf through the Long Family Settlement Trust, a Qualified Settlement Fund under 26 C.F.R § 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986. This settlement satisfies legal standards established by the Ninth Circuit, including *Robidoux v. Rosengren*, 638 F.3d 1177 (9th Cir. 2011), and satisfies Local Rule 202(b).

This Motion is based upon this notice of motion, this memorandum, and the concurrently filed declarations of Jessica Long, Ryan Gordon, and Vanessa Shakib.

**ADVANCING LAW FOR ANIMALS**

Dated: September 27, 2024

By: /s/ Ryan Gordon
Ryan Gordon
Vanessa Shakib
Attorneys for Plaintiffs

ADVANCING LAW FOR ANIMALS

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………………………1

II. LEGAL STANDARD....……………………………………………………………………...2

III. LOCAL RULE 202 IS SATISFIED………………………………………………………..3

A. Minor's Age And Sex……………………………………………………………..3

B. Facts And Circumstances Giving Rise To Plaintiffs' Causes Of Action Against The County Defendants…...…………………………………………...3

C. Nature Of Claims To Be Settled…………………………………………………..6

D. Manner By Which The Compromise Amount Was Determined…………………8

E. The Nature Of Plaintiff E.L.'s Injuries……………………………………………9

F. Disclosure Of Attorney's Interest…………………………………………………9

G. Payment to E.L. …………………………………………………………………10

IV. THE SETTLEMENT IS FAIR AND REASONABLE UNDER *ROBIDOUX*……………...10

V. ATTORNEYS' CONTINGENCY FEE IS APPROPRIATE FOR THIS CASE…………....12

VI. CONCLUSION……………………………………………………………………………15

# TABLE OF AUTHORITIES

**Federal Cases**

*A.G.A. v. Cnty. of Riverside*
2019 WL 2871160 (C.D. Cal. Apr. 26, 2019)…...……………………………………………3

*Allen v. City of Portland*
73 F.3d 232, 237 (9th Cir. 1995)… ……………………………………………..……6

*Baskerville v. Perez*
2017 WL 4122632 (N.D. Ill. Sept. 18, 2017)… ……………………………….…………11

*Brazier v. California Dept. of Correction and Rehabilitation,*
523 Fed.Appx. 477 (9th Cir. 2013)…… ……………………………………………..……6

*Calderon v. United States*
2020 WL 3293066 (E.D. Cal. Jun. 18, 2020)… ……………………………...…………..3

*California Association for Preservation of Gamefowl v. Stanislaus County*
2023 WL 1869010 (E.D. Cal. Feb. 9, 2023)…… ……………………………………...…..6

*Garcia v. Cnty. of San Diego*
2022 WL 2973429 (S.D. Cal. July 27, 2022)… ……………………………...………12, 13

*Hayes v. City of Detroit*
2017 WL 4785977 (E.D. Mich. Oct. 24, 2017)… ……………………………………..11

*Hell's Angels v. City of San Jose, et al.,*
5:99-cv-20022-JF (N.D. Cal. Jan. 11, 1999)… ……………………………………..….11

*Nunes v. County of Stanislaus*
2022 WL 1744968 (E.D. Cal. May 31, 2022) ……………………………………………..3

*Robidoux v. Rosengren*
638 F.3d 1177 (9th Cir. 2011)… ………………………………………………2, 3, 12

*Robidoux v. Wacker Family Trust*
2009 WL 1531785 (E.D. Cal. May 9, 2009) ……………………………….………….13

*Robidoux v. Wacker Family Trust*
2:06-cv-02334-LKK-DAD, (E.D. July 28, 2011)… ………………………….……...13

*S.G.P. v. Tehachapi Unified School District*
2022 WL 4450750 (E.D. Cal. Sept. 23, 2022) ……………………………………………12

*Sodal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992)…… ……………………………………..6

*Velez v. Bakken*
2019 WL 358703 (E.D. Cal. Jan. 29, 2019) ……….……………………………………12, 13

*Welch v. Cnty. of Sacramento*
2008 WL 3285412 (E.D. Cal. Aug. 5, 2008)……..……………………………………..12, 13

**State Cases**

*Plotnik v. Meihaus*
208 Cal. App. 4th 1590 (2012)…… ……..……………………….…………………………….11

*Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania*
929 A.2d 1169 (Pa. Super. Ct 2007)…… …….…………………….……………………………11

**Statutes and Rules**

42 U.S.C.A. § 1983………..…………………..……………………….…………………….……….15

42 U.S.C.A. § 1988……………..……………………..………………………..…………………...15

Local Rule 202(b)……….………………………..……………………….……………………..……...2





ADVANCING LAW FOR ANIMALS

ADVANCING LAW FOR ANIMALS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiffs Jessica Long and her minor daughter E.L. (collectively, "Plaintiffs") filed this civil rights action, alleging various Shasta County Sheriff's Department officers drove roughly 500 miles to illegally seize their beloved goat, Cedar, after Plaintiffs, in essence, quit a kid's club. E.L. raised Cedar, bonded with him, loved him like a pet, and ultimately wanted to save him—so Plaintiffs removed Cedar from the 2022 Shasta County fair 4-H youth livestock auction. Plaintiffs allege E.L.'s exercised her rights as a minor to disaffirm any contracts related to selling Cedar, and offered in writing to pay the fair for any loss from Cedar's removal. Nonetheless, law enforcement recast this civil dispute as criminal, seized Cedar without probable cause, and turned him over to Remaining Defendants[1] without any notice to Plaintiffs, in violation of due process. Discovery revealed Remaining Defendants ultimately coordinated to kill Cedar.

Plaintiffs have extensively litigated this case since its inception on August 31, 2022. Of relevance to this motion, Plaintiff E.L. asserted § 1983 claims, and supplemental state claims, against Lieutenant Jerry Fernandez, Detective Jeremy Ashbee, Detective Jacob Duncan, the County of Shasta, and the Shasta County Sheriff's Department (collectively, the "County Defendants"). Plaintiffs have agreed to settle those claims against the County Defendants, and the case will continue against the Remaining Defendants.[2] E.L., through Mrs. Long as her guardian ad litem, now moves for approval of E.L.'s settlement with the County Defendants on the following terms:

| | |
|---|---|
| Total Settlement with County Defendants | $300,000 |
| E.L.'s Portion of Total Settlement | $100,000 |
| E.L.'s Contribution Toward Attorneys' Fees | $35,000 |
| E.L.'s Contribution Toward Litigation Costs | $0 |
| Net Settlement to Be Paid to E.L. | $65,000 |

[1] Collectively, "Remaining Defendants" is defined to include the Shasta District Fair & Event Center ("SDF"), SDF Chief Executive Officer Ms. Melanie Silva, SDF Livestock Manager Mr. B.J. Macfarlane, and 4-H volunteer Mrs. Kathie Muse.

[2] Plaintiffs also asserted separate causes of action against Remaining Defendants.

ADVANCING LAW FOR ANIMALS

As set forth in greater detail below, this settlement is fair, reasonable, and comports with the standards set by the Ninth Circuit and the Local Rules of the Eastern District. Plaintiffs' counsel worked, on a contingent basis, approximately 550 hours in labor against County Defendants alone, and fronted substantial costs, to achieve this settlement.[3] *See* concurrently filed Declarations of Ryan Gordon ("Gordon Decl."), Vanessa Shakib ("Shakib Decl."), and Jessica Long ("Long Decl").

## II. LEGAL STANDARD

Local Rule 202(b) provides "[n]o claim by or against a minor … may be settled or compromised absent an order by the Court approving the settlement or compromise." Rule 202(b)(2) requires "[t]he application [to approve the minor's settlement] shall disclose, among other things, [1] the age and sex of the minor or incompetent, [2] the nature of the causes of action to be settled or compromised, [3] the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, [4] the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, [5] if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent." Local Rule 202(c) further provides that the minor's counsel must disclose his/her terms of employment, his/her relationship to the settling defendant(s), and the attorney's compensation.

In ruling on a motion to approve a minor's settlement, the Ninth Circuit directs "district courts [to] limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases. *Most importantly*, the district court should evaluate the fairness of each minor plaintiff's net recovery *without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel*—whose interests the district court has no special duty to safeguard." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181-1182 (9th Cir. 2011) (emphasis added).

---

[3] Mrs. Long, from her settlement portion, will resolve case costs attributable to County Defendants and remaining attorneys' fees.

In federal question cases, when district courts review settlements that include supplemental state law claims, the *Robidoux* standard still applies. *See, e.g., Calderon v. United States*, 2020 WL 3293066, at *3 (E.D. Cal. Jun. 18, 2020) (noting that although *Robidoux* "expressly limited its holding to cases involving settlement of a minor's federal claims ... district courts also have applied this rule in the context of a minor's state law claims") (citations omitted); *Nunes v. County of Stanislaus*, 2022 WL 1744968, at * 4 (E.D. Cal. May 31, 2022) (citing *A.G.A. v. Cnty. of Riverside*, 2019 WL 2871160, at *2 n.1 (C.D. Cal. Apr. 26, 2019)) ("The Ninth Circuit did not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of a minor's state law claims ... however, the Court has federal question jurisdiction and is exercising supplemental jurisdiction over Plaintiffs' state law claims ... as the case 'involves' the settlement of Plaintiffs' federal claims, the Court applies the *Robidoux* standard to the entire settlement.") (citations omitted).

## III. LOCAL RULE 202 IS SATISFIED

### A. Minor's Age And Sex

As of the date of this filing, E.L. is an eleven (11) year old female. At the time of the incidents giving rise to this lawsuit, she was nine (9) years old. Long Decl. ¶¶ 2-3.

### B. Facts And Circumstances Giving Rise To Plaintiffs' Causes Of Action Against The County Defendants

In April 2022, Plaintiffs bought a young goat named Cedar for $350.00. ECF No. 25, Plaintiffs' Second Amended Complaint ("SAC") ¶¶ 20-21. Plaintiffs further alleged that minor Plaintiff E.L. fed and cared for Cedar every day until late June 2022 and bonded with him. SAC ¶ 21. During this time, E.L. enrolled in a local 4-H chapter in Shasta County, CA. The 4-H program was to culminate with a youth livestock auction at the 2022 Shasta District Fair. SAC ¶¶ 22-25.

From June 21-25, 2022, the Shasta District Fair & Event Center (SDF) held its annual Shasta District Fair, with the junior livestock auction on June 25, 2022. The junior livestock auction was a "terminal" auction, meaning that all animals sold that day were to be sent to the slaughterhouse immediately after the fair that same evening, with any successful bidder later receiving cuts of meat. State Senator Brian Dahle and Assemblywoman Megan Dahle placed the highest bid on Cedar and apparently earmarked Cedar's cuts of meat for the July 9, 2022 4-H/FFA Community Barbeque held at



ADVANCING LAW FOR ANIMALS

the fairgrounds. SAC ¶¶ 28, 33; *see also* ECF 99-17, 62:14-64:11.

After the junior livestock auction ended on June 25, 2022, Plaintiffs assert that E.L. became extremely despondent and distressed in Cedar's pen during what she thought was their final hours together. SAC ¶¶ 34-35. Having raised Cedar, she loved him like a dog and did not want him killed. So, that same evening, to save Cedar's life, Plaintiffs decided to quit the 4-H program and leave with Cedar. ECF No. 39-17, ¶¶ 11-12. E.L. disaffirmed any contract of sale that might have existed pursuant to her statutory right under Family Code § 6710, and Mrs. Long offered to pay SDF for any damages caused by Cedar's removal. SAC ¶¶ 48-49. It is noteworthy that Plaintiffs had not received any money for Cedar, and, as discovery revealed, neither the Dahles nor any other bidder ever paid for Cedar. ECF No. 89-1, ¶ 54.

Following Cedar's removal, from approximately June 26-29, 2022, Plaintiff Ms. Long communicated with SDF employees over the phone and in writing to reach a resolution. In so doing, she sent two letters, both of which offered to pay for any damages arising out Plaintiffs' removal of Cedar and asserted continued property/possessory interests in him. SAC ¶¶ 48-53. Mrs. Long's second letter even threatened to sue over Cedar. Plaintiffs contend, and have always contended, this was a classic civil property dispute, and, while Mrs. Long offered to pay more to save Cedar, SDF only incurred $63 dollars in damages from Cedar's removal.[4] SAC ¶ 32. SDF employees, however, rejected Plaintiffs' efforts to resolve the dispute and needlessly raised the stakes by threatening her with criminal prosecution. SAC ¶¶ 44-46, 50; ECF No. 61-6, ¶ 25.

On Wednesday, June 29, 2022, someone called the Shasta County Sheriff's Department to report Mrs. Long for a crime. Due to what Plaintiffs contend were obstructionist discovery tactics from the Remaining Defendants, no party or non-party deponent in this case seemed to know or remember who initiated contact with the Sheriff's Department. Based on the totality of evidence uncovered, Plaintiffs contend Mr. Michael Flores, Deputy Secretary of the California Department of Food and Agriculture, which oversees SDF, or someone at his direction initiated contact with the Sheriff's

[4] At most, the Shasta Fair Association was potentially entitled to only 7% of the "Seller's check," i.e., the check made out to a 4-H youth-exhibitor who sold her animal at the fair. SHASTA DIST. FAIR & EVENT CENTER, ALL GEN. LIVESTOCK RULES & GUIDELINES, at 51, *available at* https://www.shastadistrictfairandeventcenter.com/_files/ugd/11ce2e_3695bf89aa414e3c81204ea6b6fc71bf.pdf



ADVANCING LAW FOR ANIMALS

Department. *See, e.g.*, ECF No. 89. Defendant Lieutenant Fernandez testified that, on June 29, 2022, Sheriff Michael Johnson instructed him to investigate the matter, as Cedar's removal was a "big deal" with "a lot of the fair boards" in California. SAC ¶ 56; ECF 61-1, ¶¶ 7-8. An SDF employee and Remaining Defendant Mr. Macfarlane testified that Mrs. Long's actions were "shocking." ECF No. 99-13, 86:11-20, 89:3-13; 117:21-118:7.

An SDF employee, Remaining Defendant Ms. Silva, provided Lieutenant Fernandez with copies of Mrs. Long's various written communications with SDF, wherein Mrs. Long and her daughter asserted property interests in Cedar, offered to pay for damages, and threatened to sue. SAC ¶ 57. That same day, Wednesday June 29, 2022, Lieutenant Fernandez went to Mrs. Long's house and left a message on her cell phone. However, Mrs. Long and her children had already left town for the upcoming July 4th holiday, and Mr. Long, her husband and Merchant Marine, was away at sea. ECF No. 99-6, 157:9-13.

On July 8, 2022, the day before the July 9 4-H/FFA Community Barbeque for which Cedar was allegedly earmarked, Defendant Detective Ashbee acquired a warrant to seize Cedar and "return [Cedar] to its rightful owner." ECF No. 39-34, at ASHB000026. That same day, Lieutenant Fernandez and Detective Duncan drove approximately 500 miles roundtrip to find and seize Cedar. SAC ¶ 75. Specifically, they drove from Shasta County to a goat rescue in Napa County called Bleating Hearts Sanctuary. SAC ¶¶ 75-76. They discovered Cedar was not there, ascertained Cedar's correct location from individuals at Bleating Hearts Sanctuary, and then travelled to the Billy's Mini Farm where Mrs. Long had temporarily placed Cedar while she sought resolution with SDF and awaited her husband's return from his overseas work trip. SAC ¶ 38; ECF No. 61-1, ¶ 9, 11.

Lieutenant Fernandez and Detective Duncan seized Cedar from Billy's Mini Farm, and turned him over to SDF employee and Remaining Defendant Mr. Macfarlane at the direction of Remaining Defendant Mrs. Muse. ECF No. 61-1, ¶ 9. None of the County Defendants ever notified Mrs. Long of Cedar's seizure or his turnover. Rather, after Ms. Long reached out Billy's Mini Farm for an update on Cedar, and its owner informed her of Cedar's seizure on about July 15, 2022, texting her, "Good morning this is who has your goat they came to my house and confiscated it." ECF No. 39-17, ¶ 20.

E.L.'s claims against the County Defendants, which she seeks approval to settle, are based upon

ADVANCING LAW FOR ANIMALS

the foregoing facts. Essentially, E.L and her co-Plaintiff, Mrs. Long, claim that the County Defendants knew, based upon Mrs. Long's various letters, that Plaintiffs asserted property interests in Cedar. ¶¶ 57-61, 75-89. As a consequence, Plaintiffs assert the County Defendants knew or should have known this was a civil dispute, not criminal, and, therefore, County Defendants lacked probable cause under the Fourth Amendment to investigate Mrs. Long in the first instance. *See, e.g., Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) (explaining "civil disputes cannot give rise to probable cause"). Further, Plaintiffs assert the County Defendants' seizure and turnover of Cedar interfered with their possessory interests in Cedar in violation of the Fourth Amendment. *See, e.g., Sodal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (explaining an unreasonable "interference with possessory interests" is a wrongful seizure). Additionally, Plaintiffs claim the County Defendants' turnover of Cedar to Remaining Defendants without notice or opportunity to be heard before disposition of their property interests violated the due process clause of the Constitution. *See, e.g., California Association for Preservation of Gamefowl v. Stanislaus County,* 2023 WL 1869010, * 24 (E.D. Cal. Feb. 9, 2023) (explaining "[p]rinciples of due process apply to all takings of non de minimus property, including such disparate objects as farm animals"); *Brazier v. California Dept. of Correction and Rehabilitation,* 523 Fed.Appx. 477, 478 (9th Cir. 2013) (explaining "Fourteenth Amendment appl[ies] … even if there is a dispute over ownership"). Plaintiffs also asserted applicable state law claims, but the thrust of their claims against the County Defendants arise from constitutional protections.

### C. Nature Of Claims To Be Settled

Plaintiffs' Second Amended Complaint (SAC), the operative pleading, asserts fifteen (15) separate causes of action in total, against different defendants. ECF No. 25. Of those, E.L. asserts six (6) causes of action against the County Defendants and, therefore, only those six (6) claims are subject to E.L.'s proposed settlement. These claims, based on the facts in the preceding section, are as follows:

**Cause of Action No. 1**: Unreasonable Search and Seizure in Violation of the Fourth Amendment. This claim alleges Lieutenant Fernandez, Detective Duncan, and Detective Ashbee wrongfully investigated Plaintiffs without probable cause and then wrongfully seized Cedar in violation of both Plaintiffs' Fourth Amendment rights;

**Cause of Action No. 2**: Denial of Due Process in Violation of the Fourteenth Amendment. This claim alleges Lieutenant Fernandez, Detective Duncan, and Detective Ashbee wrongfully disposed of Plaintiffs' property interests in Cedar by independently determining ownership and then turning him over to other Remaining Defendants, all without notice or opportunity to be heard in violation of due process;

**Cause of Action No. 5**: Unreasonable Search and Seizure in Violation of the California Constitution. This claim alleges Shasta County, Shasta Sheriff's Department, Lieutenant Fernandez, and Detective Duncan wrongfully investigated Plaintiffs without probable cause and then wrongfully seized Cedar in violation of Plaintiffs' rights under Article 1, Sec. 13, of the California Constitution;

**Cause of Action No. 6**: Denial of Due Process in Violation of the California Constitution. This claim alleges Shasta County, Shasta Sheriff's Department, Lieutenant Fernandez, and Detective Duncan wrongfully disposed of Plaintiffs' property interests in Cedar by independently determining ownership and then turning him over to Remaining Defendants, all without notice or opportunity to be heard in violation of Plaintiffs' due process rights under Article 1, Sec. 7 of the California Constitution;

**Cause of Action No. 9**: Conversion. This claim alleges Shasta County, Shasta Sheriff's Department, Lieutenant Fernandez, and Detective Duncan wrongfully converted Plaintiffs' property interests in Cedar by independently determining ownership and then turning him over to Remaining Defendants; and

**Cause of Action No. 11**: Negligence. This claim alleges Shasta County, Shasta Sheriff's Department, Lieutenant Fernandez, and Detective Duncan breached their duty of care by independently determining Cedar's

ownership and turning him over to Remaining Defendants.

The remaining claims in the SAC are asserted against the Remaining Defendants only and are not at issue in the instant motion for minor's compromise.[5]

**D. <u>Manner By Which The Compromise Amount Was Determined</u>**

Local Rule 202(b)(2) requires an application for approval of a minor's settlement disclose "the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise." The instant settlement with the County Defendants comes after two years of protracted litigation between them and Plaintiffs.

Plaintiffs and County Defendants have discussed settlement on and off since nearly the case's inception in late August 2022. Gordon Decl. ¶ 8. Both parties made offers between Spring and Summer 2023. The parties failed to reach settlement and undertook significant discovery, as set forth in greater detail *infra* at Section V. And, as set forth in greater detail *infra* at Section V, Plaintiffs' counsel has spent approximately 550 hours of attorney labor with respect to the County Defendants' liabilities. Gordon Decl. ¶ 20. In light of all the discovery conducted, in mid-March 2024, Plaintiffs and County Defendants resumed settlement discussion. Gordon Decl. ¶ 21. On August 5, 2024, all parties, including County Defendants and Remaining Defendants, attended a mandatory settlement conference before Hon. Magistrate Judge Chi Soo Kim in courtroom 25 of this Court. ECF Nos. 81, 94-07. Plaintiff Mrs. Long attended this mediation and participated in settlement talks. Long Decl. ¶ 9. Following the unsuccessful mandatory settlement conference, ECF No. 104, Plaintiffs and County Defendants continued to privately negotiate. Gordon Decl. ¶ 23. Based upon those negotiations, Plaintiffs and County Defendants reached, and notified the Court, of settlement on August 28, 2024. ECF No. 105.

---

[5] Plaintiffs' remaining claims are based actions from the Remaining Defendants (1) from June 26-29, 2022, before the County Defendants became involved, as SDF, Ms. Silva, and Mr. Macfarlane wrongfully discriminated against Plaintiff Mrs. Long because they believed she was making a political statement by removing Cedar; and (2) from July 8-28, 2022, after Cedar was delivered to and/or seized by SDF employee Mr. Macfarlane, until he, SDF, Ms. Silva, Mrs. Muse all agreed to kill Cedar, without providing Plaintiffs any notice or opportunity to be heard, and knowing it would emotionally harm E.L., but doing so to "teach her responsibility." Plaintiffs allege these actions amounted to separate violations of the First, Fourth, and Fourteenth Amendments, as well as conversion, negligence, and intentional infliction of emotional distress. Plaintiffs further seek declaratory relief. These claims will proceed after the Plaintiffs' settlement with the County Defendants is approved.

Given the risk inherent to litigation, the multiple factual and legal issues involved in this case as set forth more fully *infra* at Sections IV and V, Plaintiffs' resources, and the parties respective desire to avoid burdening the Court, Plaintiffs contend the instant settlement is fair, reasonable, and obtained after Plaintiffs' counsel made maximum efforts to uncover all evidence in favor of Plaintiffs' claims.

**E. The Nature Of Plaintiff E.L.'s Injuries**

Plaintiff E.L.'s damages are emotional in nature, as well as economic.[6]

**F. Disclosure Of Attorney's Interest**

Local Rule 202(c) provides that the minor's attorney must "disclose[] to the Court by whom and the terms under which the attorney was employed; whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, directly or indirectly; whether the attorney stands in any relationship to that party; and whether the attorney has received or expects to receive any compensation, from whom, and the amount."

Plaintiffs Mrs. Long and E.L., by and through Mrs. Long as her appointed guardian ad litem, employed E.L.'s counsel. Attorneys Ryan Gordon and Vanessa Shakib, operating under the nonprofit firm Advancing Law for Animals, undertook this case on a fully contingent basis and have advanced all costs. The terms of retainer include a contingency fee of 45%, negotiated based on the significant amount of work and risk this case would, and has, entailed, as well as recovery of costs. But, as listed below, E.L. will contribute 35% of her portion of settlement to attorneys' fees, *not* 45%. And while approximately $25,000 of the $50,000 of costs incurred to date in this case are attributable to County Defendants, E.L. will not reimburse any litigation costs from her portion of the settlement. Gordon Decl. ¶¶ 25-26, 29. As a result, Plaintiffs' counsel expect to receive compensation from E.L. as follows:

| | |
|---|---|
| Total Settlement with County Defendants | $300,000 |
| E.L.'s Portion of Total Settlement | $100,000 |
| E.L.'s Contribution Toward Attorneys' Fees | $35,000 |
| E.L.'s Contribution Toward Litigation Costs | $0 |
| Net Settlement to Be Paid to E.L. | $65,000 |

[6] The brunt of emotional damages E.L. suffered relate to Cedar's death, for which Remaining Defendants are responsible.

Plaintiffs' counsel did not become involved in this case at the instance of the County Defendants or Remaining Defendants, either directly or indirectly. They had no relationship or knowledge of any of these defendants prior to this matter.

### G. **Payment to E.L.**

Local Rule 202(g) requires that "[w]henever money or property is recovered on behalf of a minor or incompetent person, the money or property will be (1) disbursed to the representative pursuant to state law upon a showing that the representative is duly qualified under state law, (2) disbursed otherwise pursuant to state law, or (3) disbursed pursuant to such other order as the Court deems proper for the protection of the minor or incompetent person."

Consistent with all applicable laws and rules governing the compromise of a disputed claim on behalf of a minor, the instant settlement would be exclusively preserved and grown for the benefit E.L., as Ms. Long has established the Long Family Settlement Trust (the "Trust"), a Qualified Settlement Fund under 26 C.F.R § 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, and established by the Eastern Point Trust Company. Plaintiffs' intend, subject to Court approval, to place E.L.'s $65,000 in net settlement proceeds from the County Defendants in that Trust, where the funds will be held, segregated, managed, and invested on E.L.'s behalf, with no distribution or benefits to anyone, except E.L. when she reaches eighteen (18) and is granted access at that time. Long Decl. ¶ 14.

## IV. THE SETTLEMENT IS FAIR AND REASONABLE UNDER *ROBIDOUX*

The Ninth Circuit provides, in evaluating a minor's settlement, "district courts [must] limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases. *Most importantly*, the district court should evaluate the fairness of each minor plaintiff's net recovery *without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel*—whose interests the district court has no special duty to safeguard." *Robidoux v. Rosengren*, *supra*, at 1181-1182 (emphasis added).

Here, E.L.'s net recovery is fair and reasonable. As explained previously, E.L.'s claims against the County Defendants sound in constitutional violations for wrongful search and seizure and due

process protections. With respect to § 1983 causes of action asserted against law enforcement in connection with a companion animal, no cases are analogous. The primary distinction is, in the typical § 1983 case against law enforcement involving a companion animal, the officer-defendant(s) themselves killed the animal. By contrast, here, discovery revealed County Defendants did not kill Cedar; Remaining Defendants did.

While Plaintiffs are unable to locate a case where the defendant government officials unlawfully turned over an animal, but did not kill the animal, E.L.'s total settlement of $100,000, and net recovery of $65,000, is fair and reasonable by analogy. And, notably, Plaintiffs' counsel continues to litigate on E.L.'s behalf against Remaining Defendants who did kill Cedar. For example, in *Baskerville v. Perez*, 2017 WL 4122632 (N.D. Ill. Sept. 18, 2017), police officers executed a warrant and shot the family dog in front two minor children. The parties settled for attorneys' fees and $50,000 plus in damages, of which one minor received $8,000 and the other $7,500. In *Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania,* 929 A.2d 1169 (Pa. Super. Ct 2007), plaintiff settled for $54,000 in damages plus fees in § 1983 action after her dogs were seized as evidence of dogfighting charges and killed while in custody without notice. *See also Plotnik v. Meihaus*, 208 Cal. App. 4th 1590 (2012) (following a jury trial and subsequent appeal, the court awarded the husband and wife co-plaintiffs collectively approximately $160,000, in addition to attorneys' fees, in connection with their emotional distress claims against neighbors who injured their dog).[7]

Given the lack of analogous cases with respect to County Defendants, the variance of results in animal cases generally, the total absence of cases concerning companion goats, as well as the inherent risks of litigation, the proposed recovery to E.L. is fair and reasonable. Further, in assessing this settlement, it is salient that E.L. still has active claims for Cedar's actual slaughter against the

---

[7] Although no existing case law reflects the facts as between Plaintiffs and County Defendants, *i.e.*, unlawful officer conduct where the officer(s) did not kill the companion animal(s) at issue, existing cases where the officer(s) did kill the companion animal(s) at issue demonstrate a variability in outcome also favoring settlement. *Compare Hayes v. City of Detroit*, No. 16-13098, 2017 WL 4785977, at *1 (E.D. Mich. Oct. 24, 2017) (granting defendant police officer's motion for summary judgment in § 1983 action involving death of companion animal), *with Hell's Angels v. City of San Jose, et al.,* Case No. 5:99-cv-20022-JF (N.D. Cal. Jan. 11, 1999) (over seven years of protracted litigation and appeal, various municipalities and a county separately settled for an aggregated total of approximately $1.8 million in § 1983 cause of action against multiple law enforcement officers for unlawful shooting during three separate home raids of three companion animals).



ADVANCING LAW FOR ANIMALS

Remaining Defendants. Thus, the instant settlement with the County Defendants does not represent all her damages, and further supports its reasonableness for purposes of this Court's approval. In sum, Plaintiffs respectfully request this Court find E.L.'s total settlement recovery of $100,000 with the County Defendants, with a net recovery of $65,000, is fair and reasonable.

## V. ATTORNEYS' CONTINGENCY FEE IS APPROPRIATE FOR THIS CASE

Of E.L.'s total settlement recovery of $100,000, she will contribute 35% of her portion to attorneys' fees, and she will contribute $0 toward litigation costs, yielding her a $65,000 net recovery. This contingency fee is consistent with other court-approved settlements for minors. *See, e.g.*, *Velez v. Bakken*, 2019 WL 358703, at *2 n. 4 (E.D. Cal. Jan. 29, 2019) (finding 46% contingency fee not excessive); *Garcia v. Cnty. of San Diego*, 2022 WL 2973429, at *3 (S.D. Cal. July 27, 2022) (finding 50% contingency fee not excessive); *Welch v. Cnty. of Sacramento*, 2008 WL 3285412 (E.D. Cal. Aug. 5, 2008) (finding 35% contingency fee not excessive); *Robidoux v. Rosengren*, 638 F.3d 1177, 1182 (9th Cir. 2011) (finding the district court erred in rejecting a settlement on the basis that 56% in attorneys' fees was excessive).

While "[a]ttorneys' fees in the amount of twenty-five percent (25%) are the typical benchmark in contingency cases for minors[,]" *S.G.P. v. Tehachapi Unified School District*, 2022 WL 4450750, at *9 (E.D. Cal. Sept. 23, 2022) (*S.G.P.*), other factors apply. "It would be error for [a district] court to reduce the attorney's fees simply because the court believed [some] % of the total settlement was excessive [based on] *Robidoux.* ... the fairness determination [of a minor's compromise] is an independent, not comparative inquiry." *Velez v. Bakken*, 2019 WL 358703, at *2 n. 4 (E.D. Cal. Jan. 29, 2019); *see also S.G.P.*, at *9 (explaining "[g]iven … *Robidoux*, it may be error for [the] court to reject the settlement simply because the Court finds that the attorney fees sought are excessive"). On this basis, after the Ninth Circuit opinion in *Robidoux*, on remand the district court in that case ultimately approved the 56% attorney recovery which it had initially rejected as "excessive and unreasonable" because the only salient issue was the fairness of the minor's recovery. *Robidoux v. Wacker Family Trust,* 2:06-cv-02334-LKK-DAD, (E.D. July 28, 2011), ECF No. 108; Gordon Decl., Ex. A (attaching ruling).

Nonetheless, to the extent it was necessary, like here, minor's counsel in *Robidoux* justified fees

in excess of 25% on the grounds that he undertook representation on a contingency basis, spent significant hours on the case (at least 478.68 hours), fronted all costs, had specialized knowledge of which few other attorneys specialized, and generated a recovery that "exceed[ed] the apparent average award for similar cases." *Robidoux v. Wacker Family Trust,* 2009 WL 1531785, at *3-5 (E.D. Cal. May 9, 2009); *see also Velez v. Bakken*, 2019 WL 358703, at *2 n. 4 (E.D. Cal. Jan. 29, 2019) (finding attorneys' fee of 46% "not excessive" based on "counsel's experience with similar cases, the amount of time counsel spent investigating the claims, and the risk counsel took in pursuing this action on a contingency basis"); *Welch v. Cnty. of Sacramento*, 2008 WL 3285412 (E.D. Cal. Aug. 5, 2008) (finding attorneys' fee of 35% not excessive as attorney "assumed more financial risk than is typical for a lawyer in a contingency fee arrangement"); *Garcia v. Cnty. of San Diego*, 2022 WL 2973429, at *3 (S.D. Cal. July 27, 2022) (finding attorneys' fee of 50% not excessive because counsel were experienced attorneys and excessive litigation was involved).[8]

Likewise, here, Plaintiffs assert the requested attorney recovery is appropriate. Plaintiffs' counsel Ryan Gordon and Vanessa Shakib are experts in the multidisciplinary field of animal law, uniquely suited to address the novelty and difficulty of the legal questions involved with the requisite skill; they expended tremendous time in this case, including collectively approximately 550 hours toward County Defendants specifically, and excluding time directly attributable to Remaining Defendants; Plaintiffs' attorneys undertook representation of Plaintiffs on a contingent basis, assuming the risk of an adverse outcome; and Plaintiffs' attorneys advanced all costs, including $24,202.03 in hard costs directly attributable to County Defendants, and over $35,000 directly attributable to Remaining Defendants as of the date of this filing. Gordon Decl. ¶ 20, 25-27; Shakib Decl. ¶¶ 6-11. Plaintiff Mrs. Long acknowledges that no other firm would have represented her and her daughter in this matter, given, among other things, the risk associated with animal-related claims, the lack of funds Plaintiffs had available for litigation, and the costs involved in such a discovery intensive case. Long Decl. ¶ 13.

The expertise of Plaintiffs' counsel was critical in achieving the result obtained. This civil rights

---

[8] Additionally, § 1983 settlement offers are typically adjusted to account for attorney's fees, as prevailing plaintiffs have a right to such fees under 42 U.S.C.A. § 1988.

litigation involved complex legal concepts including qualified immunity and issues related to search and seizure, due process, and the First Amendment. *See, e.g.*, Counter-Defendant Jessica Long's Notice of Motion and Anti-SLAPP Motion to Strike Counterclaims, ECF No. 39. Aside from constitutional law, this litigation necessitated command of other areas of law including minor's rights; parental rights; contract law; auction law; indemnity law; both food animal and companion animal issues; emotional distress and related damages; the regulatory framework of the California Department of Food & Agriculture and its oversight of District Agricultural Associations, and more.

Beyond expertise in substantive subject matter, this case also required requisite skills in pre-trial discovery and matters of civil procedure. Plaintiffs' counsel zealously advocated for their clients and fervently litigated this case, navigating conflicting deposition testimony and evidence, between, *e.g.*, Lieutenant Fernandez and Sheriff Michael Johnson, and retracted deposition testimony concerning Sheriff Michael Johnson by Remaining Defendant Mr. Macfarlane. Plaintiffs conducted hundreds of hours of legal research and drafting; conducted and/or defended ten (10) separate depositions related to County Defendants[9] (exclusive of depositions of Remaining Defendants and other non-parties);[10] answered or responded to over twenty-five (25) sets of written discovery;[11] engaged in extensive meet and confer correspondence and telephonic meetings with counsel for County Defendants, *see, e.g.*, ECF Nos. 57-59, 68, 71, 73-74; sought discovery extensions multiple times in an effort to, among other things, meet and confer with County Defendants regarding potential new claims involving Sheriff Michael Johnson and District Attorney Stephanie Bridgett, ECF Nos. 49, 65; served various non-party subpoenas, including subpoenas for phone records given above-referenced conflicting and retracted

[9] Plaintiffs conducted in-person depositions of Defendant Lieutenant Fernandez on August 21, 2023; Defendant Detective Jacob Duncan on August 22, 2023; Defendant Detective Jeremy Ashbee on August 23, 2023; and Defendant Shasta County Sheriff Department's person most knowledgeable on August 23, 2023. Plaintiff conducted a second deposition against Defendant Shasta County Sheriff Department's person most knowledgeable on October 4, 2023, by remote means. Plaintiffs also appeared for the depositions of Sheriff Michael Johnson and District Attorney Stephanie Bridgett on April 10, 2024, although those deponents did not. The County Defendants deposed Plaintiff Mrs. Long in person on August 24, 2023. Plaintiffs and County Defendants deposed nonparty Ray Allen relative to his interaction with Lieutenant Fernandez and Detective Duncan on November 6, 2023. The County Defendants deposed minor E.L. by remote means on August 13, 2024.

[10] As to Remaining Defendants and relevant nonparties, an additional eleven (11) depositions have been conducted, the vast majority by Plaintiffs.

[11] Plaintiffs propounded nineteen (19) sets of written discovery on the County Defendants alone.

deposition testimony, ECF Nos. 51-56, 61-63, 69-70, 78, 87, 90, 93; retained multiple experts, including experts in police misconduct and psychology; engaged in an informal discovery conference to place limitations on the deposition of minor E.L., ECF No. 98; engaged in a mandatory settlement conference ECF Nos. 81, 94-07, 104; legal researched, drafted, and otherwise began preparing Plaintiffs' opposition to County Defendants' Motion for Summary Judgement, ECF No. 99, 101-103, now mooted by the instant settlement, and more. Gordon Decl. ¶¶ 7-21; Shakib Decl. ¶¶ 6-10. This entailed approximately 550 hours of billable attorney time with respect to County Defendants alone, and far more time in reality. Gordon Decl. ¶ 44; Shakib Decl. ¶ 12.

The legal complexity, duration of litigation, and expertise required of Plaintiffs' counsel and their success in overcoming obstacles throughout this litigation justifies approval of E.L.'s proposed settlement with the County Defendants. Given Plaintiffs' attorneys' respective hourly rates and experience, Gordon Decl. ¶¶ 33-40, Shakib Decl. ¶¶ 5, 13-23, their recovery is more than reasonable, and modest compared to both the market value of their work and the § 1983 fee award they would apply for after trial.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs request this Court approve E.L.'s proposed settlement as described above.

**ADVANCING LAW FOR ANIMALS**

Dated: September 27, 2024

By: /s/Ryan Gordon
Ryan Gordon
Vanessa Shakib
Attorneys for Plaintiffs