RYAN R. GORDON (SBN 278414)
VANESSA T. SHAKIB (SBN 287339)
**ADVANCING LAW FOR ANIMALS**
407 N. Pacific Coast Highway #267
Redondo Beach, CA 90277
Tel: (202) 996-8389
rgordon@advancinglawforanimals.org
vshakib@advancinglawforanimals.org

DANIEL J. KOLDE, ESQ.
**LAW OFFICES OF DANIEL J. KOLDE**
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel: 636.675.5383
Email: daniel.kolde.law@gmail.com
(*pro hac vice application to be filed*)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,<br><br>             Plaintiffs,<br>      v.<br>LIEUTENANT JERRY FERNANDEZ, in his individual capacity; DETECTIVE JACOB DUNCAN, in his individual capacity; DETECTIVE JEREMY ASHBEE, in his individual capacity; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association; COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual and official capacity; BJ MACFARLANE, in his individual and official capacity; KATHIE MUSE, in her individual and official capacity, and DOES 1 through 10, | Case No. 2:22-cv-01527-DAD-AC<br><br>**DECLARATION OF RYAN GORDON IN SUPPORT OF MOTION TO APPROVE SETTLEMENT OF A MINOR'S CLAIM**<br><br>Date: Tuesday, November 5, 2024<br>Time: 1:30 pm<br>Courtroom: 4, 15th Floor<br><br>Trial Date: March 24, 2025<br><br>Action Filed: August 31, 2022 |

**DECLARATION OF RYAN R. GORDON**

I, Ryan R. Gordon, declare as follows:

1. I am over the age of eighteen. I have personal knowledge of the facts set forth in this declaration and if called as a witness could and would competently testify thereto. I am an attorney licensed to practice law in the State of California, as well as the U.S. District Courts for the Eastern and Central Districts of California. I submit this declaration in support Plaintiff E.L.'s Motion to Approve Settlement of Minor's Claims.

2. Along with my co-counsel, Vanessa Shakib, I operate a nonprofit law firm called Advancing Law for Animals.

3. I am attorney of record for Plaintiff Jessica Long ("Mrs. Long") and her minor daughter, Plaintiff E.L. (collectively, "Plaintiffs").

**Facts Related To Procedural History, Discovery, And Settlement Negotiations**

4. Plaintiffs filed this action on August 31, 2022. At that time, neither my office nor Plaintiffs had sufficient information to identify all potential defendants in this case. As a consequence, Plaintiffs' initial complaint only named three defendants: Lieutenant Fernandez, Detective Duncan, and Detective Ashbee (collectively, the "Original Defendants").

5. The court issued its original Scheduling Order on December 22, 2022, ECF No. 10, which set the parties exchange of Rule 26(a) disclosures for January 24, 2023. So Plaintiffs did not meaningfully begin discovery until approximately February 2023.

6. Based on initial exchanges of discovery and additional legal research conducted by my co-counsel and I, Plaintiffs filed their First Amended Complaint ("FAC") on March 2, 2023. ECF No. 16. The FAC added as new Defendants the County of Shasta and the Shasta County Sheriff's Department (collectively, along with the Original Defendants, the "County Defendants"). The FAC also named as Defendants the Shasta District Fair & Event Center, Melanie Silva ("Ms. Silva"), and BJ Macfarlane ("Mr. Macfarlane") (collectively, "State Defendants").

7. From February 2023 through May 2023, Plaintiffs and the County Defendants exchanged at least fifteen (15) sets of written discovery. Plaintiffs also noticed and engaged in

1
DECLARATION OF RYAN GORDON IN SUPPORT OF MINOR'S COMPROMISE

significant preparation for the depositions of all the individual County Defendants, as well as the PMK for the Sheriff's Department for dates in mid-May 2023.

8. However, counsel for the County Defendants and I agreed to take the depositions off calendar to accommodate settlement discussions. Thereafter, from late May through late June 2023, I had several settlement communications with opposing counsel. But no settlement was reached at that time, nor did Plaintiffs receive a response to their settlement offer.

9. With no settlement reached, the Plaintiffs continued conducting significant discovery, including depositions, all manner of written discovery, and subpoenas to third parties.

10. Because of new information yielded in discovery, Plaintiffs filed a Second Amended Complaint (SAC) on October 12, 2023, adding a new Defendant, Kathie Muse ("Mrs. Muse"). Mrs. Muse and the State Defendants are hereafter collectively referred to as the "Remaining Defendants," as they are the defendants who will remain in the case following approval of the E.L.'s settlement with the County Defendants.

11. In regards to the specific attorney hours expended and discovery conducted with County Defendants, Plaintiffs and the County Defendants conducted at least ten (10) depositions between themselves.[1] In addition to the depositions between Plaintiffs and the County Defendants, I also conducted multiple depositions of the State Defendants and related third parties in this case.[2]

12. Taking depositions in this case involved additional time commitments for travel, and has increased litigation costs. I live in Orange County, CA, and have personally taken at least four (4) trips to Shasta County for depositions in this matter. Due to flight limitations, each trip requires at least one night stay in a hotel and car rental, with some trips extending throughout the week.

---

[1] Plaintiffs conducted in-person depositions of Defendant Lieutenant Fernandez on August 21, 2023; Defendant Detective Jacob Duncan on August 22, 2023; Defendant Detective Jeremy Ashbee on August 23, 2023; and the Defendant Shasta County Sheriff Department's person most knowledgeable on August 23, 2023. Plaintiff conducted a second deposition against the Defendant Shasta County Sheriff Department's person most knowledgeable on October 4, 2023, by remote means. Plaintiffs also appeared for the depositions of Sheriff Michael Johnson and District Attorney Stephanie Bridgett on April 10, 2024, although those deponents did not. The County Defendants deposed Plaintiff Mrs. Long in person on August 24, 2023. Plaintiffs and County Defendants deposed nonparty Ray Allen relative to his interaction with the defendant officers, on November 6, 2023. The County Defendants also deposed minor E.L. by remote means on August 13, 2024.

[2] As to the remaining Defendants and relevant nonparties, an additional eleven (11) depositions have been conducted, the vast majority by Plaintiffs.

Advancing Law for Animals

13. In addition to traveling for the depositions, each deposition itself took significant preparation. For example, in preparing for the County Defendants alone, I reviewed and marked up not only the hundreds of documents/recordings produced by the County Defendants (such as their investigative reports of Mrs. Long, their communications, the information they had in their possession at various times), but also reviewed/researched the Sheriff Department's Policy Manual (which itself is vast - containing 160 chapters, with multiple policy provisions in each) and other relevant public documents (such as the state rules for all California fairs issued by the California Department of Food and Agriculture), conducted legal research generally, conferenced with our own law enforcement experts, among other things.

14. Plaintiffs and the County Defendants have also propounded, and answered, over twenty-five (25) sets of written discovery upon each other,[3] which was laborious in its own right and also led to significant document review. That does not include supplemental responses or the multiple intermediary meet and confer correspondences and telephonic meetings related thereto.

15. Those twenty-five (25) sets of written discovery also do not include discovery propounded on the Remaining Defendants or subpoenas to third parties, of which there has been many.

16. On behalf of Plaintiffs, I further had to subpoena multiple phone records and business records from nonparties.

17. Several of those subpoenas, and other discovery to County Defendants, in fact resulted in significant motion practice. ECF Nos. 51, 52, 53, 54, 55, 56, 57, 58, 59, 61, 62, 63, 64, 78, 87, 89, 90, 91.  Some of these motions were resolved before the Court had to rule upon them, but many resulted in several court orders to Verizon and various private parties to compel production.

18. Additionally, because various orders to compel production of the documents resulted in multiple sets of phone records with hundreds of unknown phone numbers and text messages, my co-counsel and I, as a consequence, spent significant hours researching individual numbers, and triangulating calls with texts and emails. We also retained a private investigator to assist with this process.

---

[3] Plaintiffs alone propounded nineteen (19) sets of written discovery to the County Defendants.

ADVANCING LAW FOR ANIMALS

19. Completing discovery in this case was so time consuming, it was continued four (4) times. ECF Nos. 20, 34, 49, 65. The last two extensions, in fact, were required because the parties were unable to complete discovery within the time constraints, as the terms of the deposition of minor E.L. were still being determined, and the then-current testimony of several defendants made unclear "which individuals, if any, at the Shasta County Sheriff's Department, Shasta County District Attorney's Office, and/or CDFA were involved in the decision to kill Cedar." ECF No. 65, p. 4:21-24.

20. With respect to the County Defendants' liabilities alone, Plaintiffs' counsel has conservatively spent approximately 550 hours of attorney labor, depending on how the hours in this case are attributed.

21. In light of all the discovery conducted, in mid-March 2024, counsel for County Defendants and I again discussed the possibility of settlement. I proposed private mediation but the other Defendants in the case expressed a desire for a global negotiation. Accordingly, on May 30, 2024, all parties jointly requested a mandatory settlement conference (MSC) before the Court. ECF No. 80. Thereafter, I began legal researching, drafting, and otherwise preparing Plaintiffs' opposition to County Defendants' Motion for Summary Judgement, ECF No. 99, 101-103, now mooted by the instant settlement.

22. On August 5, 2024, that MSC was held before Hon. Magistrate Judge Chi Soo Kim in courtroom 25 of this Court. I attended, along with my co-counsel Ms. Shakib and Mrs. Long. It was unsuccessful.

23. Following the unsuccessful MSC, I continued to negotiate privately with counsel for the County Defendants. Based upon those negotiations between Plaintiffs the County Defendants (and only between those parties) an offer of settlement was made and accepted on August 28, 2024. I notified the Court the same day pursuant to Local Rule 160. ECF No. 105.

**E.L.'S Contingency Fee Agreement And Attorney's Interest**

24. E.L.'s portion of the settlement is $100,000. As explained in the concurrently filed Declaration of Jessica Long, Mrs. Long, as E.L.'s guardian ad litem, is working with separate counsel and financial advisors and has established the Long Family Settlement Trust, a Qualified

4
DECLARATION OF RYAN GORDON IN SUPPORT OF MINOR'S COMPROMISE

1  Settlement Fund, to secure and invest E.L.'s funds from this settlement until she reaches eighteen
2  (18).

3      25.    My co-counsel and I undertook representation of Mrs. Long and E.L. on a
4  contingency basis and our firm, Advancing Law for Animals, fronted all costs.

5      26.    This case against all Defendants has been time consuming and expensive, it has
6  created risk for Advancing Law for Animals, and interfered with our availability to develop and take
7  on other matters. The total cost of this case, to date, is approximately $60,000, including depositions,
8  videographers, expert witnesses, private investigation services, airfare, hotels, among other things.
9  With respect to the County Defendants, my firm advanced costs of $24,202.03, to be reimbursed by
10 Mrs. Long from her portion of the settlement.

11     27.    With respect to our agreement for fees, we have a contingency agreement (and the
12 ability to petition for § 1983 attorney fees if ever applicable).

13     28.    Of relevance to the instant motion, our contingency agreement for the proposed
14 settlement with respect to E.L. is 35%.

15     29.    E.L. is also not paying any of the costs of this case. As stated above, her mother,
16 Plaintiff Mrs. Long, has agreed to pay them from her portion of the settlement.

17     30.    It is my position that, given the risk involved in all litigation, given the multiple
18 factual and legal issues involved in this case (*inter alia*, the constitutional issues, auction law,
19 minor's rights, animal issues), given the Plaintiffs' resources and the resources of me and my firm,
20 and given the parties respective desire to avoid burdening the Court, that the instant settlement is a
21 fair settlement for E.L. as to her claims against County Defendants. It was reached only after I and
22 my co-counsel made maximum efforts to uncover all evidence in favor of Plaintiffs' claims. E.L.'s
23 remaining damages will be pursued against the Remaining Defendants.

24     31.    I did not became involved in this case at the instance of the County Defendants or
25 Remaining Defendants, or any individual associated with the County, either directly or indirectly. I
26 have no relationship with any of those actors.

27     32.    With respect to any additional attorney compensation, of the remaining settlement
28 funds of $200,000, which is allotted to Mrs. Long, my firm is to receive $100,000 in fees.

**Attorney Qualifications**

33. I graduated with a Bachelor of Science from Pennsylvania State University in 2003. I attended Loyola Law School and graduated with a J.D. in 2010.

34. I have worked for several reputable law firms, both large and small, including Reed Smith, LLP, Fisher, Klein & Wolfe, LLP, the Law Offices of Daniel M. Shapiro, as well as several national nonprofits, and maintained a private practice.

35. I have extensive experience with commercial real property litigation, lender liability, appeals, anti-SLAPP litigation, administrative law/administrative agency litigation, construction litigation, public records disputes, financial/business disputes, HOA litigation, and animal rights/welfare litigation.

36. With respect to my appellate practice, I have personally handled seven appeals. I have succeeded on six out of seven appeals, including three (3) reversals: *See Shake It Up, LLC et al. v. Stadium Promenade, LLC, et al.* (4th Dist. 2015) G049753 [$350,000 commercial real property judgment reversed as illegal penalty under Civ. Code § 1671 against real estate business represented by Miller Star Regalia]; *Taylor Concrete Pumping v. Zippy's Currency X-Change, et al.* (2nd Dist. 2015) B256900 [motion to compel satisfaction of judgment affirmed as not a collateral attack on stipulated judgment]; *Hixon v. Zippy's Currency X-Change, Inc et al.* (2nd Dist. 2015) B256439 [reversing trial court's denial of anti-SLAPP motion against malicious prosecution action]; *Creation Harmony Trading, Inc. v. Li et al.* (4th Dist. 2019) EC068777 [reversing personal judgment after trial against principal of corporate defendant based insufficient evidence of alter ego]; *Detamore et al. v. Jain et al.* (2nd Dist. 2021) [affirming denial of anti-SLAPP motion]; *Taylor Concrete Pumping Corp. v. Zippy's Currency X-Change, Inc.* (2nd Dist. 2015) B258831 [affirming attorney fee award].

37. I have been counsel in multiple lender liability cases involving large construction financing disputes with banks (e.g. Bank of Hope, East West Bank, Universal Bank) over various Southern California regional shopping malls, which each concerned real property valued at over 8 figures. For example, much of my time from 2016-2020 was spent defending ownership disputes (on behalf of the owners), and prosecuting construction disputes, over a large commercial shopping

center known as the California Marketplace in the Koreatown area of Los Angeles. Many of the cases I have handled concerned complex financing instruments, such as convertible notes (debt to equity instruments), as well as other niche areas implicating anti-deficiency laws, California Financing Law, trustee's sales, securities, and sham guaranties.

38. I also have significant experience with anti-SLAPP litigation, having successfully brought or defeated at least ten (10) anti-SLAPP motions over my legal career. One of those cases included a complete dismissal on First Amendment grounds of a USDA commercial slaughterhouse's retaliatory lawsuit against various activists holding silent vigils on public property near its operations, resulting in a $94,000 attorney fee award. *Manning Beef, et al. v. Cow Save*, LASC BC651650. I also prevailed twice on appeals in separate anti-SLAPP cases. *Hixon v. Zippy's Currency X-Change, Inc et al.*, Case No. B256439 (2nd Dist. July 30, 2015) [successfully reversing a trial court's SLAPP order on malicious prosecution claim, resulting in complete dismissal of suit]; *Detamore et al. v. Jain et al.*, Case No. B305561 (2nd Dist. April 26, 2019) [successfully affirmed denial of anti-SLAPP based on lack of protected activity on Step 1].

39. Apart from my for-profit work, I have significant experience in the field of animal law, which itself encompasses a wide variety of legal disciplines. I have worked for the Animal Legal Defense Fund, the Nonhuman Rights Project, and Beagle Freedom Project, all of which are large animal welfare nonprofits focusing on different issues. For example, for these organizations I have been counsel in a variety of public records act cases concerning public records of animal experimentation (both against U.S. public agencies and various state universities), I have worked on novel case strategies related to animals involving local legislation and habeas corpus, and I have been involved in litigation related to various niche issues such as animal research and the dog meat trade.

40. Further, I am a founding attorney of Advancing Law for Animals, a nonprofit focusing on impact litigation involving abuse on factory farms and research laboratories. In this role, I have been counsel on a variety of lawsuits against U.S. administrative agencies, such as the USDA, the NIH, and the U.S. Department of Health and Human Services, over issues concerning illegally promulgated regulations of animals in research facilities and puppy mills, as well as illegally

conducted publicly funded animal research. I have also been counsel in suits for abuse against large U.S. factory farms, private universities, and municipalities for various animal welfare issues.

41. Based on the above, my Los Angeles hourly rate is $850.

42. Consequently, the complete contingency basis on which both I and Ms. Shakib worked, as well as the fact that we fronted all costs, in a case as litigious as this case, constituted a significant risk for us.

**Attorney Billing Practices**

43. My firm, Advancing Law for Animals, bills in increments of 0.1.

44. Given that this case involves multiple Defendants, some of our legal work has applied to all Defendants. Nonetheless, Ms. Shakib and I have conservatively spent approximately 550 hours on legal work related to the County Defendants.

45. As a result of the work Ms. Shakib and I performed on this case, our ability to undertake other representation was limited. In fact, I turned down other legal work given how much labor was required to represent Mrs. Long and E.L.

**Exhibits**

46. Lastly, attached hereto as **Exhibit A** is a true and correct copy of ECF No. 108 from *Robidoux v. Wacker Family Trust,* 2:06-cv-02334-LKK-DAD, (E.D. July 28, 2011), effectively approving the attorney's 56% contingency fee on the minor plaintiff's claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 27th day of September, 2024, at Dana Point, California.

    /s/Ryan Gordon
    **Ryan Gordon**

DECLARATION OF RYAN GORDON IN SUPPORT OF MINOR'S COMPROMISE

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE ROBIDOUX; REGINA ROBIDOUX; RANDALL REICHEBERG, JR. and JESSE J. ROBIDOUX, JR., minors by and through their GUARDIAN AD LITEM, REGINA ROBIDOUX; SHAUN JOHNSON; LORENA LINGENFELTER; HANNAH BURK and MICHAEL BURK, minors by and through their GUARDIAN AD LITEM, LORENA LINGENFELTER, individuals,

        Plaintiffs,

    v.

WACKER FAMILY TRUST; WAYNE WACKER, EILEEN WACKER and CHRISTINE WACKER, individually and doing business as VILLA SERRANO APARTMENTS; BRIAN ROSENGREN,

        Defendants.
_____/

NO. CIV.S-06-2334 LKK/DAD

O R D E R

    Currently before the court is plaintiffs' motion to approve minors' compromises. On May 29, 2009, the court "appprove[d] the compromise of the minors' claims in all respects except" the percentage of the total settlement award devoted to attorneys'

1

fees. On March 30, 2011, a panel of the Ninth Circuit reversed this court's partial denial of the motion to approve the minors' compromise and "remand[ed] with instructions for the district court to determine whether the net recovery of the four minor plaintiffs under the proposed settlement is fair and reasonable as to each minor plaintiff." The court, however, already determined that the proposed settlement is fair and reasonable as to the awards to the minor plaintiffs when it approved their settlements in May 2009.

For the foregoing reasons, the court orders as follows:

(1) Plaintiffs' motion to approve the minors' compromises (Doc. No. 103) is GRANTED.

(2) Hearing on plaintiffs' motion to approve the minors' compromises, currently set for August 1, 2011, is VACATED.

IT IS SO ORDERED.

DATED: July 28, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

2