1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  CATHERINE WOODBRIDGE, State Bar No. 186186
   Supervising Deputy Attorney General
3  JOHN C. BRIDGES, State Bar No. 248553
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 210-7529
6    Fax:  (916) 322-8288
     E-mail:  John.Bridges@doj.ca.gov
7  *Attorneys for Defendants State of California, by and
   through the 27th District Agricultural Association,*
8  *Melanie Silva, and B.J. MacFarlane*

9                IN THE UNITED STATES DISTRICT COURT

10               FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| **E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**LIEUTENANT JERRY FERNANDEZ, in his individual capacity; DETECTIVE JACOB DUNCAN, in his individual; DETECTIVE JEREMY ASHBEE, in his individual capacity; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association, COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual capacity; BJ MACFARLANE, in his individual capacity; and DOES 1 through 10,**<br><br>Defendants. | 2:22-CV-01527 DAD AC<br><br>**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Date:         January 6, 2025<br>Time:         1:30 pm<br>Courtroom:    4<br>Judge:        Honorable Dale A. Drozd<br>Trial Date:   March 24, 2025<br>Action Filed: August 31, 2022 |

Defendants Shasta District Fair, Melanie Silva, and BJ Macfarlane hereby submit the following separate statement of undisputed facts and citations to supporting evidence under Local

1

Rule 260(a). These facts are deemed undisputed by Defendants for the purposes of their motion for summary judgment/ summary adjudication only.

| **STATEMENT OF FACT** | **EVIDENCE** |
|---|---|
| 1. Plaintiff Jessica Long entered her daughter, plaintiff E.L., in the market goat program of the Cow Creek 4-H club in Shasta County, California, in October of 2021. | Deposition of Chad Fowler ("Fowler depo."), 14:13-18; 15:1-3 |
| 2. Plaintiff Long wanted her daughter to learn how to care for livestock, as well as it being a great opportunity for her to learn about where food comes from and the effort it takes to raise quality meat products. | Deposition of Jessica Long ("Long depo."), Vol. I, Exhibit B, "Email from Jessica Long to Shasta County Fair Manager dated 6-27-22, totaling 2 pages" |
| 3. Plaintiff Long purchased the goat in April of 2022. | Second Amended Complaint (ECF No. 25), ¶ 20; Deposition of Jessica Long, Vol. I ("Long depo., Vol. I"), 22:21-23:1 |
| 4. From September 2021 to May 2022, plaintiffs participated in monthly 4-H meetings and learned about raising meat goats. | Long depo., Vol. I, 18:8-22 |
| 5. When Plaintiff Long signed E.L. up for 4-H, she signed her up for the meat or market goat project. | Long depo., Vol. I, 19:20-25 |
| 6. They ate goat meat during the program orientation prior to purchasing their goat. | Deposition of E.L. ("E.L. depo."), 18:25-19:11; Long depo., Vol. II, 276:8-25 |
| 7. They learned that meat goats are raised to be used as meat, and that their goat would be used for meat. Plaintiff Long also understood that their goat would be sold at auction. | Long depo., Vol. I, 32:11-17 |
| 8. In September or October of 2021, the 4-H club leader told plaintiff Long that the goats would be sold at auction and most likely would be purchased for meat. | Long depo., Vol. I, 45:12-46:13 |
| 9. The 4-H club leader told plaintiffs that the goats in the program were being raised for meat. | E.L. depo., 37:15-18 |
| 10. E.L.'s understanding is that she was raising the goat for meat. | E.L. depo., 37:24-38:3 |
| 11. On May 17, 2022, plaintiff Long entered E.L. into the "market goat" division and "meat goat showmanship" programs for the 2022 Shasta District Fair. | Long depo., Vol. II, 221:13-25; 222:5-10 |
| 12. At that time, plaintiff Long knew that the animal would be sold at the auction at the end of the fair, and she intended that the animal be sold at the auction. | Long depo., Vol. I, 32:11-13 |
| 13. At the time she entered E.L. as an exhibitor at the fair, she believed that the goat would most likely be sold at the auction for meat. | Long depo., Vol. I, 32:11-13 |

| STATEMENT OF FACT | EVIDENCE |
|---|---|
| 14. The online entry form indicated that plaintiffs would be bound by the exhibitor rules for the fair, which were hyperlinked with the form. | Declaration of Melanie Silva ("Silva declaration"), ¶ 6 |
| 15. Plaintiff Long selected a box stating "I agree" to comply with the exhibitor rules and submitted the form without reading the rules. | Long depo., Vol. I, 123:3-16; 124:17-125:5; Vol. II, 223:23-224:25 |
| 16. The exhibitor rules contained the following provisions:<br><br>"**AUCTION GUIDELINES – THIS IS A TERMINAL SALE**"<br><br>"**ALL ANIMALS** (Steers – Replacement Heifers – Swine – Lambs – Meat Goats – Rabbit Meat Pens) ENTERED IN MARKET CLASSES & QUALIFYING FOR THE JUNIOR LIVESTOCK AUCTION **MUST BE SOLD** as listed on the Sale Order."<br><br>"ALL ANIMALS sold in the Shasta Junior Livestock Auction sale MUST go to processing, directly from the Fairgrounds and will be transported on the trucks provided by the Fair on Saturday, June 25, 2022." | Silva declaration, ¶¶ 7, 8, 9 |
| 17. Plaintiff Long submitted the entry form along with a $15.00 entry fee. | Long depo., Vol. II, 222:2-4 |
| 18. She did not speak with anyone from the Shasta District Fair at the time she entered into the contract, nor did she speak to anyone from the Fair prior to entering into the contract. | Long depo., Vol. II, 232:10-14 |
| 19. At no time did Ms. Long contact anyone from the Shasta District Fair about removing the goat from the fair before the auction. | Long depo., Vol. I, 65:9-24 |
| 20. The first time she contacted anyone from the Shasta District Fair about her allegedly withdrawn consent to participate in the auction was June 27, 2022, two days <u>after</u> the auction. | Long depo., Vol. I, Exhibit B, "Email from Jessica Long to Shasta County Fair Manager dated 6-27-22, totaling 2 pages" |
| 21. Shortly before the Fair, E.L. drafted a buyer's letter encouraging prospective buyers to come to the Fair and bid on her animal. E.L.'s buyer letter stated, in part:<br><br>"Dear buyer, hello, my name is E.L. I am in Cow Creek 4-H. This is my first year in 4-H. I have decided to raise a meat got [SIC] whether for my project…This year I have learned  how to take care of meat goat. My goat is very great and he will be very good palin [SIC] and in tacos and every other way he will be very good and tasty…" | Long depo., Vol. I, 159:15-160:14; Delaloza depo., 27:16-28:17 |

3

Separate Statement of Undisputed Material Facts In Support of Defendants' MSJ, or in the Alternative, Summary Adjudication (2:22-CV-01527 DAD AC)

| STATEMENT OF FACT | EVIDENCE |
|---|---|
| 22. Plaintiffs participated in the Shasta District Fair during the week of June 20, 2022, culminating with the Junior Livestock Auction on Saturday, June 25, 2022. | E.L. depo., 29:2-4 |
| 23. On the second day of the fair, plaintiff Long heard from a farm to which they could donate the goat where it would clear land for fire prevention. | Long depo., Vol. I, 58:1-60:24 |
| 24. At no time during the week of the Fair did either plaintiff contact anyone from the Shasta District Fair about removing the animal from the fairgrounds. | Long depo., Vol. I, 65:9-24 |
| 25. On June 25, 2022, E.L. participated in the Junior Livestock Auction. | E.L. depo., 29:2-4 |
| 26. California State Senator Brian Dahle, by and through his representative Kathie Muse, placed the winning bid for plaintiffs' animal at the auction, which was $902. | Long depo., Vol. I, 71:5-10; 76:24-77:19; 78:10-79:9; 82:22-25; Deposition of Kathie Muse ("Muse depo"), 66:23-67:8; 45:20-24; 153:2-15 |
| 27. Sen. Dahle had previously arranged for the livestock to be donated to the local 4-H/FFA Community BBQ to use at its annual fundraiser event. | Deposition of Kathie Muse ("Muse depo."), 66:23-67:8; 45:20-24; 153:2-15 |
| 28. After placing the winning bid, E.L. delivered a "thank you" letter to Ms. Muse to thank her for placing the winning bid on her goat. | Long depo., Vol. I, 148:14-149:10; 149:24-150:3. |
| 29. Later that evening, when the 4-H livestock was being loaded for transport from the fairgrounds pursuant to the Exhibit Rules, plaintiff Long convinced E.L. that they should take the animal from the fairgrounds. | Long depo., Vol. II, 264:14-19 |
| 30. E.L. did not think that removing the animal from the fairgrounds was even an option, but plaintiff Long loaded the goat into the back of her car, drove to Sacramento, and made arrangements to deliver the animal to a private farm in Petaluma. | Long depo., Vol. II, 264:14-19; Long depo., Vol. I, 88:1-12; Deposition of Lt. Jerry Fernandez ("Fernandez depo."), 246:1-5 |
| 31. The following day, plaintiffs took the animal to Petaluma and gave it to Raymond Allen, the owner of Billy's Mini Farm. | Long depo., Vol. I, 192:9-15 |
| 32. Plaintiff Long texted Mr. Allen that morning, stating, "Hi, it's Jessica Long. I called earlier this week about a 4-H goat that we'd like to donate to your farm." | Deposition of Raymond Allen ("Allen depo."), 17:12-18:9 |
| 33. Mr. Allen's understanding of why plaintiff Long was giving the goat to him was "to donate it to me," and "she wanted to donate us a goat." | Allen depo., 27:18-20; 44:22-25 |
| 34. His understanding was that plaintiffs transferred ownership of the goat to him when they donated it to him. | Allen depo., 71:17-20 |
| 35. Mr. Allen estimated that it would cost him more than $100 per year to take care of a goat like the one donated to him by the plaintiffs | Allen depo., 73:23-74:2 |
| 36. E.L. understood that they were going to leave the goat with Mr. Allen for the rest of the goat's life. | E.L. depo., 35:1-4 |

4

| **STATEMENT OF FACT** | **EVIDENCE** |
|---|---|
| 37. On Monday, June 27, 2022, plaintiff Long contacted Melanie Silva, the CEO of the Shasta District Fair, by email. Plaintiff Long stated that she "decided to break the rules and take the goat that night and deal with the consequences later." | Long depo., Vol. I, Exhibit B, "Email from Jessica Long to Shasta County Fair Manager dated 6-27-22, totaling 2 pages" |
| 38. She stated that she wanted to "donate my daughter's goat to where he could clear land for fire prevention…We just want to give him to a farm that does fire clearing and make things right with the fair…I hope that I will gain your support to donate our goat to a fire clearing team…" | Long depo., Vol. I, Exhibit B, "Email from Jessica Long to Shasta County Fair Manager dated 6-27-22, totaling 2 pages" |
| 39. On or about June 29, 2022, Lieutenant Jerry Fernandez ("Lt. Fernandez") with the Shasta County Sheriff's Office, was contacted regarding the theft of livestock from the District Fair. | Fernandez depo., 87:17-88:25; Muse depo., 138:18-25; 139:7-13 |
| 40. Lt. Fernandez reached out to Bruce MacFarlane ("BJ MacFarlane"), the livestock manager for the District Fair, and was informed that the livestock had been stolen during the end of the Junior Livestock Auction. | Fernandez depo., 87:1-88:25 |
| 41. Lt. Fernandez initiated an investigation into the theft of the goat and learned that Kathie Muse, the head of the 4-H/FFA Community BBQ, had first reported the livestock theft. | Fernandez depo., 89:1-90:12; 92:8-25; Muse depo., 138:18-25; 139:7-13 |
| 42. In the course of his investigation, Lt. Fernandez reviewed communications from Jessica Long, the sales invoice for the auction, social media posts, the District Fair local/state rules, as well as the terms of the contract between the District Fair and Jessica Long. | Fernandez depo., 89:1-90:12; 92:8-25 |
| 43. Based on the information presented to him, Lt. Fernandez, in his capacity as a law enforcement officer, determined that Jessica Long had committed grand theft under Penal Code § 487(a). | Lieutenant Fernandez's Responses to Plaintiffs' Request for Production of Documents, Set One, Exhibit "A" |
| 44. He relayed this information to Shasta County Sheriff's Detective Jeremy Ashbee ("Detective Ashbee") who prepared several warrants for the retrieval of goat. | Deposition of Jeremy Ashbee ("Ashbee depo."), 79:23-80:3; 81:3-9; 82:3-6; 120:24-121:1 |
| 45. Detective Ashbee drafted search warrants to permit a search Bleating Hearts Farm and Sanctuary, located at 1132 3rd Avenue, Napa, CA 94558 ("Bleating Hearts"). | Ashbee depo., 169:1-18; 173:17-25; Lieutenant Fernandez's Responses to Request for Production of Documents, Set One, Exhibit "A" |
| 46. It was believed the goat was at Bleating Hearts because of social media posts and facts obtained in the investigation. | Long depo., Vol. I, Exhibit A; Long depo., Vol I., 110:2-111:4; Ashbee depo., 81:3-9; 82:3-6; 120:24-121:1 |
| 47. The operative and final warrant included language signed by the Magistrate stating "Due to the fact the item(s) to be seized include living animals, Deputies shall secure the property in a humane and appropriate | Ashbee depo., 140:23-141:22; 144:3-6 |

5

| STATEMENT OF FACT | EVIDENCE |
|---|---|
| location, and the rightful owner of said property shall be notified of the location of the property. The property may be released to the owner upon seizure." | |
| 48. On July 8, 2022, Lieutenant Fernandez recruited Detective Jacob Duncan ("Detective Duncan") to accompany him to serve the operative and final warrant at Bleating Hearts Farm in Napa, California. | Deposition of Jacob Duncan ("Duncan depo."), 77:17-78:9 |
| 49. Upon arriving at Bleating Hearts, Lieutenant Fernandez and Detective Duncan were unable to locate Cedar. | Duncan depo., 117:18-118:1; Ashbee depo., 178:9-12 |
| 50. They interviewed the owners, Justin Starky and Kristin Stover who both denied knowing the location of the goat. | Duncan depo., 124:3-7; 146:11-15 |
| 51. In interviewing Kristin Stover, Detective Duncan became suspicious that she was not being honest about not knowing the location of Cedar. | Duncan depo., 124:3-7; 145:25-146:8; 146:11-15 |
| 52. He pressed her on the issue and she ultimately acknowledged that she did know Cedar's location. | Duncan depo., 145:25-146:8; 146:11-15; 147:9-11; 147:13-17 |
| 53. Kristin Stover gave Detective Duncan consent to view texts on her phone which confirmed the goat was located at Billy's Mini Farm in Petaluma, California. | Duncan depo., 145:25-146:8; 146:11-15; 147:9-11; |
| 54. Since Billy's Mini Farm was only approximately 37 miles from Bleating Hearts, Lt. Fernandez and Detective Duncan decided to go to there instead of immediately returning to Shasta County. | Duncan depo., 147:13-17 |
| 55. Prior to arriving at Billy's Mini Farm, Detective Duncan learned the Raymond Allen was the owner of the farm. | Duncan depo., 151:1-152:17 |
| 56. He was able to locate Raymond Allen's telephone number and called him on his cell phone. | Duncan depo., 151:1-152:17 |
| 57. Detective Duncan explained that they were investigating the possible theft of a goat and asked if the animal was at his property. | Duncan depo., 151:1-152:17; 153:12-19; 154:6-23 |
| 58. Raymond Allen stated that the goat had been donated to him by plaintiffs and that the goat was his property. | Duncan depo., 153:12-19; 154:6-23 |
| 59. Raymond Allen gave consent to Detective Duncan to search his farm and locate the animal on his property. | Duncan depo., 153:12-19; 154:6-23 |
| 60. On the evening of July 8, 2022, the goat was identified at Billy's Mini Farm and taken into possession by Lieutenant Fernandez and Detective Duncan. | Allen depo., 30:5-31:20 |
| 61. They drove the goat back to Shasta County where they delivered it to BJ MacFarlane, who was acting as an agent for Kathie Muse, at the request of Kathie Muse. | Fernandez depo., 269:17-270:10; 271: 15-19  Duncan depo., 157:2-9; 158:1-4  Deposition of B.J. Macfarlane ("Macfarlane depo."), Vol. I, 201:21-202:6 |

6

Separate Statement of Undisputed Material Facts In Support of Defendants' MSJ, or in the Alternative, Summary Adjudication (2:22-CV-01527 DAD AC)

| STATEMENT OF FACT | EVIDENCE |
|---|---|
| | Muse depo., 132:1-15; 234:10-17 |
| 62. On approximately July 28, 2022, the goat was killed by a meat processing facility in compliance with the exhibitor rules. | Macfarlane depo., Vol. II, 252:7-12; 348:20-21<br><br>Macfarlane depo., Vol. I, 211:17-212:15 |
| 63. A check was subsequently issued by the Shasta District Fair to plaintiff E.L. for the sale of the goat at the Junior Livestock Auction. | Fowler depo., 33:4-11 |
| 64. Plaintiff Long's first public comments about the situation occurred after the goat had been slaughtered. | Long depo., Vol. II, 272:4-20 |
| 65. The only public comment about the goat that occurred between the auction and the slaughter was an Instagram post made by a third-party. | Long depo., Vol I., Exhibit A |
| 66. Plaintiffs did not have anything to do with the creation of the post. Plaintiffs did not instruct the third-party to generate the post, nor did they give her permission to make the post. | Long depo., Vol. II, 268:12-20; 269:14-17 |
| 67. Plaintiffs were not aware that it had been posted until after-the-fact. Plaintiffs were unhappy that the post had been made and wanted the third-party to take down the post. | Long depo., Vol. II, 269:18-22; 270:8-13 |
| 68. BJ MacFarlane housed the subject goat for approximately twenty days after Lieutenant Fernandez delivered the goat to him. | Declaration of B.J. Macfarlane ("Macfarlane declaration"), ¶ 4 |
| 69. During this time, Mr. Macfarlane housed the goat at the direction of the Shasta County Sheriff's Office, who told him to keep the goat alive in case the Shasta County District Attorney needed it as part of its potential prosecution of Jessica Long. | Macfarlane declaration, ¶ 4 |
| 70. During the time Mr. Macfarlane was housing the goat, he was told that the District Attorney's Office did not need the goat for any reason, and he could proceed with arranging for the slaughter of the goat. | Macfarlane declaration, ¶ 4 |
| 71. He was also told that he needed to keep the goat's ear tags in case they were needed for a future prosecution, which he did. | Macfarlane declaration, ¶ 4 |
| 72. Mr. Macfarlane helped Kathie Muse arrange for the slaughter of the livestock because he believed that the goat was sold to her at the Junior Livestock Auction, he was told that she was the legal owner of the animal by Lieutenant Fernandez, and the exhibitor rules require that all market animals sold at auction are slaughtered for meat. | Macfarlane declaration, ¶ 5 |
| 73. During the time that Mr. Macfarlane housed the goat, Melanie Silva had no involvement in the maintenance or slaughter of the animal. | Silva declaration, ¶ 5 |
| 74. Ms. Silva was aware that Mr. Macfarlane was waiting to receive approval from the Shasta County Sheriff's | Silva declaration, ¶ 4 |

Separate Statement of Undisputed Material Facts In Support of Defendants' MSJ, or in the Alternative, Summary Adjudication (2:22-CV-01527 DAD AC)

| STATEMENT OF FACT | EVIDENCE |
|---|---|
| Office and the Shasta County District Attorney's Office prior to the goat's slaughter, and she was aware that Mr. Macfarlane had received that approval prior to the goat's slaughter. | |
| 75. The exhibitor rules require that all market goats sold at the Junior Livestock Auction be slaughtered for meat. | Silva declaration, ¶¶ 7, 8 |
| 76. The subject goat was slaughtered pursuant to the exhibitor rules. | Silva declaration, ¶ 13 |
| 77. At the 2022 Shasta District Fair, 42 market goats were sold at the Junior Livestock Auction, and all of them, without exception, were slaughtered for meat in accordance with the exhibitor rules. | Silva declaration, ¶ 12 |
| 78. Ms. Silva believed that the subject goat was sold to a third party at the Junior Livestock Auction, and that the plaintiffs no longer owned the animal at any time after the auction. | Silva declaration, ¶¶ 3, 10, 11 |

Dated:  November 15, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
CATHERINE WOODBRIDGE
Supervising Deputy Attorney General

/s/ *John C. Bridges*

JOHN C. BRIDGES
Deputy Attorney General
*Attorneys for Defendants State of California, by and through the 27th District Agricultural Association, Melanie Silva, and B.J. MacFarlane*

SA2023302187
95602585

8

Separate Statement of Undisputed Material Facts In Support of Defendants' MSJ, or in the Alternative, Summary Adjudication (2:22-CV-01527 DAD AC)