RYAN R. GORDON (SBN 278414)
VANESSA T. SHAKIB (SBN 287339)
**ADVANCING LAW FOR ANIMALS**
407 N. Pacific Coast Highway #267
Redondo Beach, CA 90277
Tel: (202) 996-8389
rgordon@advancinglawforanimals.org
vshakib@advancinglawforanimals.org

DANIEL J. KOLDE, ESQ.
**LAW OFFICES OF DANIEL J. KOLDE**
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel: 636.675.5383
Email: daniel.kolde.law@gmail.com
(*pro hac vice application to be filed*)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,<br><br>　　　　　　　Plaintiffs,<br>　　v.<br>LIEUTENANT JERRY FERNANDEZ, in his individual capacity; DETECTIVE JACOB DUNCAN, in his individual capacity; DETECTIVE JEREMY ASHBEE, in his individual capacity; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association; COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual and official capacity; BJ MACFARLANE, in his individual and official capacity; KATHIE MUSE, in her individual and official capacity, and DOES 1 through 10, | Case No. 2:22-cv-01527-DAD-AC<br><br>**DECLARATION OF JESSICA LONG IN SUPPORT PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS MELANIE SILVA AND B.J. MACFARLANE**<br><br>[Plaintiffs' Motion for Partial Summary Judgment, Request for Judicial Notice, and Declaration of Ryan Gordon filed concurrently]<br><br>Date: January 7, 2025<br>Time: 1:30 pm<br>Courtroom: 4, 15th Floor<br><br>Trial Date: March 24, 2025<br><br>Action Filed: August 31, 202 |

**DECLARATION OF JESSICA LONG**

I, Jessica Long, declare as follows:

1. I am over 18 years of age. I have personal knowledge of the matters set forth herein and, if called upon, I could and would competently testify thereto. I am a plaintiff in the above-captioned matter along with my minor daughter, E.L. (collectively "Plaintiffs"). I am also acting as, and have been appointed, the guardian ad litem for E.L..

2. I make this declaration in support of Plaintiffs' Motion for Partial Summary Judgment.

3. Defendant Mr. B.J. Macfarlane ("Mr. Macfarlane") and Ms. Melanie Silva ("Ms. Silva") are hereafter collectively referred to as the "Fair Defendants."

4. In about September 2021, I enrolled E.L. in a local 4-H club, known as Cow Creek. The 4-H program she was registered in was referred to as the "market goat" or "meat goat" program.

5. Within the first few days of April 2022, I purchased a goat for my daughter and I. My daughter named the goat Cedar. We acquired Cedar in order for E.L. to participate in the market goat program.

6. We understood that for E.L. to complete the market goat program, she would have to participate in a junior livestock auction at the then-upcoming 2022 fair ("2022 Shasta District Fair") held by the Shasta District Fair & Event Center, identified in this case as the 27th District Agricultural Association (hereinafter, the "Shasta Fair Association"), also a defendant in this case.

7. The dates of the 2022 Shasta District Fair were June 21, 2022, through June 25, 2022.

8. On or about mid-May 2022, I registered E.L. to participate as an exhibitor in the 2022 Shasta District Fair for two events, showmanship and the junior livestock auction.

9. Between Plaintiffs' purchase of Cedar and the start of the 2022 Shasta District Fair, E.L and I provided food, water, and care for Cedar approximately every day. As part of her 4-H program, E.L. would also take Cedar for walks nearly every day, as well as practice "bracing," a position where Cedar would press against E.L. to display his muscle's flexing.

10. On or about June 25, 2022, E.L. participated in the junior livestock auction at the 2022 Shasta District Fair in late morning. I accompanied her.

11. When we attended the auction, we were provided a document containing rules for the junior livestock auction entitled "Shasta District Fair And Event Center Sunshine, Smiles & You," referred to in the concurrently-filed motion and Request for Judicial Notice as "Bidder's Rules." A true and correct copy of the "Bidder's Rules" is attached hereto as **Exhibit 20.**

12. We understood that the high bidder for Cedar was Senator Brian Dahle at $902.00.

13. After the junior livestock auction on June 25, 2022, E.L. became very emotional. Over the next few hours at the 2022 Shasta District Fair, we continued to attend to Cedar in his pen, as well as participate in fair events to distract E.L..

14. Around 9:00 pm, E.L. was sitting in Cedar's pen with him and crying. At that time, she represented to me that she did not want to proceed with selling Cedar. E.L. was nine (9) years old when she said she did not wish to move forward with selling Cedar.

15. To save Cedar from slaughter, that same evening, we removed him from the 2022 Shasta District Fair fairgrounds.

16. When we removed Cedar, we had not received any payment from the junior livestock auction.

17. After Cedar's removal, I temporarily placed Cedar over 200 miles away at third party Billy's Mini Farm for safe keeping while I attempted to work matters out with the Shasta Fair Association and the bidders.

18. In removing Cedar, I intended to preserve my and my daughter's property and/or possessory rights in Cedar, cancel any contract of sale that might have existed, and pay for any damages my daughter and I caused.

19. On or about June 26, 2022, I spoke with the livestock manager for the Shasta Fair Association, Mr. Macfarlane, over the phone, and he demanded that I return Cedar for slaughter. I represented to him that my daughter and I were not going to proceed with selling Cedar and we would pay for whatever damages we caused. However, Mr. Macfarlane stated I would be charged with felony grand theft under Cal. Penal Code § 487a.

20. On June 27, 2022, because I did not want to criminal charges pressed against me, particularly ones I believed to be frivolous, I contacted the office of State Senator Brian Dahle, as I

1  understood at that time that he was the person who bid on Cedar at the junior livestock auction.
2  Accordingly, I hand delivered a letter to his office explaining my daughter became attached to Cedar
3  and offering to pay for damages. Additionally, I sent an email to Senator Dahle's office stating my
4  daughter became "attached," "the thought of slaughtering him was too sad," and "My daughter
5  sobbed in her pen with her goat. It was heart breaking. I knew that this was our last time doing a
6  market animal. The barn was mostly empty and I decided to break the rules and take the goat that
7  night and deal with the consequences later. I knew when I took it that my next steps were to make it
8  right with the buyer and the fair. I am writing to ask you how I can make things right. *I will pay you
9  back for the goat and any other expenses I caused*. I would like to ask for your support in finding a
10 solution." (emphasis added). That email is described in the concurrently-filed motion as the "First
11 Offer to Pay Damages." A true and correct copy of this email is included within **Exhibit 15** to the
12 concurrently-filed Declaration of Ryan Gordon.

13    21.    Then, on or about June 27, 2022, I sent the Shasta Fair Association an email trying to
14 resolve the situation and offering to pay damages for expenses our removal of Cedar caused. This
15 email is defined in the concurrently-filed motion as the "Second Offer to Pay Damages." A true and
16 correct copy of this email is included within **Exhibit 5** at Bates 24-25 to the concurrently-filed
17 Declaration of Ryan Gordon.

18    22.    During the 2022 Shasta District Fair, I had contacted a nonparty goat rescue named
19 Bleating Hearts Sanctuary for assistance in saving Cedar. I also informed that organization that I had
20 removed him. Thereafter, also on June 27, 2022, an Instagram post by an account holder named
21 "bleatingheartsfarm" appeared on Instagram, defined in the concurrently filed motion as "Viral
22 Instagram Post." I understood this social media account to be operated by nonparty Bleating Hearts
23 Farm. I have never taken Cedar to Bleating Hearts Sanctuary, and he has never been there. Further,
24 while I had no role in Bleating Hearts Sanctuary's publication of Viral Instagram Post and was
25 completely unaware of the post prior to publication, that post did accurately reflect Plaintiffs' desire
26 to save Cedar from slaughter. A true and correct copy of the Instagram post is attached as **Exhibit 13**
27 to the concurrently-filed Declaration of Ryan Gordon.

28

ADVANCING LAW FOR ANIMALS

23. On June 28, 2022, I received an email from Ms. Silva stating that I had to return Cedar because, among other reasons, "the social media [response to Cedar] has been a negative experience for the fairgrounds as this has been all over Facebook and Instagram, not the best way to teach our youth the value of responsibility." A true and correct copy of Ms. Silva's email is included within **Exhibit 5** at Bates 23-24 to the concurrently-filed Declaration of Ryan Gordon.

24. On June 29, 2022, I responded to the Ms. Silva and the Shasta Fair Association with another letter, defined in the concurrently-filed motion as "Notice of Civil Claim and Intention to Sue." By this letter, I intended to communicate and did in fact communicate to the Shasta Fair Association that I disputed their claims about Cedar's ownership and that I intended to sue over ownership of Cedar. A true and correct copy of that letter and the email it was attached are both included within **Exhibit 6** at Bates 6, 10-13 to the concurrently filed Declaration of Ryan Gordon.

25. On or about July 15, 2022, I received information from a third party, Ray Allen, that Cedar was taken into custody by the Lieutenant Jacob Duncan of the Shasta County Sheriff's Office.

26. Between about July 15, 2022, to about July 27, 2022, I understood that my attorney, Ryan Gordon, had reached out to the Shasta County Sheriff's Office and the Shasta County Office of County Counsel to find Cedar, but law enforcement officers and government officials refused to provide information.

27. Consequently, on August 1, 2022, I emailed Ms. Silva stating "It is my understanding that Cedar was returned. I'd like to know if he is still alive and what happened to him?" A true and correct copy of that email is attached hereto as **Exhibit 21**.

28. Ms. Silva never responded to my August 1, 2022, inquiry over Cedar.

29. Sometime in late August 2022, I learned that from E.L.'s 4-H leader, Chad Fowler, that the Shasta Fair Association issued a check for Cedar's bid price, minus the fair's fees. Plaintiffs did not, however, accept that check. I represented to Mr. Fowler that E.L. quit the fair and 4-H and that we canceled and/or disaffirmed any contract of sale over Cedar.

30. Following my and my daughter's removal of Cedar from the fair, I refused to return him because I believed he was our property and my offer to pay damages was sufficient. From his removal through July 28, 2022, I disputed any claim that Cedar was not Plaintiffs' goat.

31. Neither I, nor my daughter, ever received any notice from the Fair Defendants, or either of them, that they had custody of Cedar, that they were going to slaughter him, or that they had slaughtered him.

32. Neither I, nor my daughter, ever received any notice from the Shasta Fair Association, that its employees had custody of Cedar, that they were going to slaughter him, or that they had slaughtered him.

33. Neither I, nor my daughter, ever received any notice or opportunity to be heard from anyone with respect to Cedar or his slaughter. We learned he was slaughtered through the discovery process in this case.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: November 14, 2024            By: _____
                                         Jessica Long