ROB BONTA, State Bar No. 202668
Attorney General of California
CATHERINE WOODBRIDGE, State Bar No. 186186
Supervising Deputy Attorney General
JOHN C. BRIDGES, State Bar No. 248553
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7529
 Fax: (916) 322-8288
 E-mail: John.Bridges@doj.ca.gov
*Attorneys for Defendants State of California, by and through the 27th District Agricultural Association, Melanie Silva, and B.J. MacFarlane*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **E.L., a minor, by and through her general guardian, JESSICA LONG; JESSICA LONG, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**LIEUTENANT JERRY FERNANDEZ, in his individual capacity; DETECTIVE JACOB DUNCAN, in his individual; DETECTIVE JEREMY ASHBEE, in his individual capacity; SHASTA DISTRICT FAIR AND EVENT CENTER, a district agricultural association, COUNTY OF SHASTA; SHASTA COUNTY SHERIFF'S DEPARTMENT; MELANIE SILVA, in her individual capacity; BJ MACFARLANE, in his individual capacity; and DOES 1 through 10,**<br><br>Defendants. | 2:22-CV-01527 DAD AC<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEFING PURSUANT TO COURT ORDER (ECF NO. 145)**<br><br>Date: July 7, 2025<br>Time: 1:30 p.m.<br>Courtroom: 4<br>Judge: Honorable Dale A. Drozd<br>Trial Date: TBD<br>Action Filed: August 31, 2022 |

Defendants Shasta Fair and Event Center, Melanie Silva, and BJ MacFarlane hereby submit this supplemental briefing as ordered by this Court on May 12, 2025. (ECF No. 145.)

I.  **WHETHER ONLY PLAINTIFF E.L., OR ALSO PLAINTIFF JESSICA LONG, WERE PARTIES TO THE SALE OF CEDAR?**

Both plaintiffs, E.L. and Jessica Long, were parties to the sale of the livestock at the Shasta District Fair. Plaintiffs admit that they co-owned the subject animal from the time it was acquired through the auction. In the Second Amended Complaint (ECF No. 25), which is the operative complaint, plaintiffs allege that these moving defendants "violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures of their property by seizing and confiscating Plaintiffs' property on or about July 8, 2022, without a warrant, and then disposing of and destroying Plaintiffs' property interests in Cedar." (ECF No. 25, ¶ 106.) They further allege that these moving defendants "had a constitutional duty to provide the individual Plaintiffs with notice that their property and property interests were at risk of being seized and/or destroyed and an opportunity to be heard…they did not preserve the Plaintiffs' property or provide a means of reclaiming it, thereby stripping individual Plaintiffs of any meaningful opportunity to contest the deprivation…." (ECF No. 25, ¶ 112.) By plaintiffs' own admission in their pleadings, they were both owners of the goat and parties to its sale at the livestock auction.

In addition to their joint ownership of the goat, plaintiff Jessica Long entered plaintiff E.L. into the contract with the Shasta District Fair to participate in the auction, the terms of which required the animal to be sold at auction and dictated that the auction was a terminal sale. Furthermore, both plaintiffs were parties to the sale in that Jessica Long entered E.L. into the auction with their co-owned livestock, and E.L.'s participation in the auction resulted in a winning bid to a third-party.

Alternatively, if plaintiff Jessica Long <u>was not</u> a party to the sale of the animal, then she has no legal standing to bring the claims alleged in the Second Amended Complaint, as those claims only arise by virtue of an ownership and/or possessory interest in the property, as argued in defendants' underlying memorandum of points and authorities in support of the motion for summary judgment. ("A 'seizure' of property only occurs when there is some meaningful interference with an individual's possessory interests in that property." *Lavan v. City of Los*

*Angeles*, 693 F.3d 1022, 1027, 1030-33 (9th Cir. 2012) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Likewise, a procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. (*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).)

## II. WHETHER TITLE TO CEDAR IS THE SAME AS OWNERSHIP OF CEDAR FOR THE PURPOSES OF THE PENDING MOTIONS FOR SUMMARY JUDGMENT?

For the purposes of the pending motions, title and ownership are interchangeable. "Ownership" represents the bundle of rights one acquires when purchasing property. "Title" represents the right to assert those ownership rights. In this case, there was no formal "document of title" for the animal. "'Document of title' includes a bill of lading, dock warrant, dock receipt, warehouse receipt, or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold, and dispose of the document and the goods it covers. To be a document of title, a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass." Cal. Comm. Code § 1201(b)(16). Thus, the transfer of *ownership* of the animal, and the corresponding passing of title, occurred upon the formation of a binding, enforceable contract between the plaintiffs and the buyer. "A sale by auction is complete when the auctioneer so announces by the fall of the hammer or other in other customary manner." Cal. Comm. Code § 2328(2). The use of the term "title" by defendants in the underlying motions is intended to represent ownership rights, not a legal "document of title".

## III. WHICH PROVISION OF CALIFORNIA COMMERCIAL CODE § 2401 APPLIES TO THE SALE OF CEDAR AND AT WHAT TIME DID TITLE TO CEDAR PASS PURSUANT TO THE RELEVANT CONTRACTS IN THIS ACTION?

### a. Whether, under the relevant contracts in this action, title to Cedar passed at the time of delivery, at the time of shipment, at the time of contracting, or at some other time pursuant to the intent of the parties?

Under the relevant contracts in this action, the plaintiffs agreed to participate in the auction, and agreed to sell the animal at the auction. "The primary goal of contract interpretation

3

is to give effect to the parties' intent as it existed at the time of contracting." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1023 (Cal.App. 6 Dist. 2009), citing Cal. Civ. Code, § 1636, and *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995). The intent of the plaintiffs and the fair at the time of contracting was for plaintiff E.L. to participate in the market goat program, and sell the goat at the Junior Livestock auction at the end of the fair. The intent of the parties was for the animal, after it had been sold to a third-party, to be transported on the trucks provided by the Fair on Saturday, June 25, 2022, pursuant to the terms of the contract. While plaintiffs cite California Commercial Code § 2401(2)(b) for the argument that title passes upon delivery to the slaughterhouse, they ignore that this section explicitly states that this applies "unless otherwise explicitly agreed", and that the contract did not require delivery at destination by the plaintiffs. The contract provided that the plaintiffs sell the animal at auction, and provided that the fair would be responsible for transporting the animal to the slaughterhouse following the auction for the benefit of the buyer.

Pursuant to plaintiffs' contractual obligation to sell the goat at the auction, a winning bid was placed and a second contract was established between the plaintiffs and the buyer. At that time, the ownership interest in the goat transferred from plaintiffs to the buyer who was able to select the ultimate destination of the livestock for processing. Prior to the formation of this second contract, it was never the intent of the plaintiffs, nor of the fair, to sell the animal at auction and maintain ownership rights in it until the plaintiffs felt comfortable with their decision to sell. Those rights were relinquished when they entered the contract with the fair, agreeing to sell the animal, and then did, in fact, participate in the auction and sell the animal.

Additionally, to the extent that any provision of the California Commercial Code applies, Section 2401(3)(b) is the provision that most closely applies to the intent of the contracting parties in this case, which provides: "Unless otherwise explicitly agreed where delivery is to be made without moving the goods…(b) If the goods are at the time of contracting already identified and no documents of title are to be delivered, title passes at the time and place of contracting." Cal. Comm. Code § 2401, subd. (3)(b). Here, the ownership interest in the goat was delivered without the plaintiffs moving the animal into the custody of the buyer, as that was provided by the

4

fair for the benefit of the buyer. The goat was already specifically identified at the time of contracting, which was when the hammer fell at the auction, no documents of title were delivered, so title passed when the hammer fell and the contract was accepted. ("A sale by auction is complete when the auctioneer so announces by the fall of the hammer or other in other customary manner." Cal. Comm. Code § 2328.)

In their opposition to defendants' summary judgment motion, plaintiffs reference what they refer to as the "Bidder's Rules", which purportedly require the 4-H members to care for the livestock until it reaches the processing plant. (See Plaintiffs' RJN 3, ECF 133-43.) However, this document is not part of any contract between the fair and plaintiffs, nor is it part of any contract between the plaintiffs and the buyer. It has no bearing on the contractual obligations of the parties to these contracts.

**IV. WHETHER CALIFORNIA LAW PRECLUDES A MINOR FROM DISAFFIRMING A CONTRACT SIGNED BY A PARENT ON THEIR BEHALF IN CIRCUMSTANCES OTHER THAN MEDICAL CARE CONTRACTS AND LIABILITY WAIVERS?**

California law precludes a minor from disaffirming a contract in any case in which a parent enters into the contract on behalf of the minor. There is no California case law, nor statutory precedent, that allows a minor to disaffirm a contract entered into by the minor's parent for the minor's benefit. The policy behind California Family Code section 6710, which provides for a minor's right to disaffirm a contract, "is to protect minors from their own improvidence in assuming contractual obligations." *Doyle v. Giuliucci,* 62 Cal. 2d 606, 609 (1965). "The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts. Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor for his protection against his own improvidence and the designs of others. It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant. Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract." *Berg v. Traylor* (2007) 148 Cal.App.4th 809, 818, quoting *Niemann v. Deverich* (1950) 98 Cal.App.2d 787, 793. Section 6710 does not, however, apply to

5

contracts between adults. *Doyle v. Giuliucci, supra,* 62 Cal. 2d at 609. In *Doyle*, the court found that section 6710 was not controlling in regard to a parent's power to bind his child to arbitrate by entering into a contract of which the child was a third-party beneficiary. Additionally, the parent who signs a contract on behalf of their minor child does not necessarily need to be a party to the contract in order to override the right to disaffirm under section 6710. In *Ericksson v. Nunnink* (2015) 233 Cal.App.4th 708, a mother's signature on a liability release prevented the release from being disaffirmed, but it did not make the mother a party to the release. Here, the parties agree that plaintiff Jessica Long was a party to the contract as she claims an ownership and/or possessory interest in the sold property, but even if the Court finds that she was not a party to the sale, her act of entering into the contract on behalf of her daughter negates E.L.'s ability to disaffirm the contract.

**V. WHETHER DEFENDANTS BJ MACFARLANE AND MELANIE SILVA WERE OBLIGATED TO SECOND-GUESS WHETHER LIEUTENANT FERNANDEZ HAD FOLLOWED STATE LAW AND/OR PROVIDED ADEQUATE DUE PROCESS TO PLAINTIFFS, AT THE TIME THAT LIEUTENANT FERNANDEZ GAVE CEDAR TO DEFENDANT MACFARLANE?**

There is no case precedent similar to the facts and circumstances of this case that would have obligated defendants MacFarlane and Silva to second-guess whether Lieutenant Fernandez, or any other member of the Shasta County Sheriff's Department, had followed state law and/or provided adequate due process to plaintiffs. Although MacFarlane and Silva are public employees, the facts of this case are akin to private parties asserting the "good faith" defense. The "good faith" defense has been recognized as a companion doctrine to qualified immunity, but for private parties who act in concert with government agencies. In *Clement v. City of Glendale* (9th Cir. 2008) 518 F.3d 1090, the court applied the "good faith" defense to a private tow truck company that seized the plaintiff's vehicle under the direction and supervision of local law enforcement. "The tow was authorized by the police department, conducted under close police supervision and appeared to be permissible under both local ordinance and state law. The constitutional defect – a lack of notice to the car's owner – could not have been observed by the towing company at the time when the tow was conducted…the responsibility to give notice falls on the police, thus the constitutional violation arose from the inactions of the police rather than

6

from any act or omission by the towing company." *Clement* at 1097.

In this case, neither MacFarlane nor Silva contacted the Sheriff's Department to make the initial report of the stolen property. Their first contact with law enforcement came when Lieutenant Fernandez asked Silva for documents related to the plaintiffs' involvement in the fair and auction. Their only other interaction with the Sheriff's Department was when Lieutenant Fernandez contacted MacFarlane after recovering the goat to make arrangements for transporting it to MacFarlane's home. Defendants did not know whether or not anyone from the Shasta County Sheriff's Department had contacted plaintiffs to give notice that the animal had been retrieved, nor had plaintiffs filed any legal paperwork, such as a temporary restraining order or preliminary injunction, to put the defendants on notice that there was an ongoing legal dispute regarding the animal's ownership. Simply put, they had no obligation to second-guess whether Lieutenant Fernandez had provided adequate due process to plaintiff, nor did they have any reason to believe that they had an independent duty to provide additional due process.

**a. Whether any such obligation was clearly established at the time?**

The determination of whether such obligation was clearly established at the time of the alleged violation begins with an "inquiry into whether this constitutional violation was clearly established by defining the law at issue in a concrete, particularized manner." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117-18 (9th Cir. 2017) (stating that the plaintiff bears the burden of showing that the rights allegedly violated were clearly established); *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) ("[t]he plaintiff bears the burden of proving that the right allegedly violated was clearly established" at the time of the violation). Moreover, to show that a right was clearly established, the plaintiff must demonstrate that, at the time of the alleged violation, the state of the law gave fair warning that the relevant conduct was unconstitutional. *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022).

In order to demonstrate that an obligation was clearly established, existing case law must have put "every reasonable official" on notice that the conduct was unconstitutional. *Martinez v. High,* 91 F.4th 1022, 1031 (9th Cir. 2024); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (stating

that a plaintiff need not find "a case directly on point," but existing precedent must have placed the statutory or constitutional question beyond debate). In deciding which precedents apply, the Ninth Circuit routinely relies "on the intersection of multiple cases when holding that a constitutional right has been clearly established." *Polanco v. Diaz*, 76 F.4th 918, 930 n.8 ("We routinely rely on the intersection of multiple cases when holding that a constitutional right has been clearly established . . .This approach is required by the Supreme Court's instruction that qualified immunity is improper where 'a legal principle [has] a sufficiently clear foundation in then-existing precedent.'") (citations omitted); *see also Russell v. Lumitap*, 31 F.4th 729, 737 (9th Cir. 2022) ("The precedent must be 'controlling'—from the Ninth Circuit or the Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction."); *accord Martinez,* 91 F.4th at 1031 ("existing case law must be 'controlling law'—from the Ninth Circuit, the Supreme Court, or from a consensus of courts outside the relevant jurisdiction.").

In this case, plaintiffs have not met their burden in demonstrating that any obligation by the individual defendants to second-guess Lieutenant Fernandez was clearly established. In their brief, they cite a handful of California appellate cases related to governmental disposal of animals, as well as two Sixth Circuit cases, two Seventh Circuit cases, and one District Court case from Hawaii. (See Plaintiff's Opp. to Fari Defendants' Motion for Summary Judgment, pp. 15-16.) In addition to the fact that none of these cases are from the Ninth Circuit or the Supreme Court, none of these cases stand for the proposition that non-law enforcement public actors are obligated to second-guess the conduct of law enforcement actors in affording a plaintiff additional due process. To the extent that these cases establish a consensus of the courts, that consensus does not extend beyond the proposition that animals are property for which due process is required prior to seizure. If Lieutenant Fernandez was an active defendant in this case, these cited cases may be applicable. He is not, and they are not.

Moreover, plaintiffs cite several Ninth Circuit cases seeking to establish that "the right to be free from an unreasonable seizure that is neither supported by probable cause nor conduct that constitutes a criminal violation is also clearly established." (Plaintiff's Opposition to Fair

8

Defendants' Motion for Summary Judgment, p. 16.) The Ninth Circuit cases are inapplicable to support the argument that the individual defendants had an obligation to second-guess Lieutenant Fernandez. One case, *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) involved law enforcement tasing a pregnant woman. The other cases cited in this argument involve law enforcement shooting dogs while arresting suspects and/or executing warrants. None of these cases involve second-hand due process requirements when law enforcement seizes a live animal and gives it to non-law enforcement public actors for disposal.

For these reasons, the obligation to second-guess Lieutenant Fernandez, if any, was not clearly established at the time of the alleged violation.

## VI. WHETHER PLAINTIFFS HAVE FAILED TO DEMONSTRATE RIPENESS, OR ANY OTHER ELEMENT OF ARTICLE III STANDING, AS TO THEIR DECLARATORY RELIEF CLAIM?

Plaintiffs have failed to demonstrate ripeness in order to establish Article III standing. Their claims for the prospective disaffirmance of a potential contract in the future is insufficient to establish standing for which the Court may grant relief.

To determine whether a particular dispute is ripe for judicial resolution, courts employ the *Abbott Laboratories* test, named after the Supreme Court's decision in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). This test requires the court to analyze two factors to determine whether an issue is ripe: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration" until some later time. *Nat'l Park Hosp. Ass'n*, 538 U.S. 803, 808 (2003). A claim may be unripe if it is based upon future events that may not occur as predicted or at all. *Texas v. United States*, 523 U.S. 296, 300 (1998). In the present case, E.L. is not currently participating in any market livestock program hosted by the Shasta Fair and Event Center, but instead seeks declaratory relief addressing a possible future participation. There are no demonstrable hardships to plaintiffs by withholding court consideration of the need for declaratory relief unless and until E.L. is actively engaged in a market livestock program, or at the very least taking reasonable steps to participate in such a program. As such, the claim for declaratory relief is not ripe pursuant to Article III.

| | | |
|---|---|---|
| Dated: June 6, 2025 | | Respectfully submitted, |
| | | ROB BONTA<br>Attorney General of California<br>CATHERINE WOODBRIDGE<br>Supervising Deputy Attorney General |
| | | ***/s/ John C. Bridges*** |
| | | JOHN C. BRIDGES<br>Deputy Attorney General<br>*Attorneys for Defendants State of California, by and through the 27th District Agricultural Association, Melanie Silva, and B.J. MacFarlane* |

SA2023302187
95632382

# CERTIFICATE OF SERVICE

| Case Name: | **E.L., a minor and Jessica Long v. Lieutenant Jerry Fernandez, et al.** | No. | **2:22-CV-01527 DAD AC** |
|---|---|---|---|

I hereby certify that on <u>June 6, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' SUPPLEMENTAL BRIEFING PURSUANT TO COURT ORDER (ECF NO. 145)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>June 6, 2025</u>, at Fresno, California.

| V. Pampenelli | */s/ V. Pampenelli* |
|---|---|
| Declarant | Signature |

SA2023302187
95632387